# EXHIBIT 4

# U.S. District Court
# Middle District of Florida (Tampa)
# CIVIL DOCKET FOR CASE #: 8:26−cv−02019−WFJ−SPF

Lasseter v. Amazon.com, Inc.
Assigned to: Judge William F. Jung
Referred to: Magistrate Judge Sean P. Flynn
Cause: 28:1332 Diversity−Deceptive Trade Practices

Date Filed: 07/14/2026
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Diversity

**Plaintiff**

**Sharon Lasseter**
*Individually and on behalf of all others similarly situated*

represented by **Michael Jay Fuller , Jr**
Farrell & Fuller LLC
270 Munoz Rivera Avenue
Suite 201
San Juan
Puerto Rico
939−293−8244
Fax: 939−293−8245
Email: mike@farrellfuller.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Amazon.com, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/14/2026 | 1 | COMPLAINT against Amazon.com, Inc. with Jury Demand (Filing fee $405 receipt number AFLMDC−25254100) filed by Sharon Lasseter. (Attachments: # 1 Civil Cover Sheet)(Fuller, Michael) Modified text on 7/15/2026 (LNR). (Entered: 07/14/2026) |
| 07/15/2026 | 2 | PROPOSED summons to be issued by Sharon Lasseter. (Fuller, Michael) (Entered: 07/15/2026) |
| 07/15/2026 | 3 | NEW CASE ASSIGNED to Judge William F. Jung and Magistrate Judge Sean P. Flynn. New case number: 8:26−cv−02019−WFJ−SPF. (LNR) (Entered: 07/15/2026) |
| 07/15/2026 | 4 | SUMMONS issued as to Amazon.com, Inc. (LNR) (Entered: 07/15/2026) |
| 07/16/2026 | 5 | RETURN of service executed on 07152026 by Sharon Lasseter as to Amazon.com, Inc.. (Fuller, Michael) (Entered: 07/16/2026) |
| 08/03/2026 | 6 | **ENDORSED ORDER dismissing complaint without prejudice on routine, initial screening. Plaintiff may review the Eleventh Circuit's guidelines on a "shotgun pleading." Any amended complaint must be filed within 21 days, in default of which this case will be closed. Signed by Judge William F. Jung on 8/3/2026. (Jung, William)** (Entered: 08/03/2026) |

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SHARON LASSETER, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

AMAZON.COM, INC.,

Defendant.

_________________________________/

Case No.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiff SHARON LASSETER ("Plaintiff") on behalf of herself and all others similarly situated, by and through undersigned counsel of record, bring this action against Defendant AMAZON.COM, INC. ("Defendant"). The allegations contained herein, which are based on Plaintiff's knowledge of facts pertaining to themselves and their own actions and counsel's investigations, and upon information and belief as to all the other matters, are as follows:

## I. INTRODUCTION

1. This action is brought on behalf of Plaintiff, purchaser of goods that Defendant sold throughout all the United States, who bore the economic burden of the President Donald Trump ("Trump") Administration's tariffs, imposed under the International Emergency Economic Powers Act ("IEEPA") (50 U.S.C. § 1701, et seq.), and against Defendant who shifted the economic burden of the IEEPA tariffs to consumers throughout the United States by means of price increases on imported goods as well as U.S.-sourced goods not subject to tariffs sold by Defendant to Plaintiff. The Defendant now receives an inequitable windfall by collecting refunds from the

federal government for tariff costs that were shifted to and paid by Plaintiff, who purchased goods from Defendant, and therefore, is the real party in interest to receive the IEEPA tariff refunds.

2. Defendant collected hundreds of millions of dollars in unlawful tariffs from consumers by raising prices on imported goods and U.S.-sourced goods while the tariffs imposed by the Trump Administration under IEEPA were in effect.

3. The refund process set in place by the federal government when the United States Supreme Court struck down the IEEPA tariffs established that only the importer of record is entitled to apply for and receive a refund for any moneys paid for the import of goods. However, Defendant shifted the cost of these tariffs to its customers by way of price increases to products subject to tariffs and items not subjected to tariffs, being Plaintiff and similarly situated consumers who bore the tariff costs in the first place.

4. Defendant has not returned any portion of those costs it passed on to consumers, and it has no intention of doing so. It has, in short, generated and retained a windfall from unlawful government action, and consumers — not Defendant — are the ones left paying for it.

5. This dispute arises from a fundamental inequity in the tariff refund process. Only the importer of record may seek a refund for an unlawfully assessed tariff — but importers merely advance the tariff cost at the border and recoup all or a substantial part of it through higher consumer prices. In economic reality, the consumer paid the tariff.

6. This inequity is compounded when, as here, a tariff is struck down by the courts. Consumers who bore the true economic burden have no direct avenue for redress — they both lack a statutory cause of action in the Court of International Trade and standing to seek a refund. That right belongs exclusively to the importer of record, here Defendant, regardless of who actually paid. The refund process as designed, establishes that large corporations that passed the entire tariff

cost onto their customers remain exclusively entitled to recover a full refund of tariffs the Supreme Court has since declared unlawful.

7. This lawsuit seeks to force Defendant to return funds collected from millions of consumers to cover IEEPA tariffs between February 2025 and February 2026. Defendant has made no commitment to compensate consumers for those payments. This act not only does not reimburse the consumer for the portion of the unlawful tariff that was forced upon him by the Defendant by means of across-the-board price increases, but it also unfairly enriches Defendant at the expense of the consumer.

8. Plaintiff seeks a judgment that requires Defendant to return to Plaintiff all IEEPA duties passed on to customers in the form of higher prices on products, with interest.

9. Plaintiff also seeks restitution of the tariff overcharges they paid, or a proportionate share of any tariff refunds Defendant recovers, together with interest, reasonable attorneys' fees, and costs.

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, omissions, and misrepresentations giving rise to Plaintiff's claims occurred in this District. Defendant has marketed, advertised, and made available for sale products subject to IEEPA tariffs within this District.

## III. PARTIES

### A. Plaintiff

12. Plaintiff Sharon Lasseter is a resident of Florida domiciled in Ruskin, Florida. During the Class Period, Plaintiff purchased items including a Turnart electronic dartboard directly from Defendant. These products were imported from countries subject to IEEPA tariffs and sold at prices inflated by Defendant's pass-through of IEEPA tariff costs. Plaintiff also purchased other products that were sourced from within the United States and not subjected to tariffs, but were sold at prices Defendant likewise inflated by spreading across its product line the IEEPA tariff costs incurred on its imported goods, so that purchasers of non-tariffed domestic goods also bore the tariff burden.

### B. Defendant

13. Amazon.com, Inc. ("Amazon") is an American multinational consumer goods and technology company that conducts business in all 50 states and the District of Columbia. Amazon is a Delaware corporation with principal executive offices located at 410 Terry Avenue North, Seattle, Washington 98109. Amazon is the world's largest e-commerce company. At all relevant times, Defendant operated a brick and mortar and online store through which it sold imported products and U.S.-sourced products directly to consumers. Between February 4, 2025 and February 20, 2026, Defendant collected tariff costs from those consumers on goods subject to tariffs imposed under the IEEPA as well as goods not subject to tariffs imposed under IEEPA. On information and belief, the misconduct alleged herein originated from and was directed out of Defendant's headquarters and principal place of business in Seattle, Washington.

## IV. FACTUAL ALLEGATIONS

### A. Defendant is an Enormous Retailer of Imported Good and U.S.-Sourced Goods

14. Defendant is a major retailer that imports a substantial volume of consumer goods into the United States and sells them to consumers throughout the country through both its physical locations and its online store.

15. Defendant purchases the goods it sells wholesale from vendors, suppliers, and manufacturers, including but not limited to, a substantial volume of goods imported from outside the United States, and resells them to consumers in its brick and mortar and online stores. Defendant owns the inventory it offers for sale and sets the retail prices its customers pay.

16. For the imported goods it sells, Defendant's involvement begins before the goods enter the United States. Defendant acts as the importer of record ("IOR") who signs the customs declaration, takes legal responsibility for compliance, and pays the tariff to U.S. Customs and Border Protection. On information and belief, Defendant serves as the IOR for a substantial portion of the imported goods it sells.

17. Defendant's product line is not limited to imported goods. Defendant also sources, stocks, and sells a substantial volume of consumer goods that originate within the United States and are not subject to IEEPA tariffs. Defendant offers these U.S.-sourced goods to consumers in its brick and mortar and online stores, alongside its imported goods. As with its imported goods, Defendant owns this inventory and sets the retail prices its customers pay.

18. The IEEPA tariffs increased the costs Defendant incurred on the imported goods for which it serves as the importer of record. On information and belief, rather than absorbing those increased costs or confining them to the imported goods that generated them, Defendant recovered the tariff costs by raising prices across its product line, including on U.S.-sourced goods that were never subject to IEEPA tariffs.

19. As a result, Defendant sold its imported goods at prices inflated by its direct pass-through of IEEPA tariff costs and sold its U.S.-sourced goods at prices likewise inflated by Defendant's decision to spread those same tariff costs across its product line.

20. Consumers who purchased U.S.-sourced goods from Defendant therefore bore a portion of the IEEPA tariffs that Defendant incurred on imported goods those consumers never purchased.

**B. The Trump Administration Invokes the IEEPA to Implement Tariffs**

21. On February 4, 2025, Trump issued an executive order imposing a 10% tariff on Chinese imports.[1] In March 2025, Trump issued two more executive orders imposing a 25% on goods imported from Canada and Mexico respectively.[2] By April 2025, the Trump Administration had imposed tariffs on imports from most other U.S. trading partners.

22. The Trump Administration invoked the International Emergency Economic Powers Act ("IEEPA") as the legal basis for these tariffs. The IEEPA was originally designed to allow the President to regulate international commerce during declared national emergencies.[3] The Trump Administration pointed to drug trafficking across U.S. borders and the persistent American trade deficit as the legal emergencies justifying the IEEPA tariffs.[4]

23. The IEEPA tariffs did not operate in isolation. For example, for much of 2025, the effective rate on most Chinese electronics was approximately 45%: a 20% IEEPA layer on top of

[1] Andrea Shalal; Trump launches trade war with tariffs on Mexico, Canada and China. Reuters (Feb. 1, 2025) (https://www.reuters.com/business/trump-readies-order-steep-tariffs-goods-mexico-canada-china-2025-02-01/)
[2] *Id.*
[3] Christopher A. Casey, Library of Congress, R-45618, The International Emergency Economic Powers Act: Origins, Evolution, and Use (https://www.congress.gov/crs-product/R45618)
[4] Id. at *supra* note 1.

an already existing 25% Section 301 tariff.[5] At the peak of the escalation in April-May 2025, average U.S. tariffs on Chinese imports reached 127.2% in early May 2025.[6]

24. On April 3, 2025, within days of the IEEPA tariffs going into effect, the first lawsuit challenging their legality was filed.[7] Despite palpable fear from business groups of incurring Trump's wrath,[8] other lawsuits would eventually follow.[9] These filings were widely reported and as a major retailer, Defendant certainly tracked their progress.[10]

25. On February 20, 2026, the U.S. Supreme Court issued its opinion in Learning Resources, Inc. v. Trump holding that the IEEPA did not authorize the President to impose the IEEPA tariffs and that they were invalid.[11]

26. The Supreme Court's decision in *Learning Resources, Inc*. eliminated the legal basis for the IEEPA tariffs and created a pathway for importers like Defendant to seek refunds of the tariffs previously collected by the federal government.

**C. Consumers Incurred Price Increases on Defendant's Products While the IEEPA Tariffs Were in Effect**

27. The IEEPA tariffs increased the costs that retailers, including Defendant, incurred on imported goods. Across the retail industry, companies responded by passing those increased costs on to consumers through higher prices. A survey of U.S. CEOs found that a majority had

---

[5] Section 301 of the US Trade Act of 1974 authorizes the President to take all appropriate action, including tariffs, to remove a foreign government's practice that violates an international trade agreement and that restricts US commerce. 19 U.S.C. § 2411. Trump implemented Section 301 tariffs in 2018.
[6] Chad P. Bown, US-China Trade War Tariffs: An Up-to-Date Chart, Peterson Institute for International Economics (Nov. 14, 2025) (https://www.piie.com/research/piie-charts/2019/us-china-trade-war-tariffs-date-chart)
[7] *Emily Ley, Paper, Inc., d/b/a Simplified v. Trump*, No. 3:25-cv-464-TKW-ZCB (N.D. Fla. Apr. 3, 2025).
[8] Caitlin Oprysko¸ 'Everyone is terrified': Business and government officials are afraid to cross Trump on tariffs, Politico (Apr. 4, 2025) (https://www.politico.com/news/2025/04/04/trump-tariffs-fear-lobby-business-congress-00006608)
[9] See. e.g. Doug Palmer¸ Trump's tariffs could face more than one legal challenge, Politico (Apr. 3, 2025), (https://www.politico.com/news/2025/04/04/first-lawsuit-filed-against-trumps-tariffs-00273646) Larry Neumeister, A dozen states sue the Trump administration to stop tariff policy, Associated Press (Apr. 23, 2025) (https://apnews.com/article/tariffs-lawsuit-what-states-sue-0d6531b7f60aaa2f7c6c35e0a944d4a9)
[10] *Id*.
[11] *Learning Resources, Inc. v. Trump*, 607 U.S. ___, 146 S. Ct. 628 (2026) (slip op. at 20).

already raised prices or were considering doing so in response to the tariffs,[12] and major retailers publicly announced tariff-driven price increases throughout 2025 and into 2026.[13]

28. Independent economic analysis confirms that a substantial portion of the tariff costs was passed through to U.S. consumers during the relevant period. The Federal Reserve found that pass-through to consumers for goods imported from China was at least 30 percent between April and December 2025.[14] Federal Reserve Bank of New York research found that U.S. businesses and consumers together bore nearly 90 percent of the cost of the 2025 tariffs.[15]

29. These price increases were not confined to imported goods. Analyses of retail pricing found that prices rose on both imported and domestically produced goods as retailers spread tariff-related costs across their product lines.[16] Researchers estimated that tariff pass-through added roughly 0.7 percentage points to the Consumer Price Index by September 2025, and that the lowest-priced product varieties saw the steepest increases (around 5 percent) because retailers had the least room to absorb the cost in their margins.[17]

30. The cumulative burden on consumers was enormous. After years of moderating prices, consumer goods prices rose throughout 2025 and into 2026.[18] According to the Budget Lab at Yale University, tariffs accounted for an estimated 86% of the rise in prices for imported

---

[12] *Here Are the Retailers Raising Prices as Trump Tariffs Take Hold*, CNBC (May 31, 2025) (https://www.cnbc.com/2025/05/31/trump-tariffs-here-are-the-retailers-raising-prices.html) (reporting the Chief Executive Group/AlixPartners survey of U.S. CEOs and individual retailer price-increase announcements).

[13] Megan Cerullo, *Walmart and Other Big Companies Say Tariffs Are Forcing Them to Hike Prices*, CBS News (Feb. 20, 2026) (https://www.cbsnews.com/news/walmart-trump-tariffs-general-merchandise-inflation/)

[14] *The Slow Climb: How Tariffs Gradually Raised Retail Prices in 2025*, Bd. of Governors of the Fed. Reserve Sys., FEDS Notes (Mar. 5, 2026) (https://www.federalreserve.gov/econres/notes/feds-notes/the-slow-climb-how-tariffs-gradually-raised-retail-prices-in-2025-20260305.html)

[15] Cerullo, *Walmart and Other Big Companies*, supra (reporting Federal Reserve Bank of New York research that U.S. businesses and consumers together bore nearly 90% of the cost of the 2025 tariffs).

[16] *Are Tariffs Raising U.S. Retail Prices?* (updated), Econofact (Dec. 5, 2025) (https://econofact.org/are-tariffs-raising-u-s-retail-prices) (summarizing the Cavallo/Harvard Business School Pricing Lab analysis of online pricing at five major U.S. retailers, including price increases on domestically produced goods).

[17] *Id.*

[18] Yale Budget Lab, *Tracking the Economic Effects of Tariffs* (https://budgetlab.yale.edu/research/tracking-economic-effects-tariffs)

household goods, with the effect most pronounced for long-lasting durable goods such as cars, appliances, and furniture.[19] American consumers paid more than $231 billion in tariff costs between February 2025 and January 2026, an average of roughly $1,745 per family.[20]

31. Defendant's product line is not limited to imported goods. Defendant also sources, stocks, and sells a substantial volume of consumer goods that originate within the United States and are not subject to IEEPA tariffs, which it offers to consumers alongside its imported goods. As with its imported goods, Defendant owns this inventory and sets the retail prices its customers pay.

32. The IEEPA tariffs increased the costs Defendant incurred on the imported goods for which it serves as the importer of record. On information and belief, rather than absorbing those increased costs or confining them to the imported goods that generated them, Defendant (like other major retailers) made a business decision to recover the tariff costs by raising prices across its product line, including on U.S.-sourced goods that were never subject to IEEPA tariffs.

33. As a result, Defendant sold its imported goods at prices inflated by its direct pass-through of IEEPA tariff costs and sold its U.S.-sourced goods at prices likewise inflated by its decision to spread those same tariff costs across its product line. Consumers who purchased U.S.-sourced goods from Defendant therefore bore a portion of the IEEPA tariffs that Defendant incurred on imported goods those consumers never purchased.

34. Defendant maintains detailed transaction, pricing, and customer records, including point-of-sale data, online order histories, and payment and loyalty-program records, through which

---

[19] *Id.*

[20] *American Families Have Paid More Than $1,700 Each in Tariff Costs Since Trump Entered Office*, Joint Economic Committee Minority (Feb. 2026) (https://www.jec.senate.gov/public/_cache/files/7cc03e65-d40a-465f-9e88-09dd53d3502f/jec-fact-sheet-on-cost-of-tariffs-for-families-update.pdf)

Defendant is able to identify the consumers who paid tariff-inflated prices during the Class Period and the amount of the increase attributable to the IEEPA tariffs.

35. Defendant's own executives publicly acknowledged that the IEEPA tariffs would increase the prices its customers paid. In April 2025, Defendant's Chief Executive Officer, Andy Jassy, stated that he expected sellers to pass the cost of the IEEPA tariffs on to consumers.[21] By January 2026, Mr. Jassy acknowledged that the tariffs had begun to "creep" into Defendant's prices and that price increases were, in some cases, unavoidable.[22]

36. Independent analyses confirmed that Defendant in fact raised prices on tariffed goods during the Class Period. A June 2025 analysis of more than 1,400 China-made products sold by Defendant found that their median price rose 2.6 percent between January and mid-June 2025, outpacing the prevailing rate of inflation for core goods.[23] A July 2025 study of 2,500 products sold by Defendant found that Defendant had raised the prices of approximately 1,200 low-cost goods by an average of 5.2 percent between January and July 2025, despite Defendant's earlier public pledges to keep prices low.[24]

37. Defendant is able to identify the precise portion of each product's price attributable to the IEEPA tariffs. In April 2025, Defendant prepared to display, for each product, the amount of its price attributable to the tariffs—demonstrating both that Defendant tracks the tariff component of its prices and that it maintains records sufficient to identify each consumer who paid

[21] Annie Palmer, *Amazon CEO Andy Jassy Says He Believes Sellers Will Pass Increased Tariff Costs On to Consumers*, CNBC (Apr. 10, 2025) (https://www.cnbc.com/2025/04/10/amazon-ceo-andy-jassy-says-he-believes-sellers-will-pass-increased-tariff-costs-on-to-consumers.html)

[22] Annie Palmer, *Amazon CEO Jassy Says Trump's Tariffs Have Started to 'Creep' Into Prices*, CNBC (Jan. 20, 2026) (https://www.cnbc.com/2026/01/20/amazon-jassy-trump-tariffs-prices-shoppers.html)

[23] Siddharth Cavale, *Trump Tariffs Have Raised Prices on Chinese-Made Amazon Products Faster Than Inflation*, Reuters (June 30, 2025) (https://www.reuters.com/business/retail-consumer/us-prices-china-made-goods-amazon-rise-faster-than-inflation-analysis-shows-2025-06-30/)

[24] Shane Shifflett et al., *After Pledging to Keep Prices Low, Amazon Hiked Them on Hundreds of Essentials*, Wall Street Journal (July 20, 2025) (https://www.wsj.com/business/retail/amazon-price-hikes-essentials-60a7c7f3)

a tariff-inflated price.[25] Defendant abandoned that disclosure plan within days, after the White House publicly objected and the President spoke with Defendant's founder.[26]

38. While collecting these tariff costs from consumers through higher prices, Defendant—as the importer of record—is simultaneously entitled to, and is pursuing, a refund of the same IEEPA tariffs from the federal government following the Supreme Court's invalidation of those tariffs. On information and belief, Defendant will recover those tariffs in full. If Defendant retains that refund without compensating the consumers who already bore the tariffs' cost, Defendant will have recovered the same tariff twice—once from its customers and once from the government—and will be made whole twice over at the Class's expense.

39. Plaintiff and Class members paid tariff-inflated prices to Defendant during the Class Period. Defendant now seeks to retain the benefit of those consumer payments while also recovering, and keeping for itself, the government's refund of the same tariffs

**D. Defendant will receive an unjust windfall from IEEPA Tariff Refunds**

40. Following the Supreme Court's decision in Learning Resources, nearly 2,000 importers began attempting to recover tariff refunds from the federal government. On March 4, 2026, the Court of International Trade ordered refunds of IEEPA tariffs, holding that "[a]ll importers of record" are "entitled to the benefit" of the Supreme Court ruling that struck down the IEEPA tariffs.[27] The Court ordered Customs and Border Patrol ("CBP") to liquidate any and all unliquidated entries subject to IEEPA tariffs "without regard to IEEPA duties," and ordered that

[25] *Amazon to Display Tariff Costs for Consumers*, Punchbowl News (Apr. 29, 2025) (https://punchbowl.news/article/tech/amazon-display-tariff-costs/)
[26] *Alayna Treene et al., A 'P*ssed' Trump Called Jeff Bezos After Learning Amazon Considered Breaking Out a Tariff Charge,* CNN (Apr. 29, 2025) (https://www.cnn.com/2025/04/29/business/white-house-calls-report-that-amazon-is-adding-a-tariff-charge-a-hostile-action)
[27] *Atmus Filtration, Inc. v. United States,* No. 1:26-01259, Order at 1 (U.S. Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.

"[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties."[28]

41. The Executive Director of CBP's Trade Programs Directorate estimated that as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion.[29] Given Defendant's size, Defendant is likely entitled to collect hundreds of millions of dollars in refunds on behalf of consumers.

42. Despite being well aware of the numerous challenges to the legality of the IEEPA tariffs, Defendant deceived consumers by not informing consumers that it wouldn't refund duties paid by consumers to cover IEEPA tariffs even if they were later invalidated.

43. These funds were wrongfully taken from consumers to cover IEEPA tariffs that have since been invalidated.

## V. CLASS ALLEGATIONS

44. Plaintiff brings this action on behalf of herself, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), seeking damages and injunctive relief pursuant to federal and state law on behalf of the members of the following Class:

a. **Imported Product Subclass**: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, purchased from Defendant a good that was itself subject to IEEPA tariffs, at a price that Defendant increased to pass through the IEEPA tariffs assessed on that good.

b. **US-Sourced Product Subclass**: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, purchased from Defendant a U.S.-sourced good that was not itself subject to IEEPA tariffs, at a price that Defendant increased to spread, recover, or offset across its product line the IEEPA tariff costs it incurred on its imported goods.

---

[28] *Id* at 2-3

[29] Atmus, ECF No. 31 at 6.

45. Excluded from the Class are the Defendant and its officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

46. The identity of all products encompassed within the Class definition, i.e., Class Products, are readily identifiable from Defendant's records. The identity of Class members and their purchase records are available through multiple sources, including Class members' own transaction and payment records, Defendant's records of Class Product purchases, and records maintained by PayPal, credit card companies, and other financial institutions.

47. **Numerosity**. Members of the Class are so numerous that joinder is impracticable. Plaintiff believes that there are tens of millions of members of the Class (if not more), geographically dispersed throughout the United States, such that joinder of all Class members is impracticable.

48. **Typicality**. Plaintiff's claims are typical of the claims of other Class members. The factual and legal bases of Defendant's liability are the same and resulted in injury to Plaintiff and all other members of the proposed Class.

49. **Adequate representation**. Plaintiff will represent and protect the interests of the proposed Class both fairly and adequately. She has retained counsel competent and experienced in complex class-action litigation. Plaintiff has no interests that are antagonistic to those of the proposed Class, and his interests do not conflict with the interests of the proposed Class members they seek to represent.

50. **Commonality**. Common questions of law and fact predominate over questions that may affect only individual Class members because Defendant has acted on grounds generally applicable to the Class and because Class members share a common injury. Determining damages

on a class-wide basis is therefore appropriate. The overcharge injuries incurred by Plaintiff and each Class member arose from the same conduct alleged herein.

51. There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

a. Whether the higher prices that consumers paid for products sold by Defendant are attributable to the cost of IEEPA tariffs;

b. Whether Defendant is obligated to return the cost of IEEPA tariffs to the consumers who paid them in the form of higher prices;

c. Whether Defendant's retention of elevated consumer payments constitutes unjust enrichment;

d. Whether Defendant's use of IEEPA tariff-related funds to benefit Defendant's business and political interests was unlawful;

e. Whether Defendant acted unlawfully by upcharging consumers in response to IEEPA tariff-related costs while making statements to the contrary;

f. Whether Defendant's conduct constitutes an unlawful practice under consumer protection statutes by collecting tariff-related surcharges from consumers while misrepresenting its pricing practices and failing to establish a consumer refund mechanism;

g. Whether Defendant's conduct has harmed Plaintiff and the Class uniformly; and

h. The measure of damages available to Plaintiff and the Class due to increased prices caused by Defendant's IEEPA tariff pass-through.

52. Prevention of inconsistent or varying adjudications: Individual prosecution of the claims alleged herein would likely yield inconsistent or varying results, establishing incompatible

standards of conduct for Defendant. Certification of the proposed Class would prevent this outcome.

53. **<u>Injunctive Relief</u>**. By way of its conduct described in this complaint, Defendant has acted on grounds that apply generally to the proposed Class. Accordingly, final injunctive relief is appropriate respecting the Class as a whole.

54. **<u>Predominance and superiority</u>**. A class action is superior to other available means for the fair and efficient adjudication of the Class's claims. The damages suffered by individual Class members are relatively small compared to the burden of individual prosecution of this complex litigation. Individual lawsuits would risk inconsistent judgments and increase delay and expense for all parties. A class action presents fewer administrative difficulties. Class members are ascertainable through methods typical of class action practice, including Defendant's own records and consumer's proof of purchase.

## VI. CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA) Fla. Stat. §§ 501.201–501.213

55. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

56. Plaintiff brings this Count on behalf of all Class members.

57. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Defendant's acts complained of herein are a per se violation of the Florida consumer protection law as these tariffs were illegal and unlawful.

58. FDUTPA is remedial in nature and is intended to protect consumers and legitimate business enterprises from those who engage in unfair methods of competition or unconscionable, deceptive, or unfair acts or practices in the conduct of trade or commerce.

59. Defendant's practices, as alleged herein, are injurious to the public interest as they have the capacity to injure other persons, including the millions of consumers who shop in Defendant's brick and mortar and/or online stores.

60. Defendant's practices, as alleged herein, injured Plaintiff and the Class in their business or property. The increased charges to Plaintiff and the Class were the result of illegal tariffs and the retention of sums gained through illegal collection is a per se violation of FDUTPA. Defendant unlawfully and unfairly charged customers inflated prices to cover the costs of IEPPA tariffs while representing that Defendant's prices were not increasing in response to the IEPPA tariffs. Defendant also failed to disclose to consumers that it did not intend to seek a refund of IEPPA tariff payments from the federal government even if those tariffs were illegal and instead would use consumers' funds to pursue its own business interests and seek favorable treatment from Trump. This information is material to Plaintiff's purchasing decisions and if not for Defendant's deceptive and unfair conduct, Plaintiff and the Class would not have purchased products from Defendant.

61. Defendant is liable to Plaintiff for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under (FDUTPA).

**COUNT II – FALSE AND MISLEADING ADVERTISING IN VIOLATION OF FLA. STAT. § 817.41**

62. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

63. Plaintiff brings this Count on behalf of all Class members.

64. Florida law prohibits the making, publication, dissemination, circulation, or placement before the public of any misleading advertisement. See Fla. Stat. § 817.41.

65. The purpose of Fla. Stat. § 817.41 is to protect consumers from advertisements and promotional statements that are deceptive, misleading, or likely to induce consumers to purchase goods based upon false or incomplete information.

66. A claim under Fla. Stat. § 817.41 may be established through affirmative misrepresentations of material fact or through the concealment or omission of material facts where such omissions render statements misleading.

67. At all relevant times, Defendant engaged in the regular course of trade and commerce in Florida by marketing, distributing, supplying, offering for sale, and/or selling merchandise to consumers in Florida.

68. Defendant unlawfully and unfairly charged customers inflated prices to cover the costs of IEEPA Tariffs while representing that Defendant's prices were not increasing in response to the IEEPA Tariffs. Defendant also failed to disclose to consumers that it did not intend to seek a refund of IEEPA Tariff payments from the federal government even if those tariffs were illegal and instead would use consumers' funds to pursue its own business interests and seek favorable treatment from Trump. This information was material to Plaintiff's purchasing decisions, and but for Defendant's misleading advertisements, representations, and omissions, Plaintiff and the Class would not have purchased products from Defendant or would have paid less for such products.

69. Defendant's representations, omissions, advertisements, and marketing practices constituted misleading advertising within the meaning of Fla. Stat. § 817.41 because they were likely to mislead reasonable consumers regarding the nature, basis, and justification for Defendant's pricing practices.

70. Defendant's practices, as alleged herein, are injurious to the public interest as they have the capacity to injure other persons, including the millions of consumers who shop in Defendant's brick-and-mortar and/or online stores.

71. Plaintiff and the Class reasonably relied upon Defendant's misleading advertisements, representations, and omissions and suffered injury in their business or property as a result.

72. As a direct and proximate result of Defendant's misleading advertising and deceptive conduct, Plaintiff and the Class suffered damages in an amount to be proven at trial.

73. Defendant is liable to Plaintiff and the Class for all damages available under Florida law, together with costs, interest, and such other relief as the Court deems just and proper.

**COUNT III – UNJUST ENRICHMENT**

74. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

75. Plaintiff brings this Count on behalf of all Class members.

76. Plaintiff and the Class have conferred a benefit upon Defendant in the form of money paid through tariff-inflated prices on goods during the period February 4, 2025, through February 20, 2026.

77. Defendant received and accepted that benefit and was thereby enriched. Defendant has retained the benefit conferred by Plaintiff without paying or otherwise compensating Plaintiff for its value.

78. The circumstances surrounding Defendant's receipt and retention of this benefit make it unjust and inequitable for Defendant to retain it without payment to Plaintiff. Defendant obtained these funds through price increases on goods subject to unlawful tariffs and has retained the resulting profits.

79. Under principles of equity and good conscience, Defendant should not be permitted to retain those ill-gotten profits when Defendant is seeking a refund of the duties it paid.

80. Under Florida law, Plaintiff and the Class are entitled to full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

**COUNT IV – MONEY HAD AND RECEIVED**

81. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

82. Plaintiff brings this Count on behalf of all Class members.

83. Defendant received funds from Plaintiff and from each member of the putative Class in the form of an IEEPA tariff surcharge. The Supreme Court has determined that the IEEPA tariffs were unlawful.

84. The funds belonged to Plaintiff and to each member of the putative Class.

85. Defendant has not returned the funds. Under principles of equity and good conscience, Defendant should not be permitted to retain those ill-gotten funds. Plaintiff seeks the return of the funds in an amount to be proven at trial.

86. Plaintiff seeks all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendant, as follows:

A. Certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel;

B. An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged herein;

C. Declaratory relief that Defendant must return to Plaintiff and the Proposed Class Members all funds paid by consumers to cover a IEEPA tariff surcharge, with interest;

D. Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

E. An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

F. An award of costs and attorneys' fees; and

G. Such other or further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of itself and Class Members, demands a trial by jury as to all issues triable as of right.

Dated: July 14, 2026

Respectfully submitted,

**SHARON LASSETER, Individually and On Behalf of All Others Similarly Situated**

By: /s/ *Michael J. Fuller, Jr.*___________________

Michael J. Fuller, Jr., FL Bar No. 173797
**Farrell & Fuller Law**
270 Munoz Rivera Ave. Ste. 201
San Juan, PR 00918
T: 939-293-8244
F: 939-293-8245
mike@farrellfuller.com

***Counsel for Plaintiff and Proposed Class***

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Sharon Lasseter, Individually and on Behalf of All Others Similarly Situated

**(b)** County of Residence of First Listed Plaintiff: Hillsborough
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael J. Fuller, Jr.
Farrell Fuller Law, 270 Munoz Rivera Ave., Ste. 201
San Juan, PR 00918, T: 939-293-8244

## DEFENDANTS

Amazon.com., Inc.

County of Residence of First Listed Defendant: ____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [x] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 USC 1332(d)

Brief description of cause:
Violation of state and federal law concerning IEEPA tariff surcharges

## VII. REQUESTED IN COMPLAINT:

- [x] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** Greater Than 1 Million

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE ____ DOCKET NUMBER ____

DATE: 07/14/2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ Michael J. Fuller, Jr.

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____