# EXHIBIT 6

KIM

# United States District Court
# Northern District of Illinois - CM/ECF NextGen 1.9 (rev. 1.9) (Chicago)
# CIVIL DOCKET FOR CASE #: 1:26-cv-04296

Russell v. Whaleco Inc.
Assigned to: Honorable Sharon Johnson Coleman
Demand: $75,000
Case in other court: Circuit Court of Cook County, 2026CH02456
Cause: 28:1441 Petition for Removal

Date Filed: 04/16/2026
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Diversity

**Plaintiff**

**Lola Russell**
*individually and on behalf of similarly situated individuals*

represented by

**Joseph Dunklin**
Mcguire Law, P.c.
55 West Wacker Drive, Floor 9
Chicago, IL 60601
(312) 893-7002
Fax: Not a member
Email: jdunklin@mcgpc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Myles P. McGuire**
McGuire Law, P.C.
55 West Wacker Drive
9th Floor
Chicago, IL 60601
(312) 893-7002
Fax: Not a member
Email: mmcguire@mcgpc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Evan M Meyers**
McGuire Law, P.C.
55 W. Wacker Drive
9th Floor
Chicago, IL 60601
312 893 7002
Fax: Not a member
Email: emeyers@mcgpc.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Whaleco Inc.**
*a Delaware corporation*
*doing business as*
TEMU

represented by

**Gary Feinerman**
Latham & Watkins LLP
330 N Wabash Ave
Suite 2800

Chicago, IL 60611
312-876-7700
Fax: Active
Email: gary.feinerman@lw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexis M. Lazarczyk**
Latham & Watkins LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
(312) 876-7700
Fax: Pro Hac Vice
Email: alexis.lazarczyk@lw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew P. Valenti**
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Fax: Pro Hac Vice
Email: matthew.valenti@lw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Serrin Turner**
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
Fax: Pro Hac Vice
Email: serrin.turner@lw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/16/2026 | 1 | NOTICE of Removal from Circuit Court of Cook County, Illinois, Chancery Division, case number (2026CH02456) filed by Whaleco Inc.d/b/a Temu Filing fee $ 405, receipt number AILNDC-24992780. (Attachments: # 1 Index of Exhibits for Notice of Removal, # 2 Exhibit 1- Complaint, # 3 Exhibit 2- Summons and Service of Receipt, # 4 Exhibit 3- Register of Actions, # 5 Exhibit 4- Plaintiff's Motion for Class Certification)(Feinerman, Gary) (Entered: 04/16/2026) |
| 04/16/2026 | 2 | CIVIL Cover Sheet (Feinerman, Gary) (Entered: 04/16/2026) |
| 04/16/2026 | 3 | ATTORNEY Appearance for Defendant Whaleco Inc.d/b/a Temu by Gary Feinerman (Feinerman, Gary) (Entered: 04/16/2026) |
| 04/16/2026 | 4 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Whaleco Inc.d/b/a Temu (Feinerman, Gary) (Entered: 04/16/2026) |

| | | |
|---|---|---|
| 04/16/2026 | 5 | MOTION for Leave to Appear Pro Hac Vice on behalf of Whaleco Inc.d/b/a Temu by Serrin Turner; Filing fee $ 150, receipt number BILNDC-24992970.<br><br>(Turner, Serrin) (Entered: 04/16/2026) |
| 04/16/2026 | 6 | MOTION for Leave to Appear Pro Hac Vice on behalf of Whaleco Inc.d/b/a Temu by Matthew P. Valenti; Filing fee $ 150, receipt number AILNDC-24993019.<br><br>(Valenti, Matthew) (Entered: 04/16/2026) |
| 04/17/2026 | | CASE ASSIGNED to the Honorable Sharon Johnson Coleman. Designated as Magistrate Judge the Honorable Young B. Kim. Case assignment: Random assignment. (Civil Category 1). (vw) (Entered: 04/17/2026) |
| 04/17/2026 | 7 | MINUTE entry before the Honorable Sharon Johnson Coleman: This case has been assigned to the calendar of Judge Sharon Johnson Coleman. Status hearing is set for 6/22/2026 at 10:15 AM as an in-person hearing. Defendant(s) is directed to advise the Plaintiff(s) of the status hearing forthwith. The parties are directed to meet and discuss the status of the case. The parties are to file a joint status report in the format described on the court's website at www.ilnd.uscourts.gov at least 3 business days prior to the status. The parties are directed to discuss settlement, and whether they consent to proceed before the Magistrate Judge. If the parties agree to consent jurisdiction before the Magistrate Judge, all parties must sign the consent form and electronically file the signed form on the case docket. The court encourages the parties to review this court's website for its standing orders prior to contacting chambers. Mailed notice. (ym) (Entered: 04/17/2026) |
| 04/17/2026 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (cvk, ) (Entered: 04/17/2026) |
| 04/21/2026 | 8 | MAILED Notice of Removal letter to counsel of record. (cvk, ) (Entered: 04/21/2026) |
| 04/21/2026 | 9 | MOTION by Defendant Whaleco Inc. for extension of time *to Answer or Otherwise Respond to Plaintiff's Complaint (Agreed)*<br><br>(Feinerman, Gary) (Entered: 04/21/2026) |
| 04/21/2026 | 10 | NOTICE of Motion by Gary Feinerman for presentment of extension of time 9 before Honorable Sharon Johnson Coleman on 5/5/2026 at 10:00 AM. (Feinerman, Gary) (Entered: 04/21/2026) |
| 04/22/2026 | 11 | ATTORNEY Appearance for Plaintiff Lola Russell by Evan M Meyers (Meyers, Evan) (Entered: 04/22/2026) |
| 04/22/2026 | 12 | ATTORNEY Appearance for Plaintiff Lola Russell by Joseph Dunklin (Dunklin, Joseph) (Entered: 04/22/2026) |
| 05/01/2026 | 13 | MINUTE entry before the Honorable Sharon Johnson Coleman: Attorneys Serrin Turner and Matthew P. Valenti's motions for leave to appear pro hac vice 5 and 6 are granted. Defendant's agreed motion for extension of time to answer or otherwise respond to plaintiff's complaint 9 is granted. Responsive pleading shall be filed by 5/21/2026. No appearance necessary on 5/5/2026. Mailed notice. (ym) (Entered: 05/01/2026) |

| | | |
|---|---|---|
| 05/21/2026 | 14 | MOTION by Defendant Whaleco Inc. to compel *arbitration*<br><br>(Attachments: # 1 E-Database Case Law)(Feinerman, Gary) (Entered: 05/21/2026) |
| 05/21/2026 | 15 | DECLARATION of Michael Trinh regarding motion to compel 14 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Feinerman, Gary) (Entered: 05/21/2026) |
| 05/21/2026 | 16 | NOTICE of Motion by Gary Feinerman for presentment of motion to compel 14 before Honorable Sharon Johnson Coleman on 5/27/2026 at 10:00 AM. (Feinerman, Gary) (Entered: 05/21/2026) |
| 05/22/2026 | 17 | MINUTE entry before the Honorable Sharon Johnson Coleman: Plaintiff shall file a response to defendant's motion to compel arbitration 14 by 6/22/2026. Defendant shall file a reply by 7/6/2026. Once the matter is fully briefed, the Court shall take it under advisement. No appearance necessary on 5/27/2026. Mailed notice. (ym) (Entered: 05/22/2026) |
| 06/16/2026 | 18 | STATUS Report *Joint Initial Status Report* by Lola Russell<br><br>(Dunklin, Joseph) (Entered: 06/16/2026) |
| 06/18/2026 | 19 | MINUTE entry before the Honorable Sharon Johnson Coleman: In-person status hearing set for 6/22/2026 is stricken and reset to 7/13/2026 at 10:00 AM. Mailed notice. (ym) (Entered: 06/18/2026) |
| 06/18/2026 | 20 | MOTION for Leave to Appear Pro Hac Vice on behalf of Whaleco Inc. by Alexis M. Lazarczyk ; Filing fee $ 150, receipt number AILNDC-25272564.<br><br>(Lazarczyk, Alexis) (Entered: 06/18/2026) |
| 06/22/2026 | 21 | MINUTE entry before the Honorable Sharon Johnson Coleman: Attorney Alexis M. Lazarczyk's motion for leave to appear pro hac vice 20 is granted. Mailed notice. (ym) (Entered: 06/22/2026) |
| 06/22/2026 | 22 | MEMORANDUM by Lola Russell in Opposition to motion to compel 14 *Plaintiff's Memorandum of Law in Opposition to Defendant Whaleco, Inc.'s Motion to Compel Arbitration* (Dunklin, Joseph) (Entered: 06/22/2026) |
| 07/06/2026 | 23 | REPLY by Whaleco Inc. to MOTION by Defendant Whaleco Inc. to compel *arbitration*<br><br>14 (Attachments: # 1 E-Database Case Law)(Feinerman, Gary) (Entered: 07/06/2026) |
| 07/06/2026 | 24 | DECLARATION of Michael Trinh regarding motion to compel 14 *arbitration (Supplemental)* (Attachments: # 1 Exhibit D)(Feinerman, Gary) (Entered: 07/06/2026) |
| 07/13/2026 | 25 | MINUTE entry before the Honorable Sharon Johnson Coleman: Status hearing held on 7/13/2026. Oral motion by plaintiff for leave to file a sur-reply to defendant's motion to compel arbitration is granted, over defendant's objections. Plaintiff's brief shall be no more than 5 pages. Once the matter is fully briefed, the Court shall take it under advisement. Mailed notice. (ym) (Entered: 07/13/2026) |
| 07/23/2026 | 26 | MOTION by Plaintiff Lola Russell to remand *or in the alternative, for leave to conduct jurisdictional discovery*<br><br>(Dunklin, Joseph) (Entered: 07/23/2026) |
| 07/23/2026 | 27 | NOTICE of Motion by Joseph Dunklin for presentment of motion to remand 26 before Honorable Sharon Johnson Coleman on 8/4/2026 at 10:00 AM. (Dunklin, Joseph) (Entered: 07/23/2026) |

| | | |
|---|---|---|
| 08/04/2026 | 28 | MINUTE entry before the Honorable Sharon Johnson Coleman: Motion hearing held on 8/4/2026. Oral motion by plaintiff to file a sur-reply to defendant's motion to compel arbitration is granted. Sur-reply shall be filed by 8/11/2026. Defendant shall file a response to plaintiff's motion to remand or, in the alternative, for leave to conduct jurisdictional discovery 26 by 8/18/2026. Plaintiff shall file a reply by 8/21/2026. Once the matters are fully briefed, the Court shall take them under advisement. Mailed notice. (ym) (Entered: 08/04/2026) |


| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/11/2026 13:27:41 | | | |
| **PACER Login:** | studavidson | **Client Code:** | 260043-00001 |
| **Description:** | Docket Report | **Search Criteria:** | 1:26-cv-04296 |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LOLA RUSSELL, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>WHALECO INC. d/b/a TEMU, a Delaware corporation,<br><br>Defendant. | Case No. 1:26-cv-04296 |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendant Whaleco Inc. d/b/a Temu ("Temu") removes this action—with reservation of all defenses and rights—from the Circuit Court of Cook County, Illinois, to this Court. For the sole and limited purpose of establishing the basis of this Court's jurisdiction, Temu assumes the truth of the Complaint's allegations. This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this action is a putative class action with more than 100 members in the proposed class, there is minimal diversity, and the amount in controversy exceeds $5 million in the aggregate.

## I. BACKGROUND

1. On March 13, 2026, Plaintiff filed a Complaint in the Circuit Court of Cook County, Illinois captioned *Lola Russell v. Whaleco Inc. d/b/a TEMU*, Case No. 2026CH02456. A copy of the Complaint is attached hereto as **Exhibit 1**.

2. On March 19, 2026, Plaintiff served the Complaint and summons on Temu. A copy of the summons and service of process receipt is attached hereto as **Exhibit 2**.

3. The Complaint claims that Temu violated Plaintiff's rights under the Illinois

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), and common law.

4. Plaintiff brings this action on behalf of herself and purportedly on behalf of a putative Nationwide Class and a putative Illinois Subclass. As to the putative Nationwide Class, Plaintiff seeks to represent "[a]ll persons in the United States who purchased products from Defendant during the period February 1, 2025 through February 24, 2026, and were charged prices that included IEEPA Tariff costs." Ex. 1 ("Compl.") ¶ 51. The Complaint alleges that the proposed class includes "hundreds of thousands, if not millions, of proposed class members." *Id.* ¶ 53.

## II. THIS COURT HAS JURISDICTION PURSUANT TO CAFA

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because (1) this case is a putative class action with more than 100 members in the proposed class; (2) there is minimal diversity, since at least one member of the proposed class, on the one hand, and Temu, on the other, are citizens of different states; and (3) the Complaint places in controversy an amount that exceeds $5 million in the aggregate, considering all damages and equitable relief sought on behalf of Plaintiff and the proposed class, exclusive of interests and costs. *See* 28 U.S.C. §§ 1332(d)(2), (d)(5)(B), (d)(6).

6. A notice of removal "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). Temu must provide only "a short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), that contains "plausible allegation[s]" that CAFA's jurisdictional requirements are satisfied, *Dart Cherokee*, 574 U.S. at 89. Thus, while Temu denies any and all liability and denies that this matter should proceed at all, let alone as a class action, CAFA's jurisdictional requirements are satisfied.

**A. This Is a Putative Class Action in Which the Proposed Class Exceeds 100 Members**

7. A "class action" under CAFA includes any civil action filed under Federal Rule of Civil Procedure 23 or a "similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

8. This lawsuit meets that definition. Plaintiff "brings her claims individually and on behalf of" a proposed class of "[a]ll persons in the United States who purchased products from Defendant during the period February 1, 2025 through February 24, 2026, and were charged prices that included IEEPA Tariff costs," and a proposed subclass of "[a]ll persons within the State of Illinois who purchased products from Defendant during the period February 1, 2025 through February 24, 2026, and were charged prices that included IEEPA Tariff costs." Compl. ¶ 51; *see* 735 ILCS 5/2-801 ("An action may be maintained as a class action in any court of this State … only if the court finds:" (1) "[t]he class is so numerous that joinder of all members is impracticable"; (2) "[t]here are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members"; (3) "[t]he representative parties will fairly and adequately protect the interest of the class"; and (4) "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy.").

9. CAFA requires that the proposed class consist of at least 100 persons. *See* 28 U.S.C. § 1332(d)(5)(B).

10. As noted, the Complaint alleges that the putative class contains "hundreds of thousands, if not millions, of proposed class members." Compl. ¶ 53. Accordingly, Section 1332(d)(5)(B) is satisfied.

**B. There Is Minimal Diversity**

11. To establish diversity under CAFA, a defendant must show only minimal diversity,

meaning that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Removal therefore is proper when even one proposed class representative or class member is a citizen of a state different from the defendant's state(s) of citizenship. *See Dart Cherokee*, 574 U.S. at 84-85 (noting that the parties must be "minimally diverse" to warrant removal under CAFA).

12. Plaintiff alleges that she is "a citizen of the State of Illinois and resident of Cook County." Compl. ¶ 17. Plaintiff is therefore a citizen of the State of Illinois for purposes of CAFA jurisdiction.

13. Plaintiff also seeks to represent a proposed nationwide class. *Id.* ¶ 51. The proposed class thus includes citizens of potentially all 50 states.

14. Temu is a corporation organized and existing under the laws of Delaware with its principal place of business in Massachusetts. *Id.* ¶ 18. Accordingly, Temu is a citizen of the States of Delaware and Massachusetts for CAFA purposes. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]").

15. Minimal diversity thus exists between Temu and at least one member of the putative class, because Temu and Plaintiff are citizens of different states for the purposes of CAFA jurisdiction. Moreover, Temu and at least one absent member of the proposed class are citizens of different states for purposes of CAFA jurisdiction. The minimal diversity requirement is therefore satisfied.

**C. The Amount in Controversy Exceeds $5 Million**

16. Temu denies that Plaintiff or members of the putative Nationwide Class (or Illinois Subclass) are entitled to the damages sought here. Plaintiff's allegations are entirely without merit, and class treatment is not appropriate. For purposes of this Notice of Removal, however, the

amount in controversy exceeds $5,000,000, exclusive of interest and costs, and thus satisfies the amount-in-controversy requirement of CAFA. *See* 28 U.S.C. § 1332(d)(2).

17. CAFA provides that "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *Id.* § 1332(d)(6). The amount in controversy is determined in the operative complaint. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) ("[T]he statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million."). Where a complaint does not state a dollar amount, the defendant's notice of removal needs to include "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89.

18. Plaintiff seeks, among other things, (1) "any actual, compensatory, and enhanced damages permitted to Plaintiff and other Class and Subclass Members, for all damages sustained as a result of Defendant's wrongdoing"; (2) "disgorgement of any funds in the amount Defendant was unjustly enriched by its conduct"; (3) "reasonable attorneys' fees, costs, and other litigation expenses"; and (4) "[s]uch further and other relief as the Court deems just, reasonable, and equitable." Compl. at Prayer for Relief ¶¶ B-C, E-F.

19. Plaintiff alleges that Temu paid tariffs on the import of goods pursuant to Executive Orders issued under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.* ("IEEPA"). Compl. ¶¶ 2, 5, 7. Plaintiff further alleges that as a result of a ruling by the United States Supreme Court, which held the aforementioned Executive Orders unconstitutional, *id.* ¶¶ 8, 9, Temu is entitled to a refund for the tariff amount paid, totaling "potentially in the tens or hundreds of millions of dollars," *id.* ¶ 46. According to Plaintiff, because Temu had previously

"passed the tax burden onto Plaintiff and similarly situated consumers," the putative Nationwide Class members are allegedly entitled to restitution of the refunded amount, among other forms of relief sought in the Complaint. *Id.* ¶¶ 7, 10, 80, 83. Although Temu will dispute each of Plaintiff's theories of recovery, CAFA's amount-in-controversy requirement is indisputably satisfied.

## III. COMPLIANCE WITH REMOVAL STATUTE

20. The Notice of Removal is properly filed in this District because the Circuit Court of Cook County, Illinois, is located in this District. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 93(a)(1).

21. The Notice of Removal is signed pursuant to Federal Rule of Civil Procedure 11. *See* 28 U.S.C. § 1446(a).

22. Pursuant to 28 U.S.C. § 1446(a), attached hereto and marked as **Exhibits 1 and 2** are true and correct copies of the Complaint (Exhibit 1) and a copy of the summons served upon Temu and service of process receipt (Exhibit 2). A copy of the Circuit Court of Cook County, Illinois docket sheet is attached as **Exhibit 3**, and a copy of Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery pursuant to 735 ILCS 5/2-801 is attached as **Exhibit 4**. Temu is unaware of any other pending motions filed under Illinois procedural rules in state court.

23. The Notice of Removal is filed within 30 days of service of the Complaint on Temu, and therefore this Notice of Removal is timely under 28 U.S.C. § 1446(b)(1).

24. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on counsel for Plaintiff, and a copy, along with a Notice of Filing of the Notice of Removal, is today being filed with the Clerk of the Circuit Court of Cook County, Illinois.

25. Temu reserves the right to amend or supplement this Notice of Removal. Temu further reserves all rights and defenses, including those available under the Federal Rules of Civil

Procedure and any other applicable rules, statutes, or case law.

## IV. CONCLUSION

Temu respectfully requests that this Court exercise jurisdiction over this action and enter orders and grant relief as may be necessary to secure removal and to prevent further proceedings in this matter in the Circuit Court of Cook County, Illinois. Temu further requests such other relief as the Court deems appropriate.

Dated: April 16, 2026

Respectfully submitted,

*/s/ Gary Feinerman*

Gary Feinerman, One of the Attorneys for
Defendant Whaleco Inc. d/b/a Temu

Gary Feinerman (Illinois Bar No. 6206906)
Alexis Lazarczyk (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
330 North Wabash Ave., Suite 2800
Chicago, Illinois 60611
Tel: (312) 876-7700
gary.feinerman@lw.com
alexis.lazarczyk@lw.com

Serrin Turner (*pro hac vice* forthcoming)
Matthew Valenti (*pro hac vice* forthcoming)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
serrin.turner@lw.com
matthew.valenti@lw.com

**CERTIFICATE OF SERVICE**

I, Gary Feinerman, hereby certify that I caused a copy of the foregoing to be served on the parties listed below, by email and prepaid, First Class United States mail, on April 16, 2026.

Myles McGuire
Joseph M. Dunklin
MCGUIRE LAW, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
jdunklin@mcgpc.com

*/s/ Gary Feinerman*
Gary Feinerman, One of the Attorneys for Defendant Whaleco Inc. d/b/a Temu

Gary Feinerman (Illinois Bar No. 6206906)
LATHAM & WATKINS LLP
330 North Wabash Ave., Suite 2800
Chicago, Illinois 60611
Tel: (312) 876-7700
gary.feinerman@lw.com

# EXHIBIT 1

Hearing Date: 5/15/2026 9:30 AM
Location: Court Room 2402
Judge: Price Walker, Allen

FILED
3/13/2026 11:41 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2026CH02456
Calendar, 3
37105777

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| LOLA RUSSELL, individually and on behalf of similarly situated individuals,<br><br>*Plaintiff*,<br><br>v.<br><br>WHALECO INC. d/b/a TEMU, a Delaware corporation,<br><br>*Defendant*. | ) | Case No. 2026CH02456 |

**CLASS ACTION COMPLAINT**

Plaintiff, Lola Russell ("Plaintiff"), individually and on behalf of others similarly situated, by and through her undersigned counsel, and for her Class Action Complaint against Defendant Whaleco Inc. d/b/a TEMU ("Defendant" or "TEMU"), alleges as follows based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

**NATURE OF THE ACTION**

1. This is an action for damages and any other available legal or equitable remedies, for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq., Unjust Enrichment, and Money Had and Received, resulting from Defendant's practice of charging its customers for unlawfully imposed tariffs.

2. This lawsuit arises from Defendant's retention of windfall profits generated by the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.* This windfall is a direct result of

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

Defendant systematically passing on the costs of IEEPA tariffs to its own customers—including Plaintiff—through elevated product prices and explicit "import charges."

3. Beginning on February 1, 2025, President Donald J. Trump issued Executive Orders 14193, 14194, and 14195 imposing IEEPA-based duties on certain imports from Canada, Mexico, and China, respectively. He later issued Executive Order 14245 on March 24, 2025 concerning tariffs on countries importing Venezuelan oil, and Executive Order 14257 on April 2, 2025 declaring a national emergency based on large and persistent United States goods trade deficits and imposing reciprocal tariffs on a broad range of trading partners. *See* Exec. Order No. 14193 (Feb. 1, 2025); Exec. Order No. 14194 (Feb. 1, 2025); Exec. Order No. 14195 (Feb. 1, 2025); Exec. Order 14257 (Apr. 2, 2025); Exec. Order No. 14245 (Mar. 24, 2025) (collectively, the "Tariff Executive Orders").

4. The sweeping Tariff Executive Orders imposed an array of frequently changing duties ranging from 10% to 145% based on country-specific tariff policy dictated through published Executive Orders. *See* Exec. Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025); Exec. Order No. 14,259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

5. After May 2, 2025, duty-free exemptions for goods originating from China and Hong Kong were eliminated, so that IEEPA Tariffs were imposed on all goods originating from China or Hong Kong. Exec. Order No. 14256 (Apr. 2, 2025) (eliminating duty-free de minimis treatment under 19 U.S.C. § 1321(a)(2)(C) for products originating in the People's Republic of China and Hong Kong, effective May 2, 2025).

6. When goods are imported into the United States, the United States Customs and Border Protection ("CBP") assesses and collects tariffs on those goods based on the Harmonized

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

Tariff Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through a process known as liquidation. *See* 19 U.S.C. § 1504(b).

7. Defendant paid IEEPA tariffs when it imported the products Plaintiff and similarly situated consumers purchased. To offset the cost of paying IEEPA tariffs, Defendant passed the tax burden onto Plaintiff and similarly situated consumers by embedding those costs in product prices and charging explicit "import charges" that drastically increased the price of many imported products.

8. On February 20, 2026, the United States Supreme Court held that the IEEPA and other statutes cited in the Tariff Executive Orders do not authorize the President to impose tariffs *Learning Res., Inc. v. Trump*, No. 24–1287, 2026 WL 477534, at *13 (U.S. Feb. 20, 2026).

9. As a result, any IEEPA tariffs charged to Defendant were unlawful and unconstitutional, and Defendant is entitled to seek a refund for any tariffs it paid pursuant to the Tariff Executive Orders through either litigation or the liquidation process. *See id.*

10. However, Defendant passed its unlawful IEEPA tariff burdens onto Plaintiff, the Class, and Subclass Members by directly and indirectly charging Plaintiff and the Class Members the cost of the unlawful IEEPA tariffs through elevated prices and "import charges." Plaintiff, the Class, and Subclass Members were thereby deprived of money paid to Defendant for unlawful IEEPA tariffs.

11. Defendant has not disclosed to consumers whether it intends to seek refunds of the IEEPA tariffs from the government, and has made no commitment to return any portion of anticipated tariff refunds to the consumers who bore those costs through elevated prices and import charges.

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

12. If Defendant receives a refund for the IEEPA tariffs, Defendant will have been provided a windfall as a result of already having charged consumers for the collection of unlawful IEEPA tariffs. Defendant's retention of money obtained from charging consumers for IEEPA tariffs offends public policy, is oppressive, and causes substantial injury to consumers by depriving those consumers like Plaintiff, the Class, and Subclass Members of the cost of the unlawful IEEPA Tariffs.

13. The value of IEEPA tariff refund claims is not merely speculative. Even before the Supreme Court issued its decision in *Learning Resources*, a robust secondary market had emerged in which distressed investors and hedge funds were purchasing IEEPA tariff refund claims from importers at a discount in exchange for immediate liquidity.

14. The existence and active trading of these claims confirms that the tariff refunds Defendant is positioned to recover represent concrete, quantifiable economic value—not hypothetical future benefits—and that Defendant's anticipated double recovery at consumers' expense is both real and imminent.

15. Even if Defendant does not receive a refund, it is still unfair, oppressive, unscrupulous, and causes substantial injury to consumers to charge consumers the cost of unconstitutional, unlawful IEEPA tariffs that provide no benefit to Plaintiff or other consumers in any way.

16. Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek redress for violations of the Illinois Consumer Fraud Act (815 ILCS 505/1 *et seq*.), as well as common law torts of unjust enrichment and money had and received, and for such other relief as the Court may deem just and appropriate.

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

## PARTIES

17. At all relevant times, Plaintiff Lola Russell has been a citizen of the State of Illinois and resident of Cook County.

18. Defendant is a Delaware corporation, whose principal place of business is located at 31 St. James Avenue, Suite 355, Boston, Massachusetts 02116. Defendant does business as "TEMU" and operates an online marketplace selling consumer goods to customers throughout the United States, including Illinois.

## JURISDICTION

19. The Court has personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209(a)(1) because Defendant transacted business in this State by selling consumer goods directly to consumers in Illinois, including Plaintiff. Defendant is registered to do business in Illinois and has been doing business in Illinois during all relevant times. Directly and through its agents, Defendant has substantial contacts with Illinois, has purposefully availed itself of the Illinois market, and has received substantial benefits and income from Illinois. Specifically:

a. Defendant operates and maintains the TEMU website (temu.com) and mobile application, both of which are accessible to and target Illinois consumers;

b. Defendant advertises and markets its products to Illinois consumers through targeted digital advertising, social media, and other promotional channels;

c. Defendant ships products to Illinois consumers, including Plaintiff, at addresses within Illinois;

d. Defendant collects Illinois sales tax on transactions with Illinois consumers, including Plaintiff's purchases;

e. Defendant has entered into continuous and systematic business relationships with Illinois consumers by accepting orders, processing payments, and fulfilling deliveries within Illinois;

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

f. Plaintiff's claims arise directly from Defendant's business activities directed at Illinois, including the charging of unlawful IEEPA tariffs on products purchased by Illinois residents and shipped to Illinois addresses; and

g. Upon information and belief, Defendant has substantial revenue derived from Illinois consumers and Illinois constitutes a significant market for Defendant's business operations.

20. Venue is proper in Cook County because Plaintiff resides in Cook County, and a substantial portion of the events giving rise to this action occurred in Cook County, including Plaintiff's purchases of tariffed goods from Defendant and Defendant's delivery of those goods to Plaintiff's address in Chicago, Cook County, Illinois.

## COMMON FACTS

### DEFENDANT'S BUSINESS MODEL AND SUPPLY CHAIN

21. Defendant advertises, markets, sells, and distributes consumer products throughout the United States through its website, mobile application, and other retail channels.

22. Defendant is owned by PDD Holdings Inc., an Irish company that also owns Pinduoduo, one of China's largest e-commerce platforms.

23. Defendant sources a substantial majority—if not all—of the products it sells from manufacturers and suppliers located in the People's Republic of China. Upon information and belief, Defendant or its affiliated entities serve as the importer of record for goods sold on the TEMU platform and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports.

24. Prior to May 2025, Defendant primarily operated under a "fully managed" model, in which products were shipped directly from manufacturers in China to U.S. consumers. Under this model, Defendant was responsible for importation, customs clearance, and payment of all applicable duties and tariffs.

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

25. In response to the elimination of the de minimis exemption for Chinese-origin goods effective May 2, 2025, Defendant shifted toward a hybrid model incorporating U.S.-based warehouses for certain products.

26. However, upon information and belief, the products Plaintiff purchased throughout the Class Period were imported from China either during or after the IEEPA tariff period and were subject to IEEPA tariffs when imported, regardless of whether they were shipped directly from China or from U.S. warehouses after importation.

**DEFENDANT'S PASS-THROUGH OF IEEPA TARIFFS TO CONSUMERS**

27. For purposes of this Complaint, the "Class Period" is defined as February 1, 2025 through February 24, 2026—the period during which IEEPA tariffs were in effect and enforced by CBP.

28. During the Class Period, Defendant collected unlawful IEEPA tariffs from Plaintiff by passing on its tariff obligations through two mechanisms: (a) embedding tariff costs in elevated product prices, and (b) adding explicit "import charges" to products sold and shipped from China.

29. Beginning in late April 2025, Defendant began adding explicit "import charges" to products shipped from China. These charges often exceeded 145% of the product cost, consistent with the IEEPA tariff rate imposed on Chinese imports. On its website, Defendant stated: "Due to recent changes in global trade rules and tariffs, our operating expenses have gone up. To keep offering the products you love without compromising on quality, we will be making price adjustments starting April 25, 2025."[1]

[1] Michelle Fonge, *Temu Adds "Import Charges" of About 145% After Trump Tariffs, More Than Doubling Price of Many Items*, CNBC (Apr. 28, 2025), https://www.cnbc.com/2025/04/28/temu-adds-import-charges-after-trump-tariffs.html.

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

30. Defendant further represented on its website that "import charges" "cover all customs-related processes and costs, including import fees paid to customs authorities on your behalf," and that "[t]he amount listed may not represent the actual amount paid to customs authorities."[2]

31. After May 2, 2025, when the de minimis exemption for Chinese-origin goods was eliminated, all goods imported from China, regardless of value, became subject to IEEPA tariffs.

32. Throughout the Class Period, Defendant passed the cost of IEEPA tariffs onto consumers, including Plaintiff and Members of the Class and Illinois Subclass, through elevated prices, express "import charges," and other mechanisms.

33. Even where Defendant did not separately itemize "import charges" on receipts, Defendant embedded tariff costs in the prices charged to consumers.

34. On multiple occasions during the Class Period, Plaintiff purchased consumer products from Defendant's website and mobile application. For those transactions, Defendant charged unlawful IEEPA Tariffs to Plaintiff by embedding those costs in the prices Plaintiff paid.

**PLAINTIFF'S TEMU TRANSACTIONS**

35. Within the Class Period, Ms. Russell purchased from TEMU various household items, and health and hygiene products imported from countries subject to IEEPA tariffs, at prices inflated by TEMU's pass-through of IEEPA tariff costs.

36. Upon information and belief, Defendant paid IEEPA tariffs on the goods Plaintiff purchased and embedded the cost of those tariffs in the prices charged to Plaintiff. But for TEMU's pass-through of IEEPA tariff costs, Plaintiff would have paid lower prices for the products she purchased.

---

[2] *Id.*

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

37. Defendant's retention of the unlawful IEEPA Tariffs charged to Plaintiff, the Class, and Subclass Members offends public policy as it is unconscionable and unfair for Plaintiff and similarly situated consumers to bear Defendant's tax burden under the IEEPA Tariffs when those Tariffs were unlawful and should not have been collected.

38. As a result of Defendant's practice of passing on Tariff costs to its customers, Plaintiff and the Class and Subclass were forced to pay Defendant's tax burdens because Defendant passed the unlawful IEEPA Tariffs on to them.

39. Plaintiff and the members of the Class and Subclass have unequal bargaining power to Defendant and are unable to negotiate the payment of the unlawful IEEPA Tariffs from Defendant, and therefore Plaintiff, the Class, and Subclass members could not avoid paying the unlawful IEEPA Tariffs.

40. Defendant, and not Plaintiff or the Members of the Class or Subclass, should have accepted and borne itself the tax burden of the unlawful IEEPA Tariffs, but, instead, Defendant charged Plaintiff and Members of the Class and Subclass for the cost of the unlawful IEEPA Tariffs.

41. Allowing Defendant to keep the proceeds of the unlawful IEEPA Tariff charges deprives Plaintiff and Members of the Class and Subclass of the money paid for the cost of the unlawful IEEPA Tariffs while providing nothing of value to Plaintiff or the Class's Members.

42. But for Defendant charging Plaintiff, and the Members of the Class and Subclass the cost of the unlawful IEEPA Tariffs, Plaintiff and the Members of the Class and Subclass would not have needed to pay the unlawful IEEPA Tariffs.

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

**DEFENDANT'S ANTICIPATED TARIFF REFUNDS AND RESULTING DOUBLE RECOVERY**

43. On March 4, 2026, the United States Court of International Trade issued a significant order in *Atmus Filtration, Inc. v. United States*, directing U.S. Customs and Border Protection to refund duties imposed under the IEEPA. *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026).

44. The Court of International Trade later reinforced that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Supreme Court's decision in *Learning Resources. Atmus Filtration*, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026).The Court ordered CBP to liquidate all unliquidated entries "without regard to IEEPA duties" and to reliquidate any liquidated entries for which liquidation is not final without regard to those duties. *Id.* at *2-3.

45. According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at ¶ 12.

46. Upon information and belief, Defendant is entitled to substantial refunds – potentially in the tens or hundreds of millions of dollars – for IEEPA tariffs it paid as the importer of record for goods sourced from China and other countries subject to IEEPA tariffs.

47. Upon information and belief, Defendant has not disclosed to Plaintiff or other consumers whether it has filed or intends to file refund claims with CBP or litigation in the Court of International Trade seeking recovery of IEEPA tariffs.

48. To date, Defendant has not established any mechanism to refund to consumers the tariff costs Defendant passed through to them via elevated prices and import charges during the Class Period.

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

49. This presents an obvious problem: Although Defendant will recover or is positioned to recover tariff refunds on the tariffed goods it sold, Defendant's customers have already borne the economic brunt of these tariffs by paying higher prices set by Defendant. The risk of Defendant obtaining double recovery is therefore imminent.

50. Defendant is poised to be paid twice for the same unlawful tariff burden: once by its customers (including Plaintiff) through elevated prices and import charges, and once by the U.S. government through tariff refunds.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings her claims individually and on behalf of the following Class and Subclass pursuant to 735 ILCS 5/2-801:

> **Class:** All persons in the United States who purchased products from Defendant during the period February 1, 2025 through February 24, 2026, and were charged prices that included IEEPA Tariff costs.
>
> **Illinois Subclass:** All persons within the State of Illinois who purchased products from Defendant during the period February 1, 2025 through February 24, 2026, and were charged prices that included IEEPA Tariff costs.

52. Excluded from the Class are: (1) Defendant; (2) Defendant's officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their family; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendant's counsel, and their experts and consultants.

53. **Numerosity**. The proposed class contains members so numerous that separate joinder of each member of the class is impracticable. Upon information and belief, there are hundreds of thousands, if not millions, of proposed class members. The individuals who purchased

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

items subject to IEEPA Tariffs can be ascertained through records in the possession, custody, or control of Defendant.

54. **Commonality and Predominance**. There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

- Whether Defendant paid IEEPA tariffs on products sold to consumers during the Class Period;
- Whether Defendant passed IEEPA tariff costs onto consumers through elevated prices and import charges;
- Whether Defendant's retention of the unlawful IEEPA Tariffs paid by Plaintiff, the Class, and Subclass Members is unjust, oppressive, unscrupulous, or unfair;
- Whether Defendant misled consumers regarding pricing and tariff pass-through;
- Whether Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act through its misrepresentations and omissions regarding pricing and tariff pass-through;
- Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;
- Whether Defendant has been or will be unjustly enriched by receiving government refunds for tariffs it passed through to consumers;
- Whether the Class and Subclass members are entitled to restitution, actual damages, and attorneys' fees and costs.

55. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff understands the obligations inherent in representing a putative class, and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex and class action litigation. Plaintiff has no interests antagonistic to the Class's interests, and Defendant has no defenses unique to Plaintiff.

56. **Appropriateness:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all members of the Class and Subclass is impracticable.

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

The damages suffered by the individual members of the Class and Subclass are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class and Subclass to obtain effective relief from Defendant's misconduct. Even if members of the Class and Subclass could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## CLAIMS FOR RELIEF

### COUNT I

**Violation of the Illinois Consumer Fraud Act 815 ILCS 505/1 *et seq*.**
**(on behalf of Plaintiff and the Illinois Subclass)**

57. Plaintiff incorporates the foregoing allegations in Paragraphs 1–56 as if fully stated herein.

58. Plaintiff, Members of the Illinois Subclass, and Defendant are "persons" within the meaning of 815 ILCS 505/1(c) and 510/1(5).

59. At all times mentioned herein, Defendant engaged in "trade" or "commerce" in Illinois as defined by 815 ILCS 505/1(f), by engaging in the offering and sale of things of value in Illinois.

60. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") provides that ". . . [u]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in . . . the 'Uniform Deceptive Trade Practices Act'… in the conduct of any trade or commerce are . . . unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

61. Plaintiff and Illinois Subclass Members purchased consumer goods marketed and sold by Defendant.

62. Defendant misrepresented to consumers, including Plaintiff and Members of the Illinois Subclass, that price increases and import charges beginning in April 2025 were necessary "to keep offering the products you love without compromising on quality" due to tariffs and trade rule changes, while omitting the material fact that Defendant was simultaneously positioned to seek full refunds of those same tariff costs from the U.S. government.[3]

63. Defendant further represented on its website that "import charges" "cover all customs-related processes and costs, including import fees paid to customs authorities on your behalf."

64. Defendant failed to disclose to consumers at the point of sale that it could seek government refunds for IEEPA tariffs while simultaneously charging consumers for those same tariff costs, thereby concealing the material fact that consumers were paying for tariffs that Defendant could later recover from the government.

65. These misrepresentations and omissions were material to Plaintiff's and Illinois Subclass Members' purchasing decisions. A reasonable consumer, including Plaintiff, would not

[3] Annie Palmer, *Temu Cuts U.S. Ad Spend, Drops in App Store Rank After Trump Tariffs*, CNBC (Apr. 16, 2025), https://www.cnbc.com/2025/04/16/temu-cuts-us-ad-spend-drops-in-app-store-rank-after-trump-tariffs-.html

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

have paid tariff-inflated prices knowing that Defendant intended to seek government refunds for those same tariff costs without compensating consumers.

66. Defendant's conduct is also independently unfair under the ICFA's unfairness provisions in that it offends public policy by permitting double recovery—Defendant collects tariff costs from consumers and then recovers the same costs from the government, resulting in a windfall at consumers' expense.

67. Defendant's conduct as alleged herein is immoral, oppressive, and unscrupulous because it shifts the economic burden of unlawful taxes onto consumers while Defendant retains the benefit of government refunds without establishing any consumer refund mechanism.

68. Furthermore, Defendant's conduct as alleged herein causes substantial injury to consumers, including Plaintiff and Subclass members, who are deprived of money paid for unlawful IEEPA Tariffs while receiving nothing of value in return, and who have no practical means of recovering those costs absent this litigation.

69. 815 ILCS 505/10a states: "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper… (c) [t]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party."

70. In taking the actions set forth above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2, by engaging in deceptive and unfair practices in connection with the sale of consumer products to Plaintiff and Illinois Subclass members.

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

71. As a proximate result of Defendant's violations of the ICFA, Plaintiff and the Illinois Subclass members suffered actual economic damages in an amount equal to the IEEPA tariff costs embedded in the prices they paid for products purchased from Defendant during the Class Period.

72. There is no benefit to consumers from Defendant's conduct. The only party who benefits is Defendant, who enjoys increased profits as a result of its conduct.

73. For the reasons discussed herein, Defendant has violated ICFA by engaging in the deceptive or unfair acts or practices prohibited by 815 ILCS 505/2 and 510/2.

74. Plaintiff and the Illinois Subclass Members are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under the law.

**COUNT II**
**Unjust Enrichment**
**(on behalf of Plaintiff and the Class and Illinois Subclass)**

75. Plaintiff incorporates the foregoing allegations in Paragraphs 1–74 as if fully stated herein.

76. Plaintiff and the members of the Class and Subclass conferred monetary benefits to Defendant by paying elevated prices for products that included unlawful IEEPA Tariff costs.

77. Defendant has been unjustly enriched by shifting its unlawful IEEPA Tariff burden onto Plaintiff and the Class and Subclass. Defendant collected tariff costs from consumers through elevated prices and import charges, and is now positioned to recover refunds of those same tariff costs from the U.S. government.

78. Defendant has knowledge and appreciation of this benefit. Defendant knew it was passing IEEPA tariff costs onto consumers through elevated prices and import charges, and

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

Defendant knew or should have known that it would be entitled to seek refunds of those same tariff costs from the government following the Supreme Court's invalidation of the IEEPA tariffs.

79. Defendant's retention of the money it received from Plaintiff and the Class and Subclass members is unjust and inequitable.

80. The IEEPA Tariffs were unlawful and unconstitutional, as determined by the Supreme Court.

81. There is no adequate remedy at law for Plaintiff and the Members of the Class and Subclass, as Defendant has established no mechanism to refund tariff costs to consumers, and consumers have no direct statutory cause of action to recover IEEPA tariffs from the government.

82. Under principles of equity and good conscience, it would be unjust to permit Defendant to retain both (a) the elevated prices consumers paid due to tariff pass-through pricing, and (b) government refunds of those same tariff costs.

83. Plaintiff and the other members of the Class and Subclass are entitled to restitution in the amount by which Defendant has been unjustly enriched to Plaintiff and the members of the Class's and Subclass's detriment, and an order requiring Defendant to disgorge any additional profits or other benefit it has retained as a result of its unjust and unlawful conduct.

**COUNT III**
**Money Had and Received**
**(on behalf of Plaintiff and the Class and Illinois Subclass)**

84. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1–83 above as if fully stated herein.

85. This Count is pleaded in the alternative to Count II. While Count II (Unjust Enrichment) addresses the inequity of Defendant's retention of consumer overcharges already collected, this Count more particularly addresses Defendant's anticipated receipt and retention of

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

government refund proceeds that, in equity, represent a return of money that was economically borne by Members of the Class and Subclass, not by Defendant.

86. Defendant received money from Plaintiff and from each Member of the proposed Class and Subclass in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

87. Defendant received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on imported goods.

88. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization. *Learning Resources*, Slip Op. at 20.

89. Defendant is now positioned to recover refunds of the IEEPA tariffs from the U.S. government through the liquidation process or litigation in the Court of International Trade. Upon information and belief, Defendant has not paid or distributed any portion of these anticipated refunds to Plaintiff or other consumers who bore the economic burden of the tariffs through elevated prices.

90. The money that Defendant will recover from the government as IEEPA tariff refunds represents, in equity, a return of money that belonged to Plaintiff and to each Member of the proposed Class and Subclass —the consumers who paid elevated prices due to Defendant's tariff pass-through.

91. Defendant has not returned this money to Plaintiff or the Class and Subclass.

92. In equity and good conscience, Defendant should not be permitted to retain the funds it is owed by the government as IEEPA tariff refunds. Those funds belong, in equity, to Plaintiff and the Class and Subclass, and Defendant is obligated to return them.

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lola Russell, on behalf of herself and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief as pled in the foregoing and judgment against Defendant as follows:

a. An Order certifying the Class and Subclass, defining the Class and Subclass as requested herein, appointing Plaintiff as Class representative, and appointing her counsel as Class counsel;

b. An award of any actual, compensatory, and enhanced damages permitted to Plaintiff and other Class and Subclass Members, for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c. An award of reasonable attorneys' fees, costs, and other litigation expenses;

d. An award of pre- and post-judgment interest as available under law;

e. The disgorgement of any funds in the amount Defendant was unjustly enriched by its conduct; and

f. Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: March 13, 2026

Respectfully submitted,

LOLA RUSSELL, on behalf of herself and others similarly situated

By: /s/ Joseph M. Dunklin

Myles McGuire
Joseph M. Dunklin
McGuire Law, P.C. (Firm ID: 56618)
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
jdunklin@mcgpc.com

FILED DATE: 3/13/2026 11:41 PM 2026CH02456

*Counsel for Plaintiff and the putative Class and Subclass*