# EXHIBIT 8

KIM

**United States District Court**
**Northern District of Illinois - CM/ECF NextGen 1.9 (rev. 1.9) (Chicago)**
**CIVIL DOCKET FOR CASE #: 1:26-cv-08832**

Mulconrey v. The J. M. Smucker Company
Assigned to: Honorable Martha M. Pacold
Demand: $75,000
Case in other court: Will County Circuit Court, 2026LA000512
Cause: 28:1332 Diversity-Fraud

Date Filed: 07/24/2026
Jury Demand: Defendant
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**Melanie Mulconrey** represented by

**Steven Gene Perry**
Law Offices of Todd M. Friedman. P.C.
555 Skokie Blvd.
Ste 500
Northbrook, IL 60062
224-218-0875
Email: steven.perry@toddflaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Todd M Friedman**
Law Offices of Todd M. Friedman
23586 Calabasas Rd.
Suite 105
Calabasas, CA 91302
323-306-4234
Email: tfriedman@toddflaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**The J. M. Smucker Company** represented by

**Ronald Y Rothstein**
Winston Taylor LLP
300 N. LaSalle Drive
Suite 4400
Chicago, IL 60654
312-558-7464
Email: ron.rothstein@winstontaylor.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Clifford M. Laney**
Winston Taylor LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700
Fax: Pro Hac Vice

Email: cliff.laney@winstontaylor.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tatianna Witter Robinson**
Winston Taylor LLP
2121 Norther Pearl Street
Dallas, TX 75201
(214) 453-6500
Fax: Pro Hac Vice
Email: tatianna.witter@winstontaylor.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/24/2026 | 1 | NOTICE of Removal from Will County Circuit Court, case number (2026LA000512) filed by The J. M. Smucker Company Filing fee $ 405, receipt number AILNDC-25431502. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit B-1, # 4 Exhibit C, # 5 Exhibit D) (Rothstein, Ronald) (Entered: 07/24/2026) |
| 07/24/2026 | 2 | CIVIL Cover Sheet (Rothstein, Ronald) (Entered: 07/24/2026) |
| 07/24/2026 | 3 | ATTORNEY Appearance for Defendant The J. M. Smucker Company by Ronald Y Rothstein (Rothstein, Ronald) (Entered: 07/24/2026) |
| 07/24/2026 | 4 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by The J. M. Smucker Company (Rothstein, Ronald) (Entered: 07/24/2026) |
| 07/24/2026 | | CASE ASSIGNED to the Honorable Charles P. Kocoras. Designated as Magistrate Judge the Honorable Young B. Kim. Case assignment: Random assignment. (Civil Category 1). (te, ) (Entered: 07/24/2026) |
| 07/24/2026 | 6 | MINUTE entry before the Executive Committee: Case reassigned to the Honorable Martha M. Pacold for all further proceedings pursuant to IOP 13(f)(1). Mailed notice. (Attachments: # 1 Request for Reassignment) (axk, ) (Entered: 07/27/2026) |
| 07/27/2026 | 5 | MAILED Notice of Removal letter to to counsel of record. (axk, ) (Entered: 07/27/2026) |
| 07/27/2026 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (axk, ) (Entered: 07/27/2026) |
| 07/27/2026 | 7 | ATTORNEY Appearance for Plaintiff Melanie Mulconrey by Steven Gene Perry (Perry, Steven) (Entered: 07/27/2026) |
| 07/27/2026 | 8 | ATTORNEY Appearance for Plaintiff Melanie Mulconrey by Todd M Friedman (Friedman, Todd) (Entered: 07/27/2026) |
| 07/28/2026 | 9 | MOTION by Defendant The J. M. Smucker Company for extension of time to file answer *or Otherwise Respond to Complaint and Enter Proposed Briefing Schedule (UNOPPOSED)* |

| | | |
|---|---|---|
| | | (Rothstein, Ronald) (Entered: 07/28/2026) |
| 07/28/2026 | 10 | MINUTE entry before the Honorable Martha M. Pacold: The court has received the defendant's Unopposed Motion to Extend Time to Answer or Otherwise Respond to Complaint and Enter Proposed Briefing Schedule, 9 . That motion is granted. Defendant shall answer or otherwise respond by 9/14/2026; plaintiff shall respond by 10/14/2026; and defendant shall reply by 11/4/2026. The parties shall file an initial joint status report by 11/12/2026. In that report, besides the topics in the attached outline, the parties should propose dates for argument on defendant's motion (should it be necessary) in April or May 2027 which the court may select from. Mailed notice. (Attachments: # 1 Outline for the initial joint status report) (lxk, ) (Entered: 07/28/2026) |
| 08/06/2026 | 11 | MOTION for Leave to Appear Pro Hac Vice on behalf of The J. M. Smucker Company by Clifford M. Laney; Filing fee $ 150, receipt number AILNDC-25492614.<br><br>(Laney, Clifford) (Entered: 08/06/2026) |
| 08/06/2026 | 12 | MOTION for Leave to Appear Pro Hac Vice on behalf of The J. M. Smucker Company by Tatianna Witter Robinson; Filing fee $ 150, receipt number AILNDC-25492864.<br><br>(Witter Robinson, Tatianna) (Entered: 08/06/2026) |
| 08/10/2026 | 13 | MINUTE entry before the Honorable Martha M. Pacold: Clifford M. Laney's and Tatianna Witter Robinson's motions for leave to appear pro hac vice on behalf of defendant, 11 , 12 , are granted. Mailed notice. (lxk, ) (Entered: 08/10/2026) |

---



| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/11/2026 13:29:13 | | | |
| **PACER Login:** | studavidson | **Client Code:** | 260043-00001 |
| **Description:** | Docket Report | **Search Criteria:** | 1:26-cv-08832 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MELANIE MULCONREY, individually and on behalf of all others similarly situated,<br>*Plaintiff*,<br>v.<br>THE J. M. SMUCKER COMPANY,<br>*Defendant*. | Case No. ______________________ |

**<u>DEFENDANT'S NOTICE OF REMOVAL</u>**

**PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. §§ 1332(a), 1332(d), 1441, 1446, and 1453, Defendant The J. M. Smucker Company ("Smucker" or "Defendant"), by its undersigned attorneys, hereby removes the above-captioned civil action, and all claims and causes of action therein, from the Circuit Court of the State of Illinois, Will County, to the United States District Court to the Eastern Division of the United States District Court for the Northern District of Illinois. Subject matter jurisdiction is proper over this putative class action under the Class Action Fairness Act ("CAFA"), codified in relevant part as 28 U.S.C. §§ 1332(d) and 1453, and under the traditional diversity jurisdiction statute, codified in relevant part as 28 U.S.C. § 1332(a).

Smucker states the following grounds for removal:

## I. BACKGROUND

1. On May 21, 2026, Plaintiff Melanie Mulconrey filed a Class Action Complaint in the Circuit Court of the State of Illinois, Will County, Law Division styled *Melanie Mulconrey, individually and on behalf of all others similarly situated v. The J. M. Smucker Company*, Case No. 2026LA000512 (the "State Court Action").

2. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons, Complaint, and other documents served on Smucker are attached as Exhibit A filed herewith. These documents constitute the only process, pleadings, or other orders served upon Smucker in this action. Plaintiff filed a motion for class certification pursuant to 735 ILCS 5/2-801, which is included among the State Court Action pleadings attached at Exhibit A.

3. Plaintiff alleges that she and a putative class of individual consumers are entitled to refunds of amounts paid in connection with the purchase of certain Smucker's coffee products,[1] including Café Bustelo, Dunkin', Folgers, Medaglia D'Oro, and Pilon, subject to executive tariffs issued between February 2025 and May 2025 pursuant to the International Emergency Economic Powers Act ("IEEPA tariffs"). *See* Ex. A, Compl. ¶¶ 2–8. Plaintiff alleges Defendant impermissibly offset the costs of the IEEPA tariffs by "directly or indirectly" passing the tax burden onto Plaintiff and the putative class. *Id.* ¶¶ 6–7, 17. Then, in February 2026, the United States Supreme Court overturned the IEEPA tariffs, concluding that the President lacked the authorization to impose them. *See Learning Resources Inc. et al. v. Trump, President of the United States, et al.*, No. 24-1287, Slip Op. 6 (2026); *see also* Compl. ¶ 8. As a result of this ruling, Plaintiff argues that Defendant is entitled to seek and receive a refund for any IEEPA tariffs it paid, and in turn, Plaintiff seeks a refund of IEEPA tariff amounts allegedly charged to her and the "thousands, if not more" putative class members. *Id.* ¶¶ 8–9, 17, 30.

4. Plaintiff asserts causes of action on behalf of putative nationwide and Illinois classes for Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (Count I) and Unjust Enrichment (Count II). *Id.* ¶¶ 1, 32–45.

---

[1] Although Plaintiff misspells Defendant's Dunkin'® and Medaglia D'Oro® brands in her Complaint, Defendant will refer to its products using the correct spelling. *See* Compl. ¶ 17.

5. Plaintiff seeks damages on behalf of herself and the putative class members in the amount of the additional purchase price allegedly charged by Smucker to consumers as a direct or indirect result of the IEEPA tariffs, as well as punitive damages, injunctive relief, costs, and attorneys' fees for these two causes of action. *Id.* ¶¶ 26–45.

6. This Court has subject matter jurisdiction over this civil action pursuant to CAFA because the CAFA diversity of citizenship requirement is fully met, the putative class includes at least 100 members, and the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), (5).

7. This Court also has an independent basis for subject matter jurisdiction by traditional diversity jurisdiction because there is complete diversity of citizenship and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

## II. VENUE IS PROPER

8. Removal is proper "to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The Will County Circuit Court, where Plaintiff's State Court Action is pending, is located within the United States District Court for the Northern District of Illinois, Eastern Division. *See* 28 U.S.C. § 93(a)(1); *Veritas Adm'rs, LLC v. Nowak*, 2022 WL 17986697, at *4 (N.D. Ill. Dec. 29, 2022).

## III. REMOVAL IS TIMELY

9. Defendant has filed this Notice of Removal within 30 days of being served the Summons and Complaint, which occurred on June 25, 2026. This removal is therefore timely under 28 U.S.C. § 1446(b).

## IV. REMOVAL IS PROPER

### A. CAFA Removal is Proper.

10. Subject matter jurisdiction is proper over this putative class action pursuant to CAFA. CAFA sets forth three requirements to invoke federal jurisdiction, each of which is satisfied: (1) a putative class action encompassing at least 100 members; (2) any member of the class is a citizen of a State different from any defendant; and (3) the amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d)(2), (5).

11. **The putative class includes at least 100 members.** *See* Compl. ¶ 30. This suit is a "class action" as defined by CAFA because it is brought under the class action provisions of the Illinois Code of Civil Procedure. *Id.* ¶ 29. This action satisfies CAFA's numerosity requirement because there are substantially more than 100 members of the proposed class, which includes "[a]ll persons within the United States who were charged IEEPA Tariffs by Defendants" in purchasing Smucker coffee products. *See id.* ¶¶ 17, 27. Plaintiff specifically alleges that "there are hundreds, if not thousands" or more of these putative class members. *Id.* ¶¶ 29a, 30.

12. **Minimal diversity exists between Plaintiff and Smucker.** *See id.* ¶¶ 13–14. There is no dispute that Plaintiff and Smucker are diverse. *Id.*; Ex. B, Mackey Decl. ¶¶ 6–8. Plaintiff is a natural person domiciled in and therefore a citizen of the State of Illinois for purposes of 28 U.S.C. § 1332. Plaintiff alleges she has resided in Joliet, Illinois at all relevant times and provides no indication she has left the state or intends to leave. Compl. ¶ 13. Defendant is a citizen of Ohio because it is incorporated and has its principal place of business there. *See id.* ¶ 14; Mackey Decl. ¶ 7; *see also* 28 U.S.C. § 1332(c)(1).

13. **This suit's amount in controversy exceeds $5,000,000.** *See Compl.* ¶¶ 3–6, 18–19, 26–30. To satisfy CAFA jurisdiction, the claims of individual putative class members are aggregated to determine whether the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2), (d)(6). The removing party need only

provide a "good faith estimate" of the amount in controversy that is "plausible and adequately supported by the evidence." *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 854 (7th Cir. 2022) (concluding the defendant "satisfied the amount-in-controversy requirement through at least two routes: the allegations in the complaint itself and an affidavit from a [defense] executive"); *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 579–80 (7th Cir. 2017) (setting forth a non-exhaustive list of ways a defendant can meet its controversy burden through "what a judgment would be worth to the plaintiff[] or what compliance with an injunction would cost the defendant."). As a result, defendants "rely to some extent on reasonable estimates, inferences, and deductions" for amount-in-controversy purposes. *Domingo v. Prudential Ins. Co. of Am.*, 2020 WL 6545059, at *6 (N.D. Ill. Nov. 6, 2020); *see also Schutte*, 28 F.4th at 854.

14. In evaluating the amount in controversy, the question is not whether actual damages are greater than the jurisdictional amount, but instead only whether "a fact-finder *might* conceivably lawfully award" damages in greater than that amount. *Roppo*, 869 F.3d at 583 (quoting *Hammond v. Stamps.com*, 844 F.3d 909, 912 (10th Cir. 2016) (emphasis in original)). The removing party's burden "is a pleading requirement, not a demand for proof," and once this burden is met, "the case belongs in federal court *unless it is legally impossible* for the plaintiff to recover that much." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 763–64 (7th Cir. 2011) (finding defendant provided "plausible, good-faith estimates demonstrating how the stakes exceed $5,000,000") (quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (emphasis added)).

15. Smucker denies Plaintiff's allegations, including that she (or any putative class member) has a valid cause of action or is entitled to any damages.[2] Nevertheless, the Complaint's

[2] *See Spivey*, 528 F.3d at 986 ("A removing defendant need not confess liability in order to show that the controversy exceeds the threshold") (internal quotation marks omitted); *see also G2 Equities v. RecoCement Prods., LLC*, 2015 WL 6501517 at *2 (N.D. Ill. Oct. 27, 2015) ("The amount in

allegations and the removal evidence attached in support, together demonstrate that the amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* Compl. ¶¶ 17–19, 25–30; Mackey Decl. ¶¶ 9–14; *Schutte*, 28 F.4th at 854.

16. Here, the putative class consists of all nationwide consumers of Folgers, Dunkin', Café Bustelo, Medaglia D'Oro, and Pilon coffee products sold as early as February 1, 2025 (when Executive Order No. 14193 was issued) through May 21, 2026 (the filing of this lawsuit). Compl. ¶¶ 2, 17, 27. Plaintiffs seek a partial refund of what they paid, so the magnitude of the total tariffs Smucker paid during the relevant tariff period is relevant to the amount in controversy.

17. Smucker purchased green coffee imports at a rate of approximately 500 million pounds per year from tariff-impacted countries during the relevant tariff period. Mackey Decl. ¶ 11; Ex 1, at 7, The J. M. Smucker Co., Fiscal Year 2025 Fourth Quarter Earnings Prepared Management Remarks ("2025 Earnings Remarks"). This green coffee is used in the coffee products sold as the Folgers, Dunkin', Café Bustelo, Medaglia D'Oro, and Pilon product lines, and comprises the largest imported component of these products. Mackey Decl. ¶ 11; Ex 1, at 10, 2025 Earnings Remarks. Smucker paid in excess of $5,000,000 in tariffs for the Folgers products allegedly purchased by Mulconrey and in excess of $5,000,000 in tariffs for the other coffee product lines at issue. Mackey Decl. ¶¶ 12–14; *see also Schutte*, 28 F.4th at 854.

18. Plaintiff's request for injunctive relief further supports satisfaction of the amount in controversy given the attendant costs of compliance. *See Aliano v. Ferriss*, 2011 WL 2148979, at *3 (N.D. Ill. June 1, 2011) (citing *Tropp v. WesternSouthern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004)) (noting in a CAFA remand case that "[t]he costs that a defendant must incur[ ] in complying

---

controversy is determined by the amount a plaintiff is seeking, not what he ultimately may recover") (citing *Grinnell Mut. Reinsurance Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012)).

with injunctive relief is a legitimate consideration in a jurisdictional inquiry'"). Plaintiff seeks injunctive relief enjoining Smucker from "charging Plaintiff unlawful tariffs" in violation of 815 ILCS 505/1. Compl., ¶ 1 & Prayer for Relief. Plaintiff further seeks an "order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class" of this alleged conduct. *Id.* Identifying and notifying thousands of individuals represents a significant financial exposure to Smucker in this litigation, which supports satisfaction of the amount in controversy. *See Loizon v. SMH Societe Suisse de Microelectronics, Et Horologerie SA*, 950 F. Supp. 250, 252–54 (N.D. Ill. 1996) (holding that, for removal purposes, the cost of injunctive relief could exceed the amount in controversy).

19. Plaintiff's demand for punitive damages also supports satisfaction of the amount in controversy. *See* Compl. ¶¶ 29.b.iv., 40; *see also Schutte*, 28 F.4th at 855–56; *Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 275 (7th Cir. 2011).

**B. Traditional Diversity Removal is Proper.**

20. An independent basis for removal of this case exists pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

21. **Complete Diversity of Citizenship Exists Between the Parties.** Plaintiff is a citizen of Illinois and Defendant is a citizen of Ohio. *See* paragraph 12, *supra*. As such, complete diversity exists. *See* 28 U.S.C. § 1332(a)(1).

22. **The Amount in Controversy Exceeds $75,000.** The amount in controversy of Plaintiff's claim, even without aggregating individual claims of putative class members, exceeds $75,000. *See* paragraphs 13–19, *supra*. First, actual damages awards in ICFA cases have exceeded $75,000. *See Clodfelter v. United Processing*, Inc., 2008 WL 4225557, at *5 (C.D. Ill. Sept. 12, 2008) (awarding plaintiff $100,000 in actual damages under ICFA and FDCPA). Moreover, courts in Illinois have affirmed punitive damages awards for ICFA violations that reflect multipliers of more

than five. *Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 275 (7th Cir. 2011) (collecting cases); *Roppo*, 869 F.3d at 582. Plaintiff's claims for damages thus plausibly exceed $75,000 on their own or, at the very least, exceed $75,000 when aggregated with Plaintiff's requests for attorneys' fees and injunctive relief.

23. In calculating the amount in controversy, courts should include legal fees if the plaintiff has a statutory, contractual, or other legal right to recover them. *Webb v. Fin. Indus. Regul. Auth., Inc.*, 889 F.3d 853, 857 (7th Cir. 2018); *see also ABM Sec. Servs., Inc. v. Davis*, 646 F.3d 475, 479 (7th Cir. 2011) ("[t]he district court correctly held that only attorneys' fees incurred up to the time of removal could be included in the amount in controversy"). Because ICFA authorizes recovery of attorneys' fees, this Court should consider Plaintiff's pre-suit attorneys' fees in its calculations. 815 ILCS 505/10a(c); *ABM Sec. Servs.*, 646 F.3d at 479. For Plaintiff's counsel in this matter specifically, these amounts have historically been over $20,000. *See, e.g.*, Ex. C, *In re HP Printer Firmware Update Litigation*, No. 5:15-cv-5820, ECF 121 at 21 (N.D. Cal. Feb. 7, 2019) ($30,000 to $50,000 requested for pre-filing attorneys' fees); Ex. D, Decl. of Todd. M. Friedman, ECF 23-1 at 27–40, *Winters v. Two Towns Ciderhouse, Inc.*, No. 3:20-cv-468 (S.D. Cal. Feb. 15, 2021) (approximately $20,000 in pre-filing attorneys' fees).

24. Lastly, as addressed in paragraphs 18–19 *supra*, Plaintiff's request for injunctive relief and punitive damages further support satisfaction of the amount in controversy. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006).

## V. CONSENT TO REMOVAL

25. Smucker is the only defendant named in Plaintiff's Complaint and is filing this Notice of Removal. The provisions of 28 U.S.C. § 1446(b)(2)(A) requiring the joinder or consent of all properly served defendants to this removal are therefore satisfied.

## VI. CONCLUSION

26. For the foregoing reasons, the State Court Action is within the original jurisdiction of this Court and is therefore removable pursuant to 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453.

27. No admission of fact, law, or liability is intended by this Notice of Removal, and all defenses, affirmative defenses, and motions are hereby preserved.

## NOTICE TO PLAINTIFF AND THE CIRCUIT COURT OF REMOVAL OF THE CIVIL ACTION

Defendant Smucker will promptly serve a copy of this Notice of Removal on counsel for Plaintiff and will file a copy of this Notice of Removal with the Clerk of the Circuit Court of Will County, Illinois, Law Division pursuant to § 1446(d).

WHEREFORE Defendant Smucker hereby gives notice that the matter styled as *Melanie Mulconrey, individually and on behalf of all others similarly situated v. The J. M. Smucker Company*, Case No. 2026LA000512, is removed from the Circuit Court of the State of Illinois in the County of Will to the United States District Court for the Northern District of Illinois.

Dated: July 24, 2026

Respectfully submitted,

*/s/Ronald Y. Rothstein*
Ronald Y. Rothstein
**WINSTON TAYLOR LLP**
300 N. LaSalle Dr.
Chicago, IL 60654
Tel.: (312) 558-7464
Fax: (312) 558-5700
ron.rothstein@winstontaylor.com

Clifford M. Laney *(pro hac vice forthcoming)*
**WINSTON TAYLOR LLP**
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-6700
Fax: (212) 294-4700
cliff.laney@winstontaylor.com

Tatianna Witter Robinson *(pro hac vice forthcoming)*
**WINSTON TAYLOR LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Tel.: (214) 453-6500
Fax: (214) 453-6400
tatianna.witter@winstontaylor.com

*Counsel for Defendant The J. M. Smucker Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2026, the foregoing Notice of Removal was electronically filed with the Clerk of the Court using the CM/ECF system and that copies of this Notice were sent by email to counsel for Plaintiff at the and email addresses below:

Todd M. Friedman
Adrian R. Bacon
Law Offices of Todd M. Friedman, P.C.
23586 Calabasas Rd., Suite 105
Calbasas, CA 91302
Phone: (323) 306-4234
tfriedman@toddflaw.com
abacon@toddflaw.com

Steven G. Perry
Law Offices of Todd M. Friedman, P.C.
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
Phone: (224) 218-0875
steven.perry@toddflaw.com

/s/*Ronald Y. Rothstein*
Ronald Y. Rothstein

# EXHIBIT A

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
06/25/2026
CT Log Number 552597206

## Service of Process Transmittal Summary

**TO:** Jeannette Knudsen, VP, Gen. Csl. & Corporate Secretary
The J.M. Smucker Company
1 Strawberry Ln
Orrville, OH 44667-1298

**RE:** **Process Served in Ohio**

**FOR:** The J.M. Smucker Company (Domestic State: OH)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:** MELANIE MULCONREY, individually and on behalf of all others similarly situated vs. THE J.M. SMUCKER COMPANY

**CASE #:** 2026LA000512

**PROCESS SERVED ON:** C T Corporation System, Columbus, OH

**DATE/METHOD OF SERVICE:** By Process Server on 06/25/2026 at 14:18

**JURISDICTION SERVED:** Ohio

**ACTION ITEMS:**

CT will retain the current log

Image SOP

Email Notification, Jeannette Knudsen jeannette.knudsen@jmsmucker.com

Email Notification, Kimberly Weese kimberly.weese@jmsmucker.com

Email Notification, Jackie Welch jackie.welch@jmsmucker.com

Email Notification, Roxanne Cool roxanne.cool@jmsmucker.com

Email Notification, Lolita Kumar lolita.kumar@jmsmucker.com

Email Notification, Nessa Forman nessa.forman@jmsmucker.com

**REGISTERED AGENT CONTACT:** C T Corporation System
4400 Easton Commons Way
Suite 125
Columbus, OH 43219
866-401-8252
LargeCorporationTeam@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

# PROCESS SERVER DELIVERY DETAILS

**Date:** Thu, Jun 25, 2026
**Server Name:** Drop Service

| | |
|---|---|
| Entity Served | THE J. M. SMUCKER COMPANY |
| Case Number | 2026LA000512 |
| Jurisdiction | OH |

| Inserts | | |
|---|---|---|
| | | |

# SUMMONS

IN THE STATE OF ILLINOIS, CIRCUIT COURT

☑ **Alias Summons**

*Check if this is not the 1st Summons issued for this Defendant/Respondent.*

**COUNTY:** Will

*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** MELANIE MULCONREY

*Who started the case.* — *First, Middle, and Last Name, or Business Name*

**DEFENDANTS/RESPONDENTS:** THE J.M. SMUCKER COMPANY

*Who the case was filed against.* — *First, Middle, and Last Name, or Business Name*

2026LA000512

**Case Number**

**The Defendant/Respondent named above has been sued. Read this form for information about how to respond to this lawsuit. Also see page 4 for next steps.**

**For the person filling out this form: Read all instructions in this box.**

This *Summons* can only be used for certain types of cases. See the *How To Serve a Summons* Instructions for more information: ilcourts.info/how-to-summons.

Check 1 if this is a 30-day summons or check 2 if this is a date certain summons. Fill in all the information in 1 or 2.

- Use a **date certain summons** if you are asking for money of $50,000 or less or recovery of your personal property that you think the Defendant has, and for some mandatory arbitration cases. In 2, fill in your court date and how to go to court. You may get the court date when you e-file or you may need to ask the Circuit Clerk's office.
- Use a **30-day summons** for most other case types.

Complete the rest of the form with the Defendant/Respondent's information and information about the lawsuit.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

## ☑ 1. 30-DAY SUMMONS

To participate in this case, you must **file** your *Appearance* and *Answer/Response* forms with the court within 30 days after you are served with this *Summons* (not counting the day of service) by e-filing or at:

Court Address: 100 W. Jefferson Street, Joliet, IL 60432

*Courthouse Street Address*

**- or -**

## ☐ 2. DATE CERTAIN SUMMONS

*Your court date is listed below. Information about getting a court date and how to attend is available from the Circuit Clerk. You can find their contact information at ilcourts.info/clerks.*

To respond to this *Summons*, you must **attend court** in one of the ways checked below on:

________________ at ____________ ☐ a.m. ☐ p.m. in ____________.

*Month, Day, Year* — *Time* — *Courtroom Number*

Case Number 2026LA000512

## Going to Court for a Date Certain Summons

Court dates may be in-person, remote, or a combination of in-person and remote.

☐ **In person at:** ______________________________
*Courtroom Address* *Courtroom Number*

☐ **Remotely** (video or telephone)

**By video conference at:** ______________________________
*Video Conference Website*

Log-in information: ______________________________
*Video Conference Log-in Information, Meeting ID, Password, etc.*

**By telephone at:** ______________________________
*Call-in Number for Telephone Remote Appearance*

To find out more about remote court options:

Phone: ____________________ or Website: ______________________________
*Circuit Clerk's Phone Number* *Website URL*

## 3. ADDITIONAL INFORMATION ABOUT THE LAWSUIT

a. I am asking for the following amount of money in my *Complaint/Petition*: $ see complaint.
*(Enter 0 if you are not asking for money)*

b. I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession) in my *Complaint/Petition*.

☐ Yes ☑ No

## 4. DEFENDANT/RESPONDENT'S INFORMATION

a. Number of Defendants/Respondents being served:

☑ I am having 1 Defendant/Respondent served and their information is on this form below.

☐ I am having more than 1 Defendant/Respondent served. The first is listed below. I have attached *Additional Defendant/Respondent Address and Service Information* forms for the following number of additional Defendants/Respondents: ____________.
*Number*

b. First Defendant/Respondent's **primary address/information** for service:

Name: THE J.M. SMUCKER COMPANY
*First, Middle, and Last Name, or Business Name*

Registered Agent's Name *(if you are serving the Registered Agent of a business)*:

c/o: CT Corporation System (Registered agent)
*First, Middle, and Last Name*

Street Address: 4400 Easton Commons Way, Suite 125
*Street, Apt #*

City, State, ZIP: Columbus, OH 43219
*City* *State* *Zip*

Telephone: ____________________ Email: ____________________

Case Number 2026LA000512

c. **Second address** for this Defendant/Respondent:
☑ I do **not** have another address where the Defendant/Respondent might be found.
☐ I have another address where this Defendant/Respondent might be found. It is:

Street Address: ______________________
*Street, Apt #*

City, State, ZIP: ______________________
*City* *State* *Zip*

Telephone: ______________________ Email: ______________________

d. Person who will serve your documents on this Defendant/Respondent:
☐ Sheriff in Illinois ☑ Special process server ☐ Licensed private detective

☐ Sheriff outside Illinois: ______________________
*County & State*

## PLAINTIFF/PETITIONER INFORMATION:

*Enter your information below.*

Name Melanie Mulconrey
*First, Middle and Last Name*

Registered Agent's name, if any c/o: Steven Perry, Law Offices of Todd M. Friedman
*First, Middle and Last Name*

Street Address 555 Skokie Blvd., Suite 500
*Street, Apt #*

City, State, ZIP: Northbrook, IL 60062
*City* *State* *Zip*

Telephone: (224) 218-0875 Email: steven.perry@toddflaw.com

Be sure to **check your email every day** so you do not miss important information, court dates, or documents from other parties.

**STOP** The Circuit Clerk and officer or process server will fill in this section.

**To be filled in by the Circuit Clerk:**

Witness this Date: 6/18/2026 4:04 PM

Clerk of the Court: Andrea Lynn Chasteen

**To be filled in by an officer or process server:**

Date of Service: ______________________

*Fill in the date above and give this copy of the Summons to the person served.*

**Note to officer or process server:**

- If **1** is checked, this is a 30-day *Summons* and must be served within 30 days of the witness date.
- If **2** is checked, this is a date certain *Summons* and must be served at least 21 days before the court date, unless 3b is checked yes.
  - If **2** is checked **and 3b** is checked yes, the *Summons* must be served at least 3 days before the court date.
- Fill in the date above and give this copy of the *Summons* to the person served.
- You must also complete the attached *Proof of Service* form and file it with the court or return it to the Plaintiff.

Case Number 2026LA000512

# WHAT'S NEXT

## NEXT STEPS FOR PERSON FILLING OUT THIS FORM:

When you file a lawsuit, you must notify the person or business you are suing of the court case by having the *Summons* and Complaint or Petition delivered to them. This is called "serving" them.

File your *Summons* and Complaint or Petition with the Circuit Clerk in the county where your court case should be filed. The Circuit Clerk will "issue" the *Summons* by putting a court seal on the form.

Have the sheriff or a private process server serve the *Summons* and a copy of the Complaint or Petition on the Defendant/Respondent. You cannot serve the *Summons* yourself.

Learn more about each step in the process and how to file in the instructions: ilcourts.info/how-to-summons.

## NEXT STEPS FOR PERSON RECEIVING THIS DOCUMENT:

**You have been sued:**

- Read all documents attached to this *Summons*.
- All documents referred to in this *Summons* can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.
- You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees (Civil)*.
- When you go to court, it is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

**If Section 1 on page 1 of this *Summons* is checked (30-day summons)**:

- You **must** file official documents called an *Appearance* and an *Answer/Response* with the court within 30 days of the date you were served with this *Summons*.
- If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.
- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efile. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.
- You should be notified of any future court dates.

**If Section 2 on page 1 of this *Summons* is checked (date certain summons):**

- You **must** attend court on the date listed in Section 2 of this *Summons*.
- If you do not attend that court date, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

**Need Help? ¿Necesita ayuda?**

- Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents.
- Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.
- You can also get free legal information and legal referrals at illinoislegalaid.org.
- If there are any words or terms that you do not understand, please **visit Illinois Legal Aid Online** at ilao.info/glossary. You may also find more information, resources, and the location of your local legal self-help center at: ilao.info/lshc-directory.

Case Number 2026LA000512

# PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION

IN THE STATE OF ILLINOIS, CIRCUIT COURT

☑ **Alias Summons**

*Check if this is not the 1st Summons issued for this Defendant/Respondent.*

**COUNTY:** Will
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** MELANIE MULCONREY
*Who started the case.* — *First, Middle, and Last Name, or Business Name*

2026LA000512
**Case Number**

**DEFENDANTS/RESPONDENTS:** THE J.M. SMUCKER COMPANY
*Who the case was filed against.*

______________________

______________________
*First, Middle, and Last Name, or Business Name*

STOP — Do not complete the rest of the form. **The sheriff or special process server will fill in the form.** Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent who will be served.

My name is ______________________ and I state:
*Officer/Process Server First, Middle, Last Name*

## SERVICE INFORMATION

Defendant/Respondent: ______________________
*First, Middle, Last Name, or Business Name*

☐ I was not able to serve the *Summons* and Complaint/Petition on the Defendant/Respondent named above.

**- or -**

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent named above as follows:

☐ **Personally** on the Defendant/Respondent:

☐ Male ☐ Female ☐ Non-Binary Approx. Age: ________ Race: ____________

On this date: ____________ at this time: ____________ ☐ a.m. ☐ p.m.

Address, Unit#: ______________________

City, State, ZIP: ______________________

☐ On **someone else at the Defendant/Respondent's home** who is at least 13 years old and is a family member or lives there:

Name of person served: ______________________
*First, Middle, Last Name*

☐ Male ☐ Female ☐ Non-Binary Approx. Age: ________ Race: ____________

On this date: ____________ at this time: ____________ ☐ a.m. ☐ p.m.

Address, Unit#: ______________________

City, State, ZIP: ______________________

and by sending a copy to this Defendant/Respondent in a postage-paid, sealed envelope to the above address on this date: ____________.

Case Number 2026LA000512

☐ On the **Business's agent:** ______________________________
*First, Middle, Last Name*

☐ Male ☐ Female ☐ Non-Binary Approx. Age: __________ Race: ______________

On this date: ________________ at this time: ________________ ☐ a.m. ☐ p.m.

Address, Unit#: ____________________________________________

City, State, ZIP: ____________________________________________

## SERVICE ATTEMPTS

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

**First Attempt:** On this date: ________________ at this time: ______________ ☐ a.m. ☐ p.m.

Address, Unit#: ____________________________________________

City, State, ZIP: ____________________________________________

Other information about service attempt:

____________________________________________

____________________________________________

____________________________________________

**Second Attempt:** On this date: ________________ at this time: ______________ ☐ a.m. ☐ p.m.

Address, Unit#: ____________________________________________

City, State, ZIP: ____________________________________________

Other information about service attempt:

____________________________________________

____________________________________________

____________________________________________

**Third Attempt:** On this date: ________________ at this time: ______________ ☐ a.m. ☐ p.m.

Address, Unit#: ____________________________________________

City, State, ZIP: ____________________________________________

Other information about service attempt:

____________________________________________

____________________________________________

____________________________________________

## SIGN

I certify under 735 ILCS 5/1-109 that:

1) everything in this document is true and correct, or I have been informed or I believe it to be true and correct, and
2) I understand that making a false statement on this form is perjury and has penalties provided by law.

Your Signature /s/ ______________________ Print Your Name ______________________

You are: ☐ Sheriff in Illinois ☐ Special process server

☐ Sheriff outside Illinois: ______________ ☐ Licensed private detective, license number: ______________

*County and State* *License number*

**FEES:**

Service and Return: $__________ Miles: $__________ Total: $______________

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
Electronically Filed
2026LA000512
Filed Date: 5/21/2026 8:33 PM
Envelope: 38212046
Clerk: HH

**IN THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS**
**LAW DIVISION**

| | |
|---|---|
| MELANIE MULCONREY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>Defendant. | Case No. 2026LA000512<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMANDED** |

Now comes the Plaintiff, MELANIE MULCONREY ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, and for her Class Action Complaint against the Defendant, THE J.M. SMUCKER COMPANY ("Defendant"), Plaintiff alleges and states as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages and any other available legal or equitable remedies, for violations of Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., and unjust enrichment, resulting from the illegal actions of Defendant, in charging Plaintiff unlawful tariffs. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

2. Beginning on February 1, 2025, and continuing through May 2025, President Donald J. Trump issued a series of executive orders declaring a litany of unprecedented purported national emergency related to drug trafficking, trade deficits, and Venezuelan oil thereby imposing tariff duties on imports from many important United States world trade partners including, but not

RM: 902

**Initial case management set for** 9/8/26 **at:** 9:00 **a.m.**

limited to, Canada, Mexico, India, Germany, and China under the International Emergency Economics Powers Act (IEEPA), 90 Fed. Reg. 9113. See Exec. Order No. 14193 (Feb. 1, 2025); Exec. Order No. 14194 (Feb. 1, 2025); Exec. Order No. 14195 (Feb. 1, 2025); Exec. Order 14257 (Apr. 2, 2025); Exec. Order No. 14245 (Mar. 24, 2025) (Collectively, the Tariff Executive Orders).

3. The sweeping Tariff Executive Orders imposed an array of frequently changing duties ranging from 10% to 84% based on erratic country specific tariff policy dictated through rapidly published Executive Orders. See Exec. Order 14257, 90 Fed. Reg. 15,041 (Apr. 1, 2025); Executive Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025); Exec. Order No. 14,259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

4. After May 2, 2025, duty-free exemptions for good originating from China and Hong Kong were eliminated, so that unlawful IEEPA Tariffs were imposed on all goods originating from China or Hong Kong. Exec. Order No. 14256 (Apr. 2, 2025) (eliminating duty-free de minimis treatment under 19 U.S.C. § 1321(a)(2)(C) for products originating in the People's Republic of China and Hong Kong, effective May 2, 2025).

5. When goods are imported into the United States the United States Customs and Border Protection assesses and collects tariffs on those goods based on the Harmonized Tariff Schedule of the United States. Pub. L. No. 100–418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through a process known as "Liquidation". *See* 19 U.S.C. § 1504(b).

6. Defendant paid IEEPA tariffs when it imported the products Plaintiff and similarly situated consumers purchased. To off set the cost of paying IEEPA tariffs Defendant passed the tax burden onto Plaintiff and similarly situated consumers by directly or indirectly charging them the cost of the unlawful IEEPA tariffs.

7. In June, 2025, Defendant announced that it increased its prices to offset the IEEPA tariffs.[1] In November, 2025, Defendant announced that it would not further increase prices based on the IEEPA tariffs, and would instead absorb some of those costs, thereby establishing that the price of its coffee products had already been increased because of IEEPA tariffs it passed on to Plaintiff and other consumers.[2]

8. On February 2026, the United States Supreme Court held that the IEEPA and other statutes cited in the Tariff Executive orders do not authorize the President to impose tariffs because Article I of the constitution vests taxing power with Congress not the President, and Congress did not provide a clear intent or direction in IEEPA authorizing their imposition. *Learning Resources Inc. et al. v. Trump, President of the United States, et al.,* No. 24-1287, Slip Op. 6, (2026).

9. As a result, any IEEPA tariffs charged to Defendant were unlawful and unconstitutional, and Defendant is entitled to seek a refund for any tariffs it paid pursuant to the Tariff Executive Orders through either litigation or the Liquidation process. See *Id.*

10. However, Defendant passed its unlawful IEEPA tariff burdens onto Plaintiff, the Class, and Subclass Members by directly or indirectly charging Plaintiff and the Classes Members the cost of the unlawful IEEPA tariffs. Plaintiff, the Class, and Sub-Class Members were thereby deprived of money paid to Defendant for unlawful IEEPA tariffs.

11. If Defendant receives a refund for the IEEPA tariffs Defendant will have been provided a windfall as a result of already having charged consumers for the collection of unlawful

[1] The J. M. Smucker Co., Fiscal Year 2025 Fourth Quarter Earnings: Prepared Management Remarks (June 10, 2025), https://s203.q4cdn.com/703080298/files/doc_financials/2025/q4/The-J-M-Smucker-Co-FY25-Q4-Earnings-Prepared-Remarks.pdf.

[2] Kristina Peterson, Smucker Nixes Increase to Coffee Prices on Tariff Relief, Bloomberg (Nov. 25, 2025, 12:32 PM), https://www.bloomberg.com/news/articles/2025-11-25/smucker-lowers-top-of-guidance-skips-coffee-price-increase

IEEPA tariffs. Defendant's retention of money obtained from charging consumers for IEEPA tariffs offends public policy, is oppressive and causes substantial injury to consumers by depriving those consumers like Plaintiff, the Class, and Sub-Class Members of the cost of the unlawful IEEPA Tariffs.

12. Even if Defendant does not receive a refund it is still unfair, oppressive, unscrupulous, and causes substantial injury to consumers to charge consumers the cost of unconstitutional, unlawful IEEPA tariffs that provide no benefit to Plaintiff or other consumers in any way.

## PARTIES

13. Plaintiff is an individual who was at all relevant times residing in Joliet, Illinois.

14. Defendant is a Ohio corporation, whose principal place of business is located in Orrville, Ohio.

15. At all times relevant hereto, Defendant was engaged in the marketing, manufacturing, and sale of consumer products.

## FACTS COMMON TO ALL COUNTS

16. Defendant manufactures, advertises, markets, sells, and distributes consumer products throughout the United States.

17. During the Class Period Defendant collected unlawful IEEPA tariffs (the "IEEPA Tariffs") from Plaintiff by passing on its tariff obligations related to all of its coffee products, including Café Bustelo, Dukin, Folgers, Medaglia Doro, and Pilon, pursuant to Exec. Order No. 14193 (Feb. 1, 2025), Exec. Order No. 14194 (Feb. 1, 2025), Exec. Order No. 14195 (Feb. 1, 2025), Exec. Order 14257 (Apr. 2, 2025), Exec. Order No. 14245 (Mar. 24, 2025).

18. On multiple occasions after the unlawful IEEPA Tariffs were imposed, Plaintiff purchased Defendant's Folgers products. For those transactions, Defendant charged unlawful IEEPA Tariffs to Plaintiff.

19. For example, on November 29, 2025, Plaintiff purchased a Folgers product for $18.99 from a Costco in Plainfield, Illinois.

20. Defendant's retention of the unlawful IEEPA Tariffs charged to Plaintiff, the Class, and Sub-Class Members offends public policy as it is unconscionable and unfair for Plaintiff and similarly situated consumers to bare Defendant's tax burden under the IEEPA Tariffs when those tariffs were unlawful and should not have been collected.

21. As a result of Defendant's illegal conduct, Plaintiff and the Class were forced to pay Defendant's tax burdens because Defendant passed the unlawful IEEPA Tariffs on to Plaintiff.

22. Plaintiff and the Class have unequal bargaining power to Defendant, and are unable to negotiate the payment of the unlawful IEEPA Tariffs from Defendant, and therefore Plaintiff, the Class, and Sub-Class members could not have avoided paying the unlawful IEEPA Tariffs.

23. Defendant, and not Plaintiff, the Class, or Sub-Class should have accepted and borne the tax burden of the unlawful IEEPA Tariffs, but, instead Defendant charged Plaintiff, the Class, and Sub-Class members for the cost of the unlawful IEEPA Tariffs.

24. Allowing Defendant to keep the proceeds of the unlawful IEEPA Tariff charges deprives Plaintiff, the Class, and Sub-Class Members of the money paid for the cost of the unlawful IEEPA Tariffs while providing nothing of value to Plaintiff or the Class Members.

25. But for Defendant charging Plaintiff, the Class, and Class Members the cost of the unlawful IEEPA Tariffs, Plaintiff and the Classes' Members would not have needed to pay the unlawful IEEPA Tariffs.

26. As a result of Defendant's acts outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

a. Lost money in the amount Defendant charged Plaintiff for the Tariffs.

b. Wasting Plaintiff's time; and

c. Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in economic freedom and stability.

**CLASS ALLEGATIONS**

27. Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who were charged IEEPA Tariffs by Defendant within three years prior to the filing of the original Complaint through the date of class certification.

28. Plaintiff also brings this action on behalf of herself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows

> All persons within the State of Illinois who were charged IEEPA Tariffs by Defendant within three years prior to the filing of the original Complaint through the date of class certification.

29. The Class and the Sub-Class satisfy all of the requirements of the Illinois Code of Civil Procedure for maintaining a class action, specifically:

a. Upon information and belief, the Class and the Sub-Class are so numerous that joinder of all members is impracticable. On information and belief there are hundreds, if not thousands of individuals in the United States and the State of Illinois who purchased the products within the applicable statute of limitations period.

b. There are questions of fact and/or law which are common to the Class and the Sub-Class, and which predominate over questions affecting any individual Class or Sub-Class members. These common questions of fact and law include, but are not limited to:

i. Whether Defendant's retention of the unlawful IEEPA Tariffs paid by Plaintiff, the Class, and Sub-Class Members is unjust, oppressive, unscrupulous, or unfair.

ii. Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

iii. Whether there should be a tolling of the statute of limitations; and

iv. Whether the Class and Sub-Class members are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

c. Plaintiff's claims are typical of the Class and the Sub-Class, which all arise from the same operative set of facts and are based on the same legal theories

d. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and the Sub-Class.

e. Plaintiff will fairly and adequately protect the interests of the Class and the Sub-Class and Plaintiff has retained experienced and competent attorneys to represent the Class and the Sub-Class.

f. This class action is a fair and efficient adjudication of the controversy alleged herein. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

g. This class action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. This class action will also permit the adjudication of relatively small claims by many Class and Sub-Class members who would not otherwise be able to afford to seek legal redress for the wrongs complained of herein. Absent a class action, Class and Sub-Class members will continue to suffer losses of legally protected rights, as well as monetary damages. If Defendants' conduct is allowed proceed to without remedy, Defendants will continue to benefit financially from such conduct.

h. Defendants have acted on grounds generally applicable to the entire Class and Sub-Class, thereby making it appropriate for the Court to order final monetary, injunctive, and declaratory relief with respect to the Class and the Sub-Class as a whole.

30. Defendant, its employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

31. The size and definition of the Class and Sub-Class can be identified by Defendant's own records.

///

///

///

**COUNT I**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.***

32. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 31 above as if fully reiterated herein.

33. Plaintiff is a "person" as defined in 815 ILCS 505/1(c), as she is a natural person.

34. Defendant is a "person" as defined in 815 ILCS 505/1(c), as it is a company and a business entity and/or association.

35. 815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

36. As a result of Defendant's conduct Plaintiff, the Class, and Sub-Class Members were charged unlawful IEEPA Tariffs. Defendant's retention of the unlawful IEEPA Tariff proceeds is unfair and oppressive because it deprives Plaintiff, the Class, and Sub-Class Members of the cost of those Tariffs while providing nothing of value in return.

37. 815 ILCS 505/10a states:

> (a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring. an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...
>
> (c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

38. In taking the actions set forth above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2, by charging Plaintiff, the Class, and Sub-Class Members unlawful IEEPA Tariffs thereby shifting Defendant's Tariff tax burdens onto Plaintiff and similarly situated consumers.

39. Defendant failed to comply with the requirements of the ILCFA, including, but not limited to, 815 ILCS 505/2 as to the Class and Sub-Class members with respect to the above-alleged transactions

40. By reason thereof, Plaintiff is entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, enjoining Defendant from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs, and attorneys' fees.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a. An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

b. An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c. An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, and unconscionable conduct herein;

d. Judgment against Defendant in an amount to be determined at trial;

e. An order for injunctive relief prohibiting such conduct by Defendant in the future;

f. Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

g. Any other relief deemed just and proper by this Court.

**COUNT II**
**UNJUST ENRICHMENT**

41. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 31 above as if fully reiterated herein.

42. Plaintiff conferred monetary benefits to Defendant by paying the unlawful IEEPA Tariffs Defendant charged to Plaintiff.

43. Defendant has been unjustly enriched by shifting its unlawful IEEPA Tariff burden onto Plaintiff, the Class, and Sub-Class members. The IEEPA Tariffs were unlawful, and as a result Defendant has imposed the cost of those unlawful IEEPA Tariffs upon Plaintiff.

44. Defendant's retention of the money it received from Plaintiff, and the Class and Sub-Class members, is unjust and inequitable because Defendant passed on an unlawful tax burden to Plaintiff, and the Class and Sub-Class members, and thereby depriving them of the cost of those unlawful IEEPA Tariffs.

45. Defendant's unjust retention of the benefits conferred on it by Plaintiff, and the Class and Sub-Class members, entitles Plaintiff, and the Class and Sub-Class members, to restitution of the money they paid to Defendant for the Products.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a. An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

b. An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c. An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d. Judgment against Defendant in an amount to be determined at trial;

e. Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

f. Any other relief deemed just and proper by this Court.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevail on any of her claims in this action.

RESPECFULLY SUBMITTED,

MELANIE MULCONREY

Todd M. Friedman
Attorney for Plaintiff
Illinois Attorney No. 6276496
Law Offices of Todd M. Friedman, P.C.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: (323) 306-4234
tfriedman@toddflaw.com

Steven G. Perry
Attorney for Plaintiff
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
Phone: (224) 218-0875
Steven.perry@toddflaw.com

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
Electronically Filed
2026LA000512
Filed Date: 5/21/2026 8:33 PM
Envelope: 38212046
Clerk: HH

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT**
**WILL COUNTY, ILLINOIS**

MELANIE MULCONREY,

**Plaintiff**

**vs**

THE J.M. SMUCKER COMPANY,

**Defendant**

**CASE NO:** 2026LA000512

# JURY DEMAND

☒ Plaintiff
☐ Defendant

in the above entitled cause demands a jury as to the following:

- ☐ Small Claims Six (6) Person Jury Demand
- ☐ Small Claims Twelve (12) Person Jury Demand
- ☐ Probate Jury Demand
- ☐ All Other Civil Matters:
  - ☐ Six (6) Person Jury Demand
  - ☒ Twelve (12) Person Jury Demand
- ☐ Ordinance Violation Jury Demand

______________________________
(Signature)

Attorney or Party, if not represented by Attorney
Name Steven G. Perry
ARDC # 6330283
Firm Name Law Offices of Todd M. Friedman, P.C.
Attorney for Plaintiff Melanie Mulconrey
Address 555 Skokie Blvd., Suite 500
City & Zip Code Northbrook, IL 60062
Telephone 224-218-0875

**ANDREA LYNN CHASTEEN, CLERK OF THE CIRCUIT COURT OF WILL COUNTY**

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
Electronically Filed
2026LA000512
Filed Date: 5/21/2026 8:33 PM
Envelope: 38212046
Clerk: HH

# APPEARANCE (CIVIL)

IN THE STATE OF ILLINOIS, CIRCUIT COURT

*This is my official notice that I am participating in this case.*

**COUNTY:** Will
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** MELANIE MULCONREY
*Who started the case.* — *First, Middle, and Last Name, or Business Name*

**DEFENDANTS/RESPONDENTS:** THE J.M. SMUCKER COMPANY
*Who the case was filed against.* — *First, Middle, and Last Name, or Business Name*

2026LA000512
**Case Number**

If you want to request a trial with a judge and a jury (jury trial), you will also need to **fill out and file a separate *Jury Request* form**, available at ilcourts.info/jury-request. You do not have a right to a jury trial in every case. If you want a trial with a judge only (bench trial), do **not** file the separate *Jury Request* form.

The **deadline** for filing a *Jury Request* is different depending on the type of case and your situation. If you are the Plaintiff or Petitioner, usually you must file a *Jury Request* at the same time that you file the case. If you are the Defendant or Respondent, usually you must file a *Jury Request* at the same time you file your *Appearance*.

## 1. NAME & INFORMATION

*If you do not have a lawyer, enter your information below to tell the court how to address you.*
***If you are a lawyer** entering an appearance for a client, enter your client's information below.*

**Name:** Melanie (*First*) ______ (*Middle*) Mulconrey (*Last Name*)

**Pronouns** *(Optional)*:
☐ He/Him ☐ She/Her ☐ They/Them ☐ Other: ______

**Prefix** *(Optional)*:
☐ Mr. ☐ Ms. ☐ Mrs. ☐ Mx. ☐ Other: ______

## 2. APPEARANCE

*Check only one box.*

☐ **I do not have a lawyer** and I am entering my own appearance in this case. With this *Appearance* form, I am telling the court that I am participating in this case.

**- OR -**

☑ **I am a lawyer** entering my appearance for the client listed in section 1:

Law Offices of Todd M. Friedman, P.C.
*Attorney or Firm Name*

Case Number ____________________

## SIGN

Under Illinois Supreme Court Rule 137, my signature means that:

1) I read the document, 2) I have been informed and believe it is true and correct, and 3) I am not filing it to cause delay or for another bad reason.

If you are filling out this form online, sign your name by typing it. If you are filling out this form by hand, sign and print your name.

Signature /s/ Steven G. Perry     Print Name Steven G. Perry

☐ **I am completing this form for myself**

Phone Number ____________________ Email (if you have one) ____________________

Your Address ____________________
*Street, Apt. # City State Zip Code*

Be sure to **check your email every day** so you do not miss important information, court dates, or documents from other parties.

☑ **I am a lawyer completing this form on behalf of a client** (Client name): ____________________

Lawyer Name Steven G. Perry     Attorney Number 6330283

Lawyer Phone Number (224) 218-0875     Law Firm Law Offices of Todd M. Friedman, P.C.

Lawyer Email steven.perry@toddflaw.com

Address 555 Skokie Blvd., Suite 500, Northbrook, IL 60062
*Street, Apt. # City State Zip Code*

## PROOF (EXPLANATION) OF DELIVERY

*This tells the judge how and when you will send your documents* ***to the other people in the case*** *under Rule 11. If a person in the case has a lawyer,* ***you must send your documents to their lawyer.*** *File this form with the Circuit Clerk, but do not list the Clerk below as a person you are sending your documents to.*

**A. I am sending this *Proof of Delivery* and the following court documents:**

Appearance
*Name of Documents*

**To:** THE J.M. SMUCKER COMPANY
*Full Name or Law Firm Name*

**B. I am sending the documents:**

☐ By **email** to this email address: ____________________

☐ Through an approved **e-filing website (EFSP)** to this email address: ____________________

STOP You **must** send documents electronically (by email or through an EFSP) if you and the person you are sending documents to have an email address. If you or the person you are sending to do not have an email address, or if you have permission from the judge, you may send documents using the options below.

☑ I am sending the documents to this address:

208 S. LaSalle Street, Chicago, IL 60604
*Street, Apt. # City State Zip Code*

By *(check all that apply)*:

☑ Personal hand delivery.

*You can only deliver to the person, person's family member over 13 at person's residence, person's lawyer, or the lawyer's office.*

☐ Mail or third-party carrier (FedEx, UPS, etc.) to the address listed above, with postage or delivery prepaid.

Location of mailbox or third-party carrier: ____________________
*Address or Intersection City State*

Case Number ______________________

☐ Mail from a prison or jail: ______________________________________________
*Name and Address of Prison or Jail*

**C. The documents will be sent on:** Date: 05/21/2026 Time: ____________
*Month, Day, Year* *Include AM or PM*

☐ I am sending the document to more than 1 person and have completed an additional *Proof of Delivery* form.

## SIGN

Under 735 ILCS 5/1-109, my signature means that:

1) Everything in this document is true and correct, or I have been informed or I believe it to be true and correct, and

2) I understand that making a false statement on this form is perjury and has penalties provided by law.

If you are filling out this form online, sign your name by typing it. If you are filling out this form by hand, sign and print your name.

Signature /s/ Steven G. Perry Print Name Steven G. Perry

☐ **I am completing this form for myself**

Phone Number ____________ Email (if you have one) ____________

Address ______________________________________________
*Street, Apt. #* *City* *State* *Zip Code*

Be sure to **check your email every day** so you do not miss important information, court dates, or documents from other parties.

☑ **I am a lawyer completing this form on behalf of a client** (Client name): ____________

Lawyer Name Steven G. Perry Attorney Number 6330283

Lawyer Phone Number (224) 218-0875 Law Firm Law Offices of Todd M. Friedman, P.C.

Lawyer Email steven.perry@toddflaw.com

Address 555 Skokie Blvd., Suite 500, Northbrook, IL 60062
*Street, Apt. #* *City* *State* *Zip Code*

# WHAT'S NEXT

## NEXT STEP FOR PERSON FILLING OUT THIS FORM:

After you fill out your forms, file them with the Circuit Clerk's office in the county where your case is taking place. Then, send your forms to the other people in the case. Find your Circuit Clerk: ilcourts.info/clerks.

Learn more about each step in the process and how to file in our Instructions: ilcourts.info/how-to-appearance.

## NEXT STEP FOR PERSON RECEIVING THIS DOCUMENT:

For more information about going to court, including how to fill out and file forms, call or text **Illinois Court Help** at 833-411-1121 or go to ilcourthelp.gov.

If there are any words or terms that you do not understand, please **visit Illinois Legal Aid Online** at ilao.info/glossary. You may also find more information, resources, and the location of your local legal self-help center at: ilao.info/lshc-directory.

Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
Electronically Filed
2026LA000512
Filed Date: 6/1/2026 8:44 PM
Envelope: 38352044
Clerk: GA

**IN THE CIRCUIT COURT OF WILL COUNTY, ILLINOIS**
**LAW DIVISION**

| | | |
|---|---|---|
| MELANIE MULCONREY, individually and on behalf of all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 2026LA000512 |
| | ) | |
| v. | ) | |
| | ) | |
| THE J.M. SMUCKER COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Now comes the Plaintiff, MELANIE MULCONREY, by and through her attorneys, and brings this Motion for Class Certification against Defendant, THE J.M. SMUCKER COMPANY individually and on behalf of a class and sub-class of all others similarly situated. In support thereof, Plaintiff alleges and states as follows:

1. As alleged in Plaintiff's Complaint, Defendant charged Plaintiff for unlawful Tariffs as part of three transactions that occurred after President Donald J. Trump issued a series of executive orders declaring a litany of unprecedented purported national emergency related to drug trafficking, trade deficits, and Venezuelan oil thereby imposing tariff duties on imports from many important United States world trade partners including, but not limited to, Canada, Mexico, India, Germany, and China under the International Emergency Economics Powers Act (IEEPA), 90 Fed. Reg. 9113. See Exec. Order No. 14193 (Feb. 1, 2025); Exec. Order No. 14194 (Feb. 1, 2025); Exec. Order No. 14195 (Feb. 1, 2025); Exec. Order 14257 (Apr. 2, 2025); Exec. Order No. 14245 (Mar. 24, 2025).

2. Defendant passed its unlawful IEEPA tariff burdens onto Plaintiff, the Class, and Subclass Members by directly or indirectly charging Plaintiff and the Classes Members the cost

of the unlawful IEEPA tariffs. Plaintiff, the Class, and Sub-Class Members were thereby deprived of money paid to Defendant for unlawful IEEPA Tariffs

3. As a result, charging consumers for the collection of unlawful IEEPA tariffs offends public policy, is oppressive and causes substantial injury to consumers by depriving those consumers like Plaintiff, the Class, and Sub-Class Members of the cost of the unlawful IEEPA Tariffs

4. As a result of Defendant's acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries, harm, and damages, which include, but are not limited to, the following:

a. Lost money paid to Defendant for the cost of unlawful IEEPA Tariffs;

b. Wasting Plaintiff's time; and

c. Stress, aggravation, frustration, inconvenience, loss of trust, loss of serenity, and loss of confidence in economic stability and fairness.

5. Plaintiff brings claims, pursuant to 735 ILCS 5/2-801, *et seq.*, individually and on behalf of the following class (the "Class"): All persons within the United States who purchased the Products within three years prior to the filing of the Complaint through the date of class certification.

6. Plaintiff also brings claims, pursuant to 735 ILCS 5/2-801, *et seq.*, individually and on behalf of the following sub-class (hereinafter the "Sub-Class"): All persons within the State of Illinois who purchased the Products within three years prior to the filing of the Complaint through the date of class certification.

7. Illinois Rule of Civil Procedure section 5/2-801 states that an action may be maintained as a class action in any court of this state if the court finds that:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801.

8. The Class and the Sub-Class satisfy all of the requirements of the Illinois Code of Civil Procedure for maintaining a class action, specifically:

a. Upon information and belief, the Class and the Sub-Class are so numerous that joinder of all members is impracticable. On information and belief there are hundreds, if not thousands of individuals in the United States and the State of Illinois who purchased the products within the applicable statute of limitations period.

b. There are questions of fact and/or law which are common to the Class and the Sub-Class, and which predominate over questions affecting any individual Class or Sub-Class members. These common questions of fact and law include, but are not limited to:

i. Whether Defendant's retention of the unlawful IEEPA Tariffs paid by Plaintiff, the Class, and Sub-Class Members is unjust, oppressive, unscrupulous, or unfair;

ii. Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

iii. Whether there should be a tolling of the statute of limitations; and

iv. Whether the Class and Sub-Class members are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

c. Plaintiff's claims are typical of the Class and the Sub-Class, which all arise from the same operative set of facts and are based on the same legal theories

d. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and the Sub-Class.

e. Plaintiff will fairly and adequately protect the interests of the Class and the Sub-Class and Plaintiff has retained experienced and competent attorneys to represent the Class and the Sub-Class.

f. This class action is a fair and efficient adjudication of the controversy alleged herein. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

g. This class action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. This class action will also permit the adjudication of relatively small claims by many Class and Sub-Class members who would not otherwise be able to afford to seek legal redress for the wrongs complained of herein. Absent a class action, Class and Sub-Class members will continue to suffer losses of legally protected rights, as well as monetary

damages. If Defendant's conduct is allowed proceed to without remedy, Defendant will continue to benefit financially from such conduct.

h. Defendant has acted on grounds generally applicable to the entire Class and Sub-Class, thereby making it appropriate for the Court to order final monetary, injunctive, and declaratory relief with respect to the Class and the Sub-Class as a whole.

5. Plaintiff believes that upon completion of discovery in this matter, Plaintiff will be able to prove each of the allegations to the satisfaction of this Court. Therefore, Plaintiff requests the Court defer any ruling on this motion until after discovery has closed and Plaintiff has filed an amended or supplemental motion for class certification.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter an order certifying the proposed class and sub-class, but defer any ruling on this Motion until after discovery has been completed and Plaintiff has filed an amended or supplemental motion for class certification.

RESPECTFULLY SUBMITTED,

MELANIE MULCONREY



Steven G. Perry
Attorney for Plaintiff
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
Phone: (224) 218-0875
Steven.perry@toddflaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 1, 2026, a copy of Plaintiff's Motion for Class Certification was served upon the following party, by depositing the same in the U.S. Mail, with proper first-class postage prepaid thereon:

THE J.M. SMUCKER COMPANY
c/o C T Corporation System (registered agent)
208 S. LaSalle Street, Suite 814
Chicago, IL 60604-1101

Steven G. Perry
Attorney for Plaintiff

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MELANIE MULCONREY, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>THE J. M. SMUCKER COMPANY,<br><br>*Defendant*. | Case No. ____________________ |

**DECLARATION OF BLAKE MACKEY IN SUPPORT OF DEFENDANT THE J. M. SMUCKER COMPANY'S NOTICE OF REMOVAL**

I, Blake Mackey, declare and state as follows:

1. I am Senior Director, Coffee Finance, for The J. M. Smucker Company ("Defendant" or "Smucker"). I make this declaration based on my personal knowledge, my review of records maintained by Smucker in the ordinary course of business, and my employment with Smucker since 2008. If called upon as a witness, I could and would competently testify to the matters set forth herein.

2. I have been Senior Director, Coffee Finance, since December 2021. In my role, I am responsible for, among other things, financial planning and analysis, pricing and profitability evaluations, and related financial oversight of the Company's coffee business.

3. This declaration is made in support of Smucker's Notice of Removal, filed concurrently herewith.

4. Smucker's outside counsel has provided me with a copy of a Complaint filed in the Circuit Court of the State of Illinois, Will County, Law Division (Case No. 2026LA000512) by Melanie Mulconrey ("Plaintiff"), individually and on behalf of a nationwide class and an Illinois

sub-class of similarly situated persons, against Smucker. The Complaint asserts putative class claims against Smucker for alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (Count I), and unjust enrichment (Count II), arising out of Plaintiff's purchase of certain of Smucker's coffee products.

5. The Complaint defines the putative class as "All persons within the United States who were charged IEEPA Tariffs by Defendant" within the applicable time period, and defines an Illinois sub-class as "All persons within the State of Illinois who were charged IEEPA Tariffs by Defendant" within the same time period (collectively, the "Putative Class").

6. Based on my review of the Complaint, Plaintiff is alleged to be an individual residing in Joliet, Illinois, and is therefore alleged to be a citizen of the State of Illinois.

7. Smucker is, and at all times relevant to this action, has been a corporation organized and existing under the laws of the State of Ohio. Smucker's principal place of business, including its corporate headquarters and the location where its officers direct, control, and coordinate the Company's activities, is located at 1 Strawberry Lane, Orrville, Ohio. Accordingly, for purposes of diversity jurisdiction under 28 U.S.C. § 1332(c)(1), Smucker is a citizen of the State of Ohio and is not a citizen of the State of Illinois.

8. Because Plaintiff, a putative class member, is alleged to be a citizen of the State of Illinois, and Smucker is a citizen of the State of Ohio, at least one member of the putative class is a citizen of a state different from Smucker, the sole defendant. The minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is therefore satisfied.

9. I reviewed sales of Folgers, Dunkin', Café Bustelo, Medaglia D'Oro, and Pilon coffee products to consumers nationwide and in Illinois from February 1, 2025, to May 21, 2026, the relevant tariff period as defined by Plaintiff's Complaint. Based on my review of Smucker's

business records, the coffee products at issue in the Complaint were sold to consumers throughout the United States, including in Illinois, through retail and wholesale channels.

10. I have reviewed purchasing data for the five Smucker brands at issue and specifically the inputs that were sourced from other countries and were subject to tariffs during the relevant tariff period.

11. Consistent with Smucker's Fiscal Year 2025 Fourth Quarter Earnings Prepared Management Remarks, attached hereto as Exhibit 1, Smucker purchased green coffee at a rate of approximately 500 million pounds per year from tariff-impacted countries during the relevant tariff period. Ex. 1 at 7. The green coffee purchased from tariff-impacted countries is used in the Folgers, Dunkin', Café Bustelo, Medaglia D'Oro, and Pilon product lines and represents the largest imported component of those products.

12. Based on my review, I have determined that Smucker paid in excess of $5,000,000 in tariffs during the relevant tariff period.

13. I can also confirm that Smucker paid in excess of $5,000,000 in tariffs for the Folgers products allegedly purchased by Mulconrey during the relevant tariff period.

14. Assuming solely for purposes of establishing the amount in controversy under CAFA that Plaintiff could establish liability as to the full Putative Class and recover the relief sought in the Complaint, the aggregate amount in controversy in this action, exclusive of interest and costs, exceeds $5,000,000. Smucker does not concede that Plaintiff or the Putative Class is entitled to any relief, and reserves all rights and defenses with respect to liability and damages.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 21st day of July, 2026, in Orrville, Ohio.

/s/ Signed by: Blake Mackey 0EFCF71E7D6F400...

Blake Mackey

# EXHIBIT B

# EXHIBIT 1

THE J.M. SMUCKER Co

# Fiscal Year 2025 Fourth Quarter Earnings Prepared Management Remarks

**June 10, 2025**

## CORPORATE PARTICIPANTS

Crystal Beiting, Vice President, Investor Relations & FP&A
Mark Smucker, Chief Executive Officer and Chair of the Board
Tucker Marshall, Chief Financial Officer

## CRYSTAL BEITING, VICE PRESIDENT, INVESTOR RELATIONS & FP&A

Good morning, this is Crystal Beiting, Vice President, Investor Relations and Financial Planning and Analysis for The J. M. Smucker Company. Thank you for listening to our prepared remarks on our fiscal 2025 fourth quarter earnings. After this brief introduction, Mark Smucker, Chief Executive Officer and Chair of the Board, will provide a business and strategy update. Tucker Marshall, Chief Financial Officer, will then provide a detailed analysis of the financial results and our fiscal 2026 outlook. Later this morning, we will hold a separate, live question-and-answer webcast.

During today's discussion, we will make forward-looking statements that reflect our current expectations about future plans and performance. These statements rely on assumptions and estimates, and actual results may differ materially due to risks and uncertainties. Additionally, please note we will refer to non-GAAP financial measures management uses to evaluate performance internally. I encourage you to read the full disclosure concerning forward-looking statements and details on our non-GAAP measures in this morning's press release.

Today's press release, a supplementary slide deck, management's prepared remarks, and the Q&A webcast can all be accessed on our Investor Relations website at jmsmucker.com.

We invite all interested parties to join us at 9:00 am Eastern Time today for a live question-and-answer session with management to further discuss our fourth quarter results and next year's outlook for fiscal year 2026.

I will now turn the discussion over to Mark Smucker.

## MARK SMUCKER, CHIEF EXECUTIVE OFFICER AND CHAIR OF THE BOARD

Thank you, Crystal, and good morning, everyone.

I will begin today's call with a summary of our full-year performance and then provide highlights on our fourth quarter results. I will also share the strategic priorities that will enable us to achieve our fiscal 2026 guidance in what continues to be a dynamic operating environment, while positioning the Company for future growth through investments to support our key platforms and strengthen our brands. Tucker will then provide additional details on our fourth quarter results and outlook for next fiscal year.

Fiscal year 2025 was a year of significant progress as we delivered positive results in a challenging environment. Our performance reflects top-line growth supported by strong consumer demand for our portfolio of leading brands, and bottom-line growth driven by disciplined cost management and execution. We demonstrated agility throughout the organization by successfully managing what we could control, and we navigated with excellence those factors beyond our control – as a result the business remained resilient amidst macroeconomic pressures.

Our results in fiscal year 2025 reflect the success of our focused strategy and portfolio optimization, which has fundamentally transformed the Company, of note;

- We reignited innovation that is resonating with our consumers, with over $100 million in net sales coming from new products in their first year of launch, resulting in one of our most successful years of innovation in recent history. We launched *Jif*® Peanut Butter and Chocolate Flavored Spread, new varieties of *Uncrustables*® sandwiches, *Café Bustelo*® multi-serve coffee, and *Milk-Bone*® Peanut Buttery Bites, just to name a few, all of which are exceeding expectations;
- Our investments in brand building continued to be effective and drove consumer demand, with brands growing or maintaining dollar share accounting for 74% of our measured retail dollar sales in the fourth quarter as we ended the fiscal year;
- Our Transformation Office delivered cost and productivity benefits, including synergies from the Hostess Brands acquisition of approximately $75 million, which exceeded our original expectations;
- And, we continued to prioritize resources to our largest growth opportunities in our key platforms; the *Uncrustables*®, *Café Bustelo*®, *Meow Mix*®, *Milk-Bone*®, and *Hostess*® brands. I'll dive deeper into each of these.

Starting with the *Uncrustables*® brand, which continued its strong momentum throughout the year, including realizing its 11th consecutive fiscal year of double-digit growth in total Company net sales. In fiscal year 2025, we grew the brand by over $125 million to approximately $920 million in net sales. This tremendous growth was driven by our national advertising campaign, distribution gains, and new merchandising investments to drive trial and awareness. We also accelerated our innovation efforts with new sandwich varieties and have begun launching a regular cadence of limited-edition flavors starting this summer with a new Peanut Butter and Mixed Berry Spread variety, which is now in stores. These actions continue to increase household penetration and fuel our ambition to have *Uncrustables*® sandwiches everywhere.

The #1 SKU in the total frozen category is an *Uncrustables*® sandwich, with two SKUs in the top ten. The *Uncrustables*® brand is leading the entire frozen category in new buyers for households with kids, Millennials, and Gen Z. We are expanding into convenience stores and continue to secure commitments to drive growth in this important channel. And, to support the growth in demand, we opened our third and largest *Uncrustables*® sandwich manufacturing facility in McCalla, Alabama, which continues to increase production, thereby driving margin expansion through more efficient cost absorption. With this incredible momentum, we are well on our way for the *Uncrustables*® brand to generate over $1 billion in net sales by the end of fiscal year 2026.

Our second key growth platform, the *Café Bustelo*® brand, continued its momentum as one of the fastest-growing brands in the at-home coffee category. The brand gained dollar and volume share in every segment it competes in, including the mainstream, one cup, and instant categories over the past year. The *Café Bustelo*® brand grew net sales by 19% in our U.S. Retail Coffee portfolio, ending fiscal year 2025 with net sales of approximately $400 million. We remain focused on expanding the *Café Bustelo*® brand nationally and broadening its consumer audience through marketing and innovation and have launched new roast profiles in both pre-pack and one cup formats. These new products have received strong retailer acceptance that exceeded our initial expectations and will help drive another year of anticipated double-digit net sales growth for the brand.

For the *Milk-Bone*® and *Meow Mix*® brands, we continued to drive the humanization trend in the pet category and have created opportunities for our brands to deliver meaningful innovation through our leading volume share positions in dog snacks and dry cat food. In dog snacks, we launched the first dog treat featuring a human food brand, *Milk-Bone*® Peanut Buttery Bites made with *Jif*® peanut butter, which outpaced all competitor innovations launched in 2024. The launch continues to exceed our expectations and contributed to the strong double-digit net sales growth for our *Milk-Bone*® soft and chewy dog snacks this past fiscal year. Turning to the *Meow Mix*® brand, we continued to fuel growth through modernized packaging, elevated mainstream options, and margin accretive innovation. All of which drove share growth and household penetration in the dry cat food category this past year. Our most recent innovation, *Meow Mix*® *Gravy Bursts*®, is off to a strong start and highlights our ability to bring unique innovation to the category. And for the overall segment, we were able to expand our U.S. Retail Pet Foods margins by over 500 basis points, demonstrating the results of our portfolio optimization strategy and the benefits of our Transformation Office.

Finally, we are taking decisive actions to improve the results of our Sweet Baked Snacks segment, which has not met our expectations. The business was impacted by two primary factors which ultimately led to underperformance in the segment. First, consumers continue to be selective in their spending, largely driven by inflationary pressures and diminished discretionary income, causing the sweet baked goods category to recover slower than we anticipated. These trends are causing a reduction in all channels, inclusive of convenience, where traffic and spend has been broadly challenged. Second, we did not perform with excellence from a distribution, merchandising, and competitive standpoint. We are addressing these challenges and are committed to returning the *Hostess*® brand to growth.

With that said, the environment and our assumptions have evolved since we acquired the Hostess business. Taking into consideration these changes, and with a new leader of our Sweet Baked Snacks segment in place providing a current perspective of the business, we are updating our expectations and now anticipate 3% long-term net sales growth for the segment. We are also refining our strategy and taking a more focused approach for this business. By narrowing our priorities to three key drivers, we will accelerate the stabilization and eventual growth of the *Hostess*® brand through strengthening the portfolio, elevating our execution, and reigniting sustainable growth for the Sweet Baked Snacks segment.

First, we are strengthening our portfolio to stabilize the *Hostess*® brand's performance and deliver margin expansion. This includes optimizing our assortment, executing portfolio simplification tied to fixed cost reductions, and improving competitiveness through key price points. Actions we are taking include:

- Improving core velocities through brand building, media investment, and breakthrough activations. We are currently launching a portfolio redesign across all consumer touchpoints and optimizing our assortment of product offerings through SKU and display rationalization.
- In addition to improving core velocities, we are taking steps to rebuild the margin profile of the Sweet Baked Snacks segment through a streamlined bakery footprint and performance enhancement. This includes the recent announcement of the planned closure of our Indianapolis manufacturing facility and through embracing a transformation mindset regarding cost and productivity savings. Further, we are evolving our promotion and trade optimization strategy to meet the needs of today's consumer.

Our second strategic driver for the Sweet Baked Snacks segment is to elevate our execution by improving our supply chain efficiency, streamlining commercial processes, and redeploying resources. To start we are creating a dedicated Sweet Baked Snacks sales organization to enable greater focus and are reorganizing marketing resources to improve accountability and prioritization within the segment.

Our third driver is to refocus our strategy to reignite sustainable growth. *Hostess*® remains an iconic brand, with strong awareness, category-leading household penetration, and beloved products with the #1 brand of packaged donuts in the category in *Donettes*®, the #1 cupcake in the category, and a leading snack cakes brand in *Twinkies*®. We are focusing on the unique areas of strength for the brand by evolving our demand creation strategy to meet the expectations of today's sweet snacking consumer and shifting our innovation strategy to ensure we are strengthening the iconic parts of the portfolio.

We will continue to apply our proven brand building model to the *Hostess*® brand and through these actions we are confident we can build back momentum and profitability for the Sweet Baked Snacks segment, while positioning it for sustainable long-term growth.

Altogether, our key platforms, including the *Hostess*® brand, represent our largest growth opportunities. We anticipate these brands will deliver over 80% of the Company's growth over the next five years.

Now turning to our fourth quarter results. Total Company comparable net sales decreased 1% and, when excluding contract manufacturing sales related to the divested pet food brands, comparable net sales was flat versus the prior year.

In Coffee, net sales increased 11%. Our portfolio is performing well as we navigate record-high green coffee costs and continue to demonstrate the ability to recover increased commodity costs through responsible pricing. Due to higher green coffee costs and the pass-through nature of the coffee category, we took a price increase last June across parts of our portfolio. In October, we successfully took a second price increase across our entire portfolio, as we saw continued inflation in green coffee. Since then, price elasticity of demand trends have been favorable to our initial expectations, including in the fourth quarter. As we start fiscal year 2026, there is a need to take further pricing actions to recover increasing costs from ongoing green coffee inflation. As such, we took a price increase in May, which is now on-shelf, and are planning another price increase for August. Through the combination of these two pricing actions, we will recover our anticipated costs for the fiscal year and have contemplated a historical price elasticity of demand impact to volume in our guidance.

Overall, at-home coffee remains a strong and resilient category that provides value to consumers in all economic environments, and at-home coffee continues to represent approximately 70% of all coffee drinking occasions. Our portfolio provides an affordable price per serving as an alternative to other beverage experiences such as the coffee shop, among others. We continue to anticipate the commodity will normalize over time as it has historically. As always, we will manage our coffee business through a strategy that demonstrates a balance between recovering inflationary input costs, while providing consumers with attractive options ranging from value to premium.

In Frozen Handheld and Spreads, net sales was flat versus the prior year, primarily driven by growth for *Uncrustables*® sandwiches, partially offset by decreases for *Smucker's*® fruit spreads and *Jif*® peanut butter. Measured retail dollar sales outpaced net sales in the quarter for *Uncrustables*® sandwiches, as we lapped strong distribution gains in the prior year. Last week, we took a list price increase on *Uncrustables*® sandwiches to recover increased costs. This is our first price increase for the brand in over three years.

In Pet Foods, net sales decreased 13% versus the prior year, reflecting unexpected retailer inventory headwinds and a reduction in contract manufacturing sales related to the divested pet food brands. Measured retail dollar sales for our dog snacks portfolio in the latest 13-week period declined 7% and *Meow Mix*® cat food dollar sales increased 3%.

Overall, the dog snacks category continues to be impacted by a slowdown in discretionary spending largely driven by inflationary pressures. Our portfolio remains well-positioned as we continue to focus on driving growth for the *Milk-Bone*® brand, with its strong leadership position in the category. In cat food, we continue to see tailwinds as the cat population is projected to grow, and we anticipate further share growth for the *Meow Mix*® brand. Dog snacks and cat food are attractive categories, and e-commerce trends will remain a tailwind for our portfolio.

In Sweet Baked Snacks, comparable net sales decreased 14%. The decrease in net sales was greater than anticipated, primarily driven by elevated trade recognition in the quarter. Dollar sales for the *Hostess*® brand in the latest 13-week period declined 7%, and we saw a stabilization in our overall share trends.

Finally, in International and Away From Home, comparable net sales grew 4%. Growth was driven by the Away From Home business, as it continues to deliver strong results by leveraging our leading national brands and key growth platforms in Away From Home channels.

As we exit the fiscal year, I would like to highlight a few key points:

- Our legacy business, which accounts for approximately 85% of our total Company net sales, delivered strong growth;
- While near-term performance has not met our expectations for the Sweet Baked Snacks segment, we are taking decisive actions to stabilize and refocus the segment;
- And, we remain confident in our ability to deliver long-term sustainable growth and our ambition to generate over $1 billion in free cash flow annually.

With this in mind, we are amplifying what is working and evolving our strategy where needed. Our strategic priorities for fiscal year 2026 are as follows.

First, accelerate organic growth by investing in our key platforms while also enabling the delivery of brands that meaningfully support total Company profitability. This includes working to stabilize and refocus the Sweet Baked Snacks segment for sustainable growth and margin expansion. And, in each of our businesses, we are focusing on being where the consumer is shopping and growing share with our strategic customers.

Second, embed transformation in our everyday mindset through a continued focus on safety, quality, reliability, and cost; integrating savings to drive investment in our brands; and aspiring to generate over $1 billion in free cash flow annually while executing on our capital deployment strategy.

And third, we will remain true to our Basic Beliefs by fostering a 'Be Bold' mindset, accelerating our pace of change to grow our competitive edge while enabling greater speed and agility across the organization. This includes continuing to evolve our brands and embed them into today's culture, while ensuring we meet the needs of the consumer.

As we execute these priorities and position the Company for long-term growth, we acknowledge that we continue to operate in a dynamic environment including evolving macroeconomic factors, record-high green coffee costs, implications from tariffs, regulatory and policy changes, and consumers that continue to seek value.

Given these factors, we are being cautious in our fiscal year 2026 guidance and are providing a wider range. Net sales are expected to increase 2% to 4%. Comparable net sales are expected to increase 4.5% at the mid-point of the guidance range. The increase in net sales will be supported by growth in each of our U.S. Retail segments, when excluding reduced contract manufacturing sales related to the divested pet food brands, and in International and Away From Home. This reflects higher net price realization for the total Company and ongoing brand momentum for our key growth platforms, including anticipated volume/mix growth for the *Uncrustables®*, *Café Bustelo®*, *Meow Mix®*, and *Milk-Bone®* brands. We anticipate total Company volume/mix to decline, largely driven by our price elasticity of demand assumptions for coffee and a decline in our Sweet Baked Snacks segment.

Adjusted earnings per share is expected to be in the range of $8.50 to $9.50. This reflects the impact from our coffee price elasticity of demand assumptions, increased marketing investments for our key growth platforms, headwinds in the Sweet Baked Snacks segment, and tariffs, partially offset by the positive tailwinds benefiting the business.

Embedded in our guidance range are our assumptions related to the impact from tariffs in the current environment. As a domestic food producer, we are relatively less exposed to tariffs compared to other industries. That said, the current U.S. tariff impact on green coffee is our largest exposure that we will manage on top of navigating record-high costs for the commodity. Green coffee is an unavailable natural resource that cannot be grown in the continental U.S. due to its reliance on a tropical climate. We currently purchase approximately 500 million pounds of green coffee annually, with the majority coming from Brazil and Vietnam, the two largest coffee producing countries. Outside of coffee, the vast majority of our U.S. production is sourced domestically, however, there is some sourcing of finished goods and ingredients that are subject to tariffs, as things stand today. This has been factored into our outlook and we are working to mitigate these cost increases through a combination of alternative sourcing strategies, supply chain optimization, and responsible pricing.

In closing, while we expect the external environment will continue to be dynamic, we remain confident in our strategy. We operate in attractive categories with leading brands and offerings ranging from value to premium. And as we look ahead, we remain focused on investing in our key growth platforms and executing on our strategic priorities, which will enable us to deliver long-term growth and increase shareholder value.

Before I close, I would like to extend my appreciation to all of our employees for their unwavering focus, dedication, and outstanding contributions.

With that, I'll turn it over to Tucker for additional insight on our financials and fiscal 2026 outlook.

**TUCKER MARSHALL, CHIEF FINANCIAL OFFICER**

Thank you, Mark. Good morning, everyone.

I will begin by providing detail on the noncash impairment charges reflected in our fourth quarter GAAP results. We recognized a $867 million impairment charge related to the goodwill of the Sweet Baked Snacks reporting unit and a $113 million impairment charge related to the *Hostess®* brand indefinite-lived trademark. These impairment charges are driven by the continued underperformance of the Sweet Baked Snacks segment and updated assumptions following the re-evaluation of the strategic priorities of this business to three drivers: strengthening the portfolio, elevating our execution, and reigniting sustainable growth.

Due to the continued underperformance of the sweet baked goods category relative to when Hostess Brands was acquired, we now anticipate 3% net sales growth over the long-term. Through our revised strategy, we will stabilize the *Hostess®* brand's performance and deliver net sales and segment profit growth for the business.

Now, I'll provide an overview of our fourth quarter results, then give additional details on our financial outlook for fiscal year 2026.

In the quarter, net sales declined 3%. Comparable net sales decreased 1%, excluding the impact of divestitures and foreign currency exchange. Net sales was flat versus the prior year, when also excluding contract manufacturing sales related to the divested pet food brands.

The decrease in comparable net sales reflects a 3 percentage point decrease in volume/mix, driven by decreases for dog snacks, sweet baked goods, lower contract manufacturing sales related to the divested pet food brands, and fruit spreads, partially offset by an increase for *Uncrustables®* sandwiches.

Higher net price realization increased net sales by 3%, driven by higher net pricing for coffee, partially offset by lower net pricing for sweet baked goods and dog snacks.

Net sales in the quarter were impacted by retailer inventory headwinds in U.S. Retail Pet Foods in addition to elevated trade recognition in the quarter for Sweet Baked Snacks. Outside of these two elements, total Company net sales overall came in-line with expectations for the quarter.

Adjusted gross profit decreased $84 million, or 9%, compared to the prior year. The decrease reflects higher costs, unfavorable volume/mix, and the noncomparable impact of divestitures, partially offset by higher net price realization.

Adjusted operating income decreased $39 million, or 8%, reflecting the decreased gross profit, partially offset by favorable SD&A expenses. The favorability in SD&A was driven by decreased administrative expenses, lower marketing spend, and reduced pre-production expenses primarily related to the new *Uncrustables®* sandwiches manufacturing facility.

Below operating income, net interest expense decreased $3 million, driven by reduced debt outstanding. The adjusted effective income tax rate was 23.9%, compared to 23.2% in the prior year.

Factoring in all these considerations, along with weighted average shares outstanding of 106.7 million, fourth quarter adjusted earnings per share was $2.31, a decrease of 13% versus the prior year.

Turning to our segment results, in the U.S. Retail Coffee segment, net sales increased 11% versus the prior year. Net price realization increased net sales by 10 percentage points, driven by higher net pricing for the *Folgers®* and *Café Bustelo®* brands. Volume/mix was neutral to net sales, reflecting an increase for the *Café Bustelo®* brand, mostly offset by a decrease for the *Folgers®* brand.

U.S. Retail Coffee segment profit was neutral versus the prior year, as higher net price realization and lower marketing expenses were largely offset by higher commodity costs.

In U.S. Retail Frozen Handheld and Spreads, net sales was neutral versus the prior year. Lower net price realization decreased net sales by 1 percentage point, primarily reflecting lower net price realization for *Jif*® peanut butter and *Uncrustables*® sandwiches, partially offset by a list price increase for *Smucker's*® toppings and syrups. Volume/mix increased net sales by 1 percentage point, driven by an increase for *Uncrustables*® sandwiches, which was partially offset by a decrease for *Smucker's*® fruit spreads.

U.S. Retail Frozen Handheld and Spreads segment profit decreased 5%, reflecting equipment write-off charges, higher costs, and lower net price realization, partially offset by lower pre-production expenses largely related to the new *Uncrustables*® sandwiches manufacturing facility and lower marketing expenses.

In U.S. Retail Pet Foods, net sales decreased 13% versus the prior year. Volume/mix decreased net sales by 11 percentage points, driven by a decrease for dog snacks and a $16 million decrease in contract manufacturing sales related to the divested pet food brands. Lower net price realization decreased net sales by 2 percentage points, primarily driven by dog snacks and cat food. Net sales declined 10% versus the prior year, when excluding contract manufacturing sales related to the divested pet food brands.

U.S. Retail Pet Foods segment profit decreased 7%, driven by unfavorable volume/mix and lower net price realization, partially offset by lower costs and decreased marketing expenses.

In the Sweet Baked Snacks segment, net sales decreased 26% versus the prior year. Excluding noncomparable net sales in the prior year related to the divestitures of the *Voortman*® business and certain Sweet Baked Snacks value brands, net sales decreased 14%. Volume/mix decreased net sales by 9 percentage points, driven by decreases for snack cakes, donuts, and private label products. Lower net price realization decreased net sales by 4 percentage points, reflecting lower net pricing across the portfolio.

Sweet Baked Snacks segment profit decreased 72%, primarily driven by higher costs, lower net price realization, unfavorable volume/mix, and the impact of the noncomparable segment profit in the prior year related to the divested businesses.

Lastly, in International and Away From Home, net sales increased 3%. Excluding $4 million of unfavorable foreign currency exchange, net sales increased 4%. Net price realization contributed a 6 percentage point increase to net sales, reflecting higher net pricing for coffee. Volume/mix decreased net sales by 1 percentage point, as decreases for coffee and portion control products were partially offset by an increase for *Uncrustables*® sandwiches.

Net sales for the Away From Home business increased 5% on a comparable basis, led by a double-digit percentage increase for *Uncrustables*® sandwiches. Net sales for the International business increased 4% on a comparable basis, largely driven by our coffee portfolio.

International and Away From Home segment profit increased 13%, reflecting higher net price realization and lower pre-production expenses primarily related to the new *Uncrustables*® sandwiches manufacturing facility, partially offset by higher costs.

Case 1:26-cv-08832 Document #: 1-1 Filed: 01/24/26 Page 64 of 133 PageID #:60

Fourth quarter free cash flow was $299 million, compared to $298 million in the prior year, driven by a decrease in capital expenditures, partially offset by a decrease in cash provided by operating activities. On a full-year basis, free cash flow was $817 million, an increase of $174 million versus the prior year. Capital expenditures were $394 million, representing 4.5% of net sales, a decrease versus the prior year. Our results demonstrate the continued progress we are making towards our long-term strategic target of capital expenditures at approximately 3.5% of net sales.

Leveraging our strong cash generation, we returned approximately $455 million of cash to shareholders through dividends in the fiscal year. We also increased our quarterly dividend by 2%, marking 23 consecutive fiscal years of dividend growth.

We finished the year with a cash and cash equivalent balance of $70 million and a total net debt balance of $7.6 billion. Based on a trailing twelve-month adjusted EBITDA of approximately $2.1 billion, our leverage ratio stands at 3.6x.

We plan on continuing to prioritize debt reduction by paying down approximately $500 million of debt annually over each of the next two years. With this anticipated deleveraging and overall business growth, we anticipate a leverage ratio at, or below, 3.0x net debt to adjusted EBITDA by the end of our fiscal year 2027. This level of debt provides financial flexibility for a balanced approach to capital deployment.

Let me now provide additional color on our outlook for fiscal year 2026.

We continue to operate in a dynamic and evolving external environment, including tariffs and related trade impacts, regulatory and policy changes, ongoing input inflation, and changes in consumer behaviors that impact our fiscal year 2026 outlook. This guidance reflects the Company's expectations based on its current understanding of these factors.

We expect full-year net sales to increase 2% to 4% compared to the prior year reflecting a $135 million headwind from lapping sales of the divested *Voortman®* business and certain Sweet Baked Snacks value brands, and a $38 million unfavorable impact from reduced contract manufacturing sales related to the divested pet food brands, which we have now exited.

On a comparable basis, net sales are anticipated to increase approximately 4.5% at the midpoint. This reflects growth in each of our U.S. Retail segments, when excluding reduced contract manufacturing sales related to the divested pet food brands, and in International and Away From Home. In the Sweet Baked Snacks segment, we anticipate comparable net sales to decline low-single-digits as we look for our actions to stabilize the *Hostess®* brand in the back-half of the fiscal year.

Comparable net sales growth reflects higher net price realization, primarily due to list price increases to recover higher green coffee costs in our U.S. Retail Coffee segment and in International and Away From Home, and a price increase for *Uncrustables®* sandwiches in the U.S. Retail Frozen Handheld and Spreads segment to recover increased costs. Volume/mix is anticipated to be unfavorable, largely driven by our U.S. Retail Coffee segment from the price elasticity of demand assumptions contemplated in our guidance, and our Sweet Baked Snacks segment as we continue to experience category and channel headwinds. We continue to see momentum for our key platforms, including anticipated volume/mix growth for the *Uncrustables®*, *Café Bustelo®*, *Meow Mix®*, and *Milk-Bone®* brands.

We anticipate full-year adjusted gross profit margin of 35.5% to 36.0%. This reflects increased commodity and manufacturing costs and unfavorable volume/mix, partially offset by higher net price benefits, cost and productivity savings from our transformation efforts, and the realization of synergies. The net impact from our tariff assumptions factored into our adjusted gross profit margin is estimated to be an unfavorable impact of approximately 50 basis points, largely reflected in the U.S. Retail Coffee segment.

SD&A expenses are projected to increase by approximately 3%, primarily reflecting increased marketing investments in the *Café Bustelo*® and *Uncrustables*® brands. Total marketing expense is estimated to be 5.7% of net sales, an increase of 30 basis points or approximately $40 million versus the prior year.

We anticipate net interest expense of approximately $380 million, driven by continued debt paydown. Our adjusted effective income tax rate is anticipated to be 23.7%, along with a full-year weighted average share count of 106.7 million.

Taking all these factors into consideration, we anticipate full-year adjusted earnings per share to be in the range of $8.50 to $9.50. This wide guidance range includes the following unfavorable impacts: $0.80 from the net impact of our elasticity of demand assumptions in the U.S. Retail Coffee segment, a $0.30 impact from increased marketing investments, a $0.25 net impact from tariffs, and $0.20 from a decline in profitability within the Sweet Baked Snacks segment excluding divestiture impacts. These headwinds more than offset the favorable tailwinds benefiting the business including:

- Base business momentum;
- Cost and productivity benefits from our Transformation Office;
- $100 million in total run-rate synergies from the Hostess acquisition by the end of the fiscal year;
- Benefits from mitigating the majority of stranded overhead;
- And, continued debt paydown of approximately $500 million.

We project free cash flow of approximately $875 million at the midpoint of our adjusted earnings per share guidance range, with capital expenditures of $325 million for the year. Other key assumptions affecting cash flow include: depreciation expense of approximately $350 million, amortization expense of approximately $200 million, share-based compensation expense of $35 million, and other non-cash charges of $110 million.

In the first quarter of the fiscal year, net sales are anticipated to decline low-single-digits, which incorporates an impact of $53 million related to the divested *Voortman*® business and certain Sweet Baked Snacks value brands. Comparable net sales are anticipated to be flat, reflecting a mid-single-digit increase in net price realization offset by unfavorable volume/mix. Net sales also reflects a decline of $10 million of contract manufacturing sales related to the divested pet food brands.

Adjusted earnings per share are expected to decline approximately 25%, primarily driven by a decrease in adjusted gross profit in our U.S. Retail Coffee and Sweet Baked Snacks segments. We anticipate adjusted earnings per share will improve sequentially throughout the fiscal year.

Overall, in fiscal year 2026 we are committed to maintaining a disciplined and responsible financial approach, while strategically investing in our key platforms and executing on our strategic priorities to deliver long-term growth and increase shareholder value. This includes fiscal year 2027, which we anticipate will be an algorithm year for adjusted earnings per share growth, absent any significant changes in the green coffee market and consumer or regulatory environment, inclusive of trade policy.

In closing, I would like to thank our employees. They have demonstrated their commitment to executing with excellence, and their passion for our Company positions us for continued success.

Thank you.

## ADDITIONAL INFORMATION

The J.M. Smucker Co. is the owner of all trademarks referenced herein, except for Dunkin'®.

The *Dunkin'*® brand is trademark of DD IP Holder LLC and licensed to The J.M. Smucker Co. for packaged coffee products sold in retail channels such as grocery stores, mass merchandisers, club stores, e-commerce and drug stores, as well as in certain away from home channels. This information does not pertain to products for sale in *Dunkin'*® restaurants.

# EXHIBIT C

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Telephone: (877) 206-4741
*tfriedman@toddflaw.com*
*abacon@toddflaw.com*

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTHERN CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE HP PRINTER FIRMWARE UPDATE LITIGATION | Case No. 5:16-cv-05820-EJD-SVK<br><br>**DECLARATION OF TODD M. FRIEDMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES AND COSTS**<br><br>Judge: Hon. Edward J. Davila |

# DECLARATION OF TODD M. FRIEDMAN

**I, TODD M. FRIEDMAN, declare:**

1. I am one of the attorneys for the plaintiffs in this action. I am an attorney licensed to practice law in the State of California since 2001, the State of Illinois since 2002, and the State of Pennsylvania since 2011. I have been continuously licensed in California since 2001, Illinois since 2002, and Pennsylvania since 2011, and am in good standing with the California State Bar, Illinois State Bar, and Pennsylvania State Bar. I have litigated cases in both state and federal courts in California and Illinois. I am also admitted in every Federal district in California and have handled federal litigation in the federal districts of California.
2. I have personal knowledge of the following facts and, if called upon as a witness, could and would competently testify thereto, except as to those matters which are explicitly set forth as based upon my information and belief and, as to such matters, I am informed and believe that they are true and correct.
3. I am writing this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Certification of Settlement Class, and Plaintiffs' Motion for Attorney's Fees and Costs, and specifically, to support the strength of This Settlement, to establish that I am appropriate and qualified Class Counsel pursuant to *Fed. R. Civ. Proc.* 23(a)(4) and (g), that I will adequately and fairly represent the interests of the putative class, and to set forth the efforts engaged in by my office regarding hours worked and reasonableness of the hourly rates.

## I. CASE HISTORY

4. Plaintiff Robert Doty filed a class action complaint in the Central District of California on September 28, 2016, in the matter of *Robert Doty v HP, Inc.,* Case No. 5:16-cv-02063-GHK-RAO. Shortly after the filing of the complaint, my office was contacted by a second consumer interested in pursuing claims – James Andrews. Mr. Andrews subsequently retained my office as counsel.
5. Defendant filed a motion to dismiss in the *Doty* matter. My office amended the complaint in response, to address some of the points raised in Defendant's Motion. Defendant filed a second motion to dismiss, which my office opposed.
6. After the filing of the *Doty* matter, my office learned of several other competing lawsuits.

Plaintiffs' Counsel collectively met and conferred and determined that jointly pursuing these matters would be more efficient for the parties and the Honorable Courts in which these actions were pending.

7. Plaintiffs' Counsel collectively drafted an amended consolidated complaint (Dkt. No. 60), which was filed before This Honorable Court after a great deal of pre-filing diligence by all counsel, including myself and Adrian R. Bacon a partner at my office.

8. Defendant filed a motion to dismiss in response to the consolidated complaint. My office assisted in the drafting of the opposition papers, and I also flew up to San Jose to attend the hearing, which was argued by my co-counsel from Girard Gibbs. The Honorable Court thereafter took the matter under submission.

9. Thereafter, the parties engaged in extensive discovery. My office reviewed and contributed to the discovery requests served on Defendant, and has assisted in the review of responsive documents, as well as attended depositions. My office has also engaged in third party discovery with competitors to Defendant who produced competing products, as well as retailers who carried Defendant's ink cartridges and printers during the applicable time periods. My office has also worked with our clients Robert Doty and James Andrews to respond to all discovery served upon them, and has attended and defended both of their depositions.

10. Throughout this litigation, my office has participated in dozens of phone calls with our co-counsel and with Defense counsel, and thousands of emails, in an effort to collectively advance this litigation on behalf of the class.

11. Counsel have engaged in a robust, ongoing meet-and-confer process with HP's counsel to obtain HP's relevant internal documents and answers to interrogatories, as well as having engaged in third party discovery.

12. Counsel established a document review platform; developed a protocol for, and conducted, the review and analysis of thousands of pages of HP documents; examined both of HP's Rule 30(b)(6) deponents; negotiated extensively with HP's counsel over the technical inspection of Plaintiffs' computers and ink cartridges; vetted numerous experts and retained a technical consultant; and

coordinated the assignment and completion of various litigation tasks amongst Plaintiffs' counsel, in an effective and efficient manner.

13. Counsel also researched and drafted a Motion for Class Certification, with Girard Gibbs taking lead on researching and drafting, and my office and other co-counsel contributing to the legal theories advanced, and the research surrounding both class certification and merits issues.

14. The class representatives have cooperated and assisted throughout this litigation by promptly responding to our inquiries, providing detailed information about their experiences with their printers, responding to discovery, sitting for depositions, and subjecting their printers and computers to an inspection by Defendant.

15. Over the course of the litigation during the last two years, my firm has worked on this matter. The Settlement that has been reached, which is the product of substantial effort by the Parties and counsel should be approved as fair, reasonable and adequate. The Settlement was the result of arms-length negotiations during lengthy and informed negotiations. These negotiations were held after the exchange of thousands of pages of documents in formal discovery, after significant third party discovery with retailers and manufacturers, after briefing multiple motions to dismiss, after the filing of Plaintiffs' class certification motion, after depositions of all of the named Plaintiffs, and depositions of multiple witnesses of Defendant. In other words, the Settlement was only reached after extensive factual and legal investigation and research, careful evaluation of the respective parties' strengths and weaknesses, and diligent litigation and negotiation efforts. The Settlement amount is a negotiated compromise which took into account risks related to liability, damages, and all the defenses asserted by Defendant. The risk that class certification would not be granted was an important consideration, as the denial of class certification would mean that the class would receive nothing. In my experience, I am of the opinion that the settlement with the Defendant for the consideration and on the terms set forth in the Settlement is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, the defenses asserted by Defendant, and numerous potential appellate issues.

16. Plaintiff James Andrews has commendably served as a class representative in this litigation. He

communicated effectively, supervised my work and participated in every aspect of the litigation. He has performed all services required of a class representative and in my opinion, is deserving of their service award as a result of this service and the risks and burdens he undertook in representing a class of similarly situated employees. I believe that the proposed incentive awards to the Named Plaintiffs is reasonable in light of the amount of work performed by the class representatives furthering the case and the reputational risks associated with being listed as a plaintiff in a class action such as this one, especially in the age of the internet. Plaintiffs were instrumental throughout the entire process, providing counsel with the necessary documentation and documents that enabled counsel to reach this outstanding class-wide result. Mr. Andrews for instance was very responsive to my frequent requests, via email and phone, for more information about Defendant's practices and policies. He spent a significant number of hours working on this case, including responding to written discovery and sitting for a deposition, and we will provide a detailed declaration from Mr. Andrews at final approval describing his efforts in more detail.

## II. CLASS COUNSEL'S EXPERIENCE

17. The Law Offices of Todd M. Friedman, P.C. seeks appointment as Class Counsel in this Action. I am informed and believe that Class Counsel are qualified and able to conduct this litigation as a class action.
18. As one of the main plaintiff litigators of consumer rights cases in Southern of California, I have been requested to and have made regular presentations to community organizations regarding debt collection laws and consumer rights.
19. I have extensive experience prosecuting cases related to consumer issues. My firm, The Law Offices of Todd M. Friedman, P.C., in which I am a principal, has litigated over 1000 individual based consumer cases and litigated over 200 consumer class actions. These class actions were litigated in federal courts in California, as well as California State Courts. Approximately 100% percent of my practice concerns plaintiffs' side consumer and employment litigation in general, with approximately 80% of my class action experience involving consumer protection, and approximately 20% percent of my class action practice involves litigating claims under the CLRA, UCL and/or FAL.
20. Therefore, my experience in litigating class actions and my years in practice allow me to provide outstanding representation to the Settlement Class. I will continue to strive to fairly, responsibly,

vigorously and adequately represent the putative class members in this action.

21. The Law Offices of Todd M. Friedman has served as plaintiff's counsel in at least the following class action cases involving various class actions claims consumer rights claims, where a settlement was reached on a class-wide basis, and have achieved over $160,000,000 in class-wide relief for consumers:

a. *Dancer v. L.A. Times*, BC472154 (L.A. Superior Court) (common fund class-wide settlement of $3 million to $4 million granted final approval);

b. *Couser v. Comenity Bank*, 3:12-cv-02484-MMA-BGS (S.D. Cal.) ($8.475 million class-wide settlement achieved and granted final approval);

c. *Stemple v. QC Financial Services Group of California, Inc.*, 3:12-cv-01997-CAB-WVG (S.D. Cal.) (certified class achieved by motion, and subsequent class-wide settlement of $1.5 million achieved, with final approval granted);

d. *Couser v. Apria Healthcare, Inc*. 8:13-cv-00035-JVS-RNB (C.D. Cal.) (common fund class-wide settlement of $400,000 to $750,000, granted final approval);

e. *Abdeljalil v. General Electric Capital Corporation,* 12-CV-02078-IEG-RBB (S.D. Cal.) (class-wide settlement with common fund of $6.125 million achieved, preliminary approval granted, final approval granted);

f. *Fox v. Asset Acceptance,* 3:13-CV-00922-DMS-BGS (S.D. Cal.) (common fund of $1 million in class-wide relief achieved, granted final approval);

g. *Friedman v. LAC Basketball Club, Inc.,* 2:13-cv-00818-CBM-AN (C.D. Cal.) (class-wide settlement achieved and granted final approval);

h. *Gerich et al. v. Chase Bank USA et al.* Case No 1:12-cv-5510 (N.D. Ill.) (class-wide settlement of $34 million, granted final approval);

i. *Than Zaw v Nelnet, Inc*., Penal Code § 632 class – (Achieved class-wide settlement of $1,188,110, granted final approval of court);

j. *Medeiros v HSBC*, (common fund settlement of between $4.5 million and $6.5 million achieved, final approval granted);

k. *Ann Fox v. Spectrum Club Holding Company et al*., Case No. 2:14-CV-06766-PSG-FFMx (class-wide settlement, final approval granted);

l. *Sayan Aboudi v. T-Mobile USA, Inc.,* Case No. 3:12-cv-02169-BTM-NLS (class-wide settlement in TCPA case, with common fund of $2.5 million to $5 million, with average per class member payment of $500, final approval granted);

m. *Andrew Roseman v. BGASC, LLC, et al.*, Case No. EDCV 15-1100-VAP (SPx) (C.D. Cal.) (class-wide relief achieved, final approval granted);

n. *Everado Gonzalez v The Scotts Company,* Case No. BC577875, Consolidated with Case No: BC570350 (LASC) (class-wide settlement of $925,000 in wage and hour class action on behalf of approximately 603 employees achieved, final approval granted);

o. *Payton v Luxe Valet*, Case No. BC588462 (LASC) (class-wide settlement in wage and hour independent contractor misclassification class action, on behalf of 1,800 employees, settled for $2.4 million, final approval granted);

p. *Shelby v Two Jinn, Inc*., Case No. 2:15-cv-03794-AB-GJS (C.D. Cal.) (EFTA class action involving no cognizable actual damages, with net worth of company of $25 million, settled for non-reversionary common fund of $457,000, despite liability under 15 U.S. Code § 1693m(a) likely being only $250,000; final approval granted, zero objections);

q. *Couser v Dish One Satellite*, Case No. 5:15-cv-02218-CBM-DTB (C.D. Cal.) (TCPA class action, final approval granted);

r. *Couser v Dish One Satellit*e, Case No. RIC 1603185 (Riverside S.C.) (Penal Code 632 class action, preliminary approval granted);

s. *De La Paz v Accurate Courier NCA LLC,* Case No. 16CV00555 (Santa Cruz County Superior Court) (PAGA and Labor Code class action, final approval granted);

t. *Ross v Zurixx LLC,* Case No. 34-2016-00190874 (Sacramento SC) (UCL, FAL and CLRA class action alleging false advertising for real estate educational courses, non-reversionary common fund settlement for over $600 per class member, final approval granted);

u. *Eubank v Terminix International, Inc.,* Case No. 3:15-cv-00145-WQH-JMA (PAGA settlement reached in wage and hour action on behalf of pest control technicians, preliminary approval pending);

v. *Jonathan Weisberg, v. HD Supply, Inc.,* Case No. 15-cv-08248-FMO (MRWx) (class-wide settlement in TCPA class action, settled for $1.225 million, final approval granted);

w. *Miler v Pacific Auto Wash Partners,* Case No. 30-2015-00813013-CU-OE-CXC (wage and hour class action, final approval granted);

x. *Sonia Barrientos v Law Office of Jeffrey H. Jordan*, Case No. 2:15-cv-06282-JAK-GJS (FDCPA/RFDCPA letter class action, settled on class wide basis, final approval granted);

y. *Tahmasian v Midway Rent A Car*, Case No. 30-2015-00813013-CU-OE-CXC (LASC) (PAGA and Labor Code class action, final approval granted);

z. *Craig Cunningham v Lexington Law Firm,* Case No. 1:17-cv-00087-EJF (N.D. UT) (TCPA class action MDL involving solicitation prerecorded voice calls made by a third party, vicarious liability alleged, preliminary approval pending).

aa. *Sheena Raffin v Medicredit, Inc.*, et al., Case No. 2:15-cv-04912-MWF-PJW (C.D. Cal.) (Cal. Penal Code § 632.7 class action certified by Hon. George H. King Ret under Rule 23(b)(2) and (b)(3) by contested motion on behalf of 11,000 class members whose calls

were recorded without knowledge or consent, settled for $5 million, final approval granted);

bb. *Fernandez v Reliance Home Services, Inc. Case No. BC607572 Los Angeles Superior Court (*wage and hour plus PAGA class action, final approval granted);

cc. *Anne Wolf v Hewlett Packard Company,* Case No. 5:15-cv-01221-TJH-GJS (C.D. Cal.) (CLRA class action certified by contested motion on behalf of tens of thousands of class members who purchased printer that was falsely advertised to include Smart Install feature, settled on a wider multi-state, multi-product basis, preliminary approval granted, final approval pending);

dd. *Jaylinda Girardot et al v. Bail Hotline Bail Bonds, Inc.*, Case No. BC700131 Los Angeles County Superior Court (wage and hour plus PAGA class action, final approval granted);

ee. *Ryoo Dental, Inc. v OCO Biomedical, Inc.*, Case No. 8:16-cv-01626-DOC-KES (TCPA fax blast class action, settled on class wide basis, final approval granted);

ff. *Wondra Curtis v The Anthem Companies, Inc.*, Case No. 8:16-cv-01654-DOC-JCG (wage and hour class action for off the clock work, settled on class wide basis, final approval granted);

gg. *Weinberg v Clarient, Inc.* Case No. 56-2017-00494914-CU-NP-VTA Ventura County Superior Court (Rosenthal Fair Debt Collection Practices Act class action settled on behalf of 1,830 class members for privacy infringements through clear envelope debt collection letters, final approval granted);

hh. *Aliav v Sunset Eats, LLC,* Case No. BC655401 Los Angeles Superior Court (false advertising class action on behalf of approximately 10,000 class members, settled on class wide basis; preliminary approval pending);

ii. *Alfred Zaklit, et al. v. Nationstar Mortgage LLC*, Case No. 5:15-cv-02190-CAS-KK (C.D. Cal.) (Cal. Penal Code § 632.7 class action certified by contested motion under Rule 23(b)(2) and (b)(3) on behalf of over 40,000 class members whose calls were recorded without knowledge or consent, preliminary approval pending);

jj. *Mark Silva v. Olson and Co. Steel* Case No. 17CV001045 Contra Costa County Superior Court (wage and hour class action settled on behalf of 563 class members, preliminary approval granted);

kk. *Richards v. CoreCivic of Tennessee, LLC,* Case No. 1:17-cv-01094-LJO-JLT (E.D. Cal.) (wage and hour class action settled for approximately $3 million, preliminary approval pending);

ll. *Kim v Tinder, Inc. et al.,* Case No. 2-18-cv-03093 (C.D. Cal. (Unfair Competition Law and Unruh Act class action alleging illegal price discrimination based on age, settlement value of approximately $23 million on behalf of approximately 230,000 class members, preliminary approval pending);

mm. *Manopla v. Home Depot USA, Inc.* Case No. 15-1120 (D. N.J.) (TCPA class action, preliminary approval pending);

nn. *Cawthorne v Rush Truck Centers of California, Inc.* Case No. 5:17-cv-01541-JGB-SP (wage and hour class action on behalf of 560 employees, preliminary approval pending);

oo. *Lizama v Medical Data Systems, Inc.* Case No. 34-2017-00210986-CU-NP-GDS (Sacramento County Superior Court) (Penal Code 632.7 class action alleging illegal call recording, settled for $2.2 million on behalf of over 30,000 consumers, preliminary approval pending);

pp. *Romano v SCI, Inc.* Case No. 2:17-cv-03537-ODW-JEM (wage and hour class action for independent contractor misclassification, settled for $2.5 million on behalf of 230 employees, preliminary approval pending);

qq. *Caldera v. American Medical Collection Association*, (C.D. Cal.) Case No. 2:16-cv-00381-CBM-AJW (TCPA class action certified by contested motion, settled on a Rule 23(b)(2) basis for classwide injunctive relief, preliminary approval pending);

rr. *Edward Makaron v. Enagic USA, Inc.,* Case No. 2:15-cv-05145-DDP-E (C.D. Cal.) (TCPA class action certified on behalf of approximately 2,000,000 class members under Rule 23(b)(2) and 23(b)(3), subsequently settled on a Rule 23(b)(2) and 23(b)(3) basis, preliminary approval pending);

ss. *Audrey Hernandez v. Pegasus Building Services, Inc.*, SDSC Case No. 37-2018-00023176-CU-OE-CTL (consolidated wage and hour and PAGA class action on behalf of janitorial workers, preliminary approval pending);

tt. *Walsh v Fry's Electronics, Inc*. Case No. MSC18-01681 (Contra Costa County Superior Court) (Gift Card Act, CLRA, UCL, FAL class action settled for class-wide public injunctive relief, preliminary approval pending);

uu. *Nishimoto v T&S Business Corporation*, Case No. 34-2017-00211426 (Sacramento County Superior Court) (wage and hour and PAGA class action on behalf of janitorial workers, preliminary approval pending);

vv. *Rodriguez v. Experian Information Solutions, Inc. et. al.* Case No. 2:15-cv-01224-RAJ (W.D. Wash.) (FCRA class action for improper credit pulls; certified under Rule 23 by contested motion, and settled on class-wide basis, preliminary approval pending);

ww. Ahmed v HSBC Bank USA, Case No. 5:15-cv-02057-FMO (SPx) (C.D. Cal.) (TCPA class, preliminary approval pending); and

xx. *Aiken v. Malcolm Cisneros, A Law Corporation*, Case No. 5:17-cv-02462-JLS-SP (C.D. Cal.) (Fair Debt Collection Practices Act class action, settled on class wide basis, preliminary approval pending).

22. My firm is also currently litigating, in addition to the case at bar which was certified under Rule 23, the following cases which were certified as class actions under Rule 23 by contested motion:

a. *Anne Wolf v Hewlett Packard Company,* Case No. 5:15-cv-01221-TJH-GJS (C.D. Cal.) (CLRA class action certified by contested motion on behalf of tens of thousands of class members who purchased printer that was falsely advertised to include Smart Install feature);

b. *Caldera v. American Medical Collection Association*, (C.D. Cal.) Case No. 2:16-cv-00381-CBM-AJW (TCPA class action certified by contested motion)

c. *Alfred Zaklit, et. al. v. Nationstar Mortgage LLC*, Case No. 5:15-cv-02190-CAS-KK (C.D. Cal.) Cal. Penal Code § 632.7 class action certified under Rule 23(b)(2) and (b)(3) on behalf of class members whose calls were recorded without knowledge or consent);

d. *D'Angelo Santana vs Rady Children's Hospital*, Case No. 37-2014-00022411-CU-MT-CTL (San Diego Superior Court) Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.*;

e. *Edward Makaron v. Enagic USA, Inc.,* Case No. 2:15-cv-05145-DDP-E (C.D. Cal.) (TCPA class action certified on behalf of approximately 2,000,000 class members under Rule 23(b)(2) and 23(b)(3)); and

f. *Rodriguez v. Experian Information Solutions, Inc. et. al.* Case No. 2:15-cv-01224-RAJ (W.D. Wash.) (FCRA class action for improper credit pulls; certified under Rule 23).

g. *Sheena Raffin v Medicredit, Inc*. et. al., Case No. 2:15-cv-04912-MWF-PJW (C.D. Cal.) (Cal. Penal Code § 632.7 class action certified by Hon. George H. King Ret. under Rule 23(b)(2) and (b)(3) on behalf of class members whose calls were recorded without knowledge or consent);

h. *Stemple v. QC Financial Services Group of California, Inc.*, 3:12-cv-01997-CAB-WVG (S.D. Cal.) (certified class achieved by motion, and subsequent class-wide settlement); and

i. *Abdeljalil v. General Electric Capital Corporation,* 12-CV-02078-IEG-RBB (S.D. Cal.) (certified class achieved by motion, and subsequent class-wide settlement);

23. It is this level of experience which enabled the firm to undertake the instant matter and to successfully combat the resources of the defendant and their capable and experienced counsel. On account of the concerted and dedicated effort this case demanded in order to properly handle and prosecute, my office and our co-counsel were precluded from taking other cases, and in fact, had to turn away other potential fee generating cases.

## III. OVERVIEW OF LAW OFFICES OF TODD M. FRIEDMAN, P.C.'S EFFORTS IN THIS ACTION

### A. CONTINGENT NATURE OF ACTION

24. This action, required the Law Offices of Todd M. Friedman, P.C. to spend over two years on this litigation that could have been spent on other matters. At various times during the litigation of this class action, this lawsuit has consumed my time as well as my firm's resources. Over 3,000 emails have been exchanged during that time between members of my firm, our co-counsel, counsel for Defendant, the claims administrator, class members, Plaintiffs, and others. My firm has not been paid anything for our work on this case since it was filed and we have contributed over $13,763.69 in hard costs prosecuting this action on behalf of Plaintiffs and the proposed class. It is my opinion that law firms in such a position expect to receive a multiplier in cases such as these because of the risk taken, the extent to which firms are unable to take on other cases, the delay in getting paid and the costs we have to advance.

### B. OVERVIEW OF LAW OFFICES OF TODD M. FRIEDMAN, P.C.'S LODESTAR AND COSTS

25. Law Offices of Todd M. Friedman, P.C. has maintained contemporaneous time records since the commencement of this action. To date, my office has incurred 631 hours of attorney time for this case, with a total lodestar of $400,355.00. This figure does not include the estimated hours for preparing the final approval hearing papers, appearing at the hearing and overseeing the settlement adminsitration. I anticipate my firm will expend approximately 20 hours working on these matters, in addition to the hours described herein, which are anticipated to be split equally between myself and my partner Adrian R. Bacon. Once those hours are accounded for, through

final approval, I anticipate our Lodestar will be $413,855. My billing rate is $725 per hour in this case, the billing rate for Adrian R. Bacon is $625 per hour, the billing rate for Arvin Ratanavongse is $575 per hour and the billing rate for Thomas E. Wheeler is $370 per hour.

### C. LAW OFFICES OF TODD M. FRIEDMAN, P.C.'S COSTS

26. My firm has incurred litigation costs in this matter in the amount of $13,763.00, for which my firm is seeking reimbursement. These costs are comprised of costs for filing and serving the complaint, transmitting copies of filings to the Court, parking expenses, airfare traveling to san francisco for meetings and court appearances, and to portland for a deposition, costs associated therewith, mileage and transportation expenses, and payment of $10,000 into a joint co-counsel litigation expense fund, which I anticipate my co-counsel Girard and Gibbs will address in their papers, so as not to double-count these costs. The breakdown of costs is as follows:

| Description | Cost |
|---|---:|
| Court Filing and Service Fees | $518.80 |
| Parking Fees | $122.00 |
| Mileage and Transportation Expenses | $735.68 |
| Flights | $2,295.35 |
| Meals | $91.17 |
| Payment Into Co-counsel Expense Fund | $10,000.00 |
| **TOTAL** | $13,763.00 |

27. Should my firm incur costs through final approval of this action, Plaintiffs will seek reimbursement of such costs, as set forth in the Settlement Agreement. Such anticipated costs would primarily be in the form of my traveling to the final approval hearing for this matter on behalf of the Class, which would likely include airfare, hotel and transportation expenses. I do not anticipate these expenses will exceed another $1,000.

### D. REASONABLENESS OF HOURLY RATES

28. Law Offices of Todd M. Friedman, P.C.'s hourly rates are reasonable in respect to the ranges charged by comparable law firms in the State of California.[1] My billing rate is $725 per hour in

[1] *See* Laffey Matrix attached hereto as Exhibit B.

this case, the billing rate for Adrian R. Bacon is $625 per hour, the biling rate for Arvin Ratanavongse is $575 per hour, and the rate of Thomas R. Wheeler is $370 per hour. For purposes of this Lodestar analysis, I did not include the hours worked by law clerks, or paralegals.

29. Regarding my rate, I have been practicing law since 2001, and am the managing partner of one of the most active consumer protection law firms in California. I have been counsel of record on hundreds of class action lawsuits, nearly 50 of which have resolved on a class-wide basis, and approximately 10 of which were certified by contested motion after considerable litigation.

30. The hourly rates sought herein have been approved by numerous courts. Recently in the case of *Sheena Raffin v Medicredit, Inc*. et. al., Case No. 2:15-cv-04912-MWF-PJW (C.D. Cal.), Judge Fitzgerald of the Central District of California explicitly found that my rate of $725 and Mr. Bacon's rate of $625 per hour, as well as Mr. Wheeler's rate of $370 per hour were all reasonable. The court awarded us fees and granted final approval of a class action settlement, which my office had litigated for over three years. Our fees were also recently approved as reasonable at these same rates in the case of *Jaylinda Girardot et al v. Bail Hotline Bail Bonds, Inc.*, Case No. BC700131 Los Angeles County Superior Court, where Judge Berle found at oral argument that our hourly rates were fair and reasonable and granted approval. Mr. Bacon's hourly rate of $625 was also recently approved in a motion for sanctions he filed against a defendant in the case of *Fryt v. SRBV Staffing, LLC* Case No. BC682078 Los Angeles Superior Court.

31. My partner Adrian R Bacon is the head of litigation at my firm. He has been practicing law since 2011, and has practiced primarily class action litigation. He began working on consumer protection class action litigation, including extensive work on the Toyota Unintended Acceleration Litigation. Mr. Bacon played a pivotal role in drafting numerous complex class action briefs in his first year of practice, including drafting significant portions of the briefs in notable cases such as *Nguyen v. Barnes & Noble, Inc.*, 2012 WL 3711081 (C.D. Cal. August 28, 2012) affirmed at *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), and *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir. 2013).

32. In only his third year of practice he was approved as class counsel, at an hourly billing rate of $475 per hour in three class action matters that were granted final approval:
    a. *Miller v. Ikea California, LLC* , Case No.: 30-2009 00331682, California Superior Court County of Orange ($5.75M class settlement granted final approval and motion for fees and approved at a rate of $475 per hour);
    b. *David Paiva et al v. Denny Corporation et al*., Case No. 37-2010-00103831-CU-OE-CTL, California Superior Court County of San Diego (granted final approval and motion for fees and approved at a rate of $475 per hour); and
    c. *Juan Martinez et al v. Valley Pride, Inc. et al.,* Case No. M108688, California Superior Court County of Monterey
33. Mr. Bacon is responsible for drafting and filing the majority of the Complex Motions filed by my firm in Class Action cases, as well as managing discovery, taking depositions and overseeing and engaging in virtually every aspect of litigation as either lead or co-lead counsel in hundreds of active cases handled by my firm. He also oversees and managers the firm's Orange County office. My office recently successfully achieved class certification by contested motion in five hotly contested class actions, the motions for which Mr. Bacon took point in drafting:
    a. *Sheena Raffin v Medicredit, Inc*. et. al., Case No. 2:15-cv-04912-MWF-PJW (C.D. Cal.);
    b. *Anne Wolf v Hewlett Packard Company,* Case No. 5:15-cv-01221-BRO-GJS (C.D. Cal.) (CLRA class action certified on behalf of tens of thousands of class members who purchased printer that was falsely advertised to include Smart Install feature);
    c. *Caldera v. American Medical Collection Association*, (C.D. Cal.) Case No. 2:16-cv-00381-CBM-AJW (TCPA class action on behalf of 30,000-100,000 class members, certified by contested motion); and
    d. *Alfred Zaklit, et. al. v. Nationstar Mortgage LLC*, Case No. 5:15-cv-02190-CAS-KK (C.D. Cal.) Cal. Penal Code § 632.7 class action certified under Rule 23(b)(2) and (b)(3) on behalf of approximately 70,000 class members whose calls were recorded without knowledge or consent); and

e. *Edward Makaron v. Enagic USA, Inc.,* Case No. 2:15-cv-05145-DDP-E (C.D. Cal.) (TCPA class action certified on behalf of approximately 1,000,000 class members under Rule 23(b)(2) and 23(b)(3)).

34. Following class certification, each of the five matters above were resolved on a class-wide basis and are in various stages of approval, as described above. Mr. Bacon's efforts were instrumental in achieving this class-wide results, as he was the primary attorney who took the depositions in these matters, handled motion practice, drafted the motions for class certification, and argued the motions for class certification.

35. Mr. Bacon was recently approved at a rate of $575 at final approval in close to a dozen class actions over the past two years, including the case of *Shelby v Two Jinn, Inc*., Case No. 2:15-cv-03794-AB-GJS (C.D. Cal.). More recently, he has been aprpoved on several instances at a rate of $625 per hour.

36. Mr. Wheeler is a graduate of U. Penn Law and a junior associate at my firm. He has worked extensively on consumer protection matters, including class actions, during his two years with my firm. His work includes assisting on the *Caldera* and *Makaron* matters cited above, a certified TCPA class action. In light of his experience, an hourly rate of $370 is warranted, and is further warranted in light of customary rates for junior associates on the Laffey Matrix.

37. Mr. Ratanavongse was a senior associate at my firm, having practiced for ten years. His rates are lower than those in the Laffye Matrix as well.

38. I anticipate Law Offices of Todd M. Friedman, P.C. will incur an additional 20 hours for preparing for the final approval hearing, appearing at the hearing, and overseeing the settlement administration, including addressing any questions by settlement Class Members, as well as filing status reports after final approval.

39. With regard to a bare bones loadstar amount, our current billing records reflect approximately 652 hours of time. Based on these rates, and the accompanying time entries for each corresponding individual, the loadstar estimate for this Case is $413,855.

40. Here is a breakdown and summary of the fees incurred by Plaintiff's counsel in connection with this Case:

| Name | Number of Hours | Rate/Hr | Total |
|---|---|---|---|
| Todd M. Friedman | 141.3 | $725.00 | $102,442.50 |
| Adrian R. Bacon | 441.3 | $625.00 | $275,812.50 |
| Thomas E. Wheeler | 21 | $370.00 | $7,770.00 |
| Arvin Ratanavongse | 47.4 | $575.00 | $27,255.00 |
| **TOTAL** | **652** | | **$413,855.00** |

41. Attached hereto as Exhibit A is a true a correct of a categorized summary of time entries from my firm's records for this matter. I can provide detailed time entries upon request of the Court.

42. Based on the foregoing, I submit that our request for fees and costs, as set forth in the contemporaneously-filed motion, is fair and reasonable.

43. I also would submit that Plaintiff James Andrews was significantly involved in this litigation, and should be awarded an incentive award of $5,000. He went above and beyond his duties to the class, by being very involved in litigation, including pre-filing diligence and investigative efforts, providing my office with documents and information necessary to formulate the complaint, responding diligently and promptly to information requests from my office, responding to formal written discovery, sitting for a deposition, and participating in settlement discussions. He was a model class representative. His involvement throughout this litigation and strongly advocacy on behalf of the class warrants the award of a $5,000 incentive award.

44. I am unaware of any conflicts of interest between Plaintiffs and putative class members and between proposed class counsel and the other parties to this litigation.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on February 4, 2019.

By:/s/ Todd M. Friedman

Todd M. Friedman, Esq.

**ATTESTATION STATEMENT**

I, Elizabeth A. Kramer, am the ECF User whose identification and password are being used to file this Declaration of Todd M. Friedman in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Attorneys' Fees and Costs pursuant to Civil L.R. 5-1(i)(3). I attest under penalty of perjury that Todd M. Friedman concurred in this filing.

DATED: February 7, 2019 *<u>/s/ Elizabeth A. Kramer</u>*

# EXHIBIT A

## THE LAW OFFICES OF TODD M. FRIEDMAN, P.C.

| Name | Title | Hours By Category of Work | | | | | Hourly Rate | Lodestar |
|---|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | | |
| Friedman, Todd | P | 12.6 | 29.3 | 13.2 | 42.4 | 46.8 | $725 | $102,442.50 |
| Bacon, Adrian | P | 36 | 96 | 190.5 | 65.6 | 53.2 | $625 | $275,812.50 |
| Wheeler, Thomas | A | 0 | 0 | 21 | 0 | 0 | $370 | $7,770.00 |
| Ratanavongse, Arvin | A | 0 | 0 | 48.4 | 0 | 0 | $575 | $27,830.00 |
| | | | | | | | | |
| TOTAL | | 48.6 | 125.3 | 273.1 | 108 | 100 | | $413,855.00 |
| | | | | | | | | |

**Titles:**

P Partner

A Associate

**Category of Work:**

1 – Case Investigation and Factual Research

2 – Pleadings

3 – Discovery and Document Review

4 – Pretrial Motions and Hearings

5 – Settlement Negotiations and Motions

# EXHIBIT B

# LAFFEY MATRIX



| | | | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| Year | Adjustmt Factor** | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/18- 5/31/19 | 1.0350 | $202 | $371 | $455 | $658 | $742 | $894 |
| 6/01/17- 5/31/18 | 1.0463 | $196 | $359 | $440 | $636 | $717 | $864 |
| 6/01/16- 5/31/17 | 1.0369 | $187 | $343 | $421 | $608 | $685 | $826 |
| 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

Case: 1:26-cv-08320 Document #: 1-1 Filed: 08/14/26 Page 92 of 133

# EXHIBIT D

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
***Attorneys for Plaintiff***

**UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICARD WINTERS and JAKE GRUBER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TWO TOWNS CIDERHOUSE, INC.,<br><br>Defendant. | Case No. 3:20-cv-00468-BAS-BGS<br><br>**<u>CLASS ACTION</u>**<br><br>**DECLARATION OF TODD M. FRIEDMAN IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Assigned to the Honorable Cynthia Bashant.<br><br>**DATE: MAY 10, 2021**<br>**TIME: 2:00 P.M.**<br>**COURTROOM: 4B** |

## DECLARATION OF TODD M. FRIEDMAN

**I, TODD M. FRIEDMAN, declare:**

1. I am one of the attorneys for the plaintiffs in this action, Richard Winters and Jake Gruber ("Plaintiffs"). I am an attorney licensed to practice law in the State of California since 2001, the State of Illinois since 2002, and the State of Pennsylvania since 2011. I have been continuously licensed in California since 2001, Illinois since 2002, and Pennsylvania since 2011, and am in good standing with the California State Bar, Illinois State Bar, and Pennsylvania State Bar. I have litigated cases in both state and federal courts in California and Illinois. I am also admitted in every Federal district in California and have handled federal litigation in the federal districts of California.
2. The declaration is based upon my personal knowledge, except where expressly noted otherwise.
3. I submit this declaration in support of the Plaintiff's Motion for Attorneys' Fees and Costs in the action against defendant, TWO TOWNS CIDERHOUSE, INC. ("Two Towns" or "Defendant").
4. Plaintiff seeks the Court's approval of the following to be paid from $985,000 Settlement Fund:

    i. Attorneys' fees in the amount of $246,250, representing 25% of the $985,000 Settlement Fund;

    ii. Costs of litigation incurred by Class Counsel in the amount of $7,907.96 as of February 15, 2021; and

    iii. An Incentive Award to Plaintiffs in the amount of $7,500 for Mr. Winters and $5,000 for Mr. Gruber.

5. As part of the Settlement Agreement, previously filed as Exhibit A to the Declaration of Todd M. Friedman In Support of Preliminary Approval of Class Action Settlement and Certification of Settlement Class (Dkt. No.21-

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
WOODLAND HILLS, CA 91367

1), Plaintiffs and Defendant (hereinafter the "Parties"), agreed that Defendant would pay the following from the Settlement Fund: (i) the settlement administration and notice costs, currently estimated by P&N at $250,000; (ii) attorneys' fees not to exceed 25% of the Settlement Fund (iii) costs of litigation not to exceed $20,000; (iv) an incentive award of $7,500 for Mr. Winters and $5,000 for Mr. Gruber as the named Plaintiffs.

6. The Settlement Agreement was the result of good faith, arm's length settlement negotiations, including a full-day mediation session before the Honorable Andrew J. Guilford (Ret.). The Parties engaged in informal discovery. Defendants produced all information, data and documents relating to data showing concentrations of DL-malic acid added to the challenged, the MSRP information for the challenged products, as well as packaging labels of products containing DL-malic acid, and financial information. In my opinion, having worked on over 100 class actions, I strongly believe there was no stone unturned when it came to the discovery that would have been necessary for my firm to evaluate risk and damages issues. Defendant gave us everything we asked for, so the mediation could be fully informed and productive on both sides.

7. My office received substantial sales and distribution records from Defendant prior to the Mediation. Based on those sales and distribution records the Parties believe that there are approximately 1,000,000-2,000,000 Class Members.

CLASS COUNSEL'S EXPERIENCE

8. The Law Offices of Todd M. Friedman, P.C. seeks appointment as Class Counsel in this Action. I am informed and believe that Class Counsel are qualified and able to conduct this litigation as a class action.

9. As one of the main plaintiff litigators of consumer rights cases in Southern California, I have been requested to and have made regular presentations to

community organizations regarding consumer rights.

10. I have extensive experience prosecuting cases related to consumer issues. My firm, The Law Offices of Todd M. Friedman, P.C., in which I am a principal, has litigated over 1000 individual based consumer cases and litigated over 200 consumer class actions. These class actions were litigated in federal courts in California as well as California State Courts. Approximately 100% percent of my practice concerns consumer litigation in general. I have been and still am lead in numerous class action lawsuits involving claims brought under the UCL, FAL and CLRA.

11. Further, I have taken an active role during the pleadings and discovery stages involving individual and class claims under these laws, as well as in settlement negotiations and in responding to any dispositive and/or other motions. Thus, I have substantial knowledge of the substantive and procedural issues relating to false advertising litigation. In addition, my firm has committed thousands of dollars in out of pocket costs to this litigation to date, for mediation, filing expenses, and expert fees. In addition, my firm agreed to be responsible for the hard costs of class notice, should the Court deny final approval. Such expenses are in excess of $155,000, which is no small risk, given that this represents over 60% of our requested fees in the case. I will continue to financially support the efforts of this case through judgment on behalf of the Class.

12. Therefore, my experience in litigating class actions and my years in practice allow me to provide outstanding representation to the Class as defined in Plaintiff's Motion For Class Certification, filed concurrently. I will strive to fairly, responsibly, vigorously and adequately represent the putative class members in this action.

13. The Law Offices of Todd M. Friedman has served as plaintiff's counsel in at least the following class actions where a settlement was reached on a class-

wide basis and has achieved over $200,000,000 in class-wide relief for consumers and employees.

a. *Dancer v. L.A. Times*, Case No. BC472154 (Los Angeles County Superior Court) (common fund class-wide settlement of $3 million to $4 million granted final approval);

b. *Couser v. Comenity Bank*, Case No. 3:12-cv-02484-MMA-BGS (S.D. Cal.) ($8.475 million class-wide settlement achieved and granted final approval);

c. *Stemple v. QC Financial Services Group of California, Inc.*, Case No. 3:12-cv-01997-CAB-WVG (S.D. Cal.) (certified class achieved by motion, and subsequent class-wide settlement of $1.5 million achieved, with final approval granted);

d. *Couser v. Apria Healthcare, Inc.*, Case No. 8:13-cv-00035-JVS-RNB (C.D. Cal.) (common fund class-wide settlement of $400,000 to $750,000, granted final approval);

e. *Abdeljalil v. General Electric Capital Corporation*, Case No. 12-CV-02078-IEG-RBB (S.D. Cal.) (class-wide settlement with common fund of $6.125 million achieved, preliminary approval granted, final approval granted);

f. *Fox v. Asset Acceptance*, Case No. 3:13-CV-00922-DMS-BGS (S.D. Cal.) (common fund of $1 million in class-wide relief achieved, granted final approval);

g. *Friedman v. LAC Basketball Club, Inc.*, Case No. 2:13-cv-00818-CBM-AN (C.D. Cal.) (class-wide settlement achieved and granted final approval);

h. *Gerich et al. v. Chase Bank USA et al.*, Case No 1:12-cv-5510 (N.D. Ill.) (class-wide settlement of $34 million, granted final approval);

i. *Than Zaw v. Nelnet Business Solutions Inc., et al.*, Case No. 3:13-cv-05788

(N.D. Cal.) (Penal Code § 632 class – achieved class-wide settlement of $1,188,110, granted final approval of court);

j. *Medeiros, et al. v. HSBC Card Services Inc., et al.,* Case No. 2:15-cv-09093-JVS-AFM (C.D. Cal.) (common fund settlement of between $4.5 million and $6.5 million achieved, final approval granted);

k. *Ann Fox v. Spectrum Club Holding Company et al.,* Case No. 2:14-CV-06766-PSG-FFMx (class-wide settlement, final approval granted);

l. *Sayan Aboudi v. T-Mobile USA, Inc.*, Case No. 3:12-cv-02169-BTM-NLS (class-wide settlement in TCPA case, with common fund of $2.5 million to $5 million);

m. *Andrew Roseman v. BGASC, LLC, et al.,* Case No. EDCV 15-1100-VAP (SPx) (C.D. Cal.) (class-wide relief achieved, final approval granted);

n. *Everado Gonzalez v. The Scotts Company,* Case No. BC577875, Consolidated with Case No: BC570350 (Los Angeles County Superior Court) (class-wide settlement of $925,000 in wage and hour class action on behalf of approximately 603 employees achieved, final approval granted);

o. *Payton v. Luxe Valet,* Case No. BC588462 (Los Angeles County Superior Court) (class-wide settlement in wage and hour independent contractor misclassification class action, on behalf of 1,800 employees, settled for $2.4 million, final approval granted);

p. *Shelby v. Two Jinn, Inc.,* Case No. 2:15-cv-03794-AB-GJS (C.D. Cal.) (EFTA class action involving no cognizable actual damages, with net worth of company of $25 million, settled for non-reversionary common fund of $457,000, despite liability under 15 U.S. Code § 1693m(a) likely being only $250,000; final approval granted, zero objections);

q. *Couser v. Dish One Satellite,* Case No. 5:15-cv-02218-CBM-DTB (C.D. Cal.) (TCPA class action, final approval granted);

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
WOODLAND HILLS, CA 91367

r. *Couser v. Dish One Satellite,* Case No. RIC 1603185 (Riverside S.C.) (Penal Code 632 class action, final approval granted);

s. *De La Paz v. Accurate Courier NCA LLC,* Case No. 16CV00555 (Santa Cruz County Superior Court) (PAGA and Labor Code class action, final approval granted);

t. *Ross v. Zurixx LLC,* Case No. 34-2016-00190874 (Sacramento County Superior Court) (UCL, FAL and CLRA class action alleging false advertising for real estate educational courses, non-reversionary common fund settlement for over $600 per class member, final approval granted);

u. *Eubank v. Terminix International, Inc., et al.,* Case No. 3:15-cv-00145-WQH-JMA (S.D. Cal.) (PAGA settlement reached in wage and hour action on behalf of pest control technicians, final approval granted);

v. *Holland v. Tenet Healthcare Corporation,* Case No. 15CVP0226 (San Luis Obispo County Superior Court) (PAGA settlement reached in wage and hour action on behalf of nurses, final approval granted);

w. *Jonathan Weisberg v. HD Supply, Inc.,* Case No. 15-cv-08248-FMO (MRWx) (C.D. Cal.) (class-wide settlement in TCPA class action, settled for $1.225 million, final approval granted);

x. *Miler v. Pacific Auto Wash Partners,* Case No. 30-2015-00813013-CU-OE-CXC (wage and hour class action, final approval granted);

y. *Sonia Barrientos v. Law Office of Jeffrey H. Jordan,* Case No. 2:15-cv-06282-JAK-GJS (C.D. Cal.) (FDCPA/RFDCPA letter class action, settled on class wide basis, final approval granted);

z. *Tahmasian v. Midway Rent A Car,* Case No. 30-2015-00813013-CU-OE-CXC (Los Angeles County Superior Court) (PAGA and Labor Code class action, final approval granted);

aa. *Craig Cunningham v. Lexington Law Firm,* Case No. 1:17-cv-00087-EJF (N.D. UT) (TCPA class action MDL involving solicitation prerecorded

voice calls made by a third party, vicarious liability alleged, final approval granted);

bb. *Sheena Raffin v. Medicredit, Inc., et al.*, Case No. 2:15-cv-04912-MWF-PJW (C.D. Cal.) (Cal. Penal Code § 632.7 class action certified by Hon. George H. King Ret under Rule 23(b)(2) and (b)(3) by contested motion on behalf of 11,000 class members whose calls were recorded without knowledge or consent, settled for $5 million, final approval granted);

cc. *Fernandez v. Reliance Home Services, Inc.*, Case No. BC607572 (Los Angeles County Superior Court) (wage and hour plus PAGA class action, final approval granted);

dd. *Anne Wolf v. Hewlett Packard Company*, Case No. 5:15-cv-01221-TJH-GJS (C.D. Cal.) (CLRA class action certified by contested motion on behalf of tens of thousands of class members who purchased printer that was falsely advertised to include Smart Install feature, settled on a wider multi-state, multi-product basis, final approval granted);

ee. *Jaylinda Girardot, et al. v. Bail Hotline Bail Bonds, Inc.*, Case No. BC700131 (Los Angeles County Superior Court) (wage and hour plus PAGA class action, final approval granted);

ff. *Ryoo Dental, Inc. v. OCO Biomedical, Inc.*, Case No. 8:16-cv-01626-DOC-KES (C.D. Cal.) (TCPA fax blast class action, settled on class wide basis, final approval granted);

gg. *Wondra Curtis v. The Anthem Companies, Inc.*, Case No. 8:16-cv-01654-DOC-JCG (C.D. Cal.) (wage and hour class action for off the clock work, settled on class wide basis, final approval granted);

hh. *Weinberg v. Clarient, Inc.*, Case No. 56-2017-00494914-CU-NP-VTA (Ventura County Superior Court) (Rosenthal Fair Debt Collection Practices Act class action settled on behalf of 1,830 class members for privacy infringements through clear envelope debt collection letters, final

approval granted);

ii. *Aliav v. Sunset Eats, LLC*, Case No. BC655401 (Los Angeles County Superior Court) (false advertising class action on behalf of approximately 10,000 class members, settled on class wide basis; final approval granted);

jj. *Alfred Zaklit, et al. v. Nationstar Mortgage LLC*, Case No. 5:15-cv-02190-CAS-KK (C.D. Cal.) (Cal. Penal Code § 632.7 class action certified by contested motion under Rule 23(b)(2) and (b)(3) on behalf of over 40,000 class members whose calls were recorded without knowledge or consent, final approval granted);

kk. *Mark Silva v. Olson and Co. Steel*, Case No. 17CV001045 (Contra Costa County Superior Court) (wage and hour class action settled on behalf of 563 class members, final approval granted);

ll. *Cohen v. Coca-Cola Refreshments, USA, Inc.*, Case No. 2:19-cv-04083-JAK (PLAx) (C.D. Cal.) (wage and hour class action settlement on behalf of trucking employees, preliminary approval pending);

mm. *Manopla v. Home Depot USA, Inc.*, Case No. 15-1120 (D. N.J.) (TCPA class action, final approval granted);

nn. *Bonilla, et al. v. Windsor Fashion, LLC*, Case No. CIVDS1723088 (wage and hour class action settled on behalf of over 5,000 employees, preliminary approval granted);

oo. *Cawthorne v. Rush Truck Centers of California, Inc.*, Case No. 5:17-cv-1541-JGB-SP (C.D. Cal.) (wage and hour class action on behalf of 560 employees, final approval granted);

pp. *Lizama v. Medical Data Systems, Inc.*, Case No. 34-2017-00210986-CU-NP-GDS (Sacramento County Superior Court) (Penal Code 632.7 class action alleging illegal call recording, settled for $2.2 million on behalf of over 30,000 consumers, final approval granted);

qq. *Romano v. SCI Direct, Inc., et al.*, Case No. 2:17-cv-03537-ODW-JEM

(C.D. Cal.) (wage and hour class action for independent contractor misclassification, settled for $2.5 million on behalf of 230 employees, final approval granted);

rr. *Edward Makaron v. Enagic USA, Inc.*, Case No. 2:15-cv-05145-DDP-E (C.D. Cal.) (TCPA class action certified on behalf of approximately 2,000,000 class members under Rule 23(b)(2) and 23(b)(3), subsequently settled on a Rule 23(b)(2) and 23(b)(3) basis, final approval granted);

ss. *Audrey Hernandez v. Pegasus Building Services, Inc.*, Case No. 37-2018-00023176-CU-OE-CTL (San Diego County Superior Court) (consolidated wage and hour and PAGA class action on behalf of janitorial workers, final approval granted);

tt. *Walsh v. Fry's Electronics, Inc.*, Case No. MSC18-01681 (Contra Costa County Superior Court) (Gift Card Act, CLRA, UCL, FAL class action settled for class-wide public injunctive relief, final approval granted);

uu. *In RE HP Firmware Update Litigation*, Case No. 5:16-cv-05820-EJD (N.D. Cal.) (co-lead class counsel in consolidated Unfair Competition class action alleging HP pushed a firmware update on consumers' printers that blocked their ability to use third party ink cartridges, final approval granted);

vv. *Nishimoto v. T&S Business Corporation*, Case No. 34-2017-00211426 (Sacramento County Superior Court) (wage and hour and PAGA class action on behalf of janitorial workers, final approval granted);

ww. *Rodriguez v. Experian Information Solutions, Inc., et al.*, Case No. 2:15-cv-01224-RAJ (W.D. Wash.) (FCRA class action for improper credit pulls; certified under Rule 23 by contested motion, and settled on class-wide basis, final approval granted);

xx. *Ahmed v. HSBC Bank USA*, Case No. 5:15-cv-02057-FMO (SPx) (C.D. Cal.) (TCPA class, final approval granted);

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
WOODLAND HILLS, CA 91367

yy. *Garcia, et al. v. HMS Host, Inc.*, Case No. 17-cv-03069-RS (N.D. Cal.) (wage and hour class action, final approval granted);

zz. *Aiken v. Malcolm Cisneros, A Law Corporation*, Case No. 5:17-cv-02462-JLS-SP (C.D. Cal.) (Fair Debt Collection Practices Act class action, settled on class wide basis, preliminary approval granted);

aaa. *Marciano, et al. v. Doordash, Inc.*, Case No. CGC 18-567869 (San Francisco County Superior Court) (First-filed and co-lead counsel in consolidated gig economy misclassification class action on behalf of delivery drivers, secured over $88.5 million common fund settlement, largest gig economy class settlement to date, preliminary approval pending);

bbb. *Medina v. Enhanced Recovery Company, LLC,* Case No. 2:15-cv-14342-JEM/MAYNARD (S.D. Fla.) (TCPA class settlement common fund of $1.45M, final approval granted);

ccc. *Kim v. Tinder, Inc.*, Case No. 2:18-cv-03093-JFW-AS (C.D. Cal.) (Unruh Act class settlement on behalf of 240,000 consumers; granted final approval, case on appeal);

ddd. *Griffey v. TA Operating, LLC*, Case No. CIVDS1907259 (San Bernardino County Superior Court) (PAGA settlement $390,000 final approval granted);

eee. *D'Angelo Santana v. Rady Children's Hospital*, Case No. 37-2014-00022411-CU-MT-CTL (San Diego County Superior Court) (Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq*. class settlement final approval granted);

fff. *Chavis v. Three Group, Inc.*, Case No. 18STCV08737 (Los Angeles County Superior Court) (wage and hour PAGA settlement on behalf of dancers alleging contractor misclassification, final approval granted);

ggg. *Hale v. Mana Pro Products, LLC*, Case No. 2:18-cv-00209-KJM-DB

(E.D. Cal.) (false advertising class action, preliminary approval granted);

hhh. *Fabricant v. AmeriSave Mortgage Corporation*, Case No. 2:19-cv-04659-AB-AS (C.D. Cal.) ($6.25 million common fund TCPA class action settlement, final approval granted);

iii. *El Nasleh v. California Spaghetti Restaurants, Inc.*, Case No. CIVDS1812587 (San Bernardino County Superior Court) (wage and hour class action settlement on behalf of restaurant employees, preliminary approval pending).

14. My firm has also been appointed as class counsel in the following cases which were certified as class actions by contested motion:

a. *Sheena Raffin v Medicredit, Inc*. et. al., Case No. 2:15-cv-04912-MWF-PJW (C.D. Cal.) (Cal. Penal Code § 632.7 class action certified by Hon. George H. King Ret. under Rule 23(b)(2) and (b)(3) on behalf of class members whose calls were recorded without knowledge or consent);

b. *Anne Wolf v Hewlett Packard Company*, Case No. 5:15-cv-01221-BRO-GJS (C.D. Cal.) (CLRA class action certified on behalf of tens of thousands of class members who purchased printer that was falsely advertised to include Smart Install feature);

c. *Caldera v. American Medical Collection Association*, (C.D. Cal.) Case No. 2:16-cv-00381-CBM-AJW (TCPA class action on behalf of 30,000-100,000 class members, certified by contested motion)

*d. Alfred Zaklit, et. al. v. Nationstar Mortgage LLC*, Case No. 5:15-cv-02190-CAS-KK (C.D. Cal.) Cal. Penal Code § 632.7 class action certified under Rule 23(b)(2) and (b)(3) on behalf of class members whose calls were recorded without knowledge or consent);

e. *D'Angelo Santana vs Rady Children's Hospital*, Case No. 37-2014-

00022411-CU-MT-CTL (San Diego Superior Court) Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.*;

f. *Edward Makaron v. Enagic USA, Inc.*, Case No. 2:15-cv-05145-DDP-E (C.D. Cal.) (TCPA class action certified on behalf of approximately 1,000,000 class members under Rule 23(b)(2) and 23(b)(3)); and

g. *Rodriguez v. Experian Information Solutions, Inc. et. al.* Case No. 2:15-cv-01224-RAJ (W.D. Wash.) (FCRA class action for improper credit pulls; certified under Rule 23).

h. *Stemple v. QC Financial Services Group of California, Inc.*, Case No. 3:12-cv-01997-CAB-WVG (S.D. Cal.) (certified class achieved by motion, and subsequent class-wide settlement);

i. *Abdeljalil v. General Electric Capital Corporation,* Case No. 12-CV-02078-IEG-RBB (S.D. Cal.) (certified class achieved by motion, and subsequent class-wide settlement);

j. *Aleksanian, et al. v. Enrich Financial, Inc.*, Case No. BC698829 (Los Angeles County Superior Court) (certified class under Credit Repair Organization Act, California Credit Services Act and Federal Credit Repair Organization Act);

k. *McCurley v Royal Seas Cruises, Inc.*, Case No. 17-cv-986 BAS (AGS) (one of, if not the first TCPA class actions certified by contested motion on a contested manufactured consent theory).

## II. Overview of Law Offices of Todd M. Friedman, P.C.'s Efforts in this Action

### A. Contingent Nature of Action

15. Plaintiff Winters filed the initial class action complaint ("Complaint") on March 12, 2020. In the Complaint, Plaintiff Winters alleged causes of action

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
WOODLAND HILLS, CA 91367

for violations of the UCL, FAL, and CLRA. Winters has filed two amended complaints since that time. Based on those allegations, Plaintiff Winters sought actual damages, punitive damages, and injunctive relief. Plaintiff's claims were brought on behalf of a class of individuals who purchased specific Two Towns products within four years prior to the filing of the original complaint through to the date of class certification.

16. My office engaged in early discovery with Defendant and obtained records relating to all merits, certification and damages issues that were necessary to evaluate risk and valuation of the claims at issue in my opinion. This included documentation of the concentrations of DL-malic acid added to Defendant's products, documents and information relating to Defendant's packaging, financial records, and sales and distribution records. From this we were able to conduct work product into the defense that the challenged Products did not uniformly contain DL-malic acid which bore on certification and merits issues. Additionally, our in house expert Myles Edwards performed substantial chemical testing on Defendant's products. All of this work was completed prior to setting foot into mediation, and all risks were properly evaluated with extensive legal and factual research. Multiple claims administrators were consulted for quotes and experience, in advance of mediation, and during mediation negotiations in order to find the best fit for the Class. Mr. Edwards also provided a compelling merits declaration in support of our position which was provided to the mediator and defense counsel.

17. We then mediated into the late hours with Judge Guilford, with my partner Mr. Bacon and several associates participating for the Class. We did not reach a deal, but made significant progress. Several additional mediation sessions needed to be conducted with significant further exchanges of information and negotiations between counsel. Ultimately a mediators

proposal from Judge Guilford was agreed to by both sides.

18. Thereafter, we presented the settlement to the Court for approval. The settlement was approved by the Court, and my office has overseen the administration process since that time.

19. Throughout this action, hundreds of emails have been exchanged between myself, my partner, our staff, defense counsel, class members and the administrator. We have also spend over 353.1 hours working on various matters described herein. The hours spent are described below, and records of the time entries are attached hereto as Exhibit B.

20. Including our pre-filing investigation, this action, required the Law Offices of Todd M. Friedman, P.C. to spend almost a year and a half on this litigation that could have been spent on other matters, and we will continue to oversee this litigation for the next several months while settlement and approval are finalized, until all funds are distributed to Class Members. At various times during the litigation of this class action, this lawsuit has consumed my time as well as my firm's resources. Hundreds of emails have been exchanged during that time between members of my firm, counsel for Defendant, the claims administrator, class members, Plaintiff, our expert, and others. My firm has not been paid anything for our work on this case since it was filed and we have spent over $7,907.96 in hard costs prosecuting this action on behalf of Plaintiff and the proposed class. We also agreed to "front" the hard costs of notice, which are approximately $155,000 (for radio ads, mailing and other out of pocket expenses). I run a relatively small law firm, so an expenditure of this nature, in a hotly contested case, was a big risk that we took for the sake of standing up for the Class. It is my opinion that law firms in such a position expect to receive a multiplier in cases such as these because of the risk taken, the extent to which firms are unable to take on other cases, the delay in getting paid and the costs we have to advance.

### B. LAW OFFICES OF TODD M. FRIEDMAN, P.C.'S LODESTAR

21. Law Offices of Todd M. Friedman, P.C. has maintained contemporaneous time records since the commencement of this action. To date, I have incurred 353.1 hours of attorney and expert[1] time for this case,[2] with a total lodestar of $183,590.00. My billing rate is $750 per hour in this case, the billing rate for Adrian R. Bacon is $650 per hour, the billing rate for Steven G. Perry is $375 per hour, the billing rate for David B. Levin is $650 per hour, and the rate for Myles Edwards is $195 per hour.

### C. LAW OFFICES OF TODD M. FRIEDMAN, P.C.'S COSTS

22. My firm has incurred litigation costs in this matter in the amount of $7,907.96, for which my firm is seeking reimbursement. These costs are comprised of costs for filing and serving the complaint, transmitting copies of ECF filings to the Honorable Court, payment of mediation fees to Judicate West, mailing expenses, and investigation costs. The breakdown of costs is as follows:

| Description | Cost |
|---|---|
| Courier and service fees | $115.00 |
| Filing fee | $400.00 |
| Investigation costs[3] | $519.22 |
| Mediation Fee | $6,250.00 |
| Shipping costs | $92.44 |
| Cost of Products for Testing[4] | |
| **TOTAL** | **$7,907.96** |

[1] Mr. Edwards is being billed as an in-house expert, as part of our fees, not as a cost of litigation. This is considerably lower expense to the Class than if my office hired an outside chemist to conduct the analysis, and sought to be reimbursed as a cost of litigation, as the fee request is encompassed by the percentage of the fund.

[2] In calculating these hours, I have excluded time spent by clerks and paralegals.

[3] These costs include the cost of equipment and testing kits used by my office's lab to run the appropriate tests on whether the products were mislabeled and contained artificial ingredients.

[4] While Plaintiffs' products were tested, this cost solely relates to the cost of the products my lab purchased and testeds to determine the scope of class products.

23. Should my firm incur costs through final approval of this action, Plaintiffs will seek reimbursement of such costs, up to a total of $20,000, as set forth in the Settlement Agreement. At this time, unless depositions of potential objectors need to be taken (unlikely since there have been no objectors to date and only a few weeks left to object), I have no reason to believe that my firm's costs will exceed $8,000 by the conclusion of the case. Accordingly, the Class Members will be receiving approximately $12,000 more than they were informed in the Class Notice.

**D. REASONABLENESS OF HOURLY RATES**

24. Law Offices of Todd M. Friedman, P.C.'s hourly rates are reasonable in respect to the ranges charged by comparable law firms in the State of California.[5] My billing rate is $750 per hour in this case, the billing rate for Adrian R. Bacon is $650 per hour, the rate of third year associate Steven G. Perry is $375 per hour, the rate for senior attorney David B. Levin is $650 per hour, and the rate for Chemistry expert Myles Edwards is $195 per hour.

25. Regarding my rate, I have been practicing law since 2001, and am the managing partner of one of the most active consumer protection law firms in California. I have been counsel of record on hundreds of class action lawsuits, dozens of which have resolved on a class-wide basis. In the past three years alone, my firm has been counsel on cases totaling over $95 million in class-wide relief for consumers. Three years ago, I was approved at a rate of $675 at final approval in the case of *Shelby v Two Jinn, Inc.*, Case No. 2:15-cv-03794-AB-GJS (C.D. Cal.), and my partner Adrian Bacon was approved at a rate of $575. We have both been approved at those figures roughly ten times during the 2017-2018 time period. Due to general inflation in rates as shown in the Laffey Matrix, we increased our rates to $725 and

[5] *See* Laffey Matrix attached hereto as Exhibit A.

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
WOODLAND HILLS, CA 91367

$625 respectively in 2019, and were approved at those rates close to ten times during that calendar year, including by Judge Fitzgerald in the *Raffin* case, Judge Pregerson in *Enagic*, and by Judge Hatter in the *Wolf* case. The *Wolf* case involved a contested fee brief, where the defense contested the reasonableness of our rates. We litigated that case from 2015 to 2020, and were approved at $725 and $625 respectively. In 2020, we applied a $25 per hour increase to these rates based on inflation and additional experience and have been approved at those rates a number of times including in the *Nishimoto* action, the *Romano* actions, and others. This Court upheld our 2019 rates recently in the *McCurley* matter, and held that myself and Mr. Bacon were "skilled, experienced class action litigators very familiar to this Court" with "quite a bit of experience in the area of class action litigation." Based on the Laffey Matrix, our hourly rates fall within the scope of reasonable fees.

26. My partner Adrian R Bacon has been licensed to practice since 2011 and has worked as a plaintiffs' side class action litigation attorney for the duration of his career. Prior to receiving his law license, he worked for the Federal Trade Commission, and was involved in several "sweeps" including one dubbed Operation Shortchange, where the FTC shut down a series of scammers who were taking advantage of consumers during the financial downturn and achieved a multi-nine figure judgment against them which made headlines. He also worked on and participated in a federal raid, referred to as an "Immediate Access" and thereafter a receivership against a scam boiler room posing as part of the Obamacare plan by selling fake medical discount cards to vulnerable sick people during the last economic downturn. The company was bilking people out of their last savings by selling them substitutes for medical insurance through bogus discount cards that were not recognized or accepted anywhere that they were advertised. Mr. Bacon was part of the team

that shut down their operations in Tempe Arizona along with a team of agents and federal marshals.

27. Once he was licensed to practice, he began by working at Strange & Carpenter as an associate on consumer protection class actions, including heading up the document production team on the Toyota Unintended Acceleration Litigation. While there, he drafted and worked on several published opinions, including a Ninth Circuit decision *Corvello v. Wells Fargo* and the now heavily-cited opinion *Nguyen v. Barnes & Noble* denying a motion to compel arbitration, which was upheld by the Ninth Circuit.

28. Mr. Bacon left the firm and went to work at Marlin & Saltzman in their Orange County office under Louis M. Marlin, a highly decorated retired class action attorney, and now respected mediator. Marlin & Saltzman is a class action litigation firm that specializes in wage and hour class actions. Mr. Bacon worked there for two years and was appointed class counsel on several wage and hour class actions. He was instrumental in favorably settling one such class action against Ikea for more than twice what the company came to mediation willing to pay, which is cited below.

29. In 2014 he lateralled over to my firm, where he has served as the head of litigation at my office for over six years. He was made a partner in 2018 after having certified and settled numerous class actions for clients of our firm and helped revamp our litigation department. Almost every single one of the class actions that our firm has settled, certified or otherwise litigated in earnest on behalf of our clients out of our California office have been cases that he has overseen with me.

30. Mr. Bacon has argued multiple cases before the Ninth Circuit and California Supreme Court in advance of consumer rights, including *Gallion v* United States, 772 Fed.Appx. 604 (9th Cir. July 8, 2019), and *Smith v. Loanme*, Case No. S260391.

31. In addition to my firm's experience, Mr. Bacon has separately been approved as class counsel at his prior firm on several wage and hour class action matters, including the following:

jjj. *Miller v. Ikea California, LLC*, Case No.: 30-2009 00331682 (Orange County Superior Court) ($5.75M class settlement granted final approval);

kkk. *David Paiva, et al v. Denny Corporation et al.*, Case No. 37-2010-00103831-CU-OE-CTL (San Diego County Superior Court) (granted final approval); and

lll. *Juan Martinez, et al v. Valley Pride, Inc. et al.*, Case No. M108688 (Monterey County Superior Court) (granted final approval).

32. Mr. Perry is a graduate of Chicago-Kent College of Law and a third-year associate at my firm. He has worked extensively on consumer protection matters, including class actions, during his years with my firm. Mr. Perry also leads our research department, working with our in house expert to investigate instances of consumer fraud and mislabeling. In light of his experience, an hourly rate of $375 is warranted, and is further warranted in light of customary rates for junior level associates on the Laffey Matrix.

33. Mr. Levin is the managing attorney for the Chicago office of my firm. Mr. Levin has been practicing law since 1993. Mr. Levin has spent nearly his entitre legal career representing the rights of sonsumers, handling cases under the Fair Debt Collection Practices act, Telephone Consumer Protection Act, Fiar Credit Reporting Act, and many other related consumer protection laws. Prior to joining my firm, Mr. Levin was a partner in his own consumer protection firm which represented consumers in ten states. Mr. Levin also helped build two of the largest consumer law firms in the country. In light of his experience, an hourly rate of $650 is warranted, and is below the customary rates for attorneys with twenty or more years of experience on the

Laffey Matrix.

34. Mr. Edwards holds both a Bachelor's and Master's degrees in Chemistry from DePaul University. As part of his education, he studied chemistry for seven years, while working as research assistant and a graduate researcher. He has published articles and spoken at both local and state scientific conferences. He has also worked as a chemist for Spherotech, where he researched and developed protocols for the formation of microparticles, as well as a lab technician at Harper College performing chemical analysis on a variety of lab instruments. He now runs my firm's Chicago laboratory as our lead research chemist and scientific consultant. Mr. Edwards' work was instrumental in identifying the claims at issue in this case.

35. I anticipate Law Offices of Todd M. Friedman, P.C. will incur an additional 40+ hours preparing for the final approval hearing, appearing at the hearing, and overseeing the settlement administration, including addressing any questions by settlement Class Members (there are zero objectors and eight opt-out to date), as well as filing status reports after final approval. I believe this is a conservative estimate of our future hours based on my experience in these matters, and it does not account for the potential for objectors or appeals. Our hours will increase considerably in the event of an objection, to the point where we will likely be receiving a negative lodestar. This possibility additionally demonstrates that the fee request is reasonable, because my office will vigorously defend the settlement if such occurs, and will receive no additional compensation under those circumstances than we are already requesting.

36. With regard to a bare bones loadstar amount, our current billing records reflect approximately 353.1 hours of time. Based on these rates, and the accompanying time entries for each corresponding individual, the loadstar estimate for this Case is $183,590.00.

37. Here is a breakdown and summary of the fees incurred by Plaintiff's counsel in connection with this Case:

| **NAME** | **HRS. INCURRED** | **RATE** | **TOTAL** |
|---|---|---|---|
| TODD M. FRIEDMAN | 43.8 | $750 | $32,850.00 |
| ADRIAN R. BACON | 134.1 | $650 | $87,165.00 |
| STEVEN G. PERRY | 114.9 | $375 | $43,087.50 |
| DAVID B. LEVIN | 20.3 | $650 | $12,687.50 |
| MYLES EDWARDS | 40.0 | $195 | $7,800.00 |
| **TOTAL COMBINED LODESTAR** | **353.1** | | **$183,590.00** |

38. My firm maintained contemporaneous records of our time, and upon request from the Court, I will be prepared to submit detailed itemized time records of the tasks completed by various members of my firm, and the amount of time for each task and days each task was completed. See Exhibit B attached.

39. Based on the foregoing, I submit that our request for an award of 25% of the Common Fund is reasonable. This represents a 1.34 multipleir on my office's Lodestar.

40. Our fee request is further reasonable in light of the strength of this settlement for the Class members. As of the claims deadline, there were approximately 35,575 Class Members who submitted Valid Claims. This would translate to approximately $13.39 per Class Member who submitted a Valid Claim Form. This figure was based on a participating class size of 35,575 claimants, an assumption that class notice would cost $250,000, that fees would be $246,250, that incentive awards would be $7,500 and $5,000, and that costs of litigation would be $7,907.96. Given that the product costs less than that amount per unit at the retail level, the class members will be receiving a substantial recovery.

41. I also would submit that Mr. Winters should be awarded an incentive award

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
WOODLAND HILLS, CA 91367

of $7,500 and Mr. Gruber should be awarded an incentive award of $5,000 for their efforts in assisting with this litigation. Mr. Winters and Mr. Gruber were instrumental in bringing this case, having provided my office with the information and documents necessary to successfully litigate this class action for the class members, participating in settlement discussions and informal discovery, providing declarations to the Court in support of approval and communicating promptly with my office in order to see this litigation successfully moved towards a favorable class-wide result. Mr. Winters participated in the mediation, and also retained some cans of his product which he had not yet consumed and sent it to our lab for testing on request. Without his doing so, the case may not have settled at all, due to the position that Defendant was taking. For these reasons, I believe the requested incentive awards are reasonable and deserved.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on February 15, 2021.

By:/s/ Todd M. Friedman
Todd M. Friedman, Esq.

# EXHIBIT A

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
WOODLAND HILLS, CA 91367

# LAFFEY MATRIX



| | | | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| Year | Adjustmt Factor** | Paralegal/ Law Clerk | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/20- 5/31/21 | 1.015894 | $206 | $378 | $465 | $672 | $759 | $914 |
| 6/01/19- 5/31/20 | 1.0049 | $203 | $372 | $458 | $661 | $747 | $899 |
| 6/01/18- 5/31/19 | 1.0350 | $202 | $371 | $455 | $658 | $742 | $894 |
| 6/01/17- 5/31/18 | 1.0463 | $196 | $359 | $440 | $636 | $717 | $864 |
| 6/01/16- 5/31/17 | 1.0369 | $187 | $343 | $421 | $608 | $685 | $826 |
| 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |
| 6/01/09- 5/31/10 | 1.0220 | $155 | $285 | $349 | $505 | $569 | $686 |
| 6/01/08- 5/31/09 | 1.0399 | $152 | $279 | $342 | $494 | $557 | $671 |
| 6/01/07-5/31/08 | 1.0516 | $146 | $268 | $329 | $475 | $536 | $645 |
| 6/01/06-5/31/07 | 1.0256 | $139 | $255 | $313 | $452 | $509 | $614 |
| 6/1/05-5/31/06 | 1.0427 | $136 | $249 | $305 | $441 | $497 | $598 |
| 6/1/04-5/31/05 | 1.0455 | $130 | $239 | $293 | $423 | $476 | $574 |
| 6/1/03-6/1/04 | 1.0507 | $124 | $228 | $280 | $405 | $456 | $549 |
| 6/1/02-5/31/03 | 1.0727 | $118 | $217 | $267 | $385 | $434 | $522 |
| 6/1/01-5/31/02 | 1.0407 | $110 | $203 | $249 | $359 | $404 | $487 |
| 6/1/00-5/31/01 | 1.0529 | $106 | $195 | $239 | $345 | $388 | $468 |
| 6/1/99-5/31/00 | 1.0491 | $101 | $185 | $227 | $328 | $369 | $444 |
| 6/1/98-5/31/99 | 1.0439 | $96 | $176 | $216 | $312 | $352 | $424 |
| 6/1/97-5/31/98 | 1.0419 | $92 | $169 | $207 | $299 | $337 | $406 |
| 6/1/96-5/31/97 | 1.0396 | $88 | $162 | $198 | $287 | $323 | $389 |
| 6/1/95-5/31/96 | 1.032 | $85 | $155 | $191 | $276 | $311 | $375 |
| 6/1/94-5/31/95 | 1.0237 | $82 | $151 | $185 | $267 | $301 | $363 |

The methodology of calculation and benchmarking for this Updated Laffey Matrix has been approved in a number of cases. See, e.g., McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001); Salazar v. Dist. of Col., 123 F.Supp.2d 8 (D.D.C. 2000).

* "Years Out of Law School" is calculated from June 1 of each year, when most law students graduate. "1-3" includes an attorney in his 1st, 2nd and 3rd years of practice, measured from date of graduation (June 1). "4-7" applies to attorneys in their 4th, 5th, 6th and 7th years of practice. An attorney who graduated in May 1996 would be in tier "1-3" from June 1, 1996 until May 31, 1999, would move into tier "4-7" on June 1, 1999, and tier "8-10" on June 1, 2003.

** The Adjustment Factor refers to the nation-wide Legal Services Component of the Consumer Price Index produced by the Bureau of Labor Statistics of the United States Department of Labor.

# EXHIBIT B

THE LAW OFFICES OF TODD M. FRIEDMAN, PC
WOODLAND HILLS, CA 91367

**WINTERS ET. AL. V. TWO TOWNS CIDERHOUSE, INC.**
**TIME RECORDS**

**TODD M. FRIEDMAN – MANAGING PARTNER**
**HOURLY RATE: $750**

| Date Created | Task Name | Task Time |
|---|---|---|
| 12/2/2019 | Initial discussions with client, open file, prepare PNC packet and retainer agreement | 3 |
| 12/2/2019 | Review initial case materials, discuss new case with client | 2.2 |
| 12/2/2019 | Receipt of documents from client, review and open new case file | 1 |
| 12/2/2019 | Additional documents and information from client, including signed retainer, update calendar system with complaint filing deadline and add information and documents to file | 1.2 |
| 12/12/2019 | Discussed investigation results with Steven Perry | 1.3 |
| 4/22/2020 | Email round table with Steven Perry Re: merits of case, investigations performed, and case theory | 0.5 |
| 5/13/2020 | Email back and forth with opposing counsel re: choosing a mediator | 0.6 |
| 5/14/2020 | Email back and forth with opposing counsel re: choosing a mediator | 0.8 |
| 5/18/2020 | Email round table with Steven Perry Re: class-wide settlement. | 0.6 |
| 5/18/2020 | Email back and forth with opposing counsel re: choosing a mediator | 0.3 |
| 5/22/2020 | Review informal discovery provided by Defendant pursuant to mediation | 1.6 |
| 5/28/2020 | Round table discussion regarding mediation brief. Provided additional feedback to Steven Perry | 1.2 |
| 6/3/2020 | Email Opposing counsel Re: claims administration | 0.3 |
| 6/4/2020 | Round table telephone call with Steven Perry and David Levin | 0.8 |
| 6/5/2020 | Calls with Adrian Bacon during mediation regarding status | 1.0 |

| | | |
|---|---|---|
| 6/5/2020 | phone call with Adrian Bacon debrief regarding mediation and next steps | 0.8 |
| 6/8/2020 | Email to Steven Perry Re: gathering data for continued mediation | 1.3 |
| 6/9/2020 | call with Todd Friedman re case status | 0.4 |
| 6/12/2020 | call with Adrian Bacon re mediation and case status | 0.4 |
| 6/14/2020 | discuss mediator’s proposal with Adrian Bacon | 0.3 |
| 6/15/2020 | Email round table to discuss acceptance of Mediator proposal | 0.6 |
| 7/3/2020 | Emails with Steven Perry Re: calculating litigation costs, | 0.9 |
| 7/8/2020 | Email to Steven Perry Re: Claims Administration | 0.3 |
| 7/15/2020 | emails with judicate west and defense re dispute; discuss with Adrian Bacon | 0.5 |
| 7/25/2020 | Email to Steven Perry with instructions on final versions of claims administration documents | 0.3 |
| 7/27/2020 | review and approve P&N engagement letter for administration; discuss with Adrian Bacon | 0.6 |
| 7/28/2020 | final review of preliminary approval motion and declaration; | 0.8 |
| 7/28/2020 | Email to Steven Perry Re: Finalizing drafts of preliminary approval motion and Declaration of Plaintiff's counsel | 0.2 |
| 9/30/2020 | Emails back and forth with Claims administrator | 0.7 |
| 10/8/2020 | Email Steven Perry Re: testing class settlement website | 0.3 |
| 10/30/2020 | review administration report, discuss with Adrian Bacon | 0.2 |
| 11/6/2020 | review administration report, discuss with Adrian Bacon | 0.2 |
| 11/13/2020 | review administration report, discuss with Adrian Bacon | 0.2 |
| 11/20/2020 | review administration report, discuss with Adrian Bacon | 0.2 |
| 12/4/2020 | review administration report, discuss with Adrian Bacon | 0.2 |
| 12/11/2020 | review administration report, discuss with Adrian Bacon | 0.2 |

| | | |
|---|---|---|
| 12/18/2020 | review administration report, discuss with Adrian Bacon | 0.3 |
| 12/28/2020 | emails with defense counsel, with bank, and coordination of escrow payment towards class settlement with defense counsel | 0.3 |
| 12/29/2020 | emails with defense counsel, with bank, and coordination of escrow payment towards class settlement with defense counsel | 0.3 |
| 12/30/2020 | emails with defense counsel, with bank, and coordination of escrow payment towards class settlement with defense counsel | 0.6 |
| 1/4/2021 | emails with administrator re-claims status | 0.2 |
| 1/5/2021 | emails with administrator re-claims status | 0.2 |
| 1/6/1900 | emails with administrator re-claims status | 0.2 |
| 1/6/2021 | review two towns cider law 360 publication, emails with Adrian | 0.2 |
| 1/13/2021 | emails with administrator and opposing counsel re-claims status | 0.2 |
| 1/13/2021 | emails with Adrian and Steve re fee motion and approval status | 0.2 |
| 1/19/2021 | discuss fee motion and final approval status with Adrian Bacon | 0.3 |
| 2/4/2021 | emails with administrator regarding final approval | 0.1 |
| 2/5/2021 | emails with Adrian Bacon and Steve Perry re fee motion | 0.2 |
| 2/10/2021 | draft declaration in support of motion for fees | 2.7 |
| 2/11/2021 | review correspondence from administrator and supplemental notice letter; discuss with Adrian Bacon | 0.6 |
| 2/14/2021 | final review and approval of motion for fees | 1.2 |
| Various | Anticipated future hours | 10 |

**TOTAL TIME:** **43.8**
**HOURLY RATE:** **$750**
**LODESTAR:** **$32,850.00**

**ADRIAN R. BACON –PARTNER**
**HOURLY RATE: $650**

| Date Created | Task Name | Task Time |
|---|---|---|
| 12/2/2019 | Intake call with client, discuss with Todd Friedman | 1.2 |
| 12/12/2020 | Discussed investigation results with Steven Perry | 1.3 |
| 3/10/2020 | Reviewed Complaint; Provided instructions to Steven Perry | 1.5 |
| 3/11/2020 | Reviewed CLRA notice letter; Provided instructions to Steven Perry | 0.3 |
| 4/21/2020 | Email with Opposing counsel re: stipulation to extend Defendant's time to respond | 0.3 |
| 4/22/2020 | Email with Opposing counsel Re: scheduling a meet and confer telephone call | 0.3 |
| 4/22/2020 | Email round table with Steven Perry Re: merits of case, investigations performed, and case theory | 0.5 |
| 4/23/2020 | Review Joint motion granting Defendant extension of time to answer complaint. | 0.2 |
| 4/23/2020 | Meet and Confer telephone call with Opposing Counsel | 0.5 |
| 4/27/2020 | Meet and Confer telephone call with Opposing Counsel | 0.5 |
| 4/27/2020 | Email with Opposing counsel Re: class-wide mediation | 0.8 |
| 5/6/2020 | Email with Opposing counsel Re: class-wide mediation | 0.3 |
| 5/11/2020 | Instructed Steven Perry on Drafting the First amended Complaint | 0.5 |
| 5/12/2020 | Meet and Confer telephone call with Opposing Counsel | 0.5 |
| 5/13/2020 | Reviewed Proposed protective order | 0.4 |
| 5/13/2020 | Emails with opposing counsel re: choosing a mediator | 0.6 |
| 5/14/2020 | Reviewed and approved draft joint motion for entry of a protective order | 0.2 |
| 5/14/2020 | Email back and forth with opposing counsel re: choosing a mediator | 0.8 |
| 5/18/2020 | Reviewed First Amended Complaint; provided feedback and instructions | 1.5 |

| | | |
|---|---|---|
| 5/18/2020 | Reviewed research report | 0.7 |
| 5/18/2020 | Email round table with Steven Perry Re: class-wide settlement. | 0.6 |
| 5/18/2020 | Email back and forth with opposing counsel re: choosing a mediator | 0.3 |
| 5/19/2020 | Provided instructions to Steven Perry to draft mediation brief | 0.5 |
| 5/19/2020 | Reviewed stipulation for Plaintiff to file First Amended complaint | 0.5 |
| 5/21/2020 | Emailed opposing counsel Re: agreement to be bound by confidentiality order. | 0.3 |
| 5/22/2020 | Provided list of counsel attending the mediation to opposing counsel | 0.3 |
| 5/22/2020 | Review informal discovery provided by Defendant pursuant to mediation | 1.6 |
| 5/23/2020 | Initial review of mediation brief; provided Steven Perry with instructions | 1.8 |
| 5/25/2020 | Second review mediation brief; provided additional edits and comments to Steven Perry | 2.3 |
| 5/26/2020 | Reviewed initial draft affidavit; provided feedback and requested additional information from expert | 0.6 |
| 5/27/2020 | Reviewed finalized draft of expert affidavit | 1.2 |
| 5/28/2020 | Round table discussion regarding mediation brief. Provided additional feedback to Steven Perry | 1.2 |
| 5/28/2020 | Instructed Plaintiff on Mediation | 0.5 |
| 5/29/2020 | Provided final review and edits for Mediation brief | 0.9 |
| 5/29/2020 | provide update on mediation and discuss case status with client | 0.8 |
| 6/2/2020 | review court order on protective order, discuss with opposing counsel and review revised filing and approve | 0.3 |
| 6/2/2020 | brief initial call with administrator re rough parameters of potential claims process | 0.5 |
| 6/3/2020 | Email Opposing counsel Re: claims administration | 0.3 |
| 6/3/2020 | lengthy initial call with claims administrator to formulate best notice plan practicable, and discuss costs and options | 1.4 |

| | | |
|---|---|---|
| 6/4/2020 | comprehensive case file review, review of brief, review of case law and review of evidence in order to prepare for mediation | 3.0 |
| 6/4/2020 | phone call with Judge Guilford prior to mediation to discuss the case | 0.6 |
| 6/4/2020 | Round table telephone call with Steven Perry and David Levin | 0.8 |
| 6/5/2020 | Mediation Preparation and attendance | 13.4 |
| 6/6/2020 | phone call with Todd Friedman debrief regarding mediation and next steps | 0.8 |
| 6/8/2020 | Discussions with Steven Perry Re: gathering data for continued mediation | 1.3 |
| 6/8/2020 | call with client re mediation update and to coordinate mailing of remainder of product to lab for subsequent testing | 0.6 |
| 6/9/2020 | Meet and Confer telephone call with Opposing Counsel | 0.5 |
| 6/9/2020 | call with Todd Friedman re case status | 0.4 |
| 6/9/2020 | comprehensive email on case status and memo to the file on status of ongoing mediation efforts | 2.0 |
| 6/10/2020 | Email to Mediator Re: continued negotiations | 1.5 |
| 6/10/2020 | Review Plaintiff Jake Gruber's affidavit. | 0.5 |
| 6/10/2020 | Email Steven Perry with instructions on drafting affidavits | 0.3 |
| 6/11/2020 | emails with defense re timing and scheduling order | 0.2 |
| 6/12/2020 | Telephone call with Mediator | 0.6 |
| 6/12/2020 | call with Todd Friedman re mediation and case status | 0.4 |
| 6/12/2020 | emails with defense continuing mediation dialogue | 0.3 |
| 6/14/2020 | Email regarding mediator’s proposal | 0.3 |
| 6/14/2020 | discuss mediator’s proposal with Todd Friedman | 0.3 |
| 6/15/2020 | Email round table to discuss acceptance of Mediator proposal | 0.6 |
| 6/24/2020 | Email instructions to Steven Perry Re: drafting claims administration materials | 0.5 |
| 6/24/2020 | Email with Claims Administrator | 0.3 |
| 6/25/2020 | Meet and Confer telephone call with Opposing Counsel | 0.5 |

| | | |
|---|---|---|
| 6/25/2020 | Email Steven Perry with instructions for drafting amended complaint, stipulation to amend, and class notice documents | 0.3 |
| 6/26/2020 | Review Claims administration advertisement documents drafted by Steven Perry | 0.7 |
| 6/30/2020 | discussions with claims administrator and defense counsel re-claims process | 0.5 |
| 6/30/2020 | review/revise class notice forms | 1.5 |
| 6/30/2020 | Provide Steven Perry with instructions for redrafting Radio Advertisements | 0.3 |
| 7/1/2020 | emails with defense re class notice | 0.2 |
| 7/2/2020 | Email with opposing counsel Re: draft settlement agreement, proposed final judgement, and proposed preliminary approval | 0.3 |
| 7/2/2020 | emails re-claims administrator to discuss administration process | 0.6 |
| 7/2/2020 | call with claims administrator | 0.4 |
| 7/3/2020 | Review and edited draft settlement agreement, draft preliminary approval order, and draft final judgement | 4.3 |
| 7/3/2020 | Emails with Steven Perry Re: calculating litigation costs, | 0.9 |
| 7/6/2020 | review and approve class notice plan and quote | 0.8 |
| 7/6/2020 | review revisions to class notice suggestions by claims administrator; emails re same | 0.5 |
| 7/6/2020 | Email to opposing counsel Re: accepted changes made to class administration | 0.3 |
| 7/8/2020 | Email to Steven Perry Re: Claims Administration | 0.3 |
| 7/8/2020 | Telephone call with claims administrator | 1.2 |
| 7/8/2020 | Email to opposing counsel Re: Plaintiff's edits to final judgement, preliminary approval order, and settlement agreement | 0.3 |
| 7/9/2020 | emails with defense re notice costs and who pays for it | 0.5 |
| 7/10/2020 | emails with defense and judicate west re mediator input on dispute re class notice costs | 0.3 |
| 7/10/2020 | review and approve stipulation to continue deadlines | 0.3 |
| 7/14/2020 | emails with judicate west and defense re dispute | 0.5 |
| 7/14/2020 | call with defense re dispute of class notice costs | 0.2 |
| 7/15/2020 | emails with judicate west and defense re dispute; discuss with Todd Friedman | 0.5 |

| | | |
|---|---|---|
| 7/15/2020 | Reviewed Defendant's edits to final judgement, preliminary approval order, and settlement agreement | 2.1 |
| 7/17/2020 | final review of settlement documents; emails with defense re same | 1.0 |
| 7/17/2020 | Reviewed Plaintiff's declarations | 0.6 |
| 7/21/2020 | Email with Opposing Counsel Re: finalized settlement agreement | 0.4 |
| 7/22/2020 | Email with Opposing Counsel Re: Claim Administrator edits to advertisement documents and proposed notice plan | 0.3 |
| 7/25/2020 | Email to Steven Perry with instructions on final versions of claims administration documents | 0.3 |
| 7/27/2020 | Email Opposing counsel Re: preliminary approval and Declaration of Plaintiff's counsel | 0.3 |
| 7/27/2020 | review and approve P&N engagement letter for administration; discuss with Todd Friedman | 0.6 |
| 7/28/2020 | review/revise and finalize preliminary approval motion for filing, substantial revisions to draft; file preliminary approval papers and lodge proposed order | 4.2 |
| 7/28/2020 | Email to Steven Perry Re: Finalizing drafts of preliminary approval motion and Declaration of Plaintiff's counsel | 0.2 |
| 8/20/2020 | emails with defense re administration | 0.2 |
| 9/24/2020 | emails with administrator re notice | 0.2 |
| 9/30/2020 | Review Proposed advertisements for class administration | 0.5 |
| 9/30/2020 | Emails back and forth with Claims administrator | 0.7 |
| 10/5/2020 | review and approve press release and settlement timeline; emails with defense and administrator re same | 0.5 |
| 10/8/2020 | Email Steven Perry Re: testing class settlement website | 0.3 |
| 10/8/2020 | emails with defense and administrator re class settlement site; review and approve settlement site for plaintiffs | 0.6 |
| 10/12/2020 | emails with administrator and review final radio ad playback audio | 0.3 |
| 10/30/2020 | review administration report, discuss with Todd Friedman | 0.2 |

| | | |
|---|---|---|
| 11/2/2020 | Call and emails with administrator re status of claims process | 0.7 |
| 11/6/2020 | review administration report, discuss with Todd Friedman | 0.2 |
| 11/13/2020 | review administration report, discuss with Todd Friedman | 0.2 |
| 11/20/2020 | review administration report, discuss with Todd Friedman | 0.2 |
| 11/30/2020 | emails with defense counsel re escrow account | 0.2 |
| 12/4/2020 | review administration report, discuss with Todd Friedman | 0.2 |
| 12/11/2020 | review administration report, discuss with Todd Friedman | 0.2 |
| 12/15/2020 | emails with defense counsel re escrow account | 0.2 |
| 12/18/2020 | review administration report, discuss with Todd Friedman | 0.3 |
| 12/28/2020 | emails with opposing counsel re escrow | 0.2 |
| 12/29/2020 | emails with opposing counsel re escrow | 0.2 |
| 12/30/2020 | emails with opposing counsel re escrow | 0.2 |
| 1/4/1900 | emails with administrator re-claims status; review exclusions list and submission statistics, discuss with Todd Friedman | 0.4 |
| 1/5/2021 | emails with administrator re-claims status | 0.2 |
| 1/6/1900 | emails with administrator re-claims status | 0.2 |
| 1/6/2021 | review two towns cider law 360 publication and review case file | 0.4 |
| 1/13/2021 | emails with administrator and opposing counsel re-claims status | 0.2 |
| 1/13/2021 | emails with Todd and Steve re fee motion and approval status | 0.2 |
| 1/19/2021 | discuss fee motion and final approval status with Todd Friedman and Steve Perry | 0.5 |
| 2/3/2021 | draft motion for preliminary approval | 6.8 |
| 2/4/2021 | emails with administrator regarding final approval | 0.1 |
| 2/5/2021 | review/revise draft of fee motion and discuss with Steve Perry and Todd Friedman | 2.1 |
| 2/11/2021 | review correspondence from administrator and supplemental notice letter; discuss with Todd Friedman | 1.2 |

| | | |
|---|---|---|
| 2/13/2021 | finalize hours report and review of fee motion | 2.5 |
| 2/14/2021 | revisions to motion for attorneys' fees, final review of hours and costs report, finalize for filing and file | 3.6 |
| Various | Anticipated future hours | 25.0 |

**TOTAL TIME:** **134.1**
**HOURLY RATE:** **$650**
**LODESTAR:** **$87,165.00**

**STEVEN G. PERRY – THIRD-YEAR ASSOCIATE**
**HOURLY RATE: $375**

| Date Created | Task Name | Task Time |
|---|---|---|
| 12/5/2019 | Start fraud investigation; Product review, discussion with expert, review and discuss proposed experimental methods | 9.7 |
| 12/11/2019 | Attend experiment; reviewed methods, watched experiment, discussed scientific basis for theory, and reviewed and discussed results with expert | 7.6 |
| 12/12/2019 | Reported findings to Partners; brief discussion to inform Partners of results | 0.2 |
| 3/5/2020 | Draft complaint; started work on first draft of complaint. | 1.3 |
| 3/6/2020 | Complete first Draft of complaint | 2.7 |
| 3/10/2020 | Create Second draft of complaint; incorporate feedback from Partners, add additional information from client. | 1.8 |
| 3/11/2020 | Create final Draft; incorporated specific revisions based on Partner feedback | 0.8 |
| 3/11/2020 | Created First Draft of CLRA notice letter | 1.4 |
| 3/11/2020 | Sent Complaint and CLRA notice letter to client for verification | 0.2 |
| 3/11/2020 | create final draft of CLRA notice letter; incorporated client comments and feedback from Partners | 0.4 |
| 3/12/2020 | Arranged filing of case. | 0.2 |
| 4/6/2020 | Email round table regarding service of process issues and alternate contacts for Defendant. | 0.3 |
| 4/23/2020 | Email Adrian Bacon regarding case theory, evidence, scientific basis of claims, and investigation performed. | 0.8 |
| 4/23/2020 | Meet and Confer telephone call with Opposing counsel | 0.5 |
| 5/11/2020 | Drafted First Amended Complaint | 1.8 |
| 5/12/2020 | Researched comparable class settlements | 2.6 |
| 5/18/2020 | Finalized draft of First Amended Complaint, incorporated partner feedback | 1.4 |
| 5/18/2020 | Drafted Research report for partners regarding similar class settlements | 0.9 |

| | | |
|---|---|---|
| 5/18/2020 | Email round table regarding common fund class-wide settlement. | 0.7 |
| 5/19/2020 | Received instructions regarding draft of mediation brief | 0.5 |
| 5/21/2020 | Drafted Mediation brief | 4.6 |
| 5/25/2020 | Finished initial draft of Mediation brief incorporating Adrian Bacon feedback | 3.2 |
| 5/26/2020 | Incorporated additional feedback into Mediation brief | 1.8 |
| 5/26/2020 | Drafted Expert Affidavit; met with expert, reviewed data, and started initial draft affidavit. | 3.2 |
| 5/27/2020 | Finished draft of Expert affidavit; met with expert, added additional data and information, and finished draft of affidavit | 2.3 |
| 5/28/2020 | Round table discussion regarding mediation brief and expert declaration | 1.2 |
| 5/28/2020 | Finalized mediation brief and finished expert affidavit | 1.6 |
| 5/29/2020 | Incorporated Adrian Bacon edits into mediation brief | 0.7 |
| 6/4/2020 | Round table telephone call with Adrian Bacon and David Levin | 0.8 |
| 6/5/2020 | Mediation; Preparation and attendance | 12.5 |
| 6/8/2020 | Emails with Adrian Bacon regarding collection of data | 0.8 |
| 6/9/2020 | Arrange for testing of Plaintiff's products alongside second Plaintiff's products | 1.2 |
| 6/10/2020 | Met with expert, attended experiments on Plaintiffs' products | 6.3 |
| 6/11/2020 | Email with expert Re: continued testing and need for additional | 0.3 |
| 6/12/2020 | Attended final experiments and testing, reviewed results and data, discussed outcome with expert | 4.0 |
| 6/15/2020 | Email round table to discuss acceptance of mediator's proposal | 0.6 |
| 6/24/2020 | Email with Adrian Bacon Re: drafting class administration materials | 0.4 |
| 6/25/2020 | Draft Claims administration documents | 2.3 |
| 6/25/2020 | Email Claims administrator regarding drafted documents | 0.4 |
| 6/25/2020 | Drafted Second Amended Complaint | 1.6 |
| 6/30/2020 | Redrafted claims administration documents using Adrian Bacon's edits and feedback | 2.3 |

| | | |
|---|---|---|
| 6/30/2020 | Email with Adrian Bacon Re: redrafting the Radio advertisement for class administrations | 0.3 |
| 7/1/2020 | Redrafted Radio Advertainment for class administration | 0.6 |
| 7/1/2020 | Emailed Opposing counsel Re: providing class advertainments for claims administration | 0.2 |
| 7/3/2020 | Emails with partners Re: calculating litigation costs | 0.9 |
| 7/8/2020 | Drafted Declaration of Plaintiff's counsel | 2.4 |
| 7/8/2020 | Drafted Motion for preliminary approval | 6.8 |
| 7/9/2020 | Drafted Client Declarations | 2.3 |
| 7/20/2020 | Redrafted declaration of Plaintiff's counsel | 0.4 |
| 7/26/2020 | Finalized Claims Administration documents | 0.6 |
| 7/28/2020 | Finalized Preliminary approval motion and Declaration of Class Counsel | 1.8 |
| 10/8/2020 | Tested Claims administration website | 0.7 |
| Various | Anticipated future hours | 10.0 |

**TOTAL TIME:** **114.9**
**HOURLY RATE:** **$375**
**LODESTAR:** **$43,087.50**

**DAVID B. LEVIN– TWENTY-SEVEN-YEAR SENIOR ASSOCIATE**
**HOURLY RATE: $650**

| Date Created | Task Name | Task Time |
|---|---|---|
| 4/23/2020 | Participated in telephone call with Opposing Counsel | 0.5 |
| 4/27/2020 | Participated in telephone call with Opposing Counsel | 0.5 |
| 5/28/2020 | Review and revise draft of mediation brief and exhibits | 1.8 |
| 5/29/2020 | Review final version of mediation brief; finalize and serve | 1.0 |
| 6/4/2020 | Review defendant's production; create report and notes re. data in preparation for mediation | 2.7 |
| 6/5/2020 | Review mediation briefs; appear at virtual mediation | 11.0 |
| 6/8/2020 | email exchanges w/colleagues regarding mediation | 0.3 |
| 6/9/2020 | Participated in telephone call with Opposing Counsel | 0.5 |
| 6/25/2020 | Participated in telephone call with Opposing Counsel | 0.5 |
| 7/2/2020 | Participated in telephone call with Administrator | 0.5 |
| 7/7/2020 | Conference w/Adrian and Steven regarding settlement documents | 1.0 |

**TOTAL TIME:** **20.3**
**HOURLY RATE:** **$650**
**LODESTAR:** **$13,195.00**

**MYLES EDWARDS – IN-HOUSE CHEMIST AND EXPERT**
**HOURLY RATE: $195**

| Date Created | Task Name | Task Time |
|---|---|---|
| 12/5/2019 | Product review, discussion with Steve, review/discuss experiment | 9.7 |
| 12/6/2019 | Analysis of available 2 towns data, quick phone call with Steve | 2.5 |
| 12/9/2019 | Research, literature review | 5.4 |
| 12/10/2019 | Analysis of available 2 towns data, quick phone call with Steve | 2.5 |
| 12/11/2019 | Conducted experiment, guided Steve thru the experimental process. | 7.6 |
| 6/10/2020 | Negotiations spurred another round of testing, new tests w/ Internal std. | 7 |
| 6/11/2020 | More sample prep, analysis, review results. | 5.3 |

**TOTAL TIME: 40.0**
**HOURLY RATE: $195**
**LODESTAR: $7,800.00**

**TOTAL FIRM TIME: 353.1**
**LOTF LODESTAR: $183,590.00**