# EXHIBIT 9

# United States District Court
# District of Massachusetts (Boston)
# CIVIL DOCKET FOR CASE #: 1:26−cv−12654−JEK

Lemense v. Puma United North America, LLC
Assigned to: District Judge Julia E. Kobick
Cause: 28:1332 Diversity−Contract Default

Date Filed: 06/11/2026
Jury Demand: None
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Daniel Lemense**
*individually and on behalf of similarly situated individuals*

represented by

**Andrew T. Heldut**
MCGUIRE LAW, P.C.
55 West Wacker Drive, 9th Fl.
Chicago, IL 60601
312−893−7002
Email: aheldut@mcgpc.com
*ATTORNEY TO BE NOTICED*

**David Pastor**
Pastor Law Office, LLP
63 Atlantic Avenue
3rd Floor
Boston, MA 02110
617−742−9700
Fax: 617−742−9701
Email: dpastor@pastorlawoffice.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Puma United North America, LLC**
*a Delaware limited liability company*

represented by

**Andrew E Skroback**
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019
212−318−3000
Email: andrew.skroback@nortonrosefulbright.com
*ATTORNEY TO BE NOTICED*

**Jeffrey B. Margulies**
Norton Rose Fulbright US LLP
555 South Flower Street
Ste 41st Floor
Los Angeles, CA 90071
213−892−9286
Email: jeff.margulies@nortonrosefulbright.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Yi E. Yang**
Norton Rose Fulbright US LLP
555 S. Flower Street
Ste 41st Floor
Los Angeles, CA 90071
213−892−9200
Fax: 213−892−9494
Email: eva.yang@nortonrosefulbright.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

| | | |
|---|---|---|
| 06/11/2026 | 1 | COMPLAINT *CLASS ACTION COMPLAINT* against Puma United North America, LLC. Filing fee: $ 405, receipt number AMADC−11810212 (Fee Status: Filing Fee paid), filed by Daniel Lemense. (Attachments: # 1 Civil Cover Sheet, # 2 Category Form)(Pastor, David) (Entered: 06/11/2026) |
| 06/11/2026 | 2 | ELECTRONIC NOTICE of Case Assignment. District Judge Julia E. Kobick assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Paul G. Levenson. (MAC) (Entered: 06/11/2026) |
| 06/11/2026 | 3 | Summons Issued as to Puma United North America, LLC. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (MBM) (Entered: 06/11/2026) |
| 07/07/2026 | 4 | NOTICE of Appearance by Andrew E Skroback on behalf of Puma United North America, LLC (Skroback, Andrew) (Entered: 07/07/2026) |
| 07/07/2026 | 5 | Assented to MOTION for Extension of Time to August 10, 2026 to File Answer re 1 Complaint, by Puma United North America, LLC.(Skroback, Andrew) (Entered: 07/07/2026) |
| 07/08/2026 | 6 | District Judge Julia E. Kobick: ELECTRONIC ORDER granting 5 Assented to MOTION for Extension of Time to August 10, 2026 to File Answer re 1 Complaint<br>Puma United North America, LLC answer due 8/10/2026. (Currie, Haley) (Entered: 07/08/2026) |
| 07/23/2026 | 7 | MOTION for Leave to Appear Pro Hac Vice for admission of Andrew T. Heldut Filing fee: $ 125, receipt number AMADC−11910252 by Daniel Lemense. (Attachments: # 1 Certification of Andrew T. Heldut)(Pastor, David) (Entered: 07/23/2026) |
| 07/23/2026 | 8 | District Judge Julia E. Kobick: ELECTRONIC ORDER granting 7 MOTION for Leave to Appear Pro Hac Vice for admission of Andrew T. Heldut<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register−account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions<br>https://www.mad.uscourts.gov/caseinfo/nextgen−pro−hac−vice.htm.<br><br>**A Notice of Appearance must be entered on the docket by the newly admitted attorney.** (Currie, Haley) (Entered: 07/23/2026) |
| 07/24/2026 | 9 | MOTION for Leave to File *First Amended Class Action Complaint* by Daniel Lemense. (Attachments: # 1 Exhibit A)(Pastor, David) (Entered: 07/24/2026) |
| 07/31/2026 | 10 | Assented to MOTION for Extension of Time to file responsive pleading until 30 days after plaintiff's motion for leave to amend is decided by Puma United North America, LLC.(Skroback, Andrew) (Entered: 07/31/2026) |
| 07/31/2026 | 11 | MOTION for Leave to Appear Pro Hac Vice for admission of Jeffrey B. Margulies Filing fee: $ 125, receipt number AMADC−11930157 by Puma United North America, LLC. (Attachments: # 1 Affirmation of Jeffrey B. Margulies)(Skroback, Andrew) (Entered: 07/31/2026) |
| 07/31/2026 | 12 | MOTION for Leave to Appear Pro Hac Vice for admission of Yi Yang Filing fee: $ 125, receipt number AMADC−11930163 by Puma United North America, LLC. (Attachments: # 1 Affirmation of Yi Yang)(Skroback, Andrew) (Entered: 07/31/2026) |
| 07/31/2026 | 13 | MOTION for Leave to Appear Pro Hac Vice for admission of Nicole Zelada Filing fee: $ 125, receipt number AMADC−11930168 by Puma United North America, LLC. (Attachments: # 1 Affirmation of Nicole Zelada)(Skroback, Andrew) (Entered: 07/31/2026) |

| | | |
|---|---|---|
| 08/03/2026 | 14 | District Judge Julia E. Kobick: ELECTRONIC ORDER granting 10 Assented to MOTION for Extension of Time to file responsive pleading until 30 days after plaintiff's motion for leave to amend is decided (Currie, Haley) (Entered: 08/03/2026) |
| 08/03/2026 | 15 | District Judge Julia E. Kobick: ELECTRONIC ORDER granting 11 MOTION for Leave to Appear Pro Hac Vice for admission of Jeffrey B. Margulies, 12 MOTION for Leave to Appear Pro Hac Vice for admission of Yi Yang Filing and 13 MOTION for Leave to Appear Pro Hac Vice for admission of Nicole Zelada<br><br>Attorneys Jeffrey B. Margulies and Yi Yang:<br><br>**Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account can be found at https://www.mad.uscourts.gov/caseinfo/nextgen−current−pacer−accounts.htm#link−account.<br><br>Attorney Nicole Zelada: **A Notice of Appearance must be entered on the docket by the newly admitted attorney in their own PACER account.**<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register−account. You must put the docket number under ADDITIONAL FILER INFORMATION on your form when registering or it will be rejected.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen−pro−hac−vice.htm. (Currie, Haley) (Entered: 08/03/2026) |
| 08/04/2026 | 16 | NOTICE of Appearance by Andrew T. Heldut on behalf of Daniel Lemense (T. Heldut, Andrew) (Entered: 08/04/2026) |
| 08/10/2026 | 17 | District Judge Julia E. Kobick: ELECTRONIC ORDER granting as unopposed 9 MOTION for Leave to File First Amended Class Action Complaint<br><br>Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include − Leave to file granted on (date of order)− in the caption of the document. (Currie, Haley)<br><br>(Entered: 08/10/2026) |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL LEMENSE, individually and on behalf of similarly situated individuals,<br><br>*Plaintiff,*<br>v.<br><br>PUMA UNITED NORTH AMERICA, LLC, a Delaware limited liability company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Daniel Lemense ("Plaintiff"), individually and on behalf of others similarly situated, by and through his undersigned counsel, and for his Class Action Complaint against Defendant Puma United North America, LLC ("Puma" or "Defendant"), alleges as follows based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

## NATURE OF THE ACTION

1. This is an action for damages and any other available legal or equitable remedies, including Unjust Enrichment and Money Had and Received, resulting from Defendant's practice of charging its customers inflated prices in response to unlawfully imposed tariffs.

2. This lawsuit arises from Defendant's retention of windfall profits generated as a consequence of the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.* This windfall is a direct result of Defendant systematically passing on the costs of IEEPA tariffs to its own customers—including Plaintiff—through elevated product prices.

3. Beginning on February 1, 2025, President Donald J. Trump issued Executive Orders 14193, 14194, and 14195 imposing IEEPA-based duties on certain imports from Canada, Mexico, and China, respectively. On February 5, 2025, he issued Executive Order 14200 amending the duties addressing the synthetic opioid supply chain in the People's Republic of China. On March 3, 2025, he issued Executive Order 14228 further amending those duties. He later issued Executive Order 14245 on March 24, 2025 concerning tariffs on countries importing Venezuelan oil, and Executive Order 14257 on April 2, 2025 declaring a national emergency based on large and persistent United States goods trade deficits and imposing reciprocal tariffs on a broad range of trading partners. *See* Exec. Order No. 14193, 90 Fed. Reg. 9,113 (Feb. 1, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9,117 (Feb. 1, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9,121 (Feb. 1, 2025); Exec. Order No. 14200, 90 Fed. Reg. 9,277 (Feb. 5, 2025); Exec. Order No. 14228, 90 Fed. Reg. 11,463 (Mar. 3, 2025); Exec. Order No. 14257 (Apr. 2, 2025); Exec. Order No. 14245 (Mar. 24, 2025) (collectively, the "Tariff Executive Orders").

4. The Tariff Executive Orders imposed an array of frequently changing duties ranging from 10% to 145% (with the upper end reflecting the maximum cumulative IEEPA-based rate applied to certain Chinese-origin goods, comprised of a 125% reciprocal duty under Executive Order 14257 as amended and an additional 20% IEEPA fentanyl duty under Executive Order 14228) based on country-specific tariff policy dictated through published Executive Orders. *See* Exec. Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025); Exec. Order No. 14259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

5. Studies by the Federal Reserve Bank of New York find that "U.S. firms and consumers continue to bear the bulk of the economic burden of the high tariffs imposed in 2025."[1] Indeed, the Federal Reserve Bank of New York found that "nearly 90 percent of the tariffs' economic burden fell on U.S. firms and consumers" rather than foreign exporters. Although the stated purpose of the Tariff Executive Orders was to address international trade deficits and other national-emergency concerns, the economic burden of the tariffs was substantially passed on to American consumers in the form of increased retail prices.

6. When goods are imported into the United States, the United States Customs and Border Protection ("CBP") assesses and collects tariffs on those goods based on the Harmonized Tariff Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through administrative protest under 19 U.S.C. § 1514, refund under 19 U.S.C. § 1520, judicial action in the U.S. Court of International Trade under 28 U.S.C. § 1581(i), or, with respect to IEEPA-related tariffs, through CBP's Consolidated Administration and Processing of Entries ("CAPE") portal launched on April 20, 2026.

7. Defendant paid IEEPA tariffs when it imported the products Plaintiff and similarly situated consumers purchased. To offset the cost of paying IEEPA tariffs, Defendant passed those costs on to Plaintiff and similarly situated consumers by inflating the prices of its products.

8. On February 20, 2026, the United States Supreme Court held that the IEEPA does not authorize the President to impose the tariffs at issue. *Learning Res., Inc. v. Trump*, 607 U.S. ___, 2026 WL 477534 (2026) (Nos. 24-1287 and 25-250) (aff'g *V.O.S. Selections, Inc. v. United*

[1] Mary Amiti, Chris Flanagan, Sebastian Heise, and David E. Weinstein, *Who is Paying for the 2025 U.S. Tariffs?*, Federal Reserve Bank of New York (Feb. 12, 2026), https://libertystreeteconomics.newyorkfed.org/2026/02/who-is-paying-for-the-2025-u-s-tariffs/.

*States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade), aff'd in part and rev'd in part, 149 F.4th 1312 (Fed. Cir. 2025)).

9. As a result, any IEEPA tariffs charged to Defendant were unlawful for lack of statutory authorization, and Defendant is entitled to seek refunds for any tariffs it paid pursuant to the Tariff Executive Orders through either litigation in the U.S. Court of International Trade, the CAPE refund process, or other administrative refund procedures.

10. On December 4, 2025—before the U.S. Court of International Trade entered Administrative Order 25-02 imposing an automatic stay on new IEEPA refund actions—Defendant Puma United North America, LLC filed a protective refund action in the U.S. Court of International Trade. *Puma United North America, LLC v. United States, et al.*, Court No. 25-00355 (Ct. Int'l Trade Dec. 4, 2025). In that pleading, signed by counsel of record subject to Federal Rule of Civil Procedure 11, *Puma United North America, LLC* affirmatively alleges that it is "the importer of record of merchandise subject to the IEEPA Duties and paid the IEEPA Duties on its imported goods." *Id.*, Compl. ¶ 3 (Ct. Int'l Trade Dec. 4, 2025). The Puma United North America, LLC plaintiff further seeks "a full refund, with interest as required by law" as a result of all IEEPA duties plaintiff has already paid to the United States, *id.* ¶ 9, and asks the U.S. Court of International Trade to "Order the United States to refund to Plaintiff the IEEPA duties collected on those entries, with interest as provided by law" (*Id*. prayer for relief, (e)).

11. Defendant Puma has further admitted, in its 2026 Q1 Release that "[t]he current outlook does not account for potential effects arising from… the U.S. Supreme Court's decision regarding U.S. tariffs dated February 20, 2026." In July 2025, Defendant admitted it was "planning to raise prices in the fourth quarter to lessen the impact of tariffs…" (Helen Reid, *Puma Inventory Headache Highlights U.S. Tariff Dilemma for Retailers*, Reuters (July 25, 2025)).

12. However, Defendant has already passed its unlawful IEEPA tariff burdens onto Plaintiff and the Class Members by charging elevated prices that incorporated its tariff burden. Plaintiff and the Class Members were thereby deprived of money paid to Defendant for unlawful IEEPA tariffs.

13. Although Defendant has affirmatively sought refunds of the IEEPA tariffs it paid through the protective action it filed in the U.S. Court of International Trade, *see supra* ¶ 10, Defendant has made no public commitment to return any portion of those anticipated tariff refunds to the consumers who, through elevated prices, bore the economic burden of those tariffs. To the contrary, Puma has disclosed in its public statements on July 24, 2025, that the "the U.S. Tariffs are expected to have a mitigated negative impact in 2025 of around € 80 million on gross profit."[2]

14. Defendant Puma has further admitted, in its 2025 Quarter 4 Memoire that it has increased prices due to the U.S. tariffs stating, "[t]he second lever is the introduction of selective pricing adjustments, starting in the fourth quarter of 2025."[3]

15. If Defendant receives a refund for the IEEPA tariffs, Defendant will have been provided a windfall as a result of already having charged consumers for the collection of unlawful IEEPA tariffs. Defendant's retention of money obtained from charging consumers for IEEPA tariffs offends public policy, is oppressive, and causes substantial injury to consumers by depriving them of the cost of the unlawful IEEPA tariffs.

16. The value of IEEPA tariff refund claims is not merely speculative. Even before the Supreme Court issued its decision in *Learning Resources*, a robust secondary market had emerged in which distressed investors and hedge funds have purchased IEEPA tariff refund claims from

---

[2] https://www.pumagroup.com/en/newsroom/corporate-news/2025/24-07-2025-puma-reports-sales-decline-q2-and-lowers-outlook-2025

[3] PUMA Q4 & FY 2025 Aide Memoire, https://about.puma.com/sites/default/files/reports/puma-aide-mPUMA%20Q4%20&%20FY%202025%20Aide%20Memoiremoire-q4-2025.pdf

importers at a discount in exchange for immediate liquidity.[4] Industry analysts have estimated that the secondary market for IEEPA tariff refund claims could swell to approximately $100 billion in aggregate value.

17. The existence and active trading of these claims confirms that the tariff refunds Defendant is positioned to recover represent concrete, quantifiable economic value—not hypothetical future benefits—and that Defendant's anticipated double recovery at consumers' expense is both real and imminent.

18. Other corporations in Defendant's same position have enacted tariff refund programs to compensate their customers who paid higher prices for products and thus bore the burden of pass-through tariff costs.[5] For example, on UPS's April 28, 2026 first-quarter 2026 earnings call, UPS's Chief Executive Officer Carol Tomé stated that UPS had remitted to the U.S. government approximately $5 billion in IEEPA tariffs that it had collected from its customers as the importer of record, that UPS was "working with the Customs Border Protection to apply for those refunds," and that "as soon as we get that money, we're going to remit it right back to our customers." FedEx separately stated it would refund corresponding tariff costs to its customers. Defendant could have enacted a similar payback program for Plaintiff and the Class Members yet has not done so.

19. At minimum, once IEEPA tariff refunds, reliquidation, or other recovery became available, Defendant's retention of tariff-related amounts paid by consumers became unfair,

---

[4] Vito Emanuel, *Wall Street Is Betting on Tariff Refunds After Supreme Court Ruling*, NPR (Mar. 5, 2026), https://www.npr.org/2026/03/05/nx-s1-5736120/tariff-refunds-wall-street-trade.

[5] Jeannette Neumann, *Cards Against Humanity to Give Tariff Refunds to Buyers Who "Overpaid,"* Crain's Chicago Business (Feb. 25, 2026), https://www.chicagobusiness.com/consumer-products/cards-against-humanity-give-tariff-refunds/. *See also UPS, FedEx will give tariff refunds back to customers that could be worth more than $5 billion*, Fortune (Apr. 29, 2026) (reporting on UPS's April 28, 2026 earnings call), https://fortune.com/2026/04/29/fedex-ups-pledging-tariff-refunds-back-to-customers/.

oppressive, and substantially injurious because Defendant retained the benefit of both consumer pass-through payments and the corresponding refund rights or proceeds.

20. Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek redress for common-law unjust enrichment and money had and received, and for such other equitable and legal relief as is appropriate, including the imposition of a constructive trust over any IEEPA tariff refund proceeds Defendant receives from the United States.

**PARTIES, JURISDICTION & VENUE**

21. Plaintiff Daniel Lemense is a resident of the State of Illinois. During the Class Period, Plaintiff purchased Puma-branded products imported, distributed, and sold by Defendant that were subject to tariff-related price increases directly tied to IEEPA tariffs that Defendant paid and passed through to him. Plaintiff did not create a user account on, place an order through, or otherwise transact business via the website located at the domain Puma.com, and accordingly is not bound by the terms of use posted on that website.

22. Defendant Puma United North America, LLC is a Delaware corporation. Its principal place of business and mailing address is 455 Grand Union Boulevard Somerville, Massachusetts 02145, United States.

23. Defendant is responsible for the importation, pricing, marketing, distribution, and sale of products sold under the Puma brand in the United States, including the apparel, footwear, accessories, and equipment that Plaintiff purchased. As confirmed by Defendant in its own December 21, 2025 pleading in *Puma United North America, LLC v. United States, et al.*, Court No. 25-00355 (Ct. Int'l Trade), Defendant is an importer of record for Puma-branded products

imported into the United States from countries subject to IEEPA tariffs, and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports.

24. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from at least one Defendant.

25. As Puma has separately disclosed in its public statements on July 24, 2025, "the U.S. Tariffs are expected to have a mitigated negative impact in 2025 of around € 80 million on gross profit."[6]

26. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendant's obligation to return to the consumers who paid them the IEEPA duties and fees Defendant collected, as well as any IEEPA duty refunds Defendant recovers from the United States.

27. This Court has personal jurisdiction over Defendant. Defendant is "at home" in Massachusetts for purposes of general personal jurisdiction under *Daimler AG v. Bauman*, 571 U.S. 117 (2014): Defendant Puma United North America, LLC is incorporated under the laws of the State of Delaware and has maintained its principal place of business in Massachusetts since at least 1997.

28. Venue is proper under 28 U.S.C. § 1391 because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District, and a substantial part of the

---

[6] https://www.pumagroup.com/en/newsroom/corporate-news/2025/24-07-2025-puma-reports-sales-decline-q2-and-lowers-outlook-2025

corporate-level pricing decisions, tariff payments, and refund-claim activity giving rise to Plaintiff's claims occurred at Defendant's Massachusetts headquarters.

## <u>COMMON FACTS</u>

### ***Defendant's Business Model and Supply Chain***

29. Defendant advertises, markets, sells, and distributes consumer products throughout the United States, including in this District. Defendant distributes and sells Puma-branded apparel, footwear, accessories, and equipment in its own brand-operated retail stores and outlet stores, through its brand-operated e-commerce websites located at Puma.com, and through national and regional wholesale retailers (including Dick's Sporting Goods, Macy's, Kohl's, Amazon, and others), as well as Defendant's branded mobile application(s).

30. Per Puma's statements, the six most important sourcing countries (94% of the total volume) are all located on the Asian continent. Specifically, "China is the biggest production country in 2023 with a total of 32%. While the absolute volumes in China for apparel have decreased, it was further strengthened as a strategic origin for footwear in 2023. Vietnam – a key development and sourcing hub for all three divisions – is the second biggest production country with 30%. Cambodia is in third place at 13%, Bangladesh, which focusses on apparel, is in fourth place at 12%. Indonesia, with an initial focus on footwear production and increasing volumes for apparel, produces 4% of the total volume and is in fifth place. India – only serving the local market - is in sixth place at 3%."[7] Accordingly, even where finished goods were assembled in other countries, a substantial portion of the raw-material inputs to Defendant's U.S.-bound apparel and footwear were sourced from China, a country whose imports were subject to among the highest IEEPA-based tariff rates during the Class Period.

---

[7] https://annual-report.puma.com/2023/en/combined-management-report/sourcing/

31. As Defendant itself confirmed in its December 21, 2025 pleading in *Puma United North America, LLC v. United States, et al.*, Court No. 25-00355 (Ct. Int'l Trade Dec. 4, 2025) is an importer of record for Puma-branded merchandise entering the United States, and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports.

32. Upon information and belief, the products Plaintiff purchased during the Class Period were imported from abroad either during or after the IEEPA tariff period and were subject to IEEPA tariffs when imported.

***Defendant's Pass-Through of IEEPA Tariffs to Consumers***

33. For purposes of this Complaint, the "Class Period" is defined as February 4, 2025 through February 24, 2026, the period during which the IEEPA Tariff Executive Orders were in effect, beginning on the effective date of the first such order and ending on February 24, 2026, the date by which the IEEPA tariffs at issue had ceased to be applied to imports in the wake of the U.S. Supreme Court's February 20, 2026 decision in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026).

34. Puma has disclosed in its public statements on July 24, 2025, "the U.S. Tariffs are expected to have a mitigated negative impact in 2025 of around € 80 million on gross profit."[8]

35. Puma has publicly acknowledged that it implemented consumer price increases in the United States as part of its strategy to mitigate the impact of U.S. tariffs. In advance of its fiscal year 2025 results, Puma disclosed that it had "managed to limit the mitigated impact of the tariffs to around €50 million on gross profit in 2025" and that one of its principal mitigation measures was "the introduction of selective pricing adjustments, starting in the fourth quarter of 2025." [9]

[8] https://www.pumagroup.com/en/newsroom/corporate-news/2025/24-07-2025-puma-reports-sales-decline-q2-and-lowers-outlook-2025

[9] *PUMA Q4 & FY 2025 Aide Memoire*, https://about.puma.com/sites/default/files/reports/puma-aide-mPUMA%20Q4%20&%20FY%202025%20Aide%20Memoiremoire-q4-2025.pdf

Puma further explained that it had observed "price increases in the market" and was proceeding with its own price increases, while continuing efforts to reduce sourcing exposure and pursue other tariff-mitigation strategies. *Id*. According to Puma, these pricing actions were undertaken in direct response to the financial impact of U.S. tariffs and formed part of a broader effort to offset tariff-related costs.

36. Puma's subsequent public disclosures confirmed both the existence of substantial tariff exposure and the Company's decision to retain the economic benefits associated with its tariff-mitigation efforts. In its fiscal year 2025 earnings release, Puma reported that "lower sourcing costs including duties" had become a tailwind that "fully offset[ ] the negative impact from U.S. Tariffs," notwithstanding the significant operational measures the Company had undertaken, including pricing adjustments, inventory management initiatives, and distribution-channel changes.[10]

37. Likewise, in its first-quarter 2026 earnings release, Puma stated that its improved gross profit margin reflected, among other factors, inventory reserve reversals, lower freight costs, and channel-mix improvements, while continuing inventory-clearance and cost-management initiatives.[11] Puma has made no public commitment to return any tariff-related recoveries, savings, or benefits to consumers who paid the increased prices, and instead has represented that such benefits would accrue to the Company through improved profitability, cash flow, and financial performance.

[10] *PUMA completes reset in 2025; 2026 designated as transition year*, https://about.puma.com/en/newsroom/corporate-news/2026/26-02-2026-puma-completes-reset-2025-2026-designated-transition-year#:~:text=FY%202026%20Outlook%20Reflects%20Transition,of%20transition%20for%20the%20company.

[11] *Solid start to the year for PUMA, supported by inventory clearance - Outlook for transition year 2026 confirmed,* https://about.puma.com/en/newsroom/corporate-news/2026/30-04-2026-solid-start-year-puma-supported-inventory-clearance-outlook

38. Defendant has made no public commitment to return any portion of the recovered refunds to consumers.

39. Upon information and belief, Defendant's pricing decisions affecting Defendant's wholesale prices to authorized retailers, manufacturer's suggested retail prices, minimum advertised pricing, direct-to-consumer prices on Defendant's branded e-commerce websites, and direct-to-consumer prices in Defendant's branded retail and outlet stores for Puma-branded products were influenced by anticipated and actual IEEPA tariff costs beginning in or around February 2025, when the first IEEPA Executive Orders were issued, and continuing throughout the Class Period.

40. Throughout the Class Period, Defendant passed the cost of IEEPA tariffs onto consumers, including Plaintiff and Members of the Class, by inflating the prices of goods Defendant sold under the Puma® brand.

41. Throughout the Class Period, Plaintiff purchased Puma-branded products from a Puma store. For these transactions, Defendant set or directly influenced the prices charged through its wholesale pricing, manufacturer's suggested retail pricing, minimum advertised pricing, direct-to-consumer pricing in its own branded stores and websites, and other pricing practices, and embedded the cost of IEEPA tariffs into those prices.

***Plaintiff's Transactions***

42. Within the Class Period, Plaintiff purchased his Puma-branded items from a Puma store located at 5220 Fashion Outlets Way Ste 1035, Rosemont, IL 60018, Defendant's direct channel through which Defendant distributes, markets, and sells its products and in which Defendant's wholesale pricing, manufacturer's suggested retail pricing, minimum advertised

pricing, or other pricing practices governed or materially influenced the retail prices charged to Plaintiff.

43. On or about September 22, 2025; November 11, 2025; November 23, 2025; and January 23, 2026, Plaintiff purchased Defendant-branded products, specifically Puma hoodies, MSRP approximately $35.38; $43.00; $35.38; and $92.38, respectively. Each such purchase was made through a Puma store during the Class Period and during the period the IEEPA tariffs were in effect. Plaintiff paid the prices Defendant set, established, or directly influenced for these products.

44. On information and belief, the prices Plaintiff paid for each of the products described in the preceding paragraph reflected Defendant's tariff-related pricing decisions, including Defendant's wholesale pricing, manufacturer's suggested retail pricing, minimum advertised pricing, or other pricing practices set, influenced, or implemented by Defendant.

45. On information and belief, the products Plaintiff purchased were imported into the United States by or for Defendant from countries subject to IEEPA tariffs (including Vietnam, Bangladesh, Indonesia, India, or China) during the period in which those tariffs were in effect. The product-level import origin, importer-of-record information, tariff classification, entry data, duty-payment records, and any records reflecting whether IEEPA tariff costs were incorporated into retail pricing are within Defendant's possession, custody, or control, and Defendant has confirmed its status as an importer of record for Puma -branded goods in its December 4, 2025 pleading in *Puma United North America, LLC v. United States, et al.*, Court No. 25-00355 (Ct. Int'l Trade Dec. 4, 2025).

46. Defendant paid IEEPA tariffs on the items that Plaintiff purchased and embedded the cost of those tariffs in the prices charged to Plaintiff. But for Defendant's pass-through of IEEPA tariff costs, Plaintiff would have paid lower prices for the products he purchased.

47. Defendant's retention of the unlawful IEEPA tariff costs that were passed on to Plaintiff and the Class Members offends public policy as it is unconscionable and unfair for Plaintiff and similarly situated consumers to shoulder Defendant's tax burden under the IEEPA tariffs when those tariffs were unlawful and should not have been collected.

48. As a result of Defendant's practice of passing on tariff costs to its customers, Plaintiff and the Class Members were forced to pay Defendant's tax burdens because Defendant passed the unlawful IEEPA tariffs on to them.

49. Plaintiff and the members of the Class have unequal bargaining power with Defendant and were unable to negotiate the payment of the unlawful IEEPA tariffs from Defendant, and therefore Plaintiff and the Class Members could not avoid paying the unlawful IEEPA tariffs.

50. Allowing Defendant to keep the proceeds of the unlawful IEEPA tariff charges deprives Plaintiff and Members of the Class of the money paid for the cost of the unlawful IEEPA tariffs while providing nothing of value to Plaintiff or the Class's Members.

51. But for Defendant charging Plaintiff and the Members of the Class the cost of the unlawful IEEPA tariffs, Plaintiff and the Members of the Class would not have needed to shoulder the cost of the unlawful IEEPA tariffs.

***Defendant's Anticipated Tariff Refunds and Resulting Double Recovery***

52. On March 4, 2026, Senior Judge Richard K. Eaton of the U.S. Court of International Trade issued a significant order in *Atmus Filtration, Inc. v. United States*, directing U.S. Customs

and Border Protection to refund duties imposed under IEEPA. *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026) (Eaton, J.); *see also id.* ECF No. 21 (original order); *id.* ECF No. 29 (Amended Order dated Mar. 5, 2026).

53. The Court of International Trade in *Atmus* reinforced that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Supreme Court's decision in *Learning Resources*. The Court ordered CBP to liquidate all unliquidated entries "without regard to IEEPA duties" and to reliquidate any liquidated entries for which liquidation is not final without regard to those duties. On March 27, 2026, the court issued an amended order expanding that directive to additional entry categories. On April 6, 2026, the *Atmus Filtration* plaintiff filed a notice of voluntary dismissal, and the Court of International Trade designated *Euro-Notions Florida, Inc. v. U.S. Customs and Border Protection*, Court No. 25-00595 (Ct. Int'l Trade), as the new lead refund-supervision case, issuing a parallel order on April 7, 2026.

54. According to the sworn declaration of Brandon Lord, the Executive Director of the Trade Programs Directorate within the Office of Trade at U.S. Customs and Border Protection, filed in *Atmus Filtration* on March 6, 2026 (ECF No. 31), as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA was approximately $166 billion. *Atmus*, ECF No. 31 at ¶ 12.

55. On April 20, 2026, CBP launched the Consolidated Administration and Processing of Entries ("CAPE") portal within its Automated Commercial Environment system to administer refunds of IEEPA tariffs to importers of record, with interest at the statutory rate. As of May 11, 2026, CBP had processed approximately $35.46 billion in IEEPA tariff refunds through CAPE, and the refund program continues to expand. As importers of record for Puma-branded products

imported into the United States during the Class Period, Defendant is eligible to file CAPE refund claims and to receive substantial refunds of the IEEPA tariffs it paid.

56. Accordingly, Defendant is entitled to substantial refunds for IEEPA tariffs it paid as the importer of record for goods sourced from Vietnam, Bangladesh, Indonesia, India, China, and other countries subject to IEEPA tariffs, and have affirmatively sought such refunds in *Puma United North America, LLC v. United States, et al.*, Court No. 25-00355 (Ct. Int'l Trade Dec. 4, 2025), and through the CAPE process.

57. To date, Plaintiff is unaware of any public commitment by Defendant to establish any mechanism to refund to consumers the tariff costs Defendant passed through to them via elevated prices and import charges during the Class Period.

58. This presents an obvious problem: Although Defendant will recover or is positioned to recover tariff refunds on the tariffed goods it sold, Defendant's customers have already borne the economic brunt of these tariffs by paying higher prices set by Defendant. The risk of Defendant obtaining double recovery is therefore imminent.

59. Defendant is poised to be paid twice for the same unlawful tariff burden: once by its customers (including Plaintiff) through elevated prices and import charges, and once by the U.S. government through tariff refunds.

## CLASS ACTION ALLEGATIONS

60. Plaintiff brings his claims individually and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

61. **Class:** All persons in the United States who, between February 4, 2025 and February 24, 2026, purchased one or more Puma-branded apparel, footwear, accessories, or

equipment products from a retail or online channel at a price set, established, or directed by Defendant during that period.

62. Excluded from the Class are: (1) Defendant; (2) Defendant's officers, directors, members, and managers, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their families; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendant's counsel, and their experts and consultants.

63. **Numerosity.** The proposed class contains members so numerous that separate joinder of each member of the class is impracticable. Upon information and belief, there are at least hundreds of thousands of proposed class members. The individuals who purchased Puma-branded products during the Class Period can be ascertained through records in the possession, custody, or control of Defendant and its authorized retailers.

64. **Commonality and Predominance.** There are questions of fact and law common to the class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

- Whether Defendant paid IEEPA tariffs on products sold to consumers during the Class Period;
- Whether Defendant passed IEEPA tariff costs onto consumers through elevated prices;
- Whether Defendant's retention of the unlawful IEEPA tariffs paid by Plaintiff and the Class Members is unlawful, deceptive, unfair, unethical, and unscrupulous;
- Whether Defendant misled consumers regarding pricing and tariff pass-through;

• Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

• Whether Defendant has been or will be unjustly enriched by receiving government refunds for tariffs it passed through to consumers;

• Whether any IEEPA tariff refunds received by Defendant from the United States are held in constructive trust for the benefit of the Class; and

• Whether the Class members are entitled to restitution, actual damages, statutory damages, and attorneys' fees and costs.

65. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff understands the obligations inherent in representing a putative class, and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex and class action litigation. Plaintiff has no interests antagonistic to the Class's interests, and Defendant has no defenses unique to Plaintiff.

66. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class purchased Defendant-branded products at prices that incorporated the cost of IEEPA tariffs Defendant paid and passed through to consumers. Plaintiff's claims and the claims of all members of the Class arise from the same course of conduct by Defendant—namely, Defendant's pass-through of unlawful IEEPA tariff costs to consumers through elevated prices and Defendant's retention of both those tariff-pass-through payments and the corresponding refund rights or proceeds.

67. **Rule 23(b)(2) Basis.** Defendant has acted on grounds generally applicable to the Class by uniformly pricing Puma-branded products to incorporate IEEPA tariff costs and by uniformly retaining the corresponding refund rights or proceeds. Final declaratory relief, including

a declaration that any IEEPA tariff refunds Defendant receives are held in constructive trust for the Class, and corresponding injunctive relief prohibiting dissipation, transfer, or commingling of those proceeds are therefore appropriate with respect to the Class as a whole.

68. **Appropriateness and Superiority.** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## CAUSES OF ACTION

### COUNT I
### Unjust Enrichment
### (on behalf of Plaintiff and the Class)

69. Plaintiff incorporates the foregoing allegations as if fully stated herein.

70. Plaintiff and the members of the Class conferred monetary benefits on Defendant by paying elevated prices for products that included unlawful IEEPA tariff costs.

71. Defendant has been unjustly enriched because it collected and retained retail payments from Plaintiff and the Class that included amounts attributable to IEEPA tariff costs, while also retaining the right to seek or receive refunds, credits, reliquidation, or other recovery of those same tariff costs from the government.

72. Defendant knew and appreciated the benefit it received because it set, charged, and retained retail prices that included tariff-related cost increases paid by Plaintiff and the Class. At minimum, after the Supreme Court's invalidation of the IEEPA tariffs and subsequent refund-related proceedings, Defendant knew or should have known that any refund or recovery of IEEPA duties would correspond to tariff costs that consumers had already economically borne through Defendant's increased prices.

73. Defendant's retention of these benefits is unjust and inequitable now that Defendant is positioned to retain both the tariff-related amounts collected from consumers and the corresponding refund rights or proceeds from the government, a circumstance Defendant itself has acknowledged in its December 4, 2025 pleading in *Puma United North America, LLC v. United States, et al.*, Court No. 25-00355 (Ct. Int'l Trade Dec. 4, 2025), in which Defendant pleaded its entitlement to refund of all IEEPA tariffs it paid, and Defendant admitted having a "a mitigated negative impact in 2025 of around € 80 million on gross profit"[12] as described its active pursuit of refunds of those tariffs.

74. The IEEPA tariffs were subsequently determined to lack statutory authorization, making the tariff payments refundable or recoverable by importers such as Defendant.

75. In Massachusetts, constructive trusts are remedies employed by courts to avoid unjust enrichment when no other adequate remedy is available. Any refund proceeds Defendant

[12] https://www.pumagroup.com/en/newsroom/corporate-news/2025/24-07-2025-puma-reports-sales-decline-q2-and-lowers-outlook-2025

receives from CBP through the CAPE process or otherwise are traceable funds that, in equity, are held in constructive trust for the benefit of Plaintiff and the Class.

76. There is no adequate remedy at law for Plaintiff and the Members of the Class, as Defendant has established no mechanism to refund tariff costs to consumers, and consumers have no direct statutory cause of action to recover IEEPA tariffs from the government.

77. Under principles of equity and good conscience, it would be unjust to permit Defendant to retain both (a) the elevated prices consumers paid due to tariff pass-through pricing, and (b) government refunds of those same tariff costs.

78. Plaintiff and the other members of the Class are entitled to restitution in the amount by which Defendant has been unjustly enriched, and an order requiring Defendant to disgorge any profits or other benefit it has retained as a result of its unjust and unlawful conduct, including the imposition of a constructive trust over any IEEPA tariff refund proceeds Defendant has received or may receive.

## COUNT II
## Money Had and Received
## (on behalf of Plaintiff and the Class)

79. Plaintiff incorporates all of the allegations and statements made above as if fully stated herein.

80. This Count is pleaded in the alternative to Count I. While Count I (Unjust Enrichment) addresses the inequity of Defendant's retention of consumer overcharges already collected, this Count more particularly addresses Defendant's anticipated receipt and retention of government refund proceeds that, in equity, represent a return of costs that were economically borne by Members of the Class, not by Defendant.

81. Defendant received money from Plaintiff and from each Member of the proposed Class in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

82. Defendant received this money in order to recoup the IEEPA tariffs that Defendant, as the importer of record, had paid to U.S. Customs and Border Protection as duties on imported goods.

83. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization. *Learning Res., Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026).

84. Defendant is now positioned to recover refunds of the IEEPA tariffs from the U.S. government through the CAPE refund process and the protective action Defendant filed in the Court of International Trade, *Puma United North America, LLC v. United States, et al.*, Court No. 25-00355 (Ct. Int'l Trade Dec. 4, 2025). Upon information and belief, Defendant has not paid or distributed any portion of these anticipated refunds to Plaintiff or other consumers who bore the economic burden of the tariffs through elevated prices.

85. The money that Defendant will recover from the government as IEEPA tariff refunds represents, in equity, a return of money that belonged to Plaintiff and to each Member of the proposed Class—the consumers who paid elevated prices due to Defendant's tariff pass-through.

86. Defendant has not returned this money to Plaintiff or the Class.

87. In equity and good conscience, Defendant should not be permitted to retain the funds it recovers or has recovered from the government as IEEPA tariff refunds. Those funds belong, in equity, to Plaintiff and the Class, and Defendant is obligated to return them.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief as pled in the foregoing and judgment against Defendant as follows:

A. An Order certifying the Class, defining the Class as requested herein, appointing Plaintiff as Class representative, and appointing his counsel as Class counsel;

B. An order declaring that any refund, credit, reliquidation proceeds, or settlement payment that Defendant received or has received from U.S. Customs and Border Protection, the U.S. Treasury, or any other governmental authority on account of IEEPA tariffs paid during the Class Period is held in constructive trust for the benefit of Plaintiff and the Class, and an order enjoining Defendant from dissipating, transferring, commingling, or otherwise diminishing such refund proceeds pending final judgment in this action;

C. An equitable accounting of all IEEPA-related duties paid by Defendant during the Class Period, all CAPE refund applications and other refund requests submitted by Defendant to U.S. Customs and Border Protection, and all refund proceeds received or anticipated to be received by Defendant;

D. An award of reasonable attorneys' fees, costs, and other litigation expenses;

E. An award of pre- and post-judgment interest as available under law;

F. The disgorgement of any funds in the amount Defendant was unjustly enriched by its conduct; and

G. Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: June 11, 2026

Respectfully submitted,

DANIEL LEMENSE, on behalf of himself and others similarly situated.

By: */s/ David Pastor*

David Pastor
PASTOR LAW OFFICE PC
63 Atlantic Avenue, 3d Floor
Boston, MA 02110
Tel.: (617) 742-9700
Fax: (617) 742-9701
Email: dpastor@pastorlawoffice.com

Myles McGuire, Pro Hac Vice Forthcoming
Andrew T. Heldut, Pro Hac Vice Forthcoming
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Email: mmcguire@mcgpc.com
Email: aheldut@mcgpc.com

*Attorneys for Plaintiff and the putative Class*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Daniel Lemense

**(b)** County of Residence of First Listed Plaintiff: Cook (Illinois)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

David Pastor, Pastor Law Office, PC, 63 Atlantic Ave., 3d Floor, Boston, MA 02110, 617-742-9700

## DEFENDANTS

Puma United North America, LLC

County of Residence of First Listed Defendant: ____________
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [X] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [X] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 U.S.C. sec. 1332(d)

Brief description of cause:
action for restitution of funds withheld due to unlawful tariffs

## VII. REQUESTED IN COMPLAINT:

[X] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____________ DOCKET NUMBER ____________

DATE: June 11, 2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ David Pastor

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. **Title of case (name of first party on each side only)** Lemense v. Puma United North America, LLC

2. **Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).**

☐ **I. 160, 400, 410, 441, 535, 830*, 835*, 850, 880, 891, 893, R.23, REGARDLESS OF NATURE OF SUIT.**

☑ **II. 110, 130, 190, 196, 370, 375, 376, 440, 442, 443, 445, 446, 448, 470, 751, 820*, 840*, 895, 896, 899.**

☐ **III. 120, 140, 150, 151, 152, 153, 195, 210, 220, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 367, 368, 371, 380, 385, 422, 423, 430, 450, 460, 462, 463, 465, 480, 485, 490, 510, 530, 540, 550, 555, 560, 625, 690, 710, 720, 740, 790, 791, 861-865, 870, 871, 890, 950.**

***Also complete AO 120 or AO 121. for patent, trademark or copyright cases.**

3. **Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.**

4. **Has a prior action between the same parties and based on the same claim ever been filed in this court?**

**YES** ☐ **NO** ☑

5. **Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)**

**YES** ☐ **NO** ☑

**If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?**

**YES** ☐ **NO** ☐

6. **Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?**

**YES** ☐ **NO** ☑

7. **Do all of the parties in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).**

**YES** ☑ **NO** ☐

**A. If yes, in which division do all of the non-governmental parties reside?**

**Eastern Division** ☑ **Central Division** ☐ **Western Division** ☐

**B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?**

**Eastern Division** ☐ **Central Division** ☐ **Western Division** ☐

8. **If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)**

**YES** ☐ **NO** ☐

**(PLEASE TYPE OR PRINT)**

**ATTORNEY'S NAME** David Pastor

**ADDRESS** 63 Atlantic Ave., 3d Floor, Boston, MA 02110

**TELEPHONE NO.** (617) 742-9700

**(CategoryForm11-2020.wpd )**