# EXHIBIT 16

ECF

# U.S. District Court
# Southern District of New York (Foley Square)
# CIVIL DOCKET FOR CASE #: 1:26-cv-05009-VM

Trocchio v. Zara USA, Inc.
Assigned to: Judge Victor Marrero
Demand: $5,000,000
Cause: 28:1332fr Diversity-Fraud

Date Filed: 06/12/2026
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**Lynnea Trocchio**
*on behalf of herself and all others similarly situated*

represented by

**Danielle Sweet**
Stephan Zouras, LLC
222 W. Adams Street
Suite 2020
Chicago, IL 60606
312-233-1550
Email: dsweet@stephanzouras.com
*ATTORNEY TO BE NOTICED*

**James B. Zouras**
Stephan Zouras, LLP
222 W. Adams Street
Suite 2020
Chicago, IL 60606
312-233-1550
Email: jzouras@stephanzouras.com
*ATTORNEY TO BE NOTICED*

**Ryan F. Stephan**
Stephan Zouras, LLP
222 W. Adams Street
Suite 2020
Chicago, IL 60606
312-233-1550
Email: rstephan@stephanzouras.com
*ATTORNEY TO BE NOTICED*

**Innessa Melamed Huot**
Faruqi & Faruqi, LLP (NYC)
685 Third Avenue, 26th Floor
New York, NY 10017
212-983-9330
Fax: 212-983-9331
Email: ihuot@faruqilaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Zara USA, Inc.** represented by **Jillian Nicole London**
Gibson, Dunn & Crutcher LLP
2000 Avenue of the Stars, Suite 1200N
Los Angeles, CA 90067-4700
213-229-7671
Email: jlondon@gibsondunn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/12/2026 | 1 | COMPLAINT against Zara USA, Inc.. (Filing Fee $ 405.00, Receipt Number ANYSDC-32991968)Document filed by Lynnea Trocchio..(Huot, Innessa) (Entered: 06/12/2026) |
| 06/12/2026 | 2 | CIVIL COVER SHEET filed..(Huot, Innessa) (Entered: 06/12/2026) |
| 06/12/2026 | 3 | REQUEST FOR ISSUANCE OF SUMMONS as to Zara USA, Inc., re: 1 Complaint. Document filed by Lynnea Trocchio..(Huot, Innessa) (Entered: 06/12/2026) |
| 06/15/2026 | | *****NOTICE TO ATTORNEY REGARDING CIVIL CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Innessa Melamed Huot. The following case opening statistical information was erroneously selected/entered: Dollar Demand $5,000,000,000;. The following correction(s) have been made to your case entry: the Dollar Demand has been modified to $5,000,000;. Corrections were updated as per the Civil Cover Sheet. (jgo)** (Entered: 06/15/2026) |
| 06/15/2026 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Victor Marrero. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(jgo) (Entered: 06/15/2026) |
| 06/15/2026 | | Magistrate Judge Robert W. Lehrburger is designated to handle matters that may be referred in this case. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (jgo) (Entered: 06/15/2026) |
| 06/15/2026 | | Case Designated ECF. (jgo) (Entered: 06/15/2026) |
| 06/15/2026 | 4 | ELECTRONIC SUMMONS ISSUED as to Zara USA, Inc...(jgo) (Entered: 06/15/2026) |
| 06/30/2026 | 5 | MOTION for James B. Zouras to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-33067943. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Lynnea Trocchio. (Attachments: # 1 Affidavit Affidavit of James B. Zouras In Support of Motion to Admit Counsel Pro Hac Vice, # 2 Exhibit Certificate of Good Standing, # 3 Proposed Order Proposed Order For Admission Pro Hac Vice).(Zouras, James) (Entered: 06/30/2026) |

| | | |
|---|---|---|
| 06/30/2026 | 6 | MOTION for Ryan F. Stephan to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-33068426. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Lynnea Trocchio. (Attachments: # 1 Affidavit Affidavit of Ryan F. Stephan In Support of Motion to Admit Counsel Pro Hac Vice, # 2 Exhibit Certificate of Good Standing, # 3 Proposed Order Proposed Order For Admission Pro Hac Vice).(Stephan, Ryan) (Entered: 06/30/2026) |
| 06/30/2026 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 5 MOTION for James B. Zouras to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-33067943. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bc)** (Entered: 06/30/2026) |
| 06/30/2026 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 6 MOTION for Ryan F. Stephan to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-33068426. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bc)** (Entered: 06/30/2026) |
| 06/30/2026 | 7 | AFFIDAVIT OF SERVICE of Summons and Complaint. Zara USA, Inc. served on 6/30/2026, answer due 7/21/2026. Service was accepted by John Doe, Legal Representative of CSC. Document filed by Lynnea Trocchio..(Huot, Innessa) (Entered: 06/30/2026) |
| 07/01/2026 | 8 | ORDER FOR ADMISSION PRO HAC VICE granting 6 Motion for Ryan F. Stephan to Appear Pro Hac Vice. (Signed by Judge Victor Marrero on 7/1/2026) (tro) (Entered: 07/01/2026) |
| 07/01/2026 | 9 | ORDER FOR ADMISSION PRO HAC VICE granting 5 Motion for James B. Zouras to Appear Pro Hac Vice. (Signed by Judge Victor Marrero on 7/1/2026) (tro) (Entered: 07/01/2026) |
| 07/02/2026 | 10 | NOTICE OF APPEARANCE by James B. Zouras on behalf of Lynnea Trocchio..(Zouras, James) (Entered: 07/02/2026) |
| 07/02/2026 | 11 | NOTICE OF APPEARANCE by Ryan F. Stephan on behalf of Lynnea Trocchio..(Stephan, Ryan) (Entered: 07/02/2026) |
| 07/08/2026 | 12 | LETTER MOTION for Extension of Time to File Answer addressed to Judge Victor Marrero from Jillian N. London dated July 8, 2026. Document filed by Zara USA, Inc... (London, Jillian) (Entered: 07/08/2026) |
| 07/09/2026 | 13 | ORDER granting 12 Letter Motion for Extension of Time to Answer re 1 Complaint. Request GRANTED. Zara USA, Inc. answer due 8/20/2026. (Signed by Judge Victor Marrero on 7/9/2026) (vfr) (Entered: 07/09/2026) |
| 07/21/2026 | 14 | MOTION for Danielle Marie Sweet to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-33170119. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Lynnea Trocchio. (Attachments: # 1 Affidavit Affidavit of Danielle Sweet In Support of Motion to Admit Counsel Pro Hac Vice, # 2 Exhibit Certificate of Good Standing, # 3 Proposed Order Proposed Order For Admission Pro Hac Vice).(Sweet, Danielle) (Entered: 07/21/2026) |
| 07/21/2026 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 14 MOTION for Danielle Marie Sweet to Appear Pro Hac Vice . Filing fee $ 200.00, receipt number ANYSDC-33170119. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (rju)** (Entered: 07/21/2026) |

| | | |
|---|---|---|
| 07/22/2026 | 15 | ORDER FOR ADMISSION PRO HAC VICE granting 14 Motion to Appear Pro Hac Vice. The motion of Danielle Sweet for admission to practice Pro Hae Vice in the above captioned action is granted. (Signed by Judge Victor Marrero on 7/22/2026) (jca) Transmission to Attorney Services/Help Desk. (Entered: 07/22/2026) |
| 07/22/2026 | 16 | NOTICE OF APPEARANCE by Danielle Sweet on behalf of Lynnea Trocchio..(Sweet, Danielle) (Entered: 07/22/2026) |


## PACER Service Center

### Transaction Receipt

08/11/2026 14:46:54

| | | | |
|---|---|---|---|
| **PACER Login:** | studavidson | **Client Code:** | 260043-00001 |
| **Description:** | Docket Report | **Search Criteria:** | 1:26-cv-05009-VM |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**LYNNEA TROCCHIO**, on behalf of herself and all others similarly situated,

*Plaintiff,*

v.

**ZARA USA INC.,**

*Defendant.*

Case No. 1:26-cv-05009

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Lynnea Trocchio ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations against Zara USA, Inc. ("Zara" or "Defendant") upon personal knowledge as to herself and her own acts, and as for all other matters, based upon the investigation made by her counsel, as follows:

## I. NATURE OF THE ACTION

1. This lawsuit arises from Defendant's retention of windfall profits generated by tariffs unlawfully imposed under the International Emergency Economic Powers Act of 1977 ("IEEPA").

2. Plaintiff brings this action to recover damages resulting from Defendant's charging its customers for unlawfully imposed tariffs under the IEEPA.

3. Defendant is an importer of record that paid IEEPA tariffs when it imported consumer goods it later sold to Plaintiff and other similarly situated consumers. Defendant passed the cost of the IEEPA tariffs onto Plaintiff by embedding those costs in product prices, resulting in significantly increased prices of Defendant's imported products. Consumers like Plaintiff bear the entire economic burden of the tariffs, not Defendant.

4. On February 20, 2026, the Supreme Court of the United States held that tariffs imposed under IEEPA were unauthorized and illegal. *Learning Res., Inc. v. Trump*, 146 S. Ct. 628 (2026).

5. As a result, Defendant is entitled to seek a refund for IEEPA tariffs paid to the government.

6. However, Defendant passed its IEEPA burden onto Plaintiff and other similarly situated consumers through increased prices on imported goods. Accordingly, Plaintiff is deprived of monies paid to Defendant for unlawful IEEPA tariffs.

7. When Defendant receives a refund for the IEEPA tariffs, it will receive a windfall as it has already charged Plaintiff and consumers for the IEEPA tariffs it paid. Even if Defendant never receives a refund, Plaintiff has been injured by paying the cost of the unlawful IEEPA tariffs.

8. Plaintiff brings this action under: (i) the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*.; (ii) unjust enrichment; and (iii) money had and received.

## II. PARTIES

9. Plaintiff Lynnea Trocchio is a natural person and citizen of the State of Illinois.

10. Defendant Zara USA, Inc. is a New York corporation with its principal place of business located at 500 Fifth Avenue, Suite 400 New York, NY 10110.

## III. JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA") because there is minimal diversity between Plaintiff (Illinois) and Defendant (New York), the proposed class consists of more than 100 members, and the amount in controversy exceeds $5,000,000 exclusive of interest and costs.

12. This Court has personal jurisdiction over Defendant because its principal place of business is in this District. Defendant has purposefully availed itself of the laws, rights, and benefits of the State of New York.

13. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claim occurred in this District.

## IV. FACTUAL ALLEGATIONS

### A. IEEPA Tariffs

14. On April 2, 2025, the President of the United States declared a national emergency related to foreign trade and economic practices and imposed "Reciprocal Tariffs" of 10% on products of all countries effective April 5, 2025, and additional country-specific rates effective April 9, 2025. Executive Order 14257, "Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trades Deficits," 90 Fed. Reg. 15041, dated April 2, 2025 ("Reciprocal Tariffs").

15. The President modified the country-specific tariffs multiple times, including issuing a 90-day suspension of all country-specific rates, excluding China, effective April 10, 2025, and later issuing a 90-day suspension for reciprocal country-specific tariffs on products of China, effective May 14, 2025. Executive Order 14266, "Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment," 90 Fed. Reg. 15625, dated April 9, 2025; Executive Order 14298, "Modifying Reciprocal Tariff Rates to Reflect Discussions Partner with the People's Republic of China," 90 Fed. Reg. 21831, dated May 12, 2025.

16. Effective August 7, 2025, countries listed on Annex I of Executive Order 14326 became subject to the tariff rate specific to the country of origin of the product. Executive Order

14326, "Further Modifying the Reciprocal Tariffs Rates," 90 Fed. Reg. 37963, dated July 31, 2025. Canada and Mexico were exempt from the IEEPA Reciprocal tariffs, and China remained subject to the all-other country rate of 10%. *Id*.

17. As of September 9, 2025, the worldwide Reciprocal Tariffs remained at 10% and applied to China; products of Indonesia were subject to a 19% IEEPA Reciprocal duty rate; and products of Canada or Mexico were exempted from IEEPA Reciprocal tariffs.

18. In addition to the IEEPA Reciprocal tariffs, the President declared national emergencies related to drug trafficking and border security and imposed tariffs of 25% on products from Canada and Mexico, and 10% on Chinese products, effective February 4, 2025. Executive Order 14193, "Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border," 90 Fed. Reg. 9113, dated February 1, 2025 ("Canada Trafficking IEEPA"); Executive Order 14194, "Imposing Duties to Address the Situation at Our Southern Border," 90 Fed. Reg. 9117, dated February 1, 2025 ("Mexico Trafficking IEEPA"); and Executive Order 14195, "Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China," 90 Fed. Reg. 9121, dated February 1, 2025 ("China Trafficking IEEPA") (collectively, the "IEEPA Trafficking Tariffs").

19. The President modified these tariffs multiple times, including raising the Chinese tariff from 10% to 20%, effective March 4, 2025. Executive Order 14228, "Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China," 90 Fed. Reg. 11463, dated March 3, 2025.

20. On February 20, 2026, the Supreme Court invalidated all IEEPA-based tariffs. *Learning Res., Inc.*, 146 S. Ct. at 646 (holding "that IEEPA does not authorize the President to impose tariffs.").

**B. Section 321: The De Minimis Exemption**

21. Section 321(a)(2)(C) of the Tariff Act of 1930 allows for the admission of articles free of duty and of any tax if the aggregate fair retail value in the country of shipment of article does not exceed $800 and is imported into the United States by one person on one day (the "De Minimis Exemption").

22. Effective February 4, 2025, the De Minimis Exemption was suspended for products subject to the IEEPA Trafficking Tariffs that are sent to the United States through the international postal network from the PRC, Hong Kong, Canada, and Mexico.

23. Effective May 14, 2025, the De Minimis Exemption was suspended for all products of China, sent to the United States through the international postal network from the PRC or Hong Kong.

24. Finally, pursuant to Executive Order 14324, "Suspending Duty-Free De Minimis Treatment for All Countries," 90 Fed.Reg. 73335, dated July 30, 2025, de minimis duty-free treatment under 19 U.S.C. § 1321(a)(2)(C) was no longer available for shipments entering the United States on or after August 29, 2025.

**C. Defendant's Business Model**

25. Defendant advertises, markets, sells, and distributes apparel and other consumer products throughout the United States in its stores, on its website, and through other retail channels.

26. Defendant sources the majority of the products it sells from outside the United States. Defendant serves as the importer of record for goods sold through its retail channels and paid IEEPA tariffs to U.S. Customs and Border Protection ("CBP") on those imports.[1]

[1] *See Zara USA's Total Sea Shipments Over Time*, ImportYeti, https://www.importyeti.com/company/zara-usa (last accessed June 12, 2026).

27. Defendant pays the duties and fees to CBP, including IEEPA tariffs, and then seeks full reimbursement from the individual consumer by embedding the IEEPA tariff burden into its prices. Consumers like Plaintiff bear the entire economic burden of the tariff, not Defendant.

**D. Plaintiff's Purchases**

28. Throughout 2025, Defendant drastically raised its prices in response to IEEPA tariffs.[2]

29. From approximately March through December 2025, Plaintiff made numerous in-store purchases from Defendant totaling over $1,500 worth of various apparel items which were imported from countries subject to IEEPA tariffs, including China, Morocco, and Turkey, among others, at prices inflated by Defendant's pass-through IEEPA tariff costs.

30. Defendant paid IEEPA tariffs on the goods Plaintiff purchased and embedded the costs of those tariffs in the prices charged to Plaintiff. But for Defendant's pass-through costs, Plaintiff would have paid lower prices for the products she purchased.

31. As a result of Defendant's practice of passing on tariff costs to its customers, Plaintiff was forced to pay Defendant's unlawful IEEPA tariff burdens.

32. Defendant's representations to Plaintiff and similarly situated consumers omitted the material fact that Defendant was positioned to seek a full refund of those same IEEPA tariff costs from the U.S. government. Defendant did not disclose to Plaintiff and similarly situated

---

[2] *See Tracking tariff turmoil: data-driven insights on fashion's response to import tariffs*, Lectra (June 13, 2025), https://www.lectra.com/en/library/tracking-tariff-turmoil-data-driven-insights-on-fashions-response-to-import-tariffs (last accessed June 12, 2026); Helen Reid and Corina Pons, *Zara owner Inditex "optimistic" about U.S. despite tariffs*, Reuters (March 12, 2025), https://www.reuters.com/business/retail-consumer/inditex-is-well-positioned-face-tariff-uncertainty-ceo-says-2025-03-12/ (last accessed June 12, 2026); Adiana Diaz, *Foreign fast fashion brands shock US shoppers with massive price hikes – as tariffs hit stores*, N.Y. Post (Oct. 8, 2025), https://nypost.com/2025/10/08/lifestyle/zara-mango-fashion-brand-hikes-shock-us-shoppers-amid-tariffs/ (last accessed June 12, 2026).

consumers that it could recover the tariff costs it was passing through, or that consumers would receive no portion of any such refund.

33. Defendant has not established any mechanism by which to refund Plaintiff and similarly situated consumers the unlawful IEEPA tariff costs it passed through to them via elevated prices.

34. Defendant's retention of the unlawful IEEPA tariffs charged to Plaintiff and consumers offends public policy, and it is unfair for Plaintiff and similarly situated consumers to bear Defendant's tariff burden under the unlawful IEEPA tariffs.

35. Defendant is poised to be paid twice for the same unlawful IEEPA tariffs, once by its customers, including Plaintiff, through elevated prices, and once by the U.S. government through IEEPA tariff refunds.

36. Allowing Defendant to keep the proceeds of the unlawful IEEPA tariff charges deprives Plaintiff and similarly situated consumers of the money paid for the cost of the unlawful IEEPA tariff while providing them nothing of value.

37. But for Defendant charging Plaintiff and similarly situated consumers the cost of the unlawful IEEPA tariffs, Plaintiff and similarly situated consumers would not have paid them.

## V. CLASS ALLEGATIONS

38. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following Class and Subclass, defined as follows:

> **Class**: All individuals in the United States who purchased products from Defendant and were charged prices that included IEEPA tariff costs during the applicable limitations period.
>
> **Illinois Subclass**: All individuals in the State of Illinois who purchased products from Defendant and were charged prices that included IEEPA tariff costs during the applicable limitations period.

39. Excluded from the Class and Subclass are Defendant, its parents, subsidiaries, officers, directors and employees and officers, and judicial officers and immediate family members and associated court staff assigned to this case.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41. While Plaintiff does not know the exact number of Class members at this time; given the nature of the claims and that Defendant is a global retailer with more than 100 stores throughout the United States, the Class members unquestionably number in the hundreds of thousands or more. They are so numerous that joinder of all members is impracticable.

42. The following questions of law and fact are common to the Class and predominate over questions that may affect individual Class members:

a. Whether Defendant paid IEEPA tariffs on products sold to consumers;

b. Whether Defendant passed IEEPA tariff costs onto consumers through elevated prices;

c. Whether Defendant's retention of the unlawful IEEPA tariffs paid by Plaintiff and the Class is unjust or unfair;

d. Whether Defendant misled Plaintiff and the Class regarding pricing and tariff pass-through costs;

e. Whether Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act;

f. Whether Defendant was unjustly enriched as a result of the unlawful, deceptive, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiff and the Class;

g. Whether Defendant has been or will be unjustly enriched by receiving government refunds for tariff costs passed through to Plaintiff and the Class; and

h. Whether Plaintiff and the Class and Subclass are entitled to monetary damages, and attorneys' fees and costs and if so, the proper measure of those damages.

43. Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class members, paid Defendant unlawful IEEPA tariff costs through inflated prices.

44. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the class.

45. Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make relief with respect to the Class as a whole appropriate.

46. The requirements of Fed. R. Civ. P. 23(b)(3) are met as the common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

47. Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent

and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interest. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

48. Plaintiffs and other Class Members suffered damages as a result of Defendant's unlawful and wrongful conduct. Absent a class action, Defendant will wrongly and unjustly retain substantial funds received as a result of its wrongdoing, and such unlawful and improper conduct shall, in large measure, not go remedied. Absent a class action, the members of the Class will not be able to effectively litigate these claims and will suffer further losses, as Defendant will be allowed to continue such conduct with impunity and retain the proceeds of its ill-gotten gains.

**<u>COUNT I</u>**
**(Illinois Consumer Fraud and**
**Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.)**

49. Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

50. This cause of action is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (the "ICFA").

51. Plaintiff and members of the Illinois Subclass are "persons" as the term is defined by 815 ILCS 505/1(c).

52. At all relevant times, Defendant engaged in "trade" or "commerce" as those terms are defined by 815 ILCS 505/1(f) because it advertised, sold, and distributed things of value.

53. The ICFA prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any

material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" . . . in the conduct of any trade or commerce [regardless of] whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS § 505/2.

54. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair or deceptive acts or practices prohibited by the ICFA, and the conduct undertaken by Defendant resulted in the sale of goods to consumers.

55. As alleged more fully above, Defendant violated the ICFA by concealing and omitting the material fact that it is positioned to seek a full refund of the IEEPA tariff costs it charged its customers from the U.S. government. Defendant did not disclose to Plaintiff and similarly situated consumers that it could recover the tariff costs it was passing through, or that consumers would receive no portion of any such refund.

56. These misrepresentations and omissions were material to Plaintiff's and the Illinois Subclass's purchasing decisions. Reasonable consumers, including Plaintiff, would not have paid prices inflated by tariffs knowing that Defendant could seek a government refund for those same tariff costs without compensating its customers.

57. Defendant's conduct caused substantial injury to Plaintiff and the Illinois Subclass, who are deprived of money paid for unlawful IEEPA tariffs while receiving nothing of value in return, and who, absent litigation, have no mechanism to recover those costs.

58. Plaintiff and the Illinois Subclass are entitled to actual damages, reasonable attorneys' fees, and any other relief the court deems proper.

**COUNT II**
**(Unjust Enrichment)**

59. Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

60. Plaintiff and the Class members conferred benefits on Defendant by purchasing the goods at issue.

61. Defendant has knowledge of such benefits and voluntarily accepts and retains these benefits.

62. Defendant has been unjustly enriched by retaining the revenues derived from Plaintiff's and the Class members' purchases of the goods.

63. The U.S. Supreme Court determined that the IEEPA tariffs were unlawful.

64. Defendant knew it was passing IEEPA tariff costs onto consumers through elevated prices and is positioned to seek refunds of those same tariff costs from the government following the Supreme Court's invalidation of the IEEPA tariffs.

65. Defendant's retention of that money under these circumstances is unjust and inequitable.

66. Plaintiff and the Class have no adequate remedy at law as Defendant has established no mechanism to refund tariff costs to Plaintiff and the Class, and Plaintiff and the Class have no direct statutory cause of action to recover IEEPA tariffs from the government.

67. Defendant is unjustly enriched by retaining both the elevated prices consumers paid due to IEEPA tariff pass-through pricing and government refunds of those same tariff costs.

68. Because Defendant's retention of the non-gratuitous benefits conferred to it by Plaintiff and the Class members is unjust and inequitable, Defendant owes restitution to Plaintiff and the Class members for its unjust enrichment.

Case MDL No. 3209 Document 1-9 Filed 06/14/26 Page 18 of 19

69. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class members are entitled to restitution or disgorgement in an amount to be proved at trial.

**COUNT III**
**(Money Had and Received)**

70. Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint and further alleges as follows:

71. Defendant received money from Plaintiff and the Class in the form of higher prices caused by the pass-through IEEPA tariff costs.

72. Defendant received this money for the purpose of repaying itself the IEEPA tariffs it advanced to CBP as the importer of record.

73. The U.S. Supreme Court determined that the IEEPA tariffs were unlawful.

74. Defendant is now positioned to recover refunds of the IEEPA tariffs form the U.S. government. Defendant has not paid or distributed any portion of these anticipated refunds to Plaintiff or the Class who bore the economic burden of the unlawful tariffs through elevated prices.

75. The IEEPA tariff refund money that Defendant will recover from the U.S. government is, in equity, a return of money that belonged to Plaintiff and the Class.

76. Defendant should not be permitted to retain the funds it is owed by the government as IEEPA tariff refunds; those funds belong to Plaintiff and the Class, and Defendant must return them.

**PRAYER FOR RELIEF**

Wherefore Representative Plaintiff, individually and on behalf of all Class members and all others similarly situated, prays for an Order awarding the following relief:

A. Certifying the proposed Class; appointing Plaintiff as representative of the Class; and appointing Plaintiff's undersigned counsel as Class counsel;

B. Actual damages, including interest;

C. Restitution;

D. Disgorgement;

E. Reasonable costs and expenses of this suit, including reasonable attorneys' fees; and

F. Any further relief that the Court may deem appropriate.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury for all claims so triable.

Date: June 12, 2026

**FARUQI & FARUQI, LLP**

By: */s/ Innessa M. Huot*
Innessa M. Huot

685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
ihuot@faruqilaw.com

Ryan F. Stephan (*Pro Hac Vice forthcoming*)
James B. Zouras (*Pro Hac Vice forthcoming*)
Danielle M. Sweet (*Pro Hac Vice forthcoming*)
**STEPHAN ZOURAS, LLC**
222 W. Adams St., Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
dsweet@stephanzouras.com
Firm ID: 43734