# EXHIBIT 21

CONSOLIDATED,LEAD

**U.S. District Court**
**District of Oregon (Portland (3))**
**CIVIL DOCKET FOR CASE #: 3:26-cv-01008-JR**

Downs v. Adidas America, Inc.
Assigned to: Magistrate Judge Jolie A. Russo
Cause: 28:1332cl Class Action Fairness Action - 2005

Date Filed: 05/20/2026
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other Contract Actions
Jurisdiction: Diversity

**Plaintiff**

**Amber Downs**
*individually and on behalf of all others similarly situated*

represented by

**Kaleigh Boyd**
McNaul Ebel PLLC
600 University Street
Suite 2700
Seattle, WA 98101
206-389-9332
Email: kboyd@mcnaul.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan R. Ring**
Reese Ring Velto PLLC
3100 W. Charleston Blvd.
Ste. 208
Las Vegas, NV 89102
725-235-9750
Email: nathan@rrvlawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Gerard Stranch , IV**
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue
Ste 200
Nashville, TN 37203
615-254-8801
Email: gstranch@stranchlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael C. Tackeff**
Stranch, Jennings and Garvey
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
615-254-8801
Email: mtackeff@stranchlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Dhaman Gill**
*individually and on behalf of all others similarly situated*

represented by **Kaleigh Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Lakenya Lee**
*individually and on behalf of all others similarly situated*

represented by **Kaleigh Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Alvyn Hernandez Reyes**
*individually and on behalf of all others similarly situated*

represented by **Kaleigh Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Sonya Allen**
*individually and on behalf of all others similarly situated*

represented by **Kaleigh Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Taje Gill**
*individually and on behalf of all others similarly situated*

represented by **Kaleigh Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Nicole St. George**
*individually and on behalf of all others similarly situated*

represented by **Kaleigh Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Franklin Chang**
*individually and on behalf of all others similarly situated*

represented by **Kaleigh Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Carlos Aris**
*individually and on behalf of all others similarly situated*

represented by **Kaleigh Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Aaron Parisi**
*individually and on behalf of all others similarly situated*

represented by **Kaleigh Boyd**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Paul Quinn**
*individually and on behalf of all others similarly situated*

represented by **Kaleigh Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Antonio Chaidez**
*individually and on behalf of all others similarly situated*

represented by **Kaleigh Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chris Hufana**
*individually and on behalf of all others similarly situated*

represented by **Kaleigh Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Adidas America, Inc.**

represented by **Stephen M. Feldman**
Ashurst Perkins Coie US LLP
1120 NW Couch Street
10th Floor
Portland, OR 97209-4128
503-727-2000
Fax: 503-727-2222
Email:
stephen.feldman@ashurstperkins.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/20/2026 | 1 | Complaint. Filing fee in the amount of $405 collected. Agency Tracking ID: AORDC-10274160 Jury Trial Requested: Yes. Filed by Amber Downs against Adidas America, Inc. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons). (Ring, Nathan) (Entered: 05/20/2026) |
| 05/21/2026 | 2 | Notice of Case Assignment to Magistrate Judge Jolie A. Russo and Discovery and Pretrial Scheduling Order. **NOTICE: The filing party shall print and serve this Order, the summonses, and all other documents issued by the Clerk at case initiation upon all named parties in accordance with Local Rule 3-5(c)**. Discovery is to be completed by 9/18/2026. Joint Alternate Dispute Resolution Report is due by 10/19/2026. Pretrial Order is due by 10/19/2026. Ordered by Magistrate Judge Jolie A. Russo. (ajm) (Entered: 05/21/2026) |
| 05/21/2026 | 3 | Summons Issued Electronically as to All Defendants. **NOTICE: The filing party shall print and serve the summonses and all other documents issued by the Clerk at the** |

| | | |
|---|---|---|
| | | **time of case initiation upon all named parties in accordance with Local Rule 3-5(c).** (ajm) (Entered: 05/21/2026) |
| 06/01/2026 | 4 | Affidavit of Service of Summons Issued, 3 upon Adidas America, Inc. served on 5/22/2026, answer due on 6/12/2026 Filed by Amber Downs. (Ring, Nathan) (Entered: 06/01/2026) |
| 06/01/2026 | 5 | Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Michael C. Tackeff. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10285697. Filed by Amber Downs. (Tackeff, Michael) (Entered: 06/01/2026) |
| 06/01/2026 | | Clerk's Review of Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Michael C. Tackeff. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10285697 5 : **Reviewed and Ready for Ruling. (jw) (Entered: 06/01/2026)** |
| 06/01/2026 | 6 | **ORDER** issued by Magistrate Judge Jolie A. Russo: Granting Plaintiff's Motion for Leave to Appear *Pro Hac Vice* 5 as to Attorney Michael C. Tackeff. (gm) (Entered: 06/01/2026) |
| 06/11/2026 | 7 | **ORDER** issued by Magistrate Judge Jolie A. Russo: Granting the parties' Joint E-mail Request dated 6/9/2026 as follows: Defendant Adidas America Inc.'s Answer deadline is Stayed pending resolution of a forthcoming motion to consolidate and after the filing of any anticipated consolidated complaint. Any motion to consolidate shall be filed in each case to be consolidated in accordance with Local Rule 42 by 7/13/2026. (gm) (Entered: 06/11/2026) |
| 06/23/2026 | 8 | Unopposed Motion to Consolidate *Related Actions and for Appointment of Interim Co-Lead Class Counsel*. Filed by Amber Downs. (Tackeff, Michael) (Entered: 06/23/2026) |
| 06/23/2026 | 9 | Declaration of Jason T. Dennett *ISO Plaintiff's Unopposed Motion to Consolidate Related Actions and for Appointment of Interim Co-Lead Class Counsel*. Filed by Amber Downs. (Related document(s): Motion to Consolidate 8 .) (Attachments: # 1 Exhibit A - Milberg Resume) (Tackeff, Michael) (Entered: 06/23/2026) |
| 06/23/2026 | 10 | Declaration of J. Gerard Stranch, IV *ISO Plaintiff's Unopposed Motion to Consolidate Related Actions and for Appointment of Interim Co-Lead Class Counsel*. Filed by Amber Downs. (Related document(s): Motion to Consolidate 8 .) (Attachments: # 1 Exhibit A - SJG Resume) (Tackeff, Michael) (Entered: 06/23/2026) |
| 06/23/2026 | 11 | **ORDER** issued by Magistrate Judge Jolie A. Russo: Granting Plaintiffs' Joint Unopposed Motion to Consolidate Related Cases and for Appointment of Interim Co-Lead Class Counsel ((8) in case 3:26-cv-01008-JR; (8) in case 3:26-cv-01033-JR; (5) in case 3:26-cv-01079-JR). Case 3:26-cv-01008-JR is deemed the Lead case and is consolidated with Trailing cases 3:26-cv-01033-JR and 3:26-cv-01079-JR. Counsel shall adhere to Local Rule 42-4 "Document Caption Requirements After Consolidation" when submitting future pleadings in this matter. The Court appoints Attorneys Jason T. Dennett and J. Gerard Stranch, IV as Interim Co-Lead Class Counsel in the consolidated action (pro hac vice applications forthcoming). Plaintiffs will have until 7/23/2026 to file a consolidated complaint. Defendant Adidas America Inc. will have until 9/21/2026 to file a responsive pleading. Plaintiffs will have until 11/5/2026 to file a response. Defendant Adidas America Inc. will have until 12/7/2026 to file a reply. (Associated Cases: 3:26-cv-01008-JR, 3:26-cv-01033-JR, 3:26-cv-01079-JR) (gm) (Entered: 06/23/2026) |
| 06/24/2026 | 12 | Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney James Gerard Stranch, IV. Filing fee in the amount of $300 collected; Agency Tracking ID: ORDC-10313667. Filed by Carlos Aris, Aaron Parisi, Sonya Allen, Chris Hufana, Lakenya Lee, Paul Quinn, Nicole St. George, Amber Downs.Associated Cases: 3:26-cv-01008-JR, 3:26-cv-01033-JR, 3:26-cv-01079-JR (Stranch, James) (Entered: 06/24/2026) |

| | | |
|---|---|---|
| 06/26/2026 | 13 | Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Zachary Arbitman. Filing fee in the amount of $300 collected; Agency Tracking ID: ORDC-10316546. Filed by Aaron Parisi.Associated Cases: 3:26-cv-01008-JR, 3:26-cv-01033-JR, 3:26-cv-01079-JR (Arbitman, Zachary) (Entered: 06/26/2026) |
| 06/26/2026 | 14 | Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Nicole Maruzzi. Filing fee in the amount of $300 collected; Agency Tracking ID: ORDC-10316562. Filed by Aaron Parisi.Associated Cases: 3:26-cv-01008-JR, 3:26-cv-01033-JR, 3:26-cv-01079-JR (Maruzzi, Nicole) (Entered: 06/26/2026) |
| 06/26/2026 | | Clerk's Review of Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney James Gerard Stranch, IV. Filing fee in the amount of $300 collected; Agency Tracking ID: ORDC-10316562 ( 12 in 3:26-cv-01008-JR, 13 in 3:26-cv-01033-JR, 9 in 3:26-cv-01079-JR) : **Reviewed and Ready for Ruling. (dino)** Modified on 6/26/2026 to correct document links. (dino) (Entered: 06/26/2026) |
| 06/26/2026 | | Clerk's Review of Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Zachary Arbitman. Filing fee in the amount of $300 collected; Agency Tracking ID: ORDC-10316546 (14 in 3:26-cv-01033-JR, 13 in 3:26-cv-01008-JR, 10 in 3:26-cv-01079-JR) : **Reviewed and Ready for Ruling. (dino) (Entered: 06/26/2026)** |
| 06/26/2026 | | Clerk's Review of Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Nicole Maruzzi. Filing fee in the amount of $300 collected; Agency Tracking ID: ORDC-10316562 (15 in 3:26-cv-01033-JR, 14 in 3:26-cv-01008-JR, 11 in 3:26-cv-01079-JR) : **Reviewed and Ready for Ruling. (dino) (Entered: 06/26/2026)** |
| 06/26/2026 | 15 | **ORDER** issued by Magistrate Judge Jolie A. Russo: Granting Plaintiffs' Motions for Leave to Appear *Pro Hac Vice* ((12, 13, 14) in case 3:26-cv-01008-JR; (13, 14, 15) in case 3:26-cv-01033-JR; (9, 10, 11) in case 3:26-cv-01079-JR) as to Attorneys James Gerard Stranch, IV, Zachary Arbitman and Nicole Maruzzi respectively. (Associated Cases: 3:26-cv-01008-JR, 3:26-cv-01033-JR, 3:26-cv-01079-JR) (gm) (Entered: 06/26/2026) |
| 07/09/2026 | 16 | Notice of Appearance. Kayla Lindgren,Chad M. Colton for Adidas America, Inc.,Stephen M. Feldman,Kayla Lindgren,Chad M. Colton for Adidas America, Inc.,Stephen M. Feldman for Adidas America, Inc.. Filed by Adidas America, Inc..Associated Cases: 3:26-cv-01008-JR, 3:26-cv-01033-JR, 3:26-cv-01079-JR (Feldman, Stephen) (Entered: 07/09/2026) |
| 07/20/2026 | 17 | Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney M. Anderson Berry. Filing fee in the amount of $300 collected; Agency Tracking ID: ORDC-10343889. Filed by Chris Hufana, Lakenya Lee, Paul Quinn, Nicole St. George.Associated Cases: 3:26-cv-01008-JR, 3:26-cv-01033-JR, 3:26-cv-01079-JR (Berry, M.) (Entered: 07/20/2026) |
| 07/20/2026 | 18 | Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Gregory Haroutunian. Filing fee in the amount of $300 collected; Agency Tracking ID: ORDC-10343979. Filed by Sonya Allen, Chris Hufana, Lakenya Lee, Paul Quinn, Nicole St. George.Associated Cases: 3:26-cv-01008-JR, 3:26-cv-01033-JR, 3:26-cv-01079-JR (Haroutunian, Gregory) (Entered: 07/20/2026) |
| 07/20/2026 | | Clerk's Review of Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney M. Anderson Berry. Filing fee in the amount of $300 collected; Agency Tracking ID: ORDC-10343889 (18 in 3:26-cv-01033-JR, 17 in 3:26-cv-01008-JR, 14 in 3:26-cv-01079-JR) : **Reviewed and Ready for Ruling. (dino) (Entered: 07/20/2026)** |

| | | |
|---|---|---|
| 07/20/2026 | | Clerk's Review of Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Gregory Haroutunian. Filing fee in the amount of $300 collected; Agency Tracking ID: ORDC-10343979 (18 in 3:26-cv-01008-JR, 19 in 3:26-cv-01033-JR, 15 in 3:26-cv-01079-JR) : **Reviewed and Ready for Ruling. (dino) (Entered: 07/20/2026)** |
| 07/20/2026 | 19 | **ORDER** issued by Magistrate Judge Jolie A. Russo: Granting Plaintiffs Chris Hufana, LaKenya Lee, Paul Quinn, Sonya Allen, and Nicole St. George's Motions for Leave to Appear *Pro Hac Vice* (17 in case 3:26-cv-01008-JR; 18 in case 3:26-cv-01033-JR; 14 in case 3:26-cv-01079-JR) & (18 in case 3:26-cv-01008-JR; 19 in case 3:26-cv-01033-JR; 15 in case 3:26-cv-01079-JR) as to Attorneys M. Anderson Berry and Gregory Haroutunian respectively. (Associated Cases: 3:26-cv-01008-JR, 3:26-cv-01033-JR, 3:26-cv-01079-JR) (gm) (Entered: 07/20/2026) |
| 07/22/2026 | 20 | Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Jason T. Dennett. Filing fee in the amount of $300 collected; Agency Tracking ID: ORDC-10346461. Filed by Carlos Aris, Aaron Parisi.Associated Cases: 3:26-cv-01008-JR, 3:26-cv-01033-JR, 3:26-cv-01079-JR (Dennett, Jason) (Entered: 07/22/2026) |
| 07/22/2026 | 21 | **NOTICE OF DEFICIENT *PRO HAC VICE* APPLICATION** of Attorney Jason T. Dennett. A Corrected Motion for Leave to Appear *Pro Hac Vice* must be filed that addresses the following deficiencies:<br><br>Failure to associate local counsel (local counsel's signature missing on page 3)<br><br>For instructions visit ord.uscourts.gov/prohac. (dino) (Entered: 07/22/2026) |
| 07/22/2026 | 22 | Corrected Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Jason T. Dennett. Related Document: (21 in 3:26-cv-01008-JR, 22 in 3:26-cv-01033-JR, 18 in 3:26-cv-01079-JR) Notice of Deficient Pro Hac Vice Application,. Filed by Carlos Aris, Aaron Parisi.Associated Cases: 3:26-cv-01008-JR, 3:26-cv-01033-JR, 3:26-cv-01079-JR (Dennett, Jason) (Entered: 07/22/2026) |
| 07/22/2026 | | Clerk's Review of Corrected Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Jason T. Dennett. Related Document: (22 in 3:26-cv-01008-JR, 23 in 3:26-cv-01033-JR, 19 in 3:26-cv-01079-JR) : **Reviewed and Ready for Ruling.** (dino) (Entered: 07/22/2026) |
| 07/22/2026 | 23 | **ORDER** issued by Magistrate Judge Jolie A. Russo: Granting Plaintiffs Aaron Parisi and Carlos Aris' Corrected Motion for Leave to Appear *Pro Hac Vice* (22 in case 3:26-cv-01008-JR; 23 in case 3:26-cv-01033-JR; 19 in case 3:26-cv-01079-JR) as to Attorney Jason T. Dennett. (Associated Cases: 3:26-cv-01008-JR, 3:26-cv-01033-JR, 3:26-cv-01079-JR) (gm) (Entered: 07/22/2026) |
| 07/23/2026 | 24 | Amended Complaint - *Consolidated Amended Class Action Complaint*. Filed by Amber Downs, Dhaman Gill, Lakenya Lee, Alvyn Hernandez Reyes, Sonya Allen, Taje Gill, Nicole St. George, Franklin Chang, Carlos Aris, Aaron Parisi, Paul Quinn, Antonio Chaidez, Chris Hufana against Adidas America, Inc.. (Boyd, Kaleigh) (Entered: 07/23/2026) |

**PACER Service Center**

**Transaction Receipt**

08/11/2026 11:50:57

| | | | |
|---|---|---|---|
| **PACER Login:** | studavidson | **Client Code:** | 260043-00001 |
| **Description:** | Docket Report | **Search Criteria:** | 3:26-cv-01008-JR Start date: 1/1/1980 End date: 8/11/2026 |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

Kaleigh N. Boyd, OSB No. 253094
**McNaul Ebel PLLC**
600 University Street, Suite 2700
Seattle, WA 98101
Tel: (206) 467-1816
kboyd@mcnaul.com

*[Additional counsel listed on signature page]*

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

AMBER DOWNS, CHRIS HUFANA, LAKENYA LEE, PAUL QUINN, SONYA ALLEN, NICOLE ST. GEORGE, AARON PARISI, CARLOS ARIS, ANTONIO CHAIDEZ, FRANKLIN CHANG, TAJE GILL, DHAMAN GILL, and ALVYN HERNANDEZ REYES, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

ADIDAS AMERICA, INC.,

Defendant.

No. 3:26-cv-1008-JR (Lead Case)
No. 3:26-cv-01033-JR (Trailing Case)
No. 3:26-cv-01079-JR (Trailing Case)

**PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

Plaintiffs Amber Downs, Chris Hufana, LaKenya Lee, Paul Quinn, Sonya Allen, Nicole St. George, Aaron Parisi, Carlos Aris, Antonio Chaidez, Franklin Chang, Taje Gill, Dhaman Gill, and Alvyn Hernandez Reyes ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through counsel, bring this action against Defendant Adidas America, Inc. ("Defendant" or

"Adidas America").[1] The allegations contained herein, which are based on Plaintiffs' knowledge of facts pertaining to themselves and their own actions and counsels' investigations, and upon information and belief as to all other matters, are as follows:

## NATURE OF THE CASE

1. This class action arises from Adidas's retention of windfall profits generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*. Adidas increased the prices it charged consumers to offset the cost of those tariffs, collected the resulting overcharges from Plaintiffs and the Class, and now stands to recover the very same tariff payments a second time—through refunds from the federal government.

2. Beginning in February 2025, the federal government imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. Those tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3. Major U.S. importers—including Adidas—responded by increasing prices on consumer goods to offset the cost of these tariffs. Beginning on or about April 29, 2025, Adidas implemented price increases on certain footwear and apparel. As a result, American consumers paid higher retail prices for consumer goods reflecting the economic burden of those tariffs.

4. On February 20, 2026, the Supreme Court of the United States held that the IEEPA-based tariffs were unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

[1] Adidas America is a wholly owned subsidiary of Adidas AG ("Adidas AG") (collectively with Adidas America, "Adidas").

5. As a consequence of that decision, importers who paid those tariffs—including Adidas—became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP").

6. The economic reality of the tariff regime, however, is that importers like Adidas did not ultimately bear all of the costs of the tariffs. Instead, importers passed the elevated costs on to consumers in the form of higher retail prices.

7. Adidas therefore collected the tariff costs from consumers through elevated pricing, while simultaneously seeking refunds of the same tariff payments from the federal government.

8. Adidas has publicly confirmed as much. Adidas AG filed suit in the United States Court of International Trade seeking tariff refunds, and Adidas's Chief Executive Officer told investors that the company is entitled to tariff refunds of approximately $300 million, stating: "We haven't booked it yet, but there's a very good chance it will happen."[2]

9. Unless restrained by this Court, Adidas stands to recover the same tariff payments twice—once from consumers through higher prices, and again from the federal government through tariff refunds, including any interest paid by the government on those funds.

10. Adidas has made no legally binding commitment to return tariff-related overcharges to the consumers who actually paid them. When asked whether it would share tariff refunds with the customers who paid higher prices, Adidas did not identify any plan to do so.

11. This lawsuit seeks to prevent that unjust result.

[2] *See* Reuters, *Adidas is entitled to refund of $300 mln from US tariffs, CEO says* (May 7, 2026), https://www.reuters.com/business/adidas-is-entitled-refund-300-mln-euros-us-tariffs-ceo-says-2026-05-07/ (last accessed July 23, 2026).

12. Plaintiffs bring this action on behalf of consumers who purchased goods from Adidas during the tariff period and who paid inflated prices reflecting Adidas's pass-through of unlawful tariffs.

13. Plaintiffs seek restitution of those tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

**JURISDICTION AND VENUE**

14. Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because: (a) Plaintiffs and at least one member of the Class are citizens of a state different from Defendant; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (c) none of the exceptions under that subsection apply to this action.

15. The Court has personal jurisdiction over Defendant because Adidas America is headquartered in this District, conducts significant business transactions in this District, and because the wrongful conduct alleged herein occurred in and emanated from this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in this District in Portland, Oregon, and a substantial portion of the events and conduct giving rise to the claims occurred in the District of Oregon.

**PARTIES**

17. Plaintiff Chris Hufana is a resident and citizen of Seattle, Washington. During the Class Period, Plaintiff Hufana purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Hufana paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Hufana would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

18. Plaintiff LaKenya Lee is a resident and citizen of Mobile, Alabama. During the Class Period, Plaintiff Lee purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Lee paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Lee would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

19. Plaintiff Paul Quinn is a resident and citizen of Waltham, Massachusetts. During the Class Period, Plaintiff Quinn purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Quinn paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Quinn would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

20. Plaintiff Sonya Allen is a resident and citizen of Kansas City, Kansas. During the Class Period, Plaintiff Allen purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Allen paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Allen would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

21. Plaintiff Nicole St. George is a resident and citizen of Chicopee, Massachusetts. During the Class Period, Plaintiff St. George purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff St. George paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff St. George would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

22. Plaintiff Aaron Parisi is a resident and citizen of Seattle, Washington. During the Class Period, Plaintiff Parisi purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Parisi paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Parisi would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

23. Plaintiff Carlos Aris is a resident and citizen of Revere, Massachusetts. During the Class Period, Plaintiff Aris purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Aris paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Aris would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

24. Plaintiff Amber Downs is a resident and citizen of New Haven, Connecticut. During the Class Period, Plaintiff Downs purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Downs paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Downs would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

25. Plaintiff Antonio Chaidez is a resident and citizen of Berwyn, Illinois. During the Class Period, Plaintiff Chaidez purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Chaidez paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Chaidez would not

have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

26. Plaintiff Franklin Chang is a resident and citizen of San Francisco, California. During the Class Period, Plaintiff Chang purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Chang paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Chang would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

27. Plaintiff Taje Gill is a resident and citizen of Dana Point, California. During the Class Period, Plaintiff Taje Gill purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Taje Gill paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Taje Gill would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

28. Plaintiff Dhaman Gill is a resident and citizen of Costa Mesa, California. During the Class Period, Plaintiff Dhaman Gill purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Dhaman Gill paid retail prices for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Dhaman Gill would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

29. Plaintiff Alvyn Hernandez Reyes is a resident and citizen of Chicago, Illinois. During the Class Period, Plaintiff Hernandez Reyes purchased goods from Adidas that were imported from countries subject to the IEEPA tariffs. Plaintiff Hernandez Reyes paid retail prices

for those goods that were increased by Adidas to account for the tariffs imposed on imported products. Plaintiff Hernandez Reyes would not have paid those higher prices absent the unlawful tariffs and Adidas's pass-through of those tariffs to consumers.

30. Defendant Adidas America, Inc. is an Oregon corporation with its principal place of business at 5055 N. Greeley Ave., Portland, OR 97217. Adidas America is a wholly owned subsidiary of Adidas AG, a German company headquartered in Herzogenaurach, Germany. Adidas America is responsible for the marketing, distribution, and sale of Adidas products in the United States. A significant portion of the products Adidas sells are imported goods subject to IEEPA tariffs imposed by the United States government.

## FACTUAL BACKGROUND

### A. Adidas's Business Relies on an International Supply Chain

31. Adidas is one of the largest athletic footwear and apparel suppliers in the United States.

32. Adidas markets and sells a broad portfolio of products under the "Adidas" brand, including its "Performance" products represented by the 3-Bar logo and designed for athletes, as well as its "Lifestyle" products represented by the three-leaf-shaped Trefoil logo and evoking brand classics and new visionary designs.[3]

33. Adidas products are sold nationwide through wholesale channels to retail partners, through e-commerce channels, and through its own retail stores. Adidas's global headquarters is in Herzogenaurach, Germany, but the North American market is managed in Portland, Oregon,

---

[3] *See* Adidas Group, *Annual Report 2025*, page 56, available at https://report.adidas-group.com/2025/en/_assets/downloads/annual-report-adidas-ar25.pdf (last accessed July 23, 2026).

which is also the site of a regional “creation center” that develops products tailored to local consumer needs.[4]

34. Adidas’s business model depends heavily on the sourcing of its products through global supply chains. Adidas outsources almost all of its production to independent manufacturing partners, the vast majority of which are located in Asia.[5]

35. In 2025, 92% of Adidas’s total volume of products was sourced through independent manufacturing partners located in Asia. Vietnam remained Adidas’s largest sourcing country with 27% of the company’s total volume, followed by Indonesia at 18% and China at 16% of total volume.[6]

36. Imported goods therefore account for most, if not virtually all, of Adidas’s retail sales in the United States. Because Adidas imports most if not all of the goods it sells, the IEEPA tariffs directly increased Adidas’s cost of importing merchandise into the United States.

**B. The IEEPA Tariffs**

37. Beginning in February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries pursuant to a series of executive orders declaring national emergencies related to trade and supply-chain concerns.[7]

38. Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners. The orders included duties of approximately 25 percent on many imports from Canada

---

[4] *Id.* at 64–66.
[5] *Id.* at 67.
[6] *Id.* at 68.
[7] *See* Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People’s Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

and Mexico and additional tariffs on imports from China that were layered on top of existing duties, resulting in substantially higher effective tariff rates on Chinese goods.

39. On April 2, 2025—a date the President described as "Liberation Day"—the President issued an executive order imposing additional "reciprocal" tariffs on imports from most U.S. trading partners, including the Southeast Asian countries where Adidas concentrates its manufacturing. Announced rates reached as high as 46 percent on goods from Vietnam and 32 percent on goods from Indonesia.[8]

40. The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for retailers and other businesses that rely heavily on international supply chains to source merchandise—like Defendant Adidas.

41. Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including major retailers such as Adidas—were required to pay the IEEPA tariffs to CBP upon entry of covered merchandise into the country.

42. Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.

**C. Tariffs Are Economically Borne by Consumers**

43. Economists and government agencies have widely recognized for decades that tariffs are largely borne by domestic consumers rather than by foreign exporters or the importing firms that formally remit the duties.

---

[8] *See* Exec. Order No. 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025).

44. As Nobel Prize–winning economist Dr. Milton Friedman famously quipped in 1978, a tariff acts as a consumption tax that "protects the consumer against low prices."[9]

45. Dr. Douglas Holtz-Eakin, Director of Economic Policy Studies at the American Enterprise Institute, stated: "Tariffs are a national partial sales tax, and they're paid by all purchasers—consumers and businesses. So it shows up ultimately on the consumer tab after businesses pass it through."[10]

46. Dr. N. Gregory Mankiw, Harvard economics professor and former Chairman of the Council of Economic Advisers, stated: "Tariffs are paid by domestic consumers, not by foreign exporters. . . . What was originally proposed regarding tariff policy is considered economic malpractice on a grand scale."[11]

47. Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[12]

48. When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority

---

[9] https://www.k-state.edu/landon/speakers/milton-friedman/transcript.html (last accessed July 23, 2026).

[10] https://www.americanactionforum.org/multimedia/the-aaf-exchange-ep-169-trumps-first-100-days-and-the-latest-on-reconciliation/ (last accessed July 23, 2026).

[11] https://www.hks.harvard.edu/centers/mrcbg/programs/growthpolicy/tariff-policies-are-large-scale-economic-malpractice (last accessed July 23, 2026).

[12] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); *see also* Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020).

of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.[13]

49. Similarly, the Federal Reserve Bank of Dallas confirmed that the 2025–2026 tariffs materially increased consumer prices and that "pass-through from the 2025 tariffs is effectively complete," meaning the costs of the tariffs were ultimately borne by purchasers through higher prices.[14]

50. The Dallas Federal Reserve further explained that tariff collections "boosted core goods PCE[15] inflation by approximately 2.2 percentage points" and increased overall core PCE inflation by approximately 0.8 percentage points, reflecting widespread downstream price increases imposed on consumers as businesses passed tariff costs through the supply chain.[16]

51. These findings confirm that tariffs imposed during the relevant period functioned as a direct economic burden on consumers, because businesses responded to the tariffs by increasing prices charged to end purchasers rather than internally absorbing the additional costs.

52. Adidas followed this same pattern during the tariff period. As a major importer of consumer goods, Adidas faced increased costs resulting from tariffs on its products and took steps to address those cost pressures through pricing and merchandising decisions.

53. Indeed, as detailed below, Adidas publicly acknowledged that tariffs would affect its pricing decisions and cost structure. In those communications, Adidas explained that tariffs

---

[13] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025).

[14] *See* Ron Mau & Tucker Smith, *Effects of Realized Tariff Changes on PCE Prices Peaked in First Quarter 2026*, Fed. Rsrv. Bank of Dall. (May 5, 2026), https://www.dallasfed.org/research/economics/2026/0505-mau (last accessed July 23, 2026).

[15] "PCE" refers to Personal Consumption Expenditures, an economic measure of how much consumers are spending on goods and services in the economy.

[16] *See* Mau & Smith, *supra*.

increased the company's merchandise costs and required Adidas to evaluate price adjustments and other operational responses designed to manage those additional expenses.

54. As a result, consumers who purchased goods from Adidas during the tariff period paid elevated prices reflecting the tariff-related cost increases incorporated into Adidas's retail pricing.

**D. Adidas Publicly Acknowledged That It Was Passing Tariff Costs Through to Consumers**

55. Adidas publicly acknowledged, early in the tariff period, that the tariffs would increase its costs and place upward pressure on the prices it charged consumers.

56. On April 29, 2025, Adidas joined as a signatory to a letter by the Footwear Distributors & Retailers of America ("FDRA") addressed to the President of the United States, which stated:

> The significant price increases from these tariffs will preclude these American consumers from having affordable footwear options. . . . We are in fact the one industry where tariffs do not significantly increase domestic production; tariffs just become a major impact at the cash register for every family.

57. The FDRA letter was signed by 76 footwear companies, including Adidas America.[17]

58. The same day, in announcing its first-quarter 2025 results, Adidas confirmed that it could not absorb the tariffs domestically and that the tariffs would drive consumer price increases. Adidas's Chief Executive Officer, Björn Gulden, stated: "Since we currently cannot produce

[17] *See* FDRA Letter to President Donald Trump (Apr. 29, 2025), https://fdra.org/wp-content/uploads/2025/04/April-29-Footwear-POTUS-Letter.pdf (last accessed July 23, 2026); *see also* Reuters, *Footwear brands including Nike and Adidas ask Trump for tariff exemption* (May 2, 2025).

Case 3:26-cv-01008-JR Document 1 Filed 07/23/26 Page 14 of 47

almost any of our products in the US, these higher tariffs will eventually cause higher costs for all our products for the US market."[18]

59. Gulden continued: "Cost increases due to higher tariffs will eventually cause price increases, not only in our sector, but it is currently impossible to quantify these or to conclude what impact this could have on the consumer demand for our products."[19]

60. Adidas also made clear that its pricing response was tied directly to the continued existence of the tariffs. On the same earnings call, Gulden stated that "of course there will be price increases" in the United States if the duties stayed in place, and that "should the duties go away again, there will, of course, not be price increases."[20]

61. On July 30, 2025, in announcing its second-quarter 2025 results, Adidas quantified the tariff impact and reaffirmed that it was raising prices in response. Gulden stated: "We have already had a negative impact in the double-digit euro millions in Q2 and the latest indications of tariffs will directly increase the cost of our products for the US with up to €200 million during the rest of the year."[21]

62. Adidas's own financial reporting confirmed that the tariffs were being passed through rather than absorbed. Adidas reported that "the first negative effects from increased tariffs

---

[18] *See* Adidas Group, Press Release, *adidas delivers better-than-expected first quarter results* (Apr. 29, 2025), https://www.adidas-group.com/en/media/press-releases/adidas-delivers-better-than-expected-first-quarter-results (last accessed July 23, 2026).

[19] *Id.*

[20] *See* Retail Dive, *Adidas mulls price increases as tariffs weigh on business* (Apr. 29, 2025) (quoting Q1 2025 earnings call).

[21] *See* Adidas Group, Press Release, *Continued strong double-digit growth for adidas brand in the second quarter of 2025* (July 30, 2025), https://www.adidas-group.com/en/media/press-releases/continued-strong-double-digit-growth-for-adidas-brand-in-the-second-quarter-of-2025 (last accessed July 23, 2026).

also weighed on the gross margin development," even as its gross margin nonetheless improved to 51.7% for the quarter—demonstrating that Adidas was recovering tariff costs through pricing.[22]

63. On October 29, 2025, in announcing its third-quarter 2025 results, Adidas confirmed that it had mitigated roughly half of the projected tariff impact—reducing the expected hit from more than €200 million to approximately €120 million—through a combination of "sourcing changes, select price increases, and product mix adjustments."[23]

64. On the third-quarter earnings call, Gulden described how Adidas structured those price increases to maximize what it could extract from consumers while minimizing resistance. Gulden explained that Adidas raised prices on new products—because "the price of a product that hasn't hit the market" is "not known," so "you can increase it without getting a negative reaction"—while "tr[ying] to keep all carryovers at the lower price points at the same price."[24]

65. Consistent with those statements, Adidas raised prices on affected products during the tariff period. Adidas's popular Samba sneakers, previously priced at $90, were increased to $100 on Adidas's U.S. website.[25]:

66. When asked directly whether it would return any portion of its tariff refunds to the consumers who paid higher prices, Adidas did not identify any plan to do so, in contrast to other retailers that publicly committed to passing refunds back to their customers.

---

[22] *Id.*

[23] *See* Adidas Group, Press Release, *adidas brand momentum drives record revenues, strong third-quarter results, and upgrade of full-year 2025 outlook* (Oct. 29, 2025); Adidas AG, Q3 2025 Earnings Call (Oct. 29, 2025), https://seekingalpha.com/article/4834828-adidas-ag-addyy-q3-2025-earnings-call-transcript (last accessed July 23, 2026).

[24] *See* Adidas AG, Q3 2025 Earnings Call (Oct. 29, 2025).

[25] *See* Reuters, *Adidas raises full-year profit outlook as it rides out Trump tariff impact* (Oct. 21, 2025).

67. Adidas's public statements and actions thus confirmed two critical points: first, that the tariffs were increasing Adidas's costs on imported goods; and second, that Adidas was making pricing decisions in direct response to those tariff-driven cost increases. Adidas did not simply absorb the full cost of the unlawful tariffs; rather, it passed on at least part of those costs to consumers through higher retail prices.

68. Adidas's policy and practice of passing IEEPA tariff costs on to consumers arose out of, and was implemented from, its North American headquarters in Portland, Oregon.

69. Plaintiffs and Class members paid tariff-inflated prices to Adidas during the Class Period, while Adidas now seeks to retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

**E. The IEEPA Tariffs Were Unlawful Ab Initio**

70. On February 20, 2026, the Supreme Court of the United States held that the IEEPA did not grant the President "the power to impose tariffs," and that the IEEPA tariffs imposed by the federal government were unlawful from their inception.[26]

71. Enacted in 1977, the IEEPA gives the President certain tools to address unusual and extraordinary foreign threats to American national security, foreign policy, or the economy.

72. If the President identifies such a threat, the IEEPA allows the President to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest . . . ." 50 U.S.C. §§ 1701(a), 1702(a)(1)(B).

[26] *See Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

73. In holding that the IEEPA tariffs were unlawful, the Supreme Court reasoned, among other things, that:

a. the section of the IEEPA cited by the government never mentions tariffs;

b. the IEEPA had never been used by any President to impose tariffs;

c. the Constitution reserves the powers to tax and impose duties to Congress; and

d. the enormous scope of the tariffs the President sought to impose represented an "extraordinary power" that lacked "clear congressional authorization."

74. For each of those reasons, the Supreme Court held that the IEEPA tariffs imposed by the President were unlawful from their inception.

75. As a result of that decision, the tariffs that Adidas relied upon to impose price increases on Plaintiffs and Class members were unlawful, invalid, and void from the moment they were charged.

76. Adidas knew or should have known, at the time it imposed tariff-driven price increases on consumers, that the IEEPA tariffs were of questionable legality. Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade beginning in 2025, arguing that the President lacked statutory authority under IEEPA to impose them. Adidas joined the FDRA letter in April 2025, acknowledging the consumer impact of those tariffs, and yet continued to charge, collect, and retain IEEPA tariff-inflated prices from consumers.

### F. Adidas Seeks a Refund of the Same Tariffs It Passed On to Consumers

77. On April 2, 2026, Adidas filed suit in the United States Court of International Trade challenging the legality of the tariffs imposed under IEEPA. Adidas brought the action in its capacity as a U.S. importer that had paid duties under the challenged tariff regime.[27]

78. In that action, Adidas sought declaratory and injunctive relief invalidating the IEEPA tariffs and requested refunds of all duties collected from Adidas under those tariff orders.[28]

79. On March 4, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refund suits.[29]

80. CBP, in ordering reliquidation, did not provide any manner for consumers like Plaintiffs and Class members—who ultimately bore the economic burden of the IEEPA tariffs—to collect refunds. Instead, CBP created a refund structure that reliquidated IEEPA tariff amounts to the importers of record, like Adidas.

81. Adidas never claimed to CBP, as a precursor to obtaining a refund, that it was owed a refund for IEEPA tariffs independent from the amounts paid by Plaintiffs and Class members, or that Adidas—rather than its customers—bore the economic burden of the IEEPA tariffs.

82. The potential refund pool resulting from the invalidation of the IEEPA tariffs is enormous. Public reporting concerning the refund proceedings states that CBP estimated an

---

[27] *See Adidas America Inc. v. United States*, No. 26-02031 (Ct. Int'l Trade filed Apr. 2, 2026).

[28] *Id.*

[29] *See Atmus Filtration, Inc. v. United States*, No. 26-01259 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.

Case 3:26-cv-01028-JR Document 1 Filed 07/23/26 Page 19 of 39

"unprecedented volume of refunds," potentially involving 53,173,939 refunds across 330,566 importers if each entry subject to IEEPA duties is entitled to a refund.[30]

83. Before the Supreme Court struck down the IEEPA tariffs, Adidas's executives warned that the company faced a tariff hit in the hundreds of millions of euros and implemented tariff-driven price increases in response.

84. After the Supreme Court struck down the IEEPA tariffs, Adidas's CEO told investors that Adidas would be entitled to a refund of approximately $300 million from the unlawful tariffs, stating: "We haven't booked it yet, but there's a very good chance it will happen."[31]

85. Adidas is among the country's largest importers of consumer goods and therefore stands to recover substantial sums in IEEPA tariff refunds. However, Adidas did not bear the full cost of the IEEPA tariffs; Adidas passed a portion of the IEEPA tariffs on to consumers, who paid them directly in the form of higher prices.

86. In practical terms, Adidas stands to receive a windfall: it has already recouped tariff costs from consumers through higher prices, and it now stands in line to recover those same unlawful tariff payments from the federal government, along with any interest paid by the government on those funds.

---

[30] *See* Thompson Hine LLP, *CIT Suspends Earlier Order Directing IEEPA Tariff Refunds* (Mar. 6, 2026), https://www.thompsonhinesmartrade.com/2026/03/cit-suspends-earlier-order-directing-ieepa-tariff-refunds/ (last accessed July 23, 2026).

[31] *See* Reuters, *Adidas is entitled to refund of $300 mln from US tariffs, CEO says* (May 7, 2026).

## CLASS ALLEGATIONS

87. Plaintiffs bring this action on behalf of themselves and as a class action for all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Nationwide Class is defined as follows:

> **Nationwide Class**: All persons in the United States who purchased goods from Adidas during the period April 29, 2025 through February 20, 2026 (the "Class Period") that were charged prices that included IEEPA tariff costs.

88. Alternatively, and in addition, Plaintiffs bring this action on behalf of themselves and as a class action for all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the State Subclasses are defined as follows:

> **Washington Subclass**: All persons in Washington who purchased goods from Adidas during the Class Period that were charged prices that included IEEPA tariff costs.
>
> **Massachusetts Subclass**: All persons in Massachusetts who purchased goods from Adidas during the Class Period that were charged prices that included IEEPA tariff costs.
>
> **Kansas Subclass**: All persons in Kansas who purchased goods from Adidas during the Class Period that were charged prices that included IEEPA tariff costs.
>
> **California Subclass**: All persons in California who purchased goods from Adidas during the Class Period that were charged prices that included IEEPA tariff costs.
>
> **Illinois Subclass:** All persons in Illinois who purchased goods from Adidas during the Class Period that were charged prices that included IEEPA tariff costs.

89. The Nationwide Class and State Subclasses shall be referred to collectively as the "Class."

90. Plaintiff LaKenya Lee brings her claim under the Alabama Deceptive Trade Practices Act individually only, and not on behalf of a class, because that statute provides that "[a] consumer or other person bringing an action under this chapter may not bring an action on behalf of a class." Ala. Code § 8-19-10(f).[32]

---

[32] Alabama consumers remain members of the Nationwide Class for purposes of the common-law claims and the claim for declaratory relief.

91. Plaintiffs reserve the right to modify or amend the definition of the proposed Class and to modify, amend, add, or remove proposed subclasses before the Court determines whether certification is appropriate and as the parties engage in discovery.

92. A class action is the proper vehicle for adjudicating Plaintiffs' claims under Rule 23. This action satisfies the requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority.

93. **Numerosity**: The Class is so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery. Given the consumer base of Adidas, the Class numbers in the hundreds of thousands or millions of consumers.

94. **Commonality**: The claims present shared questions of law and fact, the resolution of which will resolve the litigation on a class-wide basis. These shared questions predominate over any individual questions, and include, without limitation:

a. whether Adidas paid tariffs imposed under the IEEPA on imported goods during the Class Period;

b. whether Adidas increased retail prices on goods sold to consumers in response to those tariffs;

c. whether Adidas passed through some or all of the tariff costs to consumers through higher prices;

d. whether Adidas sought or will seek refunds of those tariffs from the federal government;

e. whether Class members are the proper parties to receive IEEPA tariff refunds paid to Adidas;

f. whether Adidas's retention of tariff refunds corresponding to tariff costs paid by consumers constitutes unjust enrichment;

g. whether Adidas's conduct was unfair or deceptive under applicable consumer-protection laws; and

h. the appropriate measure of restitution, damages, or other relief resulting from Adidas's conduct.

95. **Typicality**: Plaintiffs' claims are typical of those of the other Class members because Plaintiffs, like every other Class member, purchased products from Adidas subject to tariff-related price increases and make the same claims as the other Class members.

96. **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Class members, and are represented by experienced and able counsel with expertise in complex and class-action litigation.

97. **Superiority**: Class treatment is superior to all other available methods for the fair and efficient adjudication of this controversy. It will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would require. Class treatment will permit the adjudication of relatively modest claims by Class members who could not individually afford to litigate a complex claim against a large corporate defendant. Absent a class action, Defendant would be able to exploit and overwhelm the limited resources of each individual Class member, and individual actions would create a risk of inconsistent results.

98. Excluded from the Class are:

a. Defendant and any entities in which Defendant has a controlling interest;

b. Any entities in which Defendant's officers, directors, or employees are employed, and any of the legal representatives, heirs, successors, or assigns of Defendant;

c. The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d. All persons or entities that properly execute and timely file a request for exclusion from the Class; and

e. Any attorneys representing Plaintiffs or the Class.

## CLAIMS FOR RELIEF

### COUNT I
### Unjust Enrichment
### (On behalf of Plaintiffs and the Nationwide Class)

99. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

100. Plaintiffs and the Class conferred a benefit upon Defendant in the form of the money Defendant received from them through tariff-driven price increases on goods purchased during the Class Period.

101. Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiffs and the Class.

102. Under principles of equity and good conscience, Defendant should not be permitted to retain the amount of the tariff-driven price increases obtained from Plaintiffs and the Class, which Defendant unjustly obtained as a result of its price increases on goods subject to unlawful tariffs. Defendant has retained profits generated from its sales of products subject to tariff-related price increases and should not be permitted to retain those profits—particularly where it has sought

and obtained, and expects to continue to obtain, a refund of the very same duties from the federal government.

103. Defendant's enrichment was at the expense of Plaintiffs and the Class, who bore the economic burden of the unlawful tariffs.

104. Plaintiffs and the Class have no adequate remedy at law.

105. Accordingly, Plaintiffs and the Class seek full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

**COUNT II**
**Money Had and Received**
**(On behalf of Plaintiffs and the Nationwide Class)**

106. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

107. Defendant received money from Plaintiffs and from each member of the Class in the form of a tariff surcharge embedded in the prices they paid. The Supreme Court has determined that the tariffs were unlawful.

108. The money belonged to Plaintiffs and to each member of the Class.

109. Defendant has not returned the money.

110. It will offend equity and good conscience if Defendant is permitted to retain the tariff surcharge. Plaintiffs seek the return of the money in an amount to be proven at trial.

111. Plaintiffs seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, injunctive relief, and other remedies available to them.

**COUNT III**
**Violations of the Washington Consumer Protection Act**
**RCW 19.86.010, et seq.**
**(On behalf of Plaintiffs Hufana and Parisi and the Washington Subclass)**

112. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

113. Defendant advertised, offered, and sold goods in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by RCW 19.86.010(2).

114. Washington's Consumer Protection Act, RCW 19.86.010, et seq. (the "CPA"), protects consumers by promoting fair competition in commercial markets for goods and services and prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020.

115. Defendant engaged in unfair and deceptive acts and practices by: (i) raising prices due to tariffs; (ii) presenting unlawful tariff costs to consumers as legitimate, legally mandated cost increases without disclosing that those tariffs were of questionable legal validity; (iii) failing to disclose that it intended to seek, and did seek, refunds of those tariffs; and (iv) retaining the economic benefit of those tariff overcharges while simultaneously pursuing and obtaining refunds of the same tariffs from the federal government.

116. Defendant's conduct occurred in the conduct of trade or commerce and has the capacity to deceive a substantial portion of the public.

117. Defendant's unfair acts have injured a substantial portion of the public and are injurious to the public interest, and the acts complained of are ongoing and/or have a substantial likelihood of being repeated.

118. As a result of Defendant's conduct, Plaintiffs and the Washington Subclass members were injured in their business or property in that they paid inflated prices for goods subject to unlawful tariffs. Defendant's conduct (1) caused substantial injury that is (2) not reasonably avoidable by consumers and that (3) is not outweighed by any countervailing benefit to consumers or competition.

119. Defendant's unfair conduct proximately caused the injuries of Plaintiffs Hufana and Parisi and the Washington Subclass because, but for the challenged conduct, they would not have paid tariff-inflated prices for goods that Defendant seeks to recoup through refunds.

120. Plaintiffs Hufana and Parisi, individually and on behalf of the Washington Subclass, seek to enjoin further violations and to recover actual damages and treble damages, together with the costs of suit, including reasonable attorneys' fees.

**COUNT IV**
**Violations of the Massachusetts Consumer Protection Act**
**Mass. Gen. Laws ch. 93A**
**(On behalf of Plaintiffs Quinn, St. George, and Aris and the Massachusetts Subclass)**

121. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

122. Defendant engaged in trade or commerce within the meaning of Mass. Gen. Laws ch. 93A, § 1, and its conduct occurred primarily and substantially within the Commonwealth of Massachusetts as to the Massachusetts Subclass.

123. Chapter 93A, § 2 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

124. Defendant engaged in unfair and deceptive acts and practices by: (i) charging consumers tariff-driven price increases; (ii) presenting unlawful tariff costs to consumers as legitimate, legally mandated cost increases without disclosing that those tariffs were of

questionable legal validity; (iii) failing to disclose that it intended to seek, and did seek, refunds of those tariffs; and (iv) retaining the economic benefit of those tariff overcharges while simultaneously pursuing and obtaining refunds of the same tariffs from the federal government.

125. Defendant's conduct was immoral, unethical, oppressive, or unscrupulous, and caused substantial injury to consumers that was not reasonably avoidable and that is not outweighed by any countervailing benefit to consumers or competition.

126. Defendant acted knowingly and willfully. Adidas knew or should have known, at the time it imposed tariff-driven price increases, that the IEEPA tariffs were of questionable legality, yet continued to charge, collect, and retain tariff-inflated prices from consumers.

127. Plaintiffs Quinn, St. George, and Aris and the Massachusetts Subclass suffered an ascertainable loss of money as a direct result of Defendant's unfair and deceptive acts, having paid tariff-inflated prices for Adidas products that would not have been imposed absent the unlawful IEEPA tariff regime.

128. On May 27, 2026, Plaintiff Aris served a written demand for relief on Defendant identifying the claimants and reasonably describing the unfair or deceptive acts or practices and the injury suffered, in compliance with Mass. Gen. Laws ch. 93A, § 9(3). Defendant failed to tender a reasonable settlement offer within thirty days.

129. Plaintiffs Quinn, St. George, and Aris, individually and on behalf of the Massachusetts Subclass, are entitled to recover actual damages, statutory damages, and up to treble damages for Defendant's knowing and willful violations, together with reasonable attorneys' fees and costs, pursuant to Mass. Gen. Laws ch. 93A, § 9.

**COUNT V**
**Violations of the Alabama Deceptive Trade Practices Act**
**Ala. Code § 8-19-1, et seq.**
**(On behalf of Plaintiff Lee, individually)**

130. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

131. This Count is brought by Plaintiff LaKenya Lee individually and not on behalf of a class, because Ala. Code § 8-19-10(f) provides that a consumer bringing an action under the Alabama Deceptive Trade Practices Act ("ADTPA") "may not bring an action on behalf of a class."

132. The ADTPA prohibits "unconscionable, false, misleading, or deceptive act[s] or practice[s] in the conduct of any trade or commerce." Ala. Code § 8-19-5.

133. Defendant engaged in unlawful practices by: (i) charging consumers tariff-driven price increases; (ii) presenting unlawful tariff costs to consumers as legitimate, legally mandated cost increases without disclosing that those tariffs were of questionable legal validity; (iii) failing to disclose that it intended to seek, and did seek, refunds of those tariffs; and (iv) retaining the economic benefit of those tariff overcharges while simultaneously pursuing and obtaining refunds of the same tariffs from the federal government.

134. Plaintiff Lee is a consumer who purchased Adidas goods for personal use and suffered a monetary loss as a direct result of Defendant's conduct.

135. At least fifteen days prior to the filing of this action, Plaintiff Lee served a written demand for relief on Defendant identifying the claimant and reasonably describing the unfair or deceptive act or practice and the injury suffered, in compliance with Ala. Code § 8-19-10(e).

136. Plaintiff Lee is entitled to recover her actual damages, or $100, whichever is greater, and up to three times her actual damages in the Court's discretion, together with reasonable attorneys' fees and costs, pursuant to Ala. Code § 8-19-10.

**COUNT VI**
**Violations of the Kansas Consumer Protection Act**
**K.S.A. § 50-623, et seq.**
**(On behalf of Plaintiff Allen and the Kansas Subclass)**

137. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

138. Plaintiff Allen is a "consumer" and Defendant is a "supplier" engaged in "consumer transactions" within the meaning of the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-624.

139. The KCPA prohibits suppliers from engaging in "any deceptive act or practice in connection with a consumer transaction," K.S.A. § 50-626, and "any unconscionable act or practice in connection with a consumer transaction," K.S.A. § 50-627.

140. Defendant engaged in deceptive acts and practices specifically proscribed by K.S.A. § 50-626, including, without limitation: (i) the willful failure to state a material fact, or the willful concealment, suppression, or omission of a material fact, K.S.A. § 50-626(b)(3), by presenting tariff-driven price increases to consumers as legitimate, legally mandated costs while concealing that the underlying tariffs were of questionable legal validity and that Defendant intended to seek, and did seek, refunds of those same tariffs; and (ii) making false or misleading representations, knowingly or with reason to know, of fact concerning the reason for or existence of the prices charged, K.S.A. § 50-626(b)(7). Defendant further engaged in unconscionable acts and practices proscribed by K.S.A. § 50-627 by charging consumers tariff-driven price increases and retaining the economic benefit of those overcharges while simultaneously pursuing and obtaining refunds of the same tariffs from the federal government.

141. Plaintiff Allen and the Kansas Subclass were aggrieved by Defendant's conduct and suffered a monetary loss as a direct result, having paid tariff-inflated prices for Adidas products that would not have been imposed absent the unlawful IEEPA tariff regime.

142. Because Defendant's acts and practices are specifically proscribed by K.S.A. § 50-626 and § 50-627, Plaintiff Allen may pursue this claim on behalf of the Kansas Subclass as a class action for damages under K.S.A. § 50-634(d). Plaintiff Allen and the Kansas Subclass are entitled to recover their actual damages or, in the alternative and to the extent recoverable, a civil penalty under K.S.A. § 50-636, whichever is greater, together with reasonable attorneys' fees and costs under K.S.A. § 50-634. To the extent any remedy is not available on a class-wide basis, Plaintiff Allen seeks that remedy individually.

**COUNT VII**
**Violation of California Unfair Competition Law**
**Cal. Bus. Code § 17200, *et seq.***
**(On behalf of Plaintiffs Chang, Taje Gill, and Dhaman Gill and the California Subclass)**

143. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

144. Defendant engaged in unlawful, unfair, and fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices.

145. Plaintiffs Chang, Taje Gill, and Dhaman Gill, and the California Subclass Members lack an adequate remedy at law, particularly as to forthcoming refunds from the federal government to Defendant.

146. Defendant's business practices were unlawful, particularly because it collected money that was not ultimately owed by law, is illegally holding money that belongs to Plaintiffs Chang, Taje Gill, and Dhaman Gill, deceptively mislabeled a surcharge, and continues to hold

money for a surcharge that was ultimately found to be unlawful.

147. Defendant's business practices were unfair, particularly because it shifted the burden of potential compliance with the tariffs to Plaintiffs Chang, Taje Gill, and Dhaman Gill but retained all benefits for itself, including the refund of the tariff, even though that money belonged to, and was owed back to, Plaintiffs Chang, Taje Gill, and Dhaman Gill. Defendant is also continuing to retain funds that rightfully belong to Plaintiffs Chang, Taje Gill, and Dhaman Gill.

148. Defendant's retention of tariff overcharges despite their eligibility for a refund from the federal government is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm.

149. As a result of those unlawful and unfair business practices, Plaintiffs Chang, Taje Gill, and Dhaman Gill and the California Subclass Members suffered an injury-in-fact and have lost money or property—specifically, the tariff overcharges they paid to Defendant.

150. The injuries to Plaintiffs Chang, Taje Gill, and Dhaman Gill and the California Subclass Members greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

151. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

152. Therefore, Plaintiffs Chang, Taje Gill, and Dhaman Gill and the California Subclass Members are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; an order declaring Defendant's conduct an unfair business practice; an

injunction requiring Defendant to pay any refunded tariff overcharges back to Plaintiffs Chang, Taje Gill, and Dhaman Gill; and any other equitable relief the Court deems proper.

**COUNT VIII**
**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 Ill. Comp. Stat § 505/1 et seq.**
**(On behalf of Plaintiffs Chaidez and Hernandez Reyes and the Illinois Subclass)**

153. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

154. Plaintiffs Chaidez, Hernandez Reyes and the members of the Illinois Subclass, and Defendant are "persons" within the meaning of 815 Ill. Comp. Stat. § 505/1(c).

155. At all times mentioned herein, Defendant was engaged in "trade" or "commerce" in Illinois as defined by 815 Ill. Comp. Stat. § 505/1(f) by engaging in the offering and sale of things of value in Illinois.

156. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") provides that "[u]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practices described in . . . the 'Uniform Deceptive Trade Practices Act' . . . in the conduct of any trade or commerce are . . . unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. § 505/2.

157. Plaintiffs Chaidez and Hernandez Reyes and the Illinois Subclass Members purchased consumer goods marketed and sold by Defendant.

158. Defendant's conduct was unfair under ICFA.

159. After the Supreme Court held that the IEEPA tariffs lacked statutory authorization, Defendant became entitled or positioned to seek refunds, reliquidation, or other recovery of the IEEPA duties it had paid or deposited on its imported products. Defendant nevertheless has not established any mechanism to return to consumers the tariff surcharges it passed on to them.

160. Defendant's conduct is unfair because Defendant shifted the economic burden of the IEEPA tariffs to consumers, while retaining for itself the refund rights, credits, reliquidation, or proceeds corresponding to the same tariff costs. Plaintiffs Chaidez and Hernandez Reyes do not allege that Defendant was required to predict the Supreme Court's ruling when the tariffs were first imposed; rather, the unfairness arises from Defendant's continued retention of tariff surcharges after the tariff costs became refundable or recoverable.

161. Defendant's conduct offends public policy because it permits the party that passed a government charge through to consumers to retain the benefit of a later refund of that same charge, while the consumers who bore the economic burden receive nothing.

162. Defendant's conduct is oppressive and unscrupulous because Plaintiffs Chaidez and Hernandez Reyes and the Illinois Subclass Members had no ability to negotiate the tariff surcharges or mechanism to obtain IEEPA tariff refunds from the government.

163. Defendant's conduct caused substantial injury to consumers because Plaintiffs Chaidez and Hernandez Reyes and the Illinois Subclass Members paid tariff surcharges in connection with tariffs that were unlawful, and Defendant's failure to return or credit those amounts deprives consumers of money corresponding to tariff costs that Defendant may recover or has recovered from the government.

164. 815 Ill. Comp. Stat. § 505/10a states that "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against

such person. The court, in its discretion, may award actual economic damages or any other relief which the court deems proper. . . [t]he court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party."

165. In taking the actions set forth above, Defendant violated ICFA, including but not limited to 815 Ill. Comp. Stat. § 505/2, by engaging in unfair practices in connection with the sale of consumer products to Plaintiffs Chaidez and Hernandez Reyes and the Illinois Subclass Members.

166. As a proximate result of Defendant's violations of ICFA, Plaintiffs Chaidez and Hernandez Reyes and the Illinois Subclass Members suffered actual economic damages, including the tariff surcharges they paid to Defendant and the amount of any tariff refund, credit, reliquidation, or other recovery Defendant received or is entitled to receive in connection with the IEEPA tariffs.

167. There is no benefit to consumers from Defendant's conduct. The only party who benefits is Defendant, who stands to enjoy windfall profits as a result of its conduct.

168. Therefore, Defendant has violated ICFA by engaging in the unfair acts or practices prohibited by 815 Ill. Comp. Stat. §§ 505/2, 510/2.

169. Plaintiffs Chaidez and Hernandez Reyes and the Illinois Subclass Members are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees and litigation costs, and any other relief that may be appropriate.

**COUNT IX**
**Declaratory Relief, 28 U.S.C. § 2201**
**(On behalf of Plaintiffs and the Nationwide Class)**

170. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

171. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

172. Plaintiffs' claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Defendant and the tariff refunds paid or payable to Defendant.

173. Plaintiffs have suffered an injury by having been required to pay Defendant a tariff surcharge because of the unlawful tariffs on Defendant's products, and Plaintiffs will imminently suffer further injury by Defendant's retention of tariff refunds corresponding to those surcharges.

174. This Court can exercise its equitable power to enter a declaratory judgment that Defendant's retention of the tariff surcharges paid by Plaintiffs—and refunded, or to be refunded, to Defendant—is unlawful for any of the reasons stated above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and members of the proposed Class pray for relief and judgment against Defendant as follows:

a. For an order certifying the proposed Class and Subclasses, appointing Plaintiffs and their counsel to represent the proposed Class, and directing notice to the proposed Class to be paid by Defendant;

b. For damages suffered by Plaintiffs and members of the proposed Class;

c. For restitution to Plaintiffs and the proposed Class of all monies wrongfully obtained by Defendant;

d. For disgorgement of the ill-gotten gains derived by Defendant from its unlawful conduct, including any tariff refunds and interest attributable to amounts borne by Plaintiffs and the Class;

e. For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in this Complaint, and to remedy its past conduct;

f. For a declaratory judgment as set forth above;

g. For treble, statutory, and/or punitive damages as permitted by law;

h. For Plaintiffs' reasonable attorneys' fees, as permitted by law;

i. For Plaintiffs' costs incurred;

j. For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

k. For such other and further relief as this Court deems just and proper under equity or law.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of all issues so triable.

DATED this 23rd day of July, 2026.

Respectfully submitted,

By: */s/Kaleigh N. Boyd*

Kaleigh N. Boyd, OSB No. 253094
**MCNAUL EBEL PLLC**
600 University Street, Suite 2700
Seattle, WA 98101
Tel: (206) 467-1816
kboyd@mcnaul.com

*Local Counsel*

By: <u>*/s/ J. Gerard Stranch*</u>
J. Gerard Stranch, IV, *pro hac vice*
Michael Tackeff, *pro hac vice*
Grayson Wells*
gstranch@stranchlaw.com
gwells@stranchlaw.com
mtackeff@stranchlaw.com
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801

Nathan R. Ring, OSB # 172663
**STRANCH JENNINGS & GARVEY, PLLC**
3100 W. Charleston, Ste. 208
Las Vegas, NV 89102
Telephone: 725-235-9750
lasvegas@stranchlaw.com

By: <u>*/s/ Jason T. Dennett*</u>
Jason T. Dennett, *pro hac vice*
**MILBERG, PLLC**
1700 7th Ave, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
jdennett@milberg.com

Gary M. Klinger*
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878
gklinger@milberg.com

*Co-Lead Counsel for Plaintiffs & the Putative Class*

M. Anderson Berry, *pro hac vice*
Gregory Haroutunian, *pro hac vice*
Timothy Emery*
Brook Garberding*
Brandon P. Jack*
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: 916.823.6955
anderson@emeryreddy.com

Case MDL No. 3202 Document 1-24 Filed 07/14/26 Page 38 of 39

emeryt@emeryreddy.com
brook@emeryreddy.com
gregory@emeryreddy.com
brandon@emeryreddy.com

Terence R. Coates*
Jonathan T. Deters*
**MARKOVITS, STOCK**
**& DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
tcoates@msdlegal.com
jdeters@msdlegal.com

*Attorneys for Plaintiffs Chris Hufana, Lakenya Lee, Paul Quinn, Sonya Allen, Nicole St. George, & Proposed Class*

Zachary Arbitman, *pro hac vice*
Nicole A. Maruzzi, *pro hac vice*
**FELDMAN SHEPHERD WOHLGELERNTER**
**TANNER WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Telephone: (215) 567-8300
zarbitman@feldmanshepherd.com
nmaruzzi@feldmanshepherd.com

*Attorneys for Plaintiff Aaron Parisi, Carlos Aris & Proposed Class*

Matthew R. Wilson*
Jared W. Connors*
**MEYER WILSON WERNING CO., LPA**
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
Email: mwilson@meyerwilson.com
jconnors@meyerwilson.com

Brian Levin*
**LEVIN LAW, P.A.**
2665 South Bayshore Drive, PH2b
Miami, FL 33133

Telephone: (305) 402-9050
Facsimile: (305) 676-4443
Email: brian@levinlawpa.com

*Attorneys for Plaintiffs Antonio Chaidez, Franklin Chang, Taje Gill, Dhaman Gill, and Alvyn Hernandez Reyes & Proposed Class*

**pro hac vice* forthcoming