# EXHIBIT 22

LEAD

# United States District Court
# Eastern District of Pennsylvania (Philadelphia)
# CIVIL DOCKET FOR CASE #: 2:26-cv-02774-JS

TERRILL et al v. IKEA NORTH AMERICA SERVICES LLC. et al
Assigned to: DISTRICT JUDGE JUAN R. SANCHEZ
Demand: $5,000,000
related Case: 2:26-cv-03712-JS
Cause: 28:1332 Diversity-(Citizenship)

Date Filed: 04/27/2026
Jury Demand: Plaintiff
Nature of Suit: 380 Personal Property: Other
Jurisdiction: Diversity

**Plaintiff**

**PATRICK TERRILL**

represented by

**AARON L. SCHWARTZ**
Kaplan Fox & Kilsheimer LLP
800 Third Avenue
38th Floor
New York, NY 10022
212-687-1980
Email: aschwartz@kaplanfox.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BENJAMIN F. JOHNS**
Shub Johns & Holbrook LLP
Four Tower Bridge
200 Barr Harbor Dr.
Suite 400
Conshohocken, PA 19428
610-477-8380
Email: bjohns@shublawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CLARA ABRAMSON**
KAPLAN FOX & KILSHEIMER
800 THIRD AVE
38TH FLOOR
NEW YORK, NY 10022
Email: CAbramson@kaplanfox.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**DONALD R. HALL**
KAPLAN FOX KILSHEIMER LLP
850 THIRD AVE
NEW YORK, NY 10022
212-687-1980
Email: dhall@kaplanfox.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**HAE SUNG NAM**
KAPLAN FOX & KILSHEIMER, LLP
850 THIRD AVENUE
14TH FLOOR
NEW YORK, NY 10022
212-687-1980
Email: hnam@kaplanfox.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**LAURENCE D. KING**
Kaplan Fox & Kilsheimer LLP
1999 Harrison Street
Suite 1501
Oakland, CA 94612
415-772-4700
Email: lking@kaplanfox.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MATTHEW LINDENMUTH**
800 THIRD AVE
38TH FLOOR
NEW YORK, NY 10022
Email: MLindenmuth@kaplanfox.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JONATHAN SHUB**
Shub Johns & Holbrook LLP
Four Tower Bridge
200 Barr Harbor Dr.
Suite 400
West Conshohocken, PA 19428
610-477-8380
Email: ecf@shublawyers.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BRENDA PEREZ**
*individually and on behalf of all others similarly situated*

represented by

**AARON L. SCHWARTZ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BENJAMIN F. JOHNS**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**CLARA ABRAMSON**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**DONALD R. HALL**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**HAE SUNG NAM**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**LAURENCE D. KING**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MATTHEW LINDENMUTH**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JONATHAN SHUB**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**LISA MATTHEWS**
*INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED*

represented by

**JEFFREY S. GOLDENBERG**
Goldenberg Schneider LPA
4445 Lake Forest Drive
Suite 490
Cincinnati, OH 45242
513-345-8291
Email: jgoldenberg@gs-legal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**DIANA J. ZINSER**
Spector Caldes & Corrigan, PC
2001 Market Street
Suite 3420
Philadelphia, PA 19103
215-496-0300
Fax: 215-496-6611
Email: dzinser@scc.law
*ATTORNEY TO BE NOTICED*

**JEFFREY J. CORRIGAN**
Spector Caldes & Corrigan, PC
2001 Market Street
Suite 3420
Philadelphia, PA 19103
215-496-0300
Fax: 215-496-6611
Email: jcorrigan@scc.law

*ATTORNEY TO BE NOTICED*

**JEFFREY L. SPECTOR**
Spector Caldes & Corrigan, PC
2001 Market Street
Suite 3420
Philadelphia, PA 19103
215-496-0300
Fax: 215-496-6611
Email: jspector@scc.law
*ATTORNEY TO BE NOTICED*

**WILLIAM G. CALDES**
Spector Caldes & Corrigan, PC
2001 Market Street
Suite 3420
Philadelphia, PA 19103
215-496-0300
Fax: 215-496-6611
Email: bcaldes@scc.law
*ATTORNEY TO BE NOTICED*

**AARON L. SCHWARTZ**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**GEZILLE PONIENTE** represented by **AARON L. SCHWARTZ**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**IKEA NORTH AMERICA SERVICES LLC.** represented by **MARCEL S. PRATT**
BALLARD SPAHR LLP
1735 MARKET STREET
51ST FLOOR
PHILADELPHIA, PA 19103
2158648506
Email: prattm@ballardspahr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Facundo Bouzat**
Ballard Spahr
1735 Market St.
51st Floor
Philadelphia, PA 19103-7599
215-864-8224
Email: bouzatf@ballardspahr.com
*ATTORNEY TO BE NOTICED*

**MEEGAN BROOKS**
BALLARD SPAHR LLP
71 STEVENSON STREET
SUITE 400
SAN FRANCISCO, CA 94105
Email:
BROOKSM@BALLARDSPAHR.COM
*ATTORNEY TO BE NOTICED*

**Wilson Cole Smerconish**
Ballard Spahr LLP
1735 Market Street
51st Floor
Philadelphia, PA 19103
484-343-6421
Email: smerconishw@ballardspahr.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**IKEA US RETAIL LLC** represented by **MARCEL S. PRATT**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Facundo Bouzat**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MEEGAN BROOKS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Wilson Cole Smerconish**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**IKEA PROPERTY, INC.** represented by **MARCEL S. PRATT**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Facundo Bouzat**
(See above for address)
*ATTORNEY TO BE NOTICED*

**MEEGAN BROOKS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Wilson Cole Smerconish**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**IKEA HOLDING US INC.**
*TERMINATED: 08/05/2026*

represented by **MARCEL S. PRATT**
(See above for address)
*TERMINATED: 08/05/2026*
*LEAD ATTORNEY*

**Facundo Bouzat**
(See above for address)
*TERMINATED: 08/05/2026*

**MEEGAN BROOKS**
(See above for address)
*TERMINATED: 08/05/2026*

**Wilson Cole Smerconish**
(See above for address)
*TERMINATED: 08/05/2026*

**Defendant**

**INGKA HOLDING OVERSEAS B.V.**

**Defendant**

**INGKA HOLDING B.V.**

**Defendant**

**INGKA PROCUREMENT LLC**

**Defendant**

**INGKA DIGITAL US, LLC**

**Defendant**

**INGKA INVESTMENTS REAL ESTATE US LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/27/2026 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number APAEDC-19206398.), filed by BRENDA PEREZ, PATRICK TERRILL. (Attachments: # 1 Civil Cover Sheet, # 2 Designation Form)(SHUB, JONATHAN) (Entered: 04/27/2026) |
| 04/27/2026 | 2 | Opt In Notice of Procedure to Consent to Random Magistrate Judge Assignment (Attachments: # 1 Consent)(sbt) (Entered: 04/27/2026) |
| 04/27/2026 | 3 | Notice re: Availability of Court-Annexed Mediation (sbt) (Entered: 04/27/2026) |
| 04/28/2026 | 4 | Summons Issued as to INGKA HOLDING B.V., IKEA HOLDING US INC., IKEA NORTH AMERICA SERVICES LLC., IKEA PROPERTY, INC., IKEA US RETAIL LLC, INGKA HOLDING OVERSEAS B.V.. E-MAILED To: COUNSEL on 4/28/26 (bw) (Entered: 04/28/2026) |
| 05/06/2026 | 5 | AFFIDAVIT of Service by Kimberly Mcmullin re: served Complaint and Summons upon IKEA HOLDING US INC. by Personal on 05/01/2026 (SHUB, JONATHAN) (Entered: 05/06/2026) |

| | | |
|---|---|---|
| 05/06/2026 | 6 | AFFIDAVIT of Service by Kimberly Mcmullin re: served Complaint and Summons upon IKEA NORTH AMERICA SERVICES LLC by Personal on 05/01/2026 (SHUB, JONATHAN) (Entered: 05/06/2026) |
| 05/06/2026 | 7 | AFFIDAVIT of Service by Kimberly Mcmullin re: served Complaint and Summons upon IKEA PROPERTY, INC. by Personal on 05/01/2026 (SHUB, JONATHAN) (Entered: 05/06/2026) |
| 05/06/2026 | 8 | AFFIDAVIT of Service by Kimberly Mcmullin re: served Complaint and Summons upon IKEA US RETAIL LLC by Personal on 05/01/2026 (SHUB, JONATHAN) (Entered: 05/06/2026) |
| 05/12/2026 | 9 | MOTION for Pro Hac Vice *of Clara Abramson* ( Filing fee $ 75 receipt number APAEDC-19254643.) filed by BRENDA PEREZ, PATRICK TERRILL.Certificate of Service.(SHUB, JONATHAN) (Entered: 05/12/2026) |
| 05/12/2026 | 10 | MOTION for Pro Hac Vice *of Donald Hall* ( Filing fee $ 75 receipt number APAEDC-19254657.) filed by BRENDA PEREZ, PATRICK TERRILL.Certificate of Service.(SHUB, JONATHAN) (Entered: 05/12/2026) |
| 05/12/2026 | 11 | MOTION for Pro Hac Vice *of Hae Sung Nam* ( Filing fee $ 75 receipt number APAEDC-19254675.) filed by BRENDA PEREZ, PATRICK TERRILL.Certificate of Service.(SHUB, JONATHAN) (Entered: 05/12/2026) |
| 05/12/2026 | 12 | MOTION for Pro Hac Vice *of Laurence King* ( Filing fee $ 75 receipt number APAEDC-19254691.) filed by BRENDA PEREZ, PATRICK TERRILL.Certificate of Service.(SHUB, JONATHAN) (Entered: 05/12/2026) |
| 05/12/2026 | 13 | MOTION for Pro Hac Vice *of Matthew Lindenmuth* ( Filing fee $ 75 receipt number APAEDC-19254709.) filed by BRENDA PEREZ, PATRICK TERRILL.Certificate of Service.(SHUB, JONATHAN) (Entered: 05/12/2026) |
| 05/13/2026 | 14 | ORDER THAT THE MOTION FOR CLARA ABRAMSON TO APPEAR PRO HAC VICE IS GRANTED; ETC.. SIGNED BY DISTRICT JUDGE JUAN R. SANCHEZ ON 5/12/26.5/13/26 ENTERED AND E-MAILED.(JL) (Entered: 05/13/2026) |
| 05/13/2026 | 15 | ORDER THAT THE MOTION FOR DONALD R. HALL TO APPEAR PRO HAC VICE IS GRANTED; ETC.. SIGNED BY DISTRICT JUDGE JUAN R. SANCHEZ ON 5/12/26.5/13/26 ENTERED AND E-MAILED.(JL) (Entered: 05/13/2026) |
| 05/13/2026 | 16 | ORDER THAT THE MOTION FOR LAURENCE D. KING TO APPEAR PRO HAC VICE IS GRANTED; ETC.. SIGNED BY DISTRICT JUDGE JUAN R. SANCHEZ ON 5/12/26.5/13/26 ENTERED AND E-MAILED.(JL) (Entered: 05/13/2026) |
| 05/13/2026 | 17 | ORDER THAT THE MOTION FOR PRO HAC VICE ADMISSION OF MATTHEW LINDENMUTH IS GRANTED; ETC.. SIGNED BY DISTRICT JUDGE JUAN R. SANCHEZ ON 5/12/26.5/13/26 ENTERED AND E-MAILED.(JL) (Entered: 05/13/2026) |
| 05/13/2026 | 18 | ORDER THAT THE MOTION FOR HAE SUNG NAM TO APPEAR PRO HAC VICE IS GRANTED; ETC.. SIGNED BY DISTRICT JUDGE JUAN R. SANCHEZ ON 5/12/26.5/13/26 ENTERED AND E-MAILED.(JL) (Entered: 05/13/2026) |
| 05/15/2026 | 19 | NOTICE of Appearance by AARON L. SCHWARTZ on behalf of BRENDA PEREZ, PATRICK TERRILL with Entry of Appearance and Certificate of Service(SCHWARTZ, AARON) (Entered: 05/15/2026) |
| 05/19/2026 | 20 | NOTICE of Appearance by MARCEL S. PRATT on behalf of IKEA HOLDING US INC., IKEA NORTH AMERICA SERVICES LLC., IKEA PROPERTY, INC., IKEA US RETAIL LLC with Certificate of Service(PRATT, MARCEL) (Entered: 05/19/2026) |

| | | |
|---|---|---|
| 05/19/2026 | 21 | NOTICE of Appearance by Facundo Bouzat on behalf of IKEA HOLDING US INC., IKEA NORTH AMERICA SERVICES LLC., IKEA PROPERTY, INC., IKEA US RETAIL LLC with Certificate of Service(Bouzat, Facundo) (Entered: 05/19/2026) |
| 05/20/2026 | 22 | STIPULATION re 1 Complaint (Attorney) by IKEA HOLDING US INC., IKEA NORTH AMERICA SERVICES LLC., IKEA PROPERTY, INC., IKEA US RETAIL LLC. (PRATT, MARCEL) (Entered: 05/20/2026) |
| 05/20/2026 | 23 | STIPULATION AND ORDER THAT IKEA HOLDING US INC; IKEA NORTH AMERICA SERVICES LLC.; IKEA PROPERTY, INC; IKEA US RETAIL LLC TIME TO ANSWER, MOVE OR OTHERWISE RESPOND TO THE COMPLAINT IS BY 6/30/26; ETC.. SIGNED BY DISTRICT JUDGE JUAN R. SANCHEZ ON 5/20/26. 5/20/26 ENTERED AND E-MAILED.(JL) (Entered: 05/20/2026) |
| 05/29/2026 | 24 | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by IKEA HOLDING US INC..(PRATT, MARCEL) (Entered: 05/29/2026) |
| 05/29/2026 | 25 | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by IKEA NORTH AMERICA SERVICES LLC..(PRATT, MARCEL) (Entered: 05/29/2026) |
| 05/29/2026 | 26 | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by IKEA PROPERTY, INC..(PRATT, MARCEL) (Entered: 05/29/2026) |
| 05/29/2026 | 27 | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by IKEA US RETAIL LLC.(PRATT, MARCEL) (Entered: 05/29/2026) |
| 06/03/2026 | 28 | NOTICE of Appearance by BENJAMIN F. JOHNS on behalf of BRENDA PEREZ, PATRICK TERRILL with Jury Demand, Certificate of Service(JOHNS, BENJAMIN) (Entered: 06/03/2026) |
| 06/22/2026 | 29 | MOTION to Consolidate Cases *And Appoint Interim Co-Lead Class Counsel* filed by BRENDA PEREZ, PATRICK TERRILL.Memorandum. (Attachments: # 1 Memorandum of Law in Support of Plaintiffs' Motion to Consolidate Cases and Appoint Interim Co-Lead Class Counsel, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Text of Proposed Order)(SCHWARTZ, AARON) (Entered: 06/22/2026) |
| 06/23/2026 | 30 | MOTION for Pro Hac Vice *Application of Meegan Brooks* ( Filing fee $ 75 receipt number APAEDC-19383940.) filed by IKEA HOLDING US INC., IKEA NORTH AMERICA SERVICES LLC., IKEA PROPERTY, INC., IKEA US RETAIL LLC.Certificate of Service.(PRATT, MARCEL) (Entered: 06/23/2026) |
| 06/24/2026 | 31 | ORDER THAT THE MOTION FOR PRO HAC VICE FOR MEEGAN BRROKS 30 IS GRANTED. SIGNED BY DISTRICT JUDGE JUAN R. SANCHEZ ON 6/24/26.6/24/26 ENTERED AND COPIES E-MAILED.(bw) (Entered: 06/24/2026) |
| 06/26/2026 | 32 | STIPULATION AND ORDER THAT THE PARTIES JOINTLY CONSIDERING PLAINTIFFS RECENTLY FILED UNOPPOSED MOTION TO CONSOLIDATE THE ABOVE-CAPTIONED MATTER WITH MATTHEWS V. IKEA NORTH AMERICA SERVICES, LLC, ET AL., NO. 2:26-CV-03712 (E.D. PA), AND THE CURRENT POSTURE OF THE CASES, THE PARTIES BELIEVE THAT THE FILING OF A CONSOLIDATED COMPLAINT AND THE PROPOSED SCHEDULE IS WARRANTED UNDER FED. R. CIV. P. 42 IN THE INTEREST OF JUDICIAL ECONOMY AND EFFICIENCY; AS OUTLINED HEREIN... SIGNED BY DISTRICT JUDGE JUAN R. SANCHEZ ON 6/26/26. 6/26/26 ENTERED AND COPIES E-MAILED.(bw) (Entered: 06/26/2026) |
| 07/01/2026 | 33 | NOTICE of Appearance by Wilson Cole Smerconish on behalf of IKEA HOLDING US INC., IKEA NORTH AMERICA SERVICES LLC., IKEA PROPERTY, INC., IKEA US |

| | | |
|---|---|---|
| | | RETAIL LLC (Smerconish, Wilson) (Entered: 07/01/2026) |
| 07/08/2026 | 34 | ORDER THAT A MOTION HEARING IS SET FOR 7/13/2026 10:30 AM Via Telephone Conference BEFORE DISTRICT JUDGE JUAN R. SANCHEZ. SIGNED BY DISTRICT JUDGE JUAN R. SANCHEZ ON 7/8/26. 7/8/26 ENTERED AND COPIES E-MAILED. (bw) (Entered: 07/08/2026) |
| 07/17/2026 | 35 | ORDER THAT THE MOTION (ECF NO. 29 IN CIVIL NO. 26-2774; ECF NO. 9 IN CIVIL NO. 26-3712) IS GRANTED AS FOLLOWS: THE FOLLOWING CASES ARE HEREBY CONSOLIDATED FOR ALL PURPOSES UNDER CIVIL NO. 26-2774 PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 42(A): TERRILL V. IKEA NORTH AMERICA SERVICES, LLC, CIVIL NO. 26-2774 (E.D. PA.), AND MATTHEWS V. IKEA NORTH AMERICA SERVICES LLC, CIVIL NO. 26-3712 (E.D. PA.) (COLLECTIVELY, THE CONSOLIDATED ACTION). THE CLERK OF COURT IS DIRECTED TO ADMINISTRATIVELY TERMINATE CIVIL NO. 26-3712. THE CASE FILE FOR THE CONSOLIDATED ACTION SHALL BE MAINTAINED UNDER CIVIL NO. 26-2774. ALL PARTIES ARE DIRECTED TO FILE DOCUMENTS RELATING TO THE CONSOLIDATED ACTION ONLY ON THE DOCKET IN CIVIL NO. 26-2774. ANY ACTION SUBSEQUENTLY FILED IN, TRANSFERRED TO, OR REMOVED TO THIS COURT THAT ARISES OUT OF THE SAME OR SIMILAR OPERATIVE FACTS AS THE CONSOLIDATED ACTION AND IS ASSIGNED TO THE UNDERSIGNED AS A RELATED CASE TO THE CONSOLIDATED ACTION UNDER LOCAL RULE OF CIVIL PROCEDURE 40.1(V) SHALL BE CONSOLIDATED WITH THE CONSOLIDATED ACTION. SIGNED BY DISTRICT JUDGE JUAN R. SANCHEZ ON 7/17/26.7/17/26 ENTERED AND COPIES E-MAILED.(bw) (Main Document 35 replaced on 7/20/2026) (nd). (Entered: 07/17/2026) |
| 07/20/2026 | 36 | MOTION for Pro Hac Vice *of Jeffrey S. Goldenberg* ( Filing fee $ 75 receipt number APAEDC-19465298.) filed by LISA MATTHEWS..(ZINSER, DIANA) (Entered: 07/20/2026) |
| 07/21/2026 | 37 | ORDER THAT THE MOTION OF JEFFREY S. GOLDENBERG TO APPEAR PRO HAC VICE IS GRANTED; ETC.. SIGNED BY DISTRICT JUDGE JUAN R. SANCHEZ ON 7/21/26.7/21/26 ENTERED AND E-MAILED.(JL) (Entered: 07/21/2026) |
| 07/29/2026 | 38 | Minute Entry for proceedings held before DISTRICT JUDGE JUAN R. SANCHEZ TELEPHONE Status Conference held on 7/13/26. (JL) (Entered: 07/29/2026) |
| 08/05/2026 | 39 | AMENDED COMPLAINT *(Consolidated Amended Class Action Complaint)* against INGKA HOLDING B.V., IKEA NORTH AMERICA SERVICES LLC., IKEA PROPERTY, INC., IKEA US RETAIL LLC, INGKA HOLDING OVERSEAS B.V., INGKA PROCUREMENT LLC, INGKA DIGITAL US, LLC, INGKA INVESTMENTS REAL ESTATE US LLC, filed by PATRICK TERRILL, BRENDA PEREZ, LISA MATTHEWS, GEZILLE PONIENTE.(SCHWARTZ, AARON) (Entered: 08/05/2026) |
| 08/06/2026 | 40 | Summons Issued as to INGKA HOLDING B.V., INGKA DIGITAL US, LLC, INGKA HOLDING OVERSEAS B.V., INGKA INVESTMENTS REAL ESTATE US LLC, INGKA PROCUREMENT LLC. E-MAILED To: COUNSEL on 8/6/26 (bw) (Entered: 08/06/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/11/2026 14:52:37 | | | |
| **PACER Login:** | studavidson | **Client Code:** | 260043-00001 |

| | | | |
|---|---|---|---|
| **Description:** | Docket Report | **Search Criteria:** | 2:26-cv-02774-JS |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

PATRICK TERRILL, BRENDA PEREZ, GEZILLE PONIENTE, and LISA MATTHEWS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

IKEA NORTH AMERICA SERVICES LLC, IKEA US RETAIL LLC, IKEA PROPERTY, INC., INGKA HOLDING OVERSEAS B.V., INGKA HOLDING B.V., INGKA Procurement LLC, INGKA Digital US, LLC, and INGKA Investments Real Estate US LLC,

Defendants.

Civil Action No.: 2:26-cv-02774

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Patrick Terrill, Brenda Perez, Gezille Poniente, and Lisa Matthews ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to themselves and upon information and belief as to all other matters, bring this class action against defendants IKEA North America Services LLC, IKEA US Retail LLC, IKEA Property, Inc., INGKA Holding Overseas B.V., INGKA Holding B.V., INGKA Procurement LLC, INGKA Digital US, LLC, and INGKA Investments Real Estate US LLC (collectively "IKEA" or "Defendants").

## INTRODUCTION

1. This class action concerns IKEA's consumer price increases to cover the unlawful tariffs levied by the President pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq*. Specifically, IKEA transferred unlawful IEEPA tariff costs onto Plaintiffs and the putative Class, causing them to pay inflated prices.

2. This dispute centers on IKEA's conduct and public statements, and a fundamental asymmetry embedded in the tariff refund system. In the typical transaction, the importer of record advances the tariff payment and recoups that payment by charging consumers elevated prices. However, only the importer holds the legal right to seek reimbursement from the government for an unlawfully collected tariff. Thus, the consumer, in practical and economic terms, is the one who paid the illegal IEEPA tariffs, while the importer functions as little more than a financial conduit.

3. Thousands of companies have already filed actions with the Court of International Trade ("CIT") seeking recovery of the full amount of their IEEPA tariff obligations, and the CIT has already ordered that refunds (plus interest) be issued to entitled importers regardless of whether the companies filed a lawsuit with the CIT. *Atmus Filtration, Inc. v. U.S.*, No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21. Furthermore, on April 20, 2026, U.S. Customs and Border Protection ("CBP") released a Consolidated Administration and Processing of Entries (CAPE) functionality within the Automated Commercial Environment (ACE) that allows for the processing of tariff refund requests to the importer of record. This dynamic exists notwithstanding Goldman Sachs' estimates that, at a minimum, U.S. consumers are "shouldering two-thirds of President Trump's new tariff costs."[1]

4. This lawsuit seeks to ensure that Plaintiffs and the putative Class recover monetary damages for the unlawful tariff overcharges they paid pursuant to the illegal IEEPA tariffs. Accordingly, Plaintiffs seek monetary damages in the amount of the unlawful IEEPA tariffs that Plaintiffs and the putative Class paid in the form of elevated product prices. Plaintiffs and the Class are also entitled to pre- and post-judgment interest, reasonable attorneys' fees, and costs.

[1] N. Lichtenberg, *Goldman Sachs doubles down on tariff research that infuriated Trump, saying average Americans will bear two-thirds of the costs*, Fortune (Aug. 13, 2025), https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/.

## PARTIES

**A. Plaintiffs.**

5. **Plaintiff Patrick Terrill** is a natural person and individual consumer who, at all times material hereto, was a citizen of California. Plaintiff Terrill purchased IKEA products through IKEA's website that were impacted by the unlawful IEEPA tariffs. Absent the price increases implemented by IKEA in response to the unlawful IEEPA tariffs, Plaintiff Terrill would have paid less for these products.

6. **Plaintiff Brenda Perez** is a natural person and individual consumer who, at all times material hereto, was a citizen of California. Plaintiff Perez purchased IKEA products through IKEA's website that were impacted by the unlawful IEEPA tariffs. Absent the price increases implemented by IKEA in response to the unlawful IEEPA tariffs, Plaintiff Perez would have paid less for these products.

7. **Plaintiff Gezille Poniente** is a natural person and individual consumer who, at all times material hereto, was a citizen of California. Plaintiff Poniente purchased IKEA products in person in San Diego, California that were impacted by the unlawful IEEPA tariffs. Absent the price increases implemented by IKEA in response to the unlawful IEEPA tariffs, Plaintiff Poniente would have paid less for these products.

8. **Plaintiff Lisa Matthews** is a natural person and individual consumer who, at all times material hereto, was a citizen of South Carolina. Plaintiff Matthews purchased IKEA products from both the IKEA website and physical stores that were impacted by the unlawful IEEPA tariffs. Absent the price increases implemented by IKEA in response to the unlawful IEEPA tariffs, Plaintiff Matthews would have paid less for these products.

**B. Defendants.**

9. Defendant **INGKA Holding B.V.** ("INGKA Group") is a Dutch corporation incorporated in the Netherlands. It is the largest owner of IKEA franchises, representing around 87 percent of total IKEA sales. As of August 31, 2025, the INGKA Group operated 411 IKEA stores in 32 countries. According to its 2025 Annual Report, the INGKA Group oversees each of the INGKA Group's subsidiaries, including each of the defendants named herein. The operations of each individual country divisions, like Defendant IKEA North America Services LLC, are under the "ultimate governing" body of INGKA Group's board of directors.[2] INGKA's annual reports also consolidate the IKEA U.S. Defendants' financial results into its own financial statements, and subsidiary profits appear to flow upward to the INGKA Group as dividends.[3] The INGKA Group also oversees employee remuneration for its direct and indirect subsidiaries, including the subsidiary Defendants identified herein.[4]

10. Defendant **INGKA Holding Overseas B.V.** is a Dutch corporation incorporated in the Netherlands with its headquarters at Bargelaan 20, 2333CT, Leiden, Netherlands. Defendant INGKA Holding Overseas B.V. is a subsidiary of the INKGA Group.

11. Defendant **IKEA North America Services, LLC**, is a Virginia limited liability company with its U.S. headquarters and principal place of business at 420 Alan Wood Rd., Conshohocken, PA 19428. The Governor of the entity is identified as Defendant IKEA US Retail LLC. Defendant IKEA North America Services, LLC is a corporate subsidiary of INKGA Group. Defendant IKEA North America Services LLC operates IKEA's website in the U.S. as well as the

---

[2] Ingka Holding B.V., *Annual Report FY25* (2025) (hereinafter, "2025 Annual Report") at 8, *available at*: https://www.lobbyregister.bundestag.de/media/c2/05/778609/FY25-Annual-report-Ingka-Holding-B-V.pdf.

[3] *Id*. at 55.

[4] *Id*. at 58.

corporate and administrative functions that support IKEA's U.S. operations. It is also believed to be one of the IKEA corporate entities entitled to tariff refunds as the importer of record of IKEA's goods and products.

12. Defendant **IKEA US Retail LLC** is a Virginia corporation with its U.S. headquarters and principal place of business at 420 Alan Wood Rd., Conshohocken, PA 19428. Defendant IKEA US Retail LLC is the sole member of Defendant IKEA North America Services, LLC and a corporate subsidiary of the INKGA Group. Defendant IKEA US Retail LLC operates, among other things, IKEA's retail functions in the U.S., and is therefore, one of the IKEA corporate entities entitled to tariff refunds as the importer of record of IKEA's goods and products.

13. Defendant **IKEA Property, Inc.** is a Delaware limited liability company with its U.S. headquarters and principal place of business at 420 Alan Wood Rd., Conshohocken, PA 19428. Defendant IKEA Property, Inc., is the sole member of Defendant IKEA US Retail LLC and is a wholly owned indirect subsidiary of the INKGA Group. According to Defendant IKEA Property, Inc.'s corporate certificate, the Governors of the entity are: the former Chief Financial Officer and current IKEA North America Board Member, Mark Foutch; Commercial Manager at the INGKA Group, Javier Quinones; Real Estate Manager at IKEA North America, Douglas Greenholz; Group Real Estate Manager at the INGKA Group, Magnus Bondesson; and North America Real Estate Development Manager at IKEA, Kevin Gilbert. IKEA Property, Inc. is the primary real estate and facility development subsidiary of IKEA in the U.S.

14. Defendant **INGKA Procurement, LLC**, formerly known as IKEA Retail Equipment North America LLC, is a Delaware limited liability company with its U.S. headquarters and principal place of business at 420 Alan Wood Rd., Conshohocken, PA 19428. According to INGKA Procurement LLC's corporate certificate, the Governor for the entity is Defendant IKEA

US Retail LLC. It is a subsidiary of the INKGA Group, as well as its U.S. based-purchasing arm, responsible for managing the global and localized sourcing of materials, services, and goods required to operate IKEA stores, distribution centers, and corporate facilities. Defendant INGKA Procurement, LLC, is therefore one of the IKEA corporate entities entitled to tariff refunds as the importer of record of IKEA's goods and products.

15. Defendant **INGKA Digital US, LLC**, is a Delaware limited liability company with its U.S. headquarters and principal place of business at 420 Alan Wood Rd., Conshohocken, PA 19428. It is a subsidiary of the INKGA Group, as well as its U.S. based technology and e-commerce division. According to INGKA Digital US, LLC's corporate certificate, the Governors for the entity are: Chief Digital Officer of IKEA U.S., Umesh Sripad; Commercial Manager at the INGKA Group, Javier Quinones; and General Counsel and Chief Legal of Officer of IKEA North America Services LLC, Stephani Lewis.

16. Defendant **INGKA Investments Real Estate, LLC**, is a Delaware limited liability company with its U.S. headquarters and principal place of business at 420 Alan Wood Rd., Conshohocken, PA 19428. Defendant INGKA Investments Real Estate US LLC is the strategic real estate and alternative investment arm of the INGKA Group in the U.S. According to INGKA Investments Real Estate US LLC's corporate certificate, the Governor of the entity is (Carlisle) Mike Bostic, an associate General Counsel at IKEA North America Services, LLC.

**JURISDICTION AND VENUE**

17. This Court has jurisdiction over the subject-matter of this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed Class, any member of the proposed Class is a citizen of

a state different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are more than $5,000,000.00 in the aggregate, exclusive of interest and costs.

18. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all claims alleged are part of the same case or controversy.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, at all times relevant to the Complaint, Defendants' U.S. headquarters were in this District. Defendants also transacted business, were found, or had agents in this District, and a substantial portion of the affected interstate trade and commerce described in this Complaint was carried out in this District.

20. This Court has personal jurisdiction over Defendants because each Defendant has the requisite constitutional contacts with Pennsylvania due to their domicile, the extent of their business transactions, and/or their solicitation and conduct of business there. Each Defendant has transacted business, maintained substantial contacts, offered consumer products to Plaintiffs and the putative Class, and engaged in conduct that had a direct, foreseeable and intended effect of causing injury to Plaintiffs and putative Class members in the United States, including within this District.

21. Indeed, as it particularly relates to the overseas Defendants INGKA Holding B.V. and INGKA Holding Overseas B.V. (collectively, "Foreign Defendants"), it was announced in 2023 that these entities would spend $2.19 billion to bolster IKEA's fulfillment network and to improve its delivery services in the U.S., as it planned to open 17 new U.S. IKEA locations over the next three years, creating 2,000 new U.S. jobs, including (on information and belief) within

this District.[5] The Foreign Defendants also reported North American revenue of EUR 6,925 million, and a workforce of more than 23,815.[6] On information and belief, a substantial portion of that revenue and workforce is in the U.S., including in this District.

22. The Foreign Defendants also maintain a direct corporate footprint in this District. In addition to the IKEA Defendants' headquarters at 420 Alan Wood Road, Conshohocken, Pennsylvania, at least three INGKA-branded subsidiary entities are registered at that same address and named as Defendants in this action: INGKA Procurement LLC, INGKA Digital US LLC, and INGKA Investments Real Estate US LLC. These entities track INGKA's three reported business lines: IKEA Retail/procurement, digital operations, and INGKA Investments/real estate. Their registration supports the conclusion that the foreign INGKA entities operate from and have purposefully established a physical presence in this District.

23. Defendants' activities, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on the foreign and interstate commerce of the U.S.

## FACTUAL BACKGROUND

24. IKEA is a multinational conglomerate founded in Sweden that designs and sells ready-to-assemble furniture, household goods, and multiple various other related services. Since 2008, it has been the world's largest furniture retailer.

25. In the U.S., IKEA reported $5.3 billion in total sales with nearly 61 million in-person visitors and 467 million online visitors.[7]

---

[5] T. Moss, *IKEA to Open 17 New U.S. Stores in Expansion Drive*, Wall St. J. (Apr. 20, 2023), https://www.wsj.com/economy/ikea-to-open-17-new-u-s-stores-in-expansion-drive-cdf946ac.
[6] 2025 Annual Report, *supra* n.2, at 42-43.
[7] Press Release, *IKEA U.S. Releases FY25 Annual Summary and Announces Four New Stores Planned for 2026*, IKEA Newsroom (Feb. 17, 2026), https://www.ikea.com/us/en/newsroom/corporate-news/ikea-u-s-releases-fy25-annual-summary-and-announces-four-new-stores-

26. IKEA's retail stores are the "core business" of the INGKA Group, the largest franchisee of IKEA retail stores. The INGKA Group operates 413 IKEA stores in 32 countries, including 59 stores in the U.S. as of 2025.[8] The INGKA Group has acknowledged that it is responsible for making "strategic decision" to "keep [IKEA's] prices low,"[9] evidencing that control over IKEA's pricing strategy lies with it.

27. Approximately 85 percent of IKEA's goods are produced outside of the U.S.[10] Of which approximately 30 percent is produced in Asia, mostly in China, and the remaining 70 percent is manufactured in Europe.[11]

## I. <u>IEEPA Tariffs.</u>

28. During the 2024 election campaign, then-candidate Trump vowed to correct trade imbalances and protect U.S. industries by imposing steep tariffs on foreign-made goods. Mr. Trump repeated these vows later as the president-elect.

29. Speaking to CNN in the wake of the 2024 presidential election, Jesper Brodin, the Chief Executive Officer of the INGKA Group warned that "[i]n general, we don't believe tariffs will support international companies and international trade. ***At the end of the day, that risks ending up on the bills of customers***. Tariffs make it more difficult for us to maintain the low prices and be affordable for many people, which in the end is our goal."[12]

30. Following the President's inauguration in January 2025, businesses around the

---

planned-for-2026-pubf0e047b0/.

[8] 2025 Annual Report, *supra* n.2, at 2.

[9] *Id*. at 5.

[10] H. Reid & G. Rosen Fondahn, *IKEA to Ramp Up US Production as Tariffs Bite*, Reuters (Dec. 5, 2025), https://www.reuters.com/business/retail-consumer/ikea-ramp-up-us-production-tariffs-bite-2025-12-05/.

[11] *IKEA CEO Warns Prices Could Jump*, Yahoo Finance (Jan. 16, 2024), https://finance.yahoo.com/news/ikea-ceo-warns-prices-jump-224014190.html.

[12] *Id*.

world braced themselves for the imposition of tariffs. At the World Economic Forum annual meeting in Davos, Switzerland, Mr. Brodin again warned of the effect of tariffs on consumers, noting that "at the end of the day there is a risk in any country with tariffs ***that you need to, as a company, pass it on to the customers***."[13]

31. Weeks later, in February 2025, the President began to issue a series of Executive Orders that imposed sweeping tariffs on goods imported from most foreign countries, including Canada, Mexico, China, and other U.S. trading partners. The Executive Orders were premised on the IEEPA's authorization because of a purported national emergency over the U.S. trade deficit.[14]

32. Under the authority of IEEPA, the President imposed tariffs as high as 145 percent on imports from China, and a baseline 10 percent tariff on nearly all imports to the U.S. By April 2025, IEEPA tariffs were extended to include a 15 percent tariff on goods imported from the European Union and 20 percent on goods imported from Vietnam, two other major sourcing hubs for IKEA.

33. While the Administration promoted these tariffs to raise revenue and strengthen U.S. manufacturing, experts predicted that the tariffs would significantly raise the prices of imported goods for U.S. consumers. For example, according to the National Retail Federation, a retail trade group, the proposed 10 percent universal tariffs and 60 percent tariff on Chinese goods

---

[13] A. Symons, *Trade Tariffs Could Cause Spike in IKEA Prices, Says Retailer in Davos*, Euronews (Jan. 20, 2025), https://www.euronews.com/business/2025/01/20/trade-tariffs-could-cause-spike-in-ikea-prices-says-retailer-in-davos.

[14] Enacted in 1977, the IEEPA authorizes the President to exercise certain economic powers after declaring the existence of an "unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States." 50 U.S.C. § 1701(a). The first major use of the IEEPA was in 1979 when President Jimmy Carter issued Executive Order 12170 to freeze Iranian government assets in response to the hostage crisis. Since then, the IEEPA has served as the legal basis for imposing sanctions against countries such as North Korea, and for targeting terrorists and other non-state actors.

would reduce U.S. consumers' spending power by between $46 billion and $78 billion annually.[15]

34. On May 28, 2025, the CIT determined that the President "exceeded any authority" granted to him by the IEEPA in imposing these tariffs. The Federal Circuit Court of Appeals upheld the ruling in August 2025. On February 20, 2026, the U.S. Supreme Court invalidated all IEEPA-based tariffs, holding that the IEEPA did not authorize the president to unilaterally set tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026).

35. The President subsequently issued an Executive Order terminating the IEEPA Tariffs.

36. On February 22, 2026, CBP, the federal entity responsible for collecting foreign duties, issued CSMS #67834313, announcing that it would halt the collection of all duties imposed pursuant to IEEPA at 12:00 a.m. E.T. on February 24, 2026.

37. While the IEEPA tariffs were in place, CBP collected $30 billion in duty revenue in January 2026 alone, and more than $124 billion in total,[16] the overwhelming majority of which was passed on to U.S. consumers in the form of higher prices.

## II. IKEA Adapts to the IEEPA Tariffs

38. IKEA's low-cost furniture has won it legions of fans around the world. The Swedish brand had even slashed the prices of its bookshelves and bed frames in recent years, as part of a conscious effort to woo shoppers after a period of rampant inflation.[17] But the size and scale of the IEEPA tariffs required a change of tack.

---

[15] *Estimated Impacts of Proposed Tariffs on Imports: Apparel, Toys, Furniture, Household Appliances, Footwear and Travel Goods*, National Retail Federation (Nov. 4, 2024), https://nrf.com/research/estimated-impacts-proposed-tariffs-imports-apparel-toys-furniture-household-appliances.

[16] J. Cox, *Tariff revenue soars more than 300% as U.S. awaits Supreme Court decision*, CNBC (Feb. 11, 2026), https://www.cnbc.com/2026/02/11/tariff-revenue-soars-more-than-300percent-as-us-awaits-supreme-court-decision.html.

[17] K. Lundstrom & D. Reuter, *IKEA's Low-Price Mantra Is Tested by Trump's Tariffs*, Wall St. J.

39. Throughout the period from February 2025 through February 24, 2026, IKEA paid IEEPA tariffs to CBP. IKEA passed on the tariff burden to consumers in the form of higher prices. In June 2025, Tolga Öncü, a Retail Manager at the INGKA Group, the company that operates most of the IKEA stores around the world, told CNBC that due to the IEEPA tariffs, IKEA had ***already*** increased prices, passing on some of the impact of those tariffs to Plaintiffs and the putative Class.[18] This news was an about-face from March 2024, when the company announced it was going to continue to cut prices in the U.S. as inflationary pressures eased.[19]

40. Defendants also acknowledged the effects that the IEEPA tariffs had on pricing decisions in the U.S. in their annual reports. For example, the INGKA Group's 2025 Annual Report states: "2025 was a challenging year" due to "all-time-low consumer confidence in key markets such as . . . the USA. On top of this, the year started with disruptions to the global supply chain, which were then further intensified by trade tensions, limiting us from acting fully on our commercial activities."[20]

41. Indeed, throughout 2025 IKEA continued to increase prices on products to offset costs related to the illegal IEEPA tariffs. For example, the price of its certain sofas, like the Uppland sofa, rose $50 in August 2025, according to archived internet pages, while the cost of bedroom sets, like a three-piece oak bedroom set, rose $100 in July 2025.[21]

---

(July 16, 2025), https://www.wsj.com/business/retail/ikeas-low-price-mantra-is-tested-by-trumps-tariffs-4455986a.

[18] G. Fonrouge, *How IKEA Is Doubling Down on Price Cuts to Attract Cost-Conscious Customers*, CNBC (June 26, 2025), https://www.cnbc.com/2025/06/26/how-ikea-is-doubling-down-on-price-cuts-to-attract-cost-conscious-customers.html.

[19] Press Release, *IKEA Sides with Customers in an Exceptional Year, Investing More Than EUR 2.1 Billion in Lowering Prices*, Ingka Group Newsroom (Oct. 10, 2024), https://www.ingka.com/newsroom/ikea-sides-with-customers-in-an-exceptional-year-investing-more-than-eur-2-1-billion-in-lowering-prices/.

[20] 2025 Annual Report, *supra* n.2, at 2.

[21] Ikea's Low-Price Mantra, *supra*, n.16.

42. Then, in September 2025, Hanan Abdul Karim, a public relations specialist and spokesperson for Defendant IKEA North America Services, LLC conceded in a statement that while IKEA "remain[s] committed to keeping prices as low as possible for our customers . . . [h]owever, tariff increases ***will impact*** our prices in the United States."[22]

43. While IKEA representatives remained opaque about the extent of the tariff-related price hikes, the increases were corroborated in first-hand accounts from IKEA purchasers, who described their surprise and frustration in real time. In a September 2025 Reddit thread, users traded stories of purported tariff-related price increases. One wrote: "Just got back from IKEA and bought an Ekenasat chair. Tag said 279 but rang up to 329. I took photo of the chair in the showroom and they refunded the 50 difference and said their prices were changing. Tariffs are hitting big time!"[23] Another replied, "Yep, I (U.S.) was looking to buy a SKRUVBY and it went from $149 to $199," and a third commented, "I have a screen shot of the Godishus wardrobe from May 3 - $149.99 . . . Today it's $199.99."[24] A Canadian user, by contrast, observed, "No major price changes I can see in CA. Must be an American woe."[25]

44. In another September 2025 post, titled "Sudden price increase?", a user reported that the VESKEN Cart had jumped from $10.66 to $17.99, an increase of 70 percent, in a single week.[26] A moderator of the subreddit, identified as a "verified IKEA Ekspert," replied that "the U.S. government has also added/raised **tariffs**, which can flow through to retail prices . . . ."[27]

---

[22] M. Grothaus, *IKEA in the Crosshairs as Trump Adds 50% Furniture Tariffs*, Fast Company (Sept. 26, 2025), https://www.fastcompany.com/91411567/ikea-in-the-crosshairs-as-trump-adds-50-furniture-tariffs.
[23] *u/TherealTankgyrl Major Price Increases Today*, Reddit (Sept. 2025), https://www.reddit.com/r/IKEA/comments/1n8go1n/major_price_increases_today/.
[24] *Id*.
[25] *Id*.
[26] *u/UbeWaffler, Sudden Price Increase?,* Reddit (Sept. 18, 2024), https://www.reddit.com/r/IKEA/comments/1na7qxh/sudden_price_increase/.
[27] *Id*. (emphasis in original).

Comparatively, redditors outside the U.S., including Australia, Japan, Germany, and U.K., noted in reply that, based on their observations, the VESKEN Cart had not recently changed price in their markets and remained drastically cheaper there.[28]

45. These posts are only a sample. Throughout the late summer and fall of 2025, the r/IKEA subreddit carried a steady stream of similar threads documenting sudden, tariff-attributed price increases on IKEA products. In a November 2025 thread titled "Prices now vs a few months ago," for example, a redditor noted that, among other products, the STORMÖLLA eight-drawer dresser had risen from $499 on July 8, 2025, compared to $599 that November, commenting, "Tariffs sure but this is a bit extreme in my view for Ikea."[29]

46. The anecdotal redditor comments are supported by Plaintiffs' experiences, which illustrate IKEA's unlawful tariff-driven price increases. For example, Plaintiff Terrill purchased RUNNEN Acacia decking material on three occasions in the summer of 2025 at IKEA's then-advertised price of $29.99 per lot. The price of the same RUNNEN Acacia decking material rose to $34.99 per lot by November 18, 2025. Plaintiff Terrill paid the inflated price when he purchased the product again on March 1, 2026, reflecting a $5.00 per unit increase attributable to IKEA's tariff pass-through.

47. Plaintiff Perez's December 27, 2025 purchases reflect similar across-the-board price increases. She purchased a Hyllis Shelf Unit ($29.00), an Akerbar Greenhouse ($29.99), multiple Rodalm Frames ($5.00 each), a 4 ¾ in. Vardtrad Plant Pot ($6.99), and multiple 3 ½ in. Vardtrad Plant Pots ($5.99 each). Upon information and belief, each of these prices was elevated as a result of IKEA's tariff pass-through: the Rodalm Frame had been priced at $3.99 in January

[28] *Id.*
[29] *Prices Now vs a Few Months Ago*, Reddit (Nov. 2025), https://www.reddit.com/r/IKEA/comments/1or1uc8/prices_now_vs_a_few_months_ago/.

2025; the Akerbar Greenhouse at $22.99 in March 2025; the Hyllis Shelf Unit at $24.99 in April 2025; and the two Vardtrad Plant Pots at $3.99 and $5.99, respectively, earlier in 2025 – reflecting increases ranging from $2.00 to $7.00 per item by the time of Plaintiff Perez's purchase.

48. Similarly, in July 2025, Plaintiff Matthews purchased the SMASTAD loft bed for $859.00. Upon information and belief, the price for the same SMASTAD loft bed was lower prior to the unlawful IEEPA tariffs.

49. Plaintiff Poniente made two purchases in January 2026 that likewise reflect IKEA's tariff-driven price increases. On January 3 and January 13, 2026, Poniente purchased multiple Trofast storage products, Skadis organizational accessories, and Trofast Wall Shelving Units. Upon information and belief, the prices Poniente paid were elevated compared to pre-tariff pricing: Trofast Storage Boxes had increased from $3.00 to $4.00 per unit, Trofast Storage Lids from $1.50 to $2.00 per unit, Trofast Storage Trays with Compartments from $3.00 to $4.00 per unit, Trofast Wall Shelving Units from $69.99 to $79.99 per unit, Skadis Pegboards from $27.99 to $29.99, and Skadis Clips from $3.00 to $4.00 per unit—again, reflecting consistent price increases across product lines following the implementation of the unlawful IEEPA tariffs.

50. Thus, as a direct result of IKEA's tariff pass-through pricing, Plaintiffs and the putative Class have paid more for tariffed goods than they would have absent the unlawful IEEPA tariffs-related price increases.

**III. Forecasted Tariff Recoveries.**

51. In the wake of the Supreme Court's February 2026 decision in *Learning Resources*, thousands of importers filed cases in the CIT to recover tariff refunds from the government.

52. On March 4, 2026, Judge Richard Eaton ruled that "all importers of record" were "entitled to benefit" from the Supreme Court's ruling that struck down the IEEPA tariffs.

*Atmus Filtration, Inc. v. United States*, No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21. The Court ordered CBP to liquidate any and all unliquidated entries subject to IEEPA tariffs "without regard to IEEPA duties," and ordered that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties." *Id*. at 2–3.

53. On April 20, 2026, CBP launched the first phase of the CAPE tool within the ACE Portal that allows for the processing of tariff refund requests. According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, by June 10, 2026, "approximately $94.94 billion in both potential and certified refunds have been accepted for processing in CAPE." *Euro-Notion Florida*, No. 25-00595 (Ct. Int'l Trade), Lord Declaration at ¶ 5, ECF No. 34.

54. On July 10, 2026, Mr. Lord provided an update to the Court, stating "approximately $121.75 billion in both potential and certified refunds have been accepted for processing in CAPE. Of this total amount, refunds (duties plus interest) of approximately $86.3 billion have been completed[.]" *Euro-Notion Florida*, Lord Declaration at ¶ 5, ECF No. 45.

55. Approximately $49.1 billion in tariff refunds were distributed in June 2026 alone.[30]

56. However, those refunds (plus interest) only may be issued to entitled importers of record, notwithstanding the fact that researchers observed a "full pass-through" of tariff costs to consumers. Indeed, state officials from around the country have expressed "grave concerns" about the tariff refund process, calling for transparency and accountability for consumers to recoup their payments.[31] To date, few companies have confirmed that they will return any tariff refunds to their customers.

---

[30] *US Refunded $4.9 Billion in Tariff Fees in June*, Yahoo Finance, https://finance.yahoo.com/economy/policy/articles/us-refunded-49-billion-tariff-231836371.html.

[31] A. Durkee, *Trump's Tariff Refund Process Sparks 'Grave Concerns' About Consumers Getting Money Back, State Treasurer Cohort Says*, Forbes (May 12, 2026), https://www.forbes.com/sites/alisondurkee/2026/05/12/trumps-tariff-refund-process-sparks-grave-concerns-about-consumers-getting-money-back-state-treasurer-cohort-says/.

57. As a result, this lawsuit seeks to ensure that Plaintiffs and the putative Class recover monetary damages for the tariff overcharges they paid pursuant to the illegal IEEPA tariffs.

## CLASS ACTION ALLEGATIONS

58. Plaintiffs bring this action on behalf of themselves, as representatives of the Class defined below, pursuant to Federal Rule of Procedure 23, and seek certification of the following nationwide Class:

> **All persons in the United States who purchased IKEA products that were subject to IEEPA tariffs.**

59. Excluded from the Class are Defendants, Defendants' subsidiaries, parents, successors, predecessors, and their officers, directors, affiliates, legal representatives, and employees, and employees, any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

60. Plaintiffs reserve the right to revise the above Class definition and any of the averments of facts herein based on facts adduced in discovery.

61. **Ascertainability:** Members of the Class can be readily identified and notified in an administratively feasible manner using, among other information, Defendant's own records.

62. **Numerosity:** While Plaintiffs do not know the exact number of Class Members, the number is likely to be in the millions. Therefore, joinder of all Class Members is impracticable.

63. **Commonality/Predominance:** There are multiple questions of law and fact common to the Class. These questions predominate over questions that may affect individual Class members, and include:

a. Whether Defendants passed on IEEPA tariff-related charges to Plaintiffs and the putative Class;

b. The amount by which Plaintiffs and the putative Class were overcharged for

products because of the illegal tariffs;

c. Whether Defendants' retention of Plaintiffs' and the putative Class's payments for illegal tariff costs is unjust;

d. Whether Defendants acted unfairly or deceptively by charging and retaining from Plaintiffs and the putative Class the illegal tariff costs; and

e. Whether Plaintiffs and the putative Class are entitled to damages in the form of the amounts paid in increased prices that were attributable to the illegal tariffs.

64. **Typicality:** Plaintiffs' claims are typical of those of the Class. The events and conduct that gave rise to Plaintiffs' claims are identical to those that give rise to the claims of all other Class members because they all purchased Defendants' products at inflated prices due to the tariffs and have been injured by Defendants' unlawful, tariff-driven price increases.

65. **Adequate Representation:** Plaintiffs will fairly and adequately represent the Class and protect its interests. Plaintiffs' counsel have significant experience successfully prosecuting complex class actions and possess the necessary resources to vigorously litigate the case on behalf of the Class. Furthermore, the interests of Plaintiffs and Plaintiffs' counsel are fully aligned with, and not antagonistic to, the interests of Class members. Plaintiffs are willing and able to dispatch the duties incumbent upon class representatives to protect the interests of all Class members.

66. **Superiority:** Class treatment is the superior method for the fair and efficient adjudication of this controversy. It will allow all Class members to prosecute their common claims, and for Defendants to defend themselves against these claims, in front of a single court simultaneously and efficiently to reach a resolution of all claims within the unnecessary duplication of effort and expense that separate actions would present. The benefits of proceeding with the class action mechanism, including providing injured persons with a method of obtaining

redress for claims that might not be practicable for them to pursue individually, substantially outweigh any difficulties that may arise in the management of this case as a class action.

## CLAIMS FOR RELIEF

### COUNT I
### PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. §§ 201-1, et seq.
### (On Behalf of Plaintiffs and the Class Against All Defendants)

67. Plaintiffs reallege and incorporate by reference all preceding allegations of this complaint as if fully set forth herein.

68. Plaintiffs assert this Count on behalf of themselves and the Class pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.* ("UTPCPL"), which makes it unlawful to engage in unfair or deceptive acts or practices in connection with trade or commerce.

69. Plaintiffs and Class members purchased the IKEA products at issue primarily for personal, family, or household purposes within the meaning of 73 P.S. § 201-9.2(a).

70. Defendants engaged in unfair and deceptive trade practices in connection with trade or commerce by charging Plaintiffs and Class Members unfairly increased prices for the goods and products sold in their stores due to IEEPA duties they purportedly owed to the U.S. government, which were later found to have been illegal.

71. As alleged herein, Defendants' shifting of those illegal tariff costs to consumers via increased prices is an unfair, deceptive, and/or unconscionable act under the UTPCPL, including its catch-all provision, 73 P.S. § 201-2(4)(xxi), and 73 P.S. § 201-3. Plaintiffs and the members of the proposed Class paid more than the value they received.

72. Defendants' unfair, deceptive, and/or unconscionable conduct was a substantial factor and proximate cause of Plaintiffs' and the Class's injuries.

73. Plaintiffs and the Class have the right to bring this action on their own behalf under 73 P.S. § 201-9.2(a).

74. As a result of Defendants' violations of the UTPCPL, Plaintiffs and the Class seek actual damages, treble damages, reasonable attorneys' fees and costs, and any such other relief the Court may deem necessary to prevent Defendants from engaging in unlawful conduct under 73 P.S. § 201-9.2(a).

## COUNT II
## UNJUST ENRICHMENT
## (On Behalf of Plaintiffs and the Class Against All Defendants)

75. Plaintiffs reallege and incorporate by reference paragraphs 1 through 66 of this complaint as if fully set forth herein.

76. Plaintiffs and Class members conferred a monetary benefit on Defendants when they purchased products from Defendants at increased prices due to the unlawful IEEPA tariffs imposed by the Administration that Defendants passed through to their customers.

77. Defendants appreciated the monetary benefits that Plaintiffs and Class Members conferred when they purchased products at higher prices due to the IEEPA tariffs, and Defendants profited from passing the tariffs on to their customers.

78. Despite the IEEPA tariffs being declared unlawful, Defendants have not refunded Plaintiffs and Class Members the overcharges they paid while the tariffs were in place, nor have Defendants made any indication that they intend to refund Plaintiff and Class members.

79. It would be unjust for Defendants to retain the overcharges paid by Plaintiffs and Class Members because these overcharges comprise tariff expenses that Defendants passed along to their customers, and these tariffs were illegal.

80. Plaintiffs and Class members would have expected Defendants to refund the overcharges once the tariffs were invalidated.

81. Plaintiffs and Class members suffered injury as a direct and proximate result of Defendants' decision to keep the unlawful tariff overcharges they passed along to Plaintiffs and the putative Class.

82. Defendants should not be permitted to retain the benefits in the form of higher prices Plaintiffs and Class Members paid because of the illegal tariffs. Plaintiffs and the Class therefore seek damages for the benefits conferred upon IKEA in the form of their IEEPA tariff payments, the exact amount of which will be proven at trial.

**COUNT III**
**MONEY HAD AND RECEIVED**
**(On Behalf of Plaintiff and the Class Against All Defendants)**

83. Plaintiffs reallege and incorporate by reference paragraphs 1 through 66 of this complaint as if fully set forth herein.

84. Defendants increased prices of their goods to pass along the costs of the IEEPA tariffs paid to CBP as an importer of those goods.

85. The Supreme Court has since determined that the IEEPA tariffs were unlawful.

86. The money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiffs and to each putative Class Member.

87. Defendants have not refunded the unlawful overcharges to Plaintiffs and the Class.

88. Defendants should not be permitted to retain the amounts Plaintiffs and Class members paid above and beyond what they would have paid for the same goods absent the IEEPA tariffs. The money, the amount of which will be proven at trial, belongs to Plaintiffs and the Class, and IKEA is obligated to return it. Restated, IKEA received money from Plaintiffs and from each putative Class Member in the form of higher prices, proximately caused by the pass-through of IEEPA tariff costs.

89. Plaintiffs seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, and other remedies available to them.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and members of the Class as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel;

B. For an order declaring that Defendants' conduct violates the statute referenced herein;

C. For an order finding in favor of Plaintiffs and the Class on all Counts asserted herein;

D. For compensatory, statutory, and treble damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: August 5, 2026

Respectfully submitted,

*/s/ Aaron Schwartz*
Aaron Schwartz

Donald R. Hall (*Pro Hac Vice*)
Hae Sung Nam (*Pro Hac Vice*)
Aaron Schwartz (PA 319615)
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
Tel: (212) 687-1980
dhall@kaplanfox.com
hnam@kaplanfox.com
aschwartz@kaplanfox.com

Laurence D. King (*Pro Hac Vice*)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Tel: (415) 772-4700
lking@kaplanfox.com

*/s/ William G. Caldes*
William G. Caldes

Diana J. Zinser (PA 203449)
William G. Caldes (PA 75842)
Jeffrey J. Corrigan (*Pro Hac Vice*)
Jeffrey L. Spector (PA 207208)
**SPECTOR CALDES & CORRIGAN**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
dzinser@scc.law
bcaldes@scc.law
jcorrigan@scc.law
jspector@scc.law

*Counsel for Plaintiffs and Interim Co-Lead Class Counsel*

Jonathan Shub (PA Bar 53965)
Benjamin F. Johns (PA Bar 201373)
**SHUB, JOHNS & HOLBROOK LLP**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: (610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com

Jeffrey S. Goldenberg (*Pro Hac Vice*)
Todd B. Naylor (*Pro Hac Vice*)
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com

*Plaintiffs' Executive Committee Members*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing CONSOLIDATED AMENDED CLASS ACTION COMPLAINT was served on all counsel of record via ECF filing with the Court on August 5, 2026. In addition, parties may access this filing through the court's CM/ECF System.

By: /s/ *Aaron Schwartz*

Aaron Schwartz (PA 319615)
KAPLAN FOX & KILSHEIMER LLP
800 Third Avenue, 38th Floor
New York, NY 10022
Tel: (212) 687-1980
aschwartz@kaplanfox.com

*Counsel for Plaintiffs and Interim Co-Lead Class Counsel*