# EXHIBIT 11

# U.S. District Court
# District of New Jersey [LIVE] (Newark)
# CIVIL DOCKET FOR CASE #: 2:26-cv-10023-MEF-MAH

SPADAFINO v. AMAZON.COM, INC. et al
Assigned to: Judge Michael E. Farbiarz
Referred to: Magistrate Judge Michael A. Hammer
Cause: 28:1332 Diversity-Other Contract

Date Filed: 08/07/2026
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Diversity

**Plaintiff**

**LUISA SPADAFINO**
*Individually and on behalf of all others similarly situated*

represented by **HUNTER J. SHKOLNIK**
NAPOLI SHKOLNIK
NS PR LAW SERVICES LLC
1302 AVENIDA PONCE DE LEON
SANTURCE, PR 00907
787-493-5088
Fax: 646-843-7619
Email: Hunter@nsprlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**AMAZON.COM, INC.**

represented by **MARK VINCENT DONATIELLO**
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, NJ 08540
609-919-6712
Email: mark.donatiello@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**AMAZON.COM SERVICES LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 08/07/2026 | 1 | COMPLAINT against Amazon.com Services LLC, Amazon.com, Inc. ( Filing and Admin fee $ 405 receipt number ANJDC-17774403) with JURY DEMAND, filed by Luisa Spadafino. (Attachments: # 1 Civil Cover Sheet Civil cover sheet with addendum, # 2 Summons Proposed Summons for Amazon.com, Inc., # 3 Summons Proposed Summons for Amazon.com Services LLC)(SHKOLNIK, HUNTER) (Entered: 08/07/2026) |
| 08/10/2026 | | Case Assigned to Judge Michael E. Farbiarz and Magistrate Judge Michael A. Hammer. (mfr) (Entered: 08/10/2026) |
| 08/11/2026 | 2 | SUMMONS ISSUED as to AMAZON.COM SERVICES LLC, AMAZON.COM, INC.. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney |

| | | |
|---|---|---|
| | | information and serve. (ld) (Entered: 08/11/2026) |
| 08/12/2026 | 3 | TEXT ORDER: A federal court has an independent obligation to assure itself of its own jurisdiction. See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). The Plaintiff has invoked this court's jurisdiction by citing to 28 U.S.C. § 1332 --- the federal diversity statute. See ECF 1 at 3. And for diversity jurisdiction purposes, "a limited liability company is a citizen of all the states of its members." GBForefront, L.P. v. Forefront Mgmt. Grp., LLC, 888 F.3d 29, 34 (3d Cir. 2018). One of the Defendants here is an LLC, but the Plaintiff alleges only that the Defendant is a "Washington limited liability company with its headquarters and principal place of business [in] Washington." ECF 1 at 5. But this does not assure the Court that the diversity requirement of Section 1332 is met. Accordingly, the Plaintiff shall file a short letter on or before August 17 addressing the citizenship of each individual member of the Defendant LLC.. So Ordered by Judge Michael E. Farbiarz on 8/12/26. (ro, ) (Entered: 08/12/2026) |
| 08/12/2026 | 4 | SUMMONS ISSUED as to AMAZON.COM SERVICES LLC, AMAZON.COM, INC.. Attached is the official court Summons, please fill out Defendant and Plaintiffs attorney information and serve. (ld) (Entered: 08/12/2026) |
| 08/12/2026 | | Clerk's Note - Please disregard ECF No. 2 due to a technical error. See ECF No 4. (ld) (Entered: 08/12/2026) |
| 08/17/2026 | 5 | SUMMONS Returned Executed by LUISA SPADAFINO. AMAZON.COM SERVICES LLC served on 8/17/2026, answer due 9/8/2026. (SHKOLNIK, HUNTER) (Entered: 08/17/2026) |
| 08/17/2026 | 6 | SUMMONS Returned Executed by LUISA SPADAFINO. AMAZON.COM, INC. served on 8/17/2026, answer due 9/8/2026. (SHKOLNIK, HUNTER) (Entered: 08/17/2026) |
| 08/17/2026 | 7 | Letter re 3 Text Order,,,,. (Attachments: # 1 Exhibit 1- Disclosure Statement, # 2 Exhibit 2- Disclosure Statement, # 3 Exhibit 3- Disclosure Statement)(SHKOLNIK, HUNTER) (Entered: 08/17/2026) |
| 08/18/2026 | 8 | NOTICE of Appearance by MARK VINCENT DONATIELLO on behalf of AMAZON.COM, INC. (DONATIELLO, MARK) (Entered: 08/18/2026) |



| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 08/18/2026 12:55:59 | | | |
| **PACER Login:** | rrobbins0572233 | **Client Code:** | 000888-00001 |
| **Description:** | Docket Report | **Search Criteria:** | 2:26-cv-10023-MEF-MAH Start date: 1/1/1980 End date: 8/18/2026 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUISA SPADAFINO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM, INC. and AMAZON.COM SERVICES LLC.<br><br>Defendants. | Civil Action No. 26-cv-10023<br><br>**CLASS ACTION COMPLAINT**<br><br>**AND JURY DEMAND** |

Plaintiff Luisa Spadafino ("Plaintiff"), on behalf of herself and all others similarly situated, by and through undersigned counsel of record, brings this action against Defendants Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon" or "Defendants"). The allegations contained herein, which are based on Plaintiff's knowledge of facts pertaining to herself and her own actions and counsel's investigations, and upon information and belief as to all the other matters, are as follows:

## INTRODUCTION

1. This action is brought on behalf of Plaintiff, purchaser of goods that Amazon sold and shipped throughout all the United States, who bore the economic burden of President Donald Trump's ("Trump") Administration's tariffs, imposed under the International Emergency Economic Powers Act ("IEEPA") (50 U.S.C. §1701, *et seq.*), and against Amazon who shifted the economic burden of the IEEPA tariffs to consumers throughout the United States by means of price increases on imported goods as well as U.S.-sourced goods not subject to tariffs sold and shipped by Amazon to Plaintiff. As the importer-of-record ("IOR") on goods sold or shipped by

Amazon.com, Amazon now receives—or has the unilateral right to receive—an inequitable windfall by collecting refunds from the federal government for tariff costs that were shifted to and paid by Plaintiff, who purchased goods from and sold by Amazon, and therefore, is the real party in interest to receive the IEEPA tariff refunds.

2. Amazon collected hundreds of millions of dollars in unlawful tariffs from consumers by raising prices on imported goods and U.S.-sourced goods while the tariffs imposed by the Trump Administration under IEEPA were in effect.

3. The refund process set in place by the federal government when the United States Supreme Court struck down the IEEPA tariffs established that ***only*** the IOR is entitled to apply for and receive a refund for any moneys paid for the import of goods. However, Amazon shifted the cost of these tariffs to its customers by way of price increases to products subject to tariffs and items not subjected to tariffs, making Plaintiff and similarly situated consumers those who truly bore the tariff costs.

4. Amazon has not returned ***any*** portion of those costs it passed on to consumers, and it has no intention of doing so. It has, in short, generated and retained a windfall from unlawful government action, and consumers—not Amazon—are the ones left paying for it.

5. This dispute arises from a fundamental inequity in the tariff refund process. Only the IOR may seek a refund for an unlawfully assessed tariff—but IORs merely advance the tariff cost at the border and recoup all or a substantial part of it through higher consumer prices. In economic reality, the end-consumer paid the illegal tariff.

6. This inequity is compounded when, as here, a tariff is struck down by the courts, *ab initio*. Consumers who bore the true economic burden have no direct avenue for redress—they both lack a statutory cause of action in the United States Court of International Trade ("CIT") and

standing to seek a refund. That right belongs exclusively to the IOR, here Amazon or its agents, regardless of who actually paid. The refund process as designed establishes that large corporations that passed the entire tariff cost onto their customers remain exclusively entitled to recover a full refund of tariffs the Supreme Court has since declared unlawful.

7. This lawsuit seeks to force Amazon to return funds collected from millions of consumers to cover IEEPA tariffs between February 4, 2025, and February 20, 2026 ("Class Period"). Amazon has made no commitment to compensate consumers for those payments. This not only does not reimburse the consumer for the portion of the unlawful tariff that was forced upon her by Amazon by means of across-the-board price increases, but it also unfairly enriches Amazon at the expense of the consumer.

8. Plaintiff seeks a judgment that requires Amazon to return to Plaintiff all IEEPA duties passed on to customers in the form of higher prices on products for which Amazon was the seller or shipper, with interest.

9. Plaintiff also seeks restitution of the tariff and tariff-related fee overcharges they paid, or a proportionate share of any tariff refunds Amazon recovers, together with interest, reasonable attorneys' fees, and costs.

**JURISDICTION**

10. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

11. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events, omissions, and misrepresentations giving rise to Plaintiff's claims occurred in this District. Plaintiff's purchases from Amazon at issue in this case were shipped to Plaintiff at her

home in this District. Amazon also marketed, advertised, made available for sale, and shipped products subject to IEEPA tariffs within this District.

## PARTIES

### A. Plaintiff

12. Plaintiff Luisa Spadafino is a citizen and resident of New Jersey domiciled in Clifton, New Jersey. During the Class Period, Plaintiff made numerous purchases of products sold directly by Amazon through Amazon's online marketplace. Those purchases occurred throughout the Class Period, including purchases made in March, May, June, August, October 2025, and January 2026, and included both imported goods and goods sourced within the United States that were identified by Amazon as "Sold by Amazon.com." Plaintiff alleges that the prices she paid for imported products reflected Amazon's pass-through of IEEPA tariff costs and that the prices of certain domestically sourced products were likewise increased as part of Amazon's decision to spread or recover those tariff costs across its product line, causing Plaintiff to bear the economic burden of the IEEPA tariffs.

### B. Defendants

13. Defendant Amazon.com, Inc. is a Delaware corporation with its headquarters and principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109. Amazon.com, Inc. is an American multinational consumer goods company that conducts business in all 50 states, the District of Columbia, and United States territories. Amazon is one of the world's largest retail companies. At all relevant times, Amazon.com, Inc. operated an online store through which it sold imported products and U.S.-sourced products directly to consumers, generally labeled "Sold by Amazon.com" or where the "Shipper / Seller" was listed as "Amazon.com." Between February 4, 2025, and February 20, 2026, Amazon.com, Inc. collected tariff costs from those consumers on goods subject to tariffs imposed under the IEEPA, as well as goods not subject

to tariffs imposed under IEEPA. On information and belief, the misconduct alleged herein originated from and was directed out of Defendant's headquarters and principal place of business in Seattle, Washington.

14. Defendant Amazon.com Services LLC is a Washington limited liability company with its headquarters and principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109. Amazon.com Services LLC is a wholly owned subsidiary of Amazon.com, Inc., and handles Amazon.com, Inc.'s day-to-day U.S. e-commerce, logistics, and customer fulfillment operations.

## FACTUAL ALLEGATIONS

### A. Amazon is an Enormous Retailer of Imported Goods and U.S.-Sourced Goods

15. Amazon is a major retailer that imports a substantial volume of consumer goods into the United States and sells them to consumers throughout the country through its eponymous online store.

16. Amazon purchases the goods it sells wholesale from vendors, suppliers, and manufacturers, including, but not limited to, a substantial volume of goods imported from outside the United States, and resells them to consumers through its online store. Amazon owns much of the inventory it offers for sale and sets the retail prices its customers pay on such products. In general, these products are listed as either being "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com."

17. For the imported goods it sells, Amazon's involvement begins before the goods enter the United States. As the IOR, Amazon signs the customs declaration, takes legal responsibility for compliance, and pays the tariff to U.S. Customs and Border Protection ("CBP"). On information and belief, Amazon pays for all tariffs and tariff-related fees for a substantial

portion of the imported goods it sells as either being "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com."

18. Amazon's products are not limited to imported goods. Amazon also sources, stocks, and sells a substantial volume of consumer goods that originate within the United States and are not subject to IEEPA tariffs. Amazon offers these U.S.-sourced goods to consumers online, alongside its imported goods. As with its imported goods, Amazon owns this inventory and sets the retail prices its customers pay.

19. The IEEPA tariffs increased the costs Amazon incurred on the imported goods for which it was the IOR. On information and belief, rather than absorbing those increased costs or confining them to the imported goods that generated them, Amazon recovered the tariff costs by raising prices across its sold products, including on U.S.-sourced goods that were never subject to IEEPA tariffs.

20. As a result, Amazon sold its imported goods at prices inflated by its direct pass-through of IEEPA tariff costs, ***and*** sold its U.S.-sourced goods at prices likewise inflated by Amazon's decision to spread those same tariff costs across its sold products.

21. Consumers who purchased U.S.-sourced goods from Amazon that were labeled as either being "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com," therefore, bore a portion of the IEEPA tariffs that Amazon incurred on imported goods those consumers never purchased.

### B. The Trump Administration Invokes the IEEPA to Implement Tariffs

22. On February 4, 2025, Trump issued an executive order imposing a 10% tariff on Chinese imports.[1] In March 2025, Trump issued two more executive orders imposing a 25% on goods imported from Canada and Mexico, respectively.[2] By April 2025, the Trump Administration had imposed tariffs on imports from most other U.S. trading partners.

23. The Trump Administration invoked the IEEPA as the legal basis for these tariffs. The IEEPA was originally designed to allow the President to regulate international commerce during declared national emergencies.[3] The Trump Administration pointed to drug trafficking across U.S. borders and the persistent American trade deficit as the legal emergencies justifying the IEEPA tariffs.[4]

24. The IEEPA tariffs did not operate in isolation. For example, for much of 2025, the effective rate on most Chinese electronics was approximately 45%: a 20% IEEPA layer on top of

---

[1] Andrea Shalal et al., *Trump launches trade war with tariffs on Mexico, Canada and China*, Reuters (Feb. 1, 2025), https://www.reuters.com/business/trump-readies-order-steep-tariffs-goods-mexico-canada-china-2025-02-01/.

[2] *Id*.

[3] Christopher A. Casey et al., *The International Emergency Economic Powers Act: Origins, Evolution, and Use*, Cong. Rsch. Serv. R45618 (Sep. 1, 2025) https://www.congress.gov/crs-product/R45618.

[4] Shalal, *supra* note 1.

an already existing 25% Section 301 tariff.[5] At the peak of the escalation in April-May 2025, average U.S. tariffs on Chinese imports reached 127.2% in early May 2025.[6]

25. On April 3, 2025, within days of the IEEPA tariffs going into effect, the first lawsuit challenging their legality was filed.[7] Despite palpable fear from business groups of incurring the Trump Administration's anger,[8] other lawsuits would eventually follow.[9] These filings were widely reported and as a major retailer, Amazon certainly tracked their progress.[10]

26. On February 20, 2026, the U.S. Supreme Court issued its opinion in *Learning Resources, Inc. v. Trump*, holding that the IEEPA did not authorize the President to impose the IEEPA tariffs and that they were invalid *ab initio*.[11]

---

[5] Section 301 of the US Trade Act of 1974 authorizes the President to take all appropriate action, including tariffs, to remove a foreign government's practice that violates an international trade agreement and that restricts US commerce. 19 U.S.C. §2411. Trump implemented Section 301 tariffs in 2018.

[6] Chad P. Bown, *US-China Trade War Tariffs: An Up-to-Date Chart*, Peterson Inst. for Int'l Econ. (Nov. 14, 2025), https://www.piie.com/research/piie-charts/2019/us-china-trade-war-tariffs-date-chart.

[7] *Emily Ley, Paper, Inc., d/b/a Simplified v. Trump*, No. 3:25-cv-464-TKW-ZCB (N.D. Fla. Apr. 3, 2025).

[8] Caitlin Oprysko, *'Everyone is terrified': Business and government officials are afraid to cross Trump on tariffs*, Politico (Apr. 4, 2025), https://www.politico.com/news/2025/04/04/trump-tariffs-fear-lobby-business-congress-00006608.

[9] *See, e.g.*, Doug Palmer, *Trump's tariffs could face more than one legal challenge*, Politico (Apr. 4, 2025), https://www.politico.com/news/2025/04/04/first-lawsuit-filed-against-trumps-tariffs-00273646; Larry Neumeister, *A dozen states sue the Trump administration to stop tariff policy*, Associated Press (Apr. 23, 2025), https://apnews.com/article/tariffs-lawsuit-what-states-sue-0d6531b7f60aaa2f7c6c35e0a944d4a9.

[10] *Id.*

[11] *Learning Res., Inc. v. Trump*, 607 U.S. __, 146 S. Ct. 628, 646 (2026).

27. The Supreme Court's decision in *Learning Resources* eliminated the legal basis for the IEEPA tariffs and created a pathway for IORs like Amazon to seek refunds of the tariffs previously collected by the federal government.

**C. Consumers Incurred Price Increases on Defendants' Products While the IEEPA Tariffs Were in Effect**

28. The IEEPA tariffs increased the costs that retailers, including Amazon, incurred on imported goods. Across the retail industry, companies responded by passing those increased costs on to consumers through higher prices. A survey of American chief executive officers ("CEO") found that a majority had already raised prices or were considering doing so in response to the tariffs,[12] and major retailers publicly announced tariff-driven price increases throughout 2025 and into 2026.[13]

29. Independent economic analysis confirms that a substantial portion of the tariff costs was passed through to U.S. consumers during the relevant period. The Federal Reserve found that pass-through to consumers for goods imported from China was at least 30% between April and

[12] Ali McCadden, *Here are the retailers raising prices as Trump tariffs take hold*, CNBC (May 31, 2025), https://www.cnbc.com/2025/05/31/trump-tariffs-here-are-the-retailers-raising-prices.html (reporting the CEO/AlixPartners survey of U.S. CEOs and individual retailer price-increase announcements).

[13] Megan Cerullo, *Walmart and other big companies say tariffs are forcing them to hike prices*, CBS News (Feb. 20, 2026), https://www.cbsnews.com/news/walmart-trump-tariffs-general-merchandise-inflation/.

December 2025.[14] Federal Reserve Bank of New York research found that U.S. businesses and consumers together bore nearly 90% of the cost of the 2025 tariffs.[15]

30. These price increases were not confined to imported goods. Analyses of retail pricing found that prices rose on both imported and domestically produced goods as retailers spread tariff-related costs across their product lines.[16] Researchers estimated that tariff pass-through added roughly 0.7 percentage points to the Consumer Price Index by September 2025, and that the lowest-priced product varieties saw the steepest increases (around 5%) because retailers had the least room to absorb the cost in their margins.[17]

31. The cumulative burden on consumers was enormous. After years of moderating prices, consumer goods prices rose throughout 2025 and into 2026.[18] According to the Budget Lab at Yale University, tariffs accounted for an estimated 86% of the rise in prices for imported household goods, with the effect most pronounced for long-lasting durable goods such as cars,

---

[14] Sinem Hacıoğlu-Hoke et al., *The Slow Climb: How Tariffs Gradually Raised Retail Prices in 2025*, Bd. of Governors of the Fed. Rsrv. Sys., FEDS Notes (Mar. 5, 2026), https://www.federalreserve.gov/econres/notes/feds-notes/the-slow-climb-how-tariffs-gradually-raised-retail-prices-in-2025-20260305.html.

[15] Cerullo, *supra* note 13 (reporting Federal Reserve Bank of New York research that U.S. businesses and consumers together bore nearly 90% of the cost of the 2025 tariffs).

[16] Alberto Cavallo et al., *Are Tariffs Raising U.S. Retail Prices?* (UPDATED), Econofact (Dec. 4, 2025), https://econofact.org/are-tariffs-raising-u-s-retail-prices (summarizing the Cavallo/Harvard Business School Pricing Lab analysis of online pricing at five major U.S. retailers, including price increases on domestically produced goods).

[17] *Id.*

[18] *Tracking the Economic Effects of Tariffs*, Yale Budget Lab (Apr. 1, 2026), https://budgetlab.yale.edu/research/tracking-economic-effects-tariffs.

appliances, and furniture.[19] American consumers paid more than $231 billion in tariff costs between February 2025 and January 2026, an average of roughly $1,745 per family.[20]

32. Amazon's products are not limited to imported goods. Amazon also sources, stocks, and sells a substantial volume of consumer goods that originate within the United States and are not subject to IEEPA tariffs, which it offers to consumers alongside its imported goods. As with its imported goods, Amazon owns this inventory and sets the retail prices its customers pay.

33. The IEEPA tariffs increased the costs Amazon incurred on the imported goods for which it served as an IOR. On information and belief, rather than absorbing those increased costs or confining them to the imported goods that generated them, Amazon (like other major retailers) made a business decision to recover the tariff costs by raising prices across its products, including on U.S.-sourced goods that were never subject to IEEPA tariffs.

34. As a result, Amazon sold its imported goods at prices inflated by its direct pass-through of IEEPA tariff costs and sold its U.S.-sourced goods at prices likewise inflated by its decision to spread those same tariff costs across its product line. Consumers who purchased U.S.-sourced goods from Amazon therefore bore a portion of the IEEPA tariffs that Amazon incurred on imported goods those consumers never purchased.

35. Amazon maintains detailed transaction, pricing, and customer records, including point-of-sale data, online order histories, and payment and loyalty-program records, through which Amazon is able to identify the consumers during the Class Period who paid tariff-inflated prices

---

[19] *Id.*

[20] *American Families Have Paid More Than $1,700 Each in Tariff Costs Since Trump Entered Office*, Joint Econ. Comm. Minority (Feb. 2026), https://www.jec.senate.gov/public/_cache/files/7cc03e65-d40a-465f-9e88-09dd53d3502f/jec-fact-sheet-on-cost-of-tariffs-for-families-update.pdf.

on products that were labeled as either being "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com," and the amount of the increase attributable to the IEEPA tariffs.

36. Amazon's own executives publicly acknowledged that the IEEPA tariffs would increase the prices its customers paid. In April 2025, Amazon's CEO, Andy Jassy, stated that he expected sellers to pass the cost of the IEEPA tariffs on to consumers.[21] By January 2026, Mr. Jassy acknowledged that the tariffs had begun to "creep" into Amazon's prices and that price increases were, in some cases, unavoidable.[22]

37. Independent analyses confirmed that Amazon, in fact, raised prices on tariffed goods during the Class Period. A June 2025 analysis of more than 1,400 China-made products sold by Amazon found that their median price rose 2.6% between January and mid-June 2025, outpacing the prevailing rate of inflation for core goods.[23] A July 2025 study of 2,500 products sold by Amazon found that Amazon had raised the prices of approximately 1,200 low-cost goods by an average of 5.2% between January and July 2025, despite Amazon's earlier public pledges to keep prices low.[24]

---

[21] Annie Palmer, *Amazon CEO Andy Jassy says he believes sellers will pass increased tariff costs on to consumers*, CNBC (Apr. 10, 2025), https://www.cnbc.com/2025/04/10/amazon-ceo-andy-jassy-says-he-believes-sellers-will-pass-increased-tariff-costs-on-to-consumers.html.

[22] Annie Palmer, *Amazon CEO Jassy says Trump's tariffs have started to 'creep' into prices*, CNBC (Jan. 20, 2026), https://www.cnbc.com/2026/01/20/amazon-jassy-trump-tariffs-prices-shoppers.html.

[23] Siddharth Cavale, *Trump Tariffs Have Raised Prices on Chinese-Made Amazon Products Faster Than Inflation*, Reuters (June 30, 2025), https://www.inc.com/reuters/trump-tariffs-have-raised-prices-on-chinese-made-amazon-products-faster-than-inflation/91208199.

[24] Shane Shifflett et al., *After Pledging to Keep Prices Low, Amazon Hiked Them on Hundreds of Essentials*, Wall St. J. (July 20, 2025), https://www.wsj.com/business/retail/amazon-price-hikes-essentials-60a7c7f3.

38. Amazon is able to identify the precise portion of each product's price attributable to the IEEPA tariffs. In April 2025, Amazon prepared to display, for each product, the amount of its price attributable to the tariffs—demonstrating both that Amazon tracked the tariff component of its prices and that it maintains records sufficient to identify each consumer who paid a tariff-inflated price.[25] Amazon abandoned that disclosure plan within days, after the White House publicly objected and Trump spoke with Amazon's founder.[26]

39. While collecting these tariff costs from consumers through higher prices, Amazon is simultaneously entitled to pursue a refund of the same IEEPA tariffs from the federal government following the Supreme Court's invalidation of those tariffs. On information and belief, Amazon will recover those tariffs in full. If Amazon retains that refund without compensating the consumers who already bore the tariffs' cost, Amazon will have recovered the same tariff ***twice***—once from its customers and once from the government—and will be made whole twice over at the Class's expense.

40. Plaintiff and Class members paid tariff-inflated prices to Amazon during the Class Period. Amazon now seeks to retain the benefit of those consumer payments while also recovering, and keeping for itself, the refund of the same tariffs.

**D. Defendants Will Receive an Unjust Windfall from IEEPA Tariff Refunds**

41. Following the Supreme Court's decision in *Learning Resources*, nearly 2,000 importers began attempting to recover tariff refunds from the federal government. On March 5,

---

[25] *Amazon to display tariff costs for consumers*, Punchbowl News (Apr. 29, 2025), https://punchbowl.news/article/tech/amazon-display-tariff-costs/.

[26] Alayna Treene et al., *A 'p*ssed' Trump called Jeff Bezos after learning Amazon considered breaking out a tariff charge*, CNN (Apr. 29, 2025), https://www.cnn.com/2025/04/29/business/white-house-calls-report-that-amazon-is-adding-a-tariff-charge-a-hostile-action.

2026, the CIT ordered refunds of IEEPA tariffs, holding that "[a]ll importers of record" are "entitled to the benefit" of the Supreme Court ruling that struck down the IEEPA tariffs.[27] The Court ordered CBP to liquidate any and all unliquidated entries subject to IEEPA tariffs "without regard to the IEEPA duties," and ordered that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties."[28]

42. The Executive Director of CBP's Trade Programs Directorate estimated that as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion.[29] Given Amazon's size, Amazon is entitled to seek refunds from the government on products it sold and collect hundreds of millions of dollars in refunds on behalf of consumers.

43. Despite being well aware of the numerous challenges to the legality of the IEEPA tariffs, Amazon deceived consumers by not informing them that it wouldn't refund duties paid by consumers to cover IEEPA tariffs even if they were later invalidated.

44. These funds were wrongfully taken from consumers to cover IEEPA tariffs that have since been invalidated.

**CLASS ALLEGATIONS**

45. Plaintiff brings this action on behalf of herself, and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(2) and (b)(3), seeking damages and injunctive relief pursuant to federal and state law on behalf of the members of the following Class:

---

27 Order at 1, *Atmus Filtration, Inc. v. United States*, No. 1:26-01259 (U.S. Ct. Int'l Trade Mar. 5, 2026), ECF 29.

28 *Id.* at 2-3

29 Declaration of Brandon Lord, *Atmus*, No. 1:26-01259 (U.S. Ct. Int'l Trade Mar. 6, 2026), ECF 31 at 6.

a. **Imported Product Subclass**: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, purchased from Amazon a good labeled as being either "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com," that was itself subject to IEEPA tariffs, at a price that Amazon increased to pass through the IEEPA tariffs assessed on that good.
b. **U.S.-Sourced Product Subclass**: All persons who, during the period beginning on February 4, 2025 through February 20, 2026, purchased from Amazon a U.S.-sourced good labeled as either being "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com," that was not itself subject to IEEPA tariffs, at a price that Amazon increased to spread, recover, or offset across its product line the IEEPA tariff costs it incurred on its imported goods.

46. Excluded from the Class are Amazon and its officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

47. The identity of all products encompassed within the Class definition, *i.e.*, Class Products, are readily identifiable from Amazon's records. The identity of Class members and their purchase records are available through multiple sources, including Class members' own transaction and payment records, Amazon's records of Class Product purchases, and records maintained by PayPal, credit card companies, and other financial institutions.

48. **Numerosity**. Members of the Class are so numerous that joinder is impracticable. Plaintiff believes that there are tens of millions of members of the Class (if not more), geographically dispersed throughout the United States, such that joinder of all Class members is impracticable.

49. **Typicality**. Plaintiff's claims are typical of the claims of other Class members. The factual and legal bases of Amazon's liability are the same and resulted in injury to Plaintiff and all other members of the proposed Class.

50. **Adequate Representation**. Plaintiff will represent and protect the interests of the proposed Class both fairly and adequately. She has retained counsel competent and experienced in complex class-action litigation. Plaintiff has no interests that are antagonistic to those of the proposed Class, and her interests do not conflict with the interests of the proposed Class members they seek to represent.

51. **Commonality**. Common questions of law and fact predominate over questions that may affect only individual Class members because Amazon has acted on grounds generally applicable to the Class and because Class members share a common injury. Determining damages on a class-wide basis is therefore appropriate. The overcharge injuries incurred by Plaintiff and each Class member arose from the same conduct alleged herein.

52. There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

(a) Whether the higher prices that consumers paid for products sold by Amazon are attributable to the cost of IEEPA tariffs;

(b) Whether Amazon is obligated to return the cost of IEEPA tariffs to the consumers who paid them in the form of higher prices;

(c) Whether Amazon's retention of elevated consumer payments constitutes unjust enrichment;

(d) Whether Amazon's use of IEEPA tariff-related funds to benefit Amazon's business and political interests was unlawful;

(e) Whether Amazon acted unlawfully by upcharging consumers in response to IEEPA tariff-related costs while making statements to the contrary;

(f) Whether Defendants' conduct constitutes an unlawful business or trade practice under consumer protection statutes by collecting tariff-related surcharges from consumers while misrepresenting its pricing practices and failing to establish a consumer refund mechanism;

(g) Whether Amazon's conduct has harmed Plaintiff and the Class uniformly; and

(h) The measure of damages or restitution available to Plaintiff and the Class due to increased prices caused by Amazon's IEEPA tariff pass-through.

53. Prevention of inconsistent or varying adjudications: Individual prosecution of the claims alleged herein would likely yield inconsistent or varying results, establishing incompatible standards of conduct for Amazon. Certification of the proposed Class would prevent this outcome.

54. **Injunctive Relief**. By way of its conduct described in this complaint, Amazon has acted on grounds that apply generally to the proposed Class. Accordingly, final injunctive relief is appropriate respecting the Class as a whole.

55. **Predominance and Superiority**. A class action is superior to other available means for the fair and efficient adjudication of the Class's claims. The damages suffered by individual Class members are relatively small compared to the burden of individual prosecution of this complex litigation. Individual lawsuits would risk inconsistent judgments and increase delay and expense for all parties. A class action presents fewer administrative difficulties. Class members are ascertainable through methods typical of class action practice, including Defendant's own records and consumers' proof of purchase.

## CLAIMS FOR RELIEF

### COUNT I
### UNJUST ENRICHMENT

56. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 55 as though fully set forth herein.

57. Plaintiff brings this Count on behalf of all Class members.

58. Plaintiff and the Class have conferred a benefit upon Amazon in the form of money paid through tariff-inflated prices on goods that were labeled as either being "Sold by Amazon.com" or where the "Shipper / Seller" is "Amazon.com," during the Class Period, February 4, 2025, through February 20, 2026.

59. Amazon received and accepted that benefit and was thereby enriched. Amazon has retained the benefit conferred by Plaintiff without paying or otherwise compensating Plaintiff for its value.

60. The circumstances surrounding Amazon's receipt and retention of this benefit make it unjust and inequitable for Amazon to retain it without payment to Plaintiff. Amazon obtained these funds through price increases on goods subject to unlawful tariffs and has retained the resulting profits.

61. Under principles of equity and good conscience, Amazon should not be permitted to retain those ill-gotten profits when Amazon is seeking or must seek a refund of the duties it paid.

62. Plaintiff and the Class have no adequate remedy at law.

63. Plaintiff and the Class are entitled to full disgorgement and restitution of any money Amazon has retained as a result of the unlawful and/or wrongful conduct alleged herein.

**COUNT II**
**MONEY HAD AND RECEIVED**

64. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 55 as though fully set forth herein.

65. Plaintiff brings this Count on behalf of all Class members.

66. Amazon received funds from Plaintiff and from each member of the putative Class in the form of an IEEPA tariff surcharge. The Supreme Court has determined that the IEEPA tariffs were unlawful.

67. The funds belonged to Plaintiff and to each member of the putative Class.

68. Amazon has not returned the funds. Under principles of equity and good conscience, Amazon should not be permitted to retain those ill-gotten funds. Plaintiff seeks the return of the funds in an amount to be proven at trial.

69. Plaintiff seeks all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

**COUNT III**
**VIOLATION OF THE NEW JERSEY CONSUMER PROTECTION LAW**
**New Jersey Consumer Fraud Act "NJSA" N. J. Stat. § 56:8-2**

70. Plaintiff incorporates by reference all preceding allegations in paragraphs 1 through 55 as though fully set forth herein.

71. Plaintiff brings this Count individually and on behalf of all New Jersey Class members.

72. The statute prohibits unfair, deceptive, or abusive acts or practices in business, trade, commerce, or service provision in New Jersey State.

73. Amazon's acts complained of herein are a *per se* violation of the New Jersey consumer protection law as these tariffs were illegal and unlawful.

74. Amazon's practices, as alleged herein, are injurious to the public interest as they have the capacity to injure other persons, including the millions of consumers who shop on Amazon's online stores.

75. Amazon's deceptive and unlawful acts, as alleged herein, directly and proximately injured Plaintiff and the Class in their business or property. The increased charges to Plaintiff and the Class were the result of illegal tariffs, and the retention of sums gained through illegal collection is a *per se* violation of the NJSA. Amazon unfairly charged consumers inflated prices to offset those tariff costs while failing to disclose that consumers, rather than Amazon, were bearing the economic burden of those tariffs through increased retail prices. Amazon further failed to disclose that it intended to retain the benefit of any tariff refunds it recovered despite having previously passed the tariff costs on to consumers. These omissions and practices were material to Plaintiff's and the Class's purchasing decisions and if not for Amazon's deceptive and unfair conduct, Plaintiff and the Class would not have purchased products from and sold by Amazon.

76. Amazon's deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large throughout the Class Period, impacting Plaintiff and similarly situated consumers who purchased products from and sold by Amazon during that time.

77. Amazon is liable to Plaintiff for damages in amounts to be proven at trial, including statutory and treble damages, injunctive relief, as well as attorneys' fees, costs, and any other remedies the Court may deem appropriate under N. J. Stat. § 56:8-2.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

A. Certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel;

B. An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged herein;

C. Declaratory relief that Defendants must return to Plaintiff and the proposed Class all funds paid by consumers to cover an IEEPA tariff surcharge, with interest;

D. Costs, restitution, damages, including statutory, treble, punitive, and nominal damages, and disgorgement in an amount to be determined at trial;

E. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

F. An award of costs and attorneys' fees; and

G. Such other or further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: August 7, 2026

*/s/ Hunter J. Shkolnik*
Hunter J. Shkolnik
NAPOLI SHKOLNIK
NSPR LAW SERVICES LLC
1302 Avenida Ponce de León
Santurce, PR 00907
Tel: (787) 493-5088
Hunter@nsprlaw.com

*/s/ Shayna E. Sacks*
Shayna E. Sacks
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Tel: (212) 397-1000
SSacks@napolilaw.com

***Counsel for Plaintiff and the Proposed Class***