Query Reports Utilities Help Log Out

# U. S. District Court
# Western District of Arkansas (Fayetteville)
# CIVIL DOCKET FOR CASE #: 5:26-cv-05086-TLB

Hutchins et al v. WalMart, Inc.
Assigned to: Chief District Judge Timothy L Brooks
Cause: 28:1332 Diversity-Tort/Non-Motor Vehicle

Date Filed: 04/22/2026
Jury Demand: Plaintiff
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Nathan Hutchins** represented by **Charles Darwin Davidson , Sr**
Davidson Law Firm, Ltd.
P.O. Box 1300
Little Rock, AR 72203-1300
(501) 374-9977
Fax: 501-374-5917
Email: skipd@dlf-ar.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nickolas Dunn**
Davidson Law Firm
724 Garland Street
Little Rock, AR 72201
501-374-9977
Email: nickd@dlf-ar.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jordan Lesh** represented by **Charles Darwin Davidson , Sr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nickolas Dunn**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**WalMart, Inc.** represented by **Carolyn Anne DeLone**
Hogan Lovells Cadwalader US LLP
555 Thirteenth Street NW
Washington, DC 20004
202-637-4860
Email: carrie.delone@hlc.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Vincent Chadick**
Quattlebaum, Grooms & Tull PLLC
4100 Corporate Center Drive
Suite 310
Springdale, AR 72762
(479) 444-5208
Email: vchadick@qgtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katherine Booth Wellington**
Hogan Lovells Cadwalader US LLP
125 High Street
Suite 2010
Boston, MA 02110
617-371-1000
Email: katherine.wellington@hlc.com
*ATTORNEY TO BE NOTICED*

**Rebecca Wilton**
Hogan Lovells US LLP
555 13th Street
Washington, DC 20004
202-304-0635
Email: rebecca.wilton@hoganlovells.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/22/2026 | 1 | CIVIL COVER SHEET by Nathan Hutchins, Jordan Lesh. Please proceed with filing your case initiating document(s).<br><br>If the case initiating documents are not filed by Close of Business the next business day, this file may be closed.<br><br>A civil action is commenced by filing a complaint with the Court (Fed.R.Civ.P.3). (tmc) (Entered: 04/22/2026) |
| 04/22/2026 | 2 | COMPLAINT with Jury Demand against All Plaintiffs ( Filing fee $ 405 receipt number AARWDC-3355772), filed by Nathan Hutchins, Jordan Lesh. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Dunn, Nickolas) (Entered: 04/22/2026) |
| 04/22/2026 | 3 | **THE DOCUMENT IS RESTRICTED TO COURT USERS.**<br><br>Summons Requested as to Walmart, Inc. for service of the following document: 2 Complaint. (Dunn, Nickolas) (Entered: 04/22/2026) |
| 04/22/2026 | 4 | **THE DOCUMENT IS RESTRICTED TO COURT USERS AND CASE PARTICIPANTS.**<br><br>Summons Issued as to WalMart, Inc. and returned to attorney or plaintiff for service. |

| | | |
|---|---|---|
| | | **YOU MUST PRINT THIS ISSUED SUMMONS, WHICH IS THE MAIN DOCUMENT. PAPER COPIES WILL NOT BE MAILED.**<br><br>(tmc) (Entered: 04/22/2026) |
| 04/23/2026 | 5 | Magistrate Notice/Consent Form.(mjm) (Entered: 04/23/2026) |
| 05/13/2026 | 6 | Unopposed MOTION for Extension of Time to File Answer re 2 Complaint *or Otherwise Respond* by WalMart, Inc.. (Chadick, Vincent) (Entered: 05/13/2026) |
| 05/13/2026 | 7 | TEXT ONLY ORDER GRANTING 6 Unopposed Motion for Extension of Time. Defendant WalMart, Inc. must file their responsive pleading on or before JULY 21, 2026. Signed by Chief District Judge Timothy L Brooks on May 13, 2026. (slc) (Entered: 05/13/2026) |
| 05/22/2026 | 8 | MOTION for Attorney Carolyn A. DeLone to Appear Pro Hac Vice (PHV Application fee paid $ 100; receipt number AARWDC-3374558) by WalMart, Inc.. (Attachments: # 1 Exhibit Declaration of Carolyn A. DeLone)(Chadick, Vincent) (Entered: 05/22/2026) |
| 05/22/2026 | 9 | MOTION for Attorney Rebecca Wilton to Appear Pro Hac Vice (PHV Application fee paid $ 100; receipt number AARWDC-3374568) by WalMart, Inc.. (Attachments: # 1 Exhibit Declaration of Rebecca Wilton)(Chadick, Vincent) (Entered: 05/22/2026) |
| 05/22/2026 | 10 | MOTION for Attorney Katherine B. Wellington to Appear Pro Hac Vice (PHV Application fee paid $ 100; receipt number AARWDC-3374591) by WalMart, Inc.. (Attachments: # 1 Exhibit Declaration of Katherine B. Wellington)(Chadick, Vincent) (Entered: 05/22/2026) |
| 05/26/2026 | 11 | TEXT ONLY ORDER GRANTING 8 Motion to Appear Pro Hac Vice. CAROLYN A. DeLONE is directed to immediately register for Pro Hac Vice filer access through PACER and enter his/her appearance in this matter. Signed by Chief District Judge Timothy L Brooks on May 26, 2026. (slc) (Entered: 05/26/2026) |
| 05/26/2026 | 12 | TEXT ONLY ORDER GRANTING 9 Motion to Appear Pro Hac Vice. REBECCA WILTON is directed to immediately register for Pro Hac Vice filer access through PACER and enter his/her appearance in this matter. Signed by Chief District Judge Timothy L Brooks on May 26, 2026. (slc) (Entered: 05/26/2026) |
| 05/26/2026 | 13 | TEXT ONLY ORDER GRANTING 10 Motion to Appear Pro Hac Vice. KATHERINE B. WELLINGTON is directed to immediately register for Pro Hac Vice filer access through PACER and enter his/her appearance in this matter. Signed by Chief District Judge Timothy L Brooks on May 26, 2026. (slc) (Entered: 05/26/2026) |
| 06/09/2026 | 14 | NOTICE of Appearance by Carolyn Anne DeLone on behalf of WalMart, Inc.. (DeLone, Carolyn) (Entered: 06/09/2026) |
| 06/10/2026 | 15 | NOTICE of Appearance by Rebecca Wilton on behalf of WalMart, Inc.. (Wilton, Rebecca) (Entered: 06/10/2026) |
| 06/10/2026 | 16 | NOTICE of Appearance by Katherine Booth Wellington on behalf of WalMart, Inc.. (Wellington, Katherine) (Entered: 06/10/2026) |
| 07/21/2026 | 17 | MOTION to Compel *Arbitration and Stay Action Pending Arbitration* by WalMart, Inc.. (Attachments: # 1 Exhibit 1 (Declaration of A. Agrawal), # 2 Exhibit 2 (Declaration of J. Suematsu), # 3 Exhibit 3 (Declaration of R. Job - Redacted))(Chadick, Vincent) (Entered: 07/21/2026) |
| 07/21/2026 | 18 | MEMORANDUM BRIEF in Support of 17 MOTION to Compel *Arbitration and Stay Action Pending Arbitration* by WalMart, Inc.. (Chadick, Vincent) (Entered: 07/21/2026) |

| | | |
|---|---|---|
| 07/21/2026 | 19 | Unopposed MOTION for Leave to *File Under Seal* by WalMart, Inc.. (Chadick, Vincent) (Entered: 07/21/2026) |
| 07/21/2026 | 20 | TEXT ONLY ORDER GRANTING 19 Unopposed Motion for Leave to File Under Seal. Signed by Chief District Judge Timothy L Brooks on July 21, 2026. (slc) (Entered: 07/21/2026) |
| 07/21/2026 | 21 | **THE DOCUMENT IS FILED UNDER SEAL WITH THE COURT.**<br><br>SEALED DOCUMENT by WalMart, Inc.. An Order was entered on 7/21/2026 allowing the document(s) to be filed under seal.. (Chadick, Vincent) (Entered: 07/21/2026) |
| 07/22/2026 | 22 | MOTION for Extension of Time to File Response/Reply as to 17 MOTION to Compel *Arbitration and Stay Action Pending Arbitration* by Nathan Hutchins, Jordan Lesh. (Dunn, Nickolas) (Entered: 07/22/2026) |
| 07/28/2026 | 23 | TEXT ONLY ORDER GRANTING 22 Plaintiffs' Unopposed Motion for Extension of Time to Respond to Defendant's Motion to Compel Arbitration. Plaintiffs' responsive pleading is now due on or before OCTOBER 5, 2026. Signed by Chief District Judge Timothy L Brooks on July 28, 2026. (slc) (Entered: 07/28/2026) |

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**NATHAN HUTCHINS and JORDAN LESH, individually and on Behalf of All Others Similarly Situated** — **PLAINTIFFS**

**CASE NO. _______________**

**WALMART, INC.** — **DEFENDANT**

## COMPLAINT

Plaintiffs Nathan Hutchins and Jordan Lesh ("Plaintiffs") on behalf of themselves and all others similarly situated, by and through counsel, bring this action against Defendant Walmart, Inc. ("Defendant" or "Walmart"). The allegations contained herein, which are based on Plaintiffs' knowledge of facts pertaining to themselves and their own actions and counsels' investigations, and upon information and belief as to all other matters, are as follows:

## NATURE OF THE CASE

1. This class action arises from Walmart's retention of windfall profits generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1701 *et seq*.

2. Beginning in February 2025, the federal government imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. Those tariffs dramatically increased the cost of imported consumer goods sold in the United States.



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

3. Major U.S. importers, including Walmart, responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, American consumers paid higher retail prices for consumer goods, reflecting the economic burden of those tariffs.

4. On February 20th, 2026, the Supreme Court of the United States held that the IEEPA-based tariffs were unlawful. *Learning Resources, Inc v. Trump*, 2026, U.S. LEXIS 714, 146 S. Ct. 628 (2026). *See* **Exhibit 1**.

5. As a consequence of that, importers who paid those tariffs, including Walmart, became entitled to refunds of the duties they previously paid to U. S Customs and Border Protection ("CBP").

6. The economic reality of the tariffs, however, is that importers like Walmart do not ultimately bear all the costs of the tariffs. Instead, the importers passed the elevated costs on to consumers in the form of higher retail prices.

7. Walmart therefore collected the tariff costs from consumers through elevated protection while simultaneously seeking refunds of the same tax payments from the federal government.

8. On April 8, 2026, while attending a JPMorgan Retail Round UP, Walmart CFO stated, "We'll certainly avail ourselves of the opportunity that we have to get a refund, but when that happens, remains to be seen."

9. Walmart has made no legally binding commitment to return tariff-related overcharges to the consumers who actually paid them.

10. Unless restrained by this Court, Walmart stands to recover the same tariff payments twice—once from consumers through higher prices, and again from the federal



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

government through tariff refunds, including interest paid by the government on those funds.

11. This lawsuit seeks to prevent that unjust result.

12. Plaintiffs bring this action on behalf of millions of consumers who purchased goods from Walmart during the tariff period and who paid inflated prices reflecting Walmart's pass-through of unlawful tariffs.

13. Plaintiffs seek restitution of those tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

## JURISDICTION AND VENUE

14. Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because (a) at least one member of the class is a citizen of a state different from Defendant (b) the amount in controversy exceeds $ 5,000,000 exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

15. The Court has personal jurisdiction over Defendant because Walmart is headquartered in this district, conducts significant business transactions in this district, and because the wrongful conduct occurred in and emanated from this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in this District in Bentonville, Arkansas, and a substantial portion of the events and conduct giving rise to the claims occurred in the Western District of Arkansas.



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

## PARTIES

17. Plaintiff Nathan Hutchins ("Hutchins") is a resident and citizen of Bryant, Arkansas, and a customer of Walmart. During the Class Period, Plaintiff Hutchins purchased goods from Walmart that were imported from countries subject to the IEEPA tariffs. Plaintiff Hutchins paid retail prices for those goods, which Walmart increased to account for the tariffs imposed on imported products. Plaintiff Hutchins would not have paid those higher prices absent the unlawful tariffs and Walmart's pass-through of those tariffs to consumers.

18. Plaintiff Jordan Lesh ("Lesh") is a resident and citizen of Stillwater, Oklahoma, and a customer of Walmart. During the Class Period, Plaintiff Lesh purchased goods from Walmart that were imported from countries subject to the IEEPA tariffs. Plaintiff Lesh paid retail prices for those goods, which Walmart increased to account for the tariffs imposed on imported products. Plaintiff Lesh would not have paid those higher prices absent the unlawful tariffs and Walmart's pass-through of those tariffs to consumers.

19. Defendant Walmart, Inc. is an Arkansas corporation with its principal place of business at 1 Customer Dr., Bentonville, AR 72716. Walmart operates one of the largest retail chains in the world with hundreds of warehouse stores throughout the United States and billions of dollars in annual sales. Walmart is one of the largest importers of consumer goods in the United States. A significant portion of the products Walmart sells are imported goods subject to IEEPA tariffs imposed by the United States government.



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

## FACTUAL BACKGROUND

20. Walmart is one of the largest retailers in the world and consistently ranks among the largest retail companies by global revenues. In recent industry rankings, Walmart has been identified as one of the top two largest retailers globally, reflecting the massive scale of its operations and merchandise sales.

21. Walmart operates a chain of warehouse stores that sell to the general public a wide range of consumer products, including groceries, electronics, appliances, clothing, household goods, furniture, sporting goods, and personal care products The company sells merchandise both through its warehouse locations and through its online retail platforms, offering consumers access to thousands of products sourced from both domestic and international suppliers.

22. To supply its warehouses with merchandise at scale, Walmart imports enormous quantities of products from foreign manufacturers and suppliers. These imports include a wide range of goods sold to Walmart warehouses.

23. Imported goods, therefore, account for a substantial portion of Walmart's retail sales in the United States. Walmart relies heavily on international supply chains to stock its warehouses.

24. As Walmart imports a significant portion of the goods it sells, the IEEPA tariffs directly increased Walmart's cost of importing merchandise into the United States.

25. Beginning in February 2025, President Trump invoked the IEPPA to impose tariffs on imports from numerous foreign countries pursuant to a series of executive orders declaring national emergencies related to trade and supply chain concerns.



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

26. Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners. The orders included duties of approximately 25 percent on many imports from Canada and Mexico and additional tariffs on imports from China that were layered on top of existing duties, resulting in substantially higher effective tariff rates on Chinese goods.

27. The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for retailers and other businesses that rely heavily on international supply chains to source merchandise—like Defendant Walmart.

28. Under U.S. Customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including major retailers such as Walmart—were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered merchandise into the country.

29. Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.

30. On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation and invalidated the tariff orders issued pursuant to that statute.

31. The Supreme Court's decision effectively eliminated the legal basis for the IEPPA tariffs and created a pathway for importers that had paid those duties—including

Case 26-1002  Document 41-3  Filed 04/23/26  Page 11 of 23

large retailers like Walmart—to seek refunds of the tariffs previously collected by the federal government.

32. Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties.

33. Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.

34. When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of the U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices. Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

35. Walmart followed this same pattern during the tariff period. As a major importer of consumer goods, Walmart faced increased costs resulting from tariffs on products sourced from foreign suppliers and took steps to address those cost pressures through pricing and merchandising decisions.

36. Indeed, as detailed below, Walmart executives publicly acknowledged that tariffs would affect pricing decisions and the company's cost structure. In those communications, Walmart leadership explained that tariffs increased the company's merchandise costs and required Walmart make price adjustments.



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

37. In May of 2025, when discussing tariffs, Walmart's Chief Financial Officer stated, "We're wired for everyday low prices, but the magnitude of these increases is more than any retailer can absorb." "It's more than any supplier can absorb. And so I'm concerned that consumer is going to start seeing higher prices. You'll begin to see that, likely towards the tail end of this month, and then certainly much more in June."

38. In August of 2025, Walmart's CEO stated in an earnings call, "We've continued to see our costs increase each week, which we expect will continue into the third and fourth quarters."

39. In February 2026, Walmart's Chief Financial Officer stated "Tariff-related costs lifted prices across many categories."

40. Walmart's public statements thus confirmed first that tariffs were increasing Walmart's costs of imported goods; and second, that Walmart was making pricing and sourcing decisions in direct response to those tariff-driven cost increases.

41. These admissions support the inference that Plaintiffs and Class members paid tariff-inflated prices at Walmart during the Class Period, while Walmart now seeks to retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

42. In February 2026, the Supreme Court held that the President's tariff regime exceeded the statutory authority granted by IEPPA and invalidated the challenged tariff orders. Following the SCOTUS decision, importers that had paid IEEPA tariffs—including Walmart—became eligible to pursue refunds of those duties.



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

43. On March 5, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered U.S. CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refunds suits. *See* **Exhibit 2**.

44. The potential refund pool resulting from the invalidation of the IEPPA tariffs is enormous. Public reporting concerning the refund proceedings states that U.S. CBP estimated an "unprecedented volume of refunds," potentially involving 53,173,939 refunds across 330,566 importers if each entry subject to IEEPA duties is entitled to a refund.

45. Walmart is among the country's largest importers of consumer goods and therefore stands to recover substantial sums if tariff refunds are paid. Industry rankings place Walmart among the top 100 importers in the United States.

46. Given Walmart's scale as a national retailer and major importer, Walmart can expect to recover significant tariff refunds corresponding to duties it paid during the Class Period. According to an April 10 analysis by Citi, Walmart is due $10.2 billion in tariff refunds. Those expected refunds are especially significant here because Walmart previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning Walmart now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by Plaintiffs and Class members.



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

47. In practical terms, Walmart stands to receive a windfall: it has already recouped tariff costs from consumers through higher prices, and it now stands in line to recover those same unlawful tariff payments from the federal government.

## CLASS ALLEGATIONS

48. A class action is the proper forum to bring Plaintiffs' claims under FRCP 23. The potential Class is so large that joinder of all members would be impractical. Additionally, there are questions of law or fact common to the Class. The elements or defenses of the representative parties are typical of the elements or defenses of the Class and the representative parties will fairly and adequately protect the interests of the Class.

49. This action satisfies all of the implicit and explicit requirements of FRCP, including numerosity, commonality, typicality, adequacy, predominance, and superiority.

50. **Numerosity:** the Class is so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery. Given the consumer base of Walmart, the class numbers in the hundreds of thousands or millions of consumers.

51. **Commonality:** the claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the classwide litigation. These shared questions predominate over individual questions, and they include, without limitation:

a. whether Walmart paid tariffs imposed under the International Emergency Economic Powers Act ("IEEPA") on imported goods during the Class Period;



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

b. whether Walmart increased retail prices on goods sold to consumers in response to those tariffs;

c. whether Walmart passed through some or all of the tariff costs to consumers through higher prices;

d. whether Walmart sought or will seek refunds of those tariffs from the federal government;

e. whether Walmart's retention of tariff refunds corresponding to tariff costs paid by consumers constitutes unjust enrichment; and

f. the appropriate measures of restitution, damages, or other relief resulting from Walmart's conduct.

52. **Typicality:** Plaintiffs' claims are typical of those of the other Class members because Plaintiff, like every other Class member, bought products from Walmart subject to tariff related price increases.

53. The claims of the Class Representative Plaintiffs are furthermore typical of other Class members because they make the same claims as other Class members. Plaintiffs have an interest in seeking compensation from Defendant.

54. **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members.



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

55. **Superiority:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against a large corporate defendant. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

56. The nature of this action and the nature of Arkansas laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged. Without the class action mechanism, Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; and the costs of individual suits could unreasonably consume the amounts that would be recovered. Likewise, proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged. Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

57. The proposed class is described as follows:



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

All persons in the United States who purchased goods from Walmart, Inc. during the period February 1, 2025, through February 24, 2026, that were subject to tariffs imposed under IEEPA.

58. Plaintiffs reserve the right to modify or amend the definition of the proposed class and to modify, amend, or remove proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

59. Plaintiffs will fairly and adequately protect the interests of the Class. The interests of the class representative are consistent with those of the other members of the Class. In addition, Plaintiffs are represented by experienced and able counsel.

60. The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

61. Excluded from the Class are:

a. Defendant and any entities in which Defendant has a controlling interest;

b. Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c. The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d. All persons or entities that properly execute and timely file a request for exclusion from the Class; and



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

e. Any attorneys representing the Plaintiffs or the Class.

## CLAIM FOR RELIEF

### COUNT I
### Unjust Enrichment
### (On behalf of Plaintiffs and the Class)

62. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

63. Plaintiffs and the Class have conferred a benefit upon Defendant in the form of the money Defendant received from them for the purchase of goods at Walmart stores.

64. Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiffs and the Class.

65. Under principles of equity and good conscience, Defendant should not be permitted to retain the money obtained from Plaintiffs and the members of the Class, which Defendant has unjustly obtained as a result of its unlawful price increases on goods subject to tariffs. As it stands, Defendant has retained profits generated from its sales of products subject to tariff-related price increases and should not be permitted to retain those ill-gotten profits.

66. Accordingly, Plaintiffs and the Class seek full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

### COUNT II
### Declaratory Relief
### (On behalf of Plaintiffs and the Class)

67. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

68. Plaintiffs allege this claim individually and on behalf of the proposed Class.

69. Federal courts have power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

70. Plaintiffs' claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Defendant.

71. Plaintiffs have suffered an injury by having been required to pay Defendant a tariff surcharge because of the subject tariffs on Defendant's product. And Plaintiffs will imminently suffer an injury by Defendant's unlawful retention of the tariff refund.

72. This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiffs but refunded to Defendant is unlawful for any of the above reasons.

**COUNT III**
**Breach of Contract**
**(On behalf of Plaintiffs and the Class)**

73. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

74. During the period February 1, 2025, through February 24, 2026, Plaintiffs and the Class members purchased products from Walmart that were subject to the tariffs implemented by the federal government.

75. Such purchases constituted valid contracts for the sale of goods entered into between the Plaintiffs and Walmart.

76. Every contract for the sale of goods imposes an obligation of good faith in its performance and enforcement. All contracts carry an implied duty of good faith and fair dealing between the parties.



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

77. By directly increasing prices for consumers in order to cover the costs of the tariffs, receiving or being entitled to receive a refund for those tariffs from the federal government, and then not returning that money to the Plaintiffs and Class members, Walmart has breached its duty of good faith and fair dealing that it owes to the Plaintiffs and the Class members.

78. Accordingly, Plaintiffs and Class members seek damages from Walmart in an amount to be determined at trial, their attorneys' fees, and court costs.

**COUNT IV**
**Arkansas Deceptive Trade Practices Act ("ADTPA")**
**(On behalf of Plaintiffs and the Class)**

79. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

80. In Arkansas, deceptive and unconscionable trade practices are made unlawful and prohibited by Ark. Code Ann. § 4-88-107. Such actions include, but are not limited to, engaging in any unconscionable, false, or deceptive act or practice in business, commerce, or trade.

81. The Arkansas Supreme Court has defined an unconscionable act as "an act that 'affronts the sense of justice, decency, or reasonableness."

82. Walmart engages in consumer-oriented acts or practices as it provides consumer goods for sale to the general public. In fact, it is one of the largest retail chains in the world with hundreds of warehouse stores throughout the United States and billions of dollars in annual sales.



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

83. As stated above, Walmart's retention of the tariff refunds due to it from the federal government would be highly unconscionable. It would create a windfall for Walmart, at the expense of the Plaintiffs and the Class members.

84. Actual damages have occurred to the Plaintiffs and Class members as described above.

85. Accordingly, Plaintiffs and Class members seek damages from Walmart in an amount to be determined at trial, their attorneys' fees, and court costs.

**COUNT V**
**Oklahoma Consumer Protection Act ("OCPA")**
**(On behalf of Plaintiffs and the Class)**

86. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

87. A person violates the OCPA when they commit an unfair or deceptive trade practice in the course of the person's business.

88. An unfair trade practice pursuant to the OCPA is any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

89. Walmart engages in business as it provides consumer goods for sale to the general public.

90. Walmart's retention of the tariff refunds due to it from the federal government would be immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. It would create a windfall for Walmart, at the expense of the Plaintiffs and the Class members.



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

91. Actual damages have occurred to the Plaintiffs and Class members as described above.

92. Accordingly, Plaintiffs and Class members seek damages from Walmart in an amount to be determined at trial, their attorneys' fees, and court costs.

93.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and members of the proposed class pray for relief and judgment against Defendant, as follows:

a. For an order certifying the proposed classes, appointing Plaintiffs and their counsel to represent the proposed class, and notice to the proposed classes to be paid by Defendant;

b. For damages suffered by Plaintiffs and members of the proposed class;

c. For restitution suffered by Plaintiffs and members of the proposed class;

d. For restitution to Plaintiffs and the proposed class of all monies wrongfully obtained by Defendant;

e. An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

f. For Plaintiffs' reasonable attorneys' fees, as permitted by law;

g. For Plaintiffs' cost incurred;



**Davidson Law Firm**
724 Garland St.,
Little Rock, AR 72201

Case 5:25-cv-05202 Document 41-3 Filed 04/03/26 Page 23 of 23

h. For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i. For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages as appropriate.

Respectfully submitted,

Charles D. "Skip" Davidson ABN 73026
Nickolas W. Dunn ABN 2019115
*Davidson Law Firm*
724 Garland, Cantrell at State
P.O. Box 1300
Little Rock, AR 72203
(501) 374-9977
(501) 374-5917 fax
E-mail: skipd@dlf-ar.com
nick.dunn@dlf-ar.com

**ATTORNEYS FOR PLAINTIFFS**