# Exhibit D

# U.S. District Court
# District of Oregon (Portland (3))
# CIVIL DOCKET FOR CASE #: 3:26-cv-01035-JR

Norberg et al v. On Inc.
Assigned to: Magistrate Judge Jolie A. Russo
Demand: $5,000,000
Cause: 28:1332cl Class Action Fairness Action - 2005

Date Filed: 05/24/2026
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Diversity

**Plaintiff**

**Linda Norberg**
*individually and on behalf of similarly situated individuals*

represented by

**Brady H. Mertz**
Brady Mertz, PC
685 Church St. NE
Salem, OR 97302
503-385-0212
Fax: 503-375-2218
Email: brady@bradymertz.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rick Klingbeil**
Rick Klingbeil, PC
1826 NE Broadway
Portland, OR 97232
503-473-8565
Fax: 503-427-9001
Email: rick@klingbeil-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew T. Heldut**
McGuire Law, P.C.
55 West Wacker Drive
Ste 9th Fl.
Chicago, IL 60601
312-893-7002
Email: aheldut@mcgpc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Myles McGuire**
McGuire Law, P.C.
55 W. Wacker Dr.
9th Floor
Chicago, IL 60601
312-216-5179
Email: mmcguire@mcgpc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dora Rich**
*individually and on behalf of similarly situated individuals*

represented by **Brady H. Mertz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rick Klingbeil**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew T. Heldut**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Myles McGuire**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**On Inc.**
*a Delaware corporation*

represented by **David A. Perez**
Morrison & Foerster LLP
925 Fourth Avenue
Seattle, WA 98104
206-327-6500
Email: DavidPerez@mofo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Megan K. Houlihan**
Morrison & Foerster LLP
925 Fourth Avenue
Seattle, WA 98104
206-327-6500
Email: mhoulihan@mofo.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/24/2026 | 1 | Complaint. Filing fee in the amount of $405 collected. Agency Tracking ID: AORDC-10278152 Jury Trial Requested: Yes. Filed by Linda Norberg against On Inc. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons). (Klingbeil, Rick) (Entered: 05/24/2026) |
| 05/26/2026 | 2 | Notice of Case Assignment to Judge Michael W. Mosman and Discovery and Pretrial Scheduling Order. **NOTICE: The filing party shall print and serve this Order, the summonses, and all other documents issued by the Clerk at case initiation upon all named parties in accordance with Local Rule 3-5(c)**. Discovery is to be completed by 9/23/2026. Joint Alternate Dispute Resolution Report is due by 10/23/2026. Pretrial Order is due by 10/23/2026. Ordered by Judge Michael W. Mosman. (ajm) (Entered: 05/26/2026) |

| | | |
|---|---|---|
| 05/26/2026 | 3 | Summons Issued Electronically as to All Defendants. **NOTICE: The filing party shall print and serve the summonses and all other documents issued by the Clerk at the time of case initiation upon all named parties in accordance with Local Rule 3-5(c).** (ajm) (Entered: 05/26/2026) |
| 06/23/2026 | 4 | Unopposed Motion for Extension of Time to Answer Complaint, 1 . Filed by On Inc.. (Houlihan, Megan) (Entered: 06/23/2026) |
| 06/23/2026 | 5 | Corporate Disclosure Statement . Filed by On Inc.. (Houlihan, Megan) (Entered: 06/23/2026) |
| 06/24/2026 | 6 | **ORDER:** Good cause appearing, Defendant On Inc.'s Unopposed Motion [ECF 4] to extend the time to respond to Plaintiffs Complaint until July 31, 2026, is granted. Ordered by Judge Michael W. Mosman. (kms) (Entered: 06/24/2026) |
| 07/01/2026 | 7 | Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Andrew T. Heldut. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10323756. Filed by Linda Norberg. (T. Heldut, Andrew) (Entered: 07/01/2026) |
| 07/02/2026 | | Clerk's Review of Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Andrew T. Heldut. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10323756 7 : **Reviewed and Ready for Ruling. (dino) (Entered: 07/02/2026)** |
| 07/06/2026 | 8 | Notice of Case Reassignment: This case has been reassigned from Judge Michael W. Mosman to Magistrate Judge Jolie A. Russo. (cw) (Entered: 07/06/2026) |
| 07/06/2026 | 9 | **ORDER** issued by Magistrate Judge Jolie A. Russo: Granting Plaintiff's Motion for Leave to Appear *Pro Hac Vice* 7 as to Attorney Andrew T. Heldut. (gm) (Entered: 07/06/2026) |
| 07/06/2026 | 10 | Notice of Implied Consent to Jurisdiction by a Magistrate Judge and Declination of Consent Form. Parties who do not return the form by the deadline will be deemed to have knowingly and voluntarily consented to proceed before a U.S. Magistrate Judge. Declination of Consent to Jurisdiction by a Magistrate Judge, if any, is to be filed by 8/5/2026. (gm) (Entered: 07/06/2026) |
| 07/06/2026 | 11 | Declination of Individual Party Consent to Jurisdiction by U.S. Magistrate Judge. (Entered: 07/06/2026) |
| 07/31/2026 | 12 | Motion to Dismiss for Failure to State a Claim *Plaintiff Linda Norberg's Class Action Allegation Complaint*. Oral Argument requested. Megan K. Houlihan,David A. Perez for On Inc.,Megan K. Houlihan. Filed by On Inc.. (Houlihan, Megan) (Entered: 07/31/2026) |
| 07/31/2026 | 13 | **ORDER** issued by Magistrate Judge Jolie A. Russo: Setting Defendant's Rule 12 Motion to Dismiss 12 on the under advisement calendar of 8/31/2026. The request for oral argument will be considered in due course. Should the Court deem the motion appropriate for disposition with oral argument upon review of the briefings, the motion will be scheduled accordingly. (gm) (Entered: 07/31/2026) |
| 08/12/2026 | 14 | Unopposed Motion for Extension of Time to File a Response/Reply to Motion to Dismiss for Failure to State a Claim *Plaintiff Linda Norberg's Class Action Allegation Complaint* 12 . Filed by All Plaintiffs. (Mertz, Brady) (Entered: 08/12/2026) |
| 08/12/2026 | 15 | **ORDER** issued by Magistrate Judge Jolie A. Russo: Granting Plaintiff's Unopposed Motion for Extension of Time 14 as follows: Response to motion to dismiss due by 9/14/2026. Reply to response to motion to dismiss due by 9/28/2026. Order: Resetting Defendant's Rule 12 Motion to Dismiss 12 from 8/31/2026 to the under advisement calendar of 10/5/2026. Addressing the discovery and pretrial deadlines, the parties may |

| | | |
|---|---|---|
| | | confer and submit a motion to appropriately extend those deadlines as necessary. (gm) (Entered: 08/12/2026) |
| 08/13/2026 | 16 | Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Myles McGuire. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10373868. Filed by Linda Norberg. (McGuire, Myles) (Entered: 08/13/2026) |
| 08/14/2026 | | Clerk's Review of Motion for Leave to Appear *Pro Hac Vice*. *Pro Hac Vice* admission requested by attorney Myles McGuire. Filing fee in the amount of $300 collected; Agency Tracking ID: AORDC-10373868 16 : **Reviewed and Ready for Ruling. (dino) (Entered: 08/14/2026)** |
| 08/14/2026 | 17 | **ORDER** issued by Magistrate Judge Jolie A. Russo: Granting Plaintiff's Motion for Leave to Appear *Pro Hac Vice* 16 as to Attorney Myles McGuire. (gm) (Entered: 08/14/2026) |
| 08/21/2026 | 18 | First Amended Complaint . Filed by Linda Norberg, Dora Rich against On Inc.. (T. Heldut, Andrew) (Entered: 08/21/2026) |
| 08/27/2026 | 19 | Motion for Extension of Time to Answer *Defendant's Unopposed Motion to Extend Time to Respond to Plaintiff's First Amended Complaint*. Filed by On Inc.. (Houlihan, Megan) (Entered: 08/27/2026) |
| 08/27/2026 | 20 | **ORDER** issued by Magistrate Judge Jolie A. Russo: Defendant filed a Rule 12(b) motion on 7/31/2026. In lieu of opposing that motion, plaintiffs filed their First Amended Complaint on 8/21/2026 in accordance with Fed. R. Civ. P. 15(a). Accordingly, defendant's Motion to Dismiss 12 is Denied as Moot. *See Frazier v. City of Fresno*, 2023 WL 1786228, *1 (E.D. Cal. Feb. 6, 2023) ("[o]nce an amended complaint is filed, the previous complaint becomes null and void, and generally any pending motion to dismiss that was directed at the previous pleading will be thus rendered moot") (collecting cases). Additionally, defendant's unopposed Motion for Extension of Time to Answer 19 is Granted. The deadline to file an answer or to otherwise respond to plaintiff's First Amended Complaint is extended to 10/2/2026. (gm) (Entered: 08/27/2026) |

---

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/03/2026 15:58:45 | | | |
| **PACER Login:** | jdunklin | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:26-cv-01035-JR Start date: 1/1/1980 End date: 9/3/2026 |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

Brady Mertz, OSB #970814
BRADY MERTZ, PC
685 Church St. NE
Salem, OR 97301
Tel: (503) 385-0121
brady@bradymertz.com

Rick Klingbeil, OSB #933326
RICK KLINGBEIL, PC
1826 NE Broadway
Portland, OR 97232
Tel: (503) 490-6763
rick@klingbeil-law.com

Myles McGuire, Pro Hac Vice
Andrew T. Heldut, Pro Hac Vice
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
aheldut@mcgpc.com

*Attorneys for Plaintiffs and Proposed Class*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **LINDA NORBERG and DORA RICH**, individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>**ON INC.,** a Delaware corporation,<br><br>Defendant. | No. 3:26-cv-1035<br><br>**FIRST AMENDED CLASS ACTION ALLEGATION COMPLAINT**<br><br>**Oregon Unlawful Trade Practices Act, Unjust Enrichment, Money Had and Received.**<br><br>(28 U.S.C. § 1332(d))<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, Linda Norberg and Dora Rich ("Plaintiffs"), individually and on behalf of others similarly situated, by and through their undersigned counsel, and for their First Amended Class Action Complaint against Defendant ON Inc. ("ON" or "Defendant"), allege as follows based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

**NATURE OF THE ACTION**

1. This is an action for damages and any other available legal or equitable remedies, for violations of the Oregon Unlawful Trade Practices Act ("UTPA"), Unjust Enrichment, and Money Had and Received, resulting from Defendant's practice of charging its customers inflated prices in response to unlawfully imposed tariffs.
2. This lawsuit arises from Defendant's retention of windfall profits generated as a consequence of the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.* This windfall is a direct result of Defendant systematically passing on the costs of IEEPA tariffs to its own customers—including Plaintiffs—through elevated product prices.
3. Beginning on February 1, 2025, President Donald J. Trump issued Executive Orders 14193, 14194, and 14195 imposing IEEPA-based duties on certain imports from Canada, Mexico, and China, respectively. On February 5, 2025, he issued Executive Order 14200 amending the duties addressing the synthetic opioid supply chain in the People's Republic of China. On March 3, 2025, he issued Executive Order 14228 further amending those duties. He later issued Executive Order 14245 on March 24, 2025 concerning tariffs on countries importing Venezuelan oil, and Executive Order 14257 on April 2, 2025 declaring a national emergency

based on large and persistent United States goods trade deficits and imposing reciprocal tariffs on a broad range of trading partners. *See* Exec. Order No. 14193, 90 Fed. Reg. 9,113 (Feb. 1, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9,117 (Feb. 1, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9,121 (Feb. 1, 2025); Exec. Order No. 14200, 90 Fed. Reg. 9,277 (Feb. 5, 2025); Exec. Order No. 14228, 90 Fed. Reg. 11,463 (Mar. 3, 2025); Exec. Order No. 14257 (Apr. 2, 2025); Exec. Order No. 14245 (Mar. 24, 2025) (collectively, the "Tariff Executive Orders").

4. The Tariff Executive Orders imposed an array of frequently changing duties ranging from 10% to 145% (with the upper end reflecting the maximum cumulative IEEPA-based rate applied to certain Chinese-origin goods, comprised of a 125% reciprocal duty under Executive Order 14257 as amended and an additional 20% IEEPA fentanyl duty under Executive Order 14228) based on country-specific tariff policy dictated through published Executive Orders. *See* Exec. Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025); Exec. Order No. 14,259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

5. Studies by the Federal Reserve Bank of New York find that "U.S. firms and consumers continue to bear the bulk of the economic burden of the high tariffs imposed in 2025."[1] Indeed, the Federal Reserve Bank of New York found that "nearly 90 percent of the tariffs' economic burden fell on U.S. firms and consumers" rather than foreign exporters. Although the stated purpose of the Tariff Executive Orders was to address international trade deficits

[1] Mary Amiti, Chris Flanagan, Sebastian Heise, and David E. Weinstein, *Who is Paying for the 2025 U.S. Tariffs?*, Federal Reserve Bank of New York (Feb. 12, 2026), https://libertystreeteconomics.newyorkfed.org/2026/02/who-is-paying-for-the-2025-u-s-tariffs/.

and other national-emergency concerns, the economic burden of the tariffs was substantially passed on to American consumers in the form of increased retail prices.

6. When goods are imported into the United States, the United States Customs and Border Protection ("CBP") assesses and collects tariffs on those goods based on the Harmonized Tariff Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through administrative protest under 19 U.S.C. § 1514, refund under 19 U.S.C. § 1520, judicial action in the U.S. Court of International Trade under 28 U.S.C. § 1581(i), or, with respect to IEEPA-related tariffs, through CBP's Consolidated Administration and Processing of Entries ("CAPE") portal launched on April 20, 2026.

7. Defendant paid IEEPA tariffs when it imported the products Plaintiffs and similarly situated consumers purchased. To offset the cost of paying IEEPA tariffs, Defendant passed those costs on to Plaintiffs and similarly situated consumers by inflating the prices of its products.

8. On February 20, 2026, the United States Supreme Court held that the IEEPA does not authorize the President to impose the tariffs at issue. *Learning Res., Inc. v. Trump*, 607 U.S. ___, 2026 WL 477534 (2026) (Nos. 24-1287 and 25-250) (aff'g *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade), aff'd in part and rev'd in part, 149 F.4th 1312 (Fed. Cir. 2025)).

9. As a result, any IEEPA tariffs charged to Defendant were unlawful for lack of statutory authorization, and Defendant is entitled to seek a refund for any tariffs it paid pursuant to the Tariff Executive Orders through either litigation in the U.S. Court of International Trade, the CAPE refund process, or other administrative refund procedures. Indeed, ON has already

received substantial refunds of IEEPA tariffs it paid and Defendant remains entitled to seek recovery of additional amounts.

10. On February 24, 2026—four days after *Learning Resources* was decided—Defendant ON Inc. itself filed a protective refund action in the U.S. Court of International Trade. *On Inc. v. United States*, Court No. 26-01178 (Ct. Int'l Trade Feb. 24, 2026). In that pleading, ON Inc. affirmatively alleges, under Federal Rule of Civil Procedure 11, that it is the importer of record of entries that entered the United States subject to duties imposed by various Executive Orders pursuant to IEEPA, that it has "deposited" and paid such IEEPA tariffs to CBP, and that it "is entitled to a refund of the IEEPA tariffs that it paid to Customs." ON Inc. seeks reliquidation of its entries and refund of "all IEEPA tariffs that it paid, with all interest as provided by law." *On Inc. v. United States*, No. 26-01178, Compl. ¶¶ 1, 12, 22, 30 & Prayer (Ct. Int'l Trade Feb. 24, 2026).

11. The case was stayed on February 26, 2026 pursuant to Administrative Order 25-02. Defendant's own pleading confirms that Defendant is the importer of record for ON-branded goods imported into the United States, that Defendant paid IEEPA tariffs to CBP on those goods, and that Defendant is actively pursuing refunds of those tariffs.

12. Additionally, in its Quarterly Report on Form 6-K filed with the Securities and Exchange Commission on or about May 13, 2026 (Exhibit 99.2, Management's Discussion and Analysis for the Quarter Ended March 31, 2026), ON Holding AG separately disclosed that as of March 31, 2026, ON had paid approximately CHF 55 million in IEEPA tariffs to U.S. Customs and Border Protection that may be refundable, although ON acknowledged the timing, availability, and amount of any such refunds remained uncertain.

13. However, Defendant has already passed its unlawful IEEPA tariff burdens onto Plaintiffs and the Class Members by charging elevated prices that incorporated its tariff burden. Plaintiffs and the Class Members were thereby deprived of money paid to Defendant for unlawful IEEPA tariffs.

14. Although Defendant has affirmatively sought refunds of the IEEPA tariffs it paid through the protective action it filed in the U.S. Court of International Trade, *see supra* ¶ 10, Defendant has made no public commitment to return any portion of those anticipated (and now received) tariff refunds to the consumers who, through elevated prices, bore the economic burden of those tariffs. To the contrary, on its March 3, 2026 fourth-quarter and full-year 2025 earnings call—eleven days after the Supreme Court's *Learning Resources* decision—ON Holding AG's Chief Executive Officer and Chief Financial Officer Martin Hoffmann told analysts that ON's 2026 gross margin guidance "is still embedded on the 20%" tariff. Public reporting and analyst transcripts of that call further characterized Defendant's position as treating any anticipated tariff refunds as "upside" not included in its current profit projections.

15. Crucially, as of August 11, 2026, ON had actually received approximately CHF 27.9 million in IEEPA tariff refunds.[2]

16. As a result—and when Defendant receives further refunds for the IEEPA tariffs—Defendant has already received a windfall as a result of already having charged consumers for the collection of unlawful IEEPA tariffs. Defendant's retention of money obtained from charging consumers for IEEPA tariffs offends public policy, is oppressive, and causes substantial injury to consumers by depriving them of the cost of the unlawful IEEPA tariffs.

[2] https://ebs.publicnow.com/view/068062A4407FF6298262AB8403389EDE55222DE8; see also ON Holding AG's August 11, 2026 SEC filing.

17. The value of IEEPA tariff refund claims is not merely speculative. Even before the Supreme Court issued its decision in *Learning Resources*, a robust secondary market had emerged in which distressed investors and hedge funds have purchased IEEPA tariff refund claims from importers at a discount in exchange for immediate liquidity.[3] Industry analysts have estimated that the secondary market for IEEPA tariff refund claims could swell to approximately $100 billion in aggregate value.

18. The existence and active trading of these claims confirms that the tariff refunds Defendant is positioned to recover represent concrete, quantifiable economic value—not hypothetical future benefits. Moreover, ON's actual receipt of approximately CHF 27.9 million in IEEPA tariff refunds further confirms that this economic benefit has already materialized, at least in substantial part.

19. Other corporations in Defendant's same position have enacted tariff refund programs to compensate their customers who paid higher prices for products and thus bore the burden of pass-through tariff costs.[4] For example, on UPS's April 29, 2026 first-quarter 2026 earnings call, UPS's Chief Executive Officer Carol Tomé stated that approximately "$5 billion will become available from the tariff refunds" and that "as soon as we get that money, we're going to remit it right back to our customers." FedEx separately stated it would refund corresponding tariff costs to its customers. Defendant could have enacted a similar payback program for Plaintiffs and the Class Members yet chose not to.

---

[3] Vito Emanuel, *Wall Street Is Betting on Tariff Refunds After Supreme Court Ruling*, NPR (Mar. 5, 2026), https://www.npr.org/2026/03/05/nx-s1-5736120/tariff-refunds-wall-street-trade.

[4] Jeannette Neumann, *Cards Against Humanity to Give Tariff Refunds to Buyers Who "Overpaid,"* Crain's Chicago Business (Feb. 25, 2026), https://www.chicagobusiness.com/consumer-products/cards-against-humanity-give-tariff-refunds/. See also *UPS, FedEx will give tariff refunds back to customers that could be worth more than $5 billion*, Fortune (Apr. 29, 2026), https://fortune.com/2026/04/29/fedex-ups-pledging-tariff-refunds-back-to-customers/.

20. At minimum, once IEEPA tariff refunds, reliquidation, or other recovery became available, Defendant's retention of tariff-related amounts paid by consumers became unfair, oppressive, and substantially injurious because Defendant retained the benefit of the tariff-related amounts passed through to consumers while receiving, or retaining the right to receive, corresponding refunds, reliquidation, or other recovery from the government.

21. Accordingly, Plaintiffs bring this action individually and on behalf of similarly situated individuals to seek redress for violations of the Oregon Unlawful Trade Practices Act ("UTPA"), as well as common law unjust enrichment and money had and received, and for such other equitable and legal relief as is appropriate, including the imposition of a constructive trust over any IEEPA tariff refund proceeds Defendant receives from the United States.

**PARTIES, JURISDICTION & VENUE**

22. Plaintiff Linda Norberg is a resident of the State of Iowa. Plaintiff Norberg purchased ON-branded products that were subject to a tariff-related price increase directly tied to IEEPA tariffs that ON paid and passed through to her.

23. Plaintiff Dora Rich is a resident of the State of Oregon. Plaintiff Rich purchased an ON-branded product that was subject to a tariff-related price increase directly tied to IEEPA tariffs that ON paid and passed through to her.

24. Defendant ON Inc. is a Delaware corporation registered with the Oregon Secretary of State as a foreign business corporation (Oregon Registry Number 978700-92). Its initial Oregon registration date was November 20, 2013. Its principal place of business and mailing address is 1250 NW 9th Avenue, Floors 4 and 5, Portland, Oregon 97209. ON Inc.'s current officers of record include Dan Schade as President and Liesl Nebel as Secretary, and its registered

agent for service of process in Oregon is FileJet Inc., 401 NE 19th Avenue, Suite 200F, Portland, Oregon 97232.

25. ON Inc. is the U.S. operating subsidiary of ON Holding AG, a Swiss publicly traded company listed on the New York Stock Exchange under ticker symbol "ONON," which files annual reports on Form 20-F as a foreign private issuer with the U.S. Securities and Exchange Commission (CIK 0001858985).

26. ON Inc. is responsible for the importation, pricing, marketing, distribution, and sale of products sold under the "On" brand in the United States, including the shoes that Plaintiffs purchased. As confirmed by ON Inc.'s own February 24, 2026 pleading in *On Inc. v. United States*, Court No. 26-01178 (Ct. Int'l Trade), ON Inc. is the importer of record for ON-branded products imported into the United States from countries subject to IEEPA tariffs, including Vietnam and Indonesia, and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports.

27. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

28. As ON has separately disclosed in its Q1 2026 SEC filing, it had paid approximately CHF 55 million in IEEPA tariffs as of March 31, 2026, which on its own substantially exceeds the CAFA amount-in-controversy threshold. Additionally, ON Holding AG's Quarterly Report on Form 6-K for the third quarter ended September 30, 2025 reports that the "Americas" operating segment (in which Defendant's United States operations are by far the largest

component) generated net sales of approximately CHF 1.3 billion for the nine months ended September 30, 2025.

29. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendant's obligation to return to the consumers who paid them the IEEPA duties and fees Defendant collected, as well as any IEEPA duty refunds Defendant recovers from the United States.

30. This Court has personal jurisdiction over Defendant. ON Inc. is "at home" in Oregon for purposes of general personal jurisdiction under *Daimler AG v. Bauman*, 571 U.S. 117 (2014), because its principal place of business is located in Portland, Oregon, and ON Inc. has been registered to do business in Oregon since November 20, 2013. Independent of general jurisdiction, ON Inc. has purposefully availed itself of the privilege of conducting business activities in Oregon, is registered with the Oregon Secretary of State as a foreign business corporation transacting business in the State and has maintained a registered agent for service of process in Oregon at all relevant times.

31. Venue is proper under 28 U.S.C. § 1391 because Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

## COMMON FACTS

### Defendant's Business Model and Supply Chain

32. Defendant advertises, markets, sells, and distributes consumer products throughout the United States in physical retail stores, through ON's website, and on ON's mobile application.

33. Per ON Holding AG's Quarterly Report on Form 6-K filed with the Securities and Exchange Commission on November 12, 2025 (Exhibit 99.2, Management's Discussion and Analysis of Financial Condition and Results of Operations for the Third Quarter Ended September 30, 2025), during the nine months ended September 30, 2025, approximately 90% of ON's footwear products were produced in Vietnam, with the remaining 10% produced in Indonesia. Approximately 65% of ON's apparel and accessories products were produced in Vietnam, 25% in Turkey, 5% in China, and 5% in the rest of Europe.

34. During that same period, the U.S. market accounted for approximately 51% of ON's total net sales. ON Inc. is the importer of record for ON-branded products entering the United States, and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports, as ON Inc. itself confirmed in its February 24, 2026 pleading in *On Inc. v. United States*, No. 26-01178 (Ct. Int'l Trade).

35. Upon information and belief, the products Plaintiffs purchased throughout the Class Period were imported from abroad either during or after the IEEPA tariff period and were subject to IEEPA tariffs when imported.

**Defendant's Pass-Through of IEEPA Tariffs to Consumers**

36. For purposes of this Complaint, the "Class Period" is defined as February 4, 2025 through February 24, 2026, the period during which the IEEPA Tariff Executive Orders were in effect, beginning on the effective date of the first such order and ending on February 24, 2026, by which date Defendant had publicly acknowledged its entitlement to refunds of the IEEPA tariffs by filing a protective refund action in the U.S. Court of International Trade.

37. During the Class Period, Defendant charged retail prices inflated by the cost of IEEPA duties by raising prices on ON's consumer products. Defendant's parent company, ON Holding

AG, disclosed in its Quarterly Report on Form 6-K filed with the SEC on August 12, 2025 (and confirmed in its Quarterly Report on Form 6-K filed November 12, 2025) that "[t]he tariffs imposed since April 2025, including [the executive order signed July 31, 2025], have increased the costs of products we source from outside the US and subsequently sell within the US." Independent analysis by Telsey Advisory Group, as reported by CNBC on October 6, 2025, found that approximately 50% of Defendant's U.S. footwear volumes saw a $10 retail price increase in July 2025—a level twice the $5 average increase observed on comparable Nike products during the same period.

38. ON Holding AG's Q1 2026 SEC Form 6-K (filed May 12, 2026) further confirmed that increased import duties in the United States remained a real and material cost factor for Defendant during the first quarter of 2026, expressly identifying those import duties as a counterbalance to other margin improvements.

39. Defendant's implementation of those tariff-driven price increases was publicly reported. On August 12, 2025, CNBC reported that ON "raised prices in July to offset the impact of new tariffs on Vietnamese imports." Defendant's parent company, ON Holding AG, has separately disclosed in its SEC filings that approximately 90% of its footwear is sourced from Vietnam. In contemporaneous interviews, ON's then-Chief Executive Officer, Martin Hoffmann confirmed that Defendant had implemented these price increases beginning July 1, 2025, in direct response to the IEEPA tariffs.

40. On its Q4 2025 and full-year 2025 earnings call held on March 3, 2026—eleven days after the Supreme Court's *Learning Resources* decision—Hoffmann told analysts that ON's 2026 gross margin guidance "is still based on the tariff regime that we have seen before the Supreme Court ruling" and "is still embedded on the 20%" tariff rate. Hoffmann further

stated that "if we are now seeing that the 15% or 10% incremental tariffs are becoming the new norm, there is even upside to the guidance that we have given."

41. Public reporting and analyst transcripts based on On Holding Q4 2025 Earnings Call further summarized Defendant's position by stating that ON's "2026 gross margin guidance incorporates 20% tariffs; any changes or refunds could provide further upside not included in current projections." Plaintiffs allege these statements support the inference that (i) Defendant had embedded the cost of the IEEPA tariffs into its consumer pricing, (ii) Defendant anticipated receiving refunds of those tariffs, and (iii) Defendant expected to retain such refunds as "upside" to its profit guidance rather than returning them to the consumers who bore the costs.

42. During Defendant's May 13, 2025 first-quarter 2025 earnings call, Defendant's leadership announced price increases on selected U.S. styles to begin with the fall/winter season, intended in part to offset tariff impacts. During the same call, ON Holding AG's Co-Founder and Executive Co-Chairman Caspar Coppetti separately noted during 2025 product launches that the Cloud 6 footwear launch had been conducted at approximately $10 higher in the base model price point, that ON had "not seen any price sensitivity on the demand side" as a result.

43. Accordingly, the magnitude and structure of Defendant's tariff-related price increases support that Defendant did not merely pass through its actual incremental tariff expense dollar-for-dollar, but used the tariffs as a basis to impose price increases that equaled or exceeded its actual tariff burden on affected products. Independent market analysis found that approximately half of Defendant's U.S. footwear volume experienced a $10 retail price increase, approximately twice the average increase observed for comparable Nike footwear

during the same tariff environment. To the extent Defendant represented that these increases were necessary to offset tariff costs, while imposing increases exceeding the corresponding tariff expense attributable to the affected products, Defendant misrepresented its cost and the basis for its offering price.

44. Upon information and belief, Defendant's pricing decisions affecting its wholesale prices to authorized retailers (including Dick's Sporting Goods), manufacturer's suggested retail prices, and minimum advertised pricing for ON-branded products were influenced by anticipated and actual IEEPA tariff costs beginning in or around February 2025, when the first IEEPA Executive Orders were issued, and continuing throughout the Class Period. Defendant establishes wholesale prices and manufacturer-recommended retail price points for ON-branded footwear and other clothing products sold through authorized retailers, including Dick's Sporting Goods, and employs pricing policies and practices intended to promote consistent retail positioning of ON products across authorized sales channels. For instance, publicly observable pricing of ON footwear at major authorized retailers, including Dick's Sporting Goods, reflects substantial consistency with ON's established model-specific retail price points. Accordingly, increases implemented by Defendant in its wholesale and recommended retail pricing predictably flowed through to the prices paid by consumers purchasing through authorized retailers.

45. Throughout the Class Period, Defendant passed the cost of IEEPA tariffs onto consumers, including Plaintiffs and Members of the Class, by inflating the prices of goods it sold.

46. Throughout the Class Period, Plaintiffs purchased ON-branded shoes directly from Defendant's ON-store and from Dick's Sporting Goods, an authorized retailer of Defendant's products. For those transactions, Defendant set or directly influenced the prices charged

Case 3:26-cv-00325-JR Document 7-16 Filed 09/21/26 Page 20 of 38

through its wholesale pricing, manufacturer's suggested retail pricing, minimum advertised pricing, and other pricing practices, and embedded the cost of IEEPA tariffs into those prices.

**Plaintiffs' ON Transactions**

47. Within the Class Period, Plaintiff Linda Norberg purchased her items from authorized retailers of ON-branded products through Dick's Sporting Goods website.

48. Plaintiff Norberg made purchases of Defendant's products on June 19, 2025 and on August 17, 2025, including ON Women's Cloudrunner 2 Running Shoes for $149.99 (excluding tax) and ON Men's Cloudmonster Shoes for $169.99 (excluding tax), respectively. Both purchases were made through the Dick's Sporting Goods website during the Class Period and during the period that the IEEPA tariffs were in effect. The June 19, 2025 purchase was made approximately ten weeks after the 10% baseline IEEPA reciprocal tariff took effect on April 5, 2025, and during the period when, upon information and belief, Defendant's wholesale prices, manufacturer's suggested retail prices, and minimum advertised pricing for ON-branded footwear products had been adjusted upward in anticipation of and in response to the IEEPA tariff regime. The August 17, 2025 purchase was made nine days after the additional 20% reciprocal IEEPA tariff on imports from Vietnam took effect on August 8, 2025, and forty-seven days after Defendant publicly implemented its July 1, 2025 U.S. price increases.

49. On information and belief, Dick's Sporting Goods was and continues to be an authorized retailer of ON products, and the price Plaintiff Norberg paid for the Cloudmonster shoes and the Cloudrunner 2 shoes reflected Defendant's tariff-related pricing decisions, including wholesale pricing, MSRP, minimum advertised pricing, or other pricing practices set, influenced, or implemented by Defendant. In fact, publicly observable pricing of ON

footwear at major authorized retailers, including Dick's Sporting Goods, reflects substantial, if not identical, consistency with ON's established model-specific retail price points.

50. Within the Class Period, Plaintiff Dora Rich purchased her item directly from Defendant at ON's flagship retail store in Portland, Oregon located at 529 NW 23rd Ave, Portland, OR 97210.

51. Plaintiff Dora Rich made a purchase of Defendant's footwear in January 2026, including ON Cloud 6 Coast Women's Shoes for $170.00 (excluding tax). The purchase was made during the Class Period and during the period that the IEEPA tariffs were in effect. Defendant itself offered the product for sale, established the retail price charged to Plaintiff Rich, accepted Plaintiff Rich's payment, and directly received and retained the proceeds of the transaction.

52. On information and belief, the ON Men's Cloudmonster Shoes, the ON Women's Cloudrunner 2 Running Shoes, and ON Cloud 6 Coast Shoes, Plaintiffs purchased were imported from Vietnam (or another country subject to IEEPA tariffs) by or for Defendant during the period in which those tariffs were in effect. The product-level import origin, importer-of-record information, tariff classification, entry data, duty-payment records, and any records reflecting whether IEEPA tariff costs were incorporated into retail pricing are within Defendant's possession, custody, or control, and Defendant has confirmed its status as importer of record for ON-branded goods in its February 24, 2026 pleading in *On Inc. v. United States*, No. 26-01178 (Ct. Int'l Trade).

53. Defendant paid IEEPA tariffs on the items that Plaintiffs purchased and embedded the cost of those tariffs in the prices charged to Plaintiffs. But for ON's pass-through of IEEPA tariff costs, Plaintiffs would have paid lower prices for the products they purchased.

54. Defendant's retention of the unlawful IEEPA tariff costs that were passed on to Plaintiffs and the Class Members offends public policy as it is unconscionable and unfair for Plaintiffs and similarly situated consumers to shoulder Defendant's tax burden under the IEEPA tariffs when those tariffs were unlawful and should not have been collected.

55. As a result of Defendant's practice of passing on tariff costs to its customers, Plaintiffs and the Class Members were forced to pay Defendant's tax burdens because Defendant passed the unlawful IEEPA tariffs on to them.

56. Plaintiffs and the members of the Class have unequal bargaining power with Defendant and were unable to negotiate the payment of the unlawful IEEPA tariffs from Defendant, and therefore Plaintiffs and the Class members could not avoid paying the unlawful IEEPA tariffs.

57. Had Plaintiffs known that the prices Defendant charged or caused to be charged included amounts attributable to IEEPA tariffs that lacked statutory authorization and were subject to pending judicial challenges and had already been judicially determined to be unlawful before Plaintiffs' respective purchases, and that Defendant could recover those same tariff payments from the United States while retaining the corresponding amounts incorporated into consumer prices, Plaintiffs would not have purchased the products at the prices charged, would have paid less for them, or would have purchased alternative products. Those facts were material to Plaintiffs and to a reasonable consumer's purchasing decision.

58. Allowing Defendant to keep the proceeds of the unlawful IEEPA tariff charges deprives Plaintiffs and Members of the Class of the money paid for the cost of the unlawful IEEPA tariffs while providing nothing of value to Plaintiffs or the Class's Members.

59. But for Defendant charging Plaintiffs and the Members of the Class the cost of the unlawful IEEPA tariffs, Plaintiffs and the Members of the Class would not have needed to shoulder the cost of the unlawful IEEPA tariffs.

**Defendant's Receipt of Tariff Refunds and Resulting Double Recovery**

60. On March 4, 2026, Senior Judge Richard K. Eaton of the U.S. Court of International Trade issued a significant order in *Atmus Filtration, Inc. v. United States*, directing U.S. Customs and Border Protection to refund duties imposed under IEEPA. *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026) (Eaton, J.).

61. The Court of International Trade in *Atmus* reinforced that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Supreme Court's decision in *Learning Resources*. The Court ordered CBP to liquidate all unliquidated entries "without regard to IEEPA duties" and to reliquidate any liquidated entries for which liquidation is not final without regard to those duties. On March 27, 2026, the court issued an amended order expanding that directive to additional entry categories. On April 6, 2026, *Atmus Filtration* was voluntarily dismissed, and the court immediately designated *Euro-Notions Florida, Inc. v. U.S. Customs and Border Protection*, Court No. 25-00595 (Ct. Int'l Trade), as the new lead refund-supervision case, issuing a parallel order on April 7, 2026.

62. According to the sworn declaration of Brandon Lord, the Executive Director of the Trade Programs Directorate within the Office of Trade at U.S. Customs and Border Protection, filed in *Atmus Filtration* on March 6, 2026 (ECF No. 31), as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA was approximately $166 billion. *Atmus*, ECF No. 31 at ¶ 12.

63. On April 20, 2026, CBP launched the Consolidated Administration and Processing of Entries ("CAPE") portal within its Automated Commercial Environment system to administer refunds of IEEPA tariffs to importers of record, with interest at the statutory rate. As of May 11, 2026, CBP had processed approximately $35.46 billion in IEEPA tariff refunds through CAPE, and the refund program continues to expand. As the importer of record for ON-branded products imported into the United States during the Class Period, Defendant is eligible to file CAPE refund claims and to receive substantial refunds of the IEEPA tariffs it paid.

64. Accordingly, Defendant is entitled to substantial refunds for IEEPA tariffs it paid as the importer of record for goods sourced from Vietnam, Indonesia, and other countries subject to IEEPA tariffs, and has affirmatively sought such refunds in *On Inc. v. United States*, No. 26-01178 (Ct. Int'l Trade Feb. 24, 2026).

65. To date, Plaintiffs are unaware of any public commitment by Defendant to establish any mechanism to refund to consumers the tariff costs Defendant passed through to them via elevated prices and import charges during the Class Period. To the contrary, ON's then-Chief Executive Officer, Martin Hoffmann publicly stated in March 2026 that any tariff-refund proceeds would be reinvested in Defendant's business rather than passed on to consumers.[5]

66. Crucially, ON has now actually received substantial IEEPA tariff refunds. In ON Holding AG's August 11, 2026 SEC filing, ON disclosed that, as of June 30, 2026, it had paid approximately CHF 55.6 million in IEEPA tariffs and had already submitted approximately CHF 52.7 million of those tariffs to CBP for refund processing. ON further disclosed that, "[a]s of August 11, 2026, we received approximately CHF 27.9 million in IEEPA tariff

---

[5] See, e.g. https://brandequity.economictimes.indiatimes.com/news/business-of-brands/sportswear-brand-on-sees-possible-boost-from-lower-us-tariff-rate/129007975

refunds," which it will recognize in the third quarter of 2026. Significantly, ON further disclosed that, as of June 30, 2026, "the majority of the potential refund relates to inventory already sold."

67. This presents an obvious problem: Although Defendant has already recovered, and is positioned to recover additional, tariff refunds on the tariffed goods it sold, Defendant's customers have already borne the economic brunt of these tariffs by paying higher prices set by Defendant. The risk of Defendant obtaining double recovery is therefore not merely hypothetical and imminent: it's already happening.

68. Defendant has now been paid twice, or has obtained two corresponding economic benefits, with respect to at least a substantial portion of the same tariff burden: once by its customers (including Plaintiffs) through elevated prices and import charges, and again through the approximately CHF 27.9 million in IEEPA tariff refunds ON had received as of August 11, 2026.

**CLASS ACTION ALLEGATIONS**

69. Plaintiffs bring their claims individually and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

70. **Class:** All persons in the United States who, between February 4, 2025 and February 24, 2026, purchased one or more ON-branded footwear or apparel products from a retail or online channel at a price set, established, or directed by Defendant during that period. Plaintiffs reserve the right to seek certification of an Oregon-resident subclass for the UTPA claim and a nationwide subclass for the common-law claims if necessary or appropriate.

71. Excluded from the Class are: (1) Defendant; (2) Defendant's officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded

Case 3:26-cv-00325-JR Document 75-18 Filed 09/21/26 Page 26 of 38

person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their families; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants.

72. **Numerosity.** The proposed class contains members so numerous that separate joinder of each member of the class is impracticable. Upon information and belief, there are at least hundreds of thousands of proposed class members. The individuals who purchased ON-branded products during the Class Period can be ascertained through records in the possession, custody, or control of Defendant and its authorized retailers.

73. **Commonality and Predominance.** There are questions of fact and law common to the class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

- Whether Defendant paid IEEPA tariffs on products sold to consumers during the Class Period;
- Whether Defendant passed IEEPA tariff costs onto consumers through elevated prices;
- Whether Defendant's retention of the unlawful IEEPA tariffs paid by Plaintiffs and the Class Members is unlawful, deceptive, unfair, unethical and unscrupulous;
- Whether Defendant misled consumers regarding pricing and tariff pass-through;
- Whether Defendant violated the Oregon Unlawful Trade Practices Act through its misrepresentations and omissions regarding pricing and tariff pass-through;
- Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

- Whether Defendant has been or will be unjustly enriched by receiving government refunds for tariffs it passed through to consumers;
- Whether any IEEPA tariff refunds received by Defendant from the United States are held in constructive trust for the benefit of the Class; and
- Whether the Class members are entitled to restitution, actual damages, statutory damages, and attorneys' fees and costs.

74. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of all Class Members. Plaintiffs understand the obligations inherent in representing a putative class, and the corresponding duties. Plaintiffs have retained counsel competent and experienced in complex and class action litigation. Plaintiffs have no interests antagonistic to the Class's interests, and Defendant has no defenses unique to Plaintiffs.

75. **Typicality.** Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class purchased ON-branded products at prices that incorporated the cost of IEEPA tariffs Defendant paid and passed through to consumers. Plaintiffs' claims and the claims of all members of the Class arise from the same course of conduct by Defendant—namely, Defendant's pass-through of unlawful IEEPA tariff costs to consumers through elevated prices and Defendant's retention of both those tariff-pass-through payments and the corresponding refund rights or proceeds.

76. **Rule 23(b)(2) Basis.** Defendant has acted on grounds generally applicable to the Class by uniformly pricing ON-branded products to incorporate IEEPA tariff costs and by uniformly retaining the corresponding refund rights or proceeds. Final declaratory relief, including a declaration that any IEEPA tariff refunds Defendant receives are held in constructive trust for

the Class, and corresponding injunctive relief prohibiting dissipation, transfer, or commingling of those proceeds are therefore appropriate with respect to the Class as a whole.

77. **Appropriateness and Superiority**. This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT

## ORS 646.605 *et seq.*

## (ON BEHALF OF PLAINTIFFS AND THE CLASS)

78. Plaintiffs incorporate the foregoing allegations as if fully stated herein.

79. ON is a “person” engaged in “trade” or “commerce” within the meaning of the Oregon Unlawful Trade Practices Act, ORS 646.605 *et seq.* (the “UTPA”).

80. ON engaged in the conduct complained of throughout this complaint at its headquarters in Portland, Oregon, located at 1250 NW 9th Avenue, Floors 4 and 5, and its decisions and conduct uniformly impacted residents of Oregon and residents throughout the United States.

81. ON engaged in unlawful trade practices in violation of ORS 646.608 in connection with the sale of consumer goods, including the ON Women’s Cloudrunner 2 Running Shoes, ON Men’s Cloudmonster Shoes and ON Cloud 6 Coast Shoes purchased by Plaintiffs, under, *inter alia*, the following provisions of ORS 646.608(1):

(a) ORS 646.608(1)(e), in that ON represented through its pricing decisions and contemporaneous public statements that the prices charged for ON-branded products reflected lawfully imposed and lawfully collectible tariff costs, when in fact the IEEPA tariffs giving rise to those price increases were imposed without statutory authority and were subject to ongoing legal challenges;

(b) ORS 646.608(1)(s), in that ON made false or misleading representations of fact concerning the reasons for the prices it charged, by attributing tariff-driven price increases to lawfully imposed tariffs while concealing that those tariffs were of questionable legal validity and could result in refunds payable to ON; and further, to the extent ON represented that its price increases were necessary to offset increased tariff costs while imposing price increases that exceeded the corresponding tariff expense attributable to affected products, ON made false or misleading representations concerning its costs and the basis for the offering prices of its goods.

(c) ORS 646.608(1)(t), in that ON failed to disclose, concurrent with the tender or delivery of its goods, the material fact that the prices charged reflected IEEPA tariffs that were the subject of pending legal challenge and that, if the tariffs were invalidated, ON would be entitled to refunds while consumers would not.

82. ON's conduct constitutes unfair, unconscionable, and deceptive acts and practices in trade or commerce. ON engaged in unfair and deceptive acts by: (i) making false or misleading representations concerning its costs and the basis for tariff-related price increases, including by attributing price increases to tariff costs that, upon information and belief, did not correspond to or exceeded ON's actual incremental tariff expense; (ii) charging customers retail prices that incorporated an unlawful IEEPA tariff-related cost component; and (iii) retaining tariff refunds despite having passed the costs to its customers. ON's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.

83. ON knew or acted with reckless disregard for the fact that at the time it imposed tariff-driven price increases on consumers the IEEPA tariffs were of questionable legality. On May 28, 2025, a three-judge panel of the U.S. Court of International Trade ruled the IEEPA tariffs unlawful in *V.O.S. Selections, Inc. v. United States*. On August 29, 2025, the U.S. Court of Appeals for the Federal Circuit, sitting en banc, affirmed that ruling in a 7-4 decision, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025). Throughout 2025 and continuing through February 24, 2026, numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature. Defendant's own parent company, ON Holding AG, publicly disclosed in successive SEC filings that the IEEPA tariffs were increasing the cost of products it sourced from outside the United States and sold within the

United States, and that ON intended to mitigate the impact through pricing and other measures. ON imposed and maintained tariff-driven price increases throughout the period when the legality of the IEEPA tariffs was being adjudicated and after the Federal Circuit's en banc affirmance.

84. ON's conduct also constitutes unfair business acts and practices because it caused substantial injury to consumers that was not reasonably avoidable by those consumers—who had no meaningful ability to contest or avoid tariff-related price components embedded in Defendant's retail and wholesale pricing at the point of purchase—and the harm to consumers is not outweighed by any countervailing benefit to consumers or competition.

85. Plaintiffs and members of the putative Class suffered an ascertainable loss of money as a direct result of ON's unlawful trade practices, having paid tariff-inflated prices for ON products that would not have been imposed absent the unlawful IEEPA tariff regime. As alleged above, had Plaintiffs known the omitted material facts concerning Defendant's tariff-related pricing, the legal status and ongoing challenges to the tariffs, and Defendant's ability to recover the corresponding tariff payments while retaining the amounts incorporated into consumer prices, Plaintiffs would not have purchased the products at the prices charged, would have paid less, or would have purchased alternative products.

86. Plaintiffs and members of the putative Class are entitled to recover the greater of their actual damages or statutory damages of $200 per Class member under ORS 646.638(1), attorney fees, and costs as available under the Oregon Unlawful Trade Practices Act, including ORS 646.638.

**COUNT II**

**Unjust Enrichment**

**(on behalf of Plaintiffs and the Class)**

87. Plaintiffs incorporate the foregoing allegations as if fully stated herein.

88. Oregon recognizes restitution for unjust enrichment where, under the circumstances of the particular case and established principles of equity and restitution, a defendant has received and retained a benefit that it would be unjustified for the defendant to retain. *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 127–28, 404 P.3d 912 (2017).

89. Plaintiffs and the members of the Class conferred monetary benefits to Defendant by paying elevated prices for products that included unlawful IEEPA tariff costs.

90. As to Plaintiff Dora Rich, the monetary benefit was conferred directly upon Defendant. Plaintiff Dora Rich purchased ON-branded footwear directly from Defendant at Defendant's Portland flagship retail store, and paid Defendant directly for the purchase. Defendant directly received and retained that payment, including the portion of the purchase price attributable to Defendant's pass-through of IEEPA tariff costs. No third-party retailer intervened between Plaintiff Dora Rich and Defendant in this transaction.

91. Defendant has been unjustly enriched because it collected and retained retail payments from Plaintiffs and the Class that included amounts attributable to IEEPA tariff costs, while also obtaining the benefit of IEEPA tariff refunds attributable to tariffs Defendant paid, including amounts encompassed within the approximately CHF 27.9 million in IEEPA tariff refunds reported by ON as having been received as of August 11, 2026, and retaining the right to seek and receive additional refunds, credits, reliquidation, or other recovery from the government.

92. Defendant knew and appreciated the benefit it received because it set, charged, and retained retail prices that included tariff-related cost increases paid by Plaintiffs and the Class. At

minimum, after the Supreme Court's invalidation of the IEEPA tariffs and subsequent refund-related proceedings, Defendant knew or should have known that any refund or recovery of IEEPA duties would correspond to tariff costs that consumers had already economically borne through Defendant's prices.

93. Defendant's retention of these benefits is unjust and inequitable because ON has now actually received approximately CHF 27.9 million in IEEPA tariff refunds, which, upon information and belief, include refunds attributable to IEEPA tariffs paid by Defendant, while Defendant retains the tariff-related amounts previously collected through consumer prices and remains positioned to receive additional refunds. Importantly, Defendant is further positioned to retain both the tariff-related amounts collected from consumers and the corresponding refund rights or proceeds from the government, a circumstance Defendant itself has acknowledged in its February 24, 2026 pleading in *On Inc. v. United States*, No. 26-01178 (Ct. Int'l Trade), in which Defendant pleaded its entitlement to a refund of all IEEPA tariffs it paid.

94. The IEEPA tariffs were subsequently determined to lack statutory authorization, making the tariff payments refundable or recoverable by importers such as Defendant.

95. In Oregon, constructive trusts are remedies employed by courts to avoid unjust enrichment when no other adequate remedy is available. *Tupper v. Roan*, 349 Or. 211, 220–21, 243 P.3d 50 (2010). Any refund proceeds Defendant receives from CBP through the CAPE process or otherwise are traceable funds that, in equity, are held in constructive trust for the benefit of Plaintiffs and the Class.

96. There is no adequate remedy at law for Plaintiffs and the Members of the Class, as Defendant has established no mechanism to refund tariff costs to consumers, and consumers have no direct statutory cause of action to recover IEEPA tariffs from the government.

97. Under principles of equity and good conscience, it would be unjust to permit Defendant to retain both (a) the elevated prices consumers paid due to tariff pass-through pricing, and (b) government refunds of those same tariff costs.

98. Plaintiffs and the other members of the Class are entitled to restitution in the amount by which Defendant has been unjustly enriched, and an order requiring Defendant to disgorge any profits or other benefit it has retained as a result of its unjust and unlawful conduct, including the imposition of a constructive trust over any IEEPA tariff refund proceeds Defendant has received or may receive.

**COUNT III**

**Money Had and Received**

**(on behalf of Plaintiffs and the Class)**

99. Plaintiffs incorporate all of the allegations and statements made above as if fully stated herein.

100. Under Oregon law, money had and received is an alternative restitution theory available where a defendant has received money belonging in equity to the plaintiff. *Tupper v. Roan*, 349 Or. 211, 218–22, 243 P.3d 50 (2010).

101. This Count is pleaded in the alternative to Count II. While Count II (Unjust Enrichment) addresses the inequity of Defendant's retention of consumer overcharges already collected, this Count more particularly addresses Defendant's actual and anticipated receipt and

retention of government refund proceeds that, in equity, represent a return of costs that were economically borne by Members of the Class, not by Defendant.

102. Defendant received money from Plaintiffs and from each Member of the proposed Class in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

103. As to Plaintiff Dora Rich, Defendant received that money directly. Plaintiff Dora Rich purchased ON-branded footwear directly from Defendant at Defendant's Portland flagship retail store, and paid the purchase price directly to Defendant. Accordingly, no third-party retailer or other intermediary stood between Plaintiff Dora Rich's payment of the tariff-inflated purchase price and Defendant's receipt and retention of that money.

104. Defendant received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to U.S. Customs and Border Protection as duties on imported goods.

105. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization. *Learning Resources*, Slip Op. at 20.

106. ON has now actually recovered a substantial portion of the IEEPA tariffs it paid. As of August 11, 2026, ON had received approximately CHF 27.9 million in IEEPA tariff refunds, while approximately CHF 52.7 million of the CHF 55.6 million in IEEPA tariffs Defendant had paid as of June 30, 2026 had been submitted to CBP for refund processing. Defendant remains positioned to recover additional refunds through the CAPE refund process and the protective action Defendant filed in the Court of International Trade, *On Inc. v. United States*, No. 26-01178 (Ct. Int'l Trade Feb. 24, 2026). Upon information and belief, Defendant has not paid or distributed any portion of the refunds it has received to Plaintiffs or other consumers who bore the economic burden of the tariffs through elevated prices.

107. The money Defendant has recovered and may continue to recover from the government as IEEPA tariff refunds represents, in equity, a return of costs that were economically borne by Plaintiffs and the proposed Class through Defendant's tariff pass-through. ON itself has disclosed that the majority of its potential IEEPA tariff refund as of June 30, 2026 relates to inventory already sold.

108. Defendant has not returned this money to Plaintiffs or the Class.

109. In equity and good conscience, Defendant should not be permitted to retain the funds it recovers or recovered from the government as IEEPA tariff refunds. Those funds belong, in equity, to Plaintiffs and the Class, and Defendant is obligated to return them.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that the Court enter an order awarding the following relief as pled in the foregoing and judgment against Defendant as follows:

110. An Order certifying the Class, defining the Class as requested herein, appointing Plaintiffs as Class representatives, and appointing their counsel as Class counsel;

111. An award of the greater of actual damages or statutory damages of $200 per Class member under ORS 646.638(1), any actual, compensatory, and enhanced damages permitted to Plaintiffs and other Class Members, for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

112. An order declaring that any refund, credit, reliquidation proceeds, or settlement payment that Defendant receives or has received from U.S. Customs and Border Protection, the U.S.

Treasury, or any other governmental authority on account of IEEPA tariffs paid during the Class Period is held in constructive trust for the benefit of Plaintiffs and the Class, and an order enjoining Defendant from dissipating, transferring, commingling, or otherwise diminishing such refund proceeds pending final judgment in this action;

113. An equitable accounting of all IEEPA-related duties paid by Defendant during the Class Period, all CAPE refund applications and other refund requests submitted by Defendant to U.S. Customs and Border Protection, and all refund proceeds received or anticipated to be received by Defendant;

114. An award of reasonable attorneys' fees, costs, and other litigation expenses;

115. An award of pre- and post-judgment interest as available under law;

116. The disgorgement of any funds in the amount Defendant was unjustly enriched by its conduct; and

117. Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: August 21, 2026

Respectfully submitted,

LINDA NORBERG and DORA RICH, individually and on behalf of others similarly situated.

By: /s/ Andrew T. Heldut

Rick Klingbeil, OSB #933326
RICK KLINGBEIL, PC
1826 NE Broadway
Portland, OR 97232
Tel: (503) 490-6763
rick@klingbeil-law.com

Brady Mertz, OSB #970814
BRADY MERTZ, PC
685 Church St. NE
Salem, OR 97301
Tel: (503) 385-0121

brady@bradymertz.com

Myles McGuire, Pro Hac Vice
Andrew T. Heldut, Pro Hac Vice
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
aheldut@mcgpc.com

*Attorneys for Plaintiffs and the putative Class*