# Exhibit F

Query Reports Utilities Help Log Out

ACCO,(CTSx),DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
# CIVIL DOCKET FOR CASE #: 8:26-cv-01635-DOC-CTS

Maximilian Mann v. Valero Energy Corporation et al
Assigned to: Judge David O. Carter
Referred to: Magistrate Judge Christina T. Shay
Demand: $5,000,000
Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 06/24/2026
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Maximilian Mann**
*individually and on behalf of similarly situated individuals*

represented by **Yevgeniy Y. Turin**
McGuire Law, P.C.
680 East Colorado Boulevard, Suite 180
Pasadena, CA 91101
312-893-7002
Email: eturin@mcgpc.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Valero Energy Corporation**
*a Texas Corporation*

represented by **Rachel Anna Beck**
Faegre Drinker Biddle and Reath LLP
1500 K Street NW, Suite 1100
WASHINGTON, DC 20005
913-530-5495
Email: rachel.beck@faegredrinker.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Belcher**
Faegre Drinker Biddle and Reath LLP
1800 Century Park East, Suite 1500
Los Angeles, CA 90067
310-203-4000
Fax: 310-229-1285
Email: david.belcher@faegredrinker.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Valero Marketing and Supply Company**
*a Delaware Corporation*

represented by **Rachel Anna Beck**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Belcher**

(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/24/2026 | 1 | COMPLAINT Receipt No: ACACDC-42622744 - Fee: $405, filed by Plaintiff Maximilian Mann. (Attorney Yevgeniy Y. Turin added to party Maximilian Mann(pty:pla))(Turin, Yevgeniy) (Entered: 06/24/2026) |
| 06/24/2026 | 2 | CIVIL COVER SHEET filed by Plaintiff Maximilian Mann. (Turin, Yevgeniy) (Entered: 06/24/2026) |
| 06/24/2026 | 3 | NOTICE of Interested Parties filed by Plaintiff Maximilian Mann, identifying Maximilian Mann. (Turin, Yevgeniy) (Entered: 06/24/2026) |
| 06/27/2026 | 4 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Maximilian Mann. (Turin, Yevgeniy) (Entered: 06/27/2026) |
| 06/27/2026 | 5 | Request for Clerk to Issue Summons on Complaint (Attorney Civil Case Opening) 1 filed by Plaintiff Maximilian Mann. (Turin, Yevgeniy) (Entered: 06/27/2026) |
| 06/30/2026 | 6 | NOTICE OF ASSIGNMENT to District Judge David O. Carter and Magistrate Judge Christina T. Shay. (car) (Entered: 06/30/2026) |
| 06/30/2026 | 7 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (car) (Entered: 06/30/2026) |
| 06/30/2026 | 8 | Notice to Counsel Re Consent to Proceed Before a United States Magistrate Judge. (car) (Entered: 06/30/2026) |
| 06/30/2026 | 9 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendant Valero Energy Corporation. (car) (Entered: 06/30/2026) |
| 06/30/2026 | 10 | 21 DAY Summons Issued re Complaint (Attorney Civil Case Opening) 1 as to Defendant Valero Marketing and Supply Company. (car) (Entered: 06/30/2026) |
| 07/06/2026 | 11 | INITIAL STANDING ORDER FOLLOWING ASSIGNMENT OF CIVIL CASE TO JUDGE CARTER. (kdu) (Entered: 07/06/2026) |
| 08/03/2026 | 12 | Notice of Appearance or Withdrawal of Counsel: for attorney David Belcher counsel for Defendants Valero Energy Corporation, Valero Marketing and Supply Company. Adding David A. Belcher as counsel of record for Valero Energy Corporation, Valero Marketing and Supply Company for the reason indicated in the G-123 Notice. Filed by Defendants Valero Energy Corporation, Valero Marketing and Supply Company. (Attorney David Belcher added to party Valero Energy Corporation(pty:dft), Attorney David Belcher added to party Valero Marketing and Supply Company(pty:dft))(Belcher, David) (Entered: 08/03/2026) |
| 08/03/2026 | 13 | *Defendants' Notice of Interested Parties and Corporate Disclosure Statement* - NOTICE of Interested Parties filed by Defendants Valero Energy Corporation, Valero Marketing and Supply Company, (Belcher, David) (Entered: 08/03/2026) |
| 08/03/2026 | 14 | STIPULATION Extending Time to Answer the complaint as to Valero Marketing and Supply Company answer now due 9/3/2026; Valero Energy Corporation answer now due 9/3/2026, re Complaint (Attorney Civil Case Opening) 1 filed by Defendants Valero Marketing and Supply Company; Valero Energy Corporation.(Belcher, David) (Entered: 08/03/2026) |

| | | |
|---|---|---|
| 08/03/2026 | 15 | NOTICE of Appearance filed by attorney Rachel Anna Beck on behalf of Defendants Valero Energy Corporation, Valero Marketing and Supply Company (Attorney Rachel Anna Beck added to party Valero Energy Corporation(pty:dft), Attorney Rachel Anna Beck added to party Valero Marketing and Supply Company(pty:dft))(Beck, Rachel) (Entered: 08/03/2026) |
| 08/27/2026 | 16 | Second STIPULATION for Extension of Time to File Answer to 11/02/2026 re Complaint (Attorney Civil Case Opening) 1 filed by Defendants Valero Energy Corporation, Valero Marketing and Supply Company. (Attachments: # 1 Proposed Order)(Belcher, David) (Entered: 08/27/2026) |
| 08/28/2026 | 17 | ORDER GRANTING SECOND STIPULATION TO EXTEND TIME TO RESPOND TO INITIAL COMPLAINT by Judge David O. Carter 16 . Extended to 11/2/26. SEE DOCUMENT FOR FURTHER INFORMATION. (twdb) (Entered: 08/28/2026) |

---



| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 09/03/2026 16:03:23 | | | |
| **PACER Login:** | jdunklin | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 8:26-cv-01635-DOC-CTS End date: 9/3/2026 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

Eugene Y. Turin (SB # 342413)
MCGUIRE LAW, P.C.
1089 Willowcreek Road Suite 200
San Diego, CA 92131
Tel: (312) 893-7002 Ex. 3
Fax: 312-275-7895
eturin@mcgpc.com

Attorney for Plaintiff
Maximilian Mann

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MAXIMILIAN MANN, individually and on behalf of similarly situated individuals,

Plaintiff,

v.

VALERO ENERGY CORPORATION, a Texas Corporation; VALERO MARKETING AND SUPPLY COMPANY, a Delaware Corporation,

Defendants.

Case No.: 8:26-cv-01635

Assigned to:

**CLASS ACTION COMPLAINT**

1. **Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.**
2. **Unjust Enrichment**
3. **Money Had and Received**

**DEMAND FOR JURY TRIAL**

Plaintiff, Maximilian Mann ("Plaintiff"), individually and on behalf of others similarly situated, by and through his undersigned counsel, and for his Class Action Complaint against Defendants Valero Energy Corporation and Valero Marketing and Supply Company (collectively "Valero" or "Defendants"), alleges as follows

Case 2:26-cv-01535-DOC-JDE Document 1 Filed 02/23/26 Page 2 of 28 Page ID #:2

based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

## THE NATURE OF THE ACTION

1. This is an action for damages and any other available legal or equitable remedies, for violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., Unjust Enrichment, and Money Had and Received, resulting from Defendants' practice of charging its customers inflated prices in response to unlawfully imposed tariffs.

2. This lawsuit arises from Defendants' retention of windfall profits generated as a consequence of the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.* This windfall is a direct result of Defendants systematically passing on the costs of IEEPA tariffs to their own customers—including Plaintiff—through elevated product prices.

3. Beginning on February 1, 2025, President Donald J. Trump issued Executive Orders 14193, 14194, and 14195 imposing IEEPA-based duties on certain imports from Canada, Mexico, and China, respectively. On February 5, 2025, he issued Executive Order 14200 amending the duties addressing the synthetic opioid supply chain in the People's Republic of China. On March 3, 2025, he issued Executive

Order 14228 further amending those duties. He later issued Executive Order 14245 on March 24, 2025 concerning tariffs on countries importing Venezuelan oil, and Executive Order 14257 on April 2, 2025 declaring a national emergency based on large and persistent United States goods trade deficits and imposing reciprocal tariffs on a broad range of trading partners. *See* Exec. Order No. 14193, 90 Fed. Reg. 9,113 (Feb. 1, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9,117 (Feb. 1, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9,121 (Feb. 1, 2025); Exec. Order No. 14200, 90 Fed. Reg. 9,277 (Feb. 5, 2025); Exec. Order No. 14228, 90 Fed. Reg. 11,463 (Mar. 3, 2025); Exec. Order No. 14257 (Apr. 2, 2025); Exec. Order No. 14245 (Mar. 24, 2025) (collectively, the "Tariff Executive Orders").

4. The sweeping Tariff Executive Orders imposed an array of frequently changing duties ranging from 10% to 145% (with the upper end reflecting the maximum cumulative IEEPA-based rate applied to certain Chinese-origin goods, comprised of a 125% reciprocal duty under Executive Order 14257 as amended and an additional 20% IEEPA fentanyl duty under Executive Order 14228) based on country-specific tariff policy dictated through published Executive Orders. *See* Exec. Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025); Exec. Order No. 14,259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

5. Studies by the Federal Reserve Bank of New York find that "U.S. firms and consumers continue to bear the bulk of the economic burden of the high tariffs imposed in 2025."[1] Indeed, the Federal Reserve Bank of New York found that "nearly 90 percent of the tariffs' economic burden fell on U.S. firms and consumers" rather than foreign exporters. Although the stated purpose of the Tariff Executive Orders was to address international trade deficits and other national-emergency concerns, the economic burden of the tariffs was substantially passed on to American consumers in the form of increased retail prices.

6. When goods are imported into the United States, the United States Customs and Border Protection ("CBP") assesses and collects tariffs on those goods based on the Harmonized Tariff Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through administrative protest under 19 U.S.C. § 1514, refund under 19 U.S.C. § 1520, judicial action in the U.S. Court of International Trade under 28 U.S.C. § 1581(i), or, with respect to IEEPA-related tariffs, through CBP's Consolidated Administration and Processing of Entries ("CAPE") portal launched on April 20, 2026.

[1] Mary Amiti, Chris Flanagan, Sebastian Heise, and David E. Weinstein, *Who is Paying for the 2025 U.S. Tariffs?*, Federal Reserve Bank of New York (Feb. 12, 2026), https://libertystreeteconomics.newyorkfed.org/2026/02/who-is-paying-for-the-2025-u-s-tariffs/.

7. Defendants paid IEEPA tariffs when it imported goods. To offset the cost of paying IEEPA tariffs, Defendants passed those costs on to Plaintiff and similarly situated consumers by inflating the prices of their products.

8. On February 20, 2026, the United States Supreme Court held that the IEEPA does not authorize the President to impose the tariffs at issue. *Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026).

9. As a result, any IEEPA tariffs charged to Defendants were unlawful for lack of statutory authorization, and Defendants are entitled to seek a refund for any tariffs it paid pursuant to the Tariff Executive Orders through either litigation in the U.S. Court of International Trade, the CAPE refund process, or other administrative refund procedures.

10. On January 8, 2026—before *Learning Resources* was decided—Defendant Valero Marketing and Supply Company filed a protective refund action in the U.S. Court of International Trade. *Valero Marketing and Supply Co. v. U.S. et al.*, No. 1:26-cv-00213 (Ct. Int'l Trade Jan. 8, 2026).

11. In this lawsuit, Defendants state that its "merchandise has been and continues to be subject to the tariffs imposed by the executive order", that it "has paid and continues to pay IEEPA imposed by the Challenged Tariff Orders", and that it is entitled to a "refund [of] all IEEPA tariffs collected from [Valero] as of the date of such order, with interest as provided by law, through liquidation or reliquidation as

necessary, or, in the alternative, order the United States to pay Plaintiff a money judgement equal to the value of such IEEPA tariffs, plus interest." *Valero Marketing and Supply Co. v. U.S. et al.*, No. 1:26-cv-00213, Compl. ¶¶ 22, 37 & Prayer (Ct. Int'l Trade Jan. 8, 2026).

12. Defendants' own pleadings in those cases confirm that Defendants are the importer of record for Valero goods imported into the United States, that Defendants paid IEEPA tariffs to CBP on those goods, and that Defendants are actively pursuing refunds of those tariffs.

13. However, Defendants have already passed the unlawful IEEPA tariff costs onto Plaintiff and the Class Members by charging elevated prices to offset such costs. Plaintiff and the Class Members were thereby deprived of money paid to Defendants for IEEPA tariffs that are now refundable.

14. Although Defendants have affirmatively sought refunds of the IEEPA tariffs in the U.S. Court of International Trade, *see supra* ¶ 10, Defendants have made no public commitment to return any portion of those anticipated tariff refunds to the consumers who, through elevated prices, bore the economic burden of those tariffs.

15. If Defendants receive a refund for the IEEPA tariffs, Defendants will have been provided a windfall as a result of already having charged consumers for the collection of unlawful IEEPA tariffs. Defendants' retention of money obtained from charging consumers for IEEPA tariffs offends public policy, is oppressive, and

causes substantial injury to consumers by depriving them of the cost of the unlawful IEEPA tariffs.

16. The value of IEEPA tariff refund claims is not merely speculative. Even before the Supreme Court issued its decision in *Learning Resources*, a robust secondary market had emerged in which distressed investors and hedge funds have purchased IEEPA tariff refund claims from importers at a discount in exchange for immediate liquidity.[2] Industry analysts have estimated that the secondary market for IEEPA tariff refund claims could swell to approximately $100 billion in aggregate value.[2]

17. The existence and active trading of these claims confirms that the tariff refunds Defendants are positioned to recover represent concrete, quantifiable economic value—not hypothetical future benefits—and that Defendants' anticipated double recovery at consumers' expense is both real and imminent.

18. Other corporations in Defendants' same position have enacted tariff refund programs to compensate their customers who paid higher prices for products and thus bore the burden of pass-through tariff costs.[3] For example, on UPS's April 29, 2026 first-quarter 2026 earnings call, UPS's Chief Executive Officer Carol Tomé

---

[2] Vito Emanuel, *Wall Street Is Betting on Tariff Refunds After Supreme Court Ruling*, NPR (Mar. 5, 2026), https://www.npr.org/2026/03/05/nx-s1-5736120/tariff-refunds-wall-street-trade.

[3] Jeannette Neumann, *Cards Against Humanity to Give Tariff Refunds to Buyers Who "Overpaid,"* Crain's Chicago Business (Feb. 25, 2026), https://www.chicagobusiness.com/consumer-products/cards-against-humanity-give-tariff-refunds/.

stated that approximately "$5 billion will become available from the tariff refunds" and that "as soon as we get that money, we're going to remit it right back to our customers." FedEx separately stated it would refund corresponding tariff costs to its customers. Defendants could have enacted a similar payback program for Plaintiff and the Class Members, yet chose not to.

19. At minimum, once IEEPA tariff refunds, reliquidation, or other recovery became available, Defendants' retention of tariff-related amounts paid by consumers became unfair, oppressive, and substantially injurious because Defendants retained the benefit of both the increased prices they passed through to consumers and their corresponding right to tariff refunds.

20. Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek redress for violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., as well as common law unjust enrichment and money had and received, and for such other equitable and legal relief as is appropriate, including the imposition of a constructive trust over any IEEPA tariff refund proceeds Defendants receive from the United States.

## THE PARTIES

21. At all relevant times, Plaintiff has been a citizen of the State of California.

22. Defendant Valero Energy Corporation. is a Texas corporation with its headquarters located at One Valero Way, San Antonio, Texas 78249.

23. Defendant Valero Marketing and Supply Company is a Delaware corporation and subsidiary of Valero Energy Corporation.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, excluding interest and costs, and at least one member of the proposed Class is a citizen of a state different from Defendants.

25. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendants' obligation to return to the consumers who paid increased prices due to the IEEPA duties and fees paid by Defendants, as well as any IEEPA duty refunds Defendants recover from the United States

26. The Court has personal jurisdiction over Defendants because Defendants conduct continuous and systematic business in California, operate physical locations in California, and ship goods to and from California regularly.

27. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Plaintiff resides here and a substantial part of the events giving rise to Plaintiff's claims occurred in and emanated from this District.

## BACKGROUND

### DEFENDANTS' BUSINESS MODEL AND SUPPLY CHAIN

28. Defendants advertise, market, sell, and distribute petroleum products, gasoline, and other energy sector products throughout the United States.

29. Defendants source a substantial amount of the inputs that they use to refine, transport, and sell their products from manufacturers and producers located overseas and in Canada and Mexico. Defendants or their affiliated entities serve as the importer of record for such products and/or their components and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports

30. While crude oil has generally been left out of the tariffs imposed under the IEEPA executive order, "upstream and midstream, refining companies are still dealing with higher costs from steel, aluminum, and other essential materials.

31. The disconnect means that the feedstock remains tariff-free, while the infrastructure needed to produce and process it is becoming more expensive.

32. For an industry that sources everything from line pipe to control systems globally, even relatively small tariffs quickly move the needle. For example, tariffs on steel affect the cost of drill pipe, casing, gathering lines, transmission lines, liquified natural gas tanks, refinery vessels, structural steel, and more.[4]

[4] Robert Rapier, *How Trump Tariffs Are Impacting The U.S. Oil And Gas Industry*, Forbes (Nov. 20, 2025), http://www.forbes.com/sites/rrapier/2025/11/20/how-trump-tariffs-are-impacting-the-us-oil-and-gas-industry/

**DEFENDANTS' PASS-THROUGH OF IEEPA TARIFFS TO CONSUMERS**

33. For purposes of this Complaint, the "Class Period" is defined as February 4, 2025 through February 24, 2026—the period during which IEEPA tariffs were in effect and enforced by U.S. Customs and Border Protection.

34. During the Class Period, Defendants charged prices for their products that were inflated by the cost of IEEPA duties.

35. Over the past year, tariffs have contributed to the increased price of gasoline and other petroleum-based products in the United States.

**PLAINTIFF'S PURCHASE**

36. During the relevant time period, Plaintiff purchased products from Valero in California.

37. On information and belief, Defendants artificially inflated the price of gasoline that Plaintiff purchased throughout the class period to offset tariff costs associated with their own importation of petroleum products and the materials used to refine, store, and transport them.

38. The product-level import origin, importer-of-record information, tariff classification, entry data, duty-payment records, and any records reflecting whether IEEPA tariff costs were incorporated into retail pricing are within Defendants' possession, custody, or control.

39. Defendants paid IEEPA tariffs on goods and embedded the cost of those tariffs in the prices charged to Plaintiff. But for Defendants' pass-through of IEEPA tariff costs, Plaintiff would have paid lower prices for the products he purchased.

40. Defendants' retention of the unlawful IEEPA tariff costs that were passed on to Plaintiff and Class Members offends public policy as it is unconscionable and unfair for Plaintiff and similarly situated consumers to shoulder Defendants' tax burden under the IEEPA tariffs when those tariffs were unlawful and should not have been collected.

41. As a result of Defendants' practice of passing on tariff costs to their customers, Plaintiff and the Class Members were forced to pay Defendants' tariff burdens.

42. Plaintiff and the members of the Class have unequal bargaining power relative to Defendants and are unable to negotiate the payment of the unlawful IEEPA tariffs from Defendants, and therefore Plaintiff and Class members could not avoid paying the unlawful IEEPA tariffs that were passed on to them.

43. Allowing Defendants to keep the proceeds of the unlawful IEEPA tariff charges deprives Plaintiff and Members of the Class of the money paid for the cost of the unlawful IEEPA tariffs while providing nothing of value to Plaintiff or Class Members.

44. But for Defendants' charging Plaintiff and the Members of the Class the cost of the unlawful IEEPA tariffs, Plaintiff and the Members of the Class would not have needed to shoulder the cost of the unlawful IEEPA tariffs.

**DEFENDANTS' ANTICIPATED TARIFF REFUNDS AND RESULTING DOUBLE RECOVERY**

45. On March 4, 2026, the United States Court of International Trade issued a significant order in *Atmus Filtration, Inc. v. United States*, directing U.S. Customs and Border Protection to refund duties imposed under the IEEPA. *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026).

46. The Court of International Trade's decision reinforced that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Supreme Court's decision in *Learning Resources*. *Atmus Filtration*, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026). The Court ordered CBP to liquidate all unliquidated entries "without regard to IEEPA duties" and to reliquidate any liquidated entries for which liquidation is not final without regard to those duties. *Id.* at *2-3.

47. According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at ¶ 12.

48. Accordingly, Defendants are entitled to substantial refunds for IEEPA tariffs they paid as the importer of record for goods sourced from countries subject to IEEPA tariffs.

49. To date, Defendants have not established any mechanism to refund to consumers the tariff costs Defendants passed through to them via elevated prices and import charges during the Class Period.

50. This presents an obvious problem: Although Defendants will recover tariff refunds on the tariffed goods they sold, Defendants' customers have already borne the economic brunt of these tariffs by paying higher prices set by Defendants. The risk of Defendants obtaining double recovery is therefore imminent.

51. Defendants are poised to be paid twice for the same unlawful tariff burden: once by their customers (including Plaintiff) through elevated prices, and once by the U.S. government through tariff refunds.

## CLASS ALLEGATIONS

52. Plaintiff brings his claims individually and on behalf of the following Class and Subclass pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure:

> **Class:** All persons in the United States who, during the Class Period, purchased gasoline from Defendants.
>
> **California Subclass:** All persons who, during the Class Period, purchased gasoline from Defendants within the state of California.

53. Excluded from the Class and Subclass are: (1) Defendants; (2) Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their family; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendants' counsel, and their experts and consultants.

54. **Numerosity**. The proposed Class and Subclass contain members so numerous that separate joinder of each member of the Class and Subclass is impracticable. Upon information and belief, there are at least hundreds of thousands, if not millions, of proposed class and subclass members. The individuals who purchased items subject to IEEPA tariffs can be ascertained through records in the possession, custody, or control of Defendants.

55. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class and Subclass he seeks to represent, because the factual and legal bases of Defendants' liability to Plaintiff and the other Members of the Class and Subclass are the same, and because Defendants' conduct has resulted in similar injuries to Plaintiff and to the Class and Subclass. As alleged herein, Plaintiff and the Class and Subclass have all suffered damages as a result of Defendants' tariff pass-through pricing.

56. **Commonality and Predominance**. There are questions of fact or law common to the Class and Subclass, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

a. Whether Defendants paid IEEPA tariffs on products sold to consumers during the Class Period;

b. Whether Defendants paid IEEPA tariffs on components used to make, refine or transport products sold to consumers during the Class Period;

c. Whether Defendants passed IEEPA tariff costs onto consumers through elevated prices;

d. Whether Defendants' retention of the unlawful IEEPA tariffs paid by Plaintiff and Members of the Class and Subclass is unjust, oppressive, unscrupulous, or unfair;

e. Whether Defendants misled consumers regarding pricing and tariff pass-through;

f. Whether Defendants violated the California's Unfair Competition Law through its misrepresentations and omissions to members of the Subclass regarding pricing and tariff pass-through;

g. Whether Defendants unjustly enriched themselves as a result of the unlawful conduct alleged above;

h. Whether Defendants have been or will be unjustly enriched by receiving government refunds for tariffs they passed through to consumers;

i. Whether the Class and Subclass Members are entitled to restitution, actual damages, and attorneys' fees and costs

57. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of all Class and Subclass Members. Plaintiff understands the obligations

inherent in representing a putative class, and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex and class action litigation. Plaintiff has no interests antagonistic to the Class's interests, and Defendants have no defenses unique to Plaintiff.

58. **Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all members of the Class and Subclass is impracticable. The damages suffered by the individual members of the Class and Subclass are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class and Subclass to obtain effective relief from Defendants' misconduct. Even if members of the Class and Subclass could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(on behalf of Plaintiff and the California Subclass)**

59. Plaintiff incorporates the foregoing allegations in Paragraphs 1–58 as if fully stated herein.

60. Defendants form a business entity that, at all relevant times, sold goods and/or services to Plaintiff and the Subclass and set prices charge to Plaintiff and the Subclass.

61. The Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code § 17200, *et seq.,* prohibits any unlawful, unfair, or fraudulent business act or practice.

62. Plaintiff has suffered injury in fact and has lost money or property as a result of Defendants' conduct withing the meaning of Cal. Bus. & Prof. Code § 17204. Specifically, Plaintiff paid increased prices charged by Defendants that were imposed to cover the cost of the duties levied under IEEPA and, thus, Plaintiff lost that money paid due to increased prices.

63. Plaintiff's economic injury is concrete and particularized, is fairly traceable to Defendants' price increase and related practices, and is redressable through restitution and injunctive relief under the UCL.

**Unlawful Business Acts or Practices**

64. Defendants have engaged in "unlawful" business acts or practices within the meaning of Cal. Bus. & Prof. Code § 17200 by implementing and collecting tariff-bound surcharges and/or price increase from Plaintiff and the Subclass while contemporaneously pursuing litigation against the federal government to recover those tariff costs. In this way, Defendants could doubly recover with consumer targeted price increases and relief from the government.

65. Defendants' conduct violates established legal policies prohibiting unjust and duplicative recovery and requiring truthful, non-misleading pricing practices and restitution when a windfall would otherwise result from overlapping recoveries. Defendants' parallel recoupment through increased prices and anticipated recovery through litigation constitutes an unlawful business practice.

**Unfair Acts or Practices**

66. Defendants have engaged in "unfair" business acts or practices within the meaning of the Cal. Bus. & Prof. Code § 17200, by: (a) imposing price increases and/or surcharges on Plaintiff and Subclass Members to recoup IEEPA-based tariff costs; (b) pursuing and, on information and belief, being extremely likely to obtain, recovery of those same tariff-related costs from the federal government; and (c) failing to account for, credit, or return to Plaintiff and Subclass Members the

amounts previously collected if and when Defendants recover such amounts through litigation.

67. The gravity of the harm to consumers, including Plaintiff—namely the payment of artificially inflated prices and the risk and likelihood of Defendants' double recovery—outweighs any purported utility of the challenged practices. Less harmful alternatives were available to Defendants, including disclosing the contingent nature of the tariff-related price increases, escrowing the tariff-recovery component, or committing to provide automatic credits or refunds upon any litigation recovery.

68. Defendants' practices offend established public policy and are immoral, unethical, oppressive, and substantially injurious to consumers because they shift tariff-related costs to consumers while positioning Defendants to retain both the increased prices charged to consumers and the separate litigation recovery they have sought in the Court of International Trade, resulting in a windfall for Defendants at consumers' expense.

**Fraudulent and Deceptive Business Acts or Practices**

69. Defendants have engaged in "fraudulent" business acts or practices within the meaning of the Cal. Bus. & Prof. Code § 17200, by making representations, omissions, and/or practices likely to deceive reasonable consumers regarding the

nature, purpose, and disposition of the tariff-related price increases, including but not limited to:

a. Representing, expressly or by implication, that the price increases or surcharges were necessary to cover unavoidable tariff costs without disclosing that Defendants were pursuing litigation to recover those same costs and were extremely likely to prevail;

b. Omitting material facts necessary to prevent consumers from being misled, including the likelihood of Defendants' litigation recovery and the absence of any commitment to refund or credit consumers for the tariff-related amounts previously paid;

c. Failing to disclose that continued collection and retention of tariff-related amounts in the face of an anticipated litigation recovery would result in a double recovery to Defendants.

70. A reasonable consumer would be deceived by Defendants' omissions and practices. Plaintiff and Subclass members were likely to be, and were, misled into paying increased prices under the belief that such increases were necessary and would not result in an unreversed windfall to Defendants.

71. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent acts and practices, Plaintiff and Subclass Members paid increased prices and suffered economic injury in the form of overcharges and loss of money or

property. Plaintiff would not have paid, or would have paid less, had he known that Defendants engaged in the challenged conduct.

72. Defendants' conduct is ongoing and/or has continuing effects, including the continued retention of tariff-related amounts collected from Plaintiff and Subclass Members and the imminent or likely receipt of duplicative recoveries from litigation proceeds without provision for restitution, credits, or other consumer redress, absent Court intervention.

73. Plaintiff seeks relief under Cal. Bus. & Prof. Code § 17203 and § 17204, individually and on behalf of the Subclass, including:

a. Restitution and/or disgorgement to Plaintiff and Subclass Members of all amounts wrongfully obtained from tariff-related price increases, surcharges, or other charges collected to recoup IEEPA-based tariff costs, in an amount to be proven at trial;

b. An order requiring Defendants to provide appropriate credits, refunds, or accountings to ensure that any litigation recovery of tariff-related costs is not duplicative of amounts already collected from consumers;

c. Injunctive relief enjoining Defendants from engaging in the practices described herein, including collecting, retaining, or failing to refund or credit tariff-related amounts in a manner that results in double recovery, and requiring clear, conspicuous disclosures and remedial measures [including,

without limitation, escrow or trust arrangements for any tariff recovery components pending final resolution of Defendants' litigation] to prevent future harm;

d. Pre- and post-judgment interest as permitted by law;

e. Attorneys' fees and costs as permitted by law, including under the common fund or substantial benefit doctrines, and any other applicable basis; and

f. Such other and further equitable relief as the Court deems just and proper to prevent Defendants' unjust enrichment and to restore to Plaintiff and Class Members the money wrongfully obtained.

## **COUNT II**
**Unjust Enrichment**
**(on behalf of Plaintiff and the Class)**

74. Plaintiff incorporates the foregoing allegations in Paragraphs 1–73 as if fully stated herein.

75. Plaintiff and the Members of the Class conferred monetary benefits on Defendants by paying elevated prices for products that included unlawful IEEPA tariff-related costs.

76. Defendants have been unjustly enriched because they collected and retained retail payments from Plaintiff and the Class that included amounts attributable to IEEPA tariff-related costs, while also retaining the right to seek or receive refunds,

credits, reliquidation, or other recovery of those same tariff costs from the government.

77. Defendants knew and appreciated the benefit they received because they set, charged, and retained tariff-related cost increases paid by Plaintiff and the Class. At minimum, after the Supreme Court's invalidation of the IEEPA tariffs and subsequent refund-related proceedings, Defendants knew or should have known that any refund or recovery of IEEPA duties would correspond to tariff costs that consumers had already economically borne through fees and costs imposed on them by Defendants.

78. Defendants' retention of these benefits is unjust and inequitable now that Defendants are positioned to retain both the tariff-related amounts collected from consumers and the corresponding refund rights or proceeds from the government.

79. There is no adequate remedy at law for Plaintiff and the Members of the Class, as Defendants have established no mechanism to refund tariff costs to consumers, and consumers have no direct statutory cause of action to recover IEEPA tariffs from the government.

80. Under principles of equity and good conscience, it would be unjust to permit Defendants to retain both (a) the elevated prices consumers paid due to tariff pass-through pricing, and (b) government refunds of those same tariff costs.

81. Plaintiff and the other members of the Class are entitled to restitution in the amount by which Defendants have been unjustly enriched to the detriment of Plaintiff and the Class, and an order requiring Defendants to disgorge any additional profits or other benefit they have retained as a result of their unjust and unlawful conduct.

**COUNT III**
**Money Had and Received**
**(on behalf of Plaintiff and the Class)**

82. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1–81 above as if fully stated herein.

83. This Count is pleaded in the alternative to Count II. While Count II (Unjust Enrichment) addresses the inequity of Defendants' retention of consumer overcharges already collected, this Count more particularly addresses Defendants' anticipated receipt and retention of government refund proceeds that, in equity, represent a return of costs that were economically borne by Plaintiff and Members of the Class, not by Defendants.

84. Defendants received money from Plaintiff and from each Member of the proposed Class in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

85. Defendants received this money for the purpose of repaying themselves the IEEPA tariffs they had advanced, as importer of record, to U.S. Customs and Border

Protection as duties on imported goods.

86. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization. *Learning Resources*, Slip Op. at 20.

87. Defendants are now positioned to recover refunds of the IEEPA tariffs from the U.S. government through the liquidation process or litigation in the Court of International Trade. Upon information and belief, Defendants have not paid or distributed any portion of these anticipated refunds to Plaintiff or other consumers who bore the economic burden of the tariffs through elevated prices.

88. The money that Defendants will recover from the government as IEEPA tariff refunds represents, in equity, a return of money that belonged to Plaintiff and to each Member of the proposed Class—the consumers who paid elevated prices due to Defendants' IEEPA tariff-related pass-through.

89. Defendants have not returned this money to Plaintiff or the Class.

90. In equity and good conscience, Defendants should not be permitted to retain the funds they are owed by the government as IEEPA tariff refunds. Those funds belong, in equity, to Plaintiff and the Class, and Defendants are obligated to return them.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief and judgment against Defendants as follows:

a. An Order certifying the Class and Subclass, defining the Class and Subclass as requested herein, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel;

b. An award of any actual, compensatory, and enhanced damages permitted to Plaintiff and other Class Members for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c. A declaration that Defendants' retention of tariff-related amounts paid by Plaintiff and the Class, and/or Defendants' retention of any refund, credit, reliquidation, drawback, reimbursement, or other recovery corresponding to IEEPA tariff costs that Defendants passed through to Plaintiff and the Class, is unlawful, unfair, unjust, and inequitable;

d. An Order enjoining Defendants from retaining, without appropriate credit, refund, restitution, or other equitable adjustment to Plaintiff and the Class, any refund, credit, reliquidation, drawback, reimbursement, or other recovery corresponding to IEEPA tariff costs that Defendants passed through to Plaintiff and the Class;

e. An Order requiring Defendants to identify, segregate, preserve, and account for all refunds, credits, reliquidations, drawbacks, reimbursements, or other recoveries that Defendants have received, will receive, or are entitled to receive from the United States government or any other source for IEEPA tariff costs that Defendants passed through to Plaintiff and the Class;

f. An Order requiring Defendants to provide a full accounting of: (i) the IEEPA tariffs Defendants paid or deposited on imported goods, parts, or components which affected the purchase price of goods sold to Plaintiff and the Class; (ii) the amounts of those tariff costs that Defendants passed

through to Plaintiff and the Class; and (iii) all refunds, credits, reliquidations, drawbacks, reimbursements, or other recoveries Defendants have received, will receive, or are entitled to receive for those same tariff costs;

g. An award of reasonable attorneys' fees, costs, and other litigation expenses;

h. An award of pre- and post-judgment interest as available under law;

i. Restitution and/or disgorgement of any funds in the amount Defendants were unjustly enriched by their conduct; and

j. Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: June 24, 2026

Respectfully submitted,

By: /s/ *Eugene Y. Turin*

Eugene Y. Turin (SB # 342413)
MCGUIRE LAW, P.C.
1089 Willowcreek Road Suite 200
San Diego, CA 92131
Tel: (312) 893-7002 Ex. 3
Fax: 312-275-7895
eturin@mcgpc.com

*Counsel for Plaintiff and the putative Class*