# Exhibit G

ACCO,NORTHERN,(MBKx),DISCOVERY,MJDAP_OUT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
# CIVIL DOCKET FOR CASE #: 2:26-cv-07235-DMG-MBK

Linda Norberg v. Deckers Outdoor Corporation
Assigned to: Judge Dolly M. Gee
Referred to: Magistrate Judge Michael B. Kaufman
Demand: $5,000,000
Case in other court: CA Superior Court, County of Santa Barbara, 26CV03402
Cause: 28:1441 Notice of Removal - Civil Rights Act

Date Filed: 07/02/2026
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Diversity

**Plaintiff**

**Linda Norberg**
*individually and on behalf of similarly situated individuals*

represented by **Yevgeniy Y. Turin**
McGuire Law, P.C.
680 East Colorado Boulevard, Suite 180
Pasadena, CA 91101
312-893-7002
Email: eturin@mcgpc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Coty Kelly**

represented by **Yevgeniy Y. Turin**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Deckers Outdoor Corporation**
*a Delaware corporation*

represented by **Jay T Ramsey**
Sheppard Mullin Richter and Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067-6055
310-228-3700
Fax: 310-228-3701
Email: jramsey@sheppardmullin.com
*ATTORNEY TO BE NOTICED*

**P. Craig Cardon**
Sheppard Mullin Richter and Hampton LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
310-228-3700
Fax: 310-228-3701
Email: ccardon@sheppardmullin.com
*ATTORNEY TO BE NOTICED*

**Patrick David Rubalcava , IV**
Sheppard Mullin Richter and Hampton LLP
1901 Avenue of the Stars Suite 1600
Los Angeles, CA 90067-6017
310-228-2278
Fax: 310-228-3701
Email: PRubalcava@sheppardmullin.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/02/2026 | 1 | NOTICE OF REMOVAL from Superior Court of California, County of Santa Barbara, case number 26CV03402 Receipt No: ACACDC-42694609 - Fee: $405, filed by Defendant DECKERS OUTDOOR CORPORATION,. (Attachments: # 1 Exhibit A - Class Action Complaint, # 2 Exhibit B - Notice to State Court, # 3 Civil Cover Sheet, # 4 Proof of Service of Notice of Removal) (Attorney P. Craig Cardon added to party DECKERS OUTDOOR CORPORATION, (pty:moni))(Cardon, P.) (Entered: 07/02/2026) |
| 07/02/2026 | 2 | *CERTIFICATION AND* NOTICE of Interested Parties filed by Defendant DECKERS OUTDOOR CORPORATION,, (Cardon, P.) (Entered: 07/02/2026) |
| 07/02/2026 | | CONFORMED E-FILED COPY OF CLASS ACTION COMPLAINT against Defendant Deckers Outdoor Corporation. Jury Demanded., filed by Plaintiff Linda Norberg. (FILED IN STATE COURT ON 5/22/2026 SUBMITTED ATTACHED TO EXHIBIT A TO NOTICE OF REMOVAL 1 ). (et) (Entered: 07/09/2026) |
| 07/09/2026 | 3 | STIPULATION Extending Time to Answer the complaint as to filed by Defendant DECKERS OUTDOOR CORPORATION,.(Attorney Patrick David Rubalcava, IV added to party DECKERS OUTDOOR CORPORATION, (pty:moni))(Rubalcava, Patrick) (Entered: 07/09/2026) |
| 07/09/2026 | 4 | NOTICE OF ASSIGNMENT to a U.S. Magistrate Judge and Declination of Consent. This case has been randomly assigned to Magistrate Judge Rozella A. Oliver. (et) (Entered: 07/09/2026) |
| 07/09/2026 | 5 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Andrew T. Heldut on behalf of Plaintiff. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (et) (Entered: 07/09/2026) |
| 07/16/2026 | 6 | PROOF OF SERVICE filed by Defendant Deckers Outdoor Corporation, re Notice of Assignment to U.S. Magistrate Judge and Declination of Consent CV-20B optional html form 4 served on July 16, 2026. (Rubalcava, Patrick) (Entered: 07/16/2026) |
| 07/17/2026 | 7 | Declination of Consent form received on 7/16/2026 was submitted within deadline set forth in L.R. 73-2.1. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (cio) TEXT ONLY ENTRY (Entered: 07/17/2026) |

| | | |
|---|---|---|
| 07/17/2026 | 8 | NOTICE OF REASSIGNMENT of MJDAP case from Magistrate Judge Rozella A. Oliver to Judge Dolly M. Gee for all further proceedings. Any discovery matters that may be referred to a Magistrate Judge are assigned to U.S. Magistrate Judge Michael B. Kaufman. The case number will now reflect the initials of the transferee Judges 2:26-cv-07235-DMG-MBKx. (lh) (Entered: 07/17/2026) |
| 07/20/2026 | 9 | INITIAL STANDING ORDER upon filing of the complaint by Judge Dolly M. Gee. (dd) (Entered: 07/20/2026) |
| 07/27/2026 | 10 | Notice OF COMPLIANCE WITH 28 U.S.C. § 1446(d) RE: REMOVAL filed by Defendant Deckers Outdoor Corporation. (Rubalcava, Patrick) (Entered: 07/27/2026) |
| 08/07/2026 | 11 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Defendant Deckers Outdoor Corporation. Motion set for hearing on 9/11/2026 at 09:30 AM before Judge Dolly M. Gee. (Attachments: # 1 Memorandum In Support Thereof, # 2 Proposed Order) (Cardon, P.) (Entered: 08/07/2026) |
| 08/14/2026 | 12 | STIPULATION for Extension of Time to File Response as to NOTICE OF MOTION AND MOTION to Dismiss Case 11 filed by Plaintiff Linda Norberg. (Attachments: # 1 Proposed Order)(Turin, Yevgeniy) (Entered: 08/14/2026) |
| 08/17/2026 | 13 | ORDER APPROVING STIPULATION TO EXTEND BRIEFING SCHEDULE AND CONTINUE HEARING ON DEFENDANT'S MOTION TO DISMISS by Judge Dolly M. Gee: The Court hereby APPROVES the parties' Stipulation 12 and ORDERS that Plaintiff's Amendment to the Complaint as of right is due on 8/28/2026. If Plaintiff does not choose to amend her Complaint, Plaintiff's opposition brief to Defendant's Motion to Dismiss 11 is to be filed on or before 9/4/2026. Defendants reply brief in support of its Motion to Dismiss is to be filed on or before 9/18/2026. The hearing on Defendant's Motion Dismiss is set for Motion set for hearing on 10/2/2026 at 09:30 AM before Judge Dolly M. Gee. (gk) (Entered: 08/22/2026) |
| 08/28/2026 | 14 | FIRST AMENDED COMPLAINT against Defendant Deckers Outdoor Corporation amending Complaint - (Discovery), filed by Plaintiffs Linda Norberg, Coty Kelly(Attorney Yevgeniy Y. Turin added to party Coty Kelly(pty:pla))(Turin, Yevgeniy) (Entered: 08/28/2026) |
| 08/31/2026 | 15 | SCHEDULING NOTICE AND (IN CHAMBERS) ORDER by Chief Judge Dolly M. Gee: On August 28, 2026, Plaintiff Linda Norberg filed a timely First Amended Complaint. 14 Therefore, Defendant Deckers Outdoor Corporation's pending Motion to Dismiss is DENIED without prejudice as moot. 11 The October 2, 2026 hearing on the MTD is VACATED. IT IS SO ORDERED.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (lca) TEXT ONLY ENTRY (Entered: 08/31/2026) |


**PACER Service Center**

**Transaction Receipt**

09/03/2026 16:09:51

| | | | |
|---|---|---|---|
| **PACER Login:** | jdunklin | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:26-cv-07235-DMG-MBK End date: 9/3/2026 |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

Eugene Y. Turin (SB # 342413)
MCGUIRE LAW, P.C.
1089 Willowcreek Road Suite 200
San Diego, CA 92131
Tel: (312) 893-7002 Ex. 3
Fax: 312-275-7895
eturin@mcgpc.com

*Counsel for Plaintiffs and the Putative Class Members*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| LINDA NORBERG and COTY KELLY, individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>DECKERS OUTDOOR CORPORATION, a Delaware corporation,<br><br>Defendant. | ) | Case No. 2:26-cv-07235-DMG-MBK<br><br>Assigned to: Hon. Dolly M. Gee<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**1. Unjust Enrichment**<br>**2. Money Had and Received**<br>**3. Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.**<br><br>DEMAND FOR JURY TRIAL |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, Linda Norberg and Coty Kelly ("Plaintiffs"), individually and on behalf of others similarly situated, by and through their undersigned counsel, and for their First Amended Class Action Complaint against Defendant Deckers Outdoor Corporation ("Deckers" or "Defendant"), allege as follows based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

## NATURE OF THE ACTION

1. This is an action for damages and any other available legal or equitable remedies, for violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., Unjust Enrichment, and Money Had and Received, resulting from Defendant's practice of charging its customers inflated prices in response to unlawfully imposed tariffs.

2. Deckers Outdoor Corporation is a footwear and apparel company that sells shoes, apparel, and accessories through consumer brands including UGG, HOKA, and Teva (the "Products"). In or around July 2025, Deckers began implementing selective price increases to offset rising tariff-related costs.[1] By doing so, Deckers passed the economic burden of government-imposed tariffs on imported goods onto consumers through higher retail prices.

3. This lawsuit arises from Defendant's retention of windfall profits generated as a consequence of the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq*. This windfall is a direct result of Defendant systematically passing on the costs of IEEPA tariffs to its own customers—including Plaintiffs—through elevated product prices.

4. Beginning on February 1, 2025, President Donald J. Trump issued Executive Orders 14193, 14194, and 14195 imposing IEEPA-based duties on certain imports from Canada, Mexico, and China, respectively. On February 5, 2025, he issued Executive Order 14200 amending the duties addressing the synthetic opioid supply chain in the People's Republic of China. On March 3, 2025, he issued Executive Order 14228 further amending those duties. He later issued Executive Order 14245 on March 24, 2025 concerning tariffs on countries importing Venezuelan oil, and Executive Order 14257 on April 2, 2025 declaring a national emergency based on large and

[1] Reuters reported that Deckers "implemented selective price hikes in July" and stated that Deckers would "gradually raise product prices through the fiscal year to protect margins from rising tariff-related costs." https://www.reuters.com/business/deckers-outdoor-forecasts-annual-sales-below-estimates-2025-10-23/

persistent United States goods trade deficits and imposing reciprocal tariffs on a broad range of trading partners. See Exec. Order No. 14193, 90 Fed. Reg. 9,113 (Feb. 1, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9,117 (Feb. 1, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9,121 (Feb. 1, 2025); Exec. Order No. 14200, 90 Fed. Reg. 9,277 (Feb. 5, 2025); Exec. Order No. 14228, 90 Fed. Reg. 11,463 (Mar. 3, 2025); Exec. Order No. 14245 (Mar. 24, 2025); Exec. Order 14257 (Apr. 2, 2025) (collectively, the "Tariff Executive Orders").

5. The sweeping Tariff Executive Orders imposed an array of frequently changing duties ranging from 10% to 145% based on country-specific tariff policy dictated through published Executive Orders. *See* Exec. Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025); Exec. Order No. 14,259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

6. Studies by the Federal Reserve Bank of New York have found that "U.S. firms and consumers continue to bear the bulk of the economic burden of the high tariffs imposed in 2025."[2] Whereas the imposition of tariffs on foreign trade partners was intended to even international trade deficits, much of the cost of the applicable tariffs was passed on to American consumers who bore the brunt of tariff costs in the form of increased prices.

7. When goods are imported into the United States, the United States Customs and Border Protection ("CBP") assesses and collects tariffs on those goods based on the Harmonized Tariff Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through administrative protest under 19 U.S.C. § 1514, refund under 19 U.S.C. § 1520, judicial action in the U.S. Court of International Trade under 28 U.S.C. § 1581(i),

[2] Mary Amiti, Chris Flanagan, Sebastian Heise, and David E. Weinstein, *Who is Paying for the 2025 U.S. Tariffs?*, Federal Reserve Bank of New York (Feb. 12, 2026), https://libertystreeteconomics.newyorkfed.org/2026/02/who-is-paying-for-the-2025-u-s-tariffs/.

or, with respect to IEEPA-related tariffs, through CBP's Consolidated Administration and Processing of Entries ("CAPE") portal launched on April 20, 2026.

8. Defendant paid IEEPA tariffs when it imported the products Plaintiffs and similarly situated consumers purchased. To offset the cost of paying IEEPA tariffs, Defendant passed those costs on to Plaintiffs and similarly situated consumers by inflating the prices of its products.

9. On February 20, 2026, the United States Supreme Court held that the IEEPA does not authorize the President to impose tariffs at issue. *Learning Res., Inc. v. Trump,* 607 U.S. ___, 2026 WL 477534 (2026) (Nos. 24-1287 and 25-250) (aff'g *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade), aff'd in part and rev'd in part, 149 F.4th 1312 (Fed. Cir. 2025)).

10. As a result, any IEEPA tariffs charged to Defendant were unlawful for lack of statutory authorization, and Defendant is entitled to seek a refund for any tariffs it paid pursuant to the Tariff Executive Orders through either litigation in the U.S. Court of International Trade, the CAPE refund process, or other administrative refund procedures.

11. On January 8, 2026, Defendant Deckers Outdoor Corporation filed a protective refund action in the U.S. Court of International Trade. *Deckers Outdoor Corporation v. United States*, No. 26-00291 (Ct. Int'l Trade Jan. 8, 2026). In that pleading, signed by counsel of record subject to Federal Rule of Civil Procedure 11, Deckers Outdoor Corporation affirmatively alleges that it is the importer of goods imported into the United States from countries subject to the IEEPA duties as implemented and collected by CBP that have been held by the Supreme Court to be unlawful. *Id.*, Compl. ¶ 25 (Ct. Int'l Trade Jan. 8, 2026). The Deckers Outdoor Corporation plaintiff further seeks "a full refund" as a result of all IEEPA duties plaintiff has already paid to the United States, *id.* ¶ 9, and asks the U.S. Court of International Trade to "[o]rder the United States to refund to Plaintiff the IEEPA duties collected on those entries, with interest as provided by law" (*Id.* prayer for relief, (e)).

12. On July 21, 2026, the Court of International Trade entered an order in Defendant's action directing U.S. Customs and Border Protection to reliquidate, without regard to IEEPA duties, Defendant's qualifying entries that had been liquidated for more than 80 days and on which Defendant had made estimated IEEPA duty deposits, subject to CBP's acceptance of Defendant's CAPE declarations. (ECF No. 9.)

13. Furthermore, since the filing of this action, Defendant has publicly disclosed that it is affirmatively seeking refunds of the IEEPA tariffs it previously paid. In its Form 10-Q filed July 30, 2026, Defendant disclosed that, subsequent to June 30, 2026, it "began filing for refunds of previously paid IEEPA tariffs pursuant to the CAPE Phase 2 administrative refund process."[3] Defendant further disclosed that it previously paid an aggregate gross amount of approximately $120 million in IEEPA tariffs.[4] Defendant has not announced any corresponding mechanism to return tariff-related amounts to consumers who purchased its products at prices reflecting those tariff costs.

14. However, Defendant *has already* passed its unlawful IEEPA tariff burdens onto Plaintiffs and the Class Members by charging elevated prices associated with its tariff burden. Plaintiffs and the Class Members were thereby deprived of money through prices reflecting Defendant's IEEPA tariff costs.

15. Defendant is now affirmatively seeking recovery of the IEEPA tariffs it previously paid, even though the economic burden of those tariffs was passed through, in whole or in part, to consumers through increased prices. To the extent Defendant recovers those tariff payments while retaining the tariff-related amounts incorporated into consumer prices, Defendant will obtain the

[3] SEC Form 10-Q filed July 30, 2026, https://www.sec.gov/Archives/edgar/data/910521/000091052126000022/deck-20260630.htm
[4] *Id.*

benefit of both the consumer payments reflecting those costs and the corresponding governmental recovery.

16. The value of IEEPA tariff refund claims is not merely speculative. Even before the Supreme Court issued its decision in *Learning Resources*, a robust secondary market had emerged in which distressed investors and hedge funds have purchased IEEPA tariff refund claims from importers at a discount in exchange for immediate liquidity.[5]

17. The existence and active trading of these claims confirms that the tariff refunds Defendant is positioned to recover represent concrete, quantifiable economic value—not hypothetical future benefits—and that Defendant's anticipated double recovery at consumers' expense is both real and imminent.

18. Other corporations receiving IEEPA tariff refunds have recognized obligations or established mechanisms to return corresponding recoveries to customers who previously bore the underlying tariff costs.[6]

19. At minimum, once Defendant affirmatively sought recovery of approximately $120 million in previously paid IEEPA tariffs through the CAPE administrative refund process, Defendant's retention of the tariff-related amounts previously passed through to consumers became unfair, oppressive, and substantially injurious because Defendant positioned itself to retain the economic benefit of both the consumer payments reflecting those costs and the corresponding governmental recovery.

20. Accordingly, Plaintiffs bring this action individually and on behalf of similarly situated individuals to seek redress for violations of the Unfair Competition Law, Cal. Bus. & Prof.

---

[5] Vito Emanuel, *Wall Street Is Betting on Tariff Refunds After Supreme Court Ruling*, NPR (Mar. 5, 2026), https://www.npr.org/2026/03/05/nx-s1-5736120/tariff-refunds-wall-street-trade.

[6] Jeannette Neumann, *Cards Against Humanity to Give Tariff Refunds to Buyers Who "Overpaid,"* Crain's Chicago Business (Feb. 25, 2026), https://www.chicagobusiness.com/consumer-products/cards-against-humanity-give-tariff-refunds/; see also, e.g., https://finance.yahoo.com/economy/policy/articles/ups-fedex-dhl-giving-back-123500871.html (FedEx Corp. establishing an IEEPA Tariff Refund Portal for customers who originally paid the tariff charges).

Code § 17200, *et seq*., as well as common law unjust enrichment and money had and received, and for such other relief as the Court may deem just and appropriate.

**PARTIES**

21. Plaintiff Linda Norberg is a natural person and resident of Iowa.

22. Plaintiff Coty Kelly is a natural person and resident of Illinois.

23. Defendant Deckers Outdoor Corporation is a Delaware corporation with its principal place of business in Goleta, California. Deckers designs, markets, distributes, and sells footwear, apparel, and accessories throughout California, including in Santa Barbara County.

**JURISDICTION AND VENUE**

24. This Court may assert subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.*, because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant; and none of the exceptions under subsection 1332(d) apply.

25. The Court has personal jurisdiction over Defendant Deckers Outdoor Corporation because it is headquartered in Goleta, California, regularly conducts business in this District, and has extensive contacts with this forum, including by selling and shipping its products to consumers from this District.

26. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant transacts substantial business in this District.

**COMMON FACTS**

**DEFENDANT'S BUSINESS MODEL AND SUPPLY CHAIN**

27. Defendant advertises, markets, sells, and distributes consumer products throughout the United States in physical retail stores and through its websites such as UGG.com.

28. Defendant's tariff-related pricing, pass-through, refund, and retention decisions alleged herein were made, directed, authorized, implemented, and/or controlled from Defendant's headquarters and principal place of business in Goleta, California.

29. Defendant sources a substantial majority of the products it sells from manufacturers and producers located in Vietnam and other countries subject to the IEEPA orders. Specifically, in the fiscal year ending on March 31, 2026, while less than 5% of Deckers' production came from China or any other country, the remainder of it came from Vietnam and Indonesia, two countries affected by the IEEPA tariffs.[7]

30. As shown through its protective refund action in the U.S. Court of International Trade, Defendant serves as the importer of record for Deckers products and paid IEEPA tariffs to U.S. Customs and Border Protection on those imports.

31. Upon information and belief, the products Plaintiffs purchased throughout the Class Period were imported from abroad during the IEEPA tariff period and were subject to IEEPA tariffs when imported.

**DEFENDANT'S PASS-THROUGH OF IEEPA TARIFFS TO CONSUMERS**

32. For purposes of this Complaint, the "Class Period" is defined as February 4, 2025 through February 24, 2026—the period during which IEEPA tariffs were in effect and enforced by U.S. Customs and Border Protection.

33. During the Class Period, Defendant charged retail prices inflated by the cost of IEEPA duties by raising prices on Deckers' consumer products. Indeed, Deckers' executives discussed tariff-related cost increases and product price hikes for their brands.[8]

---

[7] Deckers Outdoors Corporation, Annual Report (10-K) (filed March 31, 2026), https://www.sec.gov/ix?doc=/Archives/edgar/data/0000910521/000162828026037664/deck-20260331.htm.

[8] Deckers (DECK) Q1 2026 Earnings Call Transcript, https://www.fool.com/earnings/call-transcripts/2025/08/05/deckers-deck-q1-2026-earnings-call-transcript/?referring_guid=310978af-3f67-4f1f-a0d8-a486c229de82&source=financialcontent&utm

34. As early as May 22, 2025, Deckers stated that it would pass along the cost of the tariffs to its customers. In their earnings call that month, they acknowledged the possibility of "flexing the pricing power of our brands . . . [through] strategic, selective and staggered implementation in the US market."[9]

35. Two months later, Deckers' planned price increases had begun to take effect. On July 24, 2025, during the Q1 2026 earnings call, Deckers' CFO Steven Fasching confirmed that the company had "implemented selective initial price increases, which went into effect on July 1."[10]

36. By the time Defendant implemented these selective price increases on July 1, 2025, the United States Court of International Trade had already held on May 28, 2025 that the President lacked statutory authority under IEEPA to impose the tariffs. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025). On August 29, 2025, while Defendant's tariff-related pricing remained in effect and before Plaintiffs' purchases, the Federal Circuit, sitting *en banc*, affirmed that determination. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025). Thus, Defendant continued its tariff-related pricing after federal courts had determined that the underlying tariffs lacked statutory authorization.

37. During the Class Period, Defendant passed the cost of IEEPA tariffs onto consumers, including Plaintiffs and Members of the Class, by inflating the prices of goods it sold.

**PLAINTIFFS' PURCHASES OF DECKERS PRODUCTS**

38. Within the Class Period, Plaintiff Linda Norberg purchased her UGG products from Von Maur, a physical department store and an authorized retailer of UGG-branded products.

---

[9] Deckers Brands Q4 2025 Earnings Call Transcript (May 22, 2025) [https://d1io3yog0oux5.cloudfront.net/_c5d58e1765fa4e04f09f844f9a856dba/deckers/db/3594/34556/webcast_transcript/CORRECTED-TRANSCRIPT-_Deckers-Outdoor-Corp-DECK-US-Q4-2025-Earnings-Call.pdf]

[10] Deckers Brands Q1 2026 Earnings Call Transcript, (Jul. 24, 2025) [https://d1io3yog0oux5.cloudfront.net/_c5d58e1765fa4e04f09f844f9a856dba/deckers/db/3594/34557/webcast_transcript/CORRECTED-TRANSCRIPT-Deckers-Outdoor-Corp-DECK-US-Q1-2026-Earnings-Call.pdf]

39. Plaintiff Norberg purchased multiple UGG products including on September 15, 2025, September 25, 2025, and on October 12, 2025, including the Tazz II, Goldenstar UGG and Tasman II footwear. For instance, on October 12, 2025, Plaintiff Norberg purchased two pairs of the Tasman II shoes for a total purchase price of $267.50. All such purchases were during the period unlawful tariffs were in effect.

40. On information and belief, Von Maur was and continues to be an authorized retailer of UGG products, and the price Plaintiff Norberg paid for those products reflected Defendant's tariff-related pricing decisions, including wholesale pricing, MSRP, minimum advertised pricing, or other pricing practices set, influenced, or implemented by Defendant. Upon information and belief, these pricing decisions and practices were developed, authorized, directed, and/or implemented by Defendant from its California headquarters.

41. Specifically, Defendant establishes wholesale prices and manufacturer-recommended retail price points for UGG-branded footwear and other products sold through authorized retailers, including Von Maur. Publicly observable pricing of UGG footwear at major authorized retailers, including Von Maur, reflects substantial consistency with Defendant's established model-specific retail price points. Upon information and belief, increases in Defendant's wholesale prices increased the cost to authorized retailers, including Von Maur, of acquiring Defendant's products, and those increased costs were reflected, in whole or in part, in the retail prices ultimately paid by consumers, including Plaintiff Norberg.

42. Within the Class Period, Plaintiff Coty Kelly purchased multiple UGG products in December 2025 directly from Defendant at its UGG Store in Aurora, Illinois located at 1650 Premium Outlets Blvd Ste 1420 Aurora, IL 60502, and purchased four pairs of UGG footwear for approximately $650.

43. Plaintiffs paid more for these products than they otherwise would have paid because the prices reflected, in whole or in part, Defendant's tariff-related increases in the prices charged for its products.

44. Publicly available archived pricing from http://web.archive.org/ further reflects contemporaneous price increases for several UGG products during the period in which Defendant announced and implemented tariff-related pricing actions. For example, the Women's Tasman Slipper was listed at approximately $110 in January 2025, $120 in March 2025, and $125 in October 2025; the Women's Classic Ultra Mini increased from $150 to $160; and the Men's Scuff increased from $90 to $100. These price increases occurred during the same period in which Defendant publicly discussed tariff-related pricing measures and subsequently confirmed that selective price increases went into effect on July 1, 2025.

45. On information and belief, these items were imported from countries subject to IEEPA tariffs and were imported by or for Defendant during the period in which those tariffs were in effect. The product-level import origin, importer-of-record information, tariff classification, entry data, duty-payment records, and any records reflecting whether IEEPA tariff costs were incorporated into retail pricing are within Defendant's possession, custody, or control.

46. Defendant paid IEEPA tariffs on such items that Plaintiffs purchased and embedded the cost of those tariffs in the prices charged or ultimately paid by Plaintiffs. But for Deckers' pass-through of IEEPA tariff costs, Plaintiffs would have paid lower prices for the products they purchased.

47. Defendant's retention of the unlawful IEEPA Tariff costs that were passed on to Plaintiffs and the Class Members offends public policy as it is unconscionable and unfair for Plaintiffs and similarly situated consumers to shoulder Defendant's tax burden under the IEEPA Tariffs when those Tariffs were unlawful and should not have been collected.

48. As a result of Defendant's practice of passing on Tariff costs to its customers, Plaintiffs and the Class Members were forced to pay Defendant's tax burdens because Defendant passed the unlawful IEEPA Tariffs on to them.

49. Plaintiffs and the members of the Class have unequal bargaining power to Defendant and are unable to negotiate the payment of the unlawful IEEPA Tariffs from Defendant, and therefore Plaintiffs and the Class members could not avoid paying the unlawful IEEPA Tariffs.

50. Allowing Defendant to keep the proceeds of the unlawful IEEPA Tariff charges deprives Plaintiffs and Members of the Class of the money paid for the cost of the unlawful IEEPA Tariffs while providing nothing of value to Plaintiffs or the Class's Members.

51. But for Defendant charging Plaintiffs, and the Members of the Class the cost of the unlawful IEEPA Tariffs, Plaintiffs and the Members of the Class would not have needed to shoulder the cost of the unlawful IEEPA Tariffs.

**DEFENDANT IS ACTIVELY SEEKING REFUND OF APPROXIMATELY $120 MILLION IN IEEPA TARIFFS**

52. On March 4, 2026, the United States Court of International Trade issued a significant order in *Atmus Filtration, Inc. v. United States*, directing U.S. Customs and Border Protection to refund duties imposed under the IEEPA. *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026).

53. The Court of International Trade later reinforced that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Supreme Court's decision in *Learning Resources. Atmus Filtration*, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026). The Court ordered CBP to liquidate all unliquidated entries "without regard to IEEPA duties" and to reliquidate any liquidated entries for which liquidation is not final without regard to those duties. *Id.* at *2-3.

54. According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at ¶ 12.

55. Defendant has now quantified the IEEPA tariffs it paid. In its Form 10-Q filed July 30, 2026, Defendant disclosed that it previously paid an aggregate gross amount of approximately $120 million in IEEPA tariffs.[11]

56. In addition to affirmatively seeking refunds of the IEEPA tariffs it paid through the protective action it filed in the U.S. Court of International Trade, Defendant further disclosed that, subsequent to June 30, 2026, it "began filing for refunds of previously paid IEEPA tariffs pursuant to the CAPE Phase 2 administrative refund process."[12] Defendant therefore is not merely eligible or positioned to seek repayment of its IEEPA tariffs; Defendant has affirmatively invoked the administrative refund process to recover those amounts from the government.

57. Defendant has acknowledged that the net economic benefit it ultimately receives may be less than the approximately $120 million gross amount because, among other things, Defendant provided accommodations under cost-sharing arrangements with certain independent manufacturers. Defendant has also acknowledged that income taxes payable on refunds received and other factors may reduce its ultimate net recovery. *Deckers Outdoor Corp.,* Quarterly Report (Form 10-Q), at 15 (July 30, 2026).[13]

58. Defendant has also publicly discussed how it may use tariff-refund proceeds when recovered. Defendant's Chief Financial Officer, Steve Fasching, stated that certain manufacturing

---

[11] SEC Form 10-Q filed July 30, 2026, https://www.sec.gov/Archives/edgar/data/910521/000091052126000022/deck-20260630.htm

[12] *Id.*

[13] *Id.*

partners had shared Defendant's tariff costs and that Defendant intended to ensure those partners were "taken care of" with respect to amounts returned.[14]

59. Thus, Defendant has expressly contemplated returning tariff recoveries to partners that shared the tariff burden. Yet Defendant has not announced a corresponding mechanism to return any portion of recovered tariff amounts to consumers who purchased Defendant's products at prices reflecting tariff-related costs who also shared in the tariff burden.

60. When Defendant receives IEEPA tariff refunds corresponding to tariff costs previously incorporated into the prices of products sold to Plaintiffs and Class Members, while retaining the tariff-related amounts already collected through those prices, Defendant will retain the economic benefit of both the consumer payments reflecting those tariff costs and the corresponding governmental recovery.

61. Defendant's anticipated governmental recovery is not merely hypothetical or speculative. The IEEPA refund process is operational, and numerous companies have publicly disclosed that they have already received substantial IEEPA tariff refunds from the government, including consumer-facing companies operating in retail, apparel, and other product markets.[15] Other companies receiving such refunds have further recognized obligations or established mechanisms to return corresponding amounts to customers who previously bore the tariff costs. These actual governmental payments confirm that Defendant has entered an active refund process

[14] "**Analyst (Samuel Poser):** And how do you intend I assume you filed for the refunds. How do you intend to account for it once you get it? **Steven J. Fasching:** Yes. So as we have said earlier, the gross amount that we paid was around $120 million. And we will look once we have received the money back Clearly, we have partners who were cost sharing in that. So we want to make sure that we are taking care of them in terms of any return amounts that is still to be determined. And then for the accounting of it, we will address that kind of when we see it come back into the bank account." https://www.aol.com/articles/deckers-deck-q4-2026-earnings-222123000.html.

[15] See, e.g., ON, Inc. (shoe and clothing company received CHF 27.9 million (around $35 million) in IEEPA tariff refunds); Tapestry, Inc. (approximately $2.1 million in cash refunds received and approximately $114.7 million in remaining refunds recorded as probable); Floor & Decor Holdings, Inc. (approximately $87 million in IEEPA tariff refunds received); LCI Industries (approximately $94.9 million received); Mettler-Toledo International Inc. (approximately $42.9 million received, followed by additional recovery).

– through which similarly situated importers are presently recovering previously paid IEEPA tariffs – and Defendant is set to recover.

62. Defendant, meanwhile, has disclosed that it paid approximately $120 million in IEEPA tariffs and has now begun filing claims to recover those tariffs through the CAPE Phase 2 administrative refund process. Although other companies are already receiving substantial governmental refunds—and some have undertaken to return corresponding recoveries to customers—Defendant has announced no corresponding mechanism to compensate consumers who purchased its products at prices reflecting tariff-related costs. Instead, Defendant has publicly contemplated returning portions of its eventual recovery to partners that shared its tariff costs and potentially using the remaining economic benefit.

63. Accordingly, Defendant is entitled to substantial refunds for IEEPA tariffs it paid as the importer of record for goods sourced from Vietnam, China and other countries subject to IEEPA tariffs.

64. This presents an obvious problem: Although Defendant will recover or is positioned to recover tariff refunds on the tariffed goods it sold, Defendant's customers have already borne the economic brunt of these tariffs by paying higher prices set by Defendant. The risk of Defendant obtaining double recovery is therefore imminent.

65. Defendant is poised to be paid twice for the same unlawful tariff burden: once by its customers (including Plaintiffs) through elevated prices and import charges, and once by the U.S. government through tariff refunds.

**CLASS ALLEGATIONS**

66. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs bring their claims individually and on behalf of the following Class, defined as follows:

> All persons in the United States who, during the Class Period, purchased products imported into the United States by or for Defendant from countries subject to

IEEPA duties and for which Defendant paid, deposited, or accrued IEEPA duties that were reflected in retail pricing.

67. Excluded from the Class are: (1) Defendant; (2) Defendant's officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge presiding over this action, their staff, and the members of their family; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants.

68. **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other Class members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

69. **Predominance & Superiority.** Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

70. **Final Declaratory or Injunctive Relief.** Defendant has acted and failed to act on grounds generally applicable to Plaintiffs and the Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

71. **Typicality.** The factual and legal basis of Defendant's liability to Plaintiffs and to the other Class members are the same, resulting in injury to Plaintiffs and to all of the other

members of the Class. Plaintiffs and the other members of the Class have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

72. **Numerosity.** Upon information and belief, there are thousands, if not hundreds of thousands, of Class members such that joinder of all members is impracticable.

73. **Commonality.** There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

A. Whether Defendant paid IEEPA tariffs on products sold to consumers during the Class Period;

B. Whether Defendant passed IEEPA tariff costs onto consumers through elevated prices;

C. Whether Defendant's conduct constituted unfair or deceptive trade practices under California's consumer protection laws;

D. Whether Defendant was unjustly enriched as a result of charging inflated retail prices based on IEEPA tariff costs;

E. Whether Defendant has been or will be unjustly enriched by receiving government refunds, credits, reliquidation, or other recovery for tariffs it passed through to consumers;

F. Whether the Class members are entitled to restitution, actual damages, and attorneys' fees and costs;

G. The proper measure and calculation of damages and restitution; and

H. Whether Defendant should be enjoined from engaging in such conduct in the future.

## FIRST CAUSE OF ACTION

**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.**
**(On Behalf of Plaintiffs and the Class)**

74. Plaintiffs incorporate all of the allegations and statements made above as if fully stated herein.

75. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

76. The acts and practices of Deckers as alleged herein constitute business acts and practices.

77. In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Deckers from continuing to conduct business through unlawful and/or unfair acts and practices.

78. Plaintiffs and the Class also seek an order for the restitution of all monies attributable to tariff-related amounts incorporated into product prices, which were unjustly acquired through acts of unfair competition.

### Unlawful

79. Defendant's conduct constitutes unlawful business acts and practices within the meaning of the UCL.

80. Defendant imposed and collected consumer overcharges that were a result of tariffs imposed pursuant to IEEPA. Those tariffs were subsequently held unlawful *ab initio* and invalid by the United States Court of International Trade, affirmed by the Federal Circuit sitting *en banc*, and affirmed by the Supreme Court of the United States. Defendant's imposition and collection of tariff-related price increases based on tariffs void *ab initio* constitutes unlawful conduct actionable under the UCL.

### Unfair

81. Deckers' conduct with respect to the collection of tariff-related consumer overcharges was unfair because its conduct was immoral, unethical, unscrupulous, or substantially

injurious to consumers, and the utility of its conduct, if any, did and does not outweigh the gravity of the harm to its victims. Specifically, after passing tariff-related costs through to consumers, Defendant is now affirmatively seeking governmental reimbursement of those same tariff costs while retaining the economic benefit of the tariff-related amounts already borne by consumers, thereby positioning itself to recover the same costs twice.

82. Deckers' conduct with respect to the collection of tariff-related consumer overcharges was also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including the determination by three separate courts, including the Supreme Court of the United States, that the tariffs were unlawfully imposed. As alleged above, Defendant implemented its selective price increases after the Court of International Trade had already determined that the IEEPA tariffs lacked statutory authorization, and continued its tariff-related pricing after the Federal Circuit affirmed that determination. Moreover, the unfair conduct alleged herein is not limited to Defendant's initial decision to increase prices in response to the IEEPA tariffs, but includes Defendant's subsequent pursuit of governmental reimbursement for tariff costs that Defendant had already passed through, in whole or in part, to consumers.

83. Deckers' conduct with respect to the collection of tariff-related consumer overcharges was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Consumers could not reasonably have avoided this injury because they had no ability to obtain the corresponding governmental tariff refunds themselves. Nor does Defendant's retention of both the economic benefit of tariff-related amounts borne by consumers and the corresponding governmental recovery provide any countervailing benefit to consumers or competition.

84. Defendant's unfair conduct alleged herein was a substantial factor and proximate cause of Plaintiffs' economic injuries because, as alleged above, Defendant's tariff-related pricing

actions caused Plaintiffs to pay more for Defendant's products than they otherwise would have paid.

**SECOND CAUSE OF ACTION**
**Unjust Enrichment**
**(on behalf of Plaintiffs and the Class)**

85. Plaintiffs incorporate the foregoing allegations as if fully stated herein.

86. Plaintiffs and the members of the Class conferred monetary benefits to Defendant by paying elevated prices for products that included unlawful IEEPA Tariff costs. Although Plaintiff Norberg purchased her products through Defendant's authorized retailer, Von Maur, Defendant received the economic benefit associated with those retail sales.

87. Defendant has been unjustly enriched because it collected, received or retained amounts derived from or attributable to Plaintiffs' and the Class Members' purchases that included amounts attributable to IEEPA tariff costs, while also retaining the right to seek or receive refunds, credits, reliquidation, or other recovery of those same tariff costs from the government. Defendant has now exercised that right by beginning to file claims through CBP's CAPE Phase 2 administrative refund process seeking recovery of the approximately $120 million in IEEPA tariffs it previously paid.

88. Defendant knew and appreciated the benefit it received because it set, charged, and retained retail prices that included tariff-related cost increases paid by Plaintiffs and the Class. At minimum, after the Supreme Court's invalidation of the IEEPA tariffs and subsequent refund-related proceedings, Defendant knew or should have known that any refund or recovery of IEEPA duties would correspond to tariff costs that consumers had already economically borne through Defendant's prices. Defendant thereafter affirmatively began seeking recovery of those previously paid tariffs through the CAPE Phase 2 administrative refund process.

89. Defendant's retention of these benefits is unjust and inequitable now that Defendant is positioned to retain both the tariff-related amounts collected from consumers and the

corresponding refund rights or proceeds from the government, and has affirmatively begun seeking governmental recovery of approximately $120 million in previously paid IEEPA tariffs. Defendant has further publicly contemplated returning portions of any tariff recovery to manufacturing partners that shared its tariff costs and using the remaining economic benefit for its business or shareholders, while announcing no corresponding mechanism for consumers who bore tariff-related costs through Defendant's prices.

90. The IEEPA Tariffs were subsequently determined to lack statutory authorization, making the tariff payments refundable or recoverable by importers such as Defendant. Defendant has now begun seeking such refunds through CBP's CAPE Phase 2 administrative refund process.

91. There is no adequate remedy at law for Plaintiffs and the Members of the Class, as Defendant has established no mechanism to refund tariff costs to consumers, and consumers have no direct statutory cause of action to recover IEEPA tariffs from the government.

92. Under principles of equity and good conscience, it would be unjust to permit Defendant to retain both (a) the elevated prices consumers paid due to tariff pass-through pricing, and (b) government refunds or other recovery of those same tariff costs.

93. Plaintiffs and the other members of the Class are entitled to restitution in the amount by which Defendant has been unjustly enriched to Plaintiffs and the members of the Class's detriment, and an order requiring Defendant to disgorge any additional profits or other benefit it has retained as a result of its unjust and unlawful conduct, including the imposition of a constructive trust over any IEEPA tariff refund proceeds Defendant has received or may receive.

**<u>THIRD CAUSE OF ACTION</u>**
**Money Had and Received**
**(on behalf of Plaintiffs and the Class)**

94. Plaintiffs incorporate all of the allegations and statements made above as if fully stated herein.

95. This Count is pleaded in the alternative to the Second Cause of Action. While the Second Cause of Action (Unjust Enrichment) addresses the inequity of Defendant's retention of consumer overcharges already collected, this Count more particularly addresses Defendant's pursuit, receipt, and retention of government refund proceeds that, in equity, represent a return of costs that were economically borne by Members of the Class, not by Defendant.

96. Defendant received money and monetary benefits attributable to Plaintiffs' and Class Members' purchases in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

97. Defendant received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, to U.S. Customs and Border Protection as duties on imported goods.

98. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization. *Learning Resources*, Slip Op. at 20.

99. Defendant has now begun filing claims through CBP's CAPE Phase 2 administrative refund process seeking recovery of the approximately $120 million in IEEPA tariffs it previously paid and through the protective action Defendant filed in the Court of International Trade, *Deckers Outdoor Corporation v. United States*, No. 26-00291 (Ct. Int'l Trade Jan. 8, 2026). Upon information and belief, Defendant has not paid or distributed any portion of the refunds sought by Defendant to Plaintiffs or other consumers who bore the economic burden of the tariffs through elevated prices.

100. The money that Defendant is now seeking to recover from the government as IEEPA tariff refunds represents, in equity, a return of money that belonged to Plaintiffs and to each Member of the proposed Class—the consumers who paid elevated prices due to Defendant's tariff pass-through.

101. Defendant has not returned this money to Plaintiffs or the Class.

102. In equity and good conscience, Defendant should not be permitted to retain the funds it is now affirmatively seeking to recover from the government as IEEPA tariff refunds. Those funds belong, in equity, to Plaintiffs and the Class, and Defendant is obligated to return them.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment against Defendant Deckers Outdoor Corporation as to each and every cause of action, and the following remedies:

a. An Order certifying the Class, defining the Class as requested herein, appointing Plaintiffs as Class representatives, and appointing their counsel as Class counsel;

b. An award of any actual, compensatory, and enhanced damages permitted to Plaintiffs and other Class Members, for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c. An order declaring that any refund, credit, reliquidation proceeds, or settlement payment that Defendant receives or has received from U.S. Customs and Border Protection, the U.S. Treasury, or any other governmental authority on account of IEEPA tariffs paid during the Class Period is held in constructive trust for the benefit of Plaintiffs and the Class, and an order enjoining Defendant from dissipating, transferring, commingling, or otherwise diminishing such refund proceeds pending final judgment in this action;

d. An equitable accounting of all IEEPA-related duties paid by Defendant during the Class Period, all CAPE refund applications and other refund requests submitted by Defendant to U.S. Customs and Border Protection, and all refund proceeds received or anticipated to be received by Defendant;

e. An award of reasonable attorneys' fees, costs, and other litigation expenses;

f. An award of pre- and post-judgment interest as available under law;

g. The disgorgement of any funds in the amount Defendant was unjustly enriched by its conduct; and

h. Such further and other relief as the Court deems just, reasonable, and equitable.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

Dated: August 28, 2026

LINDA NORBERG and COTY KELLY, individually and on behalf of a class of similarly situated individuals

By: /s/ *Eugene Y. Turin*
One of Plaintiffs' Attorneys

Eugene Y. Turin (SB # 342413)
MCGUIRE LAW, P.C.
1089 Willowcreek Road Suite 200
San Diego, CA 92131
Tel: (312) 893-7002 Ex. 3
Fax: 312-275-7895
eturin@mcgpc.com

*Counsel for Plaintiffs and the Putative Class Members*