ADRMOP

# U.S. District Court
# California Northern District (San Francisco)
# CIVIL DOCKET FOR CASE #: 3:26-cv-06100-JSC

Iglesias v. Levi Strauss & Co.
Assigned to: Judge Jacqueline Scott Corley
Cause: 28:1332 Diversity-Contract Dispute

Date Filed: 06/18/2026
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Robert Iglesias** represented by

**Brandon P. Jack**
Emery Reddy, PC
600 Stewart Street, Suite 1100
Seattle, WA 98101
(916) 823-6955
Email: brandon@emeryreddy.com
*ATTORNEY TO BE NOTICED*

**Gary M. Klinger**
Milberg Coleman Bryson Phillips
Grossman, PLLC (IL)
227 W Monroe St., Ste. 2100
Chicago, IL 60606
(866) 252-0878
Email: gklinger@milberg.com
*ATTORNEY TO BE NOTICED*

**Gregory Haroutunian**
Emery Reddy PC
CA
333 University Avenue
Suite 200
Sacramento, CA 95825
916-823-6955
Email: gregory@emeryreddy.com
*ATTORNEY TO BE NOTICED*

**Jason T. Dennett**
Milberg, PLLC
1700 7th Avenue
Suite 2100
Seattle, WA 98101
206-949-1190
Email: jdennett@milberg.com
*ATTORNEY TO BE NOTICED*

**John J. Nelson**
Milberg, PLLC
280 S. Beverly Drive-Penthouse Suite
Beverly Hills, CA 90212

(858) 209-6941
Fax: (865) 522-0049
Email: jnelson@milberg.com
*ATTORNEY TO BE NOTICED*

**Jonathan Tehan Deters**
Markovits, Stock & De Marco, LLC
119 East Court Street
Ste 530
Cincinnati, OH 45202
513-651-3700
Fax: 513-665-0219
Email: jdeters@msdlegal.com
*ATTORNEY TO BE NOTICED*

**Nicole A. Maruzzi**
Feldman Shepherd Wohlgelernter Tanner
Weinstock Dodig LLP
1845 Walnut Street
21st Floor
Philadelphia, PA 19103
215-567-8300
Email: nmaruzzi@feldmanshepherd.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Terence Coates**
Markovits, Stock & DeMarco - Cincinnati
Ste. 530
119 East Court Street
Cincinnati, OH 45202
513-651-3700
Fax: 513-665-0219
Email: tcoates@msdlegal.com
*ATTORNEY TO BE NOTICED*

**Zachary Arbitman**
Feldman Shepherd Wohlgelernter Tanner
Weinstock Dodig LLP
1845 Walnut St
21st Floor
Philadelphia, PA 19103
215-567-8300
Fax: 215-567-8333
Email: zarbitman@feldmanshepherd.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**M. Anderson Berry**
Emery Reddy, PC
CA
333 University Avenue
Suite 200
Sacramento, CA 95825

916-823-6955
Email: anderson@emeryreddy.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Levi Strauss & Co.**

represented by

**Connor Rowinski**
DLA Piper LLP US
1251 Avenue of the Americas
New York, NY 98102
212-335-4612
Fax: 917-776-8612
Email: connor.rowinski@us.dlapiper.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Isabelle Louise Ord**
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
(415) 836-2500
Fax: (415) 836-2501
Email: isabelle.ord@dlapiper.com
*ATTORNEY TO BE NOTICED*

**Keara Marie Gordon**
DLA Piper LLP
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
(212) 335-4632
Email: keara.gordon@us.dlapiper.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tia Nguyen**
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
(206) 839-4846
Email: tia.nguyen@us.dlapiper.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/18/2026 | 1 | COMPLAINT against Levi Strauss & Co. ( Filing fee $ 405, receipt number ACANDC-22120651.). Filed by Robert Iglesias. (Attachments: # 1 Civil Cover Sheet)(Berry, M.) (Filed on 6/18/2026) (Entered: 06/18/2026) |
| 06/18/2026 | 2 | Proposed Summons. (Berry, M.) (Filed on 6/18/2026) (Entered: 06/18/2026) |
| 06/23/2026 | 3 | Case assigned to Magistrate Judge Thomas S. Hixson. |

| | | |
|---|---|---|
| | | Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.<br><br>Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 7/7/2026. (mkh, COURT STAFF) (Filed on 6/23/2026) (Entered: 06/23/2026) |
| 06/23/2026 | 4 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 9/10/2026. Initial Case Management Conference set for 9/17/2026 10:00 AM in San Francisco, Courtroom E, 15th Floor. (pjf, COURT STAFF) (Filed on 6/23/2026) (Entered: 06/23/2026)** |
| 06/23/2026 | 5 | Summons Issued as to Levi Strauss & Co.. (pjf, COURT STAFF) (Filed on 6/23/2026) (Entered: 06/23/2026) |
| 06/26/2026 | 6 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-22146651.) filed by Robert Iglesias. (Attachments: # 1 Exhibit Certificate of Good Standing)(Arbitman, Zachary) (Filed on 6/26/2026) (Entered: 06/26/2026) |
| 06/26/2026 | 7 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-22146733.) filed by Robert Iglesias. (Attachments: # 1 Exhibit Certificate of Good Standing)(Maruzzi, Nicole) (Filed on 6/26/2026) (Entered: 06/26/2026) |
| 06/26/2026 | 8 | CLERK'S NOTICE re: 6 MOTION for leave to appear in Pro Hac Vice as to Arbitman, Zachary. The Bar number of named local counsel, Anderson Berry, 2662879 is invalid. Please re-file application with corrected bar number. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (amg, COURT STAFF) (Filed on 6/26/2026) (Entered: 06/26/2026) |
| 06/26/2026 | 9 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number 22146651.) Filing fee previously paid on 6/26/2026 filed by Robert Iglesias. (Attachments: # 1 Exhibit Certificate of Good Standing)(Arbitman, Zachary) (Filed on 6/26/2026) (Entered: 06/26/2026) |
| 06/26/2026 | 10 | **ORDER by Judge Thomas S. Hixson Granting 7 Motion for Pro Hac Vice as to Nicole A. Maruzzi. (amg, COURT STAFF) (Filed on 6/26/2026) (Entered: 06/26/2026)** |
| 06/26/2026 | 11 | **ORDER by Judge Thomas S. Hixson Granting 9 Motion for Pro Hac Vice as to Zachary P. Arbitman. (amg, COURT STAFF) (Filed on 6/26/2026) (Entered: 06/26/2026)** |
| 07/01/2026 | 12 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Robert Iglesias.. (Berry, M.) (Filed on 7/1/2026) (Entered: 07/01/2026) |
| 07/02/2026 | 13 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned.<br><br>ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED. |

| | | |
|---|---|---|
| | | *This is a text only docket entry; there is no document associated with this notice.* (amg, COURT STAFF) (Filed on 7/2/2026) (Entered: 07/02/2026) |
| 07/02/2026 | 14 | **ORDER REASSIGNING CASE**<br><br>IT IS ORDERED that this case is reassigned using a proportionate, random and blind system pursuant to General Order No. 44 to Judge Jacqueline Scott Corley. Magistrate Judge Thomas S. Hixson no longer assigned to the case.<br><br>Counsel are instructed that all future filings shall bear the updated judicial initials immediately after the case number. Counsel are reminded to verify the location of the judge on the court website. All hearing and trial dates presently scheduled are vacated. However, existing briefing schedules for motions remain unchanged. Motions must be renoticed for hearing before the judge to whom the case has been reassigned, but the renoticing of the hearing does not affect the prior briefing schedule. Other deadlines such as those for ADR compliance and discovery cutoff also remain unchanged.<br><br>Mark B. Busby<br>Clerk, United States District Court<br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)*<br><br>(tke, COURT STAFF) (Filed on 7/2/2026) (Entered: 07/02/2026) |
| 07/02/2026 | 15 | **CLERK'S NOTICE RESCHEDULING INITIAL CASE MANAGEMENT CONFERENCE.** Initial Case Management Conference reset for 9/16/2026 at 2:00 p.m. before Judge Jacqueline Scott Corley by a Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/jsc<br><br>**Court Appearances:** Advanced notice is required of counsel or parties who wish to be identified by the court as making an appearance or will be participating in the argument at the hearing. **A list of names must be sent to the CRD at jsccrd@cand.uscourts.gov no later than noon on 9/15/2026.**<br><br>**Civ LR 77-3(d).** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://cand.uscourts.gov/zoom.<br><br>(ahm, COURT STAFF) (Filed on 7/2/2026) (Entered: 07/02/2026) |
| 07/02/2026 | 16 | SUMMONS Returned Executed by Robert Iglesias. Levi Strauss & Co. served on 6/30/2026, answer due 7/21/2026. (Berry, M.) (Filed on 7/2/2026) (Entered: 07/02/2026) |
| 07/16/2026 | 17 | NOTICE of Appearance filed by Tia Nguyen on behalf of Levi Strauss & Co. (Nguyen, Tia) (Filed on 7/16/2026) (Entered: 07/16/2026) |
| 07/16/2026 | 18 | Corporate Disclosure Statement by Levi Strauss & Co. *Defendant Levi Strauss & Co.'s Statement Pursuant to Fed. R. Civ. P. 7.1 and Certification of Non-Party Interested Entities or Persons Pursuant to Local Rule 3-15* (Nguyen, Tia) (Filed on 7/16/2026) (Entered: 07/16/2026) |

| | | |
|---|---|---|
| 07/16/2026 | 19 | STIPULATION WITH PROPOSED ORDER *to Extend Time to Answer, Move, or Otherwise Respond to the Complaint and to Continue Initial Case Management Conference and Related Deadlines; Declaration of Tia Q. Nguyen* filed by Levi Strauss & Co.. (Nguyen, Tia) (Filed on 7/16/2026) (Entered: 07/16/2026) |
| 07/17/2026 | 20 | NOTICE of Appearance filed by Isabelle Louise Ord on behalf of Levi Strauss & Co. (Ord, Isabelle) (Filed on 7/17/2026) (Entered: 07/17/2026) |
| 07/17/2026 | 21 | **ORDER by Judge Jacqueline Scott Corley granting 19 Stipulation to Extend Time to Answer, Move, or Otherwise Respond to the Complaint and to Continue Initial Case Management Conference and Related Deadlines. (ahm, COURT STAFF) (Filed on 7/17/2026) (Entered: 07/17/2026)** |
| 07/20/2026 | 22 | MOTION for leave to appear in Pro Hac Vice *for Keara Gordon* ( Filing fee $ 328, receipt number ACANDC-22233971.) filed by Levi Strauss & Co.. (Gordon, Keara) (Filed on 7/20/2026) (Entered: 07/20/2026) |
| 07/20/2026 | 23 | MOTION for leave to appear in Pro Hac Vice *for C. Rowinski* ( Filing fee $ 328, receipt number ACANDC-22234024.) filed by Levi Strauss & Co.. (Rowinski, Connor) (Filed on 7/20/2026) (Entered: 07/20/2026) |
| 07/20/2026 | 24 | **ORDER by Judge Jacqueline Scott Corley granting 22 Motion for Pro Hac Vice as to Keara Gordon. (ahm, COURT STAFF) (Filed on 7/20/2026) (Entered: 07/20/2026)** |
| 07/20/2026 | 25 | **ORDER by Judge Jacqueline Scott Corley granting 23 Motion for Pro Hac Vice as to Connor D. Rowinski. (ahm, COURT STAFF) (Filed on 7/20/2026) (Entered: 07/20/2026)** |
| 08/27/2026 | 26 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Nguyen, Tia) (Filed on 8/27/2026) (Entered: 08/27/2026) |


| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 09/09/2026 19:53:53 | | | |
| **PACER Login:** | kgordon1 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:26-cv-06100-JSC |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY REDDY, PC**
333 University Ave.
Sacramento, CA 95825
Phone: 916.823.6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Jason T. Dennett*
**MILBERG, PLLC**
1700 7th Avenue, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
*jdennett@milberg.com*

*[additional Plaintiff's Counsel listed on signature page]*

*Attorney for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT IGLESIAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LEVI STRAUSS & CO.,<br><br>Defendant | NO. 3:26-cv-06100<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Robert Iglesias ("Plaintiff") on behalf of himself and all others similarly situated, by and through counsel, bring this action against Defendant Levi Strauss & Co. ("Levi" or "Defendant"). The allegations contained herein, which are based on Plaintiff's knowledge of facts pertaining to himself and his own actions and counsels' investigations, and upon information and belief as to all other matters, are as follows:

Case MDL No. 3180 Document 98-3 Filed 06/18/26 Page 2 of 29

## NATURE OF THE CASE

1. This class action arises from Levi's retention of windfall profits generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq*.

2. Beginning in February 2025, the federal government imposed sweeping tariffs on imports from numerous countries under purported authority of the IEEPA. Those tariffs dramatically increased the cost of imported consumer goods sold in the United States.

3. Major U.S. importers—including Levi—responded by increasing prices on consumer goods to offset the cost of these tariffs. As a result, American consumers paid higher retail prices for consumer goods reflecting the economic burden of those tariffs.

4. On February 20, 2026, the Supreme Court of the United States held that the IEEPA-based tariffs were unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

5. As a consequence of that decision, importers who paid those tariffs—including Levi—became entitled to refunds of the duties they previously paid to U.S. Customs and Border Protection ("CBP").

6. The economic reality of the tariff regime, however, is that importers like Levi did not ultimately bear all the costs of the tariffs. Instead, the importers passed the elevated costs on to consumers in the form of higher retail prices.

7. Levi therefore collected the tariff costs from consumers through elevated pricing, while having the ability to seek refunds of the same tariff payments from the federal government.

8. Unless restrained by this Court, Levi stands to recover the same tariff payments twice—once from consumers through higher prices and again from the federal government through tariff refunds, including interest paid by the government on those funds.

9. Levi has made no legally binding commitment to return tariff-related overcharges to the consumers who actually paid them.

10. This lawsuit seeks to prevent that unjust result.

11. Plaintiff brings this action on behalf of millions of consumers who purchased goods from Levi during the tariff period and who paid inflated prices reflecting Levi's pass-through of unlawful tariffs.

12. Plaintiff seeks restitution of those tariff overcharges, together with appropriate declaratory, injunctive, and monetary relief.

**JURISDICTION AND VENUE**

13. Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332(d)(2) because: (a) at least one member of the class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

14. The Court has personal jurisdiction over Defendant because Levi is headquartered in San Fransico, California, which is within this district, conducts significant business transactions in this District and because the wrongful conduct occurred in and emanated from this District.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business in located in in this District in San Fransico, California and a substantial portion of the events and conduct giving rise to the claims occurred in this District.

**PARTIES**

18. Plaintiff Robert Iglesias is a resident and citizen of Santa Ana, California. During the Class Period, Plaintiff Iglesias purchased goods from Levi that were subject to increased prices from the IEEPA tariffs, including Levi's 514 jeans and 505 jeans. Plaintiff Iglesias paid retail prices for those goods that were increased by Levi's tariff surcharge to account for the tariffs imposed on imported products. Plaintiff Iglesias would not have paid those higher prices, absent the unlawful tariffs and Levi's pass-through of those tariffs to consumers.

19. Defendant Levi Strauss & Co. is a Delaware corporation with its principal place of business at Levi's Plaza, 1155 Battery Street, San Francisco, California 94111. A significant

portion of the products Levi sells are imported goods subject to IEEPA tariffs imposed by the United States government.

## FACTUAL BACKGROUND

### A. Levi's Business

20. Operating since the 1850s, Levi is one of the oldest and best-known apparel companies in the United States. Levi manufactures, markets, and sells a variety of apparel for men, women, and kids including but not limited to jeans, shorts, shirts, overalls, sweatshirts, dresses, and skirts.

21. Levi sells its products to consumers through retailers that are located throughout the United States, in Levi's brand stores, and online through retailers and its own website.

22. Levi manufactures all its products outside of the United States, including in countries subject to IEEPA tariffs, such as Bangladesh, Pakistan, Cambodia, and Vietnam.[1] Thus, the IEEPA tariffs directly increased Levi's cost of importing merchandise into the United States.

23. Levi acknowledged that it paid "approximately $80 million" in tariff charges through the first quarter of 2026,[2] and it has largely passed on these charges to consumers. Indeed, since at least September 2025, Levi has repeatedly stated that it would raise prices on consumers to offset the tariff charges.

24. In April 2026, Levi's Chief Financial Officer Harmit Singh ("CFO Singh") "told CNBC that the company expects to receive around $80 million in refunds for tariffs it paid on importing denim and other apparel items from manufacturers around the world."[3]

///

///

///

---

[1] Levi Strauss & Co., Form 10-Q at 27 (April 7, 2026), *available at* https://www.sec.gov/Archives/edgar/data/94845/000009484526000020/lvis-20260301.htm

[2] *Id.*

[3] Dan Mangan *et al.*, CNBC, *Trump says 'I'll remember' companies that don't seek tariff refunds* (April 21, 2026), *available at* https://www.cnbc.com/2026/04/21/trump-says-hell-remember-companies-that-dont-seek-tariff-refund.html (last visited May 7, 2026)

Case 3:26-cv-... Document 1 Filed 06/09/26 Page 5 of 21

### B. The IEEPA Tariffs

25. Beginning in February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries pursuant to a series of executive orders declaring national emergencies related to trade and supply chain concerns.[4]

26. Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners. The orders included duties of approximately 25 percent on many imports from Canada and Mexico and additional tariffs on imports from China that were layered on top of existing duties, resulting in substantially higher effective tariff rates on Chinese goods.[5]

27. The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for retailers and other businesses that rely heavily on international supply chains to source merchandise—like Defendant Levi.[6]

28. Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including major retailers such as Levi—were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered merchandise into the country.[7]

29. Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature.[8]

---

[4] *See* Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

[5] *See* Reuters, *Trump Orders Tariffs on Canada, Mexico and China*, Feb. 1, 2025.

[6] *See* Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

[7] *See* U.S. Customs & Border Prot., *Importing Into the United States: A Guide for Commercial Importers*.

[8] *See* Reuters, *Businesses Sue Over Trump's Tariffs*, Apr. 2025.

30. On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation and invalidated the tariff orders issued pursuant to that statute.[9]

31. The Supreme Court's decision effectively eliminated the legal basis for the IEEPA tariffs and created a pathway for importers that had paid those duties—including large retailers like Levi—to seek refunds of the tariffs previously collected by the federal government.

**C. Tariffs Are Economically Borne by Consumers**

32. Economists and government agencies widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties.

33. Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods.[10]

34. When tariffs increase the cost of imported goods, retailers and other downstream sellers typically raise prices to offset those additional costs. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.[11] Companies consider tariffs to be costs that are to be incorporated into the pricing structure.

35. Levi followed this same pattern during the tariff period. As a major importer of consumer goods, Levi faced increased costs resulting from tariffs on its products and took steps to address those cost pressures through pricing and merchandising decisions.

---

[9] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026)

[10] *See* Julian Hinz et al., *America's Own Goal: Who Pays the Tariffs?*, Kiel Inst. for the World Econ. Policy Brief (Jan. 19, 2026); see also Mary Amiti, Stephen J. Redding & David Weinstein, *The Impact of the 2018–2019 Tariffs on Prices and Welfare*, 135 J. Econ. Persp. 187 (2020)

[11] *See* Jaison R. Abel, Richard Deitz & Jason Bram, *Are Businesses Absorbing the Tariffs or Passing Them On to Their Customers?*, Fed. Rsrv. Bank of N.Y., Liberty Street Econ. (June 4, 2025), available at https://libertystreeteconomics.newyorkfed.org.

36. As detailed below, Levi executives publicly acknowledged that tariffs would affect pricing decisions and the company's cost structure. In those communications, Levi leadership explained that tariffs increased the company's merchandise costs and required Levi to evaluate price adjustments and other operational responses designed to manage those additional expenses.

37. As a result, consumers who purchased goods from Levi during the tariff period paid elevated prices reflecting the tariff-related cost increases incorporated into Levi's retail pricing.

**D. Levi's Statements Regarding Tariff Related Price Increases and Refunds**

38. Levi publicly acknowledged, early in the tariff period, that tariffs would increase its costs and place upward pressure on consumer prices.

39. Since at least September 2025, Levi has been clear that it intended to continue to grow market share by increasing consumer prices to offset the impact of increasing tariffs. Specifically, during the Goldman Sachs Retailing Conference CFO Singh told retailers: "[t]he way I think about the brand is, I think we provide great price value to our consumers, and as long as we can do that, even in a higher tariff environment, even if after taking prices up a little, I think we'll be able to continue to grow market share. It's important to have the right product offers and then, you know, price products effectively. We are thinking through pricing. Everybody's thinking through pricing. You know, for us, it's more targeted pricing."[12]

40. In October 2025, during Levi's third quarter earnings call, CFO Singh told investors that Levi would utilize price increases as a mitigation tool to offset tariffs. Specifically, he said "[l]ooking to 2026, we are continuing to take actions to offset the impact of tariffs. As a

---

[12] Goldman Sachs 32nd Annual Global Retailing Conference 2025 Transcript (Sept. 3, 2025), *available at* https://stockanalysis.com/stocks/levi/transcripts/380802-goldman-sachs-32nd-annual-global-retailing-conference-2025/

reminder, these mitigation initiatives include promotion optimization, targeted pricing action, vendor negotiation, and further supply chain diversification."[13]

41. Levi's pricing actions contributed to the company growing its profits. CNBC reported on Levi's ability to thrive despite the tariffs: "Levi Strauss's profits are growing more than Wall Street expected despite higher costs from tariffs, thanks to targeted price increases and a shift away from wholesalers, the company said Thursday as it reported fiscal third quarter results. During the quarter, Levi's gross margin grew 1.1 percentage points to 61.7%, up from 60.6% in the year-ago period and better than the 60.7% analysts had expected, according to StreetAccount."[14]

42. CNBC also reported that Levi's "CEO Michelle Gass ["CEO Gass"] said the company has started to raise the price of some of its jeans and clothes and will hike more prices in the U.S. and other markets next year."[15]

43. In November 2025, Yahoo! Finance reported further on Levi's willingness to tariff costs on to consumers, quoting CEO Gass as stating: "There's only so much you can absorb from the tariffs, because they're just very high."[16]

44. Yahoo! Finance also reported on Levi's tariff mitigation efforts, which largely focused on having consumers bear to brunt of the tariffs: "Levi's approach to pricing is multifaceted: First, targeted and surgical pricing increases are being implemented, a measure also being taken by most apparel retailers (55% of executives expect further price increases in 2026 in response to tariffs). Second, the company is utilizing promotional levers, specifically pulling

---

[13] Levi Strauss & Co., Q3 2025 Earnings Call Transcript (Oct. 9, 2025), *available at* https://stockanalysis.com/stocks/levi/transcripts/362847-q3-2025/

[14] Gabrielle Fonrouge, CNBC, *Levi Strauss raises prices, helping to boost profit and outlook* (Oct. 9, 2025), *available at* https://www.cnbc.com/2025/10/09/levi-strauss-levi-q3-2025-earnings.html (last visited May 7, 2026)

[15] *Id.*

[16] Nick Lichtenberg, Yahoo! Finance, *'There's only so much you can absorb from the tariffs, because they're just very high': Levi's CEO states the plain truth* (Nov. 24, 2025), *available at https://finance.yahoo.com/news/only-much-absorb-tariffs-because-194156554.html* (last visited May 7, 2026)

back on discounts such as '20% off' events, which helps elevate the brand and mitigate tariff impact by improving margins. Third, the company is pricing for innovation, leveraging new products where consumers are 'likely willing to pay more.'"[17]

45. Levi continued to raise prices into 2026 due to tariffs. In January 2026, during Levi's fourth quarter earnings call, CFO Singh addressed the negative impact of tariffs on Levi's gross margins stating that one way to offset the negative impact was to increase prices. Specifically, he said "Gross margin for the quarter was 60.8% of net revenues, contracting 100 basis points relative to last year, in line with our expectations, primarily due to the impacts of tariffs, which were partially offset by pricing actions and higher full-price selling."[18]

46. The Wall Street Journal reported on the company's price increases in 2026, noting that "Levi Strauss raised prices last month in response to tariffs and is rolling out additional price increases this month. Among the items now costing more: ribcage straight ankle women's jeans, priced $10 more at $108, and original fit men's jeans that are $5 more at $84.50."[19] The WSJ also reported that Levi was going to continue to raise prices noting that the company "said it has more opportunity to raise prices on newer and higher-end products and is increasing prices by more modest amounts on lower-priced, entry-level items."[20]

47. During Levi's earnings call for Q1 2026, CFO Singh again acknowledged that Levi's was passing the increasing costs of tariffs onto consumers. Specifically, he acknowledged that "[t]he decline in gross margin was partially offset by pricing actions and lower promotional activity. We continued to closely monitor the consumer response to pricing actions, and to date, we have not seen an impact on demand."[21]

---

[17] *Id.*

[18] Levi Strauss & Co., Q4 2025 Earnings Call Transcript (Jan. 28, 2026), *available at https://stockanalysis.com/stocks/levi/transcripts/390785-q4-2025/*

[19] Ruth Simon, The Wall Street Journal, *The Break Is Over. Companies Are Jacking Up Prices Again.* (Feb. 15, 2026), *available at* https://www.wsj.com/business/price-increases-consumers-businesses-b70e4542?mod=Searchresults&pos=11&page=1 (last visited May 7, 2026)

[20] *Id.*

[21] Levi Strauss & Co., Q1 2026 Earnings Call Transcript (April 7, 2026), *available at* https://stockanalysis.com/stocks/levi/transcripts/547935-q1-2026/

48. Levi's public statements and actions thus confirmed two critical points: first, that tariffs were increasing Levi's costs on imported goods; and second, that Levi was making pricing decisions in direct response to those tariff-driven cost increases.

49. These public admissions are consistent with Levi's broader financial disclosures during the Class Period. Levi reported strong, and in some periods improving, financials while simultaneously acknowledging tariff pressures and raising prices on items affected by tariffs. Levi did not simply absorb the full cost of the unlawful tariffs; rather, Levi passed on at least part of those costs to consumers through higher retail prices.

50. Levi's own public statements and actions therefore establish a coherent timeline: Levi acknowledged tariff-driven cost increases and Levi selectively increased prices on affected goods during the tariff period.

51. Plaintiff and Class members purchased products from Levi at tariff-inflated prices during the Class Period, while Levi now seeks to retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

**E. Levi's Tariff Windfall**

52. The President's tariff regime exceeded the statutory authority granted by IEEPA and invalidated the challenged tariff orders.[22] Following the SCOTUS decision, importers that had paid IEEPA tariffs—including Levi—became eligible to pursue refunds of those duties.

53. On March 4, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered U.S. CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refund suits.[23]

54. The potential refund pool resulting from the invalidation of the IEEPA tariffs is enormous. Public reporting concerning the refund proceedings states that U.S. CBP estimated an

---

[22] *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026).

[23] *See Atmus Filtration, Inc. v. United States*, No. 26-01259, (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.

"unprecedented volume of refunds," potentially involving 53,173,939 refunds across 330,566 importers if each entry subject to IEEPA duties is entitled to a refund.[24]

55. Levi importers the majority of its consumer goods and therefore stands to recover substantial sums if tariff refunds are paid. Indeed, Levi "estimates it has paid approximately $80 million under the IEEPA tariffs"[25] and it expects to recover this money from the government.[26]

56. Given Levi's scale as a major importer, Levi can expect to recover significant tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because Levi previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning Levi will recover from the government duties whose economic burden was borne, in whole or in part, by Plaintiff and Class members.

57. In practical terms, Levi stands to receive a windfall: it has already recouped tariff costs from consumers through higher prices, and it now will recover those same unlawful tariff payments from the federal government.

## CLASS ALLEGATIONS

58. A class action is the proper forum to bring Plaintiff's claims under FRCP 23. The potential Class is so large that joinder of all members would be impracticable. Additionally, there are questions of law or fact common to the Class, the claims or defenses of the representative parties are typical of the claims or defenses of the Class, and the representative parties will fairly and adequately protect the interests of the Class.

59. This action satisfies all of the implicit and explicit requirements of FRCP, including numerosity, commonality, typicality, adequacy, predominance and superiority.

---

[24] *See* Thompson Hine LLP, *CIT Suspends Earlier Order Directing IEEPA Tariff Refunds* (Mar. 6, 2026), https://www.thompsonhinesmartrade.com/2026/03/cit-suspends-earlier-order-directing-ieepa-tariff-refunds/.)

[25] Levi Strauss & Co., Form 10-Q at 18 (April 7, 2026) available at https://www.sec.gov/Archives/edgar/data/94845/000009484526000020/lvis-20260301.htm

[26] Dan Mangan *et al.*, CNBC, *Trump says 'I'll remember' companies that don't seek tariff refunds* (April 21, 2026), *available at* https://www.cnbc.com/2026/04/21/trump-says-hell-remember-companies-that-dont-seek-tariff-refund.html (last visited May 7, 2026).

60. **Numerosity**: the Class is so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery. Given the consumer base of Levi, the class numbers in the hundreds of thousands or millions of consumers.

61. **Commonality:** the claims made by Plaintiff meets the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the classwide litigation. These shared questions predominate over individual questions, and they include, without limitation:

a. whether Levi paid tariffs imposed under the International Emergency Economic Powers Act ("IEEPA") on imported goods during the Class Period;

b. whether Levi increased retail prices on goods sold to consumers in response to those tariffs;

c. whether Levi passed through some or all of the tariff costs to consumers through higher prices;

d. whether Levi sought or will seek refunds of those tariffs from the federal government;

e. whether Levi's retention of tariff refunds corresponding to tariff costs paid by consumers constitutes unjust enrichment;

f. whether Levi's conduct was unfair under applicable consumer protection laws; and

g. the appropriate measure of restitution, damages, or other relief resulting from Levi's conduct.

62. **Typicality**: Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class member, bought products from Levi subject to tariff related price increases.

63. The claims of the Class Representative Plaintiff are furthermore typical of other Class members because they make the same claims as other Class members. Plaintiff has an interest in seeking compensation from Defendant.

64. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members.

65. **Superiority:** The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

66. The nature of this action and the nature of California laws available to Plaintiff and the Class makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged. Without the class action mechanism, Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; and the costs of individual suits could unreasonably consume the amounts that would be recovered. Likewise, proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class, and will establish the right of each member of the Class to recover on the cause of action alleged; and

individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

67. The proposed class is described as follows:

> All persons in the United States who purchased goods from Levi during the period February 1, 2025, through February 24, 2026, on which Levi raised prices.

68. Plaintiff reserves the right to modify or amend the definition of the proposed class and to modify, amend or remove proposed subclasses, before the Court determines whether certification is appropriate and as the parties engage in discovery.

69. Plaintiff will fairly and adequately protect the interests of the Class. The interests of the class representative are consistent with those of the other members of the Class. In addition, Plaintiff is represented by experienced and able counsel who have expertise in the areas of tort law, trial practice, and class action representation.

70. The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

71. Excluded from the Class are:

a. Defendant and any entities in which Defendant has a controlling interest;

b. Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant;

c. The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d. All persons or entities that properly execute and timely file a request for exclusion from the Class; and

e. Any attorneys representing the Plaintiff or the Class.

## CLAIMS FOR RELIEF

**COUNT I**
**Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

72. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

73. Plaintiff and the Class have conferred a benefit upon Defendant in the form of the money Defendant received from them in the form of price increases on goods during the period February 1, 2025, through February 24, 2026.

74. Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

75. Under principles of equity and good conscience, Defendant should not be permitted to retain the amount of the price increases obtained from Plaintiff and the members of the Class, which Defendant has unjustly obtained as a result of its price increases on goods subject to unlawful tariffs. As it stands, Defendant has retained profits generated from its sales of products subject to tariff-related price increases and should not be permitted to retain those ill-gotten profits when it is seeking a refund of the duties it paid.

76. Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein.

**COUNT II**
**Money Had and Received**
**(On behalf of Plaintiff and the Class)**

77. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

78. Plaintiff alleges this claim individually and on behalf of the proposed class.

79. Defendant received money from Plaintiff and from each member of the proposed Class in the form of a tariff surcharge. The Supreme Court has determined that the tariffs were unlawful.

80. The money belonged to Plaintiff and to each member of the proposed Class.

81. Defendant has not returned the money.

82. It will give offense to equity and good conscience if Defendant is permitted to retain the tariff surcharge. Plaintiff seeks the return of the money in an amount to be proven at trial.

83. Plaintiff seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to him.

**COUNT III**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of Plaintiff and the Class)**

84. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

85. Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

86. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

87. Levi acted with knowledge and intent.

88. Defendants' conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. Levi engaged in unfair and deceptive acts by: (i) charging customers a tariff surcharge; and (ii) retaining tariff refunds despite having passed the costs to its customers.

89. Levi's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Levi's violation of consumer protection and unfair competition laws resulted in harm to consumers.

90. Defendants' wrongful conduct occurred in the conduct of trade or commerce—*i.e.*, while Defendants were engaged in sales nationwide.

91. Defendants have profited immensely from its unlawful conduct.

92. As a result of Defendant's conduct, Plaintiff and the Class members were injured in their business or property—*i.e.*, economic injury—in that they paid inflated prices for goods subject to tariffs.

93. As described throughout this Complaint, Defendant's conduct (1) caused substantial injury that is (2) not reasonably avoidable by consumers and that (3) is not outweighed by the benefits to consumers or competition.

94. Defendant's unfair or deceptive conduct proximately caused Plaintiff's and the Class members' injury because, but for the challenged conduct, Plaintiff and the Class members would not have paid inflated prices for goods subject to tariffs and they did so as a direct, foreseeable, and planned consequence of that conduct.

95. The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

96. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misconduct alleged in this complaint.

97. Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendants because of their unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

**COUNT IV**
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiff and the Class)**

98. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

99. Levi is a "person" as defined by California Civil Code § 1761(c).

100. The California Plaintiff and the other California class members are "consumers" within the meaning of California Civil Code § 1761(d).

101. For the reasons alleged above, Levi violated California Civil Code § 1770(a)(5)(7) and (9).

102. Levi's unfair and deceptive acts or practices occurred repeatedly in Levi's trade or business.

103. Levi acted with knowledge and intent.

104. Levi engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

105. With respect to restitution under the CLRA claim, there is no adequate remedy at law for the reasons already alleged above.

106. As a result of Levi's misconduct, the Plaintiff and other Class members have suffered monetary harm.

107. Plaintiff seeks all relief available under this cause of action.

**COUNT V**
**Declaratory Relief, 28 U.S.C. § 2201**
**(On behalf of Plaintiff and the Class)**

108. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

109. Plaintiff alleges this claim individually and on behalf of the proposed Class.

110. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

111. Plaintiff's claims present an actual controversy as to the rightful ownership of the tariff surcharges paid to Defendant.

112. Plaintiff has suffered an injury by having been required to pay Defendant a tariff surcharge because of the subject tariffs on Defendant's product. And Plaintiff will imminently suffer an injury by Defendant's unlawful retention of the tariff refund.

113. This Court can exercise its equitable power to enter a declaratory judgment that retention of the tariff surcharges paid by Plaintiff but refunded to Defendant is unlawful for any of the above reasons.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the proposed class pray for relief and judgment against Defendant, as follows:

a. For an order certifying the proposed classes, appointing Plaintiff and his counsel to represent the proposed class and notice to the proposed classes to be paid by Defendant;

b. For damages suffered by Plaintiff and members of the proposed class;

c. For restitution to Plaintiff and the proposed class of all monies wrongfully obtained by Defendant;

d. For injunctive relief requiring Defendant to cease and desist from engaging in the unlawful, unfair, and/or deceptive practices alleged in the Complaint;

e. An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

f. For Plaintiff's reasonable attorneys' fees, as permitted by law;

g. For Plaintiff's costs incurred;

h. For pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

i. For such other and further relief that this Court deems just and proper under equity or law, including the award of punitive damages.

DATED this 18th day of June. 2026.

Respectfully submitted,

By: */s/ M. Anderson Berry*
M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
Brandon P. Jack (SBN 325584)
**EMERY REDDY, PC**
333 University Ave.
Sacramento, CA 95825
Phone: 916.823.6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*
*brandon@emeryreddy.com*

Jason T. Dennett*
**MILBERG, PLLC**
1700 7th Ave, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
*jdennett@milberg.com*

Gary M. Klinger*
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878
*gklinger@milberg.com*

John J. Nelson (SBN 317598)
**MILBERG, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
Telephone: (858) 209-6941
*jnelson@milberg.com*

Terence R. Coates*
Jonathan T. Deters*
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
*tcoates@msdlegal.com*

*jdeters@msdlegal.com*

Zachary Arbitman*
Nicole A. Maruzzi*
**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Telephone: (215) 567-8300
*zarbitman@feldmanshepherd.com*
*nmaruzzi@feldmanshepherd.com*

*Counsel for Plaintiff*

**Pro Hac Vice* applications forthcoming

JS-CAND 44 (Rev. 04-2025

# CIVIL COVER SHEET – for people without lawyers only

See Civil Local Rule 3-2 (amended April 28, 2025), which requires the filing of a civil cover sheet only by those unrepresented by counsel.

## I. PLAINTIFF(S)

ROBERT IGLESIAS, individually and on behalf of all others similarly situated,

County of Residence of First Listed Plaintiff: Orange County
*Leave blank in cases where United States is plaintiff.*

Attorney or Pro Se Litigant Information *(Firm Name, Address, and Telephone Number)*

M. Anderson Berry, Emery Reddy, PC
600 Stewart Street, Suite 1100, Seattle, WA 98101
(916) 823-6955; anderson@emeryreddy.com

## DEFENDANT(S)

LEVI STRAUSS & CO.,

County of Residence of First Listed Defendant: San Francisco County
*Use ONLY in cases where United States is plaintiff.*

Defendant's Attorney's Name and Contact Information *(if known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] U.S. Government Plaintiff
- [ ] Federal Question *(U.S. Government Not a Party)*
- [ ] U.S. Government Defendant
- [x] Diversity

## III. CAUSE OF ACTION

Cite the U.S. Statute under which you are filing: *(Use jurisdictional statutes only for diversity)*

28 U.S.C. § 1332(d)(2)

Brief description of case: Class Action- Inequitable failure to return tariff surcharges.

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [x] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury -Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury – Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities–Employment
- [ ] 446 Amer. w/Disabilities–Other
- [ ] 448 Education

**PRISONER PETITIONS**

HABEAS CORPUS
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

OTHER
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee– Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC § 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC § 158
- [ ] 423 Withdrawal 28 USC § 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent—Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS–Third Party 26 U.S.C. § 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC § 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced & Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] Original Proceeding
- [ ] Removed from State Court
- [ ] Remanded from Appellate Court
- [ ] Reinstated or Reopened
- [ ] Transferred from Another District
- [ ] Multidistrict Litigation–Transfer
- [ ] Multidistrict Litigation–Direct File

## VI. FOR DIVERSITY CASES ONLY: CITIZENSHIP OF PRINCIPAL PARTIES

*(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

| Plaintiff | Defendant | |
|---|---|---|
| [x] | [ ] | Citizen of California |
| [ ] | [ ] | Citizen of Another State |
| [ ] | [ ] | Citizen or Subject of a Foreign Country |
| [ ] | [x] | Incorporated or Principal Place of Business In California |
| [ ] | [ ] | Incorporated and Principal Place of Business In Another State |
| [ ] | [ ] | Foreign Nation |

## VII. REQUESTED IN COMPLAINT

- [x] Check if the complaint contains a **jury demand.**
- [x] Check if the complaint contains a **monetary demand**. Amount:
- [x] Check if the complaint seeks **class action** status under Fed. R. Civ. P. 23.
- [ ] Check if the complaint seeks a **nationwide injunction** or Administrative Procedure Act vacatur.

## VIII. RELATED CASE(S) OR MDL CASE

*Provide case name(s), number(s), and presiding judge(s).*

## IX. DIVISIONAL ASSIGNMENT pursuant to Civil Local Rule 3-2

*(Place an "X" in One Box Only)*

- [x] **SAN FRANCISCO/OAKLAND**
- [ ] **SAN JOSE**
- [ ] **EUREKA-MCKINLEYVILLE**

**DATE** 06/18/2026 **SIGNATURE OF ATTORNEY OR PRO SE LITIGANT** /s/ M. Anderson Berry

# COMPLETING THE CIVIL COVER SHEET

Complete the form as follows:

**I. Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**County of Residence**. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.

**Attorney/Pro Se Litigant Information**. Enter the firm name, address, telephone number, and email for attorney of record or pro se litigant. If there are several individuals, list them on an attachment.

**II. Jurisdiction.** Under Federal Rule of Civil Procedure 8(a), pleadings must establish the basis of jurisdiction. If multiple bases for jurisdiction apply, prioritize them in the order listed:

(1) *United States plaintiff*. Jurisdiction based on 28 U.S.C. §§ 1345 and 1348 for suits filed by the United States, its agencies or officers.

(2) *United States defendant.* Applies when the United States, its agencies, or officers are defendants.

(3) *Federal question*. Select this option when jurisdiction is based on 28 U.S.C. § 1331 for cases involving the U.S. Constitution, its amendments, federal laws, or treaties (but use choices 1 or 2 if the United States is a party).

(4) *Diversity of citizenship.* Select this option when jurisdiction is based on 28 U.S.C. § 1332 for cases between citizens of different states and complete Section VI to specify the parties' citizenship. Note: Federal question jurisdiction takes precedence over diversity jurisdiction.

**III. Cause of Action.** Enter the statute directly related to the cause of action and give a brief description of the cause. Do not cite jurisdictional statutes unless jurisdiction is based on diversity. Example: U.S. Civil Statute: 47 U.S.C. § 553. Brief Description: Unauthorized reception of cable service.

**IV. Nature of Suit.** Check one of the boxes. If the case fits more than one nature of suit, select the most definitive or predominant.

**V. Origin.** Check one of the boxes:

(1) *Original Proceedings*. Cases originating in the United States district courts.

(2) *Removed from State Court*. Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C. § 1441. When the petition for removal is granted, check this box.

(3) *Remanded from Appellate Court*. Check this box for cases remanded to the district court for further action, using the date of remand as the filing date.

(4) *Reinstated or Reopened*. Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

(5) *Transferred from Another District*. Check this box for cases transferred under Title 28 U.S.C. § 1404(a). Do not use this for within-district transfers or multidistrict litigation (MDL) transfers.

(6) *Multidistrict Litigation Transfer*. Check this box when a multidistrict (MDL) case is transferred into the district under authority of Title 28 U.S.C. § 1407.

(7) *Multidistrict Litigation Direct File.* Check this box when a multidistrict litigation case is filed in the same district as the Master MDL docket.

**VI. Residence (citizenship) of Principal Parties.** Mark for each principal party *only* if jurisdiction is based on diversity of citizenship.

**VII. Requested in Complaint.**

(1) *Jury demand.* Check this box if plaintiff's complaint demanded a jury trial.

(2) *Monetary demand*. For cases demanding monetary relief, check this box and enter the actual dollar amount being demanded.

(3) *Class action.* Check this box if plaintiff is filing a class action under Federal Rule of Civil Procedure 23.

(4) *Nationwide injunction.* Check this box if plaintiff is seeking a nationwide injunction or nationwide vacatur pursuant to the Administrative Procedures Act.

**VIII. Related Cases.** If there are related pending case(s), provide the case name(s) and number(s) and the name(s) of the presiding judge(s). If a short-form MDL complaint is being filed, furnish the MDL case name and number.

**IX. Divisional Assignment.** Identify the divisional venue according to Civil Local Rule 3-2: "the county in which a substantial part of the events or omissions which give rise to the claim occurred or in which a substantial part of the property that is the subject of the action is situated." Note that case assignment is made without regard for division in the following case types: Property Rights (Patent, Trademark and Copyright), Prisoner Petitions, Securities Class Actions, Anti-Trust, Bankruptcy, Social Security, and Tax.