**BEFORE THE UNITED STATES JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: RETAILER TARIFF LITIGATION<br><br>MULCONREY v. THE J.M. SMUCKER COMPANY,<br><br>No. 1:26-cv-08832 (N.D. Ill.) | MDL No. 3202<br><br>**PLAINTIFF MELANIE MULCONREY'S OPPOSITION TO MOVANTS' MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. §1407** |

**Law Offices of Todd M. Friedman, P.C.**
Steven G. Perry
Illinois Attorney No. 6330283
Steven.perry@toddflaw.com
555 Skokie Blvd., Suite 500
Northbrook, Illinois 60062
Phone: (224) 218-0875
*Attorney for Plaintiff, Melanie Mulconrey*

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

III. LEGAL STANDARD .......... 3

IV. THE MULCONREY ACTION SHOULD NOT BE TRANSFERRED AND CENTRALIZED .......... 4

1. The Mulconrey Action Does Not Share Sufficient Common Questions of Fact With the Other Actions .......... 5

2. Transfer Will Not Serve the Convenience of the Parties and Witnesses .......... 7

3. Transfer Will Not Promote the Just and Efficient Conduct of the Actions .......... 8

4. Centralization Should Be a Last Resort, and Self Organization on a Defendant Specific Basis Remains Practicable .......... 8

V. CONCLUSION .......... 9

# TABLE OF AUTHORITIES

**Cases**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.,* 201 F. Supp. 3d 1375, 1376 (J.P.M.L. 2016) ........ 6

*In re Benzoyl Peroxide Marketing, Sales Practices and Products Liability Litig* 743 F. Supp. 3d 1373, 1374 (J.P.M.L. 2024) ........ 7

*In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.,* 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) ........ 3, 4, 8

*In re Cash Sweep Programs Contract Litigation*, 766 F. Supp. 3d 1346, 1349 (J.P.M.L. 2025). 1, 3, 5, 9

*In re CP4 Fuel Pump Marketing, Sales Practices, and Products Liability Litigation,* 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) ........ 6

*In re Proton-Pump Inhibitor Products Liability Litigation*, also supports denying centralization. 273 F. Supp. 3d 1360 (J.P.M.L. 2017) ........ 5

*In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) ........ 1, 4

*Learning Res., Inc. v. Trump,* 607 U.S. 229 (2026) ........ 2

**Statutes**

28 U.S.C. §1407(a) ........ 3, 4

## I. INTRODUCTION

Plaintiff Melanie Mulconrey, the Plaintiff in *Mulconrey v. The J.M. Smucker Company*, No. 1:26-cv-08832 (N.D. Ill.) (the "Mulconrey Action"), respectfully opposes Movants' motion to transfer and centralize the Mulconrey Action within the proposed *In Re: Retailer Tariff Litigation* MDL (the "Proposed MDL"). The Mulconrey Action should not be centralized with the 24 other Actions identified in the motion because it presents claims against a single Manufacturer Defendant, The J.M. Smucker Company ("Smucker's"), concerning a single product type, that shares no meaningful factual overlap with the claims asserted against the fourteen entirely unrelated Retailer Defendants named across the remaining Actions, including Amazon, Target, Walmart, Nike, Costco, Shein, Temu, Adidas, EssilorLuxottica, IKEA, Microsoft, Puma, Sony, and Zara (collectively the "Retailer Defendants"). As this Panel has repeatedly recognized, it is "typically skeptical of requests to centralize claims filed against multiple defendants who are competitors in a single MDL because it often will not promote judicial efficiency or serve the convenience of the parties and witnesses." *In re Cash Sweep Programs Contract Litigation*, 766 F. Supp. 3d 1346, 1349 (J.P.M.L. 2025) quoting *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020).

Unlike the movants' broad and abstract theory that all Defendants engaged in "the same" conduct simply because each, independently, raised prices in response to the same invalidated federal tariffs, the Mulconrey Action turns entirely on Smucker's decisions as a manufacturer regarding its own coffee products, own pricing decisions, and own public statements regarding those decisions. Class Action Complaint, *Mulconrey v. J.M. Smucker Co.*, No. 1:26-cv-08832 (N.D. Ill. July 24, 2026), ECF No. 1-1 ("Compl.") ¶¶ 6-9, 17. Unlike the cases against Retailer Defendants, which concern defendants that directly set the consumer's purchase price and

received the consumer's payment; the Mulconrey Action concerns a manufacturer and importer practices for products Plaintiff and putative class members purchased from independent retailers. Compl. ¶¶ 6, 14-15, 19. The Mulconrey Action claims therefore require distinct proof regarding Smucker's import costs and wholesale pricing, Retailer intervening retail-pricing decisions, and whether any tariff related benefit retained by Smucker can be traced to Plaintiff's purchase. Compl. ¶¶ 6, 9-12. These manufacturer-specific causation and benefit issues will not be resolved through discovery concerning the Retailer Defendants' direct sales practices. Compl. ¶¶ 9-12. Furthermore, there is no allegation that Smucker's colluded with any Retailer Defendant, and no shared product, supply chain, disclosure, or marketing practice connects Smucker's coffee manufacturing business to the sale of electronics, apparel, furniture, or general merchandise by fourteen unrelated, competing retailers. Compl. ¶¶ 13-17. As explained below, none of the three centralization factors under 28 U.S.C. §1407(a) is satisfied as to the Mulconrey Action, and the motion should be denied as to the Mulconrey Action.

## II. FACTUAL BACKGROUND

Plaintiff Melanie Mulconrey resides in Joliet, Illinois, and brings this putative class action against Defendant The J.M. Smucker Company, an Ohio corporation headquartered in Orrville, Ohio, for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and for unjust enrichment. Compl. ¶¶ 13-15. Beginning February 1, 2025, the federal government imposed tariffs under the IEEPA on imported goods; on February 20, 2026, the Supreme Court held in *Learning Resources, Inc. v. Trump* that the IEEPA does not authorize the President to impose such tariffs. *Learning Res., Inc. v. Trump,* 607 U.S. 229 (2026); Compl. ¶ 8. Smucker's publicly announced in June 2025 that it had raised prices to offset the IEEPA tariffs on its coffee products, including Café Bustelo, Dunkin, Folgers, Medaglia D'Oro, and Pilon, and in November

2025 announced it would absorb, rather than pass through, certain tariff costs going forward. Compl. ¶¶ 7, 17. Plaintiff alleges that on November 29, 2025, she purchased a Folgers product for $18.99 from a Costco location in Plainfield, Illinois, and that Smucker's charged her, and the proposed nationwide Class and Illinois Sub-Class, the cost of the unlawful IEEPA tariffs without any subsequent refund. Compl. ¶¶ 18-19. Plaintiff's claims are confined to Smucker's own coffee product line, Smucker's own tariff-related pricing decisions, and Smucker's own public statements about those decisions. Compl. ¶¶ 17-19. Therefore, the facts of the Mulconrey Action are entirely distinct from, and require little to no discovery common to, the unrelated retail businesses, products, and pricing practices of the other Retailer Defendants named in the Proposed MDL. Furthermore, in the event that any discovery related to retailers of Smucker's coffee products is necessary in the Mulconrey Action, that limited discovery can be obtained through standard subpoenas.

## III. LEGAL STANDARD

28 U.S.C. §1407(a) authorizes the Judicial Panel on Multidistrict Litigation to transfer civil actions "involving one or more common questions of fact" to a single district for coordinated or consolidated pretrial proceedings "when [the Panel] determines that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. §1407(a). The moving party bears the burden of establishing that centralization satisfies each of these three statutory prerequisites. *See In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.,* 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).

The Panel has consistently declined to centralize actions where common questions are defendant specific rather than truly common. See *In Re Cash Sweep Programs Contract Litig.,* 766 F. Supp. 3d 1346 (J.P.M.L. 2025). The Panel is "…typically skeptical of requests to centralize

claims filed against multiple defendants who are competitors in a single MDL because it often will not promote judicial efficiency or serve the convenience of the parties and witnesses." *Id*. at 1349 quoting *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020). Even where centralization may otherwise be warranted, the Panel has recognized that centralization is properly a last resort, to be ordered only after consideration of all other options, including the possibility that the litigation will self-organize on a defendant-specific basis. *In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.,* 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011).

## IV. THE MULCONREY ACTION SHOULD NOT BE TRANSFERRED AND CENTRALIZED

28 U.S.C. §1407 authorizes a party to move for transfer and centralization of related federal actions. Under §1407(a), the Panel may transfer and centralize actions that (1) "involv[e] one or more common questions of fact"; (2) where transfer will further "the convenience of parties and witnesses"; and (3) will "promote the just and efficient conduct of [the] actions." 28 U.S.C. §1407(a). As set forth below, none of these three requirements is satisfied as to the Mulconrey Action.

The purpose of centralization is reducing duplicative discovery, avoiding conflicting rulings, reducing costs, and saving time. See 28 U.S.C. §1407. That purpose is not served by dragging the single manufacturing defendant in the Mulconrey Action into a fifteen defendant,

industry wide retailer proceeding with which it shares no meaningful factual nexus.

**1. The Mulconrey Action Does Not Share Sufficient Common Questions of Fact With the Other Actions.**

The Mulconrey Action is directed solely at Smucker's, involves solely Smucker's coffee products, and contains no allegation that Smucker's colluded with any Retailer Defendant. Compl. ¶¶ 13-17. *In re Cash Sweep Programs Contract Litigation*, is instructive. 766 F. Supp. 3d 1346 (J.P.M.L. 2025). There the Panel found that minimal common factual issues among 27 actions against competing brokerage firms were insufficient to justify centralization because "there were no allegations of collusion among the defendants," and the actions involved "different... programs subject to different contractual terms, different interest rates and fees, different types of financial instruments, different types of customers, and different disclosures". *Id.* at 1349. The superficial commonality that all of the actions sought to be centralized by Movant involve a retailer that, independently, raised prices in response to the same invalidated tariffs "breaks down upon closer inspection," because "[e]ach action is directed to a particular" company, and any common question of what constitutes an unlawful pass through of tariff costs "likely will have defendant-specific answers." *Id.* at 1349. This is especially relevant regarding the Mulconrey Action. Smucker's own decision making process regarding tariff pass through, its own whole sale and direct to consumer price increase, and its own disclosures to consumers about that decision are unique to Smucker's, just as they were unique to each brokerage in *Cash Sweep. Id.* Likewise, *In re Proton-Pump Inhibitor Products Liability Litigation*, also supports denying centralization. 273 F. Supp. 3d 1360 (J.P.M.L. 2017). There the Panel denied centralization because "the named defendants vary from action to action" and "the various defendants are competitors," such that "centralization thus appears unlikely to serve the convenience of most, if not all, defendants and

their witnesses". *Id*. at 1361-62. Smucker's is a manufacturer amongst more than a dozen named Retailer Defendants, sued in only one of the 25 Actions, and its interests and discovery needs will not be served by immersion in a proceeding devoted primarily to Amazon, Target, Walmart, and a dozen other unrelated retailers. Mot. to Transfer ¶¶ 1-2; see also *In re CP4 Fuel Pump Marketing, Sales Practices, and Products Liability Litigation,* 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (denying centralization of ten single-defendant actions against three competing automakers where there was no allegation of a conspiracy between the defendants). Mulconrey has not made any allegation that Smucker's acted in concert with any Retailer Defendant, and instead alleges that as a *manufacturer* only Smucker's made its own, independent pricing decisions in response to the unlawful tariffs. Compl. ¶¶ 6, 17.

Movants' reliance on cases such as *In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation* to justify an industry-wide MDL does not extend to the Mulconrey Action. In *In Re Parmesan Cheese*, the Panel centralized sixteen actions pending in nine districts against four competing sellers of "100%" grated parmesan cheese because all of the actions arose from a single news article reporting independent laboratory testing that found the same food additive, cellulose, in each defendant's parmesan cheese product. *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.,* 201 F. Supp. 3d 1375, 1376 (J.P.M.L. 2016). Critically, the actions shared a common factual core beyond the mere fact of an external triggering event: they involved the same nearly identical "100%" labeling representation, common consumer perception and pricing issues, and a common third-party supplier, ICCO-Cheese, that supplied the allegedly adulterated cheese to multiple defendants. *Id.* at 1377. The Panel found that this significant overlap in the central issues justified a single MDL notwithstanding the existence of some defendant-specific labeling and marketing issues. *Id.* at 1378. The Mulconrey Action presents

none of these unifying features. There is no single triggering event, article, or independent testing common to Smucker's and the fourteen Retailer Defendants; no common supplier links Smucker's coffee products to Nike shoes, Amazon devices, or IKEA furniture; and there is no shared, nearly identical product or labeling representation at issue across the Actions, only the independent fact that each Defendant, on its own, raised prices in response to a series of different invalidated federal tariffs. Unlike the interchangeable "100%" grated parmesan cheese products in *In Re Parmesan Cheese*, the products here are of every conceivable type.

Finally, *In re Benzoyl Peroxide Marketing, Sales Practices and Products Liability Litigation* makes clear that centralization of competing businesses is disfavored where, as here, "plaintiffs... do not allege an industry-wide conspiracy or an indivisible physical injury caused by multiple defendants' products or conduct." 743 F. Supp. 3d 1373, 1374 (J.P.M.L. 2024). Unlike *In Re Parmesan Cheese*, where the products at issue were all similar parmesan cheese products, here, and as in *In Re Benzoyl Peroxide*, the Defendants' "products vary with respect to their formulations,... how the products are packaged and stored, and how they are labeled and marketed". *Id.* at 1374; Mot. to Transfer ¶¶ 2-3. A jar of Folgers coffee has nothing in common with a pair of Nike shoes, an Amazon Echo, or an IKEA sofa beyond the fact that a different unlawful tariff applied to each. See Mot. to Transfer ¶ 2. Therefore, discovery into Smucker's pricing decisions, like the defendant specific discovery contemplated in *Benzoyl Peroxide*, will be defendant specific such that no common factual core justifies centralizing the Mulconrey Action with the Retailer Defendant actions. See *In Re Benzoyl Peroxide* 743 F. Supp. 3d at 1374.

**2. Transfer Will Not Serve the Convenience of the Parties and Witnesses**

No party or witness relevant to the Mulconrey Action would benefit from centralization with the fourteen Retailer Defendants and their unrelated actions. The witnesses with knowledge

of Smucker's pricing decisions for its coffee products have no knowledge of, and no relevance to, Amazon's, Target's, or Walmart's separate and independent tariff pass through decisions regarding entirely different products imported from different countries and subject to different tariffs, and therefore subject to different pricing changes. There is no convenience to be gained, and considerable risk of delay to be suffered, by centralizing the Mulconrey Action with the actions against unrelated Retailer Defendants.

**3. Transfer Will Not Promote the Just and Efficient Conduct of the Actions**

Discovery related to Smucker's tariff pricing decisions for coffee products bear no relationship to, and will not be advanced by, discovery into Amazon's, Costco's, or Shein's separate and independent decisions regarding entirely different products. As with the differing pharmaceutical products at issue in *Proton-Pump Inhibitor*, "each has a unique development, testing, and marketing history," such that the variety of claims and products at issue here combined with the differences among the Retailer Defendants' businesses, "significantly undermines any efficiency gains to be achieved from centralization." *In re Proton-Pump.,* 273 F. Supp. 3d at 1362. Placing the single manufacturer defendant Mulconrey Action into a Retailer Defendant MDL would not streamline its resolution, but would instead subject Plaintiff and Smucker's to the schedule, motion practice, and case-management burdens of fourteen unrelated disputes that have nothing to do with coffee, Illinois consumers, or Smucker's own conduct as a manufacturer.

**4. Centralization Should Be a Last Resort, and Self Organization on a Defendant Specific Basis Remains Practicable**

Centralization under Section 1407 should be the last resort. See *In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.,* 804 F. Supp. 2d 1376, 1379 (J.P.M.L. 2011). Alternatives

to sweeping the Mulconrey Action into a Retailer Defendant MDL are readily available. As this Panel has recognized, where litigation is “already... largely organized by defendant in different districts,” that self organization “further weighs against centralization.” *In re Cash Sweep*, 766 F. Supp. 3d at 1350. The Mulconrey Action can proceed on its own timeline in the Northern District of Illinois, coordinated informally, if at all, only with any other actions naming Smucker's. To the extent the Panel is inclined to centralize the claims against Retailer Defendants who face multiple actions in multiple districts, that rationale simply does not apply to Smucker's, which faces only the single Mulconrey Action.

## V. CONCLUSION

For all the foregoing reasons, Plaintiff Melanie Mulconrey respectfully requests that the Panel deny Movants' motion to transfer and centralize the Mulconrey Action within the Proposed MDL.

Dated: September 10, 2026

By: /s/ Steven G. Perry

Attorney for Plaintiff
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
555 Skokie Blvd, Suite 500
Northbrook, Illinois 60062
Phone: (224) 218-0875
Steven.perry@toddflaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 10, 2026, a copy of the foregoing Opposition to Motion to Transfer and Centralize was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Steven G. Perry
Attorney for Plaintiff