**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: RETAILER TARIFF LITIGATION | MDL NO. 3202 |

**RESPONSE TO MOTION FOR TRANSFER AND CENTRALIZATION BY PLAINTIFFS IN ASSOCIATED CASE BRIGGS ET AL. V. COSTCO WHOLESALE CORPORATION WAW 2:26-01064**

David Briggs, Marcus Carreon, Erin Charlton, Emily Maldonado, Kelsey Morse, Ashley Parker, and Karyn Wiggle, the Plaintiffs in *Briggs et al. v. Costco Wholesale Corporation*, WD Washington Case Number 2:26-01064, oppose the motion for transfer and centralization pursuant to 28 U.S.C. § 1407 and ask that the Panel deny it.

## INTRODUCTION

Movants seek to transfer and centralize several class actions brought against a multitude of retailers alleged to have retained windfall profits from International Emergency Economic Powers Act ("IEEPA") tariffs passed through to consumers, but later refunded by the federal government. The Panel, however, routinely rejects requests like these for cross-defendant, industry-wide centralization. Without common allegations, common proof, or claims of conspiracy, discovery will be conducted and legal conclusions will be drawn on a defendant-by-defendant basis. There is no efficiency to be gained from centralization where the parties will base their claims, and defenses, on defendant-specific information, documents, and witnesses.

The cases tagged here include defendants as disparate as Amazon, Target, Nike, Costco, Walmart, Temu, Shein, Luxottica, Ikea, J.M. Smucker Company, Microsoft, Puma, Sony, Zara, and Adidas. The evidence required to prove that any one of those retailers unlawfully retained their IEEPA refunds will turn on the specific products, pricing, representations, refund claims, and benefits retained by each company. Worse still, centralized discovery into these issues will invite protracted secondary litigation over the exchange of trade secrets and confidential business information among rivals in the competitive retail arena.

Movants discard these obstacles to forming an MDL and attempt to tie a common thread between the actions through the non-party federal government. But the government's imposition of the IEEPA tariffs, and their subsequent invalidation, are common knowledge. Movants have also failed to cite any retailer-specific information available to the government, a third party, that is not more easily accessed from the retailer-defendants themselves. And even if such information existed, it surely would not exist within a single government witness that could testify to it all.

Any commonality found in the government as a third-party, or any cure provided by the possibility of tracking the proposed MDL, does not overcome the defendant-specific nature of this litigation. While the legality of retaining IEEPA refunds may present a common legal question, that question will be answered on retailer-specific records. This reality eliminates any of the usual efficiencies and conveniences that should come with centralization. Movants' Motion should therefore be denied.

## BACKGROUND

Beginning in February 2025, the federal government imposed IEEPA tariffs on imports from numerous countries. Plaintiffs allege that Costco incorporated those increased costs into its prices, shifting at least part of the economic burden to consumers. Costco was exposed to the

tariffs imposed under the IEEPA, as approximately one-third of its U.S. merchandise sales consist of imported goods. ¶¶25–32.[1]

When faced with these increased costs, Costco adjusted its sourcing and pricing decisions and sold affected goods at elevated prices. ¶¶33–45. Costco acknowledged as much in its own public statements but claimed that it would seek to "minimize the impact" on its members. ¶¶46–48. Notwithstanding Costco's description of price increases from tariffs as a "last resort," it still increased prices. ¶¶49–51. Costco's later reduced prices on certain imported goods further supports that the tariff costs had been incorporated into the prices consumers paid. ¶56.

On February 20, 2026, the Supreme Court deemed the IEEPA tariffs unlawful, thereby permitting importers to seek repayment of the duties paid. ¶¶38–39, 63–65. By that time, Costco had already filed suit in the Court of International Trade ("CIT") seeking invalidation of the tariffs and refunds of all duties collected from it under the challenged orders. ¶¶60–62. Costco, as a major importer, stands to recover substantial tariff refunds. ¶¶66–68. Indeed, Costco has admitted that it has already "received funds from the government" even if that is "only a portion of the IEEPA tariffs it paid." ECF 24, Costco's motion to dismiss complaint.

Despite this recovery, Costco has made no binding commitment to return the corresponding amounts to the consumers who paid the tariff-inflated prices. ¶9. Instead, Costco issued vague statements that any tariff refunds would be used prospectively in the form of "lower prices" and "better value." ¶¶10–11, 57–58. This does not reimburse the specific purchasers who bore the increased costs and would shift the benefit to an unidentified group of future shoppers while leaving the purchasers who funded the tariff payments uncompensated. ¶¶10–11, 59.

---

[1] "¶" refer to the Complaint (ECF No. 1) unless otherwise indicated.

Plaintiffs allege that they purchased imported goods from Costco at prices increased to account for the IEEPA tariffs and would not have paid those higher prices absent Costco's tariff pass-through. ¶¶18–24. Plaintiffs accordingly allege that Costco seeks to recover the same economic burden twice—first through overcharging them and again through refunds from the federal government—without restoring the corresponding amounts to the consumers who paid them. ¶¶7–14, 67–68.

## ARGUMENT

### I. CENTRALIZATION IS UNWARRANTED

Section 1407 exists to streamline genuinely overlapping pretrial proceedings, not to manufacture aggregated litigation. Section 1407 permits centralization only when actions pending in different districts involve one or more common questions of fact and the Panel determines that centralization will serve both the convenience of the parties and witnesses and the just and efficient conduct of the actions. *See* 28 U.S.C. § 1407(a). The requirements are conjunctive and Movants[2] bear the burden of showing that each is met. *In re Hercules Offshore, Inc., Securities Litigation*, 816 F. Supp. 2d 1377, 1377 (J.P.M.L. 2011).

Falling short of that burden, Movants instead invite the Panel to convert over two dozen (and counting) independent disputes against unrelated retailers (some competitors) into a single multi-industry MDL because the complaints invoke the same federal tariffs and broadly similar legal theories. That is not enough to warrant centralization. The Tariff Actions do not arise from one defendant, one transaction, one pricing policy, one product, one contract, or one course of conduct. Each Action targets a different retailer that makes its own sourcing, pricing, and

[2] Unless specifically stated otherwise, all defined terms have the same definition as given in the Corrected Memorandum in Support of Motion for Transfer and Centralization (ECF No. 3) (the "Motion").

disclosure decisions, through its own personnel and systems, based on its own business model. Amazon's marketplace pricing has nothing to do with how Nike set wholesale and retail prices; Costco's membership-based pricing has nothing to do with how Shein and Temu priced direct-to-consumer imports. The only thing these twenty-five cases ostensibly have in common is an external governmental event—the imposition, and later invalidation, of the IEEPA tariffs. For the reasons discussed below, the Motion should be denied.

### A. Common Questions of Fact Do Not Make These Actions Appropriate for Centralization

"A mere showing that common questions of fact exist" does not suffice to warrant centralization. *In re Truck Accident Near Alamagordo, New Mexico, on June 18, 1969*, 387 F. Supp. 732, 734 (J.P.M.L. 1975). The relevant question is whether the supposed common questions will generate common answers from common proof and whether resolving them once will materially advance the actions. Movants' questions do not satisfy that test. Motion at 10-11. The imposition and invalidation of the IEEPA tariffs, the applicable rates and dates, and the mechanics of CBP's refund process are common historical or legal background. They are also largely publicly available. While some of this information is helpful, it is not the focus of the conduct challenged in the Tariff Actions. Instead, liability turns on how each unrelated Retailer Defendant responded: what products it sourced and from where; whether it was the importer of record; what duties it paid; how it priced particular products across channels and time; what it represented to its customers; and what refund, if any, it sought (or has already received) and retained. Those questions require completely different factual records, different custodians, different witnesses, and different proof for every defendant. Contrary to Movant's suggestion, none of that discovery will come from the federal government – the Retailer Defendants' financial records will the amount of tariffs paid to the government and the amount refunded to them.

Movants acknowledge that this petition was a naked attempt to subsume the earlier, defendant-specific *In re Amazon Tariff Litigation* petition into a broader industry-wide MDL. Motion at 1 n.2. But the Panel just recently did the exact opposite of what Movants propose—rejected an industry-wide MDL in favor of centralizing actions involving one defendant. *See In re Abbott Laboratories and Boston Scientific Corp. Spinal Cord Stimulator Products Liability Litigation*, No. MDL 3181, 2026 WL 1659301, at *3 (J.P.M.L. June 5, 2026). *Abbott* is not a one-off. The Panel has wisely been hesitant "to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products." *In re Yellow Brass Plumbing Component Products Liability Litigation*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012). On numerous occasions, the Panel has rejected multi-industry centralization. For example, in *In re COVID-19 Business Interruption Protection Insurance Litigation*, the pandemic and government closure orders supplied a common catalyst, but the Panel found "little potential for common discovery across the litigation" because there were no common defendants and liability depended on insurer-specific policies, practices, insured businesses, and state law. 482 F. Supp. 3d 1360, 1362-63 (J.P.M.L. 2020); *see In re Nat'l Ski Pass Ins. Litig.*, 492 F. Supp. 3d 1352, 1353 (U.S. Jud. Pan. Mult. Lit. 2020) ("We view requests to centralize claims filed against multiple, competing defendants in a single MDL with a skeptical eye because doing so usually adds few efficiencies and does not serve the convenience of the parties and witnesses.") The imposition of the tariffs at issue here may have been a common event in all Tariff Actions, but each retailer's independent response supplies the facts necessary to establish liability.

*In re Cash Sweep Programs Contract Litigation* is equally instructive. There, the actions challenged a high-level common practice by brokerages and banks, but the Panel held that "[t]his superficial commonality breaks down upon closer inspection" because the supposed common

question would have defendant-specific answers based on different programs, contracts, rates, fees, customers, and disclosures. 766 F. Supp. 3d 1346, 1349 (J.P.M.L. 2025). The same is true here. Whether a defendant passed tariff costs through to consumers, increased prices on non-tariffed goods, made a misleading representation, or retained an improper benefit can be answered only by examining that retailer's products, suppliers, import status, pricing process, communications, sales data, and refund circumstances.

Movants' effort to distinguish these authorities misses the point. A common government program or rule does not create common facts among private defendants that independently react to it. *In re Paycheck Protection Program Agent Fees Litigation* denied centralization even though every action arose from the same federal loan program and asserted the same federal entitlement to fees, because there was no common defendant and each lender's policies and practices differed. 481 F. Supp. 3d 1335, 1337 (J.P.M.L. 2020). *In re Secondary Ticket Market Refund Litigation* found that "[a]ny general factual commonality across the actions appears to be superficial at best" where separate ticket platforms responded to the same COVID-19 cancellations under different terms and practices. 481 F. Supp. 3d 1345, 1346-47 (J.P.M.L. 2020). *In re Avocado Oil Marketing and Sales Practices Litigation* denied centralization even though the same kinds of questions could be asked in every case, because virtually every action challenged a different defendant's brand, sourcing, marketing, and labeling. 766 F. Supp. 3d 1333, 1334-36 (J.P.M.L. 2025). And *In re Proton-Pump Inhibitor Products Liability Litigation* held that competing defendants and defendant-specific discovery "fatally undercut" centralization despite some shared factual issues. 273 F. Supp. 3d 1360, 1361-62 (J.P.M.L. 2017). At most, Movants have identified overlapping legal issues concerning unjust enrichment. But "common legal questions are insufficient to satisfy Section 1407's requirement," particularly when "the factual questions presented" are defendant

specific. *In re Supplemental Nutrition Assistance Program Litigation*, 619 F. Supp. 3d 1348, 1348-49 (J.P.M.L. 2022).

Movants' principal authority, *In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation*, illustrates what is missing. Motion at 10-12. In that case, the Panel found "significant overlap in the central factual issues, parties, and claims," including: every product carried the same "100% grated parmesan cheese" representation; multiple complaints named multiple defendants and products; the validity of common laboratory testing was disputed; there was a common supplier; and all defendants intended to invoke the same FDA labeling and composition regulations. 201 F. Supp. 3d 1375, 1377-78 (J.P.M.L. 2016). None of those features exist here. There is no uniform representation, common supplier, common testing, common product standard, overlapping set of defendants, or common body of disputed scientific proof.

*In re Hair Relaxer Marketing, Sales Practices, and Products Liability Litigation* is even further afield. Motion at 11-12 n.17. Those products-liability actions raised a shared scientific question on general causation about whether hair-relaxer chemicals caused common health effects, which called for overlapping scientific literature, experts, discovery, and *Daubert* practice. 655 F. Supp. 3d 1374, 1376 (J.P.M.L. 2023); *see also In re Androgel Products Liability Litigation*, 24 F. Supp. 3d 1378 (J.P.M.L. 2014); *In re Incretin Mimetics Products Liability Litigation*, 968 F. Supp. 2d 1345, 1346 (J.P.M.L. 2013). The Tariff Actions present no common scientific proof. Any economic analysis must instead use each Retailer Defendant's own prices, costs, products, margins, sales, and timing.

Movants' antitrust authorities are likewise inapposite. Motion at 9-10. *In re Japanese Electronic Products Antitrust Litigation*, 388 F. Supp. 565 (J.P.M.L. 1975), *In re Treasury Securities Auction Antitrust Litigation*, 148 F. Supp. 3d 1360 (J.P.M.L. 2015), and *In re London*

*Silver Fixing, Ltd., Antitrust Litigation*, 52 F. Supp. 3d 1381 (J.P.M.L. 2014), involved alleged concerted conduct among defendants. A conspiracy can supply a common factual core that overcomes the Panel's ordinary reluctance to centralize actions against different defendants. *In re CP4 Fuel Pump Marketing, Sales Practices, and Products Liability Litigation*, 412 F. Supp. 3d 1365, 1366-67 (J.P.M.L. 2019). But no such conspiracy, coordination, or common decision-making is alleged here. At best, Movants allege parallel reactions by independent businesses to a shared public policy—that is not concerted conduct.[3] It is an uncontroversial statement of economics that retailers pass tariffs through to consumers by raising prices. *See Ron Mau & Tucker Smith, Effects of Realized Tariff Changes on PCE Prices Peaked in First Quarter 2026,* Fed. Rsrv. Bank of Dall. (May 5, 2026).[4]

Nor do purported overlapping putative classes change the analysis. Motion at 12. To be clear, the proposed classes in the Tariff Actions are not coextensive. They are separately defined by purchases from different retailers. But, even if they were, genuinely overlapping classes, standing alone, do not warrant centralization. *In re Gerber Probiotic Products Marketing and Sales Practices Litigation*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012). A class ruling based on one retailer's representations, records, and customers would not control a class ruling involving another.

---

[3] Movants' remaining authorities are likewise distinguishable. *In re UnumProvident Corp. Securities, Derivative, and ERISA Litigation* anticipated a significant number of common events, defendants, and witnesses, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003); *In re Rembrandt Technologies, LP, Patent Litigation* merely held that complete identity of issues and parties is unnecessary, 493 F. Supp. 2d 1367, 1369 (J.P.M.L. 2007); and *In re Insulin Pricing Litigation* involved an alleged common scheme among manufacturers and pharmacy benefit managers, 688 F. Supp. 3d 1372, 1375 (J.P.M.L. 2023). None of those features exists here.

[4] *available at: https://www.dallasfed.org/research/economics/2026/0505-mau.*

### B. Centralization Would Not Serve the Convenience of the Parties or Witnesses

Even if the Panel finds some common factual questions, those questions "are not the sole prerequisite for centralization under Section 1407." *In re Hartford COVID-19 Business Interruption Protection Insurance Litigation*, 493 F. Supp. 3d 1358, 1360 (J.P.M.L. 2020). Movants must still show that centralization will serve both the convenience of the parties and witnesses and the just and efficient conduct of the actions. Indeed, *Hercules Offshore* denied centralization even though the factual similarities were undisputed because convenience and efficiency were lacking. 816 F. Supp. 2d at 1377.

Movants' convenience arguments are threadbare at best, simply relabeling defendant-specific discovery as common. Motion at 14. Each category they identify concerns separate conduct and separate proof: (a) each retailer's internal communications about its own pricing decisions; (b) each retailer's importer-of-record status for particular products and entries; (c) each retailer's claimed entitlement to a refund; (d) each retailer's own transaction and pricing data; and (e) expert analysis built from those defendant-specific records. The same type of discovery request may be served in several cases, but it will seek different documents from different custodians and produce different answers.

Movants are also wrong to characterize the federal government as a "common actor" or "common counterparty." Motion at 10, 13. The government is not a party, is not alleged to have participated in any retailer's pricing or disclosure decision and is not a common witness concerning that conduct. The tariffs and the decision invalidating them are public facts that require no discovery. The disputed questions, and those requiring discovery, begin with what each defendant did in response to tariffs. Movants also fail to identify any unique information held only by the government, much less a single government witness who could testify about every retailer's imports, pricing, representations, refund claims, and damages. Indeed, the records necessary to

determine what a retailer paid and what it sought or received as a refund such as customs declarations and entry summaries, duty payment and accounting records, communications with brokers or CBP, and any refund submission, are in a Retailer Defendant's possession. More importantly though, those records (even if some are also in the possession of the government) should be obtained from the defendant first without resorting to burdensome third-party discovery from the government.

Movants likewise fail to proffer any common witnesses among the Retailer Defendants themselves. Each company will have its own personnel in procurement, customs, finance, pricing, marketing, and data systems. No Amazon witness can testify why Nike changed a price, what Costco imported, what Shein told its customers, or what Temu sought from CBP. Centralization would only collect unrelated discovery under one docket; it would not avoid repetitive discovery of the same conduct.

That distinguishes *In re Pilot Flying J Fuel Rebate Contract Litigation (No. II)*, on which Movants rely. Motion at 13-14. There, a single fraud was allegedly orchestrated by Pilot management, calculations were performed at Pilot's headquarters, and centralization avoided repeated depositions and document discovery concerning that one centrally directed scheme. 11 F. Supp. 3d 1351, 1352 (J.P.M.L. 2014). Here there is no central management, common headquarters, or single scheme. Any actionable pricing policy was devised independently by each defendant, implemented by its own people, and applied to its own products and customers.[5]

Far from serving convenience, a multi-industry MDL would require every retailer to participate in global scheduling, leadership, discovery, and briefing involving companies with

---

[5] *In re Multidistrict Litigation Involving Banking Agreements with Stirling Homex Corp.* 388 F. Supp. 572, 573 (J.P.M.L. 1975), cited by Movants (Motion at 13-14) is no more helpful because all parties there agreed to centralization; whereas here, they do not.

which it shares no common documents or witnesses. Movants have therefore failed to show that centralization would serve the convenience of the parties or witnesses.

**C. Centralization Would Not Promote the Just and Efficient Conduct of the Actions**

Movants must also show that centralization will promote the just and efficient conduct of the Actions. Movants fail here as well because they offer only conclusory statements that one judge can manage discovery, motion practice, and class certification more efficiently. Motion at 14-16. That does not carry their burden.

Centralization in the proposed MDL would not produce common merits work. Discovery would proceed retailer by retailer, through separate custodians and systems, into separate products, import records, pricing decisions, representations, transactions, and refunds. Motions to dismiss would turn on different pleadings, state consumer-protection statutes, alleged statements, standing theories, and causation. Costco's motion to dismiss is fully-briefed, and a central dispute in that briefing is whether Washington-based Costco violated the Washington Consumer Protection Act. ECF 24; 26-27. Class certification would concern different groups of purchasers, representations, pricing records, injury models, and state laws. Damages would require retailer-specific data and analysis. Different rulings based on different records and law are not conflicting rulings; they are the expected result when presented with materially different cases.

Movants' proposed solution to these clear bars to centralization is that the transferee court can create separate tracks for each Retailer Defendant. Motion at 3, 19-20. This only confirms the inefficiency of centralization here. Tracks are a case-management tool, not an independent basis for centralization. If every retailer needs its own pleadings, custodians, discovery, confidentiality restrictions, motions, experts, class record, and damages model, the tracks would simply recreate separate lawsuits inside an MDL while adding global administration, leadership, and coordination

to the mix. The necessity of dividing the proceeding at its inception would undo any efficiencies Movants claim.

The cases Movants cite do not hold otherwise. In *In re Lehman Brothers Holdings, Inc., Securities and Employee Retirement Income Security Act (ERISA) Litigation*, Lehman supplied a common defendant or source of information about common events and witnesses; the Panel merely identified separate tracks as a tool available to manage remaining differences. 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009). *In re Janus Mutual Funds Investment Litigation* likewise involved similar mutual-fund trading practices and "some common defendants and/or witnesses" therefore making separate tracks feasible. 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004). Those common anchors do not exist here.[6]

Centralization also poses the risk of decreasing efficiency because it would generate confidentiality disputes that separate cases would avoid. Centralization would force the gathering of Retailer Defendants' (some of which are competitors, *e.g*. Costco and Walmart) trade secrets and confidential business information into one proceeding. The Panel has found that the need to protect such information from other parties can make a multi-defendant MDL harder, not easier, to manage. *Proton-Pump Inhibitor*, 273 F. Supp. 3d at 1361-62; *see also In re Benzoyl Peroxide Marketing, Sales Practices, and Products Liability Litigation*, 743 F. Supp. 3d 1373, 1375 (J.P.M.L. 2024) (variations among products and the need for separate discovery tracks and confidentiality safeguards risked an "unwieldy MDL"); *In re Invokana (Canagliflozin) Products*

[6] Movants' remaining cases are inapplicable. *Aqueous Film-Forming Foams* found significant overlapping discovery concerning the manufacturers and their products, but expressly took no position on whether separate tracking was warranted. 357 F. Supp. 3d 1391, 1394-95 (J.P.M.L. 2018). *Walgreens* likewise left the degree of coordination and any retailer-specific tracks to the transferee judge's discretion after centralization was otherwise warranted. 109 F. Supp. 3d 1373, 1376 (J.P.M.L. 2015).

*Liability Litigation*, 223 F.Supp.3d 1345 (JPML 2016); *In re Salesforce, Inc., Customer Data Security Breach Litigation*, 813 F.Supp.3d 1355 (JPML 2025).

Movants cite data-breach cases for the point that efficiencies can be gained through centralization. Motion at 14-16. But those cases are of no help. In *In re Marriott International, Inc., Customer Data Security Breach Litigation*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019), and *In re American Medical Collection Agency, Inc., Customer Data Security Breach Litigation*, 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019), the common breach was itself the event alleged to create liability and generated overlapping discovery. Therefore, efficiency could be gained by centralizing the cases and allowing that discovery to proceed in one forum. Here the "common" tariff policy did not itself create the asserted liability because liability hinges on each retailer's independent choices about whether and how to change prices, what to tell customers, and what benefit to retain.[7]

## II. MOVANTS HAVE NOT PURSUED ALTERNATIVES TO CENTRALIZATION

Centralization under Section 1407 is a remedy of last resort, not a matter of right for any movant able to identify a common question of fact. The Panel has repeatedly emphasized that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). These options include agreeing to proceed in a single forum via Section 1404 transfer of the cases, as well as voluntary cooperation and coordination among the parties and the involved courts to avoid duplicative discovery or inconsistent rulings. See, e.g., *In re Gerber Probiotic Prods. Mktg. and Sales Practices Litig*., 899F. Supp. 2d 1378, 1379 (J.P.M.L. 2012); *In*

---

[7] Because Plaintiffs oppose centralization in any forum, they take no position on the appropriate transferee district should the Panel nevertheless order centralization. Plaintiffs' decision not to address that contingent question should not be construed as support for Movants' proposed Northern District of Illinois.

*re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.,* 446 F. Supp. 242, 244 (J.P.M.L. 1978); *see also* Manual for Complex Litigation, Fourth, § 20.14 (2004).

The Movants also bear the heavy burden of demonstrating the need for centralization. *See In re Transocean Ltd. Sec. Litig. (No. II)*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010). And that burden runs to the Panel itself, who have "an institutional responsibility that goes beyond simply accommodating the particular wishes of the parties" and has denied centralization on even unopposed motions for centralization. *In re Equinox Fitness Wage & Hour Emp't Practices Litig.*, 764 F. Supp. 2d 1347, 1348 (J.P.M.L. 2011).

The Movants cannot carry that burden here because it made no effort to pursue any alternative to centralization before invoking the Panel's jurisdiction. The Movants never approached these Plaintiffs about voluntarily coordinating discovery or pretrial proceedings. The Movants never sought the parties' agreement to litigate in a single forum and never moved under Section 1404(a) to transfer and consolidate the related actions before one district court. The Panel has denied centralization before, declining to find Section 1407 centralization necessary, "particularly where the parties have made no effort to informally cooperate." *See In re Gemcap Lending I, LLC, Litigation*, 382 F.Supp.3d 1352 (J.P.M.L. 2019).

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Panel deny Movants' Motion because centralization in these circumstances is inconvenient and does not promote the just and efficient conduct of the actions.

Dated: September 10, 2026

**MILBERG, PLLC**

By: */s/ Jason T. Dennett*
Jason T. Dennett, WSBA No. 30686
**MILBERG, PLLC**
1700 7th Ave, Suite 2100
Seattle, WA 98101
Telephone: (516) 515-9124
jdennett@milberg.com

*Attorney for Plaintiffs David Briggs, Marcus Carreon, Erin Charlton, Emily Maldonado, Kelsey Morse, Ashley Parker, and Karyn Wiggle*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2026, I served the foregoing upon all counsel of record by filing it with the Court's electronic-filing system.

*/s/ Jason T. Dennett*
Jason T. Dennett