**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: RETAILER TARIFF LITIGATION** | **MDL No. 3202** |

**DEFENDANT NIKE, INC.'S RESPONSE IN OPPOSITION TO MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

BACKGROUND ........ 2

A. Nike's Response to the IEEPA Tariffs ........ 2

B. The Consolidated Nike Action ........ 3

LEGAL STANDARD ........ 4

ARGUMENT ........ 5

I. CENTRALIZATION WILL NOT PROMOTE THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS. ........ 5

A. Centralization Would Complicate Discovery Because The Actions Do Not Turn on Common Facts. ........ 6

B. Centralization Would Complicate Discovery Because the Retailer Defendants Are Competitors And Centralized Discovery Would Involve Confidential Pricing Information. ........ 8

C. The Cases Against Nike Already Are Consolidated. ........ 9

D. Nike's Motion to Dismiss Will Be Filed Soon. ........ 9

E. Many Parties Oppose Centralization. ........ 10

II. THE NIKE ACTION DOES NOT SHARE COMMON ISSUES OF FACT WITH THE OTHER ACTIONS. ........ 11

III. CENTRALIZATION WOULD NOT FURTHER THE CONVENIENCE OF PARTIES AND WITNESSES. ........ 13

CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Home Prods. Corp. "Released Value" Claims Litig.*,
448 F. Supp. 276 (J.P.M.L. 1978)....13

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*,
410 F. Supp. 3d 1350 (J.P.M.L. 2019)....5

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
357 F. Supp. 3d 1391 (J.P.M.L. 2018)....5

*In re Baby Food*,
544 F. Supp. 3d 1375 (J.P.M.L. 2021)....6, 9, 10

*In re Benzoyl Peroxide*,
743 F. Supp. 3d 1373 (J.P.M.L. 2024).... *passim*

*In re Best Buy Co., Inc. Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011)....5, 9

*In re Cable Tie Patent Litig.*,
487 F. Supp. 1351 (J.P.M.L. 1980)....4

*In re Cash Sweep Programs Contract Litig.*,
766 F. Supp. 3d 1346 (J.P.M.L. 2025)....11, 14

*In re COVID-19 Bus. Interruption Prot. Ins. Litig.*,
482 F. Supp. 3d 1360 (J.P.M.L. 2020)....11, 12

*In re CP4 Fuel Pump Mktg., Sales Pracs., & Prods. Liab. Litig.*,
412 F. Supp. 3d 1365 (J.P.M.L. 2019)....6, 8

*In re Electrolux Dryer Prods. Liab. Litig.*,
978 F. Supp. 2d 1376 (J.P.M.L. 2013)....11

*In re Glucagon-Like Peptide-1 Receptor Agonists Prods. Liab. Litig.*,
717 F. Supp. 3d 1370 (J.P.M.L. 2024)....13

*In re Hartford COVID-19 Bus. Interruption Prot. Ins. Litig.*,
493 F. Supp. 3d 1358 (J.P.M.L. 2020)....9, 11

*In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*,
517 F. Supp. 2d 1362 (J.P.M.L. 2007)....14

*In re Linear Gadolinium-Based Contrast Agents Prods. Liab. Litig.*,
341 F. Supp. 3d 1381 (J.P.M.L. 2018)....13

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
109 F. Supp. 3d 1382 (J.P.M.L. 2015)..........5

*In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*,
363 F. Supp. 3d 1372 (J.P.M.L. 2019)..........5, 13

*In re Paycheck Prot. Program (PPP) Agent Fees Litig.*,
481 F. Supp. 3d 1335 (J.P.M.L. 2020)..........11

*Porteous v. Flowers Foods, Inc.*,
766 F. Supp. 3d 1093 (D. Or. 2025)..........13

*In re Proton-Pump Inhibitor Prods. Liab. Litig.*,
273 F. Supp. 3d 1360 (J.P.M.L. 2017)..........5, 6

*In re Republic Nat'l-Realty Equities Sec. Litig.*,
382 F. Supp. 1403 (J.P.M.L. 1974)..........5

*In re Secondary Ticket Mkt. Refund Litig.*,
481 F. Supp. 3d 1345 (J.P.M.L. 2020)..........11, 12

*In re Shoulder Pain Pump-Chondrolysis Prods. Liab. Litig.*,
571 F. Supp. 2d 1367 (J.P.M.L. 2008)..........11

*In re Travelers COVID-19 Bus. Interruption Prot. Ins. Litig.*,
492 F. Supp. 3d 1341 (J.P.M.L. 2020)..........10

*In re Tropicana Juice Mktg. and Sales Pracs. Litig.*,
867 F. Supp. 2d 1341 (J.P.M.L. 2012)..........5, 6, 8, 11

*In re Video Game Addiction Prods. Liab. Litig.*,
737 F. Supp. 3d 1353 (J.P.M.L. 2024)..........5, 10, 14

**Statutes**

28 U.S.C. § 1407..........1, 4, 5, 9

International Emergency Economic Powers Act, 50 U.S.C. § 1701, *et seq.*..........1

**Other Authorities**

*Footwear Distributors & Retailers of America Letter to President Donald Trump* (April 29, 2025), https://fdra.org/wp-content/uploads/2025/04/April-29-Footwear-POTUS-Letter.pdf..........2

Nike, *FY25 Q4 Earnings Release Conference Call Transcript* (June 26, 2025), https://s1.q4cdn.com/806093406/files/doc_financials/2025/q4/NIKE-Inc-Q4FY25-OFFICIAL-Transcript_-FINAL.pdf..........3

Nike, *Terms of Sale* (Dec. 2025), https://agreementservice.svs.nike.com/us/en_us/rest/agreement?agreementType=termsOfSale&uxId=com.nike.commerce.nikedotcom.web&country=US&language=en&requestType=redirect ....................13

## INTRODUCTION

Plaintiffs suing two retailers (the "Movants"),[1] seek to centralize 25 putative class actions (the "Actions")[2] involving 15 different retailers (the "Retailer Defendants"),[3] including NIKE, Inc. ("Nike") pursuant to 28 U.S.C. § 1407 (the "Motion"[4] or "Mot."). Nike opposes the Motion.

While each of these 25 Actions seeks refunds of price increases the plaintiffs claim to have paid as a result of tariffs imposed pursuant to the International Emergency Economic Powers Act ("IEEPA," the "Tariffs"), that superficial commonality does not require centralization. Each action will turn, not on any commonality, but instead on each company's public statements (which will differ from company to company), the particular pricing actions taken (which also will differ from company to company), and what the plaintiffs saw and purchased (which will differ from plaintiff to plaintiff). As such, centralization does not offer any efficiencies.

If any of these cases proceed past a motion to dismiss (which they should not), centralization will only slow down discovery since many of the Retailer Defendants are competitors (including, for example, Nike, adidas, and Puma, etc.). Given the nature of the claims, discovery will necessarily implicate sensitive confidential pricing data. There is no reason for any of the Retailer Defendants to be forced to provide such confidential information to any other Retailer Defendant, as none of that information is even remotely pertinent to any other matter. If

---

[1] The Movants are Don Polistico, Tonysha Emerson, Sharon Lasseter, Zuania Martinez, Parveen Sangha, Patricia Cavallaro, Gregory Rittenhouse, and Luisa Spadafino. Each Movant has asserted a Tariff refund case against Target or Amazon. *See* Mot. at 1 n.1.

[2] The Actions are identified in the Amended Schedule of Actions filed with the Motion.

[3] The Retailer Defendants include Sony Interactive Entertainment LLC, Target Corporation, Amazon.com, Inc., Costco Wholesale Corporation, Whaleco Inc. (d/b/a Temu), Shein Distribution Corporation and related entities, The J.M. Smucker Company, Puma United North America, LLC and related entities, EssilorLuxottica S.A. and related entities, adidas America Inc., Zara USA, Inc., Walmart Inc., IKEA North America Services LLC and related entities, Microsoft Corporation, and Nike. *See* Mot. at 1 n.1.

[4] *See* Movants' Motion to Transfer (Corrected), dated August 20, 2026, ECF No. 3.

required to do so, the Court would need to impose comprehensive confidentiality agreements.

Moreover, Nike already achieved consolidation of the relevant cases against it. Initially, plaintiffs brought three separate cases against Nike, two in federal court in Oregon and one in the Central District of Illinois, seeking Tariff refunds. Counsel for the Oregon cases agreed voluntarily to consolidate the cases, and Nike explained to counsel for the Illinois case that it would move to transfer the case to Oregon if they would not agree to dismiss or consolidate it. The Illinois case was then voluntarily dismissed. The consolidated action, *Caldwell v. NIKE, Inc.*, No. 3:26-cv-00923-IM (D. Or.) (Immergut, J.) (the "Nike Action"), is proceeding in Oregon, where Nike is headquartered. Nike's motion to dismiss will be fully briefed by November 30, 2026. As the Nike Action is proceeding quickly, centralization would only slow down its resolution.

Notably, the plaintiffs in the Nike Action are not Movants and Nike understands that they will oppose the Motion. As a result, all parties to the Nike Action oppose centralization.

For these reasons and those set forth below, the Panel should deny centralization.

## BACKGROUND

### A. Nike's Response to the IEEPA Tariffs

Many of Nike's "goods [are] sourced through [its] global supply chain" and the Tariffs "increased Nike's cost of importing merchandise into the United States." *See* Nike Action, ECF No. 24, Consolidated Amended Class Action Complaint (the "Nike Complaint" or "Nike Compl.") ¶¶ 31-32, 37. Nike has a global supply chain where its "athletic footwear and apparel is supplied by 112 footwear factories located in 11 different countries." *Id.* ¶ 31. Nike is also uniquely situated as a footwear manufacturer, compared to certain of the other Retailer Defendants, as the "U.S. government already places a significant tariff burden on [footwear]." *See* Footwear Distributors & Retailers of Am., *Footwear Distributors & Retailers of America Letter to President Donald Trump* (April 29, 2025), https://fdra.org/wp-content/uploads/2025/04/April-29-Footwear-

POTUS-Letter.pdf. The Tariffs were "stacked on top of the existing high footwear tariff rates, meaning that many American footwear companies [paid] . . . a tariff ranging from more than 150 percent to nearly 220 percent." *Id.* at 2.

Nike was fully transparent with its customers about the impact of the Tariffs. The Nike Complaint alleges that Nike "publicly acknowledged, early in the tariff period, that the Tariffs would increase its costs," "place upward pressure on the prices it charges consumers," and "affect pricing decisions and the company's cost structure." Nike Compl. ¶¶ 54, 56. But those price increases were not uniform or across the board. Rather, "Nike publicly announced that it would be implementing 'surgical' price increases" (*id.* ¶ 58), which were done "as part of [Nike's] regular approach to seasonal planning" and would have a "phased implementation beginning in fall '25." *See* Nike, *FY25 Q4 Earnings Release Conference Call Transcript*, at 11 (June 26, 2025), https://s1.q4cdn.com/806093406/files/doc_financials/2025/q4/NIKE-Inc-Q4FY25-OFFICIAL-Transcript_-FINAL.pdf.

Nike outlined its four-part strategy to mitigate the $1 billion tariff costs, which also included diversifying its "sourcing mix" and "allocat[ing] production differently across countries," working with suppliers and retail partners to "minimize the overall impact to the consumer," and "evaluat[ing] corporate cost reduction." *Id.* at 11. Nike implemented these actions at different points in time throughout the fiscal year, "taking into consideration the consumer, the back-to-school holiday season, [and] the conversations [it was having] with both [its] suppliers and retail partners." *Id.* at 19. As a result, Nike did not pass on 100% of the Tariff costs to consumers, and its pricing changes were not taken only in reaction to the Tariffs. *See* Nike Compl. ¶ 58 (acknowledging that Nike could not absorb the entire cost of the Tariffs in its pricing).

### B. The Consolidated Nike Action

Following the Supreme Court's invalidation of the Tariffs, Nike was sued in three putative

class actions in two different venues: *Farrington v. NIKE, Inc.*, No. 2:26-cv-2131 (C.D. Ill.), *Dunn v. NIKE, Inc.*, No. 3:26-cv-954 (D. Or.), and *Caldwell v. NIKE, Inc.*, No. 3:26-cv-00923 (D. Or.). After discussions with plaintiffs' counsel, *Farrington* was voluntarily dismissed, and counsel for *Dunn* and *Caldwell* filed Plaintiffs' Joint Unopposed Motion to Consolidate Related Actions and for Appointment of Interim Co-Lead Class Counsel. Nike Action, ECF No. 5. On June 17, 2026, Judge Karin J. Immergut consolidated the Nike Actions in in the District of Oregon, where Nike is headquartered. Nike Action, ECF No. 9.

On July 17, 2026, plaintiffs Diann Caldwell, James Dunn, Phillip Taylor, Rachel Bailey, Roman Merino, Tyranika Johnson, Gregory Hoffert, Elzey Linder, Chris Hufana, Robert White, and Javier Mancilla (the "Nike plaintiffs") filed a consolidated Nike Complaint, in which eleven plaintiffs from ten different states, including Oregon, New Jersey, Pennsylvania, Illinois, Michigan, Missouri, Louisiana, California, Washington, and North Carolina, assert unjust enrichment, money had and received, statutory consumer protection claims under the laws of those states, and a declaratory judgment claim, on behalf of a putative nationwide class and ten putative state subclasses of consumers who purchased Nike products. *See* Nike Compl. ¶¶ 85-86. The Nike plaintiffs and their counsel are not signatories to the Motion.

Nike will file its motion to dismiss on September 15, 2026, the opposition is due on October 30, 2026, and Nike's reply brief is due on November 30, 2026.

## LEGAL STANDARD

The Panel may centralize civil cases for coordinated pretrial proceedings when: (1) transfer "will promote the just and efficient conduct of such actions," (2) the cases "involv[e] one or more common questions of fact," and (3) transfer will further "the convenience of parties and witnesses." 28 U.S.C. § 1407(a). The Movants bear the burden of showing Section 1407's requirements have been met. *In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1354 (J.P.M.L. 1980). Here, they are

not. As the Panel repeatedly has emphasized, "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Best Buy Co., Inc. Cal. Song-Beverly Credit Card Act Litig.,* 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).

## **ARGUMENT**

### I. CENTRALIZATION WILL NOT PROMOTE THE JUST AND EFFICIENT CONDUCT OF THE ACTIONS.

"Proponents of an industry-wide MDL generally have a heavy burden to show that the actions will share sufficient overlap that including them will promote the just and efficient conduct of the litigation." *In re Video Game Addiction Prods. Liab. Litig.*, 737 F. Supp. 3d 1353, 1354 n.5 (J.P.M.L. 2024) (denying centralization). Indeed, the Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products" because it "likely would complicate case management" (*In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017) (citation omitted)) and "result in inefficiencies and delay." *In re Tropicana Juice Mktg. and Sales Pracs. Litig.*, 867 F. Supp. 2d 1341, 1342 (J.P.M.L. 2012).[5]

Centralization here will not promote the just and efficient conduct of the Actions because: (A) centralization will complicate, rather than streamline, discovery, as the Actions involve

---

[5] Most of the cases the Movants cite are distinguishable because they involved only one defendant, related corporate entities, or the same distinct set of defendants across all underlying actions. *See In re Marriott Int'l, Inc. Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372 (J.P.M.L. 2019) (Marriott); *In re Republic Nat'l-Realty Equities Sec. Litig.*, 382 F. Supp. 1403 (J.P.M.L. 1974) (Republic National Life Insurance Company and related individuals, investors, and auditors); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018) ("With some minor variations, the same group of . . . manufacturer defendants is named in each action."); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350 (J.P.M.L. 2019) (American Medical Collection Agency); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 109 F. Supp. 3d 1382 (J.P.M.L. 2015) (Lumber Liquidators). *In re Plumbing Fixture Cases* is distinguishable because it involved antitrust claims, which generally involve purported coordination between different defendants, which is lacking here, and in any event, many of the defendants were sued in multiple underlying actions. *See* 298 F. Supp. 484, 486, 497 (J.P.M.L. 1968).

competitors in the retail industry and do not share common facts; (B) Nike has already achieved consolidation of the cases against it; (C) Nike will be moving to dismiss the Complaint shortly, and there is no risk of inconsistent rulings against Nike or the Nike Plaintiffs directly; and (D) all parties to the Nike Action oppose centralization.

### A. Centralization Would Complicate Discovery Because The Actions Do Not Turn on Common Facts.

Centralization would not streamline discovery here because the Actions do not depend upon common facts, but instead on the particular response to the Tariffs taken by each of the 15 different Retailer Defendants, most of whom are competitors with one another in the retail industry. No efficiencies are gained where, as here, discovery would be "defendant-specific." *See*, *e.g.*, *In re Benzoyl Peroxide*, 743 F. Supp. 3d 1373, 1374 (J.P.M.L. 2024) (denying centralization); *In re Baby Food*, 544 F. Supp. 3d 1375, 1376-77 (J.P.M.L. 2021) (same); *In re Proton-Pump Inhibitor*, 273 F. Supp. 3d at 1362 (denying centralization where "a significant amount of the discovery in these actions appears almost certain to be defendant-specific"); *In re Tropicana Juice*, 867 F. Supp. 2d at 1342 (denying industry-wide centralization; "Separate discovery would be necessary as to each defendant's products and processes."); *In re CP4 Fuel Pump Mktg., Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1366 (J.P.M.L. 2019) (denying centralization due to "numerous automaker-specific and plaintiff-specific issues").

In *In re Benzoyl Peroxide*, for example, the plaintiffs "s[ought] creation of an industry-wide MDL" of cases alleging benzoyl peroxide in acne treatment products manufactured and sold by different companies degrades into a carcinogen. *Id.* at 1374. Noting that the Panel has "been cautious when considering such requests," it found that a "number of considerations . . . weigh against certification" despite "several common issues of fact." *Id.* Those considerations included that "[a]ll but one of the suits were brought against an individual defendant or group of related

defendants and involve a single product line," "[a]t least twelve different defendants or defendant groups are named in the 35 total actions, yet no defendant group was sued in more than six actions," and "[d]efendants' products vary with respect to their formulations, the quantity of benzoyl peroxide they contain, how the products are packaged and stored, and how they are labeled and marketed. Discovery as to any testing done by defendants also will be defendant-specific." *Id.*

The Tariff cases are even less suited for consolidation. Here, there are no common issues of fact and no common product or substance that permeates all of the Actions. But, similar to *Benzoyl Peroxide*, at least 15 different defendants are named in the 25 Actions and only four have multiple cases against them, and discovery will be even more defendant specific. The Movants try to lump together all of the Retailer Defendants, claiming they made "the same public statements" about the Tariffs and "parallel" pricing decisions (Mot. at 16), but even the Motion proves that wrong. The Motion makes clear that different retailers made different statements at different times regarding the potential for Tariff-related price increases:

- "In December 2024, Costco[] . . . warned that '[t]ariffs raise costs'";
- "In March 2025, Target . . . told CNBC that consumers would 'likely see price increases over the next couple of days'";
- "In May 2025, Walmart[]" told consumers they would see higher prices in May or June;
- "In January 2026, Amazon[] . . . acknowledged that the IEEPA tariffs had begun to 'creep' into Amazon's prices[.]" Mot. at 4-5.

The Motion does not establish that each company's pricing actions were the same, and common sense indicates they were not. While the Motion claims that each company's "internal communications" and "data illustrating the amount of overcharges" are common, Mot. at 14, obviously, those communications and data will differ from company to company.

What other companies may or may not have said or done is immaterial to the case against

Nike. Resolution of the Nike Action will turn on issues specific to Nike and the 11 plaintiffs suing it, including: what Nike said; how and when it increased prices; what other factors caused price increases; what the plaintiffs bought; whether they bought it from Nike; what they paid; whether they received any discounts; what they saw before their purchase; whether any plaintiff can tie their purchase to an actual price increase, let alone one caused by the Tariffs; whether any plaintiff was otherwise deceived or injured; and whether any plaintiff is subject to a class action waiver.

### B. Centralization Would Complicate Discovery Because the Retailer Defendants Are Competitors And Centralized Discovery Would Involve Confidential Pricing Information.

Centralization is inappropriate where "the introduction of competing defendants into the litigation, and the need to protect trade secret and confidential information from full disclosure to the parties, would complicate case management." *In re Tropicana Juice*, 867 F. Supp. 2d at 1342; *see also In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1367 (denying centralization); *In re Benzoyl Peroxide*, 743 F. Supp. 3d at 1374-75 (finding centralization improper as it "could result in an unwieldy MDL and require separate discovery tracks to safeguard the confidentiality of defendants' unique formulations").

In *In re CP4 Fuel Pump*, for example, the movants sought to consolidate cases involving three "vehicle makers" who were competitors. 412 F. Supp. 3d at 1367. The Panel noted that it "is typically hesitant to centralize litigation against multiple, competing defendants" and denied centralization. *Id.* (citation omitted). In so holding, it stated that "centralizing competing defendants in the same MDL likely would complicate case management due to the need to protect trade secret and confidential information." *Id.* "[A] multi-defendant MDL may prolong pretrial proceedings, because of, *inter alia*, the possible need for separate discovery and motion tracks[.]" *Id.* As such, "centralizing these ten single-defendant cases likely would result in significant inefficiencies and delay, without producing any substantial offsetting benefits." *Id.*

Here, discovery will inevitably delve into each Retailer Defendant's sensitive and proprietary pricing information. There is no reason for the Retailer Defendants to produce that information in an MDL involving their competitors, as it is immaterial to the matters against another company. At a minimum, the Court would need to impose stringent and comprehensive protective orders to protect such information, which would complicate the discovery process.

**C. The Cases Against Nike Already Are Consolidated.**

Section 1407 centralization is "the last solution after considered review of all other options." *In re Best Buy*, 804 F. Supp. 2d at 1378 (denying centralization). "[A]lternative means to Section 1407 centralization, such as transfer under Section 1404(a), are preferable." *Id.* Where, as here, the cases sought to be centralized involve different defendants across an industry, the Panel has found that consolidating actions against each defendant separately, rather than an industry-wide centralization of cases involving competitors, is more efficient. *See In re Benzoyl Peroxide*, 743 F. Supp. 3d at 1374-75 (denying centralization where "defendants ha[d] made concerted efforts to organize the litigation on a defendant-specific basis by seeking to transfer claims"); *In re Baby Food*, 544 F. Supp. 3d at 1378 (denying centralization; "it is better to allow the parties' attempts to self-organize" via consolidation and transfer "play out before centralizing any part of this litigation.").

That is the case with the Nike Action. Of all the 25 cases the Movants are seeking to consolidate, only one involves Nike. *See* Amended Schedule of Actions. That case is the result of consolidation and is proceeding where Nike is headquartered. *See* Background, Section B. As a result, there is no need for centralization with 15 other retailers who happen to have cases against them seeking refunds.

**D. Nike's Motion to Dismiss Will Be Filed Soon.**

No efficiency is gained where, as here, dispositive motions are about to be filed. *See In re*

*Hartford COVID-19 Bus. Interruption Prot. Ins. Litig.*, 493 F. Supp. 3d 1358, 1361 (J.P.M.L. 2020) (denying centralization where "dispositive motions . . . are pending in 37 of the 143 actions" and "allowing the various transferor courts to decide these [motions] will result in quicker and more efficient resolution of this litigation"); *In re Travelers COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp. 3d 1341, 1343-44 (J.P.M.L. 2020) (same).

Nike will move to dismiss the Complaint on September 15, 2026 based on the particular allegations against Nike, the specific causes of action, the statements that Nike made, and the law applicable to the claims asserted. Nike's motion to dismiss will be fully submitted on November 30, 2026. *See* Nike Action, ECF No. 9. Motions to dismiss or pre-motion letters have been filed in at least nine of the Actions.[6] Given that, starting over in a centralized action is not efficient. Rather, it will likely delay Nike's motion.

**E. Many Parties Oppose Centralization.**

Centralization also is not warranted because Nike understands that many of the Retailer Defendants and many of the non-Movant plaintiffs, including the Nike Plaintiffs, oppose centralization. *See, e.g.*, *In re Benzoyl Peroxide*, 743 F. Supp. 3d at 1374 (considering that "all parties" did not "support centralization" in denying centralization); *In re Baby Food*, 544 F. Supp. 3d at 1377 (considering the "strong opposition of numerous plaintiffs and defendants" in denying centralization); *In re Video Game Addiction*, 737 F. Supp. 3d at 1354 (denying centralization and noting that "[a]ll responding defendants oppose centralization"). Given this

[6] *In re Sony Interactive Ent. Tariff Litig.,* N.D. Cal. Case No. 3:26-cv-04121 at ECF No. 31; *Stockov v. Costco Wholesale Corp.*, N.D. Ill. Case No. 1:26-cv-02734 at ECF No. 23; *Burgh v. EssilorLuxottica S.A., et al.*, E.D.N.Y. Case No. 1:26-cv-01133 at ECF No. 29; *Hernandez v. adidas America, Inc.*, E.D.N.Y. Case No. 2:26-cv-02848 at ECF No. 16; *Trocchio v. Zara USA, Inc.*, S.D.N.Y. Case No. 1:26-cv-05009 at ECF No. 18; *Glase v. Walmart Inc.*, N.D. Ohio Case No. 1:26-cv-00988 at ECF No. 17; *Briggs v. Costco Wholesale Corp.*, W.D. Wash. Case No. 2:26-cv-01064 at ECF No. 24; *Hastings v. Microsoft Corporation*, W.D. Wash. Case No. 2:26-cv-02537 at ECF No. 23, Lemense v. Puma United North America, LLC, D. Mass. Case No. 1:26-cv-12654 at ECF No. 24.

strong opposition, centralization is not warranted here.

## II. THE NIKE ACTION DOES NOT SHARE COMMON ISSUES OF FACT WITH THE OTHER ACTIONS.

Centralization is inappropriate because individualized facts "will predominate over the common factual issues alleged by plaintiffs." *In re Electrolux Dryer Prods. Liab. Litig.*, 978 F. Supp. 2d 1376, 1377 (J.P.M.L. 2013) (denying centralization). The Panel has warned against centralization where efficiencies would be "overwhelmed by the multiple individualized issues," *In re Shoulder Pain Pump-Chondrolysis Prods. Liab. Litig.*, 571 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008), and it should be denied where purportedly common factual questions "share only a superficial commonality." *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp. 3d 1360, 1362 (J.P.M.L. 2020); *see also, e.g.*, *In re Cash Sweep Programs Contract Litig.*, 766 F. Supp. 3d 1346, 1349 n.4, 1349-50 (J.P.M.L. 2025) (denying centralization where the "'common' factual issues identified by movants . . . are ultimately defendant-specific questions," and the other "'common' issues are mostly legal in nature" (citation omitted)); *In re Paycheck Prot. Program (PPP) Agent Fees Litig.*, 481 F. Supp. 3d 1335, 1377 (J.P.M.L. 2020) (denying centralization because the "policies and practices for paying agent fees [were] unique to each lender"); *In re Tropicana Juice*, 867 F. Supp. 2d at 1342 (denying "industry-wide centralization" because the "actions involve different products, subject to potentially different methods of pasteurizing and processing, different advertisements, and different putative classes of consumers who purchased each product"); *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) (denying centralization where "defendants are separate businesses that employ[] . . . different marketing").

For example, in *In re COVID-19*, the plaintiffs sought to centralize claims against insurers asserting that commercial property insurance policies provided coverage "for business interruption

losses caused by the COVID-19 pandemic and the related government orders suspending, or severely curtailing, operations of non-essential businesses." 482 F. Supp. 3d at 1361. Even though there was a common event, COVID-19, the Panel denied centralization because "these cases involve different insurance policies with different coverages, conditions, exclusions, and policy language, purchased by different businesses in different industries located in different states," holding "[t]hese differences will overwhelm any common factual questions." *Id.* at 1362.

The same reasoning applies here. The Movants claim there was an "industry-wide pricing response the IEEPA tariffs produced, as reflected in parallel public statements announcing tariff-driven price increases." Mot. at 9-10. But there was no uniform, common statement that all the Retailer Defendants made. *See* Section I.A; Mot. at 4-5. And Nike's pricing, supply chains, sales, distribution, receipt of refunds, and interactions with named plaintiffs are all unique to Nike. These individualized issues will dominate.

The Movants' claimed "common factual or legal issues" are irrelevant red herrings. "[H]ow the IEEPA tariffs were assessed and collected" and "how [the] refund process operates," (Mot. at 9-10) do not matter. Regardless of how or why the IEEPA tariffs were assessed and how the refund process works, the issue in the Nike Action is whether Nike's actions in response to the Tariffs are somehow actionable under one of the 13 causes of action asserted by the plaintiffs. Nike Compl. at 23-44. The federal government is not a "counterparty" to the Nike Action and it is unlikely that either party will require "third-party discovery" from the government; Nike knows what it paid, what pricing actions it took, and the amount of any refunds. *See* Nike Compl. ¶ 8.

Finally, the Motion ignores that the Retailer Defendants may have "different terms of use, different arbitration agreements, different marketing and different choice of law provisions." *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d at 1346 (denying industry-wide

centralization). Nike's Terms of Sale, for example, contains a class action waiver,[7] which may "prevent [p]laintiff[s] from maintaining class or collective action claims." *Porteous v. Flowers Foods, Inc.*, 766 F. Supp. 3d 1093, 1107 (D. Or. 2025) (granting the "motion to strike the . . . class action allegations"). Nike's class action waiver introduces additional individualized issues, further rendering centralization inappropriate.

## III. CENTRALIZATION WOULD NOT FURTHER THE CONVENIENCE OF PARTIES AND WITNESSES.

The Panel has found that the location of a defendant's headquarters is relevant to the convenience analysis, as relevant evidence and witnesses are likely located nearby. *See In re Glucagon-Like Peptide-1 Receptor Agonists Prods. Liab. Litig.*, 717 F. Supp. 3d 1370, 1374 (J.P.M.L. 2024) (centralizing near defendant's headquarters because "many of the [relevant] witnesses and documents . . . will be located there"); *In re Marriott Int'l, Inc. Cust. Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374-75 (J.P.M.L. 2019) (same).

Here, none of the Retailer Defendants are headquartered in the Northern District of Illinois. Nike is headquartered in Oregon and the Nike Action is pending there. It would be much less convenient for Nike to litigate in the Northern District of Illinois rather than its home district where documents and witnesses are located.

Finally, the Panel routinely denies centralization requests involving numerous different defendants (particularly competitors) because centralization "would not serve the convenience of the parties and witnesses" for many of the reasons discussed above. *In re Linear Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, 341 F. Supp. 3d 1381, 1382 (J.P.M.L. 2018) (denying centralization of "four different defendant groups"); *In re Am. Home Prods. Corp. "Released*

[7] Nike, *Terms of Sale* (Dec. 2025), https://agreementservice.svs.nike.com/us/en_us/rest/agreement?agreementType=termsOfSale&uxId=com.nike.commerce.nikedotcom.web&country=US&language=en&requestType=redirect.

*Value" Claims Litig.*, 448 F. Supp. 276, 278 (J.P.M.L. 1978) (denying centralization of numerous defendants); *In re Ins. Cos. "Silent" Preferred Provider Org. (PPO) Litig.*, 517 F. Supp. 2d 1362, 1363 (J.P.M.L. 2007) (denying centralization where there were four actions against different defendants); *In re Video Game Addiction*, 737 F. Supp. 3d at 1354 (no convenience where there was a "broad range" of defendants); *In re Cash Sweep Programs*, 766 F. Supp. 3d at 1349 (denying centralization of cases involving competitors). So too here.

## CONCLUSION

For all of the foregoing reasons, centralization is not appropriate here. Respectfully, the Panel should deny the Motion.

Dated: September 10, 2026

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Keara M. Gordon*
Keara M. Gordon
keara.gordon@us.dlapiper.com
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212.335.4632

*Counsel for NIKE, Inc.*