**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: RETAILER TARIFF LITIGATION | MDL NO. 3202 |

# RESPONDENTS' JOINT OPPOSITION TO MOVANTS' AMENDED MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 5

ARGUMENT ........ 6

I. CENTRALIZATION OF THE ACTIONS IS NOT WARRANTED UNDER 28 U.S.C. § 1407. ........ 6

A. Centralization Would Not Promote the Just and Efficient Conduct of the Actions. ........ 6

1. Discovery Will Not Overlap Because the Actions Turn on Defendant-Specific Conduct. ........ 7

2. Centralization Would Create Pretrial Inefficiencies. ........ 10

3. Pretrial Motions Are Defendant-Specific. ........ 12

B. The Actions Share No Significant Common Factual Issues. ........ 13

C. Centralization Would Not Serve the Convenience of the Parties and Witnesses. ........ 14

II. ORDINARY CASE-MANAGEMENT PROCEDURES AND INFORMAL COORDINATION ARE SUFFICIENT. ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

## Cases

*In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*,
201 F. Supp. 3d 1375 (J.P.M.L. 2016)....9, 10

*In re AGI SureTrack, LLC, Cont. Litig.*,
766 F. Supp. 3d 1340 (J.P.M.L. 2025)....8

*In re Avocado Oil Mktg. & Sales Pracs. Litig.*,
766 F. Supp. 3d 1333 (J.P.M.L. 2025)....10

*In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*,
544 F. Supp. 3d 1375 (J.P.M.L. 2021)....9, 15

*In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*,
743 F. Supp. 3d 1373 (J.P.M.L. 2024)....9

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011)....15

*In re Brazilian Prosthetic Device Bribery Litig.*,
283 F. Supp. 3d 1381 (J.P.M.L. 2017)....13

*In re Cash Sweep Programs Cont. Litig.*,
766 F. Supp. 3d 1346 (J.P.M.L. 2025)....8, 11, 12, 14

*In re Cordarone (Amiodarone Hydrochloride) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
190 F. Supp. 3d 1346 (J.P.M.L. 2016)....14

*In re COVID-19 Bus. Interruption Prot. Ins. Litig.*,
482 F. Supp. 3d 1360 (J.P.M.L. 2020)....13

*In re CP4 Fuel Pump Mktg. Sales Pracs., & Prods. Liab. Litig.*,
412 F. Supp. 3d 1365 (J.P.M.L. 2019)....11

*In re Dish Wireless L.L.C. Commc'n Towers Cont. Litig.*,
No. MDL 3182, 2026 WL 1659414 (J.P.M.L. June 4, 2026)....9, 11

*In re Google Antitrust Litig.*,
521 F. Supp. 3d 1358 (J.P.M.L. 2021)....12

*In re: Honey Prod. Mktg. & Sales Pracs. Litig.*,
883 F. Supp. 2d 1333 (J.P.M.L. 2012)....9

*In re Insulin Pricing Litig.*,
688 F. Supp. 3d 1372 (J.P.M.L. 2023)....8

*In re Salesforce, Inc., Customer Data Sec. Breach Litig.*,
No. MDL 3164, 2026 WL 194638 (J.P.M.L. Jan. 26, 2026)....................11

*In re Secondary Ticket Mkt. Refund Litig.*,
481 F. Supp. 3d 1345 (J.P.M.L. 2020)....................7

*In re Tobacco/Governmental Health Care Costs Litig.*,
76 F. Supp. 2d 5 (D.D.C. 1999)....................6

*In re Video Game Addiction Prods. Liab. Litig.*,
737 F. Supp. 3d 1353 (J.P.M.L. 2024)....................9

**Statutes**

28 U.S.C. § 1407....................1, 6

Respondents[1] respectfully submit this Joint Opposition to Movants' Amended Motion for Transfer and Centralization Pursuant to 28 U.S.C. § 1407 (Dkt. No. 3-1) (the "Motion"), of the actions identified on the Schedule of Actions (Dkt. No. 3-2) (the "Actions").

## PRELIMINARY STATEMENT

The Panel should deny the Motion because the Actions are asserted against different companies, assert different legal theories based on different underlying facts, and – in the unlikely event that any of the Actions survives a motion to dismiss – will involve *no* common discovery. Accordingly, the factors enumerated in Section 1407(a) all weigh heavily against centralization, as centralization would not "promote the just and efficient conduct" of the Actions, there are no significant "common questions of fact," and centralization would not further the "convenience of parties and witnesses." 28 U.S.C. § 1407(a). The Motion, which appears to be driven entirely by a desire by Movants' counsel to gain control of the multiple tariff lawsuits filed against Amazon, should be summarily denied.

The twenty-five Actions are asserted against fifteen different companies that occupy different positions in the chain of commerce, from manufacturers or importers of record to online or brick-and-mortar retailers. Some sell only apparel, others only food, and still others an array of goods, from multiple different source countries and manufacturers. Each importer of record who paid tariffs under the International Emergency Economic Powers Act ("IEEPA") made different decisions based on different factors as to whether, when, and how much to adjust prices

---

1 Respondents joining in this opposition brief include: adidas America, Inc. ("adidas"); Costco Wholesale Corporation ("Costco"); Walmart Inc. ("Walmart"); Microsoft Corporation ("Microsoft"); Sony Interactive Entertainment LLC ("SIE"); PUMA United North America, LLC, PUMA North America, Inc., and United Legwear Company, LLC ("PUMA"); Shein Distribution Corporation, Shein US Services, LLC, and Shein Technology LLC ("Shein"); and Canon U.S.A., Inc. ("Canon").

of specific goods in response to those tariffs, and each company is alleged to have made different public statements regarding alleged price adjustments.

The Section 1407(a) factors and the Panel's jurisprudence make clear that centralization is not appropriate where, as here, the relevant actions are asserted against different defendants – in particular where there are no claims of collaboration or coordinated conduct by the defendants, no indivisible physical injury caused by multiple defendants' products or conduct, and no common products sold by defendants from a single supplier. The Panel has repeatedly emphasized its reluctance to centralize cases against an entire industry, particularly involving multiple defendants who are competitors, and for good reason: discovery in such cases is overwhelmingly defendant-specific, and the need to protect confidential information significantly complicates, rather than simplifies, case management.

Here, transfer and centralization of these actions would dramatically increase the burden on the parties and the courts and would create unnecessary complexity. Movants do not – and cannot – demonstrate that any of the Section 1407(a) factors are satisfied.

*First*, Movants fail to demonstrate that centralization would "promote the just and efficient conduct" of the Actions, which is the most important factor under Section 1407(a). The Actions involve claims against *different* defendants, relying on *different* legal theories and *different* state laws, based on plaintiffs' purchases of *different* products at prices allegedly impacted by IEEPA tariffs to *different* degrees. There is no alleged coordination, common supplier, uniform representation, or industry-wide pricing decision tying the defendants together. Any discovery in the Actions will be entirely defendant-specific, as it will likely involve such topics as each defendant's payment of IEEPA tariffs, the timing and amount of price adjustments of that defendant's specific products attributable to those tariff payments (if any), the specific

representations made by the defendant regarding any such price adjustments, the specific distribution and retail channels of the defendant's products, the defendant's relationship (if any) with the end customer, and any refunds of tariff payments sought or received by the defendant. Dispositive motions and class certification also will turn on defendant-specific issues.

Centralization therefore will not "streamline discovery," as Movants claim. To the contrary, because many of the defendants in the Actions are competitors, centralizing claims against them in a single MDL would serve only to *increase* the burden and complexity of discovery – on both the parties and the courts – as each defendant's pricing decisions and agreements with distributors and retailers is highly sensitive and confidential trade secret information. Centralized discovery would put the confidentiality of that information at risk, without any countervailing gains in efficiency.

*Second*, Movants fail to identify any significant "common questions of fact." In particular, Movants offer no facts supporting their assertion of an "industry-wide pricing response" to the IEEPA tariffs. (Mot. 10, 12.) Indeed, Movants themselves acknowledge that both the timing and amount of any price adjustments varied widely from defendant to defendant and across a multitude of industries, and from product to product. Movants' focus on the role of the federal government, based on their assertion that the collection (and any refunds) of IEEPA tariffs is "a common and overlapping core of factual allegations" among the Actions, is a red herring. (Mot. 9.) The imposition and subsequent invalidation of the IEEPA tariffs are common context, but that context is highly unlikely to be in dispute. Discovery in each of these cases will instead focus on each Defendant's response to those tariffs – *i.e.*, individual pricing decisions and public representations. To the extent information regarding the payment of the IEEPA

tariffs bore on a Defendant's response, that information can be obtained from the Defendant that made those payments.

*Third*, Movants fail to show that centralization would further the "convenience of parties and witnesses," as there is no duplicative discovery to be avoided. No documents produced by one defendant will be relevant to claims against a different defendant, and no fact witnesses will be deposed in actions against different defendants. Defendants are located across the country, witnesses and relevant evidence are geographically dispersed, and the Actions are not clustered in any district.

Eleven of the fifteen defendants face only one lawsuit according to Movants' Schedule of Actions. Where multiple lawsuits are asserted against a single defendant, they can be addressed through ordinary case management techniques, such as consolidation of cases filed in the same district, transfer under Section 1404 or the first-to-file doctrine, and stay of later-filed cases. In certain circumstances, a defendant-specific MDL might even be warranted. But there is no need for an MDL spanning a multitude of disparate industries: ordinary case management techniques are already working. Those techniques are preferred over centralization under Section 1407, particularly such a sweeping MDL, which should be invoked only as a last resort.

Rather than seeking efficiencies, the Motion appears to be improperly driven by competition among the plaintiff law firms suing Amazon for control of those lawsuits. In June 2026, certain actions against Amazon were consolidated under Rule 42(a) in the Western District of Washington. On August 1, 2026, the plaintiffs in that consolidated action moved to centralize the seven actions pending against Amazon in six districts in an Amazon-specific MDL. Amazon filed a response in support. Remarkably, the Movants here – fearing that their suits against Amazon would be swept into the Amazon MDL – *opposed* centralization on the basis that

ordinary case management techniques and informal coordination were sufficient, even though they also opposed transfer under Section 1404 and even though – unlike here – discovery would overlap substantially in those cases. Movants then filed this Motion, which takes the opposite position and claims that centralization is warranted, and which seeks to control not only the Amazon cases but this much "broader" set of lawsuits against fifteen separate companies. (Mot. 1 n.2.) The Panel should reject this gamesmanship.

## BACKGROUND

In early 2025, the federal government imposed a series of tariffs on goods imported into the United States under IEEPA. On February 20, 2026, the Supreme Court held in *Learning Resources, Inc. v. Trump* that IEEPA did not authorize those tariffs. 607 U.S. 229, 255 (2026). The federal government thereafter established a process through which importers of record could seek refunds of duties paid pursuant to the invalidated tariffs.

During the roughly one-year period between the imposition and invalidation of the tariffs, importers of record were required to pay the tariffs and were confronted with difficult decisions regarding how to respond, including whether, when, and how much to adjust prices of certain imported goods to account for the tariffs. According to Movants' allegations, different companies responded to the tariffs in different ways and at different times (if at all). According to Movants, in December 2024, Costco's CFO warned generally that tariffs raise costs. (Mot. 4.) In March 2025, Target's CEO stated that consumers would "likely see price increases over the next couple of days." (*Id.*) In April 2025, Shein and Temu announced imminent "price adjustments." (*Id.*) In May 2025, Walmart's CFO stated that consumers would begin seeing higher prices later that month and "much more in June." (*Id.* at 5.) In June 2025, Nike described its planned response as a "surgical price increase" intended to help offset anticipated tariff costs.

(*Id.*) In January 2026, Amazon's CEO stated that tariffs had begun to "creep" into Amazon's prices. (*Id.* at 4.)

Following the Supreme Court's decision in *Learning Resources*, plaintiffs filed the Actions in federal courts across the country. Asserting a variety of legal theories, based on the specific alleged pricing decisions and representations of each defendant, the plaintiffs generally seek a cut of any tariff refund received by the importer of record. The defendants have filed (or plan to file) motions to dismiss, and some defendants have filed (or plan to file) motions to compel arbitration. Most of the defendants are named only in a single action, many of which are brought by local plaintiffs in their own home forums. Where a defendant is named in multiple actions, the parties and courts have already begun using, or plan to use, ordinary case management techniques for efficient litigation.

## ARGUMENT

### I. CENTRALIZATION OF THE ACTIONS IS NOT WARRANTED UNDER 28 U.S.C. § 1407.

The Panel should not centralize the Actions because they do not involve any significant "common questions of fact," and centralization would not "promote the just and efficient conduct" of the Actions or further the "convenience of parties and witnesses." 28 U.S.C. § 1407(a). Movants' vague and unsupported assertions to the contrary fall far short of satisfying their burden of demonstrating the need for centralization.

#### A. Centralization Would Not Promote the Just and Efficient Conduct of the Actions.

The "most important" factor in determining whether centralization is warranted is whether it would "promote the just and efficient conduct" of the Actions. *In re Tobacco/Governmental Health Care Costs Litig.*, 76 F. Supp. 2d 5, 8 (D.D.C. 1999) (citations omitted). Centralization would do neither here. The Panel has repeatedly expressed that it is

"skeptical of requests to centralize claims filed against multiple defendants who are competitors in a single MDL because it often will not promote judicial efficiency or serve the convenience of the parties and witnesses." *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020). That is precisely the situation here: There will be no overlap in discovery because each Action challenges defendant-specific conduct. Moreover, many of the defendants are direct competitors, and centralization would hinder, rather than promote, efficiency because each defendant's pricing decisions and agreements are highly sensitive trade secrets that must be protected from disclosure to other defendants. At bottom, centralizing the Actions would create overwhelming complexity in the discovery process without any countervailing efficiencies or other benefits. The Panel has consistently denied centralization in these circumstances, and it should do so here as well.

#### 1. Discovery Will Not Overlap Because the Actions Turn on Defendant-Specific Conduct.

Centralization would not promote efficiency in the discovery process because, should any of the Actions proceed beyond the pleading stage, any discovery in the Actions will be entirely defendant-specific (and plaintiff-specific). Discovery as to each defendant might involve such topics as the defendant's payment of IEEPA tariffs, the defendant's pricing decisions (including the timing and amount of any price adjustments allegedly attributable to tariff payments), the defendant's consumer-facing representations regarding any such price adjustments, the defendant's supply chains and distribution and retail channels, and the defendant's application for and receipt of any tariff refunds.

Those inquiries do not overlap across defendants. Although Movants misleadingly lump together the companies named in the Actions as "Retailer Defendants," they are, in fact, fifteen distinct companies operating different businesses and occupying different positions in the supply

chain. They include apparel and footwear companies, grocery and general-merchandise retailers, furniture sellers, producers of food products, and technology companies. Some manufacture products, some import from other suppliers, some operate principally as retailers, and some perform multiple roles. They sell different products through different distribution channels and maintain different relationships, if any, with the consumers who ultimately purchase those products.

There is no allegation of any conspiracy, collaboration, or coordinated conduct by defendants in any of the Actions. Nor was there an "industry-wide pricing response" to the IEEPA tariffs, as Movants assert. (Mot. 10, 12.) The absence of an alleged industry-wide conspiracy differentiates this case from *In re Insulin Pricing Litigation*, 688 F. Supp. 3d 1372 (J.P.M.L. 2023), which Movants rely on to support consolidation among competitors. (Mot. 10.) Instead, to the extent that a defendant was required to pay an IEEPA tariff for a particular product, that defendant made individual decisions as to whether, when, and how much to adjust the price at which it sold that product (either to a distributor or retailer or directly to an end customer). And each defendant is alleged to have made different statements (if any) regarding any such price adjustments. Movants acknowledge as much, citing unrelated and divergent statements by various defendants over the course of 2025. (Mot. 4-5.) Accordingly, even a "common factual *question* likely will have defendant-specific *answers*." *In re Cash Sweep Programs Cont. Litig.*, 766 F. Supp. 3d 1346, 1349 (J.P.M.L. 2025) (emphasis added) (denying centralization of actions based on "superficial commonality").

The Panel has consistently denied centralization where, as here, "each action involves unique claims brought against different defendants" and a "large share of the discovery likely will be defendant-specific." *In re AGI SureTrack, LLC, Cont. Litig.*, 766 F. Supp. 3d 1340, 1341

(J.P.M.L. 2025); *see also In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375, 1376-77 (J.P.M.L. 2021) (denying centralization where plaintiffs "do not assert claims of an industry-wide conspiracy or coordination between defendants," the "claims against each defendant thus are likely to rise or fall on facts specific to that defendant," and "[m]uch of the discovery and pretrial practice will be defendant-specific"); *In re Dish Wireless L.L.C. Commc'n Towers Cont. Litig.*, No. MDL 3182, 2026 WL 1659414, at *1 (J.P.M.L. June 4, 2026) (denying centralization where the "limited factual overlap among these actions" was "overshadowed by numerous case-specific factual and legal questions"); *In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*, 743 F. Supp. 3d 1373, 1374 (J.P.M.L. 2024) (denying centralization of actions where plaintiffs did "not allege an industry-wide conspiracy or an indivisible physical injury caused by multiple defendants' products or conduct"); *In re: Honey Prod. Mktg. & Sales Pracs. Litig.*, 883 F. Supp. 2d 1333, 1333 (J.P.M.L. 2012) (denying centralization of actions involving honey retailers and producers where "plaintiffs have not alleged any conspiracy, collaboration, or other industry-wide conduct by the defendants" and actions involved "different defendants" that were "marketing different honey products").[2]

Movants' heavy reliance on *In re 100% Grated Parmesan Cheese Marketing & Sales Practices Litigation* ("*Parmesan Cheese*"), 201 F. Supp. 3d 1375 (J.P.M.L. 2016), is misplaced. (Mot. 10-11.) Unlike here, the actions at issue in *Parmesan Cheese* involved "significant overlap in the central factual issues, parties, and claims" because the plaintiffs claimed that all defendants allegedly "deceived consumers by marketing products containing cellulose as '100%'

---

[2] Even where coordinated conduct *is* alleged, centralization is unwarranted if the alleged conduct involves different groups of defendants and products. *See In re Video Game Addiction Prods. Liab. Litig.*, 737 F. Supp. 3d 1353, 1354-55 (J.P.M.L. 2024) (denying centralization where conspiracy claims were "pled against a different group of defendants and involve[d] different combinations of gaming products").

grated parmesan cheese," a "common supplier" of parmesan cheese products connected the defendants, and the actions would therefore turn on common factual and expert issues, such as laboratory testing and consumer perception of the labeling representation. *Id.* at 1377. Some of the actions named multiple defendants, and, notably, all but one responding party supported centralization. *Id.* None of those circumstances are present here. Instead, each Action, if it proceeds beyond the pleading stage, will involve separate discovery into each defendant's own tariff payments, pricing decisions and practices, and consumer-facing representations.

Indeed, based on its unique factual circumstances, the Panel has distinguished *Parmesan Cheese* and declined to follow it, even in other mislabeling litigation. In *In re Avocado Oil Marketing & Sales Practices Litigation* ("*Avocado Oil*"), 766 F. Supp. 3d 1333 (J.P.M.L. 2025), the Panel denied centralization of actions alleging similar mislabeling of the same type of product (avocado oil), all arising from the same 2023 study finding impurities in defendants' products. *Id.* at 1334. The Panel distinguished *Parmesan Cheese* and denied centralization because the factual inquiries and therefore necessary discovery would be product- and defendant-specific, in light of differences in each defendant's marketing and labeling of its avocado oil and the lack of a common supplier. *Id*. at 1335. The Panel noted: "Plaintiffs here do not allege that the defendants have conspired in any way. None of the cases names multiple defendants, and all seek damages for economic losses incurred in purchasing only the named defendant's product; thus, plaintiffs do not allege an indivisible injury caused by multiple defendants' products or conduct. All responding parties oppose centralization." *Id.* at 1334-35. The same is true here.

**2. Centralization Would Create Pretrial Inefficiencies.**

Rather than promote efficiency, centralization of the Actions would substantially increase the burden and complexity of discovery because many of the defendants are direct competitors and discovery would implicate their pricing practices and agreements with distributors and

retailers, information that includes highly confidential and competitively sensitive information. As the cases currently stand, each Action is brought against a single company, and no company is required to litigate alongside its direct competitors. Centralization would require complex protective measures to safeguard each defendant's confidential information from all other defendants, and it would burden the parties and courts, risk inadvertent and harmful disclosure, and undermine any potential efficiencies.

The Panel has recognized "centralizing competing defendants in the same MDL likely would complicate case management due to the need to protect trade secret and confidential information," *In re CP4 Fuel Pump Mktg. Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019), and it often cites this factor as an important consideration weighing strongly against centralization. *See*, *e.g.*, *In re Cash Sweep*, 766 F. Supp. 3d at 1349 (concluding that "centralization of claims against competing financial institutions—and the concomitant need to protect against disclosure of confidential information and trade secrets—is likely to complicate pretrial proceedings"); *In re Salesforce, Inc., Customer Data Sec. Breach Litig.*, No. MDL 3164, 2026 WL 194638, at *3 (J.P.M.L. Jan. 26, 2026) (recognizing that "some of the defendants are competitors" and there "may be privacy and trade secret concerns that would unnecessarily complicate discovery if centralized"); *In re Dish Wireless*, 2026 WL 1659414, at *2 (finding that "[a]ny centralized proceeding also would be complicated by numerous confidentiality issues" due to "competitively sensitive information contained in the contracts and case documents that cite those contracts," and concluding that centralization "likely will result in unnecessary complexity and delay"). This factor likewise weighs strongly against centralization here.

### 3. Pretrial Motions Are Defendant-Specific.

Centralization will also not provide any efficiency to pretrial motion practice, including motions to dismiss or class certification. *First*, motions to dismiss in each Action, some of which are already fully briefed, depend on the specific allegations against a specific defendant related to, among other things, the defendant's payment of IEEPA tariffs for particular goods, its individual pricing practices, its customer-facing representations regarding tariffs and pricing, and its legal relationship (if any) with the end customer. Those allegations differ for each defendant. Furthermore, although plaintiffs in different Actions assert some of the same causes of action, some of the legal theories differ substantially.[3]

*Second*, Movants offer no reason why centralization would "streamline" class certification motions (Mot. 2) aside from a vague reference to preventing "inconsistent rulings," (Mot. 14-15). But there is no risk of inconsistent rulings where, as here, the proposed classes are defendant-specific, and whether class certification is appropriate in a particular Action will depend on the specific claims, conduct, and evidence – including facts specific to each named plaintiff's experience and unnamed class members' experiences. A ruling on class certification in one Action therefore would not necessarily impact such a ruling in a different Action. *See In re Cash Sweep*, 766 F. Supp. 3d at 1349 (finding "little risk of conflicting pretrial rulings" where "the putative classes asserted by plaintiffs are defendant-specific, such that any certification as to one defendant is unlikely to impact certification as to a different defendant class"); *In re Google*

---

3 *See*, *e.g.*, *Hernandez v. adidas America, Inc.*, No. 1:26-cv-02848, Dkt. No. 14 (E.D.N.Y.) (alleging that adidas increased prices and failed to disclose that it might later retain any tariff refunds); *Russell v. Shein Distrib. Corp.*, No. 1:26-cv-04533, Dkt. No. 1-1 (N.D. Ill.) (alleging tariff costs embedded into costs of listed products and general tariff notice at checkout); *Russell v. Whaleco Inc.*, No. 1:26-cv-04296, Dkt. No. 1-2 (N.D. Ill.) (alleging Temu directly passed tariff costs to consumers and itemized "import charges" on Chinese products); *In re Amazon Tariff Litig.*, No. 2:26-cv-01670, Dkt. No. 20 (W.D. Wash.) (alleging Amazon emphasized its low prices).

*Antitrust Litig.*, 521 F. Supp. 3d 1358, 1359 (J.P.M.L. 2021) (finding that the lack of overlap between putative classes "likely would prevent achieving any meaningful efficiencies in discovery and pretrial motions").

**B. The Actions Share No Significant Common Factual Issues.**

As discussed above, the Actions turn on the individual conduct of each defendant – its payment of IEEPA tariffs, pricing practices, public representations, distribution channels, and receipt of tariff refunds. Contrary to their assertions, Movants identify no "common and overlapping core of factual allegations relating to a common practice and concerning parallel conduct," no "common factual core," and no "industry-wide pricing response" to the tariffs. (Mot. 9, 12.)

At most, Movants point to a common "catalyst" – the imposition and subsequent invalidation of IEEPA tariffs by the government – but the Panel has made clear that is not sufficient. In *In re COVID-19 Business Interruption Protection Insurance Litigation*, 482 F. Supp. 3d 1360 (J.P.M.L. 2020), the Panel held that the common catalyst – COVID-19 government closure orders – amounted to only "superficial commonality" because the individual cases involved "different insurance policies with different coverages, conditions, exclusions, and policy language, purchased by different businesses in different industries located in different states." *Id.* at 1362. Similarly, in *In re Brazilian Prosthetic Device Bribery Litigation*, 283 F. Supp. 3d 1381 (J.P.M.L. 2017), the Panel denied centralization of actions despite a shared "common factual backdrop" of a new report of "pervasive bribery, kickbacks, and fraud in the sale of medical devices in Brazil," because "[d]ifferent defendants are sued in each action" and there was "no allegation that these defendants conspired or coordinated with one another." *Id.* at 1382. The same is true here, as the IEEPA tariffs provide only context to the factual issues in the Actions, which turn on each defendant's individual conduct in response to those tariffs.

For the same reason, Movants' focus on actions by the federal government misses the mark. (Mot. 9-13.) The federal government's imposition of the IEEPA tariffs and payment of tariff refunds are background facts that are highly unlikely to be in dispute; nor is it likely that any discovery from the federal government will be required.

### C. Centralization Would Not Serve the Convenience of the Parties and Witnesses.

As the Panel has recognized, centralization is unlikely to serve "the convenience of parties and witnesses" where, as here, different defendants are sued in the different Actions. *See In re Cordarone (Amiodarone Hydrochloride) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 190 F. Supp. 3d 1346, 1348 (J.P.M.L. 2016) (concluding that "[g]iven the different defendants sued in these actions, centralization appears unlikely to serve the convenience of a substantial number of parties and their witnesses"); *In re Cash Sweep*, 766 F. Supp. 3d at 1350 (concluding that "because discovery is likely to be defendant-specific, differing pretrial schedules should not be unduly burdensome to the parties and witnesses").

Here, the Actions name different defendants, no documents produced by one defendant will be relevant to claims against a different defendant, and no fact witnesses will be deposed in actions against different defendants. Contrary to Movants' assertion, centralization would not "avoid[] duplicative discovery" because there is none to be avoided. (Mot. 13.) Indeed, eleven of the fifteen defendants are not even named in multiple lawsuits; for those defendants – and their witnesses – getting drawn into an MDL in a different district offers no possible "convenience."

## II. ORDINARY CASE-MANAGEMENT PROCEDURES AND INFORMAL COORDINATION ARE SUFFICIENT.

Centralization in an MDL is also not necessary because ordinary case management procedures are sufficient, and indeed, superior here. The Panel has long emphasized that

"centralization under Section 1407 should be the last solution after considered review of all other options." *In re Dish Wireless*, 2026 WL 1659414, at *2 (quoting *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011)). The Panel has also "repeatedly observed that transfer under Section 1404 or the first-to-file doctrine is preferable to Section 1407 centralization." *In re Baby Food*, 544 F. Supp. 3d at 1378.

Here, according to Movants, eleven of the fifteen defendants – IKEA, The J.M. Smucker Company, EssilorLuxottica, Microsoft, Nike, PUMA, Shein, SIE, Walmart, Whaleco, and Zara – are named in only a single action. (Dkt. No. 3-2, Am. Sched. of Actions.)[4] For those eleven defendants, there is no need for consolidation. The remaining four defendants are named in more than one action identified in Movants' schedule of actions: Amazon in seven, Target in three, and adidas and Costco in two each. (*Id.*) Each of those defendants is seeking to address the multiple suits through ordinary case management techniques, as appropriate. And to the extent necessary, informal coordination of actions against a single defendant can preserve any genuine efficiencies without imposing the burdens and complexities of an MDL. *See In re Baby Food*, 544 F. Supp. 3d at 1378 ("We believe it is better to allow the parties' attempts to self-organize play out before centralizing any part of this litigation.").

## **CONCLUSION**

For the reasons set forth above, the Panel should deny Movants' Amended Motion for Transfer and Centralization Pursuant to 28 U.S.C. § 1407.

---

4 These numbers are based on the Amended Schedule of Actions filed by Movants, and they do not account for additional cases against these same defendants that Movants inexplicably excluded or cases that were noted as related by other parties. *See*, *e.g.*, Notice of Related Action, Dkt. No. 41 (identifying additional case against Walmart Inc.).

Dated: September 10, 2026

/s/ Maeve L. O'Connor

Maeve L. O'Connor
Elliot Greenfield
Brandon Fetzer
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, New York 10001
(212) 909-6000
mloconnor@debevoise.com
egreenfield@debevoise.com
bfetzer@debevoise.com

*Attorneys for adidas America, Inc.*

/s/ Brad D. Brian (on consent)

Brad D. Brian
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071
(213) 683-9100
Brad.Brian@mto.com

*Attorneys for Costco Wholesale Corporation*

/s/ Carolyn A. DeLone (on consent)

Carolyn A. DeLone
HOGAN LOVELLS CADWALADER US LLP
555 Thirteenth St. N.W.
Washington, D.C. 20004
(202) 6374860
carrie.delone@hlc.com

*Attorneys for Walmart Inc.*

/s/ Valerie L. Hletko (on consent)

Valerie L. Hletko
COVINGTON & BURLING LLP
One CityCenter

850 Tenth Street, NW
Washington, D.C. 20001
(202) 662-6000
vhletko@cov.com

*Attorneys for Microsoft Corporation*

*/s/ David A. Perez (on consent)*

David A. Perez
925 4th Avenue, Floor 36
MORRISON & FOERSTER LLP
Seattle, Washington 98104
(206) 327-6385
DavidPerez@mofo.com

*Attorneys for Sony Interactive Entertainment LLC*

*/s/ Jeffrey B. Margulies (on consent)*

Jeffrey B. Margulies
NORTON ROSE FULBRIGHT US LLP
555 South Flower Street, 41st Floor
Los Angeles, California 90071
(213) 892-9286
jeff.margulies@nortonrosefulbright.com

*Attorneys for PUMA United North America, LLC, PUMA North America, Inc., and United Legwear Company, LLC*

*/s/ Jason J. Kim (on consent)*

Jason J. Kim
HUNTON ANDREWS KURTH LLP
550 S. Hope St., Suite 2000
Los Angeles, California 90071
(213) 532-2000
kimj@huston.com

*Attorneys for Shein Distribution Corporation, Shein US Services, LLC, and Shein Technology LLC*

/s/ *Philip R. Sellinger (on consent)*

Philip R. Sellinger
David E. Sellinger
Todd R. Schleifstein
GREENBERG TRAURIG LLP
1 Vanderbilt Avenue
New York, New York 10017
(212) 801-9200
sellingerp@gtlaw.com
sellingerd@gtlaw.com
schleifsteint@gtlaw.com

*Attorneys for Canon U.S.A., Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2026, the foregoing Joint Opposition To Movants' Amended Motion For Transfer And Centralization Pursuant To 28 U.S.C. § 1407 was e-filed via the Court's CM/ECF system, which provides electronic service copies of filed documents upon all parties registered in this action.

Dated: September 10, 2026

*/s/ Maeve L. O'Connor*
Maeve L. O'Connor