**BEFORE THE UNITED STATES JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE RETAILER TARIFF LITIGATION** | MDL No. 3202 |

**NOTICE OF POTENTIAL TAG-ALONG ACTION**

Pursuant to Rule 6.2(d) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, counsel for defendant PUMA United North America, LLC (Case No. 1:26-cv-12654-JEK, D. Mass. Aug. 11, 2026), hereby notifies the Clerk of the Panel of the following potential tag-along action in which defendant is also named:

1. Carl Johnson and Michael Smith v. PUMA United North America, LLC, No. 1:26-cv-13987-JEK (D. Mass. Aug. 31, 2026).

Plaintiffs' complaint is attached hereto.

Dated: September 10, 2026

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**
JEFFREY B. MARGULIES

By *_/s/ Jeffrey B. Margulies_*
JEFFREY B. MARGULIES
Attorneys for defendants
PUMA UNITED NORTH AMERICA, LLC;
PUMA NORTH AMERICA, INC; AND
UNITED LEGWEAR COMPANY, LLC
(Case No. 1:26-cv-12654)

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

CARL JOHNSON and MICHAEL SMITH, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

PUMA UNITED NORTH AMERICA, LLC a Delaware limited liability company,

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Carl Johnson and Michael Smith (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through undersigned counsel of record, bring this action against Defendant, Puma United North America, LLC ("Puma" or "Defendant"). The allegations contained herein, which are based on Plaintiffs' knowledge of facts pertaining to themselves and their own actions, and on counsel's investigation, and upon information and belief as to all other matters, are as follows:

## NATURE OF THE CASE

1. This class action arises from Puma's retention of windfall profits generated by unlawful tariffs imposed by the federal government under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq.* Beginning in early 2025, the Trump Administration imposed a sweeping set of tariffs under purported authority of the IEEPA, which the Supreme Court recently held were unlawful. *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026). As the federal government has acknowledged, and as the Court of International Trade has ordered, the government must now refund the billions of dollars it collected in connection with

the IEEPA tariffs, plus interest. Importers overwhelmingly passed the cost of IEEPA tariffs on to consumers, but only the importer of record has standing to seek a refund in the Court of International Trade. Therefore, importers stand to gain an enormous windfall at the expense of consumers.

2. Defendant Puma is a major apparel and footwear company that imports products for sale across the United States. Puma responded to the IEEPA tariffs by raising prices on consumer goods to pass those costs on to its customers. Puma is now entitled to a refund of the IEEPA tariffs it paid, even though its customers actually bore those costs. Yet Puma has made no legally binding commitment to refund customers for tariff-related overcharges. Unless restrained by this Court, Puma therefore stands to recover the same tariff payments twice—once from consumers through higher prices and again from the federal government through tariff refunds, including interest paid by the government on those funds.

3. Plaintiffs paid inflated prices for Puma products reflecting Puma's pass-through of the IEEPA tariffs. They bring this class action on behalf of themselves and all others similarly situated, seeking restitution and disgorgement of all tariff overcharges, prejudgment interest, and other equitable and monetary relief.

**PARTIES**

4. Plaintiff Carl Johnson is a natural person who resides in Studio City, California, where he intends to remain. On or about January 4, 2026, while in California Plaintiff Johnson purchased Puma apparel for approximately $76.81. The purchase was made during the Class Period, from Puma directly via Puma.com, and upon information and belief consisted of items that was imported from countries subject to the IEEPA tariffs. Plaintiff Johnson paid retail prices for those goods that were increased by Puma to account for the tariffs imposed on imported products. Plaintiff Johnson would not have paid those higher prices absent the unlawful tariffs and Puma's pass-through of those tariffs to consumers.

5. Plaintiff Michael Smith is a natural person who resides in East Chicago, Indiana, where he intends to remain. On or about June 3, 2025, while in Indiana, Plaintiff Smith purchased

Puma branded sneakers for approximately $53.99. The purchase was made from Puma directly via Puma.com during the Class Period, and upon information and belief consisted of an item that was imported from countries subject to the IEEPA tariffs. Plaintiff Smith paid a retail price that was increased by Puma to account for the tariffs imposed on imported products. Plaintiff Smith would not have paid that higher price absent the unlawful tariffs and Puma's pass-through of those tariffs to consumers.

6. Defendant Puma United North America, LLC is a Delaware limited liability company with its principal place of business and mailing address at 455 Grand Union Boulevard, Somerville, Massachusetts 02145, United States. A significant portion of the products Puma sells are imported goods that were subject to IEEPA tariffs imposed by the United States government. On information and belief, Puma is the importer of record for a substantial portion of those goods.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) and (d)(5)(B) because at least one member of the proposed Class is a citizen of a state different from that of Defendant; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; the proposed Class consists of more than 100 class members; and no exception under that subsection applies to this action.

8. This Court has personal jurisdiction over Defendant because its principal place of business is located in Massachusetts, it conducts significant business transactions in Massachusetts, and a substantial part of events and omissions giving rise to Plaintiffs' claims occurred in and emanated from Massachusetts.

9. Venue is proper in this District because Defendant resides here: Defendant's principal place of business is located in this District. *See* 28 U.S.C. § 1391(b)(1).

## FACTUAL ALLEGATIONS

### A. The government issues IEEPA tariffs.

10. Beginning in February 2025, President Trump issued a series of executive orders

invoking the IEEPA. *See* 50 U.S.C. §§ 1701(a), 1702(a)(1)(B). These executive orders imposed tariffs on goods imported from most foreign countries, including Canada, Mexico, and China.

11. The IEEPA tariffs included tariffs of 25% on imports from Canada and Mexico (Exec. Order Nos. 14193, 90 FR 9113 (Feb. 1, 2025), and 14194, 90 FR 9117 (Feb. 1, 2025)), escalating tariffs on imports from China reaching as high as 145% (Exec. Orders 14195, 14228, 14259, and 14266), and a baseline 10% tariff on nearly all other imports under the "reciprocal tariff" order of April 2, 2025 (Exec. Order No. 14257, 90 FR15041 (Apr. 2, 2025)), with higher country-specific rates ranging from 11% to 50% on 57 countries.

12. President Trump also eliminated the so-called de minimis exemption, under which goods imported into the United States with an aggregate fair retail value of $800 or less were exempt from duties and taxes. *See* 19 U.S.C. § 1321(a)(2)(C). The de minimis exemption had previously allowed individual consumers to import low-value goods, such as personal purchases, gifts, and small commercial orders, without incurring any customs charges. But on April 2, 2025, President Trump issued Executive Order No. 14256, 90 FR 14899, eliminating the de minimis exemption for goods originating from China and Hong Kong effective May 2, 2025. On July 30, 2025, the President issued Executive Order No. 14324, 90 FR 37775, suspending de minimis treatment for goods originating from all countries, effective August 29, 2025. From then on, all imported goods—regardless of value, country of origin, or mode of transportation—became subject to all applicable duties, taxes, and fees.

## B. Puma passes the cost of the IEEPA tariffs on to its customers through tariff overcharges.

13. Puma is a major importer of apparel and footwear in the United States.

14. In financial year 2025, Puma reported worldwide net sales of EUR 7.296 billion ($8.52 billion) and EUR 3.279 billion ($3.83 billion) in gross profit. *Puma Annual Report 2025*, PUMA (Feb. 26, 2026), https://annual-report.puma.com/2025/en/index.html.

15. While the IEEPA tariffs were in effect, Puma imported its products into the United States from countries subject to the IEEPA tariffs prior to selling them to American consumers

and therefore incurred customs charges.

16. As a result, the IEEPA tariffs directly increased Puma's cost of importing merchandise into the United States.

17. But Puma did not bear the cost of the IEEPA tariffs itself; rather, it shifted the tax burden to its customers by raising prices in direct response to the IEEPA tariffs.

18. Indeed, Puma's Half-Year Financial Report January to June 2025 expressly refers to "pricing adjustments" as one of the "ongoing mitigating measures" it was implementing to blunt the impact of the tariffs on the company: "Despite ongoing mitigating measures such as supply chain optimization, pricing adjustments and partner collaboration, the U.S. Tariffs are expected to have a mitigated negative impact in 2025 of around € 80 million on gross profit." *Half-Year Financial Report January to June 2025*, PUMA(July 31, 2025), q2-2025-half-year-financial-report-final.pdf

19. Puma's CFO similarly admitted that it sought to engage in "U.S. price hikes" in order to "offset the pain" of the tariffs. Helen Reid & Ozan Ergenay, *Puma Shares Dive After Warning of Full-Year Loss, US Tariff Impact*, REUTERS (July 25, 2025), https://www.reuters.com/business/puma-shares-dive-after-warning-full-year-loss-us-tariff-impact-2025-07-25/.

20. Thus, Puma publicly acknowledged that the IEEPA tariffs were increasing its importation costs and that it was raising prices in direct response to those increased costs. Therefore, Puma has passed on the costs of the IEEPA tariffs to consumers through price increases.

21. Moreover, it is well-established that tariffs are economically borne by consumers. *See* Daniel C.K. Chow & Ian M. Sheldon, *Understanding the Economic and Political Effects of Trump's China Tariffs*, 12 WM. & MARY BUS. L. REV. 273, 276 (2021) (noting the "orthodox economic theory, widely accepted by economists and trade lawyers alike, which holds that the consumers of the country imposing the tariffs—the United States—bear the brunt of the tariffs"). Empirical evidence demonstrates that the same was true of the IEEPA tariffs. *See* Robert Minton et al., *Detecting Tariff Effects on Consumer Prices in Real Time – Part II*, BD. OF GOVERNORS OF

THE FED. RSRV. SYS. (Apr. 8, 2026), https://www.federalreserve.gov/econres/notes/feds-notes/detecting-tariff-effects-on-consumer-prices-in-real-time-part-II-20260408.html; *Tracking the Economic Effects of Tariffs*, YALE BUDGET LAB (Apr. 1, 2026), https://budgetlab.yale.edu/research/tracking-economic-effects-tariffs. Puma followed this same pattern in connection with the IEEPA tariffs.

22. As a result, consumers who purchased goods from Puma during the tariff period paid elevated prices reflecting Puma's decision to pass on the cost of the IEEPA tariffs to its retail customers.

**C. The Supreme Court declares that the IEEPA tariffs were unlawful, prompting a tariff refund process.**

23. On February 20, 2026, the Supreme Court held "that IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026). All tariffs imposed pursuant to IEEPA were therefore unlawful and void ab initio. The President subsequently terminated the IEEPA tariff actions. "Ending Certain Tariff Actions," Exec. Order No. 14389, 91 FR 9437 (Feb. 20, 2026).

24. Importers such as Puma that paid IEEPA tariffs are now entitled to a refund plus interest through a process known as liquidation. *See* 19 U.S.C. § 1505(b)–(c); see also id. § 1500(d). Indeed, the federal government admitted as much in its Motion for a Stay Pending Appeal filed in the Federal Circuit. *See* Mot. for Stay Pending Appeal, *V.O.S. Selections, Inc. v. Trump*, Nos. 2025-1812, -1813, ECF No. 6 at 28 (Fed. Cir. May 29, 2025) ("If tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues.").

25. The Court of International Trade has accordingly held that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision." *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 Ct. Intl. Trade LEXIS 32, *1 (Ct. Int'l Trade Mar. 5, 2026). In order to avoid "deny[ing] entirely importers who have not filed suit the benefit of the *Learning Resources* decision," the court has ordered CBP to liquidate

all entries covered by *Learning Resources* "without regard to the IEEPA duties." *Id.* at *3. As the Court of International Trade has explained: "It is estimated that U.S. Customs and Border Protection ('Customs') has collected approximately $165 billion in duties pursuant to the International Emergency Economic Powers Act ('IEEPA'). These duties must now be refunded with interest, and the clock is ticking. Further interest is accumulating every day, with approximately $650 million accruing per month." *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 Ct. Intl. Trade LEXIS 36, *1 (Ct. Int'l Trade Mar. 6, 2026) (amended order). Although this order was further amended and the *Atmus* plaintiff voluntarily withdrew, the Court of International Trade designated a new lead refund case in *Euro-Notions Florida, Inc. v. U.S. Customs and Border Protection*, No. 25-00595 (Ct. Int'l Trade), and there is no doubt that refund authority is live. *See, e.g.*, *V.O.S. Selections, Inc. v. United States*, No. 1:25-cv-00066 (Ct. Int'l Trade), ECF No. 97 (June 4, 2026).

26. Indeed, the federal government has already begun issuing refunds to importers. *See* Tony Romm, *Tariff Refunds Begin to Reach Businesses as Trump Lashes Out at Court*, N.Y. TIMES (May 13, 2026), https://www.nytimes.com/2026/05/13/business/economy/tariff-refunds-trump.html. This confirms that the tariff refunds are not speculative or hypothetical, but rather are imminent, substantial, and already in the process of being distributed to importers.

27. As Justice Kavanaugh anticipated, however, the refund process raises the possibility of a windfall recovery for importers: "The United States may be required to refund billions of dollars to importers who paid the IEEPA tariffs, even though some importers may have already passed on costs to consumers or others." *Learning Resources*, 607 U.S. at 334-335 (Kavanaugh, J., dissenting).

28. Puma has already passed on the costs of the IEEPA tariffs to consumers by raising its retail prices, yet it is entitled to a refund for those same charges plus interest.

29. Nevertheless, Puma has not made any legally binding commitment to provide any sort of refund to consumers.

30. Accordingly, Puma's retention of tariff-related overcharges—while simultaneously

being owed refunds of those same tariffs—creates a concrete and immediate risk of double recovery that this Court can and should address.

**CLASS ACTION ALLEGATIONS**

31. *Class Definitions.* Under Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs seek certification of a Nationwide Class defined as follows:

> All persons in the United States who, during the Class Period, purchased goods directly from Puma via physical store or Puma's website, on which Puma had raised prices in response to the IEEPA tariffs.

32. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs also seek certification of the following California Subclass:

> All persons in California who, during the Class Period, purchased goods directly from Puma via physical store or Puma's website, on which Puma had raised prices in response to the IEEPA tariffs.

33. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiffs also seek certification of the following Indiana Subclass:

> All persons in Indiana who, during the Class Period, purchased goods directly from Puma via physical store or Puma's website, on which Puma had raised prices in response to the IEEPA tariffs.

34. The "Class Period" is the period during which Defendant assessed tariff-related overcharges to consumers. The precise contours of the Class Period can only be determined through discovery. In no event shall the Class Period be less than the period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgment or preliminary approval of a settlement.

35. Excluded from the Class and Subclasses are: (a) Defendant and its employees, officers, directors, legal representatives, successors, and wholly or partly owned subsidiaries or affiliated companies; (b) counsel for any party and their employees; and (c) the judicial officers and their immediate family members and associated court staff assigned to this case.

36. Plaintiffs reserve the right to modify or amend the definition of the proposed class,

Class Period, and proposed subclasses before the Court determines whether certification is appropriate and as the parties engage in discovery.

37. *Ascertainability.* Defendant's sales records will identify the customers who purchased items on which Defendant raised its prices in response to the IEEPA tariffs during the relevant time period. These records will identify the members of the Nationwide Class and Subclasses.

38. *Numerosity.* While the IEEPA tariffs were in effect, Defendant sold goods to hundreds of thousands, if not millions, of customers who are geographically dispersed throughout the United States. On information and belief, almost all of those orders included a tariff overcharge. Therefore, the members of the proposed Class and Subclasses are so numerous that individual joinder is impracticable.

39. *Commonality and Predominance.* This case presents questions of law and fact common to all class members, and those common questions predominate over any individualized issues. These common questions include:

a. Whether Defendant is entitled to retain tariff overcharges for which Defendant may claim a refund;

b. Whether Defendant's retention of tariff overcharges constitutes unjust enrichment;

c. Whether Defendant's retention of tariff overcharges constitutes an unfair business practice;

d. Whether the proper remedy for Defendant's retention of tariff overcharges is restitution, disgorgement, or another equitable remedy; and

e. Whether an award of restitution or disgorgement for the retention of tariff overcharges must include the value of any interest refunded by the federal government.

40. *Typicality.* Plaintiffs' claims are typical of the proposed Class and Subclasses. Like all class members, Plaintiffs paid a tariff overcharge to Defendant in connection with the IEEPA tariffs. There are no unique defenses applicable to Plaintiffs.

41. *Adequacy.* Plaintiffs will fairly and adequately protect the interests of the Class and

Subclasses. Plaintiffs are aware of their fiduciary duties to absent class members and are determined to faithfully discharge their responsibilities. Plaintiffs' interests are aligned with (and not antagonistic to) the interests of the Class and Subclasses. In addition, Plaintiffs have retained competent counsel with considerable experience in class actions and other complex litigation. Plaintiffs' counsel has done substantial work in identifying and investigating potential claims in this action, has considerable knowledge of the applicable law, and will devote the time and financial resources necessary to vigorously prosecute this action. They do not have any interests adverse to the Class or Subclasses.

42. *Superiority and Manageability.* A class action is superior to individual adjudications because joinder of all class members is impracticable, would create a risk of inconsistent or varying adjudications, and would impose an enormous burden on the judicial system. The amount in controversy for each individual class member is likely relatively small, which reinforces the superiority of representative litigation. As such, a class action presents far fewer management difficulties than individual adjudications, preserves the resources of the parties and the judiciary, and protects the rights of each class member.

43. *Declaratory and Injunctive Relief.* Defendant has acted or refused to act on grounds that apply generally to the Class and Subclasses—namely, by uniformly collecting tariff overcharges from them. Final injunctive relief or corresponding declaratory relief is therefore appropriate respecting the Class and Subclasses as a whole.

## CAUSES OF ACTION

### COUNT I: Declaratory Relief (28 U.S.C. §§ 2201–2202)

### (On Behalf of Plaintiffs, the Nationwide Class, and the Subclasses)

44. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as if fully set forth herein.

45. An actual, justiciable controversy exists between Plaintiffs and Defendant regarding the rights and obligations of the parties with respect to the tariff overcharges Defendant collected from Plaintiffs and the class members. This controversy is not hypothetical or abstract:

Defendant is entitled to recover the duty funds at issue from the federal government, the Supreme Court has declared the underlying tariffs unlawful, and Defendant has not refunded the tariff overcharges to Plaintiffs or the class members.

46. Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

a. The tariff overcharges collected by Defendant from Plaintiffs and the class members were collected pursuant to tariffs that were never lawfully authorized and that Defendant has no legal right to retain;

b. Defendant is obligated to return to Plaintiffs and the class members all tariff overcharges collected from them, together with interest; and

c. Defendant is obligated to provide a full accounting of all tariff overcharges it collected from Class members during the Class Period.

47. Declaratory relief is necessary and appropriate because Defendant collected tariff overcharges in connection with tariffs that the Supreme Court has declared were never lawfully authorized, Defendant has not returned those sums to the consumers who paid them, and Defendant is eligible to recover from the government the very funds that consumers provided to Defendant. Without judicial intervention, Plaintiffs and the Class have no assurance that Defendant will return the unlawfully collected sums.

48. Class members have no adequate remedy at law. Because Defendant served as the importer of record, only Defendant has standing to seek a refund from CBP. Individual consumers cannot file suit in the Court of International Trade to recover duties they paid through Defendant. Without the declaratory relief sought in this action, class members will be left without any mechanism to recover the unlawful tariffs they were forced to pay.

**COUNT II: Unjust Enrichment**

**(On Behalf of Plaintiffs, the Nationwide Class, and the Subclasses)**

49. Plaintiffs and the class members incorporate the above allegations as if fully set forth herein.

50. Plaintiffs and the class members lack an adequate remedy at law, particularly as to

forthcoming refunds from the federal government to Defendant.

51. Plaintiffs and the class members conferred a financial benefit on Defendant by paying it tariff overcharges.

52. Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiffs and the class members, because it set and charged the inflated prices that Plaintiffs and the class members paid.

53. Under principles of equity and good conscience, Defendant should not be permitted to retain the tariff overcharges, which Defendant has unjustly obtained as a result of its price increases on goods subject to unlawful tariffs. As it stands, Defendant has retained profits generated from its sales of products subject to tariff-related price increases and should not be permitted to retain those ill-gotten profits when it is seeking a refund of the duties it paid.

54. Plaintiffs and the class members are entitled to restitution or disgorgement of all tariff overcharges they paid to Defendant, plus prejudgment interest.

55. In the alternative, this Court should find that Massachusetts law governs nationwide because the pertinent pricing decisions were made at Puma's Massachusetts headquarters and Massachusetts has the most significant relationship to the parties and events herein. Moreover, this Court should employ a constructive trust--holding refunds that were obtained by Puma for Plaintiffs and the class--a remedy applicable in Massachusetts to prevent unjust enrichment where there is otherwise no other adequate remedy to prevent this harm.

**COUNT III: Money Had and Received**

**(On Behalf of Plaintiffs, the Nationwide Class, and the Subclasses)**

56. Plaintiffs and class members incorporate the above allegations as if fully set forth herein.

57. Plaintiffs and the class members lack an adequate remedy at law, particularly as to forthcoming refunds from the federal government to Defendant.

58. Defendant received money from Plaintiffs and the class members in the form of

tariff overcharges that Defendant charged and collected from them. The Supreme Court has held that those tariffs were unlawful.

59. The money Defendant received belonged to Plaintiffs and to each member of the Class and Subclasses.

60. Defendant has not returned the money.

61. In equity and good conscience, Defendant should not be permitted to retain these funds. The money belongs to Plaintiffs and the class members, and Defendant is obligated to return it.

**Count IV: Violation of California Unfair Competition Law**

**Cal. Bus. Code § 17200, *et seq.***

**(On Behalf of Plaintiff Johnson and the California Subclass)**

62. Plaintiff Johnson and members of the California Subclass incorporate the above allegations as if fully set forth herein.

63. Defendant engaged in unlawful, unfair, and fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices.

64. Plaintiff and the class members lack an adequate remedy at law, particularly as to forthcoming refunds from the federal government to Defendant.

65. Defendant's business practices were unfair, particularly because it shifted the burden of potential compliance with the tariffs to Plaintiff but retained all benefits for itself, including the refund of the tariff, even though that money was Plaintiff's and is owed back to Plaintiff. It is also continuing to retain funds that rightfully belong to Plaintiff.

66. Defendant's retention of tariff overcharges despite their eligibility for a refund from the federal government is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm.

67. As a result of those unfair business practices, Plaintiff and the class members suffered an injury-in-fact and have lost money or property—specifically, the tariff overcharges

they paid to Defendant.

68. The injuries to Plaintiff and the class members greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

69. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

70. Therefore, Plaintiff and the class members are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; an order declaring Defendant's conduct an unfair business practice; an injunction requiring Defendant to pay any refunded tariff overcharges back to Plaintiff and the class members; and any other equitable relief the Court deems proper.

## PRAYER FOR RELIEF

71. Plaintiffs, on behalf of themselves and the Class and Subclasses, request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiffs and the proposed Class and Subclasses, appointing Plaintiffs as class representatives, and appointing their counsel as class counsel;

B. Declaring that Defendant is obligated to refund to Plaintiffs and the Class and Subclasses all tariff overcharges it collected from them in connection with IEEPA tariffs, and that Defendant is required to provide a full accounting of all tariff overcharges it collected from Class members in connection with the IEEPA tariffs;

C. Awarding restitution, disgorgement, and any other appropriate monetary relief to Plaintiffs and the Class and Subclasses for all tariff overcharges they paid to Defendant and disgorging any refunds Defendant has or will receive from the federal government;

D. Awarding attorneys' fees, costs, and expenses, and service awards to the Class representatives;

E. Awarding prejudgment and post-judgment interest; and

F. Granting such further relief as the Court deems just and proper.

## JURY DEMAND

72. Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 31, 2026

Respectfully submitted,

By: /s/ *Matthew D. Patton*

Matthew D. Patton (BBO 703798)
PATTON LEGAL, P.C.
161 Savin Hill Ave.
Boston, MA 02125
Telephone: (617) 453-3693
Email:mpatton@pattonlegalpc.com

LEVIN LAW, P.A.
Brian Levin (*pro hac vice* to be filed)
2665 South Bayshore Drive, PH2b
Miami, FL 33133
Telephone: (305) 402-9050
Facsimile: (305) 676-4443
Email: brian@levinlawpa.com
MEYER WILSON WERNING CO., LPA
Matthew R. Wilson (*pro hac vice* to be filed)
Jared W. Connors (*pro hac vice* to be filed)
305 W. Nationwide Blvd.
Columbus, OH 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066
Email: mwilson@meyerwilson.com
jconnors@meyerwilson.com

*Counsel for Plaintiffs and the Proposed Class*

**BEFORE THE UNITED STATES JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE RETAILER TARIFF LITIGATION** | MDL No. 3202 |

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2026, the foregoing Notice of Potential Tag-Along Action was filed electronically. Notice of this filing will be sent to all parties via the Court's electronic filing system, through which all parties may also access this filing, and via electronic mail to counsel of record.

Dated: September 10, 2026

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**
JEFFREY B. MARGULIES

By *_/s/ Jeffrey B. Margulies_*

JEFFREY B. MARGULIES
NORTON ROSE FULBRIGHT US LLP
555 S. Flower Street, 41st Floor
Los Angeles, CA 90071
Tel: 213-892-9200
Fax: 213-892-9494
jeff.margulies@nortonrosefulbright.com

Attorney for defendants
PUMA UNITED NORTH AMERICA, LLC;
PUMA NORTH AMERICA, INC; AND UNITED
LEGWEAR COMPANY, LLC
(Case No. 1:26-cv-12654)