**BEFORE THE JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: RETAILER TARIFF LITIGATION** | MDL No.: 3202 |

**INTERESTED PARTY RESPONSE OF AMAZON.COM, INC. AND AMAZON.COM SERVICES LLC IN OPPOSITION TO THE MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

A. Plaintiffs Sued Different Retailers Related To The IEEPA Tariffs. ..... 2

B. The Retailer Actions Are Proceeding On Retailer-Specific Tracks. ..... 2

C. The Amazon Actions Are Subject To A Pending MDL Motion. ..... 3

ARGUMENT ..... 4

A. Creation Of A Multi-Defendant MDL Under Section 1407 Is Not Warranted. ..... 4

1. The Retailer Actions Do Not Share Common Questions Of Fact. ..... 4

2. Centralization Will Not Serve The Convenience Of The Parties And Witnesses. ..... 9

3. Centralization Will Not Promote The Just And Efficient Conduct Of The Actions. ..... 11

B. If The Panel Centralizes The Retailer Actions, Amazon Should Be Excluded. ..... 12

C. The Western District Of Washington Is The Appropriate Transferee Forum. ..... 13

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*,
201 F. Supp. 3d 1375 (J.P.M.L. 2016)....................8

*In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*,
410 F. Supp. 3d 1350 (J.P.M.L. 2019)....................12

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
357 F. Supp. 3d 1391 (J.P.M.L. 2018)....................12

*In re AT&T Inc. Customer Data Sec. Breach Litig.*,
737 F. Supp. 3d 1350 (J.P.M.L. 2024)....................14

*In re Avocado Oil Mktg. & Sales Pracs. Litig.*,
766 F. Supp. 3d 1333 (J.P.M.L. 2025)....................8, 9, 11

*In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*,
743 F. Supp. 3d 1373 (J.P.M.L. 2024)....................12

*In re Cash Sweep Programs Cont. Litig.*,
766 F. Supp. 3d 1346 (J.P.M.L. 2025).................... *passim*

*In re COVID-19 Bus. Interruption Prot. Ins. Litig.*,
482 F. Supp. 3d 1360 (J.P.M.L. 2020)....................6, 7

*In re Hair Relaxer Mktg., Sales Pracs., & Prods. Liab. Litig.*,
655 F. Supp. 3d 1374 (J.P.M.L. 2023)....................8

*Learning Resources, Inc. v. Trump*,
607 U.S. 229 (2026)....................2, 6

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
363 F. Supp. 3d 1372 (J.P.M.L. 2019)....................11

*In re Paycheck Prot. Program Agent Fees Litig.*,
481 F. Supp. 3d 1335 (J.P.M.L. 2020)....................5, 6

*In re Procter & Gamble Co. "Protect, Grow & Restore" Mktg. & Sales Pracs. Litig.*,
796 F. Supp. 3d 1373 (J.P.M.L. 2025)....................13

*In re Republic Nat'l-Realty Equities Sec. Litig.*,
382 F. Supp. 1403 (J.P.M.L. 1974)....................11, 12

**Page(s)**

*In re Salesforce, Inc., Customer Data Sec. Breach Litig.*,
No. MDL 3164, 2026 WL 194638 (J.P.M.L. Jan. 26, 2026)....................10, 13

*In re Secondary Ticket Mkt. Refund Litig.*,
481 F. Supp. 3d 1345 (J.P.M.L. 2020).................................... *passim*

**Statutes**

28 U.S.C. § 1404....................................................3, 4, 13

28 U.S.C. § 1407.................................................... *passim*

## PRELIMINARY STATEMENT

In accordance with Rule 6.2(e) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, Interested Parties Amazon.com, Inc. and Amazon.com Services LLC submit this opposition to the August 14, 2026 Motion for Transfer and Centralization Pursuant to 28 U.S.C. § 1407 (Dkt. No. 1) (the "Motion") filed by Plaintiffs Don Polistico, Tonysha Emerson, Sharon Lasseter, Zuania Martínez, Parveen Sangha, Patricia Cavallaro, Gregory Rittenhouse, and Luisa Spadafino ("Movants").[1]

Plaintiffs across the United States have filed a number of putative class actions against fifteen different retailers including Amazon (the "Retailers"), alleging that the Retailers unlawfully shifted to consumers the costs of tariffs imposed by the federal government in 2025 pursuant to the International Emergency Economic Powers Act ("IEEPA"). After the U.S. Supreme Court invalidated the IEEPA tariffs, and the Retailers were potentially eligible to seek tariff refunds, the plaintiffs claim that the Retailers have refused to refund tariff-related costs that consumers allegedly paid. There are currently twenty-five cases pending in multiple federal districts. There are no cases that name more than one Retailer defendant, and there are no allegations in any of the cases regarding agreement or coordination among the Retailers.

The Panel typically is hesitant to order industry-wide centralization because of the added case management complications centralization can cause, particularly when some defendants are competitors and there is no overlap in defendants across the pending cases, both of which are true here. Movants have not demonstrated that this case is any different than the many cases where the Panel has declined to create an industry-wide MDL. Accordingly, the Panel should deny Movants' request for centralization and the creation of a Retailer-wide MDL.

[1] Movants filed the following related actions: *Polistico v. Amazon.com, Inc.*, No. 1:26-cv-04194 (E.D.N.Y.), *Emerson v. Amazon.com, Inc.*, No. 2:26-cv-12614 (E.D. Mich.); *Lasseter v. Amazon.com, Inc.*, No. 8:26-cv-02019 (M.D. Fla.); *Martinez v. Target Corp.*, No. 3:26-cv-01807 (M.D. Fla.); *Sangha v. Amazon.com, Inc.*, No. 1:26-cv-01777 (N.D. Ohio); *Cavallaro v. Target Corp.*, No. 7:26-cv-06165 (S.D.N.Y.); *Rittenhouse v. Amazon.com, Inc.*, No. 2:26-cv-03392 (E.D.N.Y.); and *Spadafino v. Amazon.com, Inc.*, No. 2:26-cv-10023 (D.N.J.).

## BACKGROUND

### A. Plaintiffs Sued Different Retailers Related To The IEEPA Tariffs.

In 2026, in *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026), the Supreme Court invalidated the IEEPA tariffs. Following the *Learning Resources* decision, plaintiffs in twenty-five different actions (the "Retailer Actions") filed class action complaints against fifteen different Retailer defendants claiming that the Retailers passed on the cost of the tariffs to consumers in the form of higher prices. The plaintiffs also allege that the Retailers have refused to refund to consumers the costs of the tariffs they allegedly paid in the form of tariff-inflated prices. The Retailer defendants implicated here are: Amazon, Shein, Sony, Target, Costco, Temu, Puma, Nike, Adidas, Zara, Walmart, Ikea, the J.M. Smucker Company, Luxottica of America Inc., and Microsoft. Seven actions based on tariff-related theories have been filed against Amazon alone (the "Amazon Actions").

Critically, there is no overlap of defendants in any of the Retailer Actions. Each of the Retailer Actions names only one Retailer as defendant. There are also no allegations of a common agreement, conspiracy, pricing system, or coordinated course of conduct among the retailers. Rather, each Retailer Action challenges the independent decisions made by separate Retailers—many of which are competitors—operating different businesses, selling different products, and making different public statements with respect to the tariffs.

### B. The Retailer Actions Are Proceeding On Retailer-Specific Tracks.

Not only are the Retailer Actions different in terms of the parties and the facts, but the lawsuits are developing on a Retailer-specific basis. Several of the Retailer Actions are already being efficiently organized on a defendant-specific basis. For example, two of the cases against Amazon in the Western District of Washington were consolidated, pursuant to Federal Rule of Civil Procedure 42(a), before Judge Tana Lin under the caption *In re Amazon Tariff Litigation*, No. 2:26-cv-01670-TL. *See* Dkt. No. 1-27, Ex. 24. Four actions against Adidas were consolidated in the District of Oregon in *Downs v. Adidas America, Inc.*, No. 3:26-cv-01008-JR. *See* Dkt. No. 1-24, Ex. 21. Two actions against Ikea were consolidated in the Eastern District of Pennsylvania

in *Terrill v. Ikea North America Services LLC*, No. 2:26-cv-02774-JS. *See* Dkt. No. 1-25, Ex. 22. And two actions against Sony were consolidated in the Northern District of California in *In re Sony Interactive Entertainment Tariff Litigation*, No. 3:26-cv-04121-CRB. *See* Dkt. No. 1-5, Ex. 2.

Other Retailer Actions present distinct threshold and merits issues. For example, in *Rittenhouse v. Amazon.com, Inc.*, No. 2:26-cv-03392-GRB-LGD, pending in the Eastern District of New York, the Court granted Amazon leave to file a motion to transfer to the Western District of Washington pursuant to 28 U.S.C. § 1404(a), after Plaintiff Rittenhouse refused to agree to the transfer. *See* Dkt. No. 1-16, Ex. 13. In *Russell v. Whaleco Inc.*, No. 1:26-cv-04296, pending in the Northern District of Illinois, Whaleco has moved to compel arbitration. Dkt. No. 1-9, Ex. 6. And in *Briggs v. Costco Wholesale Corp.*, No. 2:26-cv-01064-JNW, pending in the Western District of Washington, Costco has filed a motion to dismiss that is already fully briefed. Dkt. No. 1-26, Ex. 23.

Given the different stages and postures in the Retailer Actions, and the Retailers' self-organization in the actions they are individually defending, there are no efficiencies to be gained by the creation of a Retailer-wide MDL.

**C. The Amazon Actions Are Subject To A Pending MDL Motion.**

On July 31, 2026, the plaintiffs in *In re Amazon Tariff Litigation* filed before the Panel a motion to transfer pursuant to Section 1407. *See In RE: Amazon Tariff Litigation*, MDL No. 3197. Briefing closed in that proceeding on August 31, 2026. Oral argument before the Panel currently is scheduled for September 24, 2026. In that motion, the *Amazon Tariff* plaintiffs have requested that the Amazon Actions be centralized and transferred to the Western District of Washington, where Amazon is headquartered. As the *Amazon Tariff* plaintiffs demonstrated, there are common questions of fact in the Amazon Actions because the cases are virtually identical, centralization would serve the interests of the parties and witnesses because Amazon is headquartered in Seattle, and many documents and witnesses are likely to be located there. The *Amazon Tariff* plaintiffs also showed that centralization in Washington would promote the just and efficient conduct of the

Amazon Actions because it would prevent inconsistent rulings on motions to dismiss, motions for summary judgment, discovery disputes, expert issues, and class certification.

On August 24, 2026, Amazon filed a response in support of the *Amazon Tariff* plaintiffs' motion because Amazon agrees that the Amazon Actions should be centralized and transferred to the Western District of Washington. In Amazon's response, it also pointed out that coordination of the Amazon Actions would conserve the resources of the parties and the judiciary because Amazon's Conditions of Use ("COUs") contain an exclusive Washington forum-selection clause—consequently, if centralization is denied, Amazon will be forced to file separate motions to transfer the actions to Washington pursuant to 28 U.S.C. § 1404.

## ARGUMENT

### A. Creation Of A Multi-Defendant MDL Under Section 1407 Is Not Warranted.

To support a transfer under Section 1407, Movants must demonstrate that the actions "involve[e] one or more common questions of fact," that transfer will further "the convenience of parties and witnesses," and that transfer "will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. As Movants concede, the Panel is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products." Dkt. No. 2-1 ("Mem.") at 13 (quoting *In re Proton-Pump Inhibitor Prods. Liab. Litig.*, 273 F. Supp. 3d 1360, 1362 (J.P.M.L. 2017)). Movants have not presented facts sufficient to overcome that hesitation.

#### 1. The Retailer Actions Do Not Share Common Questions Of Fact.

Movants argue that centralization is warranted because the Retailer Actions arise out of the same alleged conduct relating to the IEEPA tariffs. Mem. at 10-11. According to Movants, there are common questions across all the Retailer Actions with respect to how the IEEPA tariffs were assessed and collected; how the U.S. Customs and Border Protection ("CBP") tariff refund process operates; whether the tariffs were in fact passed through to consumers in the form of inflated prices; "the industry-wide pricing response … as reflected in parallel public statements"; and whether the

Retailers' alleged retention of tariff refunds constitutes unjust enrichment. Mem. at 10. Movants' commonality arguments are significantly overstated.

It is true that the Retailer Actions arise from some common background facts, i.e., the imposition of the IEEPA tariffs and the Supreme Court's subsequent invalidation of those tariffs. It is also true that the Retailer Actions will involve some common legal questions, such as whether the conduct alleged in the various actions constitutes unjust enrichment. But for purposes of centralization, "[c]ommon legal questions are insufficient to satisfy Section 1407's requirement of common factual questions." *In re Paycheck Prot. Program Agent Fees Litig.*, 481 F. Supp. 3d 1335, 1337 (J.P.M.L. 2020). For centralization, the focus is on *facts* that share common answers such that it would serve the convenience of the parties and judicial economy to centralize the proceedings. As to the factual questions that Movants claim are common—whether the tariffs were passed through to consumers and the Retailers' pricing responses to the tariffs—those questions will not provide common answers. *See* Mem. at 11. Each Retailer's conduct and their response to the IEEPA tariffs is Retailer-specific.

*Paycheck Prot. Program Agent Fees* is instructive. There, the Panel denied centralization of twelve actions against different lenders across the banking industry that were based on the same theory that defendants "failed to pay fees to agents who assisted small businesses in applying for and obtaining PPP loans, contrary to the provisions of the CARES Act and federal regulations." 481 F. Supp. 3d at 1337. Despite a central legal issue in those cases—"whether agents have a legal entitlement to agent fees under the CARES Act or implementing regulations"—the Panel denied centralization. *Id.* The Panel noted:

> The actions undoubtedly allege similar policies and practices by the defendant banks – specifically, that defendants failed to pay fees to agents who assisted small businesses in applying for and obtaining PPP loans, contrary to the provisions of the CARES Act and federal regulations. But the actions involve dozens of different lenders, and there is no common or predominant defendant across all actions. Common factual questions are lacking, as the policies and practices for paying agent fees are unique to each lender which differ significantly across the actions.

> Moreover, the vast majority of defendants are named in only one action, further indicating a lack of common questions of fact.

*Paycheck Prot. Program Agent Fees*, 481 F. Supp. 3d at 1337.

Similarly, in *In re Cash Sweep Programs Cont. Litig.*, the Panel denied centralization of twenty-seven actions against different defendants where "[p]laintiffs in each action allege[d that] defendants unlawfully enriched themselves by failing to pay or secure 'reasonable' cash sweep interest rates on their customers' cash balances." 766 F. Supp. 3d 1346, 1348 (J.P.M.L. 2025). Despite that common issue, the Panel found:

> This superficial commonality breaks down upon closer inspection. Each action is directed to a particular brokerage firm and affiliated firms or banks. There are no multi-defendant actions, and no allegations of collusion among the defendants. Movants argue that what constitutes a "reasonable rate of interest" will be a common factual issue, but this common factual question likely will have defendant-specific answers. These actions involve different cash sweep programs, subject to different contractual terms, different interest rates and fees, different types of financial instruments, different types of customers (e.g., retail investors versus retirement accounts), and different disclosures to those customers.

*Id.* at 1349. On that basis, the "minimal factual commonality presented" was insufficient to justify the centralization of an industry-wide litigation. *Id.*

And in *In re COVID-19 Bus. Interruption Prot. Ins. Litig.*, 482 F. Supp. 3d 1360, 1362-63 (J.P.M.L. 2020), the Panel declined industry-wide centralization of actions brought against insurance companies arising out of the COVID-19 business closures, because the common questions "share[d] only a superficial commonality." In denying the request for transfer, the Panel noted that "[t]here is no common defendant in these actions—indeed, there are no true multi-defendant cases, as the actions involve either a single insurer or insurer-group (i.e., related insurers operating under the same umbrella or sharing ownership interests). Thus, there is little potential for common discovery across the litigation." *Id.* at 1362.

As in the cases above, the minimal factual commonality across the Retailer Actions is insufficient to justify centralization. While the imposition of the IEEPA tariffs and the *Learning Resources* decision are common background facts, the commonality ends there. Each of the

Retailer Actions will involve Retailer-specific conduct, and the facts will vary widely based on how each Retailer responded to the tariffs. To start, the Retailers all sell different products and operate under different business models. When the tariffs were imposed in 2025, some Retailers (e.g., Temu, Walmart, Adidas) announced that they might be forced to increase prices to offset the costs. Temu, and maybe others, added line items to their pricing expressly calling out the tariffs. For those Retailers, discovery will require an individualized and highly fact-specific inquiry into how each company chose to increase prices or otherwise offset tariff costs. Other Retailers, like Amazon, instead announced that they would not generally raise prices or specifically pass tariff costs through to customers. After the tariffs were invalidated, some Retailers (e.g., Costco, Puma, Adidas) promptly sued the Government to obtain refunds. Others (e.g., Sony, Amazon) chose to wait until the CBP refund process was implemented and avail themselves of that process. Some Retailers (e.g., Target, Temu) may have chosen not to seek refunds through the CBP, or to limit their refund requests. Some Retailers (e.g., Amazon, Costco, Target, Walmart) have said that they intend to return some tariff refunds to customers, either directly or through lower prices. Others have not identified any plan to return tariff refunds to customers (e.g., Adidas), or have remained silent on that issue (e.g., Puma, Sony, Shein). And there will be significant variation in the specific details of how each Retailer paid tariffs as the importer of record, on what products, in what amounts, and what refund amounts they expect to receive. In short, there is very little factual commonality here.

Movants' attempt to distinguish *COVID-19* is unavailing. *See* Mem. at 13-14. They argue that, in that case, there was little potential for common discovery because of the complex background of the pandemic and government closures. *Id.* at 13. Movants argue that, here, the common actor is the federal Government. *Id.* They are wrong on both points. In *COVID-19*, the Panel found that centralization was unwarranted because there was *no common defendant* in those actions. 482 F. Supp. 3d at 1362. The same is true here—there are no actions filed against multiple Retailers. And the Government is not a common actor here because it is not a named defendant in

any of the Retailer Actions and it did not make any of the pricing decisions that are the crux of the plaintiffs' claims.

Similarly, Movants try to dismiss *Cash Sweep Programs* because, there, the common questions required defendant-specific answers, while here common questions purportedly "turn on a single federal tariff regime." Mem. at 14. But, again, Movants miss the mark. There is no dispute about the nature of the "federal tariff regime," and there are no questions regarding that "regime" that need to be answered. As in *Cash Sweep Programs*, the ways in which the Retailers either absorbed the tariff costs, or allegedly passed those costs through to consumers, will require Retailer-specific answers.

Movants rely heavily on *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 201 F. Supp. 3d 1375, 1377 (J.P.M.L. 2016), but that decision does not support their motion. *See* Mem. at 11-12. In *In re Avocado Oil Mktg. & Sales Pracs. Litig.*, 766 F. Supp. 3d 1333 (J.P.M.L. 2025), the Panel explained and distinguished *Parmesan Cheese*, noting:

> All defendants' products were labeled '100%' grated parmesan cheese; many of the actions were brought against multiple defendants and involved multiple defendants' products; there was a 'significant common supplier issue,' as one defendant implied that it supplied many of the defendants; and all defendants indicated they would raise the applicability and impact of FDA regulations governing the labeling and composition of grated parmesan cheese products.

*Id.* at 1335 (quoting from *Parmesan Cheese*, 201 F. Supp. 3d at 1377). The Retailer Actions bear no resemblance to *Parmesan Cheese*.[2] There are no actions that involve overlapping Retailers, there is no overlap in pricing or decision-making among the Retailers, and there is no common actor among the Retailer Actions. Movants argue that the Related Actions share "a common factual core [that] is externally supplied." Mem. at 12. But that is true of many, perhaps most, of

[2] *In re Hair Relaxer Mktg., Sales Pracs., & Prods. Liab. Litig.*, 655 F. Supp. 3d 1374, 1376 (J.P.M.L. 2023), is also inapposite. There, the Panel centralized actions relating to the use of certain chemicals in hair products. It found that there were "common issues of fact regarding whether exposure to phthalates or other EDCs causes injury to the reproductive system, whether and when defendants knew or should have known of the alleged risks posed by hair relaxer products, and whether defendants engaged in adequate testing and post-market surveillance." *Id.* There are no such common issues of fact here.

the multi-defendant centralization motions that the Panel has repeatedly denied. *See, e.g.*, *Avocado Oil*, 766 F. Supp. 3d at 1335 (denying request for centralization of actions against multiple defendants that were filed in the wake of an external news article).

Movants also cite the need to determine, across various actions, questions regarding the alleged overcharging of consumers based on the IEEPA tariffs. Mem. at 15. But Movants' counsel represent plaintiffs in at least eight of the Retailer Actions, including six against Amazon, and are certainly capable of coordinating amongst themselves and other plaintiffs' counsel. *See, e.g.*, *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) (common need to determine which ticketed events were cancelled or rescheduled did not justify centralization because "we see no reason – particularly with counsel for movants representing plaintiffs in three actions brought against, respectively, StubHub, Vivid Seats and SeatGeek – that this seemingly straightforward task could not be informally coordinated.").

In sum, the weight of authority demonstrates that the Panel typically does not centralize actions involving multiple defendants because of the inefficiencies centralization can introduce. This case does not warrant an exception to that rule because there are no material common questions of fact across the Retailer Actions that will provide common answers.

**2. Centralization Will Not Serve The Convenience Of The Parties And Witnesses.**

Movants have not shown that centralization of the Retailer Actions serves the convenience of the parties and witnesses. To the contrary, centralization would complicate discovery in the Retailer Actions because, as discussed above, the relevant facts across the various actions will be Retailer-specific. Movants argue that the convenience of the parties will be served by avoiding "duplicative discovery," but they have not identified any such duplicative discovery. Mem. at 14. For example, Movants state that they will seek "internal communications" regarding the alleged decisions to raise prices. *Id*. at 15. But that will not be duplicative across the Retailers—each will have followed its own processes and made its own decisions regarding pricing. Obviously, an Amazon witness cannot testify as to why any other Retailer did or did not raise their prices.

Similarly, the tariff amounts paid by each Retailer, the Retailers' status as the importer of record, and any entitlement to refunds will be determined based on the unique documents and witnesses of each Retailer. And while there could be some common third-party discovery the parties will seek from the federal Government, the parties' counsel can coordinate informally amongst themselves on those discrete issues.

Moreover, the Panel is "typically skeptical of requests to centralize claims filed against multiple defendants who are competitors in a single MDL because it often will not promote judicial efficiency or serve the convenience of the parties and witnesses." *Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d at 1346. A Retailer-wide MDL would complicate these actions "[b]ecause some of the defendants are competitors … [so] there also may be privacy and trade secret concerns that would unnecessarily complicate discovery if centralized." *In re Salesforce, Inc., Customer Data Sec. Breach Litig.*, No. MDL 3164, 2026 WL 194638, at *3 (J.P.M.L. Jan. 26, 2026) (rejecting industry-wide MDL and creating defendant-specific MDL); *see also Cash Sweep Programs*, 766 F. Supp. 3d at 1349 ("centralization of claims against competing financial institutions—and the concomitant need to protect against disclosure of confidential information and trade secrets—is likely to complicate pretrial proceedings.").

For Amazon in particular, a Retailer-wide MDL based in Illinois (as Movants request) would be especially inconvenient. Amazon is headquartered in Washington, two of the Amazon Actions are already consolidated in the Western District of Washington, and many of the relevant documents and Amazon witnesses will be located in Washington. Transferring the Amazon Actions to Illinois would significantly inconvenience both Amazon and its witnesses, without offering any competing convenience to Movants or other plaintiffs.

For these reasons, Movants have not carried their burden to show that centralization would serve the convenience of the parties and witnesses.

### 3. Centralization Will Not Promote The Just And Efficient Conduct Of The Actions.

Movants have not demonstrated that centralization will promote the just and efficient conduct of the Retailer Actions. The Panel routinely denies requests for the creation of an industry-wide MDL because it "would seem to complicate pretrial proceedings more than it would streamline them." *Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d at 1346; *see also Avocado Oil*, 766 F. Supp. 3d at 1334 (same).

As in *Secondary Ticket Mkt. Refund Litig.*, the creation of a Retailer-wide MDL would greatly complicate pretrial proceedings. As explained above, discovery in each Retailer Action will be Retailer-specific because "[a]ll defendants are separate businesses that employed different terms of use, different arbitration agreements, different marketing and different choice of law provisions." 481 F. Supp. 3d at 1346. Contrary to Movants' arguments, it is categorically untrue that there were "parallel decisions to increase prices" due to the IEEPA tariffs, and the Retailers did not make "the same public statements announcing that the IEEPA tariffs" were the catalyst of price increases. Mem. at 17. As a result, class certification, summary judgment, and discovery issues will be decided on a Retailer-by-Retailer basis, and any "ruling as to one defendant is unlikely to impact certification as to a different defendant class." *Cash Sweep Programs*, 766 F. Supp. 3d at 1349-50. Indeed, Movants propose the creation of "Retailer Defendant-specific 'tracks'" for discovery and motions—that is an implicit concession that there is no factual overlap across the Retailers. Mem. at 3, 20-21. It would make no sense to centralize all the Retailer Actions and then immediately "de-centralize" them for discovery and pretrial purposes. Retailer-specific "tracks" is exactly what the pending cases already provide.

Movants' cited authorities do not compel a different result. In *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, the Panel centralized cases that arose from a Marriott data breach because it found that "[t]he factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that Marriott failed to put into place reasonable data protections." 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019). There is no similar allegation

about a common actor among the Retailer Actions. In *In re Republic Nat'l-Realty Equities Sec. Litig.*, centralization was warranted because the claims were predicated on "a massive scheme to defraud the investing public" and involved common defendants. 382 F. Supp. 1403, 1406 (J.P.M.L. 1974). There is no such scheme or overlap in defendants here. In *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, the Panel centralized actions involving allegations that "defendants conspired or cooperated to conceal the dangers of PFOA and PFOS in their products." 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). There is no similar allegation of a conspiracy between the Retailers. Finally, *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, arose out of a single data breach and the Panel centralized in part given the overlap in parties. 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019).

In sum, centralization would not promote the just and efficient conduct of the Retailer Actions and would instead "create unnecessary complications that outweigh any potential benefits of centralization." *Cash Sweep Programs*, 766 F. Supp. 3d at 1350.

**B. If The Panel Centralizes The Retailer Actions, Amazon Should Be Excluded.**

At a minimum, Amazon should be excluded from any broader retailer MDL. If the Panel centralizes the Retailer Actions, Amazon should be allowed to proceed in a centralized proceeding under the *In RE: Amazon Tariff Litigation* caption. *See In RE: Amazon Tariff Litigation*, MDL No. 3197 (fully briefed as of August 31, 2026). As explained in the *Amazon Tariff Litigation* briefing, the Washington plaintiffs who moved for centralization in that action have satisfied the requirements of Section 1407 because each of the actions that are the subject of that motion are virtually identical. Each Amazon Action arises from Amazon's alleged pass-through of IEEPA tariff costs to consumers, and, as a result, each action will seek nearly identical discovery from Amazon. Given the overlap of facts and legal issues, centralization would be convenient for the parties and witnesses, and it would promote the just and efficient conduct of the actions.

The Panel has denied industry-wide centralization and created defendant-specific MDLs in similar circumstances. *See Secondary Ticket Mkt.*, 481 F. Supp. 3d at 1346-47; *see also In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig.*, 743 F. Supp. 3d 1373, 1375 (J.P.M.L.

2024) (denying industry-wide centralization, noting that "[c]reating defendant-specific 'hubs' ultimately may prove the most efficient means of moving the litigation toward resolution").

In *Secondary Ticket Mkt.*, the Panel declined to create an industry-wide MDL, but created a StubHub-specific MDL because it found:

> [T]he actions against StubHub involve common questions of fact, and [] centralization of actions against StubHub in the Northern District of California will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The actions involve common factual issues arising from similar putative nationwide class actions alleging that StubHub wrongfully changed its policies for refunds for cancelled or rescheduled events as a result of the COVID-19 pandemic. … Centralization will eliminate duplicative discovery; avoid inconsistent pretrial rulings, particularly on class certification; and conserve the resources of the parties, their counsel and the judiciary.

*Id.* Like Movants, the plaintiffs in *Secondary Ticket Mkt.* asserted that voluntary cooperation among the parties would be superior to coordination. *Id.* The Panel rejected that argument, in part because "it was apparent from oral argument that the parties have yet to agree on transfer to a single district." *Id.* at 1347. Similarly, here, despite the clear and exclusive forum-selection clause in Amazon's COUs, at least one Movant (Rittenhouse) has opposed transfer to the Western District of Washington under Section 1404(a), and Amazon expects other plaintiffs to do the same. Thus, there is no "voluntary cooperation" here, and the creation of an Amazon-specific MDL is the most efficient course of action.

### C. The Western District Of Washington Is The Appropriate Transferee Forum.

As explained above, Movants have not met their burden to show that the creation of an industry-wide MDL is warranted. But if the Panel chooses to create an Amazon-specific MDL, the Western District of Washington—not the Northern District of Illinois—is the appropriate forum. Amazon is headquartered in the Western District of Washington, and many of the common facts, witnesses, and documents will be located in that district. While the location of Amazon's headquarters is not dispositive, it is a factor that the Panel has considered in choosing where to transfer a centralized action. *See, e.g.*, *Salesforce, Inc., Customer Data Sec. Breach,* 2026 WL 194638 at *3 ("We are persuaded that the Northern District of Illinois is the appropriate

transferee district for the TransUnion MDL. TransUnion's headquarters is in Chicago ….”); *In re Procter & Gamble Co. "Protect, Grow & Restore" Mktg. & Sales Pracs. Litig.*, 796 F. Supp. 3d 1373, 1374 (J.P.M.L. 2025) ("Defendant P&G has its headquarters in this district, and common witnesses and other evidence likely will be found in or near this district."); *In re AT&T Inc. Customer Data Sec. Breach Litig.*, 737 F. Supp. 3d 1350, 1352 (J.P.M.L. 2024) ("Defendant AT&T Inc. has its headquarters in Dallas, Texas, where common witnesses and other evidence likely will be found."). Amazon's COUs require that every action against Amazon must be litigated in the Western District of Washington.[3] Additionally, there is only one MDL docket pending in the Western District of Washington, compared to twelve pending in the Northern District of Illinois.[4]

In sum, the Western District of Washington presents the best option for transfer and centralization of an Amazon-specific MDL, and there is already a consolidated case against Amazon pending in that district.

## CONCLUSION

For these reasons, pursuant to 28 U.S.C. § 1407, the Panel should deny Movants' motion for transfer and centralization. In the alternative, Amazon should be excluded from any transfer or centralization in Illinois and should be allowed to proceed in an Amazon-specific MDL in the Western District of Washington.

DATED: September 10, 2026

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Brian D. Buckley*
Brian D. Buckley, WSBA #26423
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: brian.buckley@morganlewis.com

*Attorneys for Defendants Amazon.com, Inc. and Amazon.com Services LLC*

[3] Amazon's Conditions of Use, https://www.amazon.com/gp/help/customer/display.html?nodeId=GLSBYFE9MGKKQXXM (last accessed September 1, 2026).

[4] *See* JPML, MDL Statistics Report – Distribution of Pending MDL Dockets by District (September 1, 2026), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-1-2026.pdf (last visited September 1, 2026).