**BEFORE THE JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: RETAILER TARIFF LITIGATION | MDL No. 3202 |

**AMAZON PLAINTIFFS' MEMORANDUM IN OPPOSITION TO AMENDED MOTION FOR TRANSFER AND CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. PROCEDURAL BACKGROUND ..... 2

1. The Amazon Plaintiffs Seek MDL Status for the Amazon Actions. ..... 2

2. Movants Seek to Subsume the Amazon Actions into this MDL. ..... 3

III. ARGUMENT ..... 3

A. Movants Have Not Demonstrated There Are Sufficiently Complex or Numerous, Common Questions of Fact Among the Pending Actions to Justify Centralization. ..... 4

1. CBP's Practices Are Largely Irrelevant and Are Not Unresolved or Complex Questions to be Answered in the Pending Actions. ..... 4

2. The Passthrough and Pass-On Pricing Practices At-Issue Are Defendant Specific. ..... 5

3. There Is No "Industry-Wide Pricing Response" or "Parallel Public Statement" At Issue. ..... 7

4. Whether Tariff Defendants Were Unjustly Enriched Is Claim-Specific and Defendant-Specific. ..... 7

5. Movants' Cited Cases Are Inapposite, and Relevant Panel Decisions Demonstrate Centralization Is Not Appropriate Here ..... 8

B. Discovery Will Be Defendant-Specific and Transfer and Centralization Will Not Further the Convenience of the Parties and Witnesses. ..... 10

C. Centralizing the Pending Actions into a Single MDL Will Not Promote Just and Efficient Conduct of the Litigation. ..... 13

D. The Northern District of Illinois Is Not the Appropriate Transferee Forum for the Amazon Actions. ..... 16

1. The Amazon Actions Should Be Litigated in the Western District of Washington. ............ 16

2. The Western District of Washington Has More Administrative Capacity to Oversee an MDL than the Northern District of Illinois ............ 19

E. Creating Separate Retailer-Specific Tracks Does Not Serve the Purposes of Efficiency. ............ 19

IV. CONCLUSION ............ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Cheese Marketing and Sales Pracs. Litig.*,
201 F. Supp. 3d 1375 (J.P.M.L. 2016)....................8

*In re Amazon Tariff Litg.*,
No. 2:26-cv-01670 (W.D. Wash.)....................6

*In re Amazon Tariff Litig.*,
No. 2:2026-cv-1670 (W.D. Wash.)....................1, 20

*In re Amazon Tariff Litig.*,
No. 3197 (J.P.M.L.)....................2

*In re Avocado Oil Mktg. & Sales Pracs. Litig.*,
766 F. Supp. 3d 1333 (J.P.M.L. 2025)....................8, 12

*In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig*,
743 F. Supp. 3d 1373 (J.P.M.L. 2024)....................12, 15

*Caldwell v. Nike*,
3:26-cv-00923 (D. Or.)....................5, 6

*In re Cash Sweep Programs Contract Litig.*,
766 F. Supp. 3d 1346 (J.P.M.L. 2025)....................3, 10, 12

*Cavallaro v. Target Corp.*,
No. 7:26-cv-06165 (S.D.N.Y.)....................6

*In re Class Action Settlement Admin. Litig.*,
812 F. Supp. 3d 1359 (J.P.M.L. 2025)....................19

*In re CP4 Fuel Pump Mktg. Sales Pracs., & Prods. Liab. Litig.*,
412 F. Supp. 3d 1365 (J.P.M.L. 2019)....................14, 19, 20

*In re Credit Default Swaps Antitrust Litig.*,
978 F. Supp. 2d 1374 (J.P.M.L. 2013)....................17

*In re Digital Advert. Antitrust Litig.*,
555 F. Supp. 3d 1372 (J.P.M.L. 2021)....................17

*Emerson v. Amazon.com Inc.*,
No. 2:2026-cv-12614 (E.D. Mich.)....................1

*Gelboim v. Bank of Am. Corp.*,
574 U.S. 405 (2015)....................17

*Glase v. Walmart Inc.*,
No. 1:26-cv-00988 (N.D. Ohio)....................5

*In re Hair Relaxer Marketing, Sales Practices, and Products Liab. Litig.*,
655 F. Supp. 3d 1374 (J.P.M.L. 2023)....................9

*Hoffman v. BCI Acrylic, LLC*,
2025 WL 2896821 (N.D. Ill. Oct. 10, 2025)....................19

*Hunter v. Lenovo (United States) Inc.*,
No. 1:26-cv-07403 (N.D. Ill.)....................10, 18

*In re Insulin Pricing Litig*.,
688 F. Supp. 3d 1372 (J.P.M.L. 2023)....................9

*In re Invokana (Canagliflozin) Prods. Liab. Litig.*,
223 F. Supp. 3d 1345 (J.P.M.L. 2016)....................19

*In re Japanese Elec. Prods. Antitrust Litig.*,
388 F. Supp. 565 (J.P.M.L. 1975)....................9

*Kahn v. Walmart Inc.*,
107 F. 4th 585 (7th Cir. 2024)....................7

*Lasseter v. Amazon.com, Inc.*,
No. 8:2026-cv-2019 (M.D. Fla.)....................1

*Learning Resources, Inc. v. Trump*,
607 U.S. 229 (2026)....................4, 9

*Lemense v. Puma United N. Am.*,
No. 1:26-cv-12654 (D. Mass)....................6

*In re Linear Gadolinium-Based Contrast Agents Prods. Liab. Litig.*,
341 F. Supp. 3d 1381 (J.P.M.L. 2018)....................4

*In re London Silver Fixing, Ltd., Antitrust Litig*.,
52 F. Supp. 3d 1381 (J.P.M.L. 2014)....................9

*Martinez v. Target Corp*.,
No. 3:26-cv-01807 (M.D. Fla.)....................6

*In re McDonald's French Fries Litig.*,
444 F.Supp.2d 1342 (J.P.M.L. 2006)....................18

*In re Mun. Derivatives Antitrust Litig.*,
560 F. Supp. 2d 1386 (J.P.M.L. 2008)....................17

*In re Nine West LBO Secs. Litig.*,
464 F. Supp. 3d 1383 (J.P.M.L. 2020)....................17

*Polistico v. Amazon.com, Inc.*,
No. 1:2026-cv-4194 (E.D.N.Y.) ....................2

*In re Profemur Hip Implant Prods. Liab. Litig.*,
481 F. Supp. 3d 1350 (J.P.M.L. 2020)....................18

*In Re Proton-Pump Inhibitor Liab. Litig.*,
273 F. Supp. 3d. 1360 (J.P.M.L. 2017)....................10, 16

*In re Salesforce, Inc., Customer Data Sec. Breach Litig.*,
813 F. Supp. 3d 1355 (J.P.M.L. 2025)....................15, 16, 20

*Sangha v. Amazon.com Inc.*,
No. 1:2026-cv-1777 (N.D. Ohio)....................2

*In re Secondary Ticket Mkt. Refund Litig.*,
481 F. Supp. 3d. 1345 (J.P.M.L. 2020)....................3, 10, 13

*Spadafino v. Amazon.com Inc.*,
No. 2:2026-cv-10023 (D.N.J.) ....................1

*Stockov v. Costco Wholesale Corp.*,
No. 1:26-cv-02734 (N.D. Ill.) ....................5, 6

*In re Treasury Sec. Auction Antitrust Litig.*,
148 F. Supp. 3d 1360 (J.P.M.L. 2015)....................9

**Statutes**

28 U.S.C. § 1407....................2, 3, 16, 18

**Other Authorities**

Wright & Miller, 15 *Fed. Prac. & Proc. Juris.*, § 3864 (4th ed.)....................18

## I. INTRODUCTION

The Panel should deny Movants' Motion to create a sprawling, multi-industry MDL consolidating forty Pending Actions[1] against twenty-seven unrelated Tariff Defendants.[2] The only factual thread linking these cases is that each seeks refunds for IEEPA tariffs paid by consumers. But this shared backdrop does not generate common questions of fact sufficient to justify centralization. The key issues—whether and how each Tariff Defendant passed tariff costs through to consumers, what products were affected, and whether each Tariff Defendant was unjustly enriched—are entirely defendant-specific. No plaintiff brings claims against multiple Tariff Defendant groups, and discovery will turn on each defendant's individual pricing decisions, products, and refund practices across ten distinct industry sectors.

Centralization will not further the convenience of the parties and witnesses or promote the just and efficient conduct of this litigation. Forcing twenty-seven unrelated defendants into a single MDL would not eliminate duplicative discovery. Instead, it would generate new inefficiencies by forcing each defendant to participate in coordinated proceedings involving twenty-six other unrelated entities whose pricing decisions, products, and claims have nothing to do with their own.

Nor is the Northern District of Illinois the appropriate transferee forum. Only one Tariff Defendant is headquartered there. Amazon Plaintiffs[3] have separately moved to consolidate the Amazon Actions[4] in the Western District of Washington, where Amazon is headquartered, where

[1] *See* Schedule of Pending Actions.

[2] In addition to the "Retailer Defendants" identified in Movants' Motion, the Tariff Defendants includes the defendants in the Tag Along Actions and identified in the Schedule of Pending Actions.

[3] The Amazon Plaintiffs are: Mari Cartagenova, Kathleen Holm, Jerry Kmiec, Jeffrey Price, and Howard Rosen.

[4] The Amazon Actions are: *In re Amazon Tariff Litig.*, No. 2:2026-cv-1670 (W.D. Wash.); *Lasseter v. Amazon.com, Inc.*, No. 8:2026-cv-2019 (M.D. Fla.); *Emerson v. Amazon.com Inc.*, No. 2:2026-cv-12614 (E.D. Mich.); *Spadafino v. Amazon.com Inc.*, No. 2:2026-cv-10023 (D.N.J.);

key documents and witnesses are located, and where Amazon itself supports transfer. That self-organized litigation hub offers a far more efficient path to resolution than a single unwieldy MDL with twenty-seven separate litigation tracks.

For these reasons, Movants' Motion should be denied.

## II. PROCEDURAL BACKGROUND

### 1. The Amazon Plaintiffs Seek MDL Status for the Amazon Actions.

Seven Amazon Actions have been filed against Tariff Defendant Amazon seeking IEEPA refunds on behalf of consumers. On May 15, 2026, Amazon Plaintiffs filed the first Amazon Action in the Western District of Washington seeking IEEPA refunds on behalf of consumers.[5] After filing a subsequent action, Amazon Plaintiffs' two Amazon Action were ordered consolidated and Amazon Plaintiffs filed their Consolidated Amended Complaint.[6] The remaining Amazon Actions were later filed in four other district courts.[7]

On August 1, 2026, Amazon Plaintiffs moved to transfer the other Amazon Actions to the Western District of Washington pursuant to 28 U.S.C. § 1407.[8] On August 22, 2026, Amazon filed a response in support of Amazon Plaintiffs' motion to transfer.[9] On August 24, 2026, the remaining Amazon plaintiffs filed their opposition to Amazon Plaintiffs' motion to transfer.[10] Amazon Plaintiffs' MDL petition is presently set for hearing on September 24, 2026.[11]

---

*Polistico v. Amazon.com, Inc.*, No. 1:2026-cv-4194 (E.D.N.Y.); *Rittenhouse v. Amazon.com*, Inc., No. 2:2026-cv-3392 (E.D.N.Y.); *Sangha v. Amazon.com Inc.*, No. 1:2026-cv-1777 (N.D. Ohio).

[5] Complaint, *In re Amazon Tariff Litigation*, No. 2:26-cv-01670, Dkt. No. 1, (W.D.WA..).

[6] Consolidated Amended Class Action Complaint, *In re Amazon Tariff Litigation*, No. 2:26-cv-01670, Dkt. No. 20, (W.D.WA.).

[7] *See e.g. supra* n.2 (noting complaints filed in the Middle District of Florida, Eastern District of Michigan, District of New Jersey, and the Eastern District of New York).

[8] *See generally* MDL No. 3197, Dkt. No. 1-1.

[9] *See generally* MDL No. 3197, Dkt. No. 22.

[10] *See generally* MDL No. 3197, Dkt. No. 23.

[11] *See generally* MDL No. 3197, Dkt. No. 4.

### 2. Movants Seek to Subsume the Amazon Actions into this MDL.

Movants originally sought to transfer and centralize twenty-five actions (including the Amazon Actions) against fifteen unrelated "Retailer Defendants" along with "any subsequently filed 'tag-along' actions."[12] Since Movants filed their Motion, fifteen more tag along actions have been identified. Movants' request has now expanded into a proposal to consolidate forty Pending Actions against twenty-seven Tariff Defendants into a single MDL in the Northern District of Illinois.[13] On September 10, 2026, Amazon filed its response in opposition to Movant's Motion where it again expressed its preference that the Amazon Actions be centralized and transferred to the Western District of Washington.[14]

## III. ARGUMENT

To establish transfer and centralization is warranted under 28 U.S.C. § 1407, the moving party must demonstrate three elements: (1) one or more common questions of fact among the actions; (2) that transfer will serve the convenience of parties and witnesses; and (3) that transfer will promote the just and efficient conduct of the actions. *Id.* The Panel disfavors requests for centralization of pending cases that bring separate claims against multiple competitor defendants, recognizing Section 1407 is rarely satisfied in such circumstances due to the inefficiencies and necessary complications that can result. *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d. 1345, 1346 (J.P.M.L. 2020); *In re Cash Sweep Programs Contract Litig.*, 766 F. Supp. 3d 1346, 1348-49 (J.P.M.L. 2025). Movants' Motion does not present the rare exception to the rule since all relevant factors weigh against centralization.

---

[12] Amended Memo. ISO Mot. for Transfer and Centralization Pursuant to 28 U.S.C. § 1407 ("Memo."), Dkt. No. 3-1, at 1.

[13] *See* Schedule of Tariff Actions.

[14] *See* Dkt. No. 127 at 3.

### A. Movants Have Not Demonstrated There Are Sufficiently Complex or Numerous, Common Questions of Fact Among the Pending Actions to Justify Centralization.

Section 1407(a) requires one or more common questions of fact for centralization. Movants assert they meet this burden because "two or more complaints assert consistent core factual allegations against similar defendants arising from similar transactions and events."[15] But, the common questions of fact must be "sufficiently complex or numerous to justify centralization." *In re Linear Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, 341 F. Supp. 3d 1381, 1382 (J.P.M.L. 2018) (denying centralization of seventeen actions where movants did not meet this burden). While the invalidation of IEEPA tariffs is a common fact amongst the pending actions, there is no question as to their invalidity. The Supreme Court already has ruled that the IEEPA tariffs were illegal and importers of record who paid IEEPA tariffs can seek a refund.[16] The remaining "common questions of fact" Movants identify are unavailing, mischaracterize the record, and even if true, do not justify the multi-industry centralization Movants request.

#### 1. CBP's Practices Are Largely Irrelevant and Are Not Unresolved or Complex Questions to be Answered in the Pending Actions.

Movants' first two "common questions" relate to the mechanics of CBP's collection and refund of IEEPA tariffs,[17] but CBP's collection and refund of tariffs are not complex or unsettled issues to be decided. There is no dispute CBP collected and has or is refunding IEEPA tariffs to importers of record. Rather, it is the actions of the individual Tariff Defendants that are at issue. Specifically, the key factual issues to be answered in the Pending Action are whether Tariff defendants passed through to consumers and refunded (or not) IEEPA tariffs. The answers to these

---

[15] Memo. at 9.

[16] *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026).

[17] *Id.*

questions will be unique as to each Tariff Defendant depending on the pricing and refund strategies they employed. These two "common questions" do not justify transfer.

### 2. The Passthrough and Pass-On Pricing Practices At-Issue Are Defendant Specific.

Next, Movants argue that "whether and to what extent the IEEPA tariffs were passed through to consumers" is a common question of fact.[18] Movants' argument hinges on an unsupported assertion that Tariff Defendants had identical "industry wide" pricing practices in response to the IEEPA tariffs, and that the plaintiffs in each action "seek to hold the Retailer Defendants responsible for the same exact alleged misconduct."[19] An examination of the allegations in the Pending Actions demonstrates this assertion is untrue and that pricing practices differed amongst Tariff Defendants as to amounts, timing, practices, and affected products. For example, the *Caldwell* plaintiff alleges that Nike described its price increases in response to the tariffs as "surgical" and that Nike "passed the elevated costs on to consumers in discrete, identifiable charges."[20] The *Glase* plaintiffs allege that Walmart only passed along tariffs on imported goods for which it had to pay them.[21] The complaint in *Stockov* alleges that "Costco

---

[18] Memo. at 10.

[19] Memo. at 9-10.

[20] Consolidated Class Action Complaint, *Caldwell v. Nike*, 3:26-cv-00923, Dkt. No. 124, at ¶ 7 (D. Or.).

[21] Third Amended Class Action Complaint, *Glase v. Walmart Inc.*, No. 1:26-cv-00988, Dkt. No. 1-21, at ¶¶ 30, 32 (N.D. Ohio) (alleging "Walmart was able to increase the price of tariffed goods during the peak of the IEEPA tariff regime by selectively raising prices on tariffed goods," and that "Walmart demonstrably raised prices on numerous tariff-affected product categories throughout the Class Period.").

…selectively rais[ed] prices on tariffed goods."[22] Other complaints allege the cost of tariffs was distributed across product lines to include products that were not subject to tariffs.[23]

The timing of tariff-related price increases also varied amongst Tariff Defendants. For example, the Amazon Plaintiffs allege that Amazon initially told consumers that it would "absorb" tariff costs and had "conducted strategic forward inventory buys."[24] In *Martinez v. Target Corp.*, the plaintiffs allege Target began raising prices "almost immediately."[25] The *Lemense* plaintiff quotes Puma as saying that it delayed any price increases until the fourth quarter of 2025.[26]

The Tariff Defendants' statements as to their refund plans likewise substantially differ. Some complaints allege that some Tariff Defendants have simply remained silent on this issue.[27] The *Caldwell* plaintiff alleges that Nike announced that it will keep the tariff refunds and treat them as "pure profit."[28] Walmart has stated in earnings calls that it intends to invest the tariff refunds into future price reductions.[29] Following the filing of the Amazon Plaintiffs' lawsuit,

---

[22] Complaint, *Stockov v. Costco Wholesale Corp.*, No. 1:26-cv-02734, Dkt. No. 1-8, at ¶ 26 (N.D. Ill.).

[23] Complaint, *Cavallaro v. Target Corp.*, No. 7:26-cv-06165, Dkt. No. 1-20, at ¶ 18 (S.D.N.Y.) (alleging "On information and belief, rather than absorbing those increased costs or confining them to the imported goods that generated them, Defendant recovered the tariff costs by raising prices across its product line, including on U.S.-sourced goods that were never subject to IEEPA tariffs.").

[24] Consolidated Amended Class Action Complaint, *In re Amazon Tariff Litg.*, No. 2:26-cv-01670, Dkt. 1-27, at ¶¶ 7, 37 (W.D. Wash.).

[25] Amended Complaint, *Martinez v. Target Corp*., No. 3:26-cv-01807, Dkt. No. 1-6, at ¶ 39 (M.D. Fla.).

[26] First Amended Complaint, *Lemense v. Puma United N. Am.*, No. 1:26-cv-12654, Dkt. No. 1-12 at ¶ 15 (D. Mass).

[27] *See, e.g.*, *Cavallaro* Complaint, *supra* n.20 at ¶¶ 50-51.

[28] *Caldwell* Complaint, *supra* n.17 at ¶ 83.

[29] Mary Cunningham, *Walmart Says It Is Using $2.9 Billion In Tariff Refunds to Lower Prices For Shoppers*, CBS News (Aug. 20, 2026), https://www.cbsnews.com/news/walmart-tariff-refunds-lower-prices/ (last accessed Sept. 10, 2026).

Amazon announced that it will refund some customers for tariffs paid, though it has not announced the who, what, where, when, or how of these plans.[30]

### 3. There Is No "Industry-Wide Pricing Response" or "Parallel Public Statement" At Issue.

Movants contend that the "industry-wide pricing response" to the IEEPA tariffs presents a common question. However, no complaint in a Pending Action alleges any such "industry-wide pricing response," conspiracy, or common scheme and Movants do not identify any of the "parallel public statements" that they allege exist.[31] To the contrary, the statements underlying the consumer protection claims are unique to each specific Tariff Defendant. Indeed, while many Tariff Defendants are competitors, they also represent a cross-section of several different industry sectors[32] and their pricing practices are unique, diverse, and complex.[33] Whether and to what extent each of the Tariff Defendants passed on tariff charges to consumers and whether and to what extent each of the Tariff Defendants owes its consumers a refund and how much are questions that will be answered on a defendant-by-defendant basis.

### 4. Whether Tariff Defendants Were Unjustly Enriched Is Claim-Specific and Defendant-Specific.

Finally, Movants argue that "whether retention of both the consumer overcharges and the government refunds flowing from the same invalidated tariffs amounts to unjust enrichment" is not a common question.[34] Whether each Tariff Defendant was unjustly enriched will be decided

---

[30] Paul Kim, *Amazon says it will share $600 million in Trump tariff refunds with some of its customers—will you get a payout?*, YAHOO! FINANCE (Aug. 5, 2026), https://finance.yahoo.com/economy/policy/articles/amazon-says-share-600-million-161500550.html (last accessed Sept. 10, 2026).

[31] Memo. at 10.

[32] *See infra* § III.C.

[33] *See, e.g.*, *Kahn v. Walmart Inc.*, 107 F. 4th 585, 596 & n.4 (7th Cir. 2024).

[34] Memo. at 10.

based on the state law governing each plaintiff's claims and defendant-specific facts, including how and to what extent did each Tariff Defendant passed on tariff costs to consumers and how and to what extent did each Tariff Defendant retained any or all of the tariff refunds.

**5. Movants' Cited Cases Are Inapposite, and Relevant Panel Decisions Demonstrate Centralization Is Not Appropriate Here**

None of the Panel decisions Movants rely on for their argument that there are sufficient common questions of fact are analogous. Movants primarily rely on *In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation*, but those actions involved a number of different retailers who the plaintiffs alleged had engaged in exactly the same misconduct (including cellulose in what was sold as 100% cheese), using "nearly identical labeling," where most or all of the defendants used the same supplier for their product, and where common questions about FDA regulations permeated all actions.[35] The Panel based its decision to centralize the actions in a multi-defendant coordinated proceeding in large part on this "significant overlap in the central factual issues."[36] Here, there is no overlap regarding in the central factual issues of Tariff Defendants' unique pricing and marketing practices, and the only arguable overlapping legal issue—whether IEEPA tariff collection was legal—has already definitively been resolved by the Supreme Court. Moreover, more recent Panel decisions have noted the rarity of the facts present in the *In re 100% Grated Parmesan* MDL in denying centralization in circumstances similar to those at issue here. *In re Avocado Oil Mktg. & Sales Pracs. Litig.*, 766 F. Supp. 3d 1333, 1335 (J.P.M.L. 2025).

---

[35] Memo. at 10 (citing 201 F. Supp. 3d 1375, 1377-78 (J.P.M.L. 2016)).

[36] *In re 100% Granted Parmesan*, 201 F. Supp 3d at 1178.

*In re Hair Relaxer Marketing, Sales Practices, and Products Liability Litigation* is similarly distinguishable.[37] There, all plaintiffs asserted claims relating to whether use of the defendants' products, all containing phthalates, "caused or increased the risk of developing uterine, ovarian, or breast cancer, endometriosis, uterine fibroids, or other injuries to the reproductive system." *In re Hair Relaxer*, 655 F. Supp. 3d at 1376. All plaintiffs in those related actions supported centralization, and all related actions "share[d] common issues of fact regarding whether exposure to phthalates or other EDCs cause[d] injury to the reproductive system, whether and when defendants knew or should have known of the alleged risks posed by hair relaxer products, and whether defendants engaged in adequate testing and post-market surveillance." *Id.* These are not personal injury or products liability actions where causation and duty amongst defendants will be the same or industry-wide questions of knowledge of potential harm must be decided. The claims in the Pending Actions relate to overcharges and unjust enrichment arising out of the Tariff Defendants' distinct marketing and pricing practices and their distinct actions taken in response to *Learning Resources* invalidation of the IEEPA tariffs.

Movants' citations to antitrust cases necessarily are likewise unhelpful as no Pending Action alleges a common scheme.[38] Movants' citation to *In re UnumProvident Corp. Securities, Derivative & "ERISA" Litigation* is even farther afield since all transferred actions in that matter involved a common defendant. 280 F. Supp. 2d 1377, 1380-81 (J.P.M.L. 2003). Similarly, in *In re Rembrandt Technologies, LP, Patent Litigation*, all actions brought claims related to patents held

---

[37] Memo. at 11 n.17 (citing 655 F. Supp. 3d 1374, 1376 (J.P.M.L. 2023)).

[38] *In re Insulin Pricing Litig.*, 688 F. Supp. 3d 1372, 1375 (J.P.M.L. 2023) (common scheme against drug manufacturers and pharmaceutical benefit managers); *In re Japanese Elec. Prods. Antitrust Litig.*, 388 F. Supp. 565, 567 (J.P.M.L. 1975) (alleging antitrust conspiracy); *In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1362 (J.P.M.L. 2015) (same); *In re London Silver Fixing, Ltd., Antitrust Litig.*, 52 F. Supp. 3d 1381, 1381 (J.P.M.L. 2014) (same).

by a single plaintiff involving the same technology, and thus the validity of the patents was a common, foundational question underlying all of the disputes. 493 F. Supp. 2d 1367 (J.P.M.L. 2007). Here, none of the forty Pending Actions names more than one defendant and are bringing distinct claims against all twenty-seven Tariff Defendants, on behalf of distinct classes.[39]

For those reasons, and others set forth herein, common questions of fact, to the extent they exist at all amongst the Pending Actions, are not so complex or numerous to justify centralization of now-forty Pending Actions against twenty-seven Tariff Defendants. *See In re Cash Sweep*, 766 F. Supp. 3d at 1349 (denying centralization where claims concerned each defendant's unique contracts, practices, and disclosures).

### B. Discovery Will Be Defendant-Specific and Transfer and Centralization Will Not Further the Convenience of the Parties and Witnesses.

That discovery will be defendant-specific with little to no overlap amongst the Pending Actions is another factor that counsels against consolidation. *In re Secondary Ticket Mkt. Refund*, 481 F. Supp. 3d. at 1346; *In re Cash Sweep*, 766 F. Supp. 3d at 1349. No plaintiff brings claims against multiple Tariff Defendant groups, no plaintiff alleges purchases from multiple defendants, and no one has pleaded any factual circumstances such that discovery from one defendant will be relevant to another. This weighs strongly against broader centralization. *See In Re Proton-Pump Inhibitor Liab. Litig.*, 273 F. Supp. 3d. 1360, 1361-62 (J.P.M.L. 2017) (denying centralization where "[c]entralization thus appears unlikely to serve the convenience of most, if not all, defendants and their witnesses" where the named defendants varied "from action to action"). While Movants argue that plaintiffs will "seek the same essential testimony, documents, and other

[39] One complaint, *Hunter v. Lenovo (United States) Inc.*, names Lenovo (United States) Inc. Lenovo Global Technology (United States) Inc., and Motorola Mobility, LLC ("Motorola"). No. 1:26-cv-07403 (N.D. Ill. June 24, 2026), Dkt. No. 75-4 at ¶¶ 20-22. However, Motorola is a subsidiary of Lenovo Group Limited. *Id.*

information from the Retailer Defendants and third parties" they rely on the fact that broad *categories* of discovery may overlap—the discovery itself certainly would not—as the "duplication" they highlight demonstrates.[40] Specifically, Movants point to the following:

> (a) internal communications regarding decisions to raise prices, including on products not subject to IEEPA tariffs; (b) documents and testimony regarding the Retailer Defendants' status as an IORs; (c) documents and testimony regarding the Retailer Defendants' entitlement to refunds from the federal government; (d) documents and structured data illustrating the amount of overcharges for consumer products both subject to and not subject to IEEPA tariffs; and (e) testimony from experts…. *Id.*

None of this discovery will overlap amongst Tariff Defendants. Internal communications are necessarily defendant-specific. Each Tariff Defendant made its own pricing decisions. Any Tariff Defendants' status as an IOR is specific to that Defendant. Refunds available to each Defendant depends on that Tariff Defendant's tariff payment and imports. The data as to the amount each Tariff Defendant overcharged a plaintiff will come from that Tariff Defendant's records and sales data. Witnesses will be located where Tariff Defendants are located, and, as Movants acknowledge, most, if not all, are located outside of their proposed transferee forum. As to the Amazon Plaintiffs' action, none of the parties is located in the Northern District of Illinois, and transferring their action there will increase inefficiencies, costs, and inconvenience.

The cases Movants cite provide no support for their contention that centralization will further the convenience of the parties and witnesses. *In re Pilot Flying J Fuel Rebate Cont. Litig. (No. II)* dealt with cases filed by plaintiffs who opted out of a nationwide settlement. 11 F. Supp. 3d 1351 (J.P.M.L. 2014). The opt-out plaintiffs brought claims against defendants alleging a fraudulent conspiracy spearheaded by Pilot, where the "fraudulent calculations of rebate amounts due were performed at Pilot headquarters," and centralization of all actions "w[ould] avoid

[40] Memo. at 14.

repetitive depositions of Pilot's officers and employees and duplicative document discovery regarding the alleged scheme." *Id.* at 1352. The Panel transferred the actions to the district where Pilot was domiciled. *In re Multidistrict Litig. Involving Banking Agreements* dealt with claims brought by former controlling officers and shareholders of then-bankrupt Stirling Homex Corp. 388 F. Supp. 572, 572 (J.P.M.L. 1975). The defendants were all "members of a banking consortium with whom Stirling and a subsidiary dealt in attempting to secure adequate financing for their operations." *Id.* The plaintiffs alleged the consortium members engaged in a fraudulent scheme by "falsely representing their intention to extend credit to Stirling and its subsidiary" and asserted claims on behalf of identical classes. *Id.* at 572-73. Importantly, all parties agreed centralization was appropriate, and the only question was where. *Id.* at 573. The Panel transferred the actions to the Southern District of New York, where the fraud occurred and all plaintiffs and all but one defendant were located. There is no scheme amongst defendants alleged in any of the Pending Actions, there is no central location where the majority of documents and witnesses will be located, and the putative classes in the Pending Actions are all differently defined.

As in *In re Avocado Oil*, "virtually every action [Movants seek to transfer and coordinate] is brought against a different defendant and asserts claims based on only the named defendant's" products and marketing. 766 F. Supp. 3d at 1334. Movants "do not allege an industry-wide conspiracy or an indivisible physical injury caused by multiple defendants' products or conduct." *In re Benzoyl Peroxide Mktg., Sales Pracs. & Prods. Liab. Litig*, 743 F. Supp. 3d 1373, 1374 (J.P.M.L. 2024). Movants have not established centralization will further the convenience of the parties and witnesses.

### C. Centralizing the Pending Actions into a Single MDL Will Not Promote Just and Efficient Conduct of the Litigation.

Without support, Movants assert that "the Actions will involve many of the same pretrial issues, such as the nature and scope of discovery, the sufficiency of the allegations, and class determinations."[41] But the relevant question is not whether the Actions involve the same pretrial issues: it is whether centralizing these cases would resolve those issues more efficiently. Movants make no effort to demonstrate that it would. Nor can they. The nature and scope of discovery will be distinct for each Tariff Defendant since each Tariff Defendant made its pricing and tariff decisions independently. Again, there is no allegation that any of the defendants conspired together or acted in concert. Tariff decisions were made independently meaning that discovery will differ for each defendant. Pleading sufficiency can only be assessed complaint by complaint. And because the proposed classes in any of the Pending Actions do not overlap, each class determination will be made separately.

Panels "are typically skeptical of requests to centralize claims filed against multiple defendants who are competitors in a single MDL because it often will not promote judicial efficiency or serve the convenience of the parties and witnesses." *In re Secondary Ticket Mkt. Refund*, 481 F. Supp. 3d at 1346. Here, Movants initial request to consolidate twenty-five actions against fifteen different "Retailer Defendants," that numbers has now ballooned to forty actions against twenty-seven different Tariff Defendants. As shown in the chart below, many Tariff Defendants compete in the same industry sector such as General Retail & E-Commerce or Apparel & Footware. For these defendants, "centralizing competing defendants in the same MDL likely would complicate case management due to the need to protect trade secret and confidential

[41] Memo. at 14.

information." *In re CP4 Fuel Pump Mktg. Sales Pracs., & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019).

| Industry Sector[42] | Tariff Defendant(s)[43] |
|---|---|
| **General Retail & E-Commerce** | Amazon.com, Inc. / Amazon.com Services LLC<br>Target Corporation<br>Costco Wholesale Corporation<br>Walmart Inc.<br>Whaleco Inc. (Temu) |
| **Apparel & Footwear** | Nike, Inc.<br>adidas America, Inc.<br>Puma United North America, LLC<br>Zara USA, Inc.<br>Victoria's Secret Stores Brand Management, LLC<br>Ralph Lauren Corporation<br>Columbia Sportswear Company<br>Deckers Outdoor Corporation<br>ON Inc.<br>Levi Strauss & Co. |
| **Fashion and Lifestyle Retail & E-Commerce** | Shein Distribution Corporation |
| **Eyewear & Optical** | Luxottica of America, Inc. |
| **Food & Beverage** | The J.M. Smucker Company |
| **Consumer Electronics & Gaming** | Sony Interactive Entertainment LLC<br>Lenovo (United States) Inc. / Motorola Mobility, LLC<br>Nikon Inc.<br>Canon U.S.A., Inc. |
| **Home Furnishings & Retail** | IKEA North America Services LLC |
| **Technology** | Microsoft Corporation |
| **Home Improvement** | Home Depot, Inc.<br>Lowe's Companies, Inc. |
| **Oil & Gas** | Valero Energy Corporation |

[42] The divisions by Industry Sector are based on Tariff Defendants' own statements in their Securities and Exchange Commission Form 10-K filings or on their own website. *See* Appendix A.

[43] Amazon Plaintiffs have listed one company name for each Tariff Defendant. For a complete list of the Tariff Defendants' related entities, *see* Schedule of Tariff Actions.

Simultaneously, the Tariff Defendants also represent a cross-section of ten different industry sectors ranging from Home Furnishings to Oil & Gas. It is hard to conceive how discovery for Ikea would ever overlap with discovery from Valero. The efficiencies to be gained are even harder to conceive. The products Tariffs Defendants sold varied widely, came from different countries, and were thus subjected to different tariff rates. All Pending Actions were brought against a single retailer, and the classes do not overlap.[44] Under these facts, centralization is not warranted.

Movants' arguments are supported by inapposite case law. In *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, the observation that centralization "prevent[s] inconsistent pretrial rulings on class certification and other issues" was made in the context of a single data breach and a single defendant.[45] Similarly, in *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*,[46] that data breach case also involved one data breach, only three defendants, and there were "significant overlap in the central factual issues, parties, proposed classes, and claims." 410 F. Supp. 3d 1350, 1353 (J.P.M.L. 2019). In *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, the Panel held that centralization was warranted in a product defect case involving a single defect against a single defendant.[47] In *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,[48] the same group of defendants were named in each action and "thus share[d] factual questions concerning [liability]…knowledge…and to what extent…defendants conspired or cooperated to conceal the

[44] *See* Schedule of Tariff Actions.

[45] Memo. at 14 (quoting 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019)).

[46] Memo. at 15.

[47] Memo. at 16 (citing 109 F. Supp. 3d 1382, 1383 (J.P.M.L. 2015)).

[48] Memo. at 15.

dangers of…their products." 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). In *In re Republic Nat'l-Realty Equities Sec. Litig.*,[49] centralization created efficiencies because classes in the underlying actions overlapped and "hav[ing] all class action questions resolved by a single judge [would] achieve the most expeditious method of organizing the class" 382 F. Supp. 1403, 1406 (J.P.M.L. 1974).

Amazon Plaintiffs submit that the current effort in MDL No. 3197 to create a litigation hub for the Amazon Actions in Amazon's home district will prove the most efficient means of moving that litigation toward resolution. *See In re Salesforce, Inc., Customer Data Sec. Breach Litig.*, 813 F. Supp. 3d 1355, 1358 (J.P.M.L. 2025) (finding centralization unnecessary because litigation hubs had emerged in defendants' home districts through self-organization). This alternative path to centralization would eliminate the "potential for [the] conflicting, disorderly, chaotic judicial action" that concerned the Panel in *In re Plumbing Fixture Cases*.[50]

### D. The Northern District of Illinois Is Not the Appropriate Transferee Forum for the Amazon Actions.

#### 1. The Amazon Actions Should Be Litigated in the Western District of Washington.

The Supreme Court has stated that "[t]ransfer under § 1407 aims to 'eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.'" *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015) (quoting MANUAL FOR COMPLEX LITIGATION § 20.131, p. 220). Under this guidance, the appropriate jurisdiction for the Amazon Actions is the Western District of Washington. Amazon has its principal offices and key personnel in the Western District of

[49] Memo. at 15.

[50] Memo. at 15 (quoting 298 F. Supp. 484, 493 (J.P.M.L. 1968)).

Washington, and Amazon itself supports transfer to that district.[51] Legal costs for both sides will be minimized since at least two of the law firms in the Amazon Actions (plaintiffs' counsel Hagens Berman Sobol Shapiro, LLP and defense counsel Davis Wright & Tremaine) are headquartered in the Western District of Washington. Amazon's "Conditions of Use" require that each of the Related Actions be heard in the Western District of Washington and are subject to Washington law. In addition, both Amazon Plaintiffs and Amazon agree that the Western District of Washington is the preferred location for the Amazon Actions.[52] *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1380 (J.P.M.L. 2021) (identifying the Southern District of New York as the appropriate transferee district based, in part, on agreement of the parties).

Where an MDL involves multiple defendants headquartered in different forums, the Panel is likely to choose an alternate forum where many of the defendants are headquartered. *See In re Mun. Derivatives Antitrust Litig.*, 560 F. Supp. 2d 1386, 1387-88 (J.P.M.L. 2008); *In re Credit Default Swaps Antitrust Litig.*, 978 F. Supp. 2d 1374, 1375 (J.P.M.L. 2013) ("This district has a strong connection to this litigation, inasmuch as most defendants are based there…."); *In re Nine West LBO Secs. Litig.*, 464 F. Supp. 3d 1383, 1385 (J.P.M.L. 2020) (even where actions were clustered elsewhere, the "litigation's center of gravity" was the district in which many of the entities were headquartered). These decisions are rooted in the notion that a defendant's relevant documents and witnesses are likely to be found at its headquarters. *See, e.g.*, *In re Profemur Hip Implant Prods. Liab. Litig.*, 481 F. Supp. 3d 1350, 1353 (J.P.M.L. 2020). For example, the Western District of Washington is home to three Tariff Defendants (Amazon, Costco, and Microsoft). Under these facts, if the Panel were to centralize the Pending Actions anywhere (which it should

[51] MDL No. 3197, Dkt. No. 22 at 4-5.

[52] *See* Dkt. No. 127 at 3; *see also* MDL No. 3197, Dkt. Nos. 1-1, 22 at 4-5.

not), the Western District of Washington is a much more logical transferee district compared to the Northern District of Illinois.

Movants argue that given the concentration of Pending Actions in the Northern District of Illinois, it should be the transferee court for all Pending Actions.[53] Movants are wrong. While focusing on the number of actions filed in the Northern District of Illinois, Movants omit that only one Tariff Defendant—Motorola—is headquartered in this district.[54] Section 1407 has never been rooted in strict mathematical considerations regarding which district has the largest number of filed actions. *See* 15 Wright & Miller, 15 *Fed. Prac. & Proc. Juris.*, § 3864 (4th ed.) (collecting cases). If it were, then the Eastern District of New York—which also has seven Pending Actions—would be equally appropriate transferee district.

Movants cite *In re McDonald's French Fries Litigation* in support of the overriding centrality and accessibility of the Northern District of Illinois.[55] However, this case actually supports Amazon Plaintiffs' position. The Northern District of Illinois was selected because McDonald's headquarters is located there, making the district "a likely source of relevant documents and witnesses" in that particular case.[56] The same benefits do not exist here because the Northern District of Illinois is only "a likely source of relevant documents and witnesses" for the one Tariff Defendant.

---

[53] Memo. at 16-19.

[54] *See Hunter v. Lenovo (United States) Inc.*, No. 1:26-cv-07403 (N.D.I.L. June 24, 2026), Dkt. No. 75-4 at 6.

[55] Memo. at 17 (citing 444 F.Supp.2d 1342, 1343 (J.P.M.L. 2006)).

[56] *In re McDonald's*, 444 F. Supp. 2d at 1343.

### 2. The Western District of Washington Has More Administrative Capacity to Oversee an MDL than the Northern District of Illinois

When designating a transferee forum, the Panel also considers how well-equipped an individual district is to handle complex MDLs. Though the Northern District of Illinois is staffed by experienced and esteemed jurists, courts have previously found the Western District of Washington to have both a "less congested docket and a faster time to trial" than the Northern District of Illinois. *See, e.g.*, *Hoffman v. BCI Acrylic, LLC*, 2025 WL 2896821, at *7 (N.D. Ill. Oct. 10, 2025) (noting 475 vs. 1,085 pending cases per judge, and a 24.3-month vs. 56.4-month time to trial). Additionally, the Northern District of Illinois currently has 12 pending MDLs, compared to one in Washington. *See Judicial Panel on Multidistrict Litigation*, Pending MDLs, https://www.jpml.uscourts.gov/pending-mdls-0. When cases are relatively evenly dispersed geographically, a district with more available judicial resources may be preferred over a busier district, even if the latter has more constituent actions. *See In re Class Action Settlement Admin. Litig.*, 812 F. Supp. 3d 1359, 1361 (J.P.M.L. 2025).

## E. Creating Separate Retailer-Specific Tracks Does Not Serve the Purposes of Efficiency.

Finally, Movants point out that the transferee court can create separate discovery and motion tracks as a means to efficiently manage this proposed MDL. But this case management tool is not a silver bullet that can somehow create order out of the chaos that would inevitably follow by putting all Tariff Defendants into a single proceeding. To the contrary, prior Panels have recognized that the need for separate discovery and motion tracks could prolong pretrial proceedings. *In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1367 (quoting *In re Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (J.P.M.L. 2016)). Under Movants' proposal, "a transferee judge would have to contend with a sprawling MDL with numerous litigation tracks for the dozens of" Tariff Defendants. *See In re Salesforce*, 813 F. Supp. 3d at 1359

(denying centralization). "Centralizing these [now-twenty-seven] single-[Tariff Defendant] cases likely would result in significant inefficiencies and delay, without producing any substantial offsetting benefits." *In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1367.

Here too Movants rely on inapposite case law. In *In re Lehman Bros. Holdings, Inc., Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, all the centralized actions arose as result of a single discrete event—the bankruptcy of an investment bank—making it inevitable that discovery in those actions would overlap.[57] Whereas here there are twenty-seven Tariff Defendants from a variety of industries, in *In re Janus Mut. Funds Inv. Litig.,* there were only six defendants—all in the same industry. 310 F. Supp. 2d 1359, 1359 (J.P.M.L. 2004). Even if each defendant required their own track, six is a far more manageable number compared to twenty-seven. Finally, in *In re Aqueous*, "all the [] actions involve[d] the same mode of groundwater contamination caused by the same product." 357 F. Supp. 3d at 1395.

## IV. CONCLUSION

Amazon Plaintiffs respectfully request that Movants' Motion be denied.

DATED: September 10, 2026

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: */s/ Steve W. Berman*
Steve W. Berman
Sydney K. Thomas
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com
Email: sydney.thomas@hbsslaw.com

[57] Memo. at 20 (citing 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009)).

Christopher R. Pitoun
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Email: christopherp@hbsslaw.com

Dana Abelson
455 N Cityfront Plaza Dr. Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Email: dana.abelson@hbsslaw.com

**GRANT & EISENHOFER P.A.**

Kelly L. Tucker
Matthew Denn
123 Justison Street, 7th Floor
Wilmington, DE 19801
Telephone: (302) 622-7000
Email: ktucker@gelaw.com
Email: mdenn@gelaw.com

Thomas Walsh
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone: (646) 722-8500
Email: twalsh@gelaw.com

*Attorneys for Plaintiffs Mari Cartagenova, Kathleen Holm, Jerry Kmiec, Jeffrey Price, and Howard Rosen in In re Amazon Tariff Litigation, Case No. 2:26-cv-01670-TL (W.D. Wash.)*

## APPENDIX A

| Industry Sector | Supporting Documents |
|---|---|
| **General Retail & E-Commerce** | *See e.g.*, Costco Wholesale Corp., Annual Statement (Form 10-K) (Aug. 31, 2025), https://www.sec.gov/Archives/edgar/data/909832/000090983225000101/cost-20250831.htm ("Walmart, Target, Kroger, and Amazon are among our significant general merchandise retail competitors…."); *see also* https://www.temu.com/about-temu.html?refer_page_name=about_temu_home&refer_page_id=25633_1788763570861_g9wvftl5ni&refer_page_sn=25633&_x_sessn_id=lyicm9phjm ("Temu is an e-commerce company that connects consumers with millions of merchandise partners, manufacturers and brands…."). |
| **Apparel & Footwear** | *See e.g.*, Nike, Inc., Annual Statement, Form 10-K (May 31, 2024), https://www.sec.gov/Archives/edgar/data/320187/000032018724000044/nke-20240531.htm ("We compete internationally with … adidas … Deckers … Puma, Under Armour and V.F. Corporation, among others.); *see also* Zara.com, *Company*, https://www.zara.com/us/en/z-company-corp1391.html?v1=11112&regionGroupId=8 ("Zara is one of the biggest international fashion companies … ."); Victoria's Secret & Co., Annual Statement (Form 10-K) (Mar. 20, 2026), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001856437/000185643726000004/vsco-20260131.htm ("We are the world's largest intimate apparel company … ."); Ralph Lauren Corporation, Annual Statement (Form 10-K) (May 21, 2026), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001037038/000162828026037074/rl-20260328.htm ("we are a global leader in the design, marketing, and distribution of luxury lifestyle products, including apparel"); Columbia Sportswear Co., Annual Statement (Form 10-K) (Feb. 25, 2026), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001050797/000105079726000028/colm-20251231.htm#fact-identifier-632 ("Columbia Sportswear Company connects active people … by designing, developing, marketing, and distributing its outdoor, active and lifestyle apparel … ."); Deckers Brands, *Company Information*, https://ir.deckers.com/company-information ("Deckers Brands is a global leader in designing, marketing and distributing innovative footwear, apparel and accessories … ."); On, *Technology*, https://www.on.com/en-us/explore/technology ("We create apparel and footwear designed to help you move."), Levi Strauss & Co. Annual Statement, Form 10-K (Jan. 28, 2026), at p. 6, https://d18rn0p25nwr6d.cloudfront.net/CIK-0000094845/40abd4bf-0f97-48e2-955e-e38a222a6528.pdf ("we have grown into one of the world's largest brand-name apparel companies."). |
| **Fashion and Lifestyle Retail & E-Commerce** | Shein, *About Us*, https://us.shein.com/About-Us-a-117.html ("SHEIN is a global online fashion and lifestyle retailer … ."). |
| **Eyewear & Optical** | EssilorLuxottica S.A., *Universal Registration Document 2024*, at p. 6, https://db.srnav.com/storage/v1/object/public/document-pdfs/a0ebffa6-30c4-4701-90e5- |

| | |
|---|---|
| | 46665885f9f9.pdf ("EssilorLuxottica is a global leader in the design, manufacture and distribution of advanced vision care products, eyewear and med-tech solutions."). |
| **Food & Beverage** | *See e.g.*, J.M. Smucker Company, Annual Statement, Form 10-K (Apr. 30, 2026), https://www.sec.gov/Archives/edgar/data/91419/000009141926000050/sjm-20260430.htm ("We operate principally in one industry, the manufacturing and marketing of branded food and beverage products… ."). |
| **Consumer Electronics & Gaming** | *See e.g.*, Sony Group Corporation, Annual Report, Form 20-F (Mar. 31, 2026), at p.20, https://www.sony.com/en/SonyInfo/IR/library/FY2025_20F_PDF.pdf ("Sony Interactive Entertainment LLC undertakes product research, development, design, marketing, sales, production, distribution and customer service for PlayStation® hardware, software, content and network services."); Lenovo, *Our History*, https://www.lenovo.com/us/en/about/who-we-are/history/ ("Lenovo has since grown to become [] the world's largest PC maker"); Motorola, *About us*, https://www.motorola.com/us/en/about ("At Motorola, we strive to provide people with more access to [] intuitive mobile products … ."); Nikon, *Manufacturing*, https://www.nikon.com/company/technology/manufacturing/ ("Nikon handles B2C products for individual customers… includ[ing] cameras, glasses, and binoculars … ."); Canon, *About Canon U.S.A.*, https://www.usa.canon.com/about-us ("Canon U.S.A., Inc. is a leading provider of consumer, business-to-business, and industrial digital imaging solutions … ."). |
| **Home Furnishings & Retail** | Ikea, *About us*, https://www.ikea.com/us/en/this-is-ikea/about-us/ (Ikea is "a global home furnishing brand that brings affordability, design and comfort to people all over the world."). |
| **Technology** | *See, e.g.*, Microsoft Corp., Annual Statement (Form 10-K) (June 30, 2026), https://microsoft.gcs-web.com/static-files/8a9beeed-0e9e-48e6-b4fb-593d558e2693 ("Microsoft is a technology company committed to making digital technology and artificial intelligence ("AI") available broadly and doing so responsibly."). |
| **Home Improvement** | *See, e.g.*, Home Depot, Inc., Annual Statement (Form 10-K) (Mar. 18, 2026), https://www.sec.gov/Archives/edgar/data/354950/000162828026019436/hd-20260201.htm ("The Home Depot, Inc. is the world's largest home improvement retailer … ."); Lowe's Companies, Inc., Annual Statement (Form 10-K) (Mar. 23, 2026), https://www.sec.gov/Archives/edgar/data/60667/000006066726000029/low-20260130.htm ("Lowe's Companies, Inc. [is] the world's second largest home improvement retailer."). |
| **Oil & Gas** | *See, e.g.*, Valero Energy Corp., Annual Statement (Form 10-K) (Feb. 25, 2026), https://www.sec.gov/Archives/edgar/data/1035002/000162828026028690/vlo-20260331.htm ("We are a multinational manufacturer and marketer of petroleum-based and low-carbon liquid transportation fuels and petrochemical products … ."). |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Memorandum in Opposition to Amended Motion for Transfer and Centralization Pursuant to 28 U.S.C. § 1407 was e-filed via the Court's CM/ECF system on September 10, 2026, which provides electronic service copies of filed documents upon all parties registered in this action.

DATED: September 10, 2026

By: *<u>/s/ Steve W. Berman</u>*
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com