ADRMOP,CONSENT

# U.S. District Court
# California Northern District (San Francisco)
# CIVIL DOCKET FOR CASE #: 3:26-cv-08315-JCS

| | |
|---|---|
| Neal et al v. Home Depot U.S.A., Inc. et al | Date Filed: 08/11/2026 |
| Assigned to: Magistrate Judge Joseph C. Spero | Jury Demand: Plaintiff |
| Demand: $0 | Nature of Suit: 380 Personal Property: Other |
| Cause: 28:1332 Diversity-Contract Default | Jurisdiction: Diversity |

**Plaintiff**

**John Neal** represented by

**Aaron L. Schwartz**
Kaplan Fox & Kilsheimer LLP
800 Third Avenue, 38th Floor
New York, NY 10022
(212) 687-1980
Email: ASchwartz@kaplanfox.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Blair Elizabeth Reed**
Kaplan Fox & Kilsheimer LLP
1999 Harrison Street, Suite 1501
Oakland, CA 94612
(415) 772-4700
Email: breed@kaplanfox.com
*TERMINATED: 09/16/2026*

**Donald R. Hall , Jr.**
Kaplan Fox & Kilsheimer LLP
800 Third Avenue, 38th Floor
New York, NY 10022
(212) 687-1980
Email: dhall@kaplanfox.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Frederic S. Fox**
Kaplan Fox & Kilsheimer LLP
800 Third Avenue
38th Floor
New York, NY 10022
212-687-1980
Email: ffox@kaplanfox.com
*ATTORNEY TO BE NOTICED*

**Hae Sung Nam**
Kaplan Fox & Kilsheimer LLP
800 Third Avenue, 38th Floor
New York, NY 10022
(212) 687-1980
Email: hnam@kaplanfox.com

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Lindenmuth**
Kaplan Fox & Kilsheimer LLP
800 Third Avenue, 38th Floor
New York, NY 10022
(212) 687-1980
Email: mlindenmuth@kaplanfox.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence D. King**
Kaplan Fox & Kilsheimer LLP
1999 Harrison Street, Suite 1501
Oakland, CA 94612
(415) 772-4700
Email: lking@kaplanfox.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Veronica Camaioni** represented by **Aaron L. Schwartz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Blair Elizabeth Reed**
(See above for address)
*TERMINATED: 09/16/2026*

**Donald R. Hall , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Frederic S. Fox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hae Sung Nam**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Lindenmuth**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence D. King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Maribel Moncayo** represented by **Aaron L. Schwartz**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Blair Elizabeth Reed**
(See above for address)
*TERMINATED: 09/16/2026*

**Donald R. Hall , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Frederic S. Fox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hae Sung Nam**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Lindenmuth**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence D. King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kayla Ebenhoeh** represented by **Aaron L. Schwartz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Blair Elizabeth Reed**
(See above for address)
*TERMINATED: 09/16/2026*

**Donald R. Hall , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Frederic S. Fox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hae Sung Nam**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Lindenmuth**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence D. King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Shauna Silver** represented by **Aaron L. Schwartz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Blair Elizabeth Reed**
(See above for address)
*TERMINATED: 09/16/2026*

**Donald R. Hall , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Frederic S. Fox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hae Sung Nam**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Lindenmuth**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence D. King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Anntwanette Jones** represented by **Aaron L. Schwartz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Blair Elizabeth Reed**
(See above for address)
*TERMINATED: 09/16/2026*

**Donald R. Hall , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Frederic S. Fox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hae Sung Nam**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Lindenmuth**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence D. King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Patricia Andros** represented by **Aaron L. Schwartz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Blair Elizabeth Reed**
(See above for address)
*TERMINATED: 09/16/2026*

**Donald R. Hall , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Frederic S. Fox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hae Sung Nam**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Lindenmuth**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence D. King**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Meagan Cohen** represented by **Aaron L. Schwartz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Blair Elizabeth Reed**
(See above for address)
*TERMINATED: 09/16/2026*

**Donald R. Hall , Jr.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Frederic S. Fox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hae Sung Nam**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Lindenmuth**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurence D. King**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Home Depot U.S.A., Inc.** represented by **Lisa R. Bugni**
King & Spalding LLP
50 California Street, Suite 3300
San Francisco, CA 94111
(415) 318-1200
Fax: (415) 318-1300
Email: lbugni@kslaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Home Depot, Inc.** represented by **Lisa R. Bugni**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/11/2026 | 1 | COMPLAINT against Home Depot U.S.A., Inc., The Home Depot, Inc. ( Filing fee $ 405, receipt number ACANDC-22321613.). Filed by Anntwanette Jones, Maribel Moncayo, Patricia Andros, Veronica Camaioni, Meagan Cohen, Kayla Ebenhoeh, John Neal, Shauna Silver. (King, Laurence) (Filed on 8/11/2026) (Entered: 08/11/2026) |
| 08/11/2026 | 2 | Proposed Summons. (King, Laurence) (Filed on 8/11/2026) (Entered: 08/11/2026) |
| 08/11/2026 | 3 | Case assigned to Magistrate Judge Joseph C. Spero.<br><br>Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. |

| | | |
|---|---|---|
| | | Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 8/25/2026. (as, COURT STAFF) (Filed on 8/11/2026) (Entered: 08/11/2026) |
| 08/11/2026 | 4 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 11/11/2026. Initial Case Management Conference set for 11/18/2026 02:00 PM in San Francisco, - Videoconference Only. (pjf, COURT STAFF) (Filed on 8/11/2026) (Entered: 08/11/2026)** |
| 08/11/2026 | 5 | Summons Issued as to Home Depot U.S.A., Inc., The Home Depot, Inc.. (pjf, COURT STAFF) (Filed on 8/11/2026) (Entered: 08/11/2026) |
| 08/11/2026 | 6 | Certificate of Interested Entities by Patricia Andros, Veronica Camaioni, Meagan Cohen, Kayla Ebenhoeh, Anntwanette Jones, Maribel Moncayo, John Neal, Shauna Silver (King, Laurence) (Filed on 8/11/2026) (Entered: 08/11/2026) |
| 08/27/2026 | 7 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-22389297.) filed by Patricia Andros, Veronica Camaioni, Meagan Cohen, Kayla Ebenhoeh, Anntwanette Jones, Maribel Moncayo, John Neal, Shauna Silver. (Lindenmuth, Matthew) (Filed on 8/27/2026) (Entered: 08/27/2026) |
| 08/27/2026 | 8 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-22389669.) filed by Patricia Andros, Veronica Camaioni, Meagan Cohen, Kayla Ebenhoeh, Anntwanette Jones, Maribel Moncayo, John Neal, Shauna Silver. (Schwartz, Aaron) (Filed on 8/27/2026) (Entered: 08/27/2026) |
| 08/27/2026 | 9 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-22389738.) filed by Patricia Andros, Veronica Camaioni, Meagan Cohen, Kayla Ebenhoeh, Anntwanette Jones, Maribel Moncayo, John Neal, Shauna Silver. (Hall, Donald) (Filed on 8/27/2026) (Entered: 08/27/2026) |
| 08/27/2026 | 10 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-22389792.) filed by Patricia Andros, Veronica Camaioni, Meagan Cohen, Kayla Ebenhoeh, Anntwanette Jones, Maribel Moncayo, John Neal, Shauna Silver. (Nam, Hae Sung) (Filed on 8/27/2026) (Entered: 08/27/2026) |
| 08/27/2026 | 11 | **Order by Magistrate Judge Joseph C. Spero granting 7 Motion for Pro Hac Vice of Matthew Lindenmuth.(ec, COURT STAFF) (Filed on 8/27/2026) (Entered: 08/27/2026)** |
| 08/27/2026 | 12 | **Order by Magistrate Judge Joseph C. Spero granting 8 Motion for Pro Hac Vice Aaron Schwartz.(ec, COURT STAFF) (Filed on 8/27/2026) (Entered: 08/27/2026)** |
| 08/27/2026 | 13 | **Order by Magistrate Judge Joseph C. Spero granting 9 Motion for Pro Hac Vice of Donald Hall.(ec, COURT STAFF) (Filed on 8/27/2026) (Entered: 08/27/2026)** |
| 08/27/2026 | 14 | **Order by Magistrate Judge Joseph C. Spero granting 10 Motion for Pro Hac Vice Sung Hae Nam.(ec, COURT STAFF) (Filed on 8/27/2026) (Entered: 08/27/2026)** |
| 08/31/2026 | 15 | CLERK'S NOTICE Re: Consent or Declination: Plaintiffs/Defendants shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms.<br><br>Consent/Declination due by 9/14/2026.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ec, COURT STAFF) (Filed on 8/31/2026) (Entered: 08/31/2026) |

| | | |
|---|---|---|
| 08/31/2026 | 16 | SUMMONS Returned Executed by Anntwanette Jones, Maribel Moncayo, Patricia Andros, Veronica Camaioni, Meagan Cohen, Kayla Ebenhoeh, John Neal, Shauna Silver. Home Depot U.S.A., Inc. served on 8/14/2026, answer due 9/4/2026. (King, Laurence) (Filed on 8/31/2026) (Entered: 08/31/2026) |
| 08/31/2026 | 17 | SUMMONS Returned Executed by Anntwanette Jones, Maribel Moncayo, Patricia Andros, Veronica Camaioni, Meagan Cohen, Kayla Ebenhoeh, John Neal, Shauna Silver. The Home Depot, Inc. served on 8/14/2026, answer due 9/4/2026. (King, Laurence) (Filed on 8/31/2026) (Entered: 08/31/2026) |
| 09/02/2026 | 18 | NOTICE of Appearance filed by Lisa R. Bugni on behalf of Home Depot U.S.A., Inc., The Home Depot, Inc. (Bugni, Lisa) (Filed on 9/2/2026) (Entered: 09/02/2026) |
| 09/02/2026 | 19 | Stipulation Extending Time for Response to Complaint filed by Home Depot U.S.A., Inc., The Home Depot, Inc.. (Bugni, Lisa) (Filed on 9/2/2026) (Entered: 09/02/2026) |
| 09/02/2026 | 20 | Certificate of Interested Entities by Home Depot U.S.A., Inc., The Home Depot, Inc. (Bugni, Lisa) (Filed on 9/2/2026) (Entered: 09/02/2026) |
| 09/14/2026 | 21 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Home Depot U.S.A., Inc., The Home Depot, Inc... (Bugni, Lisa) (Filed on 9/14/2026) (Entered: 09/14/2026) |
| 09/15/2026 | 22 | CLERK'S NOTICE Re: Consent or Declination: Plaintiffs shall file a consent or declination to proceed before a magistrate judge. Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms.<br><br>Consent/Declination due by 9/29/2026.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (ec, COURT STAFF) (Filed on 9/15/2026) (Entered: 09/15/2026) |
| 09/15/2026 | 23 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Patricia Andros, Veronica Camaioni, Meagan Cohen, Kayla Ebenhoeh, Anntwanette Jones, Maribel Moncayo, John Neal, Shauna Silver.. (King, Laurence) (Filed on 9/15/2026) (Entered: 09/15/2026) |
| 09/16/2026 | 24 | NOTICE of Withdrawal filed by Blair Elizabeth Reed, no longer appearing on behalf of Patricia Andros, Veronica Camaioni, Meagan Cohen, Kayla Ebenhoeh, Anntwanette Jones, Maribel Moncayo, John Neal, Shauna Silver in this case (Reed, Blair) (Filed on 9/16/2026) (Entered: 09/16/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 09/24/2026 15:07:36 | | | |
| **PACER Login:** | kaplanfox | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:26-cv-08315-JCS |
| **Billable Pages:** | 9 | **Cost:** | 0.90 |

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316791)
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email: *lking@kaplanfox.com*
*breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*Pro Hac Vice* forthcoming)
Donald R. Hall (*Pro Hac Vice* forthcoming)
Hae Sung Nam (*Pro Hac Vice* forthcoming)
Aaron Schwartz (*Pro Hac Vice* forthcoming)
Matthew Lindenmuth (*Pro Hac Vice* forthcoming)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
Email: *ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*hnam@kaplanfox.com*
*aschwartz@kaplanfox.com*
*mlindenmuth@kaplanfox.com*

*Attorneys for Plaintiffs and the Proposed Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOHN NEAL, VERONICA CAMAIONI, MARIBEL MONCAYO, KAYLA EBENHOEH, SHAUNA SILVER, ANNTWANETTE JONES, PATRICIA ANDROS and MEAGAN COHEN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

HOME DEPOT U.S.A., INC. and THE HOME DEPOT, INC.,

Defendants.

Case No. 3:26-cv-8315

CLASS ACTION

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs John Neal ("Plaintiff Neal"), Veronica Camaioni ("Plaintiff Camaioni"), Maribel Moncayo ("Plaintiff Moncayo") (Plaintiffs Neal, Camaioni, and Moncayo are collectively referred to as the "California Plaintiffs"), Patricia Andros ("Plaintiff Andros"), Shauna Silver, ("Plaintiff Silver"), Anntwanette Jones ("Plaintiff Jones"), Kayla Ebenhoeh ("Plaintiff Ebenhoeh"), and Meagan Cohen ("Plaintiff Cohen") (collectively, with California Plaintiffs, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against defendants Home Depot U.S.A., Inc. and The Home Depot, Inc. (collectively "Home Depot," the "Company," or "Defendants"), to recover the millions of dollars in overcharges imposed by Defendants in response to import tariffs that were later determined to be unlawful. All allegations regarding Plaintiffs are made on personal knowledge. All other allegations are made upon information and belief following an investigation by counsel.

## NATURE OF THE ACTION

1. This class action concerns Home Depot's practice of increasing consumer prices due to unlawful tariffs levied by the President pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701, *et seq*. Specifically, Home Depot transferred unlawful IEEPA tariff costs onto Plaintiffs and the putative Classes, causing them to pay inflated prices.

2. This dispute centers on Home Depot's conduct and public statements, and a fundamental asymmetry embedded in the tariff refund system. Specifically, the importer of record is the only one who can seek reimbursement from the government for an unlawfully collected tariff. However, the importer frequently functions as little more than a financial conduit. In the typical transaction, the importer advances the tariff payment and recoups that payment by charging consumers elevated prices. Indeed, Goldman Sachs estimates that U.S. consumers are "shouldering two-thirds of President Trump's new tariff costs."[1] Thus, the consumer, in practical and economic terms, is the one who paid the illegal IEEPA tariffs.

[1] N. Lichtenberg, *Goldman Sachs doubles down on tariff research that infuriated Trump, saying average Americans will bear two-thirds of the costs*, Fortune (Aug. 13, 2025), https://fortune.com/ 2025 /08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/.

3. Thousands of companies have filed actions with the U.S. Court of International Trade ("CIT") seeking recovery of the full amount of their IEEPA tariff obligations, and the CIT has ordered that refunds (plus interest) be issued to entitled importers, including Home Depot, regardless of whether the companies filed a lawsuit with the CIT. *Atmus Filtration, Inc. v. U.S.*, No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21. Furthermore, on April 20, 2026, U.S. Customs and Border Protection ("CBP") released a Consolidated Administration and Processing of Entries ("CAPE") functionality within the Automated Commercial Environment ("ACE") that allows for the processing of tariff refund requests to the importer of record.[2]

4. As of July 10, 2026, about $121 billion in claims have been accepted for processing while $86 billion have been completed.[3] As it pertains to Home Depot, Chief Financial Officer Richard McPhail ("CFO McPhail"), announced on the Company's Q1 2026 earnings call on May 19, 2026 that Home Depot had "filed for tariff refunds" and to date had received an "immaterial amount."[4]

5. This lawsuit seeks to ensure that Plaintiffs and the putative Classes recover monetary damages for the unlawful tariff overcharges they paid pursuant to the illegal IEEPA tariffs. Accordingly, Plaintiffs seek monetary damages in the amount of the unlawful IEEPA duties passed through to Plaintiffs and the putative Classes in the form of elevated product prices and/or reduced promotions. Plaintiffs and the Classes are also entitled to pre- and post-judgment interest, reasonable attorneys' fees, and costs.

---

[2] *International Emergency Economic Powers Act (IEEPA) Duty Refunds*, U.S. Customs & Border Prot., https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds (last visited July 28, 2026).

[3] Declaration of Brandon Lord ¶ 5, *Euro-Notions Fla., Inc. v. U.S. Customs & Border Prot.*, No. 25-00595 (Ct. Int'l Trade July 13, 2026), ECF No. 45.

[4] *The Home Depot, Inc. (HD) Q1 2026 Earnings Call Transcript*, Motley Fool (May 19, 2026), https://www.fool.com/earnings/call-transcripts/2026/05/19/home-depot-hd-q1-2026-earnings-transcript/.

**PARTIES**

**A. Plaintiffs**

6. **Plaintiff John Neal** is a natural person and individual consumer, who, at all times material hereto, was a citizen of California. Plaintiff Neal purchased Home Depot products impacted by the unlawful IEEPA tariffs through a Home Depot brick-and-mortar location in Hercules, California. Absent the illegal price increases implemented by Home Depot in response to the unlawful IEEPA tariffs, Plaintiff Neal would have paid less for these products.

7. **Plaintiff Veronica Camaioni** is a natural person and individual consumer, who, at all times material hereto, was a citizen of California. Plaintiff Camaioni purchased Home Depot products impacted by the unlawful IEEPA tariffs through Home Depot's website and in-store at a brick-and-mortar location in Redlands, California. Absent the illegal price increases implemented by Home Depot in response to the unlawful IEEPA tariffs, Plaintiff Camaioni would have paid less for these products.

8. **Plaintiff Maribel Moncayo** is a natural person and individual consumer, who, at all times material hereto, was a citizen of California. Plaintiff Moncayo purchased Home Depot products impacted by the unlawful IEEPA tariffs through Home Depot's website and in-store at a brick-and-mortar location in Hanford, California. Absent the illegal price increases implemented by Home Depot in response to the unlawful IEEPA tariffs, Plaintiff Moncayo would have paid less for these products.

9. **Plaintiff Kayla Ebenhoeh** is a natural person and individual consumer who, at all times material hereto, was a citizen of Michigan. Plaintiff Ebenhoeh purchased Home Depot products impacted by the unlawful IEEPA tariffs through Home Depot's website. Absent the illegal price increases implemented by Home Depot in response to the unlawful IEEPA tariffs, Plaintiff Ebenhoeh would have paid less for these products.

10. **Plaintiff Shauna Silver** is a natural person and individual consumer who, at all times material hereto, was a citizen of New Hampshire. Plaintiff Silver purchased Home Depot products impacted by the unlawful IEEPA tariffs through Home Depot's website and in-store at a brick-and-mortar location in Hillsborough County, New Hampshire. Absent the illegal price

increases implemented by Home Depot in response to the unlawful IEEPA tariffs, Plaintiff Silver would have paid less for these products.

11. **Plaintiff Anntwanette Jones** is a natural person and individual consumer who, at all times material hereto, was a citizen of New York. Plaintiff Jones purchased Home Depot products impacted by the unlawful IEEPA tariffs through Home Depot's website and in-store at a brick-and-mortar location in Erie County, NY. Absent the illegal price increases implemented by Home Depot in response to the unlawful IEEPA tariffs, Plaintiff Jones would have paid less for these products.

12. **Plaintiff Patricia Andros** is a natural person and individual consumer who, at all times material hereto, was a citizen of Pennsylvania. Plaintiff Andros purchased Home Depot products impacted by the unlawful IEEPA tariffs through Home Depot's website and in-store at a brick-and-mortar location in Alleghany County, Pennsylvania. Absent the illegal price increases implemented by Home Depot in response to the unlawful IEEPA tariffs, Plaintiff Andros would have paid less for these products.

13. **Plaintiff Meagan Cohen** is a natural person and individual consumer who, at all times material hereto, was a citizen of Texas. Plaintiff Cohen purchased Home Depot products impacted by the unlawful IEEPA tariffs through Home Depot's website. Absent the illegal price increases implemented by Home Depot in response to the unlawful IEEPA tariffs, Plaintiff Cohen would have paid less for these products.

**B. Defendants**

14. Defendant **Home Depot U.S.A., Inc.**, is a Delaware corporation with its U.S. headquarters and principal place of business in Atlanta, Georgia. On information and belief, Home Depot U.S.A., Inc. is one of the entities entitled to tariff refunds as the importer of record of Home Depot's goods and products.

15. Defendant **The Home Depot, Inc.,** is a Delaware corporation with its U.S. headquarters and principal place of business in Atlanta, Georgia. Defendant The Home Depot, Inc. is the parent of Home Depot U.S.A., Inc. On information and belief, The Home Depot, Inc., is

another entity entitled to tariff refunds as the importer of record of Home Depot's goods and products.

**JURISDICTION AND VENUE**

16. This Court has jurisdiction over the subject-matter of this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Classes (as defined herein) are more than $5,000,000.00 in the aggregate, exclusive of interest and costs.

17. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all claims alleged are part of the same case or controversy.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, at all times relevant to the Complaint, Plaintiff Neal resides here and a substantial part of the events giving rise to the claims, namely the purchase of tariffed goods occurred here. Further Defendants transact business, are found, or have agents in this District, and a substantial portion of the affected interstate trade and commerce described in this Complaint was carried out in this District.

19. This Court has personal jurisdiction over Defendants because, *inter alia*, Home Depot: (a) transacted business throughout the U.S., including in this District; (b) offered consumer products to Plaintiffs and the putative Classes throughout the U.S., including in this District; (c) had substantial contacts with the U.S., including in this District; or (d) engaged in conduct that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the U.S., including in this District.

20. The activities of Defendants, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on, the foreign and interstate commerce of the U.S.

## FACTUAL ALLEGATIONS

21. Home Depot is the world's largest home improvement retailer, selling products such as appliances, flooring, tools, paint, kitchen finishes, and numerous other products.[5] In the United States alone, Home Depot operates over 2,000 stores,[6] with more than 35,000 products in store and 1 million products online.[7] The Company reported approximately $164 billion in total sales in Fiscal Year 2025.[8]

## I. OVERVIEW OF THE IEEPA TARIFFS.

22. During the 2024 election campaign, then-candidate Trump vowed to impose steep tariffs on foreign-made goods. As president-elect, he repeated these vows.

23. During Home Depot's third-quarter 2024 earnings call, in the wake of the 2024 presidential election, Ted Decker, the Chief Executive Officer of Home Depot, warned that "[i]n general, the impact of tariffs will be shared by manufacturers, brands, retailers ***and consumers***[.]"[9] Decker conceded on the call, "there certainly will be an impact" on Home Depot and its prices due to the impending tariffs.[10]

24. In February 2025, the President began issuing a series of Executive Orders to impose tariffs on goods imported from most foreign countries, including Canada, Mexico, China, and other U.S. trading partners. The Executive Orders were premised on the IEEPA's authorization because of a purported national emergency over the U.S. trade deficit.

25. Under the authority of IEEPA, the President imposed tariffs as high as 145 percent on goods from China, and a baseline 10 percent tariff on nearly all imports to the U.S.

---

[5] *About Us*, Home Depot, https://corporate.homedepot.com/page/about-us (last visited July 28, 2026).

[6] C. Smith, *Home Depot Statistics (2026) — Store Count, Revenue, Transactions, Employees*, DMR (Feb. 22, 2026), https://expandedramblings.com/index.php/home-depot-statistics/.

[7] About Us, *supra* n.5.

[8] The Home Depot, Inc., Annual Report (Form 10-K) (Mar. 18, 2026), https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/2026/thd-annualreport-2025.pdf.

[9] *Trump Tariffs Loom Over Retail Earnings as Home Depot Points to Industry-Wide Impact*, MarketWatch (May 19, 2026), https://www.marketwatch.com/story/trump-tariffs-loom-over-retail-earnings-as-home-depot-points-to-industry-wide-impact-da193a5d.

[10] *Id*.

26. Experts predicted that the tariffs would significantly raise the prices of imported goods for U.S. consumers. According to the National Retail Federation, a retail trade group, the proposed 10 percent universal tariffs and 60 percent tariff on Chinese goods would reduce U.S. consumers' spending power by between $46 billion and $78 billion annually.[11]

27. On May 28, 2025, the CIT determined that the President "exceeded any authority" granted to him by the IEEPA in imposing these tariffs. The Federal Circuit Court of Appeals upheld the ruling in August 2025. On February 20, 2026, the U.S. Supreme Court invalidated all IEEPA-based tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026) (slip op. at 20).

28. The President subsequently issued an Executive Order terminating the IEEPA Tariffs.

29. On February 22, 2026, CBP, the federal entity responsible for collecting foreign duties, issued CSMS #67834313, announcing that it would halt the collection of all duties imposed pursuant to IEEPA at 12:00 a.m. E.T. on February 24, 2026.

30. While the IEEPA tariffs were in place, the CBP collected $30 billion in duty revenue in January 2026 alone, and more than $124 billion in total,[12] the overwhelming majority of which was passed on to U.S. consumers in the form of higher prices and/or reduced promotions.

## II. **HOME DEPOT'S RESPONSE TO THE IEEPA TARIFFS.**

31. Founded in 1978, Home Depot has grown to become the largest retail home improvement company in the world.[13] In Fiscal Year 2025, Home Depot total sales reached $164.7 billion.[14]

---

[11] *Estimated Impacts of Proposed Tariffs on Imports: Apparel, Toys, Furniture, Household Appliances, Footwear and Travel Goods*, National Retail Federation (Nov. 4, 2024), https://nrf.com/research/estimated-impacts-proposed-tariffs-imports-apparel-toys-furniture-household-appliances.

[12] J. Cox, *Tariff revenue soars more than 300% as U.S. awaits Supreme Court decision*, CNBC (Feb. 11, 2026) https://www.cnbc.com/2026/02/11/tariff-revenue-soars-more-than-300percent-as-us-awaits-supreme-court-decision.html

[13] About Us, *supra*, n. 5.

[14] Annual Report (Form 10-K), *supra*, n. 8.

32. Home Depot is a major importer of consumer goods into the U.S. Approximately 30 percent of Home Depot's products originate from China alone, subjecting all of said products to IEEPA tariffs.[15] Home Depot also maintains factories in, and sources products from, other countries subject to IEEPA tariffs, including Brazil, Cambodia, Ecuador, India, Indonesia, Israel, Mexico, Pakistan, Philippines, South Korea, Sri Lanka, Taiwan, Thailand, Turkey, and Vietnam.[16]

33. After the IEEPA tariffs were first announced, CFO McPhail represented at the May 20, 2025 investor call that Home Depot "intend[ed] to generally maintain [its] current pricing levels across our portfolio" because more than 50 percent of products are sourced domestically and "[b]ecause of our scale, the great partnerships we have with our suppliers and productivity that we continue to drive in our business."[17]

34. But that stance was reversed by the next investor call on August 19, 2025, when William Bastek, the Executive Vice President for Merchandising ("EVP Bastek") acknowledged that for products that are "imported goods, tariff rates are significantly higher today than they were when we spoke in May. So as you'd expect, there'll be some modest price movement in some categories . . . ."[18] EVP Bastek went on to acknowledge that, in addition to price increases, Home Depot has offset tariff pressures by reducing "promotional activity."[19]

35. In an interview with the Wall Street Journal shortly after the earnings call, CFO McPhail restated that price increases for imported consumer products had already been implemented, explaining "[f]or some imported goods, tariff rates are significantly higher today than

---

[15] Trump Tariffs Loom, *supra*, n. 11.

[16] *Compare*, Exec. Order No. 14,312, 90 Fed. Reg. 38,415 (July 2, 2025), *with* The Home Depot, Inc., *2023 Responsible Sourcing Report* (2023), https://corporate.homedepot.com/sites/default/files/2023-07/2023_Responsible_Sourcing_Report_Final.pdf.

[17] *Home Depot Doesn't Plan Tariff Price Hikes*, NBC News (May 20, 2026), https://www.nbcnews.com/business/economy/home-depot-doesnt-plan-tariff-price-hikes-rcna207898.

[18] The Home Depot, Inc., *Q2 2025 Earnings Call Transcript* (Aug. 12, 2025), https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/reports-and-presentations/quarterly-earnings/2025/hd-2q25-transcript-vf.pdf.

[19] *Id*. at 9, 15.

they were at this time last quarter. So as you would expect, there will be modest price movement in some categories . . . ."[20]

36. Anecdotal observations from consumers and price trackers suggest Home Depot quietly began raising its prices when the tariffs were implemented. Restated, as Home Depot began to pay IEEPA tariffs to the CBP for imported products, it promptly started passing on the tariff burden to consumers in the form of higher prices and/or reduced promotions.

37. For example, Research Group Bright Data tracked prices at Home Depot from the end of March through September 2025, noting that approximately 45 percent of appliances, 40 percent of plumbing products, 35 percent of flooring products, 34 percent of tools, 32 percent of building materials, 29 percent of hardware and kitchen products, and numerous other categories of Home Depot products had increased in price during that period.[21] Many of the products subject to these price increases are imported, suggesting the price increases were the result of increased tariff costs.

38. First-hand accounts from customers and employees corroborate that Home Depot raised prices in response to tariff costs. As early as April 17, 2025, customers observed "$5, 10, 100 price increases" across Home Depot shelves.[22]

39. Numerous additional Reddit threads from this period document customers' recognition of, and frustration at, these sudden increases. In one thread, a user described watching Home Depot employees raise prices on "entire rows of items."[23] In the same thread, another

---

[20] *Home Depot says it will raise some prices because of tariffs*, Yahoo Finance (May 20, 2026), https://finance.yahoo.com/news/home-depot-says-raise-prices-133009929.html.

[21] J. Burns, *Home Depot Tariff Price Increases, What Do the Numbers Look Like?*, Bright Data for Journalists (Sept. 15, 2025), https://datatellsthestory.substack.com/p/home-depot-tariff-price-increases.

[22]u/[Dry-Scholar5790] *Is Anyone Else Seeing the Huge Price Hike This [Week]?*, Reddit (Apr. 17, 2025), https://www.reddit.com/r/HomeDepot/comments/1k1nm1t/is_anyone_else_seeing_the_huge_price_hike_this/.

[23]u/[Huge-Specific1632], *About That Home Depot Rising Prices*, Reddit (Aug. 2025), https://www.reddit.com/r/agedlikemilk/comments/1mus6z9/about_that_home_depot_rising_prices/.

individual who purported to be a Home Depot employee at the time replied: "I was replacing price labels for weeks. Almost every time it was a price increase."[24]

40. A separate April 2025 thread focused on tool prices. One user reported: "I put [a Milwaukee socket tool] in my cart to watch so I know for sure the price was $45 a week or so ago. Now it is $50."[25] The same user suggested the price increase could be linked to IEEPA tariffs, noting, "I know those Milwaukee sockets are made in China."[26]

41. On December 9, 2025, Home Depot held its 2025 Investor Conference where EVP Bastek was asked "how [Home Depot] mitigated [tariffs]" levied on its inventory.[27] He replied, "[a]s we mentioned on a couple of our calls now, we have passed on some modest price increases . . . ."[28]

42. Then, on February 24, 2026, shortly after the *Learning Resources* decision, Home Depot held its earnings call for Q4 2025. On that call, EVP Bastek, noted that Home Depot was "mostly done with tariff-related pricing actions as it relates to the impacts back to April."[29]

43. At the next earnings call on May 19, 2026, Home Depot confirmed that it had raised prices in response to tariffs earlier than initially announced, as CFO McPhail acknowledged that the company would begin to lap "tariff driven price increases" that were "introduced in late Q1 of last year into Q2."[30]

---

[24] *Id.*

[25] u/[krustissimo], *Prices Going Up at Home Depot*, Reddit (Apr. 2025), https://www.reddit.com/r/MilwaukeeTool/comments/1k4rttf/prices_going_up_at_home_depot/.

[26] *Id.*

[27] The Home Depot, Inc., Investor Meeting Transcript (Dec. 9, 2025), https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/reports-and-presentations/the-home-depot-inc-hd-us-investor-conference.pdf.

[28] *Id.*

[29] The Home Depot, Inc., Q4 2025 Earnings Call Transcript (Feb. 24, 2026), https://ir.homedepot.com/~/media/Files/H/HomeDepot-IR/reports-and-presentations/quarterly-earnings/hd-4q25-transcript.pdf.

[30] Q1 2026 Earnings Transcript, *supra* n. 4.

44. Thus, as a direct result of Home Depot's tariff pass-through pricing, Plaintiffs and the putative Classes have paid more for tariffed goods than they would have absent the unlawful IEEPA tariffs-related price increases.

## III. <u>ANTICIPATED TARIFF REFUNDS.</u>

45. In the wake of the Supreme Court's decision in *Learning Resources*, thousands of importers filed cases in the CIT to recover tariff refunds from the government.

46. On March 4, 2026, Judge Richard Eaton ruled that "all importers of record" were "entitled to benefit" from the Supreme Court's ruling that struck down the IEEPA tariffs. *Atmus Filtration, Inc. v. United States*, No. 26-01259, Order at 1 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21. The Court ordered CBP to liquidate any and all unliquidated entries subject to IEEPA tariffs "without regard to IEEPA duties," and ordered that "[a]ny liquidated entries for which liquidation is not final shall be reliquidated without regard to IEEPA duties." *Id.* at 2–3.

47. On April 20, 2026, the CBP launched the first phase of the CAPE tool within the ACE Portal that allows for the processing of tariff refund requests. According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, by June 10, 2026, "approximately $94.94 billion in both potential and certified refunds have been accepted for processing in CAPE." Decl. of B. Lord ¶ 5, *Euro-Notions Fla., Inc.*, No. 25-00595, ECF No. 34. Approximately $49.1 billion in tariff refunds were distributed in June 2026, alone.[31]

48. On July 10, 2026, Mr. Lord provided an update to the Court, stating "approximately $121.75 billion in both potential and certified refunds have been accepted for processing in CAPE. Of this total amount, refunds (duties plus interest) of approximately $86.3 billion have been completed[.]" Decl. of B. Lord ¶ 5, *Euro-Notions Fla., Inc.*, No. 25-00595, ECF No. 45.

49. These refunds (plus interest) may only be issued to entitled importers of record, notwithstanding the fact that researchers observed a "full pass-through" of tariff costs to consumers. Indeed, state officials from around the country have expressed "grave concerns" about the tariff

---

[31] *US Refunded $4.9 Billion in Tariff Fees in June*, Yahoo Finance, https://finance.yahoo.com/economy/policy/articles/us-refunded-49-billion-tariff-231836371.html.

refund process, calling for transparency and accountability for consumers to recoup their payments.[32] To date, few companies have confirmed that they will return any tariff refunds to their customers.

50. As a result, this lawsuit seeks to ensure that Plaintiffs and the putative Classes recover monetary damages for the tariff overcharges they paid pursuant to the illegal IEEPA tariffs.

## CLASS ALLEGATIONS

51. Plaintiffs purchased Defendants' products at an inflated price due to illegal tariffs. Plaintiffs bring this action on behalf of themselves and those similarly situated to recover money wrongfully collected and to obtain appropriate relief, as permitted by law.

52. The relevant Classes are defined as:

> **California Class:** All persons in the State of California who purchased Home Depot products at inflated prices charged by Home Depot because of the unlawful IEEPA tariffs.
>
> **Michigan Class:** All persons in the State of Michigan who purchased Home Depot products at inflated prices charged by Home Depot because of the unlawful IEEPA tariffs.
>
> **New Hampshire Class:** All persons in the State of New Hampshire who purchased Home Depot products at inflated prices charged by Home Depot because of the unlawful IEEPA tariffs.
>
> **New York Class:** All persons in the State of New York who purchased Home Depot products at inflated prices charged by Home Depot because of the unlawful IEEPA tariffs.
>
> **Pennsylvania Class:** All persons in the State of Pennsylvania who purchased Home Depot products at inflated prices charged by Home Depot because of the unlawful IEEPA tariffs.
>
> **Texas Class:** All persons in the State of Texas who purchased Home Depot products at inflated prices charged by Home Depot because of the unlawful IEEPA tariffs.

53. Excluded from the Classes are Defendants, Defendants' subsidiaries, parents, successors, predecessors, and their officers, directors, affiliates, legal representatives, and employees, and any governmental entities, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

---

[32] A. Durkee, *Trump's Tariff Refund Process Sparks 'Grave Concerns' About Consumers Getting Money Back, State Treasurer Cohort Says*, Forbes (May 12, 2026), https://www.forbes.com/sites/alisondurkee/2026/05/12/trumps-tariff-refund-process-sparks-grave-concerns-about-consumers-getting-money-back-state-treasurer-cohort-says/.

54. Plaintiffs reserve the right to modify or amend the definition of the proposed Classes, or to include additional classes or subclasses, before or after the Court determines whether such certification is appropriate as discovery progresses.

55. **Ascertainability**: Class Members can be readily identified and notified in an administratively feasible manner using, among other information, Defendants' own records.

56. **Numerosity:** While Plaintiffs do not know the exact number of Class Members, the number is likely to be in the tens or hundreds of thousands for each of the Classes. Therefore, joinder of all members is impracticable.

57. **Commonality/Predominance:** There are multiple questions of law and fact common to the Classes. These questions predominate over questions that may affect individual Class Members, and include:

a. Whether Defendants passed on IEEPA tariff-related charges to Plaintiffs and the putative Classes;

b. The amount to which Plaintiffs and the putative Classes were overcharged for products because of the illegal tariffs;

c. Whether Defendants' retention of Plaintiffs and the putative Classes' payments used for illegal tariff costs is unjust;

d. Whether Defendants acted unfairly or deceptively by charging Plaintiffs and the putative Classes for illegal tariff costs; and

e. Whether Plaintiffs and the putative Classes are entitled to damages in the form of the amounts paid in increased prices that were attributable to the illegal tariffs.

58. **Typicality:** Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all members of the Classes, sustained damages arising from Defendants' wrongful conduct.

59. **Adequate Representation:** Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel that is experienced in litigating complex consumer protection class actions. Plaintiffs' counsel has the financial and legal resources to vigorously prosecute this action. Plaintiffs have no interests which conflict with those of the Classes.

60. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The harm suffered by individual class members is likely small compared to the burden of litigating this matter to redress the harm caused by Defendants' wrongful conduct. The prerequisites to maintaining a class action are met as Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate damages with respect to the Classes as a whole. The interests of justice would be well served by resolving the common disputes of potential Class Members in one forum. A class action provides economies of scale and of time, effort and expense. This action is manageable as a class action.

61. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might find Plaintiffs are entitled to reimbursement, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Classes even where certain Class Members are not parties to such actions.

## CAUSES OF ACTION

### COUNT I

**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**On Behalf of the California Plaintiffs and the California Class**

62. Plaintiffs Neal, Camaioni, and Moncayo (the "California Plaintiffs") incorporate the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

63. The California Plaintiffs bring this claim on behalf of themselves and on behalf of the California Class.

64. Defendants are a business entity that, at all relevant times, sold goods and/or services to California Plaintiffs and the California Class and set prices charged to Plaintiff and the California Class.

65. The Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq*., prohibits any unlawful, unfair, or fraudulent business act or practice.

66. The California Plaintiffs and the California Class have suffered injury in fact and have lost money or property because of Defendants' conduct within the meaning of Cal. Bus. &

Prof. Code § 17204. Specifically, the California Plaintiffs and the California Class paid increased prices charged by Defendants that were imposed to recoup costs and duties associated with tariffs implemented under IEEPA, thereby losing money in the amount of the overcharges paid.

67. Plaintiffs' economic injury is concrete and particularized, is traceable to Defendants' price increases and related practices and is redressable through restitution and injunctive relief under the UCL.

68. Defendants have engaged in "unlawful" business acts or practices within the meaning of the UCL by unlawfully increasing prices for the goods and products sold in its stores due to IEEPA duties it purportedly owed to the U.S. government, which were later found to have been illegal.

69. Further, Defendants collected and retained tariff-related price increases from the California Plaintiffs and the California Class while simultaneously participating in and supporting litigation against the federal government to recover those same tariff-related costs, creating the effect of a double recovery.

70. Defendants' conduct violates established legal policies prohibiting unjust and duplicative recovery and requiring truthful, non-misleading pricing practices and restitution when retention would otherwise result from overlapping recoveries. Defendants' double recovery through raised prices and refunds from the federal government constitutes an unlawful business practice.

71. Defendants have engaged in "unfair" business acts or practices within the meaning of the UCL, by imposing price increases on the California Plaintiffs and the California Class to recoup IEEPA-based tariff costs, pursuing and recovering those same tariff-related costs from the federal government, failing to refund the California Plaintiffs and the California Class the price increases previously collected as Defendants recover the same amounts through refunds from the federal government.

72. This substantial harm to consumers, including the California Plaintiffs, in being charged increased prices while allowing Defendants a double recovery of tariff funds, outweighs any purported benefit.

73. Defendants' practices offend public policy and substantially injure consumers because they shifted payments of illegal tariffs to consumers while setting up Home Depot for a substantial profit opportunity, combining both consumer payments and government refunds for maximum profit.

74. As set forth in detail above, Defendants have engaged in "fraudulent" business acts or practices within the meaning of the UCL, by making representations, omissions, and/or practices likely to deceive reasonable consumers regarding the nature, purpose, and disposition of the tariff-related price increases.

75. A reasonable consumer would be deceived by Defendants' omissions and practices. The California Plaintiffs and the California Class were likely to be, and were, misled into paying increased prices under the belief that such increases were necessary and would not result in a double recovery to Defendants.

76. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent acts and practices, the California Plaintiffs and the California Class paid increased prices and suffered economic injury in the form of overcharges and loss of money or property. Plaintiffs would not have paid, or would have paid less than, the tariff-related component of the price had Defendants not engaged in the challenged conduct.

77. Defendants' conduct is ongoing and/or has continuing effects, including the continued retention of tariff-related amounts collected from the California Plaintiffs and the California Class and the previous and continued collection of duplicative recoveries from federal refund proceeds without provision for restitution, credits, or other consumer redress, absent Court intervention.

78. Additionally, the California Plaintiffs and the California Class seek restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 177 (2000) (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."); *Gutierrez v. Wells Fargo Bank, NA*, 589 F. App'x 824, 827 (9th Cir. 2014) (same);

*Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 661 (1993) ("In a suit arising under Business and Professions Code section 17200 et seq., the court 'is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action.'").

79. The California Plaintiffs and the California Class seek all monetary and nonmonetary relief allowed by law, including restitution stemming from Defendants' fraudulent business practices; declaratory relief, reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief and other appropriate equitable relief.

**COUNT II**
**Unjust Enrichment**
**On Behalf of the California Plaintiffs and the California Class**

80. The California Plaintiffs incorporate the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

81. The California Plaintiffs bring these claims on behalf of themselves and the California Class.

82. Defendants unlawfully increased prices and/or reduced promotions on consumer products purchased by the California Plaintiffs and the California Class due to unlawful tariffs imposed by the Trump Administration under the IEEPA.

83. The California Plaintiffs and the California Class conferred a benefit upon Defendants when paying these unlawful increased prices to Defendants due to illegal import tariffs.

84. Defendants are participating in litigation against the federal government to recover the same tariff related costs Defendants collected from the California Plaintiffs and the California Class and have to date received refunds for duties paid under the IEEPA.

85. Home Depot's recovery from both the federal government and the California Plaintiffs and the California Class would constitute a double recovery.

86. It would be unjust and unfair for Defendants to retain tariff surcharges in the form of increased prices and/or reduced promotions to cover the expense of the subject tariffs because those tariffs were illegal. If the California Plaintiffs and the California Class had known that the costs for the products purchased were unlawfully higher due to illegal tariffs, then the California Plaintiffs and the California Class would have expected remuneration from Defendants.

87. Defendants' unjust and unfair conduct was the proximate cause, and a substantial factor, in causing the California Plaintiffs' and the California Class's losses and damages.

88. Defendants should not be permitted to retain the costs passed on to the California Plaintiffs and the California Class in the form of higher prices and/or reduced promotions due to the illegal tariffs, the exact amount of which will be proven at trial.

**COUNT III**
**Money Had And Received**
**On Behalf of the California Plaintiffs and California Class**

89. The California Plaintiffs incorporate the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

90. Home Depot increased prices and/or reduced promotions for the purpose of repaying itself for the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on imported goods.

91. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization.

92. The money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belongs to the California Plaintiffs and the California Class.

93. Defendants have not returned the money.

94. Home Depot should not be permitted to retain the funds the California Plaintiffs and the California Class paid above and beyond what they would have absent the IEEPA tariffs. The money, the amount of which will be proven at trial, belongs to the California Plaintiffs and the California Class, and Home Depot is obligated to return it. Restated, Home Depot received money from the California Plaintiffs and the California Class in the form of higher prices and/or reduced promotions, proximately caused by the pass-through of IEEPA tariff costs.

95. The California Plaintiffs and the California Class seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

**COUNT IV**
**Violation of Michigan's Consumer Protection Act**
**Mich. Comp. Laws §§ 445.901, *et seq.***
**On Behalf of Plaintiff Ebenhoeh and the Michigan Class**

96. Plaintiff Ebenhoeh incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

97. Plaintiff Ebenhoeh brings this claim on behalf of herself and the Michigan Class.

98. Plaintiff Ebenhoeh and the Michigan Class members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

99. Home Depot is a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

100. Home Depot's actions, as set forth above, occurred in the conduct of trade or commerce.

101. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including: "(c) Representing that goods or services have ... characteristics ... that they do not have;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1). Home Depot participated in unfair, unconscionable, or deceptive methods, acts, or practices that violated the Michigan CPA.

102. Home Depot participated in unfair, unconscionable, or deceptive methods, acts, or practices in connection with trade or commerce by charging Plaintiff Ebenhoeh and the Michigan Class unfairly increased prices for the goods and products sold in its stores due to IEEPA duties it purportedly owed to the U.S. government, which were later found to have been illegal.

103. As alleged herein, Defendants' shifting of those illegal tariff costs to consumers via increased prices is an unfair, deceptive, and/or unconscionable act under Michigan CPA. Plaintiff Ebenhoeh and the members of the Michigan Class paid more than the value they received.

104. Home Depot knew or should have known that their conduct was in violation of the Michigan CPA.

105. Defendants' unfair, deceptive, and/or unconscionable conduct was a substantial factor and proximate cause of Plaintiff Ebenhoeh's and the Michigan Class's injuries.

106. Plaintiff Ebenhoeh and the Michigan Class seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 per each Michigan Plaintiff; and reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp. Laws § 445.911.

**COUNT V**
**Unjust Enrichment**
**On Behalf of Plaintiff Ebenhoeh and the Michigan Class**

107. Plaintiff Ebenhoeh incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

108. Plaintiff Ebenhoeh brings this claim on behalf of herself and the Michigan Class.

109. Defendants unlawfully increased prices and/or reduced promotions on consumer products purchased by Plaintiff Ebenhoeh and the Michigan Class due to unlawful tariffs imposed by the Trump Administration under the IEEPA.

110. Plaintiff Ebenhoeh and the Michigan Class conferred a benefit upon Defendants when paying these unlawful increased prices to Defendants due to illegal import tariffs.

111. Defendants are participating in litigation against the federal government to recover the same tariff related costs Defendants collected from Plaintiff Ebenhoeh and the Michigan Class and have to date received refunds for duties paid under the IEEPA.

112. Home Depot's recovery from both the federal government and Plaintiff Ebenhoeh and the Michigan Class would constitute a double recovery as they receive refunds for the tariffs paid by Plaintiff Ebenhoeh and the Michigan Class.

113. It would be inequitable for Defendants to retain tariff surcharges in the form of increased prices and/or reduced promotions to cover the expense of the subject tariffs because those tariffs were illegal. If Plaintiff Ebenhoeh and the Michigan Class had known that the costs for the products purchased were unlawfully higher due to illegal tariffs, then Plaintiff Ebenhoeh and the Michigan Class would have expected remuneration from Defendants.

114. Defendants' unjust and unfair conduct was the proximate cause, and a substantial factor, in causing Plaintiff Ebenhoeh and the Michigan Class's losses and damages.

115. Defendants should not be permitted to retain the costs passed on to Plaintiff Ebenhoeh and the Michigan Class in the form of higher prices and/or reduced promotions due to the illegal tariffs, the exact amount of which will be proven at trial.

## COUNT VI
**Money Had And Received**
**On Behalf of Plaintiff Ebenhoeh and the Michigan Class**

116. Plaintiff Ebenhoeh incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

117. Plaintiff Ebenhoeh brings this claim on behalf of herself and the Michigan Class.

118. Home Depot increased prices and/or reduced promotions for the purpose of repaying itself for the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on imported goods.

119. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization.

120. The money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiff Ebenhoeh and the Michigan Class.

121. Defendants have not returned the money.

122. Home Depot should not be permitted to retain the funds Plaintiff Ebenhoeh and the Michigan Class paid above and beyond what they would have absent the IEEPA tariffs. The money, the amount of which will be proven at trial, belongs to Plaintiff Ebenhoeh and the Michigan Class, and Home Depot is obligated to return it. Restated, Home Depot received money from Plaintiff

Ebenhoeh and the Michigan Class in the form of higher prices and/or reduced promotions, proximately caused by the pass-through of IEEPA tariff costs.

123. Plaintiff Ebenhoeh and the Michigan Class seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

**COUNT VII**
**Violation of New Hampshire's Consumer Protection Act ("CPA")**
**N.H. Rev. Stat. §§ 358-A:1, *et seq.***
**On Behalf of Plaintiff Silver and the New Hampshire Class**

124. Plaintiff Silver incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

125. Plaintiff Silver brings this claim on behalf of herself and the New Hampshire Class.

126. The New Hampshire Consumer Protection Act, N.H. Rev. Stat. §§ 358-A:1, *et seq.*, makes it unlawful to engage in unfair or deceptive acts or business practices in the conduct of any trade or commerce within the state.

127. Defendant qualifies as a "person" engaged in "trade or commerce" within the meaning of the CPA. Defendants' acts and practices occurred in the conduct of trade or commerce and affected consumers within the State of New Hampshire.

128. As alleged herein, Defendants engaged in unfair and deceptive trade practices in connection with trade or commerce by charging Plaintiff Silver and the New Hampshire Class unlawfully increased prices for the goods and products sold in its stores due to IEEPA duties it purportedly owed to the U.S. government, which were later found to have been illegal.

129. As alleged herein, Defendants' shifting of those illegal tariff costs to consumers in the form of increased prices is an unfair, deceptive act or practice under the CPA. Plaintiff Silver and the members of the New Hampshire Class paid more than the value they received.

130. As alleged herein, Defendants have engaged in deceptive business practices by making representations or continuing practices likely to deceive reasonable consumers regarding the nature, purpose, and disposition of the tariff-related price increases.

131. A reasonable consumer would be deceived by Defendants' misrepresentations and practices. Plaintiff Silver and the New Hampshire Class were likely to be, and were, misled into paying increased prices under the belief that such increases were necessary and would not result in a double recovery to Defendants.

132. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff Silver and the New Hampshire Class paid increased prices and suffered economic injury in the form of overcharges and loss of money or property.

133. Plaintiff Silver and the New Hampshire Class seek relief under N.H. Rev. Stat. § 358-A:10, including, but not limited to injunctive relief, damages, treble damages, and attorneys' fees and costs.

**COUNT VIII**
**Unjust Enrichment**
**On Behalf of Plaintiff Silver and the New Hampshire Class**

134. Plaintiff Silver incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

135. Plaintiff Silver brings this claim on behalf of herself and the New Hampshire Class.

136. Defendants unlawfully increased prices and/or reduced promotions on consumer products purchased by Plaintiff Silver and the New Hampshire Class due to unlawful tariffs imposed by the Trump Administration under the IEEPA.

137. Plaintiff Silver and the New Hampshire Class conferred a benefit upon Defendants when paying these unlawful increased prices to Defendants due to illegal import tariffs.

138. Defendants are participating in litigation against the federal government to recover the same tariff related costs Defendants collected from Plaintiff Silver and the New Hampshire Class and have to date received refunds for duties paid under the IEEPA.

139. It would be wrongful for Defendants to retain tariff surcharges in the form of increased prices and/or reduced promotions to cover the expense of the subject tariffs because those tariffs were illegal. In recovering tariff costs from the federal government, Home Depot is receiving refunds for tariffs paid by Plaintiff Silver and the New Hampshire Class. If Plaintiff Silver and the New Hampshire Class had known that the costs for the products purchased were unlawfully higher

due to illegal tariffs, then Plaintiff Silver and the New Hampshire Class would have expected remuneration from Defendants.

140. Defendants' unjust and unfair conduct was the proximate cause, and a substantial factor, in causing Plaintiff Silver and the New Hampshire Class's losses and damages.

141. Defendants should not be permitted to retain the costs passed on to Plaintiff Silver and the New Hampshire Class in the form of higher prices and/or reduced promotions due to the illegal tariffs, the exact amount of which will be proven at trial.

## COUNT IX
## Money Had And Received
## On Behalf of Plaintiff Silver and the New Hampshire Class

142. Plaintiff Silver incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

143. Plaintiff Silver brings this claim on behalf of herself and the New Hampshire Class.

144. Home Depot increased prices and/or reduced promotions for the purpose of repaying itself for the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on imported goods.

145. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization.

146. The money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiff Silver and the New Hampshire Class.

147. Defendants have not returned the money.

148. Home Depot should not be permitted to retain the funds Plaintiff Silver and the New Hampshire Class paid above and beyond what they would have absent the IEEPA tariffs. The money, the amount of which will be proven at trial, belongs to Plaintiff Silver and the New Hampshire Class, and Home Depot is obligated to return it. Restated, Home Depot received money from Plaintiff Silver and the New Hampshire Class in the form of higher prices and/or reduced promotions, proximately caused by the pass-through of IEEPA tariff costs.

149. Plaintiff Silver and the New Hampshire Class seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

**COUNT X**
**Violation of New York's Consumer Protection Statute**
**N.Y. Gen. Bus. Law § 349**
**On Behalf of Plaintiff Jones and the New York Class**

150. Plaintiff Jones incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

151. New York General Business Law § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

152. Plaintiff Jones brings this claim on behalf of herself and on behalf of the New York Class.

153. Defendants controlled the marketing, and sales of its products from its multiple brick and mortar store locations in the State of New York. Plaintiff Jones, the New York Class, and Defendants are "persons," within the meaning of GBL § 349.

154. Home Depot products were directly offered to the public for sale and, thus, were sold in the "conduct of any business, trade or commerce" within the meaning of GBL § 349.

155. Defendants engaged in material, deceptive, consumer-oriented acts in the conduct of its business in the state of New York that injured Plaintiff Jones and the New York Class.

156. As alleged herein, Defendants engaged in unfair and deceptive trade practices in connection with trade or commerce by charging Plaintiff Jones and the New York Class unlawfully increased prices for the goods and products sold in its stores due to IEEPA duties it purportedly owed to the U.S. government, which were later found to have been illegal.

157. As alleged herein, Defendants' shifting of those illegal tariff costs to consumers via increased prices is an unfair, deceptive consumer-oriented act under GBL § 349. Plaintiff Jones and the members of the New York Class paid more than the value they received.

158. As alleged herein, Defendants have engaged in deceptive business practices by making representations or continuing practices likely to deceive reasonable consumers regarding the nature, purpose, and disposition of the tariff-related price increases.

159. A reasonable consumer would be deceived by Defendants' misrepresentations and practices. Plaintiff Jones and the New York Class were likely to be, and were, misled into paying increased prices under the belief that such increases were necessary and would not result in a double recovery to Defendants.

160. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff Jones and the New York Class paid increased prices and suffered economic injury in the form of overcharges and loss of money or property.

161. Plaintiff Jones and the New York Class seek relief under GBL § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorneys' fees and costs.

**COUNT XI**
**Unjust Enrichment**
**On Behalf of Plaintiff Jones and the New York Class**

162. Plaintiff Jones incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

163. Plaintiff Jones brings this claim on behalf of herself and on behalf of the New York Class.

164. Defendants unlawfully increased prices and/or reduced promotions on consumer products purchased by Plaintiff Jones and the New York Class due to unlawful tariffs imposed by the Trump Administration under the IEEPA.

165. Plaintiff Jones and the New York Class conferred a benefit upon Defendants when paying these unlawful increased prices to Defendants due to illegal import tariffs.

166. It would be unjust and unfair for Defendants to retain tariff surcharges in the form of increased prices and/or reduced promotions to cover the expense of the subject tariffs because those tariffs were illegal. If Plaintiff Jones and the New York Class had known that the costs for

the products purchased were unlawfully higher due to illegal tariffs, then Plaintiff Jones and the New York Class would have expected remuneration from Defendants.

167. Defendants' unjust and unfair conduct was the proximate cause, and a substantial factor, in causing Plaintiff Jones and the New York Class's losses and damages.

168. Defendants should not be permitted to retain the costs passed on to Plaintiff Jones and the New York Class in the form of higher prices and/or reduced promotions due to the illegal tariffs, the exact amount of which will be proven at trial.

**COUNT XII**
**Money Had And Received**
**On Behalf of Plaintiff Jones and the New York Class**

169. Plaintiff Jones incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

170. Plaintiff Jones brings this claim on behalf of herself and the New York Class.

171. Home Depot increased prices and/or reduced promotions for the purpose of repaying itself for the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on imported goods.

172. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization.

173. The money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiff Jones and the New York Class.

174. Defendants have not returned the money.

175. Home Depot should not be permitted to retain the funds Plaintiff Jones and the New York Class paid above and beyond what they would have absent the IEEPA tariffs. The money, the amount of which will be proven at trial, belongs to Plaintiff Jones and the New York Class, and Home Depot is obligated to return it. Restated, Home Depot received money from Plaintiff Jones and the New York Class in the form of higher prices and/or reduced promotions, proximately caused by the pass-through of IEEPA tariff costs.

176. Plaintiff Jones and the New York Class seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

**COUNT XIII**
**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201**
**On Behalf of Plaintiff Andros and the Pennsylvania Class**

177. Plaintiff Andros incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

178. Plaintiff Andros asserts this Count on behalf of herself and the Pennsylvania Class pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* ("UTPCPL"), which makes it unlawful to engage in unfair or deceptive acts or practices in connection with trade or commerce.

179. Plaintiff Andros and the Pennsylvania Class purchased the Home Depot products at issue primarily for personal, family, or household purposes within the meaning of 73 P.S. § 201-9.2(a).

180. Defendants engaged in unfair and deceptive trade practices in connection with trade or commerce by charging Plaintiff Andros and the Pennsylvania Class unfairly increased prices for the goods and products sold in its stores due to IEEPA duties it purportedly owed to the U.S. government, which were later found to have been illegal.

181. As alleged herein, Defendants' shifting of those illegal tariff costs to consumers via increased prices is an unfair, deceptive, and/or unconscionable act under 73 P.S. §§201. Plaintiff Andros and the members of the Pennsylvania Class paid more than the value they received.

182. Defendants' unfair, deceptive, and/or unconscionable conduct was a substantial factor and proximate cause of Plaintiff Andros and the Pennsylvania Class's injuries.

183. Plaintiff Andros and the Pennsylvania Class have the right to bring this action on their own behalf under 73 P.S. § 201-9.2(a).

184. As a result of Defendants' violations of the UTPCPL, Plaintiff Andros and the Pennsylvania Class seek actual damages, treble damages, reasonable attorneys' fees and costs, and

any such other relief the Court may deem necessary to prevent Defendants from engaging in unlawful conduct under 73 P.S. § 201-9.2(a).

**COUNT XIV**
**Unjust Enrichment**
**On Behalf of Plaintiff Andros and the Pennsylvania Class**

185. Plaintiff Andros incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

186. Plaintiff Andros brings this claim on behalf of herself and the Pennsylvania Class.

187. Plaintiff Andros and the Pennsylvania Class conferred a monetary benefit on Defendants when they purchased products from Defendants at increased prices due to the unlawful IEEPA tariffs imposed by the Administration that Defendants passed through to their customers.

188. Defendants appreciated the monetary benefits that Plaintiff Andros and the Pennsylvania Class conferred when they purchased products at higher prices due to the IEEPA tariffs, and Defendants profited from passing the tariffs on to their customers.

189. Despite the IEEPA tariffs being declared unlawful, Defendants have not refunded Plaintiff Andros and the Pennsylvania Class the overcharges they paid while the tariffs were in place, nor have Defendants made any indication that they intend to refund Plaintiff Andros and the Pennsylvania Class.

190. It would be unjust for Defendants to retain the overcharges paid by Plaintiff Andros and the Pennsylvania Class because these overcharges comprise tariff expenses that Defendants passed along to their customers, and these tariffs were illegal.

191. Plaintiff Andros and the Pennsylvania Class would have expected Defendants to refund the overcharges once the tariffs were invalidated.

192. Plaintiff Andros and the Pennsylvania Class suffered injury as a direct and proximate result of Defendants' decision to keep the unlawful tariff overcharges they passed along to Plaintiffs and the putative Class.

193. Defendants should not be permitted to retain the benefits in the form of higher prices Plaintiff Andros and the Pennsylvania Class paid because of the illegal tariffs. Plaintiff Andros and

the Pennsylvania Class therefore seek damages for the benefits conferred upon Home Depot in the form of their IEEPA tariff payments, the exact amount of which will be proven at trial.

**COUNT XV**
**Money Had And Received**
**On Behalf of Plaintiff Andros and the Pennsylvania Class**

194. Plaintiff Andros incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

195. Plaintiff Andros brings this claim on behalf of herself and the Pennsylvania Class.

196. Defendants increased prices of their goods to pass along the costs of the IEEPA tariffs paid to CBP as an importer of those goods.

197. The Supreme Court has since determined that the IEEPA tariffs were unlawful.

198. The money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiff Andros and the Pennsylvania Class.

199. Defendants have not refunded the unlawful overcharges to Plaintiff Andros and the Pennsylvania Class.

200. Defendants should not be permitted to retain the amounts Plaintiff Andros and the Pennsylvania Class paid above and beyond what they would have paid for the same goods absent the IEEPA tariffs. The money, the amount of which will be proven at trial, belongs to Plaintiffs and the Class, and Home Depot is obligated to return it. Restated, Home Depot received money from Plaintiff Andros and the Pennsylvania Class in the form of higher prices, proximately caused by the pass-through of IEEPA tariff costs.

201. Plaintiff Andros and the Pennsylvania Class seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

**COUNT XVI**
**Money Had And Received**
**On Behalf of Plaintiff Cohen and the Texas Class**

202. Plaintiff Cohen incorporates the foregoing allegations in paragraphs 1 to 61 of this complaint as if fully set forth herein.

203. Plaintiff Cohen brings this claim on behalf of herself and the Texas Class.

204. Home Depot increased prices and/or reduced promotions for the purpose of repaying itself for the IEEPA tariffs it had advanced, as the importer of record, to CBP as duties on imported goods.

205. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization.

206. Defendants unlawfully increased prices and/or reduced promotions on consumer products purchased by Plaintiff Cohen and the Texas Class due to unlawful tariffs imposed by the Trump Administration under the IEEPA.

207. Plaintiff Cohen and the Texas Class conferred a benefit upon Defendants when paying these unlawful increased prices to Defendants due to illegal import tariffs.

208. Defendants are participating in litigation against the federal government to recover the same tariff related costs Defendants collected from Plaintiff Cohen and the Texas Class and have to date received refunds for duties paid under the IEEPA.

209. The money that consumers paid above and beyond what they would have paid absent the IEEPA tariffs belonged to Plaintiff Cohen and the Texas Class.

210. Defendants have not returned the money.

211. Home Depot's recovery from both the federal government and Plaintiff Cohen and the Texas Class would constitute a double recovery as they receive refunds for the tariffs paid by Plaintiff Cohen and the Texas Class.

212. Home Depot should not be permitted to retain the funds Plaintiff Cohen and the Texas Class paid above and beyond what they would have absent the IEEPA tariffs. The money, the amount of which will be proven at trial, belongs to Plaintiff Cohen and the Texas Class, and Home Depot is obligated to return it. Restated, Home Depot received money from Plaintiff Cohen and the Texas Class in the form of higher prices and/or reduced promotions, proximately caused by the pass-through of IEEPA tariff costs.

213. Plaintiff Cohen and the Texas Class seek all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and members of the Classes as follows:

A. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Classes and Plaintiffs' attorneys as Class Counsel;

B. For an order declaring that Defendants' conduct violates the statutes referenced herein;

C. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

D. For compensatory, statutory, treble, and punitive damages, as available, in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED: August 11, 2026

By: /s/ *Laurence D. King*
Laurence D. King

Laurence D. King (SBN 206423)
Blair E. Reed (SBN 316791)
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email: *lking@kaplanfox.com*
*breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*Pro Hac Vice* forthcoming)
Donald R. Hall (*Pro Hac Vice* forthcoming)
Hae Sung Nam (*Pro Hac Vice* forthcoming)
Aaron Schwartz (*Pro Hac Vice* forthcoming)
Matthew Lindenmuth (*Pro Hac Vice* forthcoming)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
Email: *ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*hnam@kaplanfox.com*
*aschwartz@kaplanfox.com*
*mlindenmuth@kaplanfox.com*

*Attorneys for Plaintiffs and the Proposed Classes*