**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| LAUREN WOLF-BOND and JEFFREY WARD and, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>WALMART INC.,<br><br>Defendant. | Case No.: 4:26-cv-1274<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Lauren Wolf-Bond ("Wolf") and Jeffrey Ward ("Ward") (together, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through undersigned counsel, bring this Class Action Complaint against Defendant Walmart Inc. ("Defendant" or "Walmart"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

## NATURE OF THE ACTION

1. This class action concerns Defendant's practice of increasing consumer prices in response to tariffs imposed pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, et seq. Specifically, Defendant passed the costs associated with the unlawful IEEPA tariffs on to Plaintiffs and the putative class (collectively, "Purchasers") through increased prices, causing Purchasers to pay more for Defendant's products than they otherwise would have paid. Consequently, Purchasers paid inflated sums for Defendant's products while Defendant simultaneously reaped a massive financial benefit by securing hundreds of millions of dollars in federal tariff refunds.

2. Walmart is a retailer of groceries, consumables, and general merchandise, operating retail stores, warehouse clubs, and eCommerce platforms. Walmart reported total revenues of $713.2 billion for the fiscal year ended January 31, 2026, of which $706.4 billion was net sales.[1] It operates 4,611 Walmart stores in the United States, together with 601 Sam's Club locations, for a total of 5,212 United States retail units.[2] Each week, Walmart serves approximately 280 million customers who visit more than 10,900 stores in 19 countries and its eCommerce websites and mobile applications.[3]

3. This dispute centers on Walmart's conduct in passing unlawful tariff costs on to consumers and subsequently seeking and obtaining reimbursement of those same tariff payments from the government. Under 19 U.S.C. §§ 1484 and 1505, the importer of record is the party entitled to seek a refund of duties later determined to have been unlawfully collected. Walmart, and not its customers, is the importer of record. Walmart passed the cost of those duties on to consumers through increased prices, requiring Purchasers to bear the economic burden of the tariffs. Although Walmart has recovered the tariff payments from the government, Purchasers, who bore those payments in economic terms, have recovered nothing.[4]

---

[1] Walmart Inc., Annual Report (Form 10-K) for the fiscal year ended January 31, 2026, at 6, https://www.sec.gov/Archives/edgar/data/104169/000010416926000055/wmt-20260131.htm (last visited October 2, 2026) ("Walmart Inc. 2026 Annual Report Form 10-K").

[2] *Id*. at 7–8.

[3] *Id*. at 6.

[4] *See* Walmart Inc., Quarterly Report (Form 10-Q) for the quarterly period ended April 30, 2026, Item 2, Management's Discussion and Analysis, https://www.sec.gov/Archives/edgar/data/104169/000010416926000102/wmt-20260430.htm (last visited October 2, 2026)("Walmart Inc., April 2026 Quarterly Report Form 10-Q"); Walmart Inc., Quarterly Report (Form 10-Q) for the quarterly period ended July 31, 2026, Note 5, Contingencies, https://www.sec.gov/Archives/edgar/data/104169/000010416926000154/wmt-20260731.htm (last visited October 2, 2026) ("Walmart Inc., July 2026 Quarterly Report Form 10-Q") Nick Lichtenberg, *Goldman Sachs doubles down on tariff research that infuriated Trump, saying average Americans will bear two-thirds of the costs*, FORTUNE (Aug. 13, 2025),

4. Following the Supreme Court's landmark decision invalidating all IEEPA-based tariffs as unauthorized,[5] thousands of companies have sought recovery of IEEPA tariff payments through proceedings before the U.S. Court of International Trade ("CIT"), and the CIT has determined that eligible importers may receive refunds, together with applicable interest, for unlawfully collected tariff amounts. In addition, on April 20, 2026, U.S. Customs and Border Protection ("CBP") implemented the Consolidated Administration and Processing of Entries ("CAPE"), which permits importers of record to submit and process requests for refunds of IEEPA tariffs.[6]

5. As of July 10, 2026, approximately $121.75 billion in refund claims had been accepted for processing, and approximately $86.3 billion had been completed and sent to the U.S. Department of the Treasury for disbursement.[7] Walmart is a direct beneficiary of these refunds.

6. In its Quarterly Report on Form 10-Q for the quarterly period ended July 31, 2026, Walmart disclosed that it "received approximately $2.9 billion in tariff refunds, primarily in the Walmart U.S. segment, which were recorded as a reduction to cost of sales and represent substantially all of the refunds requested by the Company."[8] On the Company's August 20, 2026 earnings call, Executive Vice President and Chief Financial Officer John David Rainey ("CFO

---

https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/ (last visited October 2, 2026).

[5] *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026).

[6] *International Emergency Economic Powers Act (IEEPA) Duty Refunds*, U.S. CUSTOMS & BORDER PROT., https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds (last visited October 2, 2026).

[7] *Tariff Refunds Hit $86 Billion Paid-June's $49B Surge and Who's Still Waiting*, TariffsTool (July 14, 2026) https://www.tariffstool.com/guides/tariff-refunds-86-billion-paid-june-surge-2026 (last visited October 2, 2026).

[8] Walmart Inc., July 2026 Quarterly Report Form 10-Q, Note 5, Contingencies, at 13. https://www.sec.gov/Archives/edgar/data/104169/000010416926000154/wmt-20260731.htm (last visited October 2, 2026).

Rainey") stated that Walmart had been "eligible for approximately $2.9 billion of tariff refunds" and that "[t]o-date, we've received substantially all of these tariff refunds."[9]

7. Walmart has not refunded, and has not committed to refund, the tariff-related overcharges to the Purchasers who paid them during the Class Period. Walmart has instead stated that a significant portion of the refund proceeds was "invested into customer-focused initiatives during the current quarter, primarily through price investment and other cost mitigation strategies."[10] Those price investments are available prospectively to any person who shops at Walmart after the refunds were received. Purchasers, who bore the economic burden of the unlawful duties, receive nothing on account of those past purchases.

8. This action seeks to recover monetary damages on behalf of Purchasers for the unlawful tariff overcharges they paid as a result of Walmart's pass-through of the IEEPA tariffs. Accordingly, Purchasers seek damages representing the amounts by which Walmart's prices were increased to account for the unlawful tariff costs. Purchasers further seek interest running both before and after judgment, the costs of suit, an award of attorneys' fees, and whatever additional relief the Court concludes is warranted.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs. The proposed Class comprises more than 100 members. At least

---

[9] Walmart Inc., Q2 FY2027 Earnings Call Transcript (Aug. 20, 2026), https://stock.walmart.com/_assets/_921ff28c537145729fbc2553b7f43fac/walmart/db/938/9996/transcript_management_call/Earnings+Transcript+(FY27+Q2).pdf (last visited October 2, 2026) ("Walmart Inc., Q2 FY2027 Earnings Call Transcript").

[10] Walmart Inc., July 2026 Quarterly Report Form 10-Q, Item 2, Management's Discussion and Analysis, at 17.

one member of the Class is a citizen of a state different from Defendant's state of citizenship, and therefore minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

10. This Court has personal jurisdiction over Walmart because it conducts continuous and systematic business in the state of Texas, ships goods to and from Texas on a daily basis, maintains operational facilities and employees in Texas, and collected the unlawful IEEPA tariff surcharges from Wolf and Purchasers within this State and District.

11. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and misrepresentations giving rise to Wolf's claims occurred in this District. Defendant has marketed, advertised, and made available for sale products subject to IEEPA tariffs within this District.

## PARTIES

12. Plaintiff Lauren Wolf is a citizen and resident of the State of Texas, residing in Fort Worth, Texas. During the Class Period, Plaintiff Wolf purchased products, including grocery items and baby products, from Walmart on at least seven separate occasions, totaling more than $750, through online purchases on walmart.com delivered from Walmart stores, and through in-store purchases at Walmart's Hurst, Texas store.[11] Wolf paid a higher price for these products than she would have paid but for Defendant's pass-through of the unlawful IEEPA tariff costs. Wolf shops at Walmart approximately one to three times per month, primarily for everyday necessities such as groceries and baby items. Wolf believed that prices were rising because of general economic conditions and did not know that the prices of the products she regularly purchased at Walmart reflected tariff costs. Wolf would have compared prices at other stores or purchased less expensive

[11] During the times relevant to this action, Plaintiff Wolf's purchases total $752.25.

brands, and would have paid less for the products she purchased, had Walmart disclosed that its prices reflected tariff costs that Walmart could recover from the government.

13. Plaintiff Jeffrey Ward is a citizen and resident of the State of Mississippi, residing in Gulfport, Mississippi. During the Class Period, Ward purchased products, including grocery and household items, from Walmart on at least seven separate occasions, totaling more than $500, through in-store purchases at Walmart's Gulfport, Mississippi store and at Walmart's Pensacola, Florida store.[12] Ward paid a higher price for these products than he would have paid but for Defendant's pass-through of the unlawful IEEPA tariff costs. Ward shops at Walmart approximately once or twice a week. Ward did not know that the prices he paid at Walmart reflected tariff costs. Walmart did not disclose that fact, Ward did not see or hear anything about tariffs while shopping at Walmart, and no Walmart employee discussed tariffs with him. The products Ward purchased were necessities, and he paid the prices Walmart charged for them.

14. Defendant Walmart Inc. is a for-profit corporation organized under the laws of the State of Delaware, with its principal executive offices at 1 Customer Drive, Bentonville, Arkansas 72716. Walmart's common stock trades on the Nasdaq Global Select Market under the symbol "WMT."[13] Walmart operates retail stores and clubs, together with eCommerce websites and mobile applications, throughout the United States, and sells a broad assortment of merchandise, including groceries, consumables, health and wellness products, apparel, electronics, home goods, and general merchandise.

---

[12] During the times relevant to this action, Plaintiff Ward's purchases total $521.23.
[13] Walmart Inc. 2026 Annual Report Form 10-K at 6.

## FACTUAL ALLEGATIONS

15. Walmart's U.S. segment reported net sales of $483.0 billion for fiscal year 2026, representing 68 percent of the Company's consolidated net sales.[14] Walmart U.S. operates 3,566 Supercenters, 351 Discount Stores, and 694 Neighborhood Markets and other small formats. Walmart describes price leadership as "a cornerstone of our business," and operates under a pricing philosophy it calls "everyday low prices" or "EDLP," under which, in the Company's words, "we price items at a low price every day so our customers trust that our prices will not change under frequent promotional activity."[15]

### I. OVERVIEW OF THE IEEPA TARIFFS

16. During the 2024 presidential campaign, then-candidate Donald Trump publicly advocated for substantial tariffs on goods imported into the United States. Following the election, those proposals continued to form a central component of the Administration's trade policy.[16]

17. A succession of executive orders issued beginning in February 2025 invoked IEEPA as authority for import duties. Rates on Chinese-origin merchandise reached a combined 145 percent between April 10 and May 14, 2025, and a baseline rate of 10 percent applied to goods from nearly all other trading partners.[17]

---

[14] Walmart Inc. 2026 Annual Report Form 10-K at 7.

[15] Walmart Inc. 2026 Annual Report Form 10-K at 6.

[16] Alan Wm. Wolff, *Trump's proposed blanket tariffs would risk a global trade war*, PETERSON INST. FOR INT'L ECON. (May 29, 2024), https://www.piie.com/blogs/realtime-economics/2024/trumps-proposed-blanket-tariffs-would-risk-global-trade-war (last visited October 2, 2026); *see also* Costas Pitas, *Trump vows new Canada, Mexico, China tariffs that threaten global trade*, REUTERS (Nov. 26, 2024), https://www.reuters.com/world/us/trump-promises-25-tariff-products-mexico-canada-2024-11-25/ (last visited October 2, 2026).

[17] See Exec. Order No. 14193, 90 Fed. Reg. 9113 (Feb. 7, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9117 (Feb. 7, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9121 (Feb. 7, 2025); Exec. Order No. 14257, 90 Fed. Reg. 15041 (Apr. 7, 2025), https://www.govinfo.gov/app/details/FR-2025-04-07/2025-06063 ; Exec. Order No. 14259, 90 Fed. Reg. 15509 (Apr. 14, 2025); Exec. Order No. 14266, 90 Fed. Reg. 15625 (Apr. 15, 2025); Exec. Order No. 14298, 90 Fed. Reg. 21831 (May 21,

18. On May 28, 2025, the U.S. Court of International Trade held that the President had exceeded the authority granted to him under IEEPA. *See V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025). The Federal Circuit affirmed in relevant part on August 29, 2025. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025) (*en banc*). On February 20, 2026, the Supreme Court held that IEEPA does not authorize the President to impose tariffs. *See Learning Resources, Inc. v. Trump*, 607 U.S. 229, 255 (2026).[18]

19. On February 22, 2026, CBP announced that it would cease collecting duties imposed pursuant to IEEPA at 12:00 a.m. Eastern Time on February 24, 2026.[19]

20. As of March 4, 2026, collections under the program totaled approximately $166 billion across more than 53 million entries made by more than 330,000 importers.[20] Analysts estimated that U.S. consumers would bear approximately two-thirds of the cost of the tariffs.[21] Thus, although the tariffs were imposed and collected from importers at the border, a substantial portion of their economic burden was ultimately borne by consumers through higher prices.

---

2025); *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 238 (2026); See also Cong. Rsch. Serv., R45618, Christopher Casey, Jennifer Elsea & Liana Rosen, *The International Emergency Economic Powers Act: Origins, Evolution, and Use*, CONGRESS.GOV (Sept. 1, 2025), https://www.congress.gov/crs-product/R45618 (last visited October 2, 2026).

[18] *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026), https://www.supremecourt.gov/opinions/25pdf/607us2r12_8nj9.pdf (last visited October 2, 2026).

[19] CBP, CSMS #67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026), https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9 (last visited October 2, 2026); See also *Ending Certain Tariff Actions*, THE WHITE HOUSE (Feb. 20, 2026), https://www.whitehouse.gov/presidential-actions/2026/02/ending-certain-tariff-actions/ (last visited October 2, 2026).

[20] Robert Caldwell, *The $166 Billion IEEPA Tariff Refund Market: Size, Timeline, and Implications*, Tariff Solutions,(March 3, 2026) https://tariffresolution.com/insights/166-billion-ieepa-tariff-refund-market/ (last visited October 2, 2026).

[21] Nick Lichtenberg, *Goldman Sachs doubles down on tariff research that infuriated Trump, saying average Americans will bear two-thirds of the costs*, FORTUNE (Aug. 13, 2025), https://fortune.com/2025/08/13/goldman-sachs-tariffs-donald-trump-david-solomon-dj/ (last visited October 2, 2026).

## II. WALMART'S EXPOSURE TO THE IEEPA TARIFFS

21. Walmart imports a substantial volume of the merchandise it sells in the United States. In its Annual Report on Form 10-K for fiscal year 2026, Walmart stated that "less than one third of what we sell in the U.S. is imported, with most of our imports coming from China, Mexico, Vietnam, India and Canada."[22] Each of those countries was subject to duties imposed under IEEPA.[23] Walmart further stated that "[a] significant portion of the general merchandise we sell in our U.S. stores and clubs is manufactured in other countries," and that its Walmart U.S. and Sam's Club U.S. segments together generated approximately 82 percent of the Company's consolidated net sales in fiscal year 2026.[24]

22. On the Company's May 15, 2025 earnings call, then-Chief Executive Officer Doug McMillon ("CEO McMillon") stated that "[a]ll of the tariffs create cost pressure for us, but the larger tariffs on China have the biggest impact," and that "[t]he cost pressure from all the tariff impacted markets started in late April, and it accelerated in May."[25]

## III. WALMART PASSED THE IEEPA TARIFF COSTS ON TO CONSUMERS

23. In its Annual Report on Form 10-K for fiscal year 2026, Walmart stated that changes in trade policy, including tariffs, "can impact, and have impacted, our business and profit margins, including through increases in the costs at which we purchase merchandise and the prices

---

[22] Walmart Inc. 2026 Annual Report Form 10-K at 33.
[23] *See* Exec. Order No. 14193, 90 Fed. Reg. 9113 (Feb. 7, 2025) (Canada); Exec. Order No. 14194, 90 Fed. Reg. 9117 (Feb. 7, 2025) (Mexico); Exec. Order No. 14195, 90 Fed. Reg. 9121 (Feb. 7, 2025) (China); Exec. Order No. 14257, 90 Fed. Reg. 15041 (Apr. 7, 2025) (additional duties on imports from all trading partners, including Vietnam and India).
[24] Walmart Inc. 2026 Annual Report Form 10-K at 23.
[25] Walmart Inc., Q1 FY2026 Earnings Call Transcript (May 15, 2025), https://corporate.walmart.com/content/dam/corporate/documents/newsroom/2025/05/15/walmart-releases-q1-fy26-earnings/q1-fy26-earnings-call-transcript.pdf (last visited October 2, 2026).

at which we sell such merchandise to our customers." Walmart further stated: "We experienced the impacts noted above during fiscal 2026 as a result of incremental import tariffs."[26]

24. Walmart identified the passing of costs to consumers as one of its pricing strategies. In the same Annual Report, Walmart stated that its pricing strategies "include, but are not limited to: absorbing cost increases instead of passing those cost increases on to our customers and members; reducing prices in certain merchandise categories; focusing on opening price points for certain food categories; and when necessary, passing cost increases on to our customers and members."[27]

25. Walmart told investors that the IEEPA tariffs would result in higher consumer prices. On the Company's May 15, 2025 earnings call, CEO McMillon stated: "We will do our best to keep our prices as low as possible. But given the magnitude of the tariffs, even at the reduced levels announced this week, we aren't able to absorb all the pressure given the reality of narrow retail margins." CEO McMillon further stated: "But even at the reduced levels, the higher tariffs will result in higher prices."[28]

26. In an interview on the same day, CFO Rainey stated: "We're wired for everyday low prices, but the magnitude of these increases is more than any retailer can absorb," and added: "It's more than any supplier can absorb. And so I'm concerned that consumer is going to start

[26] Walmart Inc. 2026 Annual Report Form 10-K at 23.
[27] Walmart Inc. 2026 Annual Report Form 10-K at 33.
[28] Walmart Inc., Q1 FY2026 Earnings Call Transcript (May 15, 2025), https://corporate.walmart.com/content/dam/corporate/documents/newsroom/2025/05/15/walmart-releases-q1-fy26-earnings/q1-fy26-earnings-call-transcript.pdf (last visited October 2, 2026).

seeing higher prices. You'll begin to see that, likely towards the tail end of this month, and then certainly much more in June."[29]

27. On May 17, 2025, the President publicly directed Walmart to absorb the tariffs rather than raise prices, stating that "Walmart should STOP trying to blame Tariffs as the reason for raising prices throughout the chain" and that "[b]etween Walmart and China they should, as is said, 'EAT THE TARIFFS,' and not charge valued customers ANYTHING." Walmart responded that it would "keep prices as low as we can for as long as we can given the reality of small retail margins."[30]

28. Price increases followed. A price-tracking analysis published by CNBC on July 17, 2025 followed approximately 50 products across apparel, electronics, toys, and groceries at a Walmart store in Secaucus, New Jersey over a seven-week period.[31] Approximately a dozen of the tracked items increased in price. A twelve-piece cookware set rose from $99 to $149, an increase of approximately 51 percent, and a Graco convertible stroller and car seat rose from $199.99, a discounted rollback price, to $299, an increase of approximately 50 percent. Many of the items that increased were manufactured in countries subject to significant tariff rates.[32]

29. A separate analysis by the retail data firm DataWeave, reported in November 2025, reviewed approximately 16,000 items offered on Walmart's website and found that Walmart's

---

[29] Melissa Repko, *Walmart CFO says price hikes from tariffs could start later this month, as retailer beats on earnings*, CNBC (May 15, 2025), https://www.cnbc.com/2025/05/15/walmart-wmt-q1-2026-earnings.html (last visited October 2, 2026).
[30] Leslie Josephs & Melissa Repko, *Trump tells Walmart to 'eat the tariffs' after retailer warned it will raise prices*, CNBC (May 17, 2025), https://www.cnbc.com/2025/05/17/trump-tells-walmart-to-eat-the-tariffs.html (last visited October 2, 2026).
[31] Melissa Repko, *Here's where Walmart prices are changing — and staying the same — as Trump's tariffs hit*, CNBC (July 17, 2025), https://www.cnbc.com/2025/07/17/trump-tariffs-affect-walmart-prices.html (last visited October 2, 2026).
[32] *Id.*

prices had increased approximately 1.7 percent between the start of 2025 and the end of September 2025, with apparel prices up approximately 1.6 percent.[33]

30. NPR, which has tracked the price of the same basket of goods at a Walmart store in Georgia since 2018, reported in January 2026 that nearly half of the 114 items it tracked had increased in price during 2025. Among the largest increases were goods imported from China and Vietnam, including store-brand paper folders, measuring spoons, and seafood.[34]

31. Economists have measured substantial pass-through of the 2025 tariffs to retail consumers. Researchers at the Board of Governors of the Federal Reserve System, analyzing item-level retail purchase data collected from as many as 200,000 United States households, concluded that tariff pass-through to consumers between April 2025 and December 2025 was "at least 30%" for goods imported from China, and that retail prices for Chinese imported goods were approximately 8.5 percent higher in December 2025 than a year earlier.[35]

32. Walmart acknowledged the effect on its own prices. On the Company's February 19, 2026 earnings call, CFO Rainey stated that Walmart had "worked hard to mitigate grocery inflation" as "tariff-related costs lifted prices across many categories."[36] CFO Rainey separately told the Associated Press that, for the quarter ended January 31, 2026, average prices for identical

---

[33] Courtney Reagan, *Retailers are raising prices to meet tariffs. Amazon is hiking more than others*, CNBC (Nov. 5, 2025), https://www.cnbc.com/2025/11/05/amazon-target-walmart-raising-prices-tariffs.html (last visited October 2, 2026).

[34] Alina Selyukh & Connie Hanzhang Jin, *How have prices changed in a year? NPR checked 114 items at Walmart*, NPR (Jan. 14, 2026), https://www.npr.org/2026/01/14/nx-s1-5638908/walmart-prices-inflation-affordability-shrinkflation (last visited October 2, 2026).

[35] Sinem Hacıoğlu-Hoke, Sarojini Malladi & Leo Feler, *The Slow Climb: How Tariffs Gradually Raised Retail Prices in 2025*, BD. OF GOVERNORS OF THE FED. RSRV. SYS., FEDS Notes (Mar. 5, 2026), https://www.federalreserve.gov/econres/notes/feds-notes/the-slow-climb-how-tariffs-gradually-raised-retail-prices-in-2025-20260305.html (last visited October 2, 2026).

[36] Walmart Inc., Q4 FY2026 Earnings Call Transcript (Feb. 19, 2026), https://stock.walmart.com/_assets/_5813cf69129ed45d080396680f549a44/walmart/db/938/9972/transcript_management_call/Earnings+Transcript+(FY26+Q4).pdf (last visited October 2, 2026).

items at Walmart had risen a little above one percent, that prices for food had risen slightly less than that, and that inflation in general merchandise had risen more than three percent. CFO Rainey stated that managing costs for general merchandise items had been more challenging because most such items are foreign imports.[37]

33. Walmart did not disclose to consumers, on its shelf tags, receipts, websites, or elsewhere, the portion of any price that was attributable to the IEEPA tariffs. Class members therefore had no means of determining what portion of the prices they paid reflected tariff costs. That information was known to Walmart, which paid the duties as importer of record and set the prices, but not to Class members. Nor could Class members have known, at the time of purchase, that the IEEPA tariffs would later be held unlawful, or that Walmart would recover the duties from the government while retaining the corresponding price increases.

## IV. WALMART RECOVERED THE UNLAWFUL TARIFFS FROM THE GOVERNMENT

34. Walmart paid the IEEPA duties as importer of record and applied to CBP for their return. In its Quarterly Report on Form 10-Q for the quarterly period ended April 30, 2026, Walmart disclosed that it was "participating in the process established by the U.S. Customs and Border Protection for refunds of tariffs that the Company paid as the importer of record" under IEEPA, but that "[t]he timing, amounts and ultimate resolution of any refunds remain uncertain," and that accordingly the Company "did not recognize any amounts related to these claims in the three months ended April 30, 2026."[38]

---

[37] Anne D'Innocenzio, *Walmart delivers another quarter of impressive sales but offers a muted outlook*, ASSOCIATED PRESS (Feb. 19, 2026), https://apnews.com/article/walmart-fourth-quarter-earnings-economy-c0381d22cb2182a0f5a1242cbb12a9ca (last visited October 2, 2026).

[38] Walmart Inc., April 2026 Quarterly Report Form 10-Q, Item 2, Management's Discussion and Analysis, at 17.

35. Walmart received the refunds in the following quarter. In its Quarterly Report on Form 10-Q for the quarterly period ended July 31, 2026, Walmart disclosed that "[d]uring the quarter ended July 31, 2026, the Company received approximately $2.9 billion in tariff refunds, primarily in the Walmart U.S. segment, which were recorded as a reduction to cost of sales and represent substantially all of the refunds requested by the Company."[39]

36. On the Company's August 20, 2026 earnings call, CFO Rainey stated: "As we shared with you in May, we were eligible for approximately $2.9 billion of tariff refunds, amounting to about 0.5% of annual US net sales. To-date, we've received substantially all of these tariff refunds."[40]

37. The refunds materially increased Walmart's reported profitability. Walmart reported that its consolidated gross profit rate increased 96 basis points for the three months ended July 31, 2026, and that the gross profit rate of its Walmart U.S. segment increased 158 basis points over the same period, increases Walmart attributed primarily to tariff refunds.[41] Walmart reported operating income growth of 28.8 percent for the quarter,[42] and CFO Rainey stated that "[o]perating income growth included a net benefit of approximately 750 basis points related to tariff refunds received in Q2."[43]

---

[39] Walmart Inc., July 2026 Quarterly Report Form 10-Q, Note 5, Contingencies, at 13.
[40] Walmart Inc., Q2 FY2027 Earnings Call Transcript, at 8.
[41] Walmart Inc., Quarterly Report Form 10-Q, Item 2, Management's Discussion and Analysis, at 22.
[42] Walmart Inc., Current Report (Form 8-K), Ex. 99.1, Walmart reports second quarter results (Aug. 20, 2026), https://www.sec.gov/Archives/edgar/data/104169/000010416926000145/earningsreleasefy27q2.htm (last visited October 2, 2026).
[43] Walmart Inc., Q2 FY2027 Earnings Call Transcript, at 6.

## V. WALMART HAS NOT RETURNED THE OVERCHARGES TO PURCHASERS

38. Walmart has not established any mechanism through which the consumers who paid the tariff-inflated prices may obtain a refund of those overcharges. Walmart stated that "[a] significant portion of these refunds was invested into customer-focused initiatives during the current quarter, primarily through price investment and other cost mitigation strategies, with continued prioritization of price investment expected through fiscal 2027."[44] On the August 20, 2026 earnings call, Walmart reported that it had delivered more than 11,000 "rollbacks" in its Walmart U.S. segment during the quarter, up from 7,200 in the prior quarter.[45]

39. The price reductions Walmart describes operate prospectively. They are available to any person who shops at Walmart after the refunds were received, without regard to whether that person purchased tariff-affected goods during the Class Period or paid any tariff-inflated price. They are not directed to, are not measured by, and do not compensate the purchases on which they overpaid. Walmart has not offered any payment, credit, or other remedy to Purchasers on account of those completed purchases. The rollbacks also reflect a competitive pricing strategy that Walmart began before it received any refunds. Walmart ended the quarter ended April 30, 2026, a quarter in which it recognized no tariff refunds, with approximately 7,200 rollbacks, compared with the approximately 5,000 it normally maintains. Walmart's Chief Executive Officer, John Furner explained that the Company is "investing heavily in price because customers need us to, and because we believe it drives market share gains over time."[46]

---

[44] Walmart Inc., July 2026 Quarterly Report Form 10-Q, Item 2, Management's Discussion and Analysis, at 17.
[45] Walmart Inc., Q2 FY2027 Earnings Call Transcript, at 4.
[46] Walmart Inc., Q2 FY2027 Earnings Call Transcript, at 4.

40. Walmart maintains transaction-level records through which the consumers who paid tariff-inflated prices, and the amounts they paid, may be identified, including point-of-sale records, digital order histories, and records associated with Walmart's customer accounts. Those records include information concerning the merchandise purchased, the prices charged, the timing of the transactions, and, for many transactions, the identity of the purchaser. Walmart already uses this information for pricing, merchandising, and customer-management purposes.

41. Walmart's own statements and subsequent conduct therefore establish a straightforward sequence. Walmart incurred IEEPA tariff costs as an importer of record; Walmart told consumers that tariffs would result in higher prices; Walmart expressly described spreading tariff-related costs across its assortment; consumers paid those higher prices; the Supreme Court subsequently held that the IEEPA tariffs were unauthorized; and Walmart then began recovering the duties it had previously paid.

42. The result is that Walmart has recovered tariff amounts for which consumers had already borne an economic charge through the prices they paid. Walmart's receipt of refunds demonstrates that the recovery is concrete rather than speculative. Unless those recoveries are returned or otherwise credited to the consumers who funded the tariff-related price increases, Walmart will retain both the amounts collected through those increased prices and the corresponding refunds received from the government.

43. Walmart was also aware, well before the Supreme Court's decision, that the legality of the IEEPA tariffs was being challenged in federal court. The litigation challenging the tariffs was public throughout the period in which Walmart was assessing tariff costs, adjusting prices, and collecting those costs from consumers. Accordingly, Walmart had reason to understand that the duties it was collecting from consumers could later be subject to refund, yet its public disclosures concerning the anticipated refunds did not identify any plan to return the corresponding amounts to consumers.

44. Walmart has therefore recovered the cost of the unlawful IEEPA duties twice: once from consumers, through prices inflated to account for those duties during the Class Period, and once from the United States, through the refunds Walmart received as importer of record. Walmart retains the benefit of both.

## CLASS ALLEGATIONS

45. Plaintiffs bring these claims for relief pursuant to the Federal Rules of Civil Procedure 23(a), 23(b)(2), or 23(b)(3) on behalf of the following Nationwide Class (collectively, the "Class"):

**Nationwide Class:**

All natural persons in the United States who, between February 1, 2025 and February 24, 2026 (the "Class Period"), purchased from Walmart one or more items whose price was increased or inflated, as a result of IEEPA tariffs imposed on that product or other products.

46. Specifically excluded from the Class are: Defendant and its officers, directors, agents, trustees, parents, subsidiaries, affiliates, successors, and assigns; all persons who make a timely election to be excluded from the Class; and the judge assigned to this action and any member of the judge's immediate family.

47. Plaintiffs reserve the right to amend the Class definition if further investigation and discovery reveal that the Class should be expanded, narrowed, further divided into subclasses, or otherwise modified.

48. **NUMEROSITY:** The exact number of Class members is unknown to Plaintiffs at this time but is believed to number in the millions, given that Walmart operates 4,611 Walmart stores and 601 Sam's Club locations in the United States, reported total revenues of $713.2 billion in fiscal year 2026, and serves approximately 280 million customers each week. The members of the Class are so numerous that joinder of all members is impracticable. The precise number of Class members and their identities may be ascertained from records maintained by Defendant.

49. **COMMONALITY:** Common questions of fact and law exist as to all Class members and predominate over any questions affecting only individual members of the Class. Such common questions include, but are not limited to:

a. Whether Defendant increased prices on products sold to Class members in response to the IEEPA tariffs;

b. Whether the IEEPA tariffs were unlawful;

c. Whether Defendant sought and/or received refunds from the United States government for the unlawful IEEPA tariff payments;

d. Whether Defendant retained the benefit of both the price increases charged to consumers and the tariff refunds received from the government;

e. Whether Defendant's prospective price reductions constitute restitution to the members of the Class;

f. Whether Defendant was unjustly enriched at the expense of the Class;

g. The proper measure of damages or restitution; and

h. Whether Plaintiffs and the Class are entitled to injunctive or declaratory relief.

50. **TYPICALITY:** Plaintiffs' claims are typical of the claims of the Class members because Plaintiffs, like all Class members, purchased tariff-affected products from Walmart at prices that were inflated by the pass-through of unlawful IEEPA tariff costs and were thereby injured in the same manner as all other Class members.

51. **ADEQUACY:** Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have no interests that are antagonistic to or in conflict with the

Class. Plaintiffs have retained attorneys experienced in class action litigation who will adequately represent the interests of the Class.

52. **SUPERIORITY:** A class action is superior to other available methods for fairly and efficiently adjudicating this controversy. The damages suffered by individual Class members are small relative to the burden and expense of individual litigation, making it impracticable for Class members to seek redress individually. Individual litigation would impose an undue burden upon the courts and would create a risk of inconsistent or contradictory rulings, which a class action would avoid. Defendant has acted on grounds generally applicable to the Class, making class-wide relief appropriate under Rule 23(b)(2). The common questions of law and fact identified above predominate over any individual issues, and a class action is a superior method for resolving this controversy under Rule 23(b)(3).

## CAUSES OF ACTION

### COUNT I
### Money Had and Received
### (On Behalf of Plaintiffs and the Class)

53. Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully set forth herein.

54. Plaintiffs bring this cause of action on behalf of themselves and all members of the Class.

55. Walmart recouped a substantial portion of the IEEPA duties it remitted to CBP through increased prices on products sold to Plaintiffs and the Class. As a result, the economic burden of those duties was borne by Walmart's customers rather than by Walmart.

56. The IEEPA tariffs were held unlawful by the Supreme Court of the United States. Learning Resources, Inc. v. Trump, 607 U.S. 229 (2026). CBP established a process through which importers of record may obtain refunds of IEEPA duties, and Walmart has obtained such refunds.

57. Walmart has received refunds of the IEEPA duties it paid, in the approximate amount of $2.9 billion received during the quarter ended July 31, 2026. To the extent Walmart retains the corresponding price increases collected from consumers, it retains money for a cost it no longer bears.

58. Walmart received money belonging to Plaintiffs and the Class, benefited from its receipt, and under principles of equity and good conscience should not be permitted to retain it. Plaintiffs and the Class are entitled to recover that money in an amount to be determined at trial.

**COUNT II**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

59. Plaintiffs incorporate by reference and reallege each and every allegation set forth above as if fully set forth herein.

60. Plaintiffs bring this cause of action on behalf of themselves and all members of the Class.

61. Defendant received a tangible economic benefit from the Class by increasing prices on consumer products in order to recoup the costs of the unlawful IEEPA tariffs. The price increases resulted in Plaintiffs and the Class paying more for Walmart's products than they otherwise would have paid.

62. Defendant has also recovered those same IEEPA tariff payments from the United States government. Walmart disclosed that it received approximately $2.9 billion in tariff refunds

during the quarter ended July 31, 2026, representing substantially all of the refunds it had requested, and recorded those refunds as a reduction to cost of sales.

63. Defendant thus retains the benefit of both the overcharges collected from consumers and the refunds recovered from the government for the identical tariff obligations.

64. It would be unjust and inequitable for Defendant to retain the price increases collected from consumers when Defendant has recovered the same tariff costs from the government. Equity and good conscience require that Defendant disgorge or make restitution of the amounts by which it was unjustly enriched.

65. Plaintiffs and the Class lack an adequate remedy at law and are entitled to restitution and/or disgorgement of all amounts by which Defendant was unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a. An order certifying the Class as defined herein, appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel;

b. An order declaring that Defendant's conduct, as described herein, violates the common law principles referenced herein;

c. An award of compensatory damages to Plaintiffs and the Class in an amount to be determined at trial, representing the tariff-related overcharges paid by the Class;

d. An order of restitution and/or disgorgement requiring Defendant to disgorge all amounts by which it was unjustly enriched through the dual recovery of tariff costs from consumers and tariff refunds from the government;

e. An award of pre-judgment and post-judgment interest on all amounts awarded;

f. An award of reasonable attorneys' fees and costs;

g. Injunctive relief requiring Defendant to return to the members of the Class the tariff-related overcharges they paid during the Class Period; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: October 2, 2026

**LEVI & KORSINSKY, LLP**

By: */s/ Patrick Yarborough*
Patrick Yarborough
440 Louisiana Street, Suite 1800
Houston, TX 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202
Email: patrick@fosteryarborough.com

Mark S. Reich*
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com

*Attorneys for Plaintiffs and the Proposed Class*

**pro hac vice* forthcoming

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

LAUREN WOLF and JEFFREY WARD, individually and

**(b)** County of Residence of First Listed Plaintiff: Tarrant
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Patrick Yarborough, 440 Louisiana, Suite 1800
Houston, TX 77002 Telephone: (713) 331-5254

**DEFENDANTS**

WALMART INC.,

County of Residence of First Listed Defendant: ______
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
50 U.S.C. §§ 1701 et seq. (International Emergency Economic Powers Act ("IEEPA")

Brief description of cause:
Unjust enrichment and restitution arising from Defendant's retention of refunded tariff monies and tariff-related consumer overcharges.

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 100000000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE: 10/02/2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ Patrick Yarborough

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

JURY

# U.S. District Court
# Northern District of Texas (Fort Worth)
# CIVIL DOCKET FOR CASE #: 4:26−cv−01274−P

Wolf et al v. Walmart Inc.
Assigned to: Judge Mark Pittman
Demand: $9,999,000
Cause: 28:1332 Diversity−Personal Injury

Date Filed: 10/02/2026
Jury Demand: Plaintiff
Nature of Suit: 360 Torts/Pers Inj: Other Personal Injury
Jurisdiction: Diversity

**Plaintiff**

**Lauren Wolf−Bond**
*Individually and on behalf of all others similarly situated*

represented by **Patrick Yarborough**
Foster Yarborough Killingsworth PLLC
440 Louisiana Street
Suite 1800
Houston, TX 77002
713−331−5254
Fax: 713−513−5202
Email: patrick@fyktriallaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Jeffrey Ward**
*Individually and on behalf of all others similarly situated*

represented by **Patrick Yarborough**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**Walmart Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/02/2026 | 1 | COMPLAINT WITH JURY DEMAND against All Defendants filed by Jeffrey Ward, Lauren Wolf. (Filing fee $405; Receipt number ATXNDC−16849824) Plaintiff will submit summons(es) for issuance. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information − Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Cover Sheet) (Yarborough, Patrick) (Entered: 10/02/2026) |
| 10/02/2026 | 2 | Request for Clerk to issue Summons filed by Jeffrey Ward, Lauren Wolf. (Yarborough, Patrick) (Entered: 10/02/2026) |
| 10/02/2026 | 3 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Jeffrey Ward, Lauren Wolf. (Clerk QC note: No affiliate entered in ECF). (Yarborough, Patrick) (Entered: 10/02/2026) |
| 10/03/2026 | 4 | Court Request for Recusal: Chief District Judge Reed O'Connor recused. Pursuant to instruction in Special Order 3−249, the Clerk has reassigned the case to Judge Mark Pittman for all further proceedings. Future filings should indicate the case number as: |

| | | |
|---|---|---|
| | | 4:26−cv−01274−P. (bcr) (Entered: 10/05/2026) |
| 10/05/2026 | 5 | New Case Notes: A filing fee has been paid. File to: Judge Pittman. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. Attorneys are further reminded that, if necessary, they must comply with Local Rule 83.10(a) within 14 days or risk the possible dismissal of this case without prejudice or without further notice. All counsel and unrepresented parties are also reminded of the judge−specific requirement that they read and abide by (1) Dondi Properties Corp. v. Commerce Savings & Loan Assoc., 121 F.R.D. 284 (N.D. Tex. 1988);(2) the Local Civil Rules of the United States District Court for the Northern District of Texas;(3) the Texas Lawyers Creed;(4) the Texas Disciplinary Rules of Professional Conduct;and (5) Judge−Specific Requirements of Judge Pittman. (saw) (Entered: 10/05/2026) |
| 10/05/2026 | 6 | Summons Issued as to Walmart Inc. (saw) (Entered: 10/05/2026) |