CASE-REFERRED,HILL

# U.S. District Court
# Middle District of Tennessee (Nashville)
# CIVIL DOCKET FOR CASE #: 3:26-cv-00977

Montoya v. Dolgencorp, LLC et al
Assigned to: Chief Judge William L. Campbell, Jr
Referred to: Magistrate Judge Lynda M. Hill
Cause: 28:1332 Diversity-Property Damage

Date Filed: 07/15/2026
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Diversity

**Plaintiff**

**Kerri Montoya**
*individually and on behalf of similarly situated individuals*

represented by **Mark E. Silvey**
Bryson Harris Suciu & DeMay PLLC
800 S. Gay Street
Suite 1100
Knoxville, TN 37929
865-247-0080
Fax: 865-522-0049
Email: Msilvey@brysonpllc.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Dolgencorp, LLC**
*a Kentucky limited liability company doing business as*
Dollar General

represented by **Chen George Ni**
McGuireWoods LLP
77 W. Wacker Dr.
Ste 4100
Chicago, IL 60126
312-849-8164
Fax: 312-920-6146
Email: cni@mcguirewoods.com
*ATTORNEY TO BE NOTICED*

**Nicholas J. Hoffman**
McGuireWoods LLP
1800 Century Park East
Ste 8th Floor
Los Angeles, CA 90067
213-457-9855
Email: nhoffman@mcguirewoods.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dollar General Corporation**
*a Tennessee Corporation*

represented by **Chen George Ni**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas J. Hoffman**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/15/2026 | 1 | COMPLAINT against Dolgencorp, LLC, Dollar General Corporation (Filing fee $405, Receipt number ATNMDC-4618349), filed by Kerri Montoya. (Attachments: # 1 Attachment - Civil Cover Sheet) (sv) (Entered: 07/15/2026) |
| 07/15/2026 | 2 | NOTICE OF ADMINISTRATIVE ORDER NO. 217 to parties re obligation of counsel to keep Court apprised of current contact information. (sv) (Entered: 07/15/2026) |
| 07/15/2026 | 3 | NOTICE of Business Entity Disclosure Statement filing requirement. (sv) (Entered: 07/15/2026) |
| 07/15/2026 | 4 | NOTICE/INFORMATION regarding Consent of the Parties to the Magistrate Judge. (sv) (Entered: 07/15/2026) |
| 07/15/2026 | 5 | Summons issued as to Dolgencorp, LLC, Dollar General Corporation. Counsel is responsible for printing and serving the summons. (sv) (Entered: 07/15/2026) |
| 07/15/2026 | | TN State Bar status verified as active for Mark E. Silvey **admitted to this court**. (sv) (Entered: 07/15/2026) |
| 07/15/2026 | 6 | NOTICE of Initial Case Management Conference by Telephone set for 11/17/2026 at 09:00 AM before Magistrate Judge Barbara D. Holmes. (sv) (Entered: 07/15/2026) |
| 07/20/2026 | 7 | ORDER: This case is REFERRED to the Magistrate Judge for customized case management in accordance with Local Rule 16.01 and 28 U.S.C. § 636(b)(1)(A). Lead counsel for the parties shall attend the initial case management conference. This case shall be set for trial upon completion of the initial case management conference by order of the District Court in accordance with the procedures of Local Rule 16.01. Signed by Chief Judge William L. Campbell, Jr. on 7/20/2026. **(DOCKET TEXT SUMMARY ONLY-ATTORNEYS MUST OPEN THE PDF AND READ THE ORDER.)** (sm) (Entered: 07/20/2026) |
| 08/03/2026 | | Due to the retirement of Magistrate Judge Barbara D. Holmes, Magistrate Judge Lynda M. Hill added. Magistrate Judge Barbara D. Holmes no longer assigned to case. (bot) (Entered: 08/03/2026) |
| 08/19/2026 | 8 | WAIVER OF SERVICE Returned Executed by Kerri Montoya. Dolgencorp, LLC waiver sent on 8/12/2026; Dollar General Corporation waiver sent on 8/12/2026. (Silvey, Mark) (Entered: 08/19/2026) |
| 08/19/2026 | 9 | NOTICE of Appearance by Chen George Ni on behalf of Dolgencorp, LLC, Dollar General Corporation (Ni, Chen) (Entered: 08/19/2026) |
| 08/19/2026 | 10 | BUSINESS ENTITY DISCLOSURE STATEMENT filed by Dollar General Corporation. (Ni, Chen) (Entered: 08/19/2026) |
| 08/19/2026 | 11 | BUSINESS ENTITY DISCLOSURE STATEMENT filed by Dolgencorp, LLC. (Ni, Chen) (Entered: 08/19/2026) |
| 08/19/2026 | 12 | MOTION for attorney Nicholas J. Hoffman to Appear Pro Hac Vice (Certificate of Good Standing Included) (paid $150 PHV fee; receipt number ATNMDC-4650263) by Dolgencorp, LLC, Dollar General Corporation. (Ni, Chen) Modified on 8/20/2026 (ch). (Entered: 08/19/2026) |

| | | |
|---|---|---|
| 08/20/2026 | | TN State Bar status verified as active for Chen George Ni **admitted to this court**. (ch) (Entered: 08/20/2026) |
| 08/20/2026 | | CA State Bar status verified as active for Nicholas J. Hoffman **not admitted to this court - Local counsel secured**. (ch) (Entered: 08/20/2026) |
| 08/31/2026 | 13 | ORDER granting 12 : Having satisfied the requirements of Local Rule 83.01(b), the Motion for Nicholas J. Hoffman to Appear Pro Hac Vice is granted. Signed by Clerk of Court Vicki Kinkade on 8/31/2026. (vk) (Entered: 08/31/2026) |
| 09/14/2026 | 14 | MOTION to Dismiss *PLAINTIFFS CLASS ACTION COMPLAINT* by Dolgencorp, LLC, Dollar General Corporation. (Hoffman, Nicholas) (Entered: 09/14/2026) |
| 09/14/2026 | 15 | MEMORANDUM in Support of 14 MOTION to Dismiss *PLAINTIFFS CLASS ACTION COMPLAINT* filed by Dolgencorp, LLC, Dollar General Corporation. (Hoffman, Nicholas) (Entered: 09/14/2026) |
| 10/05/2026 | 16 | RESPONSE in Support re 14 MOTION to Dismiss *PLAINTIFFS CLASS ACTION COMPLAINT* filed by Dolgencorp, LLC, Dollar General Corporation. (Hoffman, Nicholas) (Entered: 10/05/2026) |
| 10/05/2026 | 17 | PROPOSED ORDER OF DISMISSAL *of Plaintiff's Class Action Complaint* filed by All Defendants. (Hoffman, Nicholas) (Entered: 10/05/2026) |
| 10/05/2026 | 18 | AMENDED COMPLAINT *First Class Action* against Dolgencorp, LLC, Dollar General Corporation, filed by Kerri Montoya.(Silvey, Mark) (Entered: 10/05/2026) |
| 10/09/2026 | 19 | MOTION for attorney Evan M. Meyers to Appear Pro Hac Vice (paid $150 PHV fee; receipt number BTNMDC-4695242) by Kerri Montoya. (Attachments: # 1 Attachment Certificate of Good Standing)(Silvey, Mark) (Entered: 10/09/2026) |

---

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/13/2026 13:14:50 | | | |
| **PACER Login:** | amiestroutt | **Client Code:** | BHSD |
| **Description:** | Docket Report | **Search Criteria:** | 3:26-cv-00977 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| KERRI MONTOYA, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>DOLGENCORP, LLC d/b/a DOLLAR GENERAL, a Kentucky limited liability company, and DOLLAR GENERAL CORPORATION, a Tennessee Corporation<br><br>Defendants. | Case No.: 3:26-cv-00977<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Kerri Montoya ("Plaintiff"), individually and on behalf of others similarly situated, by and through her undersigned counsel, and for her First Amended Class Action Complaint against Defendants Dolgencorp, LLC d/b/a Dollar General and Dollar General Corporation (collectively "Dollar General" or "Defendants"), alleges as follows based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by counsel and review of public documents, including Defendants' filings with the Securities and Exchange Commission, as to other matters.

## NATURE OF THE ACTION

1. This lawsuit arises from Defendants' retention of windfall profits generated as a consequence of the unlawful tariffs imposed by the Trump Administration under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 *et seq.* This windfall is a direct result of Defendants systematically passing on the costs of IEEPA tariffs to their own customers—

including Plaintiff—through elevated product prices, and then recovering those same tariff costs from the United States through refunds that Defendants have now largely received and retained.

2. Beginning on February 1, 2025, President Donald J. Trump issued Executive Orders 14193, 14194, and 14195 imposing IEEPA-based duties on certain imports from Canada, Mexico, and China, respectively. He later issued Executive Order 14245 on March 24, 2025 concerning tariffs on countries importing Venezuelan oil, and Executive Order 14257 on April 2, 2025 declaring a national emergency based on large and persistent United States goods trade deficits and imposing reciprocal tariffs on a broad range of trading partners. *See* Exec. Order No. 14193, 90 Fed. Reg. 9,113 (Feb. 1, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9,117 (Feb. 1, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9,121 (Feb. 1, 2025); Exec. Order No. 14245 (Mar. 24, 2025); Exec. Order No. 14257 (Apr. 2, 2025) (collectively, the "Tariff Executive Orders").

3. The sweeping Tariff Executive Orders imposed an array of frequently changing duties ranging from 10% to 145% (with the upper end reflecting the maximum cumulative IEEPA-based rate applied to certain Chinese-origin goods, comprised of a 125% reciprocal duty under Executive Order 14257 as amended and an additional 20% IEEPA fentanyl duty under Executive Order 14228) based on country-specific tariff policy dictated through published Executive Orders. *See* Exec. Order 14257, 90 Fed. Reg. 15,041 (Apr. 2, 2025); Exec. Order No. 14,259, 90 Fed. Reg. 15,509 (Apr. 8, 2025); Exec. Order No. 14,266, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

4. An analysis by the Federal Reserve Bank of New York finds that "U.S. firms and consumers continue to bear the bulk of the economic burden of the high tariffs imposed in 2025."[1] Indeed, the Federal Reserve Bank of New York found that "nearly 90 percent of the tariffs'

[1] Mary Amiti, Chris Flanagan, Sebastian Heise, and David E. Weinstein, *Who is Paying for the 2025 U.S. Tariffs?*, Federal Reserve Bank of New York (Feb. 12, 2026), https://libertystreeteconomics.newyorkfed.org/2026/02/who-is-paying-for-the-2025-u-s-tariffs/.

economic burden fell on U.S. firms and consumers" rather than foreign exporters. Although the stated purpose of the Tariff Executive Orders was to address international trade deficits and other national-emergency concerns, the economic burden of the tariffs was substantially passed on to American consumers in the form of increased retail prices.

5. When goods are imported into the United States, United States Customs and Border Protection ("CBP") assesses and collects tariffs on those goods based on the Harmonized Tariff Schedule of the United States. Pub. L. No. 100-418, 102 Stat. 1107 (1988). An importer may receive a refund for tariffs through administrative protest under 19 U.S.C. § 1514, refund under 19 U.S.C. § 1520, judicial action in the U.S. Court of International Trade under 28 U.S.C. § 1581(i), or, with respect to IEEPA-related tariffs, through CBP's Consolidated Administration and Processing of Entries ("CAPE") portal launched on April 20, 2026.

6. Defendants, through paid IEEPA tariffs when they imported goods. To offset the cost of paying IEEPA tariffs, Defendants passed their tariff costs on to Plaintiff and similarly situated consumers by inflating the prices of their products.

7. On February 20, 2026, the United States Supreme Court held that the IEEPA does not authorize the President to impose the tariffs at issue. *Learning Res., Inc. v. Trump*, 607 U.S. 229 (2026).

8. As a result, any IEEPA tariffs charged to Defendants were unlawful for lack of statutory authorization, and Defendants are entitled to, and have sought, a refund for any tariffs they paid pursuant to the Tariff Executive Orders through either litigation in the U.S. Court of International Trade, the CAPE refund process, or other administrative refund procedures.

9. On February 24, 2026, Defendants filed a refund action in the U.S. Court of International Trade. *Dolgencorp, LLC v. United States*, No. 1:26-cv-01176 (Ct. Int'l Trade Feb. 24, 2026).

10. In their lawsuit, Defendants state that they have "paid all estimated duties, taxes, and fees, including IEEPA tariffs, owed on their entries of imported merchandise" and that they are "entitled to a refund of the IEEPA tariffs that they paid to Customs" including "all interest as provided by law." *Id.*

11. Defendants' own pleadings in that case confirm that Dolgencorp, LLC is the importer of record for Dollar General goods imported into the United States, that it paid IEEPA tariffs to CBP on those goods, and that it was actively pursuing refunds of those tariffs.

12. Dollar General also pursued refunds through CBP's administrative process. In its quarterly report for the period ended May 1, 2026, Dollar General disclosed that "[f]ollowing the February 20, 2026 decision by the United States Supreme Court invalidating certain tariffs imposed under the International Emergency Economic Powers Act, we submitted claims with U.S. Customs and Border Protection seeking refunds for such tariffs that we previously paid." Dollar General Corp., Quarterly Report (Form 10-Q) at 20 (June 2, 2026).

13. Dollar General began receiving IEEPA refund payments before Plaintiff filed this action on July 15, 2026. During Dollar General's first-quarter earnings call on June 2, 2026, Chief Financial Officer Donny Lau stated: "[W]e have received an immaterial amount of IEEPA tariff refunds to date...." Dollar General Corp., Q1 2026 Earnings Call Tr. (June 2, 2026)

14. Defendants have already passed the unlawful IEEPA tariff costs onto Plaintiff and the Class Members by charging elevated prices to offset such costs. Plaintiff and the Class Members were thereby deprived of money paid to Defendants for IEEPA tariffs that the United States has now refunded, in large part, to Defendants.

15. Although Defendants sought refunds of the IEEPA tariffs in the U.S. Court of International Trade, and from CBP, and have received the majority of those refunds, Defendants have not

returned any portion of those refunds to the consumers who, through elevated prices, bore the economic burden of those tariffs.

16. By receiving and retaining refunds of IEEPA tariffs whose cost they had already charged to consumers, Defendants have obtained a windfall. Defendants' retention of money obtained from charging consumers for IEEPA tariffs offends public policy, is oppressive, and causes substantial injury to consumers by depriving them of the tariff-related amounts they paid.

17. The value of IEEPA tariff refund claims was not merely speculative even when this action was filed. Even before the Supreme Court issued its decision in *Learning Resources*, a robust secondary market had emerged in which distressed investors and hedge funds purchased IEEPA tariff refund claims from importers at a discount in exchange for immediate liquidity.[2] Industry analysts estimated that the secondary market for IEEPA tariff refund claims could swell to approximately $100 billion in aggregate value.[3]

18. The existence and active trading of these claims confirms that Defendants' refund rights had concrete and quantifiable economic value on the day this action was filed, before Defendants converted most of those rights into cash.

19. Other corporations in Defendants' same position have enacted tariff refund programs to compensate their customers who paid higher prices for products and thus bore the burden of pass-through tariff costs.[4] For example, on UPS's April 28, 2026 first-quarter 2026 earnings call, UPS's Chief Executive Officer Carol Tomé stated that it had collected approximately $5 billion in tariff

[2] Vito Emanuel, *Wall Street Is Betting on Tariff Refunds After Supreme Court Ruling*, NPR (Mar. 5, 2026), https://www.npr.org/2026/03/05/nx-s1-5736120/tariff-refunds-wall-street-trade.
[3] *Id.*
[4] *See, e.g.*, Jeannette Neumann, *Cards Against Humanity to Give Tariff Refunds to Buyers Who "Overpaid,"* Crain's Chicago Business (Feb. 25, 2026), https://www.chicagobusiness.com/consumer-products/cards-against-humanity-give-tariff-refunds/.

costs from customers and that "as soon as we get that money, we're going to remit it right back to our customers." FedEx separately stated it would refund corresponding tariff costs to its customers. Defendants could have enacted a similar payback program for Plaintiff and the Class Members, yet chose not to. Defendants instead used refund proceeds for promotions, price reductions, and marketing designed to increase their own future sales.

20. At minimum, once IEEPA tariff refunds, reliquidation, or other recovery became available, Defendants' retention of tariff-related amounts paid by consumers became unfair, oppressive, and substantially injurious because Defendants retained the benefit of both the inflated prices they passed through to consumers and their corresponding right to tariff refunds.

21. Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek declaratory relief, and redress for common law unjust enrichment and money had and received, and for such other equitable and legal relief as is appropriate, including the imposition of a constructive trust over any IEEPA tariff refund proceeds Defendants have received or will receive from the United States.

## **THE PARTIES**

22. At all relevant times, Plaintiff has been a citizen of the State of Missouri.

23. Defendant Dolgencorp, LLC is a Kentucky limited liability company with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee 37072, United States. Dolgencorp LLC is a wholly owned subsidiary of Dollar General Corporation, which sells consumer goods through retail stores and the dollargeneral.com ecommerce website.

24. Defendant Dollar General Corporation is a Tennessee corporation with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee 37072, United States.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, excluding interest and costs, and at least one member of the proposed Class is a citizen of a state different from that of any Defendant.

26. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendants' obligation to return to the consumers who paid increased prices due to the IEEPA duties paid by Defendants, as well as any IEEPA duty refunds Defendants have recovered or will recover from the United States.

27. The Court has personal jurisdiction over Defendants because Defendants conduct continuous and systematic business in Tennessee, operate physical locations in Tennessee, and ship goods to and from Tennessee regularly.

28. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside here and because a substantial part of the events giving rise to Plaintiff's claims occurred in and emanated from this District. On information and belief, Defendants made the pricing decisions at issue, and received and directed the use of the IEEPA refund proceeds, at their headquarters in Goodlettsville, Tennessee.

## BACKGROUND

### DEFENDANTS' BUSINESS MODEL AND SUPPLY CHAIN

29. Defendants advertise, market, sell, and distribute a multitude of products throughout the United States.

30. Defendants source a substantial amount of their products from manufacturers and producers located overseas and in Canada and Mexico. Dollar General reports that it "directly

imported approximately 4% of [its] purchases (measured at cost) in 2025" and that "a substantial amount of [its] imported merchandise comes from China." Dollar General Corp., Annual Report (Form 10-K) at 7, 16, 17 (Mar. 20, 2026). Dolgencorp, LLC served as the importer of record for those direct imports and paid IEEPA tariffs to U.S. Customs and Border Protection on them.

31. The IEEPA tariffs have had a substantial impact on the cost of products sold in Defendants' stores, including private-label products sold under various brand names in Dollar General stores and on the dollargeneral.com website.

32. Dollar General also imports brand-name goods manufactured in countries that were subject to IEEPA tariffs. To offset the cost of these tariffs, Dollar General has charged greater prices than it otherwise would have in the absence of unlawful tariffs.

**DEFENDANTS' PASS-THROUGH OF IEEPA TARIFFS TO CONSUMERS**

33. For purposes of this Complaint, the "Class Period" begins February 1, 2025, and continues through the date Defendants refund, credit, disgorge, or are ordered to restore the tariff-related overcharges to consumers, or such other period as discovery shows is appropriate.

34. During the Class Period, Defendants charged prices for their products that were inflated by the cost of IEEPA duties.

35. Dollar General executives have explicitly warned that tariffs will result in increased costs for the company's customers.[5]

36. In the company's Q2 2025 earnings call, Dollar General CEO Todd Vasos said that "[t]ariffs have begun to result in some price increases" of goods sold to Dollar General customers.

---

[5] Hugh Cameron, *Dollar General Warns Of Price Increases*, Newsweek (Sept. 3, 2025), https://www.newsweek.com/dollar-general-price-increases-tariffs-warning-2123958; *See also* Dani James, "*Dollar General Revenue Grows, But Tariffs Begin Impacting Prices*", Retail Dive, (Aug. 28, 2025) https://www.retaildive.com/news/dollar-general-revenue-grows-tariffs-impacting-prices/758865/

37. These price increases were intended to offset the cost to Dollar General of the unlawful IEEPA tariffs that had been imposed on many of the products it sells.

38. Dollar General's SEC filings confirm that its prices rose during the tariff period. Its annual report for fiscal 2025 states that Dollar General would "take various actions designed to minimize price increases for our customers" in response to tariffs, and that "[t]here can be no assurance . . . that price increases will not adversely affect customer behavior." Dollar General Corp., Annual Report (Form 10-K) at 28 (Mar. 20, 2026). Its quarterly report for the period ended May 1, 2026 attributes an increase in average transaction amount to "higher average retail prices." Dollar General Corp., Quarterly Report (Form 10-Q) at 23 (June 2, 2026).

39. Dollar General reported that tariff rates "did not materially impact our financial results in 2025." Dollar General Corp., Annual Report (Form 10-K) at 28 (Mar. 20, 2026). On information and belief, a principal reason the tariffs did not materially affect Dollar General's 2025 results is that Dollar General recovered its tariff costs on directly imported goods through higher retail prices paid by consumers. Dollar General's later results are consistent with that inference. When Dollar General received IEEPA refunds in the second quarter of fiscal 2026, its gross margin rose by approximately 81 basis points net of reinvestment, see infra ¶ 49D, a gain that would not have occurred on that scale had Dollar General already absorbed the tariff costs out of its own margins.

40. Dollar General has now received most of its IEEPA tariff refunds, but it has not returned the tariff-related amounts to the customers who paid some or all of the tariff costs in the form of price increases that otherwise would not have applied to their purchases.

**PLAINTIFF'S PURCHASE**

41. During the Class Period, Plaintiff purchased products from Dollar General in Missouri.

42. On information and belief, Defendants artificially inflated the price of the goods that Plaintiff purchased in order to offset their tariff costs.

43. The product-level import origin, importer-of-record information, tariff classification, entry data, duty-payment records, and any records reflecting whether IEEPA tariff costs were incorporated into retail pricing are within Defendants' possession, custody, or control.

44. Defendants paid IEEPA tariffs on goods and embedded the cost of those tariffs in the prices charged to Plaintiff. But for Defendants' pass-through of IEEPA tariff costs, Plaintiff would have paid lower prices for the products she purchased. Plaintiff has not received any refund, credit, or price adjustment for the tariff-related amounts she paid.

45. Plaintiff did not pay the tariff-related portion of Dollar General's prices with knowledge of it. Dollar General's shelf prices did not identify any tariff component, and Plaintiff had no means to learn the amount of that component, negotiate it, or avoid it. The unlawfulness of the IEEPA duties was not adjudicated until February 20, 2026.

46. The IEEPA tariff component of Dollar General's prices is different in kind from ordinary operating costs such as freight, labor, or income taxes. The IEEPA duties were exactions the federal government had no authority to impose, Dollar General publicly attributed price increases to them, and the United States is now returning those same sums to the importer that recovered them from consumers through higher prices.

47. No term of Plaintiff's purchase transactions addressed IEEPA tariffs, the possibility that those tariffs would be held unlawful, or the allocation of any resulting refunds. Plaintiff's

purchases were completed at the register without any written agreement, and Dollar General did not disclose that any portion of its prices represented tariff costs that might later be refunded.

48. Defendants' retention of the unlawful IEEPA tariff costs that were passed on to Plaintiff and Class Members offends public policy as it is unconscionable and unfair for Plaintiff and similarly situated consumers to shoulder Defendants' tax burden under the IEEPA tariffs when those tariffs were unlawful and should not have been collected.

49. As a result of Defendants' practice of passing on tariff costs to their customers, Plaintiff and the Class Members were forced to pay Defendants' tariff burdens.

50. Plaintiff and the members of the Class have unequal bargaining power relative to Defendants and are unable to negotiate the payment of the unlawful IEEPA tariffs from Defendants, and therefore Plaintiff and Class members could not avoid paying the unlawful IEEPA tariffs that were passed on to them.

51. Allowing Defendants to keep the proceeds of the unlawful IEEPA tariff charges deprives Plaintiff and Members of the Class of the money paid for the cost of the unlawful IEEPA tariffs while providing nothing of value to Plaintiff or Class Members.

52. But for Defendants' charging Plaintiff and the Members of the Class the cost of the unlawful IEEPA tariffs, Plaintiff and the Members of the Class would not have needed to shoulder the cost of the unlawful IEEPA tariffs.

**DEFENDANTS' RECEIPT AND RETENTION OF IEEPA TARIFF REFUNDS**

53. On March 4, 2026, the United States Court of International Trade issued a significant order in *Atmus Filtration, Inc. v. United States*, directing U.S. Customs and Border Protection to refund duties imposed under the IEEPA. *Atmus Filtration, Inc. v. United States*, No. 26-01259, 2026 WL 616128 (Ct. Int'l Trade Mar. 4, 2026).

54. The Court of International Trade's decision reinforced that all importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the Supreme Court's decision in *Atmus Filtration*. *Id.* The Court ordered CBP to liquidate all unliquidated entries "without regard to IEEPA duties" and to reliquidate any liquidated entries for which liquidation is not final without regard to those duties. *Id.* at *2-3.

55. According to Brandon Lord, the Executive Director of CBP's Trade Programs Directorate, as of March 4, 2026, the total amount of IEEPA duties and estimated duty deposits collected pursuant to IEEPA is approximately $166 billion. *Atmus*, ECF No. 31 at ¶ 12.

56. Defendants were entitled to substantial refunds for IEEPA tariffs they paid as the importer of record for goods sourced from countries subject to IEEPA tariffs, and they have now received most of those refunds.

57. In its quarterly report for the thirteen weeks ended July 31, 2026, Dollar General Corporation disclosed: "During the second quarter of 2026, we began receiving cash refunds related to IEEPA tariffs that we had previously paid. We received the majority of the expected refunds during the quarter and reinvested a substantial portion of the refunds in our customer value proposition through targeted promotional activities and lower everyday prices." Dollar General Corp., Quarterly Report (Form 10-Q) at 20 (Aug. 27, 2026).

58. Defendants have not received all of their IEEPA refunds. Dollar General's disclosures describe the refunds received as "the majority" of the expected amount, and Defendants' refund action in the Court of International Trade remains pending. Defendants therefore continue to hold rights to additional IEEPA refunds (and interest) on entries of goods sold to Class members.

59. Dollar General has described its use of the refund proceeds as a business investment in its own growth. Chief Executive Officer Todd Vasos stated that Dollar General "reinvested a

substantial portion" of the refunds through "targeted promotional activities, particularly around the important summer holidays, and lower everyday prices," and that Dollar General "took these actions strategically to serve customers while targeting sustainable share gains and sales growth over time." He added that the "tariff refund reinvestments during the quarter included incremental SG&A spend on customer-facing initiatives, including increased marketing expense." Dollar General Corp., Q2 2026 Earnings Call Tr. (Aug. 27, 2026).

60. To date, Defendants have not established any mechanism to refund to consumers the tariff costs Defendants passed through to them via elevated prices and import charges during the Class Period. Defendants' marketing and promotional reinvestments are not such a mechanism.

61. Defendants have recovered tariff refunds on the tariffed goods they sold, even though Defendants' customers had already borne the economic brunt of those tariffs by paying higher prices set by Defendants. Defendants have therefore obtained a double recovery, and they will enlarge it as they receive the remaining refunds.

62. Defendants have been paid twice for the same unlawful tariff burden: once by their customers (including Plaintiff) through elevated prices, and again by the U.S. government through tariff refunds.

## CLASS ALLEGATIONS

63. Plaintiff brings her claims individually and on behalf of the following Class pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure:

> **Class:** All persons in the United States who, during the Class Period, purchased any products that were imported into the United States by or for Defendants, or made with components that were imported into the United States by or for Defendants and for which Defendants paid, deposited, or accrued IEEPA duties.

64. Excluded from the Class are: (1) Defendants; (2) Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their family; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendants' counsel, and their experts and consultants.

65. **Numerosity**. The proposed Class contains members so numerous that separate joinder of each member of the Class is impracticable. Upon information and belief, there are at least hundreds of thousands, if not millions, of proposed class members. The individuals who purchased items subject to IEEPA tariffs can be ascertained through records in the possession, custody, or control of Defendants.

66. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent, because the factual and legal bases of Defendants' liability to Plaintiff and the other Members of the Class are the same, and because Defendants' conduct has resulted in similar injuries to Plaintiff and to the Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendants' tariff pass-through pricing.

67. **Commonality and Predominance**. There are questions of law or fact common to the Class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

a. Whether Defendants paid IEEPA tariffs on products sold to consumers during the Class Period;

b. Whether Defendants have received refunds of IEEPA tariffs paid on entries of products sold to Class members, and in what amounts;

c. Whether Defendants passed IEEPA tariff costs onto consumers through elevated prices;

d. Whether Defendants unjustly enriched themselves as a result of the unlawful conduct alleged above;

e. Whether Defendants have been or will be unjustly enriched by receiving government refunds for tariffs they passed through to consumers;

f. Whether Defendants' promotional and marketing reinvestments of refund proceeds restored any amount to Class members;

g. Whether the Class Members are entitled to restitution, actual damages, disgorgement, a constructive trust or equitable lien, attorneys' fees and costs, and other relief.

68. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff understands the obligations inherent in representing a putative class, and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex and class action litigation. Plaintiff has no interests antagonistic to the Class's interests, and Defendants have no defenses unique to Plaintiff.

**69. Superiority**. This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and because joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by

a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## CLAIMS FOR RELIEF

### COUNT I
### DECLARATORY RELIEF
### 28 U.S.C. § 2201 (on behalf of Plaintiff and the Proposed Class)

70. Plaintiff incorporates the foregoing allegations in Paragraphs 1–69 as if fully stated herein.

71. An actual, justiciable controversy exists between Plaintiff and Defendants regarding the rights and obligations of the parties with respect to IEEPA duties, the IEEPA refunds Defendants have received and have yet to receive, and the resulting inflated prices charged by Defendants to Plaintiff and proposed Class members. This controversy is not hypothetical or abstract; Defendants have already have already received the majority of their IEEPA refunds, additional refunds remain outstanding through CBP and Defendants' pending Court of International Trade action, the Supreme Court has declared such tariffs unlawful, and Defendants have not refunded to Plaintiff or the Class members any of their tariff-related price increases.

72. Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

a. Plaintiff and the Class hold an equitable interest in IEEPA tariff refunds, and any interest on those refunds, that Defendants have received or will receive on entries of products sold to Class members, to the extent of the tariff-related amounts Class members paid;

b. Defendants may not dispose of IEEPA refunds or interest received after the date of judgment on entries of products sold to Class members without first restoring those Class members' interests; and

c. Defendants must identify and preserve records of all IEEPA refunds and interest they receive on entries of products sold to Class members.

73. Declaratory relief is necessary and appropriate because Defendants inflated prices pursuant to tariffs that the Supreme Court has declared were never lawfully authorized, Defendants have not returned those sums to the consumers who paid them, and Defendants have recovered most of the very funds that consumers provided to Defendants and continue to pursue the remainder. Without judicial intervention, Defendants will continue to receive and spend the remaining refunds, as they did with the refunds received in the second quarter of fiscal 2026, without regard to Class members' interests.

74. Class members have no alternative remedy. Because Defendants served as the importer of record, only Defendants have standing to seek a refund from CBP. Individual consumers cannot file suit in the Court of International Trade to recover duties they paid in the form of inflated prices on the goods they purchased. Without the declaratory relief sought in this action, Class members will be left without any mechanism to recover the unlawful tariffs and fees they were forced to pay in the form of inflated prices charged by Defendants.

**COUNT II**
**UNJUST ENRICHMENT**
**(on behalf of Plaintiff and the Proposed Class)**

75. Plaintiff incorporates the foregoing allegations in Paragraphs 1–69 as if fully stated herein.

76. Plaintiff and the Members of the Class conferred monetary benefits on Defendants by paying elevated prices for products that included unlawful IEEPA tariff-related costs.

77. Defendants have been unjustly enriched because they collected and retained retail payments from Plaintiff and the Class that included amounts attributable to IEEPA tariff-related

costs, and then received, and continue to pursue, refunds of those same tariff costs from the government.

78. Defendants knew and appreciated the benefit they received because they set, charged, and retained tariff-related cost increases paid by Plaintiff and the Class. At minimum, after the Supreme Court's invalidation of the IEEPA tariffs and subsequent refund-related proceedings, Defendants knew or should have known that any refund or recovery of IEEPA duties would correspond to tariff costs that consumers had already economically borne through the elevated prices Defendants charged them. Defendants in fact knew of the refunds, because they sought, received, recorded, and publicly reported them.

79. Defendants' retention of these benefits is unjust and inequitable because Defendants have retained both the tariff-related amounts collected from consumers and the corresponding refund proceeds from the government, along with the right to the refunds still outstanding.

80. There is no adequate remedy at law for Plaintiff and the Members of the Class, as Defendants have established no mechanism to refund tariff costs to consumers, and consumers have no direct statutory cause of action to recover IEEPA tariffs from the government.

81. Under principles of equity and good conscience, it would be unjust to permit Defendants to retain both (a) the elevated prices consumers paid due to tariff pass-through pricing, and (b) government refunds of those same tariff costs.

82. Plaintiff and the other members of the Class are entitled to restitution in the amount by which Defendants have been unjustly enriched to the detriment of Plaintiff and the Class, and an order requiring Defendants to disgorge any additional profits or other benefit they have retained as a result of their unjust and unlawful conduct.

**COUNT III**
**MONEY HAD AND RECEIVED**
**(on behalf of Plaintiff and the Proposed Class)**

83. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1–69 above as if fully stated herein.

84. This Count is alleged in the alternative to Count II. While Count II (Unjust Enrichment) addresses the inequity of Defendants' retention of consumer overcharges already collected, this Count more particularly addresses Defendants' receipt and retention of government refund proceeds that, in equity, represent a return of costs that were economically borne by Plaintiff and Members of the Class, not by Defendants.

85. Defendants received money from Plaintiff and from each Member of the proposed Class in the form of higher prices proximately caused by the pass-through of IEEPA tariff costs.

86. Defendants received this money for the purpose of repaying themselves the IEEPA tariffs they had advanced, as importer of record, to U.S. Customs and Border Protection as duties on imported goods.

87. The Supreme Court has since determined that those tariffs lacked the requisite statutory authorization. *Learning Res.*, 607 U.S. at 255.

88. Defendants received the majority of their IEEPA tariff refunds from the U.S. government and continue to pursue the remainder through CBP and their action in the Court of International Trade. Defendants have not paid or distributed any portion of those refunds to Plaintiff or other consumers who bore the economic burden of the tariffs through elevated prices.

89. The money Defendants have and will recover from the government as IEEPA tariff refunds represents, in equity, a return of money belonging to Plaintiff and the proposed Class—consumers who paid elevated prices due to Defendants' IEEPA tariff-related pass-through.

90. The refund proceeds are specific and identifiable sums. CBP refunds IEEPA duties on an entry-by-entry basis, and Defendants' entry and refund records identify the duties refunded on the entries of products that Defendants sold to Plaintiff and the Class.

91. Defendants have not returned this money to Plaintiff or the Class.

92. In equity and good conscience, Defendants should not be permitted to retain the funds they have received and will receive from the government as IEEPA tariff refunds. Those funds belong, in equity, to Plaintiff and the Class, and Defendants are obligated to return them.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief and judgment against Defendants as follows:

a. An Order certifying the Class, defining the Class as requested herein, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class counsel;

b. An award of any actual, compensatory, and enhanced damages permitted to Plaintiff and other Class Members for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c. A declaration that Defendants' retention of tariff-related amounts paid by Plaintiff and the Class, and/or Defendants' retention of any refund, credit, reliquidation, drawback, reimbursement, or other recovery corresponding to IEEPA tariff costs that Defendants passed through to Plaintiff and the Class, is unlawful, unfair, unjust, and inequitable;

d. An Order enjoining Defendants from retaining, without appropriate credit, refund, restitution, or other equitable adjustment to Plaintiff and the Class, any refund, credit, reliquidation, drawback, reimbursement, or other recovery corresponding to IEEPA tariff costs that Defendants passed through to Plaintiff and the Class;

e. An Order requiring Defendants to identify, segregate, preserve, and account for all refunds, credits, reliquidations, drawbacks, reimbursements, or other recoveries that Defendants have received, will receive, or are entitled to receive from the United States

government or any other source for IEEPA tariff costs that Defendants passed through to Plaintiff and the Class;

f. An Order requiring Defendants to provide a full accounting of: (i) the IEEPA tariffs Defendants paid or deposited on imported goods, parts, or components which affected the purchase price of goods sold to Plaintiff and the Class; (ii) the amounts of those tariff costs that Defendants passed through to Plaintiff and the Class; and (iii) all refunds, credits, reliquidations, drawbacks, reimbursements, or other recoveries Defendants have received, will receive, or are entitled to receive for those same tariff costs;

g. An award of reasonable attorneys' fees, costs, and other litigation expenses;

h. An award of pre- and post-judgment interest as available under law;

i. Restitution, disgorgement, refund, credit, constructive trust, equitable lien, escrow, or other equitable relief requiring Dollar General to restore tariff-related overcharges to Plaintiff and Class members; and

j. Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: October 5, 2026

Respectfully submitted,

By: /s/ *Mark Silvey*

Mark E. Silvey, BPR# 013415
BRYSON HARRIS SUCIU DEMAY, PLLC
201 Sevilla Avenue, Suite 200
Coral Gables, FL 33134
C: (865) 919-8839
msilvey@brysonpllc.com

Myles McGuire (*pro hac vice* forthcoming)
William Kingston (*pro hac vice* forthcoming)
Joseph Dunklin (*pro hac vice* forthcoming)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: 312-893-7002
Fax: 312-275-7895
mmcguire@mcgpc.com
wkingston@mcgpc.com
jdunklin@mcgpc.com

*Counsel for Plaintiff and the putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2026, a true copy of the foregoing *FIRST AMENDED CLASS ACTION COMPLAINT* was filed through the ECF system and will be served electronically through the ECF system on the registered participants as identified on the Notice of Electronic Filing ("NEF").

By: /s/ *Mark Silvey*

Mark E. Silvey, BPR# 013415
BRYSON HARRIS SUCIU DEMAY, PLLC