Cat04,Henderson

# U.S. District Court
# NORTHERN DISTRICT OF OHIO (Akron)
# CIVIL DOCKET FOR CASE #: 5:26-cv-02154-BYP

McIntyre v. Goodyear Tire & Rubber Company
Assigned to: Judge Benita Y. Pearson
Demand: $5,000,000
Cause: 28:1332 Diversity-(Citizenship)

Date Filed: 09/03/2026
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**Michael K. McIntyre**
*individually and on behalf of all others similarly situated*

represented by

**Andre R. Belanger**
32 Ann Street
Charleston, SC 29403
803-222-2222
Email: andre.belanger@poulinwilley.com
*ATTORNEY TO BE NOTICED*

**David A. Martin**
Law Office of Robert Peirce - Pittsburgh
Ste. 1100
437 Grant Street
Pittsburgh, PA 15146
412-281-7229
Fax: 412-281-4229
Email: dmartin@peircelaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Goodyear Tire & Rubber Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 09/03/2026 | 1 | **Class Action Complaint** with jury demand against Goodyear Tire & Rubber Company. Filing fee paid $405, Receipt number AOHNDC-13862053. Filed by Michael K. McIntyre. (Attachments: # 1 Civil Cover Sheet) (Martin, David) (Entered: 09/03/2026) |
| 09/03/2026 | 2 | Supplement to Class Action Complaint - Civil Cover Sheet, filed by Michael K. McIntyre. Related document(s) 1 . (Martin, David) (Entered: 09/03/2026) |
| 09/04/2026 | | Judge Benita Y. Pearson assigned to case. (S,SM) (Entered: 09/04/2026) |
| 09/04/2026 | | Random Assignment of Magistrate Judge pursuant to Local Rule 3.1. In the event of a referral, case will be assigned to Magistrate Judge Carmen E. Henderson. (S,SM) (Entered: 09/04/2026) |
| 09/04/2026 | 3 | Magistrate Consent Form issued. (No Summons Filed. No Summons Issued.) (S,SM) (Entered: 09/04/2026) |

| | | |
|---|---|---|
| 09/04/2026 | | Remark by Clerk: This case was assigned and processed without the filing of a Civil Cover Sheet, which is required by Local Rule 3.13(a). Without the Civil Cover Sheet, the Clerk does not know if this case is related to or is a refiling of a pending/terminated case in this Court. (S,SM) (Entered: 09/04/2026) |
| 09/08/2026 | 4 | Civil Cover Sheet, filed by Michael K. McIntyre. Related document(s) 1 . (Martin, David) (Entered: 09/08/2026) |
| 09/28/2026 | 5 | Praecipe for issuance of Original Summons filed by Michael K. McIntyre. (Attachments: # 1 Summons)(Martin, David) (Entered: 09/28/2026) |
| 09/29/2026 | 6 | Original Summons issued to counsel for service upon Goodyear Tire & Rubber Company. (D,Ju) (Entered: 09/29/2026) |
| 10/07/2026 | 7 | Notice of Service of Complaint filed by Michael K. McIntyre. (Attachments: # 1 Exhibit Proof of Service)(Martin, David) (Entered: 10/07/2026) |
| 10/07/2026 | 8 | **Motion** for attorney Andre Belanger to Appear Pro Hac Vice. Filing fee $ 120, receipt number AOHNDC-13922755, filed by Plaintiff Michael K. McIntyre. (Attachments: # 1 Proposed Order, # 2 Exhibit Admission List, # 3 Exhibit Certificate of Good Standing - GA, # 4 Exhibit Certificate of Good Standing - LA, # 5 Exhibit Certificate of Good Standing - MS)(Belanger, Andre) (Entered: 10/07/2026) |
| 10/15/2026 | 9 | **Order** granting 8 Motion for Appearance *Pro Hac Vice* by Attorney Andre R. Belanger for Plaintiff Michael K. McIntyre. Local Rule 5.1(c) requires that attorneys register for NextGen CM/ECF and file and receive all documents electronically. NextGen CM/ECF registration can be done online at www.pacer.gov. Login with your PACER credentials, go to the Maintenance tab, click Attorney Admissions/E-File Registration, select Ohio Northern District Court and then select *Pro Hac Vice.* If you were previously granted *pro hac vice* status and are already registered to file electronically, it is not necessary to register again. Judge Benita Y. Pearson on 10/15/2026. (JLG) (Entered: 10/15/2026) |

## PACER Service Center

### Transaction Receipt

| | | | |
|---|---|---|---|
| 10/22/2026 15:59:50 | | | |
| **PACER Login:** | pauldoolittle | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:26-cv-02154-BYP |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| MICHAEL K. MCINTYRE individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE GOODYEAR TIRE & RUBBER COMPANY<br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Michael K. McIntyre ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant The Goodyear Tire & Rubber Company ("Defendant" or "Goodyear") and allege, upon personal knowledge as to Plaintiffs' own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

**<u>NATURE OF THE ACTION</u>**

1. This is a class action brought by United States citizens and customers of Defendant.

2. For approximately one year, the federal government charged tariffs on certain products, including consumer goods, imported into the United States under the International Emergency Economic Powers Act ("IEEPA").

3. For businesses with international supply chains, absorbing IEEPA tariffs was costly.

4. Many businesses, including Goodyear, responded to the high cost of IEEPA tariffs by passing those tariffs through to consumers in the form of price increases.

5. On February 20, 2026, the Supreme Court of the United States held that those tariffs were not authorized by IEEPA and were thus illegal.

6. Following the Supreme Court's decision, businesses sought to recover the IEEPA tariffs they paid through initiating litigation in the International Court of Trade. In response the U.S. Customs and Border Protection ("CBP") announced a process to streamline refunds to businesses and other entities that paid IEEPA tariffs, but has not imposed any legal requirement that businesses who passed through the IEEPA tariffs refund the individuals who actually paid them.

7. In this case, the individuals that ultimately paid the IEEPA tariffs were undisputedly the consumers. Consequently, those consumers are entitled to a refund of the tariffs that the Supreme Court ruled were illegal when charged.

8. While Goodyear is able to recover, and has already begun recovering, refunds for the IEEPA tariffs it paid, Goodyear has not made any legally-binding commitment to return the same IEEPA tariffs it passed through to the consumers who bore the brunt of the illegal IEEPA tariffs. This lawsuit seeks to reverse this unjust result.

## PARTIES

9. Plaintiff Michael K. McIntyre is a resident of Marathon, Florida. On or about December 4, 2025, Plaintiff McIntyre purchased four Goodyear Eagle Sport All-Season tires (size 255/55HR20) from Tire Kingdom/Mavis for approximately $871.96, an amount that included IEEPA tariff-related price increases that Goodyear paid and passed through to him. Plaintiff McIntyre has not received any refund, credit, rebate, or reimbursement from Goodyear related to the tariffs he paid.

10. Defendant The Goodyear Tire & Rubber Company is an Ohio corporation with its principal place of business at 200 Innovation Way, Akron, Ohio 44316-0001.[1]

---

[1] https://www.ohiosos.gov/business

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

12. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendant's obligation to return to the consumers who paid them the IEEPA duties and fees Defendant collected, as well as any IEEPA duty refunds Defendant recovers from the United States.

13. This Court has personal jurisdiction over Defendant, because Defendant has its principal place of business in this District and purposefully availed itself of the laws, rights, and benefits of this State.

14. Venue is proper under 28 U.S.C. § 1391 because this is Defendant's principal place of business and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

## FACTUAL ALLEGATIONS

### A. Goodyear's Business

15. The Goodyear Tire & Rubber Company was founded in 1898 in Akron, Ohio, and is one of the world's largest tire companies. Goodyear employs approximately 66,000 associates and manufactures its products at 48 facilities in 21 countries, including tire and rubber plants in Alabama, North Carolina, Ohio, and Oklahoma. Its two Innovation Centers, located in Akron, Ohio and Colmar-Berg, Luxembourg, develop tire technologies for the consumer, commercial

truck, aviation, and off-the-road markets.[2]

16. To manufacture its tires, Goodyear depends on natural rubber and other raw materials that are not produced domestically, because rubber trees do not grow commercially in the United States. As a result, Goodyear and other American tire manufacturers import the vast majority of the natural rubber used in their products from rubber-producing countries such as Thailand.[3]

17. Because a substantial portion of the raw materials and other inputs that Goodyear uses to manufacture and sell tires in the United States are imported, the IEEPA tariffs directly increased Goodyear's costs of manufacturing and importing products for sale to American consumers.

**B. IEEPA Tariffs**

18. Beginning in February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries declaring national emergencies related to trade and supply chain concerns. Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners, including duties of approximately 25 percent on many imports from Canada and Mexico and additional tariffs on imports from China and 19 percent on many imports from Malaysia and the Philippines that were layered on top of existing duties, resulting in substantially higher effective tariff rates on goods from these countries.

19. Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including major manufacturers such as Goodyear—were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered products into the country.

---

[2] https://www.ustires.org/about-us/members/goodyear-tire-rubber-company

[3] https://reason.com/2026/05/15/a-north-carolina-goodyear-plant-is-the-latest-victim-of-trumps-misguided-tariffs-and-costly-iran-war/

20. Numerous importers challenged the legality of the IEEPA tariffs, arguing that the President lacked statutory authority under the IEEPA to impose tariffs of that nature.

21. On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation. This ruling invalidated the tariff orders issued pursuant to that statute. *Learning Res., Inc. v. Trump*, 607 U.S. __ (2026).

22. Rather than announce any prospective limitation on the imposition of IEEPA tariffs, the Supreme Court's decision declared that there was no legal basis for imposing the IEEPA tariffs. In other words, the IEEPA tariffs were unlawful from the moment they were imposed and thus unlawful when businesses like Goodyear passed the tariff fees through to consumers.

23. Shortly after the Learning Resources decision, CBP developed the Consolidated Administration and Processing of Entries (CAPE) to "streamline the submission and processing of valid refund requests for duties imposed under the International Emergency Economic Powers Act (IEEPA)."[4] The CAPE process was launched on April 20, 2026, and provides a way for importers of record to recover IEEPA tariffs by essentially just requiring submission of a spreadsheet and supporting declaration.

24. News reports indicate that affected businesses have flocked to the CAPE process to obtain IEEPA tariff refunds. ABC News reported that "while the money will start flowing to businesses, consumers should not expect to see direct refunds."[5]

**C. IEEPA Tariffs are Borne by Consumers**

25. Economists widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties. That is because

---

[4] https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds
[5] https://abcnews.com/Business/wave-tariff-refunds-hit-businesses-tomorrow/story?id=132854062

businesses can and do pass through the tariff fees on down the line to the end purchaser: the consumer.

26. Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.

27. Facing increased costs resulting from the tariffs on the raw materials used to manufacture its tires, Goodyear followed this same pattern.

**D. Goodyear Is In Line to Receive, and Has Already Received, Tariff Refunds**

28. Following the Supreme Court's decision in February 2026, importers that had paid IEEPA tariffs—including Goodyear—became eligible to pursue refunds of those duties.

29. In April 2026, Goodyear applied for approximately $60 million in IEEPA tariff refunds, an amount the Company has said reflects roughly $46 million in tariffs paid on goods it had already sold to consumers like Plaintiffs and Class Members, approximately $12 million in tariffs on goods held in inventory, and about $2 million accrued as a liability associated with contractual terms. Goodyear received approximately $42 million of that refund during the second quarter of 2026.[6]

30. Despite recovering millions of dollars in tariff refunds from the federal government, Goodyear has not committed to returning any portion of those refunds, or the tariff-related price increases it collected, to Plaintiffs and Class Members—the consumers who actually bore the economic burden of the illegal IEEPA tariffs.[7]

---

[6] https://signalakron.org/ohio-companies-including-goodyear-expect-hundreds-of-millions-in-tariff-refunds/
[7] *Id.*

## PLAINTIFF'S ALLEGATIONS

31. Plaintiff's purchases of Goodyear tires, as alleged above, were subject to increased prices directly tied to the IEEPA tariffs that Goodyear paid and passed through to them.

32. Plaintiff paid full price for the purchase, which included IEEPA tariff fees that were passed through to him by Goodyear.

33. Plaintiff has not been refunded the IEEPA tariff fees that he paid to Goodyear.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action on behalf of himself sand as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class is defined as follows:

**Nationwide Class:** All customers of Defendant in the United States who purchased Goodyear tires through February 24, 2026, on which Defendant passed through illegal IEEPA tariffs (the "National Class").

**Ohio Subclass:** All customers of Defendant in Ohio who purchased Goodyear tires through February 24, 2026, on which Defendant passed through illegal IEEPA tariffs (the "Ohio Subclass").

35. This Nationwide Class and Ohio Subclass shall be referred to herein as the "Class."

36. Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

37. Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

38. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

39. Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiff estimates that the Class is comprised of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

40. Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, purchased Goodyear tires from Defendant that were subject to IEEPA tariff related price increases. The harm suffered by Plaintiff is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

41. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no interest antagonistic to, nor in conflict with, the Class. Plaintiffs have retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

42. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful

conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

43. <u>Predominant Common Questions</u>: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including, but not limited to:

a. Whether Defendant engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein;

b. Whether Defendant's conduct was unlawful, or otherwise actionable under applicable federal and state law;

c. Whether Defendant breached duties owed to Plaintiff and Class Members;

d. Whether Defendant passed tariff costs onto its customers by paying duties at customs and then increasing the retail prices on goods sold;

e. Whether Defendant's conduct caused injury to Plaintiff and Class Members;

f. Whether Defendant was unjustly enriched; and

g. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

44. These common questions are capable of class wide resolution because they arise from Defendant's uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendant's liability in a single adjudication and will materially advance the resolution of this litigation.

45. Plaintiff know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

46. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

**<u>CAUSES OF ACTION</u>**

**COUNT I**

**<u>UNJUST ENRICHMENT</u>**

**<u>(On Behalf of the Class)</u>**

47. Plaintiff incorporates by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

48. Plaintiff and Class Members conferred a direct financial benefit upon Defendant by paying tariff-related charges in the form of increased prices on goods.

49. Defendant knowingly received and accepted these benefits.

50. The tariff-related price increases that Defendant imposed and collected were unlawful and unauthorized.

51. Defendant collected and retained funds to which it was not legally entitled.

52. Defendant retained these funds despite knowing, or having reason to know, that such charges were unlawful, invalid, or subject to refund.

53. It would be inequitable and unjust for Defendant to retain these funds.

54. Plaintiff and Class Members suffered economic injury as a result of Defendant's unjust retention of these funds.

55. Defendant was unjustly enriched at the expense of Plaintiff and Class Members.

56. Equity and good conscience require that Defendant disgorge all unlawfully obtained funds and make restitution to Plaintiffs and Class members.

**COUNT II**

**<u>Ohio Consumer Sales Practices Act (CSPA); ORC Ann. 1345.02</u>**

**(On Behalf of the Ohio Subclass)**

57. Plaintiff incorporates by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

58. Plaintiff and Class Members paid IEEPA tariff-related charges to Defendant in the form of increased prices on goods.

59. On February 20, 2026, the Supreme Court of the United States held that IEEPA does not authorize the President to impose tariffs and that such tariffs were unlawful and imposed without statutory authority. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

60. Despite the IEEPA tariffs being declared illegal, Defendant has not established a refund process for Plaintiff and Class Members.

61. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by not issuing refunds for money paid by consumers for their Products to account for the now-illegal tariffs.

62. The foregoing deceptive acts and practices were directed at consumers.

63. Defendant's conduct is unfair because it causes substantial injury which is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition thus creating a deceptive practice.

64. On behalf of himself and other members of the Classes, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover damages and reasonable attorneys' fees.

**COUNT III**

**DECLARATORY JUDGMENT**

**(On Behalf of the Class)**

65. Plaintiff incorporates by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

66. In, or around, April 2025, U.S. Customs and Border Protection debuted a tariff refund claims portal where Importers of Record, like Defendant, can submit a declaration for the tariffs they paid under the IEEPA and receive a consolidated refund amount.

67. Defendant has filed, or will file, a claim alleging it has suffered injury from having to pay IEEPA duties to the United States and requesting a full refund of what it paid for IEEPA tariffs. However, Defendant passed the cost of the IEEPA tariffs onto consumers like Plaintiffs and Class Members.

68. Despite the IEEPA tariffs being declared illegal, Defendant has not established a refund process for Plaintiff and Class Members.

69. As a direct and proximate result of the Defendant's conduct, Plaintiff and Class Members suffered damages.

70. In light of the foregoing, a substantial controversy exists between the parties, having adverse legal interests, of sufficient immediacy and reality to warrant a declaratory judgment.

71. Under the Declaratory Judgment Act, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further relief as necessary.

72. Accordingly, Plaintiff and Class Members are entitled to a declaration that any contract, agreement or other arrangement that permitted Defendant to collect funds from Plaintiff and Class Members for IEEPA tariff related charges is rescinded and void *ab initio*.

73. Plaintiff and Class Members are also entitled to a declaration that either: (i) any refund Defendant obtains from the U.S. government/ U.S. Customs and Border Protection for IEEPA tariffs must be returned to Plaintiffs and Class Members; or (ii) any amount that Defendant

charged to and collected from Plaintiffs and Class Members for IEEPA tariffs and related fees must be returned to Plaintiffs and Class Members.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order determining that this action is properly brought as a class action and certifying Plaintiffs as representatives of the Class and their counsel as Class Counsel;

(b) For an order declaring that Defendant's conduct violates the causes of action referenced herein;

(c) For an order declaring that Defendant is obligated to reimburse Plaintiffs and Class Members for any and all sums paid in connection with unlawful tariffs;

(d) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(e) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(f) For pre-judgment interest on all amounts awarded;

(g) For an order of restitution and all other forms of equitable monetary relief;

(h) For injunctive relief as pleaded or as the Court may deem proper;

(i) For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

(j) Such other and further relief as the Court deems necessary and appropriate.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated: September 3, 2026

Respectfully Submitted,

*/s/ David A. Martin*
David A. Martin, Esq. (OH 103082)
**ROBERT PEIRCE & ASSOCIATES, P.C.**
437 Grant Street, Suite 1100
Pittsburgh, PA 15219
Tel: (412) 281-7229
Fax: (412) 281-4229

dmartin@peircelaw.com

Andre Belanger, Esq.
(**pro hac application forthcoming)*
**POULIN | WILLEY| ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Fax: (843) 494-5536
andre.belanger@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff and Proposed Class*